1              IN THE UNITED STATES BANKRUPTCY COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                     MCALLEN DIVISION

4   IN RE:                    §     CASE NO. 23-00645-MP
                              §     MCALLEN, TEXAS
5   PROFESSIONAL FEE MATTERS  §     THURSDAY,
    CONCERNING THE            §     DECEMBER 21, 2023
6   JACKSON WALKER LAW FIRM   §     9:00 A.M. TO 9:56 A.M.

7            **STATUS CONFERENCE (VIA GO TO MEETING)**

8        BEFORE THE HONORABLE EDUARDO V. RODRIGUEZ
              UNITED STATES BANKRUPTCY JUDGE
9

10

11

12      APPEARANCES:              SEE NEXT PAGE

13      CASE MANAGER:             JEANNIE CHAVEZ

14      ERO:                      ANA CASTRO

15

16

17

18

19

20            TRANSCRIPTION SERVICE BY:

21        JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 Eldridge Road, #144
22              Sugar Land, TX 77478
                    281-277-5325
23            www.judicialtranscribers.com

24
      Proceedings recorded by electronic sound recording;
25       transcript produced by transcription service.

1                    **APPEARANCES (VIA VIDEO):**

2

3    FOR JACKSON WALKER, LLP:        NORTON ROSE FULBRIGHT US LLP
                                     Jason L. Boland, Esq.
4                                    William R. Greendyke, Esq.
                                     Julie G. Harrison, Esq.
5                                    1301 McKinney, Ste. 5100
                                     Houston, TX  77010
6                                    713-651-3769

7                                    William Jenkins, Esq.
                                     General Counsel
8

9    FOR THE US TRUSTEE:             DOJ EXECUTIVE OFFICE FOR THE
                                     US TRUSTEE
10                                   Nan R. Eitel, Esq.
                                     441 G St., NW
11                                   Washington, DC  20530
                                     202-305-2695
12
                                     OFFICE OF THE US TRUSTEE
13                                   Millie A. Sall, Esq.
                                     Alicia Barcomb, Esq.
14                                   Vianey Garza, Esq.
                                     515 Rusk Street, Ste. 3516
15                                   Houston, TX  77002
                                     713-718-4650
16

17   THE US TRUSTEE:                 Kevin Epstein, Esq.

18

19   OBSERVING ONLY:                 Jordan Gouveia, Esq.
                                     Stephanie Slater, Esq.
20

21   FOR RAW OILFIELD SERVICES,
     LLC:                            Kurt Stephen, Esq.
22

23

24

25

1  **MCALLEN, TEXAS; THURSDAY, DECEMBER 21, 2023; 9:00 A.M.**

2          THE COURT:  All right.  Good morning.  Today is

3  December 21st, 2023.  This is Judge Rodriguez.

4          I'll take appearances in 23-645, Miscellaneous

5  Proceeding.

6          Ms. Eitel?

7          MS. EITEL:  (No audible response.)

8          THE COURT:  Ms. Eitel?

9          MS. EITEL:  Yes, Your Honor.

10          THE COURT:  Please enter your appearance.

11          MS. EITEL:  I'm just in listening mode today.

12  Ms. Sall will be presenting for the United States Trustee.

13          THE COURT:  Thank you.

14          Mr. Boland?

15          MR. BOLAND:  Good morning, Judge.  Jason Boland of

16  Norton Rose Fulbright on behalf of the Jackson Walker firm.

17          THE COURT:  Thank you.

18          Mr. Greendyke?

19          MR. GREENDYKE:  Good morning, Judge.  Bill

20  Greendyke of Norton Rose Fulbright also on behalf of Jackson

21  Walker.

22          THE COURT:  Thank you.

23          Ms. Harrison?

24          MS. HARRISON:  Good morning, Your Honor.  Julie

25  Harrison, also of Norton Rose Fulbright on behalf of Jackson

1   Walker.

2              THE COURT:  All right.  On the phone, we have

3   Ms. Barcomb.

4              MS. BARCOMB:  Good morning, Your Honor.  Alicia

5   Barcomb on behalf of the United States Trustee.  I'm also

6   just observing today's proceedings.

7              Thank you.

8              THE COURT:  Thank you.

9              Mr. Jenkins?

10             MR. JENKINS:  Good morning, Your Honor.  William

11  Jenkins, General Counsel for Jackson Walker.

12             THE COURT:  Thank you.

13             Ms. Harrison?  Oh, we already took your

14  appearance.  Thank you.

15             Mr. Johnson?

16             MR. JOHNSON:  Good morning, Your Honor.  Chris

17  Johnson of Diamond McCarthy.  I am listening only this

18  morning.

19             THE COURT:  Do you have an interest in this case?

20             MR. JOHNSON:  Your Honor, I'm not appearing on

21  behalf of a client this morning.

22             THE COURT:  All right.  Pursuant to Rule 9017 of

23  the Bankruptcy Local Rule, you're not allowed to appear at

24  these hearings unless you have an interest or a stake.  If

25  you qualify under that Rule, you're certainly allowed to

1   appear in the courtroom live or get a copy of the transcript

2   or listen to the audio file, but I'm going to disconnect

3   your line, Mr. Johnson.

4           MR. JOHNSON:  Thank you, Your Honor.  I'll drop.

5           THE COURT:  Thank you.

6           Ms. Sall?

7           MS. SALL:  Thank you, Your Honor.  Can you hear

8   me?

9           THE COURT:  Yes.

10          MS. SALL:  I apologize.  I'm trying to get my

11  camera to work, but I haven't been able to so far.  I am

12  reaching out to one of my colleagues to get that done.

13          I'm appearing on behalf of the US Trustee.

14          THE COURT:  Thank you.

15          Mr. Epstein?

16          MR. EPSTEIN:  Good morning, Your Honor.  Kevin

17  Epstein, United States Trustee.

18          THE COURT:  Thank you.

19          I have an unidentified caller with the last four

20  numbers 5527.  Please identify who you are.

21      (No audible response.)

22          THE COURT:  All right.  Your phone will be

23  disconnected.

24      (Indiscernible).

25          THE COURT:  Ms. Garza, Vianey Garza.

1          MR. GARZA:  Good morning, Your Honor.  Vianey
2    Garza for the US Trustee, also just observing today's
3    hearing.
4          THE COURT:  Thank you.
5          Also I have an unidentified caller with the last
6    four digits of 0711.  Please identify who you are and what
7    interest you have in this proceeding.
8          MR. GOUVEIA:  Good morning, Your Honor.  This is
9    Jordan Gouveia.  I represent the Plan Administrator in the
10   Katera case, just monitoring today.
11         THE COURT:  Okay.  Do you have an interest in this
12   Miscellaneous Proceeding?
13         MR. GOUVEIA:  Katera is one of the cases
14   implicated by the proceeding, but we've not appeared or
15   taken a position, Your Honor.
16         THE COURT:  Okay.  Can you spell your last name,
17   please?
18         MR. GOUVEIA:  Yes, Your Honor. It's G-O-U-V-E-I-A.
19         THE COURT:  Thank you.
20         MR. GOUVEIA:  Thank you.
21         THE COURT:  The next caller is 1696, please
22   identify who you are.
23         MR. OSTENER:  Good morning.  My name is Evan
24   Ostener (phonetic).  I'm a reporter at Bloomberg Law.
25         THE COURT:  Okay.  Do you have any interest in

1  this case?

