UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | : |
| | :   Chapter 11 |
| Professional Fee Matters Concerning the | : |
| Jackson Walker Law Firm | :   Case No. 23-00645 (EVR) |
| | : |
| | : |

**EMERGENCY MOTION OF DAVID R. JONES TO QUASH
<u>SUBPOENAS TO PRODUCE RECORDS AND FOR A PROTECTIVE ORDER</u>**
[Relates to ECF Nos. 204, 209]

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Relief is requested not later than August 7, 2024 at 8:30 a.m. (Central Time) or when the Court further considers matters pursuant to ECF No. 209.**

**To The Honorable Eduardo V. Rodriguez,
Chief United States Bankruptcy Judge:**

David R. Jones ("<u>Jones</u>"), by and thorough his undersigned counsel, submits this motion to quash (the "<u>Motion</u>") the *Subpoenas to Produce Documents* issued on July 31, 2024 [ECF No. 204] by Old Copper Company, Inc. f/k/a J.C. Penney Company, Inc. and Copper Sub Corporation, Inc. f/k/a J.C. Penney Corporation, Inc. as Wind Down Debtor in *In re J.C. Penney Direct*

*Marketing Services, LLC*, Case No. 20-20184 (together, represented by the "Plan Administrator") to (i) AT&T Wireless and (ii) T-Mobile (together, the "Subpoenas") and to enter a protective order, and in support respectfully states as follows:

## PRELIMINARY STATEMENT

1.  Jones was sworn in as a United States Bankruptcy Judge for the Southern District of Texas on September 30, 2011. For over 12 years, Jones served in that capacity until he resigned in October 2023. During his tenure, Jones utilized his government-issued mobile phone as an everyday tool to perform his official judicial duties. Jones communicated with other judges, clerks, case administrators, administrative courthouse staff, and private mediation parties, in addition to personal communications. As this Court has correctly found, the Subpoenas plainly implicate the *Guide to Judiciary Policy, Vol. 20, Ch. 8* (the "Judiciary Policy"). For the plurality of reasons described herein, the Subpoenas should not be allowed to proceed under the considerations set forth under the Judiciary Policy.

2.  Even if the Subpoenas do not improperly seek discovery of official information and records, the Subpoenas should still be quashed as they seek discovery of plainly irrelevant information that may be obtained from other parties (none of whom were then-sitting federal judges). Jones understands that Plan Administrator has compiled a list of phone numbers from the case participants in the J.C. Penney chapter 11 cases. The Plan Administrator intends to cross-reference his J.C. Penney list with the nearly four years of Jones' phone records he seeks. These miscellaneous proceedings, however, concern what *Jackson Walker* did or did not know and what *Jackson Walker* did or did not do with respect to its disclosures. Jones' communications have no relevance to the analysis that a court will ultimately be required to perform. Moreover, even assuming marginal relevance to some *other* action not before the Court, the Plan Administrator

may seek this information from the parties on his J.C. Penney list—none of whom were sitting U.S. bankruptcy judges.  Moreover, to the extent Plan Administrator reforms his list to include solely Jackson Walker employees, that information may be obtained from Jackson Walker—*an actual party to these proceedings* and, of course, not a former U.S. bankruptcy judge.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (holding that the district court properly required the defendant "to seek discovery from its party opponent before burdening the [subpoenaed] non-party").

3.  Protection is warranted for interests beyond Jones' privacy interests.  They include other judges, court personnel and private mediation parties.  Each of these individuals communicated and deliberated with Jones under the expectation of privacy and privilege.  Finally, if federal judges cannot use court-issued technology with the absolute privilege of privacy, the independence of the federal judiciary itself is negatively affected.

4.  For all of these reasons, the Subpoenas should be quashed and an appropriate protective order entered.

## JURISDICTION AND VENUE

5.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This Motion is a core proceeding under 28 U.S.C. § 157(b).  Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6.  On December 9, 2023, the Court issued an *Order Commencing Miscellaneous Proceeding Regarding Employment Orders and Awarded Fees and Expenses to Jackson Walker, LLP in Affected Cases.*  [ECF No. 1].

7.  On June 25, 2024, Jackson Walker LLP ("JW") issued to Jones a Second Amended Notice of Deposition (the "JW Depo. Notice").  [ECF No. 142-1.]