2        MR. OSTENER:  I was hoping to report on it.

3        THE COURT:  All right.  You don't qualify under

4  Local Rule 9017.  I'm going to disconnect your line, but

5  you're free to appear at these hearings in person, get a

6  copy of the audio tape, or also the transcript.

7        I'm going to disconnect your line.  Thank you.

8        Next unidentified caller is 4261.  Please identify

9  who you are.

10        MS. SLATER:  Good morning, Your Honor.  Stephanie

11  Slater, I represent the Plan Administrator in the Katera

12  cases, similar to Mr. Gouveia.  I'm just observing this

13  morning.

14        THE COURT:  All right.  And can you please spell

15  your last name?

16        MS. SLATER:  Yes, my last name is Slater,

17  S-L-A-T-E-R.

18        THE COURT:  Thank you.

19        And Mr. Stephen?

20        MR. STEPHEN:  Good morning, Your Honor.  Kurt

21  Stephen, I represent R-A-W Oil Spill Services, LLC.

22        THE COURT:  Is that part of this Miscellaneous

23  Proceeding?

24        MS. SLATER:  I believe it is, Your Honor, because

25  it would affect my client in that case.

1          THE COURT:  All right.  Thank you.

2          All right.  Before we begin, I do want to bring up

3  a preliminary matter.  I do want to apprise the parties

4  about nine years ago now, Mr. Greendyke was part of a Merit

5  Selection Committee that interviewed me and other applicants

6  for the position I was ultimately selected for.

7          Since that time -- and that was the first time I

8  met Mr. Greendyke, and since that time only occasionally

9  have run into him at public CLE events.  We have not

10 otherwise communicated or socialized in any way.

11         Notwithstanding, I feel I can fairly and

12 impartially adjudicate the matter presently before me.

13         And Mr. Greendyke is present here today, and feel

14 free to dispute anything I just said, Mr. Greendyke.

15         MR. GREENDYKE:  I totally agree, Judge.  Thank

16 you.

17         THE COURT:  All right.  All right.  Thank you.

18         So today's -- first of all, I want to thank

19 everybody for their appearances.  I know this is getting

20 into the Holiday Season and I appreciate you being here

21 today to discuss the Order I issued.

22         Let's start with Ms. Eitel.

23         MS. EITEL:  Your Honor, again, Ms. Sall is

24 appearing for the US Trustee today.

25         THE COURT:  Ms. Sall?

1          Okay.  Thank you.

2          Ms. Sall?

3          MS. SALL:  Yes, sir.  Can you hear me?

4          THE COURT:  Yes, I can.

5          MS. SALL:  I'm still having camera issues, Your

6    Honor.  I apologize profusely.

7          THE COURT:  That's okay.  We can hear you just

8    fine.

9          MS. SALL:  All right.  How would you like to

10   proceed, Your Honor?  Do you want me to start answering some

11   of the questions that you have in the Order that you

12   entered?

13         THE COURT:  Yes.  I think that would be helpful.

14         Thank you.

15         MS. SALL:  All right, Your Honor.

16         So I am literally going through the list of your

17   questions in paragraph 2(a) --

18         THE COURT:  Okay.

19         MS. SALL:  -- of your Order and that would be page

20   No. 2.  And the first question addressed to us was whether

21   we needed to or wish to supplement the arguments that we

22   have made in support of our motions to withdraw the

23   reference.

24         On behalf of the US Trustee's Office, we do not

25   need to supplement any evidence; however, what I would offer

1   is that this question of what related matters may be, if

2   they were to be sent up to the District Court or another

3   court, the US Trustee has prepared or has a preliminary

4   list.  We have not had the opportunity to share that with

5   the other side for Jackson Walker.

6           However, that would be the only thing that on

7   behalf of the US Trustee we would provide to the Court, if

8   that would be helpful?

9           THE COURT:  Okay.  And this would affect your

10  arguments raised at the December 5th hearing regarding the

11  withdrawal of the reference?

12          MS. SALL:  It would specifically -- it would

13  specifically answer questions regarding when and if the

14  withdrawal is granted.  Our recommendation has been what are

15  the matters that would be referred?

16          And so we have loosely talked about the 60(b)

17  motion, but there are other pleadings, for instance, you

18  know, all professional fee applications of Jackson Walker,

19  whether they're interim or final.

20          So it would be a very short list so that there is

21  some understanding of what matters relate to the 60(b)

22  motion.

23          THE COURT:  Okay.  And how would you like to treat

24  that?  Would you just want to tell me on the Record now, or

25  do you want to file some supplemental pleading?

1          MS. SALL:  I can certainly tell the Court now.
2     But in the interest of being fair to Jackson Walker, perhaps
3     we would want to either file something for the Court.  Maybe
4     we can file something that's jointly approved or agreed.
5          So I would proceed in whichever way the Court
6     would want.
7          THE COURT:  Mr. Boland?
8          MR. GREENDYKE:  I'm going to take the lead, Judge.
9          THE COURT:  Okay.
10          MR. GREENDYKE:  This is Bill Greendyke on behalf
11     of Jackson Walker.
12          In answering your question with regard to
13     paragraph 2(a), we do not wish to supplement our arguments
14     and we're prepared for the Court to submit the report and
15     recommendation and we would agree to be bound in all 17
16     cases, whatever decision the US District Court makes on the
17     motion to withdraw the reference.
18          In response to what Ms. Sall just talked about,
19     obviously we would prefer to see something filed by them
20     about what they wish to do.  I think that really sort of
21     coordinates with some other accommodations.  We would agree
22     that the District Court ruling on withdrawal of reference in
23     the 17 cases should be binding on all new cases opened and
24     we request that any new cases have similar CMOs regarding
25     any discovery and pretrial orders in this matter.

 1          We'd also want to clarify the meaning of

 2    "discovery and pretrial matters."  At a status conference

 3    last week with Judge Isgur, which occurred actually just a

 4    couple of hours after this Court's recusal hearing in the 4E

 5    case, he indicated his belief that procedural matters are to

 6    be determined by Your Honor under the Miscellaneous

 7    Proceeding in that he, Judge Isgur, would retain all

 8    substantive matters, and that's probably something that you

 9    need to be aware of Judge Isgur having said and just make

10    sure that you and Judge Lopez and Judge Isgur are on the

11    same page about what's going up and what's being handled.