3

8. On June 26, 2024, in order to comply with the Judiciary Policy, Jones sought guidance of this Court under the Judiciary Policy regarding the JW Depo. Notice. [ECF No. 142.]

9. On July 3, 2024, the Office of the United States Trustee (the "UST") issued to Jones a *Cross-Notice of Deposition* and *Subpoena to Produce Documents, Information, or Objects* (the "UST Subpoena").

10. On July 10, 2024, Jones filed a *Notice of Request for Records and Testimony* requesting the Court's guidance under Judiciary Policy with respect to the UST Subpoena [ECF No. 164.].

11. On July 12, 2024, the Plan Administrator filed a *Notice of Intention to Participate in Deposition of David R. Jones* (the "Old Copper Notice"). [ECF No. 168.]

12. The Court held a hearing on the JW Depo. Notice, the UST Subpoena, and the Old Copper Notice under the Judiciary Policy on July 16, 2024.

13. On July 31, 2024, the Plan Administrator issued and filed a notice of the Subpoenas. [ECF No. 204.] In the Subpoenas, the Plan Administrator seeks from two cellular service providers, AT&T Wireless and T-Mobile: "[h]istorical transaction data, including all call originations, call terminations, call attempts, voice and text message transactions, including the originating and receiving phone numbers or network IDs for all incoming and outgoing call, text, voice, and data transactions of any nature for the period of 2/1/2020 to 10/6/2023 for" Jones' cellular phone number (the "Phone Records"). *See* Subpoenas at 1.

14. The Plan Administrator's Subpoenas target almost four years of a then-sitting U.S. Bankruptcy Judge's telephone records, concerning Jones' government-issued cell phone used for official court business. The Subpoenas demand production by August 9, 2024. The Subpoenas did not attempt to comply with the Judiciary Policy.

4

15. On August 1, 2024, the Court issued an *Order to Show Cause or Alternatively Setting a Hearing Under the Guide to Judiciary Policy, Volume 20, Chapter 8 § 850* with respect to the Subpoenas, setting a hearing for August 8, 2024, and a deadline for the Plan Administrator to respond for August 5, 2024 ("Order to Show Cause"). [ECF No. 209.]

**RELIEF REQUESTED**

16. Jones respectfully requests that the Court enter an order quashing the Subpoenas in their entirety. In the event the Court permits any part of the Subpoenas to proceed, Jones requests that any records be produced first to Jones for privilege and relevance review, and subject to Jones' objections to the production of records under the Federal Rules of Civil Procedure.

**ARGUMENT**

**I.     The Subpoenas Seek Official Records Subject to Judiciary Policy**

17. The Subpoenas seek the production of records consisting of cell phone records of a then-sitting federal judge for the time period between February 1, 2020, and October 6, 2023 (the "Requested Period").

**A.     The Phone Records are Official Records**

18. Jones was sworn in as a bankruptcy judge for the Southern District of Texas on September 30, 2011. Jones served in that capacity until October 2023, when Jones resigned.

19. During the Requested Period, Jones regularly used his government-issued phone to conduct official business, including communicating with other members of the judiciary, law clerks, case managers, the Clerk of Court, and other employees of the federal courts. In addition, in his role as Court-appointed mediator, Jones used his government-issued phone to communicate with mediation parties. The Phone Records are official records within the scope of the Judiciary Policy. *See* Judiciary Policy § 850(a)(15).

5

### B. Under the Judiciary Policy, the Phone Records Should Not be Produced

20. Under the Judiciary Policy, the determining officer—in this case, this honorable Court—considers sixteen factors in deciding whether federal judiciary information may be disclosed. *Id*. § 850.

21. *§ 850(a)(7).* As a preliminary matter, the Subpoenas did not meet the requirements of the Judiciary Policy. Under section 830, a request must "be accompanied by an affidavit setting forth, a written statement by the party seeking the [] production of records … an explanation of the nature of the testimony or records sought, the relevance of the testimony or records sought to the legal proceedings, and the reasons why the testimony or records sought, or the information contained therein, are not readily available from other sources or by other means." *Id*. § 830(a). The Subpoenas did not even attempt to comply with the Judiciary Policy in this regard. Rather, the Subpoenas simply listed an (unredacted for filing) phone number, without even identifying the subscriber or user—let alone that such user was a former U.S. Bankruptcy Judge.