12          So that's a lot of gab, I'm sorry, but again, to

13    answer your question, we totally do not need to supplement

14    our arguments that were made before this Court in the prior

15    hearing.

16          THE COURT:  All right.  Thank you.

17          What about the US Trustee's suggestion or request

18    to supplement its withdrawal motion with the clarification

19    of what other matters are to be?  How would you like to have

20    that handled?

21          MR. GREENDYKE:  I'm totally happy having

22    discussions with Ms. Sall and Ms. Eitel.  I do think it

23    makes sense to have some type of filing, because again, we

24    didn't see this coming.  We don't know what's on their list.

25    I think that probably makes sense would be to have some kind

1  of subsequent filing.

2          THE COURT:  All right.  And Ms. Sall, if I

3  provided a deadline of December 28th, can it be accomplished

4  by then?

5          MS. SALL:  Your Honor, we would have a problem

6  with that deadline.

7          THE COURT:  Mr. Greendyke?

8          MR. GREENDYKE:  Same here, Judge.  That's fine.

9          THE COURT:  Okay.  So Ms. Sall, you can either

10  file -- my preference would be file some kind of a joint

11  stipulation, but obviously if the parties can't agree, they

12  can file separate documents and I'll be happy to review

13  that.

14          MS. SALL:  All right.  Your Honor, do you want me

15  to proceed to No. 2?

16          THE COURT:  Well, you haven't answered --

17          MS. SALL:  I'm sorry.

18          THE COURT:  -- you haven't answered the rest of

19  the question in 2(a).

20          MS. SALL:  Oh, all right.  Yes, sorry, Your Honor.

21          We -- at that point you would be agreeable to be

22  bound by whatever determination the judgment in the affected

23  cases.

24          THE COURT:  And okay, the 17 are all cases,

25  including future cases?

1              MS. SALL:  Yes, Your Honor.

2              THE COURT:  Which one is it, Ms. Sall?

3              MS. SALL:  Both.

4              THE COURT:  Okay.  Thank you.

5              MS. SALL:  Both.

6              THE COURT:  All right.  Let's go ahead and move on

7    to (b).

8              Ms. Sall?

9              MS. SALL:  Yes, Your Honor.  So on item No. 2(b),

10   the Court has requested us to discuss our intentions of

11   filing additional motions, 60(b) motions.  And the answer,

12   of course, is correct.  Yes, we would be.  There has been

13   some reference to 26 additional motions, but the way I want

14   it to at least clarify is that we're not seeking to file

15   these motions in the affected cases as is provided on 2(b).

16   The affected cases already -- the motions have already been

17   filed in the 17 cases.

18             So what I wanted to discuss with the Court today

19   is the different (glitch in the audio) cases and so a

20   potential timeline on those.

21             I want to refer the Court on Exhibit B in the

22   60(b) motions, those are the closed -- what I call the

23   "closed" cases and Your Honor, if you want me to make a

24   specific reference, I can do that to the Brilliant case with

25   Exhibit B up here.  It's ECF No. 264.

1             THE COURT:  All right.

2             MS. SALL:  And I believe it is in page 28.

3             So on Exhibit B, we reference or identify nine

4  cases and these cases are going to require the UCC to reopen

5  cases, and that's not a small stake, Your Honor.  We have

6  been discussing the logistics with Jackson Walker to

7  minimize the impact of reopening those cases.

8             There could be other possibilities.  You know,

9  we're not sure there are any, short of reopening cases, but

10 we are open to, you know, suggestions that could come short

11 of that.  But at this point we have not been convinced that

12 we have other -- another option other than open these cases.

13            So with that being said and given the Holidays,

14 you know, our best timeline for accomplishing the filing of

15 those additional nine motions would put us probably towards

16 the end of December.  I have not discussed this deadline

17 with Jackson Walker, so we'd definitely like to hear their

18 thoughts on that.

19            THE COURT:  So we're only talking about nine

20 additional cases?

21            MS. SALL:  For the bucket, which is I consider the

22 Exhibit B, which is the cases that are closed and need

23 reopening.

24            THE COURT:  Okay.  And will there be any

25 additional cases besides those, those additional nine?

1          MS. SALL:  Yes, Your Honor.

2          THE COURT:  How many more?

3          MS. SALL:  I would now refer to the Court to

4 Exhibits C and D and those cases are the cases in which

5 Judge Jones mediated and -- Your Honor, if you give me a

6 second I might be able to tell you roughly the number of

7 cases in those.

8      (Pause in the proceedings.)

9          MS. SALL:  Okay.  So there are seven open cases.

10 That's Exhibit 60 and then two closed cases for a total of

11 nine.

12          THE COURT:  Okay.

13          MS. SALL:  And those cases I will describe them as

14 having more difficult cases in the sense that they're more

15 fact-intensive in the interest of discovery for Jackson

16 Walker to be able to formulate a position.  And after

17 sending a proper pleading to the Court, the timeline on that

18 at this point, again, our best guess would be, you know,

19 possibly some time in March, Your Honor.

20          THE COURT:  Okay.  Any other cases besides those

21 18?

22          MS. SALL:  At this point I'm not aware of any.  If

23 Ms. Eitel wanted to comment on that, I will welcome her

24 comments on that.

25          THE COURT:  Okay.  Thank you.

1          Ms. Eitel?

2          MS. EITEL:  Sure, Your Honor.  We believe that's

3   the entire universe, but we have not concluded our

4   discovery, but based on our initial review of the files,

5   those 30 -- those additional 18 cases on top of the 17 seem

6   to be the universe.  We respect to reserve our rights should

7   the facts reveal a different understanding at a future date.

8          THE COURT:  Of course.  Thank you.

9          Mr. Greendyke?

10         MR. GREENDYKE:  Thank you, Judge.

11         We really have no comment on timing.  I think the

12  things that Ms. Sall talked about in terms of January and

13  March and maybe even leaving an open door so what Ms. Eitel

14  said is fine with us.  We'd just would like to reserve our

15  right to object any motion to reopen the case, depending on

16  the facts.  Again, you know, we haven't gone through this in

17  great detail with the US Trustee and like I said, we have no

18  problem with the proposed timing subject to whatever we

19  might agree upon later with them.  We just want to reserve

20  our right to object to a particular case being reopened if

21  we think the facts do not warrant such occurrence to happen.