22. *§ 850(a)(4), (9).* The Subpoenas are inappropriate under applicable Court and ethical rules, because Jones used the phone in connection with acting as mediator in various mediation proceedings. Local Rule 16.4, concerning "civil cases pending before district, magistrate, and bankruptcy judges,"[1] provides that "[a]ll communications made during ADR proceedings … are confidential, are protected from disclosure, and may not be disclosed to anyone, including the Court, by the provider or the parties…." *See* S.D. Tex. L.R. 16.4; *see also Newman v. Texas Parks & Wildlife Dep't*, No. 4:16-CV-2626, 2018 WL 2722271, at *10 (S.D. Tex. June 6, 2018) (Local Rule 16.4 embodies a "strong public policy supporting complete confidentiality

---

[1] *In re Smith*, 524 B.R. 689, 702, n.9 (Bankr. S.D. Tex. 2015) ("Local Rule 16.4.A applies in this Bankruptcy Court.").

6

of mediation proceedings"); *In re Exco Resources*, Case No. 18-30155, 11/30/2018 Tr. at 40:1-2 ("The mediation privilege applies to all the communications in furtherance of the mediation proceedings."); *see also* Bankr. S.D. Tex. Complex Procedures ¶¶ 53-54 ("No person may rely on or introduce as evidence in any arbitral, judicial or other proceeding, evidence pertaining to any aspect of the mediation effort…"; "The mediator may not be compelled to disclose to the Court or to any person any of the records, reports, summaries, notes, communications or other documents received or made by the mediator while serving in such capacity.").

23. ***§ 850(a)(10).*** The Subpoenas threaten to "disclose information regarding the exercise of judicial … responsibilities by federal judicial personnel in the decisional or deliberative process." Judiciary Policy § 850(a)(10). The subject records are in connection with Jones' government-issued cell phone, which Jones used to communicate regularly with other judges, clerks, other courthouse employees and third parties. By revealing the communications or even their existence, duration, or frequency, the Phone Records would reveal judicial decision-making and deliberative processes. As the Court has noted, this sort of discovery is generally inappropriate. Order to Show Cause at 1, n.6. *See also United States v. Morgan*, 313 U.S. 409, 422 (1941) ("Such an examination of a judge would be destructive of judicial responsibility."); *Gary W. v. State of La., Dep't of Health & Hum. Res.*, 861 F.2d 1366, 1369 (5th Cir. 1988) (applying the "mental processes rule" "to prevent the involuntary testimony of judicial and quasi-judicial officers"); *Bank of Com. of Laredo v. City Nat. Bank of Laredo*, 484 F.2d 284, 287 (5th Cir. 1973) ("The preponderant weight of judicial precedent bars plaintiffs from deposing the Comptroller or requiring him to answer interrogatories."); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("Because qualified immunity constitutes an immunity from suit rather than a mere defense to liability, the defense is intended to give

government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery as inquiries of this kind can be peculiarly disruptive of effective government.") (cleaned up); *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987) ("[T]he Supreme Court noted that the protection afforded government officials by the doctrines of absolute and qualified immunity would be greatly depreciated if it did not include protection from discovery. . . . [C]lose control of discovery is essential to the preservation of meaningful official immunity."); *In re Lickman*, 304 B.R. 897, 903 (Bankr. M.D. Fla. 2004) ("The policy behind immunity does not merely extend to suits, it also extends to protection against discovery. If judicial immunity were applicable, then it would be senseless and disruptive to allow for discovery.").

24.     **§ 850(a)(13).**   The Subpoenas seek records readily available from other sources. Jones understands that the Plan Administrator intends to review the Phone Records to see whether Jones communicated with parties in the J.C. Penney chapter 11 cases (the "J.C. Penney Parties"), by comparing the Phone Records to a list of telephone numbers that the Plan Administrator has compiled.  To state the obvious, none of the J.C. Penney Parties are former federal bankruptcy judges.  Assuming *arguendo* that the putative communications are somehow relevant to these matters (and they are not for the reasons described below), the Plan Administrator should instead seek discovery of the J.C. Penney Parties' phone records and/or communications, which would provide the same information that Plan Administrator seeks from a former bankruptcy judge's government-issued cell phone.