22         THE COURT:  Of course.

23         MR. BOLAND:  And Your Honor, if I may?  We're

24  hearing some of this for the first time real time, so

25  apologies for the multiple rangers, if that's okay with Your

1    Honor.

2            THE COURT:  That's fine -- perfectly fine with me.

3    Thank you.

4            Go ahead.

5            MR. BOLAND:  Thank you, Judge.

6            The only concern I would potentially have would be

7    as it relates to 2(d), which we haven't gotten into yet

8    because we view the standing of an indispensable party as a

9    critical threshold issue that I know Your Honor is

10   interested in.  Judge Isgur was interested in it.

11           And if motions are going to be filed potentially

12   months later, what we think is appropriate is to figure out

13   the universe of folks who have that interest at the outset

14   to make sure they're involved with the outset in that

15   discovery process so that we don't run into issues later.

16           THE COURT:  I think that makes perfect sense.

17           And that kind of led to my next question is about

18   commencing discovery.  My initial thinking is that we should

19   hold off on opening discovery until all these issues have

20   been resolved.  Does anybody disagree with me?

21           Ms. Sall?

22           MS. SALL:  Yes, Your Honor.  You know, I guess if

23   you're thinking about formal discovery, you know, that might

24   be correct.  We already have started informal discovery with

25   Jackson Walker and the reason we would want to continue

1    proceeding with discovery is for the very reason that there

2    are some cases in which we need to try to formulate our

3    position based on, you know, timeline, you know, knowledge

4    and collaborating, you know, certain things that we have

5    learned from different, you know, parties or witnesses, if

6    you will.

7         And so it is critical for us to continue doing

8    discovery so as not to hold up the process.

9         THE COURT:  I have no problem with the parties

10   conducting informal discovery.  I just don't want to impose

11   any deadlines on discovery, filing of dispositive motions,

12   designated experts, things like that if we don't have all

13   the indispensable parties before us, and thereby prohibit

14   them from participating in this process.

15        And that really was my question.  I just want to

16   hear from the parties about that.

17        Mr. Boland?

18        MR. BOLAND:  Your Honor, I'm not sure I follow the

19   question.  I mean, we are more than happy to participate in

20   informal discovery.  We made that clear to the US Trustee

21   when the motions were filed, probably two days later, Your

22   Honor.  So we're happy to provide information on a

23   consensual basis to keep the process moving forward.  What

24   we don't want to have happen, Your Honor, is obviously

25   having depositions when not all the parties and the world of

1  folks that are interested are in the same proceeding, Your

2  Honor.

3           THE COURT:  Right.  And that was -- I guess that

4  was my concern.  Maybe I just stated it not clear enough.

5           I don't want to issue -- I'm hesitant to issue a

6  Scheduling Order, you know, with specific deadlines if all

7  the parties are not currently before the Court.  That's what

8  I'm asking about, if everybody is in agreement with that;

9  otherwise, I'm happy to hear arguments to the contrary.

10           MS. SALL:  Your Honor --

11           MR. GREENDYKE:  Judge, this is Bill --

12           THE COURT:  Mr. Greendyke?

13           MR. GREENDYKE:  I would just say, Judge, this is

14  Bill Greendyke.  I think what you're saying makes total

15  sense.

16           THE COURT:  And like I said, I'm not going to

17  prohibit the parties from conducting informal discovery, as

18  long as they're being cooperative and I have no problem with

19  that all.

20           Ms. Sall --

21           MS. SALL:  Your Honor?

22           THE COURT:  -- do you wish to address the Court?

23           MS. SALL:  Yes.  Yes, Your Honor.  We actually do

24  have some discovery that's ready to be sent to Jackson

25  Walker and again, we have been doing this with their

1   cooperation.  But this is discovery that's going to be sent

2   in accordance with the, you know, Federal Rules.

3              And I guess my question here would be, you know,

4   we want to continue -- we don't need a deadline, if you

5   will.  But what we wonder -- or I would be asking this Court

6   is we're going to be sending those discovery requests that I

7   show and then they may go out as quick as next week.

8              And you know, there's some interesting terms that,

9   you know, respond and things go from informal to not

10  informal, can we come back to you to try to resolve those

11  issues?

12             THE COURT:  Mr. Boland?

13             MR. BOLAND:  Your Honor, I'm thinking out loud

14  here.  We've had very productive and collegial conversations

15  with the US Trustee since the filing of the motions, Your

16  Honor.  I fully expect that to continue.  We've encouraged

17  them to send us whatever requests they want to send and we

18  would respond and produce documents or be responsive to

19  whatever the discovery request was promptly.

20             I'm envisioning that those conversations will

21  continue and we'll be able to resolve most of our

22  differences.  We have no problem coming back to Your Honor

23  under an informal discovery basis if there's a hiccup along

24  that process, Judge.

25             THE COURT:  Yeah, you know, I have to say this,

1   this is a pretty unusual request, but I understand.  I

2   understand why the US Trustee is asking because, you know, I

3   also understand that the parties could reasonably disagree

4   what needs to be produced or who needs to be sitting for a

5   deposition.

6          Again, my concern is, you know, exclusion of

7   parties that should be here and participating in this

8   process.  If it's going to get to that level, I'm concerned

9   that parties are going to be excluded from that process and

10  listening in to the Court's ruling on things of that nature.

11         So I'm hesitant to go down that road.  Certainly

12  if it gets down to that, I'll certainly entertain a motion

13  and we'll make that decision down the road, but I just want

14  to let the parties know that, you know, I'm hesitant to do

15  that at this point since we don't have everybody before us.

16         MS. SALL:  Your Honor?

17         MR. BOLAND:  Your Honor, we're going to -- go

18  ahead, Ms. Sall.

19         MS. SALL:  Yeah, I mean, Your Honor, and if I may?

20  Again, Millie Sall on behalf of the US Trustee.

21         You know, this sort of gets into part (b), and you

22  know, this is where we differ from Jackson Walker and it's

23  primarily our view of who would be an indispensable party

24  for this 60(b) motion, as opposed to what happens after the

25  60(b) motion.

1          And I (glitch in the audio) --

2          THE COURT:  Ms. Sall?  Ms. Sall?

3          MS. SALL:  Yes.

4          THE COURT:  Your line is breaking up quite a bit.

5   I don't know if you have it on speaker, you should probably

6   take that off of speaker.

7          MS. SALL:  Can you hear me, Your Honor?

8          THE COURT:  Yes, I can.

9          Can you please restate what you just said?

10         MS. SALL:  Yes, Your Honor.

11         This would, you know, describe to the Court sort

12  of why we think we can move forward to discovery the way we

13  are.  It's a complete different view in terms of who might

14  be an indispensable party for the 60(b) motion and that's

15  where we differ, you know, from Jackson Walker.

16         Again, we would be entering into 2(d) at this

17  point.  If the Court is, you know, ready for that, I'm happy

18  to, you know, explain to the Court our views on the

19  indispensable parties and the discovery potentially that may

20  be needed for the 60(b) motion only.