## II.     The Phone Records are Irrelevant

25.     As noted above concerning § 850(a)(13), the Plan Administrator seeks the Phone Records to cross-reference against his list of J.C. Penney Parties.  Those putative communications, assuming relevance for some distinct action, are irrelevant here.

26. Indeed, both parties to these miscellaneous proceedings agree that these proceedings concern what Jackson Walker knew or did not know and what actions Jackson Walker was required or not required to take with that putative knowledge. Those disputed issues of fact and law will determine the question of whether disgorgement of Court-approved fees is warranted or not.

27. Jackson Walker has described its adversary's position as follows: "the crux of the U.S. Trustee's position is that individuals within *JW knew* of the cohabitation and/or intimate relationship between Ms. Freeman and former Judge Jones and that such cohabitation and/or relationship *should have been disclosed* …" ECF No. 171 at ¶ 8 (emphasis added). The UST, for its part, agrees that it is Jackson Walker's conduct—not Jones'—that is determinative here. *See* Case No. 19-34508, ECF No. 2950 ("It is *Jackson Walker's misconduct* [not Judge Jones's conduct] in *repeatedly failing to disclose* the relationship between its partner and Judge Jones that merits the denial of all fees and sanctions.") (emphasis added).

28. Jones's putative communications with the J.C. Penney Parties (or any of the hundreds of other telephonic-counterparties, including other judges and federal courthouse employees) are simply irrelevant here. To the extent the Plan Administrator is focused solely on communications between Jones and Jackson Walker representatives, discovery should be sought from those Jackson Walker representatives, who are actual parties to these proceedings.

### III. If Any Discovery Related To The Subpoenas Is Allowed, Procedural Protections Should be Implemented

29. To the extent the Court does not quash the Subpoenas in their entirety, any produced materials should first be delivered to Jones to conduct a privilege and relevance review under the Federal Rules of Civil Procedure. As the Judiciary Policy provides, "[n]othing in these regulations

should restrict in any way any defenses, objections, or privileges that may be asserted by federal judicial personnel in response to a request." Judiciary Policy § 820(c).

30. As noted above, it is not just Jones' privilege at issue; the interests of a litany of federal judiciary government employees and private parties and litigants are implicated here. Moreover, if federal judges cannot use court-issued technology with the privilege of privacy, the independence of the judiciary itself is negatively affected. Jones should be allowed to review the materials for privilege and afforded the opportunity to assert any objections pursuant to such review. Moreover, as Jones is not a party to these proceedings, the costs attendant to any such review should be borne by the Plan Administrator.

## **CONCLUSION**

Based on the above, Jones respectfully requests that the Court grant this Motion and quash the Subpoenas in their entirety and grant such other just relief.

Dated: August 5, 2024
       Houston, Texas

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Joanna D. Caytas*
Joanna D. Caytas
SBN 24127230
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
Email: joannacaytas@quinnemanuel.com

-and-

Benjamin I. Finestone (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York  10010
Telephone: (212) 849-7000
Email: benjaminfinestone@quinnemanuel.com

*Counsel to David R. Jones*

## CERTIFICATE OF ACCURACY

I certify, pursuant to Local Rule 9013-1(i), that the foregoing statements regarding the nature of the emergency set forth in the foregoing Motion are true and accurate to the best of my knowledge.

Dated: August 5, 2024

*/s/ Joanna D. Caytas*
Joanna D. Caytas

## CERTIFICATE OF CONFERENCE

I certify, pursuant to Federal Rule of Civil Procedure 26(c), that counsel for David R. Jones has met and conferred in good faith with counsel for the Plan Administrator in an attempt to narrow or satisfy the Plan Administrator's discovery demands.

Dated: August 5, 2024

*/s/ Joanna D. Caytas*
Joanna D. Caytas

## CERTIFICATE OF SERVICE

I certify that on August 5, 2024, a true and correct copy of the foregoing document was served through the Court's Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas and will be served as set forth in the Certificate of Service to be filed by David R. Jones' counsel.

Dated: August 5, 2024

*/s/ Joanna D. Caytas*
Joanna D. Caytas