21         MR. BOLAND:  And Your Honor, before we get to the

22  2(d) conversation, we're hesitant, too, Your Honor.  We

23  share Your Honor's views about we want to do this once.  We

24  want to sit for a deposition.  We want to produce documents

25  one time through the same request, et cetera.

1          We just have an interest in obviously moving this

2     proceeding along, Your Honor.  It's obviously very important

3     to my client and we're eager to make sure that this just

4     doesn't linger unnecessarily.

5          THE COURT:  Right.  And like I said, informal

6     discovery usually doesn't come back to the Court for rulings

7     and that's why I'm hesitant to do that.  You know, I'm happy

8     to issue a Scheduling Order if we can limit it in some way

9     that doesn't exclude any other parties.  But I'm having

10    difficulty envisioning that happening, if somebody could --

11    if, Ms. Sall, you can help me understand what you want to do

12    about that, I'll be happy to entertain that.

13         MS. SALL:  Yes, Your Honor.

14         And I think that perhaps Mr. Boland intentionally

15    just brought something up that I wanted to address with the

16    Court and perhaps with my position, but in terms of the

17    Miscellaneous Proceeding, you know, it was open because the

18    US Trustee filed a 60(b) motion and motions to withdraw the

19    reference.

20         But I wanted to also alert to the Court that there

21    are other parties who have filed joinders to our 60(b)

22    motion in a few cases, and they're even -- there's even at

23    least one or two parties who have filed their own 60(b)

24    motions.

25         So again, this may be just a housekeeping

1   question, but what do we do with those parties?  Are those

2   parties -- are those motions also going to be coming into

3   this proceeding, you know, such that those parties are

4   allowed to participate?

5          THE COURT:  I think that's a very good question.

6   I'm only aware of one joinder.  I think it's in the 4E case.

7   And also one additional Rule 60 motion brought by the

8   Maestas party and also in that same case.

9          At this point it's up to the presiding judge to

10  make that determination.  You know, I think the parties

11  would need to file motions in that particular proceeding to

12  argue whether or not that should be added -- that case

13  should be added to the Miscellaneous Proceeding.

14         MR. BOLAND:  And --

15         THE COURT:  Mr. Boland?

16         MR. BOLAND:  Your Honor, I was just going to --

17  you're absolutely correct.  What's out there right now is a

18  joinder in the 4E cases, a separate motion by the Maestas

19  parties and then there's a joinder in the Chesapeake cases,

20  but that's what's out there right now, Your Honor.

21         Judge Isgur did set a hearing on -- well, set a

22  briefing deadline for January 10th for indispensable

23  parties/standing with respect to the four cases that are

24  pending before him, which I think is -- I don't want to put

25  words in your mouth -- what I heard maybe from you, that if

1   the presiding judge would determine whether or not those

2   parties are proper, it should be transferred over or not, to

3   the Miscellaneous Proceeding and then that hearing, Your

4   Honor, with respect to those four cases in front of Judge

5   Isgur is set for January 16th.

6            I just wanted Your Honor to be aware of that.

7            THE COURT:  All right.  Thank you.

8            Does that answer your question, Ms. --

9            MR. GREENDYKE:  Judge?

10            THE COURT:  Oh, Mr. Greendyke?

11            MR. GREENDYKE:  Sorry, Judge.  I was going to add

12   to what Mr. Boland just said.  Late yesterday afternoon, if

13   not yesterday evening, Judge Isgur entered four Orders in

14   the cases that were pending before him, requiring any party-

15   in-interest to assert standing or indispensable party status

16   the file a notice stating a basis for indispensable party

17   status or standing in connection with the Jackson Walker

18   matters.

19            So he is fully addressing this potential standing

20   issue because, as you can hear from listening to Ms. Sall,

21   we have a disagreement about what the standing should be in

22   connection with these motions that they're seeking and Judge

23   Isgur sees that.  He raised it at his Status Conference and

24   again, this occurred the afternoon after your recusal

25   hearing saying this was a primary issue to be resolved.

1              And just for purposes of the Record, I would --

2    and maybe assisting the Court, I would point the Court to a

3    decision out of the Southern District of New York, called

4    the *Sun Edison* case.  It has a Westlaw cite of 2019 Westlaw

5    2572250.  It is spot on with what we're looking at in these

6    cases here, based upon a determination by the Bankruptcy

7    Judge in New York that a party who is making a complaint

8    with regard to fees in that case, shouldn't have standing

9    and therefore, you know, it needed to go away.

10             That's what we're going to be dealing with, with

11   Judge Isgur on January the 10th and January the 16th and we

12   think that's part of the answer to your question on 2(d) on

13   your Order setting this Status Conference here.

14             THE COURT:  What about in the other cases, Judge

15   Lopez's cases?  What's happening over there?

16             MS. SALL:  Your Honor, if I may?

17             MR. BOLAND:  Your Honor?

18             THE COURT:  Ms. Sall?

19             MR. BOLAND:  I think it just --

20             MS. SALL:  Yes.  I just wanted to alert you that

21   unless I have the case wrong, there was an emergency motion

22   filed by a pro se claimant in the Sorrento case.  It may

23   have been filed yesterday or the day before.  It was filed

24   on an emergency basis.  I don't think it's going to be heard

25   on an emergency basis, but there's another party who has

1 surfaced that's filed its own motion.

2          THE COURT:  Do you know that case number?

3          MS. SALL:  I don't, but Your Honor, if you give me

4 a few minutes, I will have someone give you potentially the

5 ECF reading, if we can get that for you?  I should be able

6 to.

7          THE COURT:  Okay.  Thank you.

8          Mr. Greendyke, did you want to address the Court?

9          MR. GREENDYKE:  Yes.  I would say that Norton Rose

10 Fulbright does not represent Jackson Walker in the Sorrento

11 case.  We have a conflict there, so we don't really have any

12 comment about the Sorrento case.  And I'm not aware of what

13 Ms. Sall is referring to.

14          THE COURT:  Okay.

15          MS. SALL:  Your Honor?

16          THE COURT:  Yes.

17          MS. SALL:  The case number is -- sorry, 23-90085.

18          THE COURT:  Okay.

19          MS. SALL:  And I will try to get you the ECF on

20 that pleading, Your Honor.  It's ECF 1656.

21          THE COURT:  Thank you.

22          My question goes back to the other affected cases

23 in Judge Lopez's court.  Are the parties addressing

24 indispensable party issue in those cases, or how is that

25 proceeding?

1          MR. BOLAND:  Your Honor, maybe I can start with

2    that one.  The short answer is we have not.  We've been

3    working really hard to just understand the procedural

4    posture of everything, Judge, and we on our side have talked

5    about going back to Judge Lopez now that Judge Isgur has

6    entered an Order addressing the standing and indispensable

7    party issues and now that Your Honor has issued the Order

8    that we're here on today, also bringing up the standing and

9    indispensable party issues, Your Honor.

10          On the Jackson Walker side, we were thinking it

11   made sense to ask Judge Lopez to hold a similar Status

12   Conference, that way we can talk about these same issues to

13   have basically parties going in the same direction on that

14   point.

15          Again, from our perspective, you know, it's

16   important to determine the standing and indispensable

17   parties at the outset, because otherwise at the end of the

18   day, I'm not sure what we're doing if there's no

19   indispensable parties and/or people with standing.

20          THE COURT:  Yeah, I'm really concerned about that.

21   I really am.  I want to make sure we have everybody here

22   that should be here in dealing with these issues.  I don't

23   want anybody to have to deal with this a second time or have

24   anybody left out.

25          Ms. Sall?

1          MS. SALL:  Yeah, Your Honor, I also wanted to

2     mention to the Court because this might not be obvious, that

3     we have not filed anything in the Sorrento case.  We don't

4     have a pending 60(b) motion in the Sorrento case.  We may

5     look into it, you know, and are looking into it, but again,

6     we would not be -- the person who filed this pleading is on

7     their own at this point in time.

8          THE COURT:  What is your response to Mr. Boland's

9     comments about the indispensable parties in Judge Lopez's

10     cases?

11          MS. SALL:  Yes, Your Honor.

12          Your Honor, we view indispensable parties a little

13     different.  When we filed our 60(b) motions to vacate, they

14     were filed and no party responded other than Jackson Walker.

15          So you know, we view the 60(b) motion per se as a

16     matter that is pending and affecting Jackson Walker and the

17     US Trustee.

18          Assuming that the motion is granted, the motions

19     to vacate, the Orders that are granted, that will return all

20     the parties to the status quo that existed before the Orders

21     were entered.

22          And in that regard, you know, what we had sought

23     all along is to, again, get back to the status quo so that

24     parties-in-interest would have the opportunity to review the

25     Jackson Walker fee applications, a right that they have

1    under 1109(b) an opportunity to object because they may be

2    objecting on their very different basis that they are

3    objecting.  They could be seeking different remedies than

4    the remedies that we're seeking.

5         And so, again, we look at the 60(b) as a

6    standalone motion as if you have a case -- some other

7    pending case.  Under this initial proceeding is going to be

8    populated with just our motion.  It could be other people's

9    motions.

10        We participate in our motion and every pleading

11   has to be looked at independently.

12        So for those reasons, you know, we think that

13   limiting participation is just the potential recipients of

14   funds at this point.  When it comes to our 60(b) motion, you

15   know, again, other than Jackson Walker and UCC at this point

16   on the 60(b) motions are the only two parties that need to

17   address those issues in the 60(b) motions or after -- after

18   a decision is made on the 60(b) motion.

19        You know, that's kind of where we differ.  We're

20   differing in terms of who needs to participate.  We think

21   every creditor involved under 1109(b) should have the

22   ability to review that fee app.  They disagree.  They at

23   that point, I think they're limiting the review to just

24   anyone who is entitled to recovery.

25        So that's -- in a nutshell, Your Honor, that's

1  kind of where we're at.  We feel like -- we're not saying

2  that in understanding who the parties that may receive funds

3  is important.  We agree that is an important exercise.  But

4  we believe that it's premature at this point, as it relates

5  to the 60(b) motion.

6          We can move forward with Jackson Walker on

7  discovery on our motion that, again, no one has participated

8  in, other than Jackson Walker and us, but after -- assuming

9  we prevail on that motion, and those Orders are vacated, at

10  that point we believe that parties-in-interest have the

11  opportunity to participate in how the fee app is going to be

12  handled, what objections may be filed, what other motions

13  other parties may have.

14          So again, in a nutshell we do not believe there

15  are any indispensable parties on the 60(b) motions and

16  actually, you know, if the Court is willing to, we would be

17  willing to file some sort of brief to give you more context

18  and legal reasoning for our position.

19          MR. GREENDYKE:  Judge, this is Bill Greendyke

20  again.

21          She's basically stated what the dispute is about.

22  Their view of these cases is totally pre-confirmation, like

23  no plan has occurred, no confirmation order has occurred.

24  If you look at the *Sun Edison* case, that's not the way the

25  law should be.

1          All these cases have confirmed plans and the

2     people who might be entitled to any kind of ultimate

3     recovery are determined by those plans and/or the

4     confirmation orders.  And I think that's what this Court and

5     Judge Isgur and hopefully Judge Lopez will look at and agree

6     with.  I think standing is very important and I don't think

7     we just open the door for everybody to look at the sugar and

8     the flour and the water before the cake was baked.  The

9     cakes have been baked in these cases.  And that's, I think,

10    the perspective that the Court needs to take on all the

11    motions.

12          MR. BOLAND:  And Your Honor, I would just add to

13    that, the cases are clear, Your Honor, in a post-

14    confirmation world, you have to have constitutional

15    standing, prudential standing and 1109 standing, so I think

16    the disconnect here is that last piece, which is our

17    understanding that the US Trustee is focused on the 1109(b)

18    standing, but not the constitutional or prudential standing,

19    which applies in a post-confirmation world.

20          MS. SALL:  And Your Honor, you know, what I would

21    again remind the Court and the parties is that those issues

22    don't arise until after the Orders are vacated, you know?

23    So you know, we can proceed, you know, and I would welcome

24    Jackson Walker's views on this, but the 60(b) motion, per

25    se, the one that we filed, the one that we want to

1    prosecute, there are no indispensable parties on that one.

2    You know, after the relief is granted, that is when we can

3    -- if you will, Your Honor -- duke it out as to who needs to

4    come in, you know, to participate or not participate.

5          So we review this as putting the cart before the

6    horse.  You know, we need to be careful about limiting

7    parties' rights prematurely until we know what causes of

8    action the parties may have that frankly, Your Honor, we see

9    in a position to file rights.

10         So at this point, essentially it is premature and

11   dangerous to close the door on these parties and again, this

12   door can be opened later.  You know, this door can be opened

13   after the UCC prevails on those (glitch in the audio) the

14   orders.

15         THE COURT:  You broke up at the very end,

16   Ms. Sall.

17         MS. SALL:  That this issue can be addressed after

18   the Court orders the 60(b) motion is granted or vacating the

19   Orders.  At that point we can take this issue of who may

20   have a right.  Because I think at this point it is

21   premature.  You know, there's a lot of parties out there who

22   are following these proceedings.  They're trying to figure

23   out how to get involved.  They're not exactly sure how and

24   when and I would urge the Court to take a short pause, you

25   know, allow our 60(b) motion to go forward, allow there to

1   be, you know, addressed, prosecuted.  You know, whatever

2   decision is made is made and after a 60(b) motion is granted

3   or whatever the decision is made there, after that, that's

4   when we take up who are these indispensable parties, who are

5   the parties who may come in and file whatever they may file

6   and where because at this point, you know, should they file

7   it here?  Should they file it in the cases?  How are we

8   going to transfer those motions that, like I said, Your

9   Honor, Sorrento was not a party to that.

10         THE COURT:  Right.  And as I stated before, that

11  decision will be made by the independent -- by the presiding

12  judge and whether they should participate or not and

13  pleadings could be filed in that case and that could be made

14  by that presiding judge, and of course, everyone would have

15  an opportunity to object and participate in that hearing.

16         At a minimum, as far as I can tell for today,

17  we're looking at the end of March before the US Trustee is

18  going to complete its review and filing of additional cases

19  to be joined into Miscellaneous Proceeding.

20         Am I correct about that, Ms. Sall?

21         MS. SALL:  Yes, Your Honor.

22         THE COURT:  Okay.  And as I've been told just now

23  by Mr. Boland that there's going to be a hearing in January

24  by Judge Isgur and the Order that's been issued regarding

25  indispensable parties being joined -- or at least arguments

1  being made and maybe the decision by the Court in January,

2  so I think that would be helpful and also possibly motions

3  being filed in the other cases by Jackson Walker before

4  Judge Lopez has some similar determination.

5         I'm hopeful that that process will be completed at

6  least before March.  By that time, we should have everybody

7  here and all the motions filed that are going to get filed.

8         Does anybody disagree with that?

9     (No audible response.)

10     THE COURT:  And as much as I'd like to start

11  discovery today and open discovery formally and issue a

12  Scheduling Order, I'm hesitant to do that because of

13  everything that I've just heard.  I want to make sure we

14  have all the pleadings on file, we have all the parties

15  present before the Court and all involved in this

16  Miscellaneous Proceeding.

17         For example, what is Judge Isgur in January

18  determines that the Maestas parties should be joined in this

19  Miscellaneous Proceeding and I issue an Order today opening

20  discovery, then they're going to be precluded from that, or

21  at least they're going to be behind the ball.

22         That's just one example of what could happen here.

23     MS. SALL:  Your Honor, if I may?  And again, I

24  don't know those parties are going to come in and bring that

25  motion here to this Miscellaneous Proceeding.  You know, I

1    suspect that Jackson Walker would oppose, but I'm not like

2    -- you know, the UCC would like to continue again into this

3    investigation and we have done it informally, but there's

4    going to come a time that we're going to need formal

5    discovery.

6            And again, I already stated our position, which

7    is, you know, we're ready to go.  We want to go ahead and

8    prosecute our 60(b) motion, you know, as soon as discovery

9    is completed.  We don't believe that we need other parties

10   to do that.  We don't believe that there are parties that

11   could be part of our 60(b) motion.

12           Again, we're not parties to the other motions that

13   they have filed.  So we wanted -- we just want to treat our

14   own motions separately and go forward because the concern

15   that is being raised by Jackson Walker is who gets to be

16   paid, you know?  And that is a valid point, but it's a point

17   that exists after, assuming we prevail.  If we don't

18   prevail, we don't have to do anything else, Your Honor.

19   We're done.  You know, we just go back.

20           But if we win, that's when other parties may have

21   the interest in coming in, you know?  And determining what

22   it is the rights to these funds, if any.

23           THE COURT:  Right, but again, this process can't

24   start at least until March or until the US Trustee has

25   completed filing all of its motions, correct?

1          MS. SALL:  Well, like I said, Your Honor, we have

2   three different buckets.  And you know, we are ready to

3   proceed with discovery with the 17 motions that it has

4   filed.

5          THE COURT:  That's not going to happen.  That's

6   not going to happen.  I want all the cases in this

7   Miscellaneous Proceeding that are going to be tried to the

8   Court and I want to issue one Scheduling Order for all

9   parties.  I don't want to have to do this over and over and

10  over again, every time a new case gets filed.  It just makes

11  no sense.

12         So the sooner the US Trustee can file all of its

13  motions and file a notice on this Miscellaneous Proceeding

14  docket advising the Court and all parties-in-interest that

15  it's completed its investigation and has completed filing

16  any further motions, then we can proceed with a scheduling

17  conference.  But not until then.

18         MR. BOLAND:  Your Honor, we agree with your

19  suggestion on how to proceed with discovery.  Your Honor,

20  we're happy to continue informally with the US Trustee to

21  keep the process moving, but we think Your Honor's thoughts

22  about making sure all the parties are here at one time makes

23  sense, Your Honor.  So we're comfortable with that approach.

24         THE COURT:  The last thing I want to do is slow

25  track this proceeding.  I want to get this done sooner

1  rather than later.  I think all the parties want that.

2  That's what I'm hearing, and I'm encouraged by that.

3        But you know, given what I've just heard from the

4  US Trustee, we're looking at least until March.  If things

5  change, I'll be happy to entertain a motion and have a

6  status hearing and maybe schedule a scheduling conference.

7  But until such time, you know, I'm just going to reset

8  today's hearing for a further status conference mid-March

9  sometime and see where we are.

10        Like I said, if something happens earlier, the US

11  Trustee is permitted to file a notice with the Court and

12  request a scheduling conference, advising the Court and all

13  parties that it's completed its investigation, has filed all

14  the motions it's going to file, but not until then.

15        I want to go back.  Is there any questions about

16  that, Ms. Sall?

17        MS. SALL:  No, Your Honor.  I -- you know, we will

18  -- if we need to come back to the Court to file a motion, we

19  will do that.  Again, I'm just concerned about there may be

20  some formal discovery that we need to be able to formulate

21  some of our pending motions, the motions that we have not

22  filed, and that's a concern that I have.

23        THE COURT:  Like I said, you know, happy to deal

24  with that if that should come up, but I'm not going to issue

25  a formal Scheduling Order today.

1          But like I said, you're free to file a motion

2    requesting a scheduling conference should the US Trustee

3    feel it's ready to proceed.

4          Okay?  I want to give everybody an opportunity to

5    do what they need to do to get this case moving and I'm

6    happy to accommodate everyone in this case.

7          Now I want t get back to Mr. Greendyke's question

8    he asked me earlier on about how this can be handled between

9    this Court and the other Courts.  I think there was a

10   question about, you know, what's going to happen in this

11   Court and what's going to happen in the Courts with the

12   presiding judges regarding dispositive motions, things of

13   that nature.

14         Is that your question, Mr. Greendyke?  Did I get

15   that right?

16         MR. GREENDYKE:  Yes, Judge.  Yes, Judge.

17         THE COURT:  Okay.  So my understanding, the Order,

18   the Case Management Orders are issued in this case

19   depositing these particular proceedings in the Miscellaneous

20   Proceeding under which I'm now currently presiding over, is

21   -- you know, I'm going to issue a Scheduling Order.  I want

22   to set deadlines.

23         And you know, we'll discuss this more at the

24   scheduling conference, but to give you a preview of my

25   thoughts, and I'm happy to hear arguments on it, is to issue

1   a Scheduling Order setting deadlines, setting forth such

2   things as filing a notice of consent and non-consent,

3   completion of discovery deadline, designation of experts,

4   things of that nature, filing of dispositive motions, but I

5   think the dispositive motions would need to be filed in each

6   individual case with the presiding judge reviewing and

7   deciding those motions.

8        I'm not -- I don't have that directive in the

9   Order to deal with anything dispositive.  It's just

10  discovery.  So I'm going to take everybody up to discovery.

11  If dispositive motions will get filed and that'll be

12  determined and heard by the presiding judge, unless I hear

13  something different from the presiding judge.

14       I'm happy to do them.  I'm happy to do them, but

15  it's really up to the presiding judge because these cases --

16  each case is so different and so unique, I don't -- and I'm

17  not familiar with those cases, and I'm not the presiding

18  judge in those cases.  I think it makes more sense for the

19  presiding judge to make those determinations.

20       But like I said, if the parties feel differently

21  and they can persuade the presiding judge to let me hear

22  them, happy to do it, but really I'm going to leave that

23  discretion to the presiding judge.

24       Does that answer your question, Mr. Greendyke?

25       MR. GREENDYKE:  It does.  Thank you, Judge.

1          THE COURT:  Mr. Boland?

2          MR. BOLAND:  It does, Your Honor.  Thank you for

3    that, and going back to 2(a) real quick, one of your

4    comments was -- or one of the comments was wishing to

5    supplement, Your Honor.  Obviously we do have agreement to

6    -- we had a stipulated withdrawal recommendation that we

7    proposed to Your Honor, that I know Your Honor is doing your

8    own report and recommendation.  That was prior to the

9    Miscellaneous Proceeding.

10          You know, my client is also comfortable with Your

11   Honor handling the pretrial matters like you just discussed,

12   as well.  I just wanted to state that for clarity.

13          THE COURT:  Thank you, Mr. Boland.

14          Ms. Sall, any question about what I just stated?

15          MS. SALL:  No questions, although I do have

16   another housekeeping matter.

17          THE COURT:  Sure.

18          MS. SALL:  I wanted to understand the timeline

19   possibly.  I know that the Court has referenced that it may

20   be ready at some point soon to issue a report and

21   recommendation and I was just curious if the Judge -- if the

22   Court had a timeline on that, as well.

23          THE COURT:  I'm hoping to get that done today,

24   maybe by tomorrow at the latest.

25          MS. SALL:  All right.  Thank you, Your Honor.

 1           THE COURT:  Okay.  So let's look for a hearing
 2  date for a further Status Conference.  I have March 28th,
 3  2024 at 9:00 a.m.  Do you want to check your calendars?  I
 4  will be in McAllen, but we can hold this electronically.
 5           If you want me to be in Houston, I can look for a
 6  Houston date, but it's entirely up to you.
 7           Mr. Boland?
 8           MR. BOLAND:  Your Honor, I was thinking of another
 9  question.  I apologize, but I want to circle back.
10           THE COURT:  Go ahead.  Sure.
11           MR. BOLAND:  So I'll have to be rude and ask you
12  to repeat that, Your Honor.
13           THE COURT:  March 28th, 2024 at 9:00 a.m.
14           MR. BOLAND:  That's perfect.
15           MR. GREENDYKE:  Same here, Judge.  Thank you.
16           THE COURT:  Okay.  Ms. Sall?
17           MS. SALL:  No issues, Your Honor.  I will endeavor
18  to make sure my camera is working.
19      (Laughter)
20           THE COURT:  Okay.  That'd be great, wonderful.
21           All right.  I will draft an Order and get that
22  entered so everybody can have that.
23           All right.  Is there anything else we need to talk
24  about today?
25           MR. BOLAND:  Your Honor, the issue I was debating

1   internally when I was distracted just a minute ago, we had

2   reached an agreement with the US Trustee.  We basically

3   abated our response deadlines pending kind of the procedural

4   solutions here.

5          Your Honor, we envisioned with the opening of the

6   Miscellaneous Proceeding that at some point Your Honor would

7   enter, as part of the Scheduling Order, dates and deadlines

8   on responses and briefings, things of that sort.

9          If I'm mistaken, Your Honor, I'm obviously happy

10  to do whatever Your Honor pleases, but that was one thing we

11  had a question about procedurally.

12         If Your Honor was intending to address the

13  responsive briefing deadlines as part of that Scheduling

14  Order?

15         THE COURT:  Yes.  I did and I just gave you a few

16  examples of what my thought process was, but yes, I will

17  include that in there, absolutely.

18         MR. BOLAND:  Thank you, Judge.

19         THE COURT:  Yeah.  Mr. Greendyke?

20         MR. GREENDYKE:  No comment, Judge.  Thank you.

21         THE COURT:  Ms. Sall?

22         MS. SALL:  No comment.

23         THE COURT:  Ms. Eitel?

24     (No audible response.)

25         THE COURT:  Is she still with us?

1          MS. EITEL:  Nothing further, Your Honor.  Sorry, I

2    was on mute.

3          THE COURT:  Okay.  All right.  I think we've

4    covered everything we needed to cover today and I'm really

5    appreciative of everybody's participation.  I'm hoping this

6    was helpful to everyone.  Sure was helpful to the Court.

7          MR. GREENDYKE:  It was.  Thank you, Judge.

8          THE COURT:  All right.  And again, have a safe and

9    Happy Holiday and Best Wishes to everyone and we'll see

10   everybody in March, unless something else comes up.

11         MR. GREENDYKE:  Can do, Judge.  Thank you.

12         THE COURT:  All right.  Everyone is excused.

13         MS. SALL:  Thank you, Your Honor.

14         THE COURT:  Everyone is excused and the Court is

15   now in recess until 10:00 a.m.

16      (The parties thank the Court.)

17      (Hearing adjourned at 9:56 a.m.)

18

19

20

21

22

23

24

25                    *  *  *  *  *

1            *I certify that the foregoing is a correct*

2    *transcript to the best of my ability from the electronic*

3    *sound recording of the ZOOM/video/telephonic proceedings in*

4    *the above-entitled matter.*

5    */S/ MARY D. HENRY*

6    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

7    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

8    *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

9    *JTT TRANSCRIPT #67969*

10   *DATE FILED:  DECEMBER 22, 2023*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25