IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm | § § § § § § § Case No. 23-00645 (EVR) |

**JACKSON WALKER LLP'S RESPONSE TO (1) ORDER SETTING IN PERSON SHOW CAUSE HEARING AND (2) UNITED STATES TRUSTEE'S NOTICE OF JACKSON WALKER'S RECENT INTERVIEW OF FORMER JUDGE JONES AND NOTICE OF ADDITIONAL TOPIC**
[Relates to Dkt. Nos. 215 & 217]

Jackson Walker LLP ("JW") files this response to (1) the *Order Setting in Person Show Cause Hearing* [Dkt. No. 217] and (2) the *United States Trustee's Notice of Jackson Walker's Recent Interview of Former Judge Jones and Notice of Additional Topic* [Dkt. No. 215].

1. JW and its counsel have great respect for this Court and the regulations set forth in the *Guide to Judiciary Policy*, Vol. 20, Ch. 8 (the "Regulations"),[1] and at all times believed they were and always intended to act in accordance and compliance with such Regulations. JW submits this response to provide the Court with the relevant background and details that led to the meeting with former Judge Jones, and to address the concerns raised by the Court and the allegations asserted by the United States Trustee (the "U.S. Trustee").

2. In short, and as explained in more detail below, JW and its counsel in good faith believed (and continue to believe) that the informal meeting with former Judge Jones was not governed or otherwise prohibited in any way by the Regulations or this Court's request to postpone former Judge Jones' deposition because: (a) this meeting was not conducted or

---

[1] The term "Regulations" is used to describe this aspect of the Judiciary Polices at https://www.uscourts.gov/rules-policies/judiciary-policies/subpoena-regulations.

202370376

- 1 -

compelled pursuant to any subpoena or other request by JW (indeed, it was the opposite, as it was an offer made by former Judge Jones);[2] (b) former Judge Jones was not compelled to attend or to discuss anything; and (c) this meeting was not a deposition and was not in any way done to elicit sworn testimony. Former Judge Jones was not under oath, the meeting was not recorded, and former Judge Jones was free to withhold any information he was uncomfortable providing. He was free to come and leave on his own time and at his own choosing.

3.  Judge Lopez has set the matters in this Miscellaneous Proceeding in his court for trial beginning on December 4, 2024. As the Court is aware, the discovery process with respect to this Miscellaneous Proceeding commenced on May 15, 2024. Soon thereafter, on June 5, 2024, lawyers for JW and counsel for former Judge Jones held a telephone call to discuss the deposition of former Judge Jones. On that call, counsel for former Judge Jones offered to arrange an informal meeting with former Judge Jones in lieu of a deposition. Counsel for former Judge Jones said that former Judge Jones would not discuss his judicial analysis or answer any questions that infringed upon the mediation and judicial immunity privileges.

4.  On June 25, 2024, JW issued a subpoena to former Judge Jones to seek his formal deposition testimony, which was initially set to occur on July 18, 2024.[3] *See* Dkt. No. 142-1. The U.S. Trustee issued a cross-notice and subpoena for former Judge Jones's deposition testimony and production of documents on July 3, 2024. *See* Dkt. No. 164-1.

---

[2] The Regulations speak in terms of a "request." *See* Regulations § 810.30 (defining "Request"); § 830, *Contents and Timeliness of a Request*; § 840(a) ("Federal judicial personnel may not, **in response to a request** for testimony or the production of records in legal proceedings, comment, testify, or produce records without the prior approval of the determining officer designated below in § 840(b).") (emphasis added); § 850, *Procedure When Request is Made*. While broadly defined, JW made no such request for any meeting. JW's "request" was via the subpoena issued for deposition testimony, and that request was postponed as this Court asked.

[3] JW had previously issued a subpoena and deposition notice to former Judge Jones, but upon learning of the Regulations, JW amended and reissued its subpoena and deposition notice to be in compliance with the Regulations.

5. On June 26, 2024, this Court received an *ex-parte* communication via email from former Judge Jones "requesting guidance from this Court under Judiciary Policy, Volume 20, Chapter 8, regarding a Notice of Deposition from Jackson Walker in connection with the fee matters initiated by the United States Trustee". *See* Order, Dkt. No. 141. This Court entered an Order the following day, on June 27, 2024, granting former Judge Jones leave to file a motion with the Clerk of Court, and invited JW to file a response with the Clerk of Court. *Id.*

6. On July 1, 2024, JW filed an *Emergency Motion for Entry of an Order (I) Establishing Deadlines with Respect to the June 27, 2024 Order and (II) Granting Related Relief*, requesting that the Court establish certain deadlines with respect to its June 27, 2024 Order. *See* Dkt. No. 145. That same day, former Judge Jones agreed to sit for his subpoenaed deposition, which agreement was memorialized in a *Stipulation and Agreed Order Resolving Emergency Motion of Jackson Walker LLP for Entry of an Order (1) Establishing Deadlines with Respect to the June 27, 2024 Order and (II) Granting Related Relief* (the "Stipulation") [Dkt. No. 149], reserving all privileges and objections.

7. On July 2, 2024, the Court vacated the Stipulation (Dkt. No. 150), and issued a separate *Memorandum Opinion* (Dkt. No. 152) and *Order* (Dkt. No. 153), which set a hearing on JW's request to depose former Judge Jones for July 16th. *See* Dkt. No. 154.

8. Following the entry of this Court's *Memorandum Opinion* and *Order* and in advance of the July 16th hearing, counsel for JW and counsel for former Judge Jones continued to confer regarding whether formal deposition testimony as originally subpoenaed was still being sought by JW, or whether JW would be amenable to the informal meeting as offered by Mr. Finestone on June 5, 2024.

9. On July 15, 2024, JW agreed to former Judge Jones's offer for an informal meeting, and the parties agreed to indefinitely postpone JW's prior noticed deposition without prejudice to resetting that formal deposition testimony following the Court's guidance after the July 16th hearing. On information and belief, counsel for former Judge Jones informed the U.S. Trustee of the parties' agreement relating to the postponement of JW's subpoenaed deposition notice. The parties' agreement to postpone the deposition did not contemplate requesting that the hearing already set for July 16, 2024 be adjourned or cancelled given that (1) both JW and former Judge Jones believed it was appropriate to get guidance from this Court as to what testimony could ultimately be elicited if and when JW were to seek formal deposition testimony at a later date under its subpoena; (2) the U.S. Trustee's subpoena for testimony and documents was still pending; and (3) there was a request by counsel for Old Copper Company, Inc. f/k/a J.C. Penney Company, Inc. and Copper Sub Corporation, Inc f/k/a J.C. Penney Corporation, Inc. ("JCP") to allow JCP to participate in any deposition of former Judge Jones. JW and former Judge Jones also agreed that the informal meeting would occur on July 18, 2024, given that Mr. Finestone would already be in town for the July 16, 2024 hearing.

10. On July 16, 2024, this Court held a hearing to consider the "nature of testimony sought" that was identified in JW's and the U.S. Trustee's subpoenas, and JCP's notice, seeking deposition testimony (or documents in the case of the U.S. Trustee). At the conclusion of that hearing, the Court stated: ". . . I'm going to take the matter under advisement, and I ask that the deposition, as you all already informed me, will be placed on hold until I make such a ruling." *See* July 16, 2024 Hr'g Tr. at p. 151:9-12.

11. Understanding that the deposition testimony would be placed on hold (which was already agreed to among the parties), JW, counsel for JW, former Judge Jones, and counsel for

former Judge Jones proceeded with their informal meeting on July 18, 2024.[4]  That informal meeting began around 10:25 a.m. and lasted until approximately 1:15 p.m.[5]

12. JW and its counsel (and presumably former Judge Jones' counsel) at all times and in good faith believed and continue to believe this informal meeting was not prohibited in any way by the Regulations or this Court's request to postpone former Judge Jones' deposition for the reasons explained in Paragraph 2, above.  Instead, former Judge Jones simply met with JW to have a conversation—nothing more—similar to what former Judge Jones did with the Wall Street Journal pursuant to his First Amendment rights and what former Judge Jones could do with any person at any time of his own volition.

13. JW's actions in meeting with former Judge Jones were also consistent with and similar to the U.S. Trustee's interview in December with Ms. Freeman, who was also a former federal law clerk (and thus a "former judiciary personnel" who was equally subject to the Regulations), with one important exception—Ms. Freeman's statements were recorded.[6]  The U.S. Trustee's interview with Ms. Freeman included questions directly related to Ms. Freeman's employment as a federal law clerk, including questions that went to the deliberative process.  *See* Excerpt of Audio Transcription of Elizabeth Freeman Interview, filed at Dkt. No. 222-1 at 29:11-30:14; 106:19-112:7; 115:15-117:22.

14. Following this Court's hearings on the subpoenas issued to former Judge Jones and his former case manager, Albert Alonzo, the U.S. Trustee took Ms. Freeman's deposition on

---

[4] JW understands that former Judge Jones's counsel offered a similar informal meeting with former Judge Jones to the U.S. Trustee.

[5] Contemporaneously herewith, JW has filed under seal a complete list of persons who were in attendance at the meeting with former Judge Jones as requested by the Court.

[6] JW was not invited to or present at Ms. Freeman's interview but received a copy of the partial audio recording (approximately three hours of the total six hours) from the U.S. Trustee in the course of discovery.  The U.S. Trustee claims a portion of the interview, covering the time frame from September 2021 to the present, was somehow not

July 30, 2024,[7] despite his prior interview of Ms. Freeman, recognizing his purported view that Ms. Freeman's prior voluntary interview was not "testimony" under the Regulations.[8]

15. Further to the above, it was understood by JW (and JW and its counsel believed in good faith) from the limited guidance available, that the Regulations only apply when a litigant makes a request upon federal judicial personnel and when testimony (or documents) is provided pursuant to that request.[9] Here, the meeting was **offered by counsel for former Judge Jones** in an effort to avoid testimony, and not by request of JW or under compulsion of any subpoena, order, or other demand of court. There was no sworn testimony provided nor was Judge Jones under any oath. In other words, JW and its counsel believed in good faith (and continue to believe) that the Regulations only govern "requests" (as defined in the Regulations) for "the appearance and testimony" of federal judicial personnel as a "witness[ ] . . . in [a] legal proceeding[ ]."

16. The Regulations were adopted by the Judicial Conference of the United States in March 2003 "to govern the judiciary's responses to subpoenas issued to federal judges and employees."[10] The Regulations are intended to "establish procedures for litigants to follow **in obtaining testimony** of judiciary personnel . . . **if they receive subpoenas**."[11] In order to locate

---

recorded. Counsel for JW understands the U.S. Trustee has notes regarding this interview, but the U.S. Trustee has not produced those notes on the basis of the work product privilege.

[7] The U.S. Trustee also asked questions related to Ms. Freeman's federal law clerk position during her deposition.

[8] *See* Excerpt of Audio Transcription of Elizabeth Freeman Interview, filed at Dkt. No. 222-1 at 15:8-11; *id.* at 39:7-14.

[9] The Regulations are an internal policy document designed to govern actions of the federal judiciary. *See* Regulations § 820(e) ("***These regulations are intended only to govern the internal operation of the federal judiciary*** and are not intended to create, do not create, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable in law or equity against the United States or against the federal judiciary or any court, office, or personnel of the federal judiciary.") (emphasis added).

[10] *See* Report of the Proceeding of the Judicial Conference of the United States (March 18, 2003), at p. 9, available at: https://www.uscourts.gov/file/2133/download.

[11] *Id.* (emphasis added).

the Regulations, a litigant can go to the "Judiciary Policies" website of the United States Courts and click on the link for "Subpoena Regulations":[12]

**Other policies**

- Bankruptcy Case Policies
- Cameras in the Courtroom Policy
- Confidentiality Regulations for Pretrial Services Information
- Court Interpreting
- Court Reporting
- Federal Tort Claims Against Federal Judiciary Personnel
- Garnishment Regulations
- Judiciary Staff Travel Regulations
- Portable Communication Devices in the Courthouse
- Rules Committee Procedures
- Subpoena Regulations
- Trustee Payments Under 11 U.S.C. § 330(e)
- U.S. Courts Design Guide

17. The "Subpoena Regulations" website further emphasizes the intention of the regulations:[13]

---

[12] *See* Judiciary Policies, available at: https://www.uscourts.gov/rules-policies/judiciary-policies.

[13] *See* Regulations, available at: https://www.uscourts.gov/rules-policies/judiciary-policies/subpoena-regulations.

> ## Subpoena Regulations
>
> *These regulations govern responses to subpoenas issued to federal judges and judiciary employees seeking either documents or testimony. They establish an administrative process for subpoena requests, impose general limitations on the nature of responses, and direct agency employees not to comply with subpoenas that are not approved through the administrative process.*
>
> The regulations are principally procedural in nature and do not interfere with substantive decisions by individual courts and officers as to the availability of official documents and testimony. For example, the regulations provide that for a subpoena directed to a judge or a member of a judge's personal staff, the judge is the official authorized to determine the proper substantive response to the subpoena. For a subpoena directed to a court unit or office, the determination would be assigned to the head of the unit or office, in consultation with the chief judge of the court, when appropriate. The regulations were endorsed by the Judicial Conference in 2003.
>
> Subpoena Regulations (pdf) (*Guide to Judiciary Policy*, Vol. 20, Ch. 8)

18. The Regulations themselves also make clear that they are intended to govern official requests for testimony from federal judicial personnel either in the performance of their official duties or by virtue of their official status.[14] The Regulations expressly do not apply to proceedings "in which federal judicial personnel are to testify while in leave or off-duty status as to matters that do not arise out of the performance of official duties" and are not intended to "deny federal judicial personnel access to the courts as citizens in their private capacities on off-duty time."[15]

19. Further, the Regulations were promulgated to:

    (1)    conserve the time of federal judicial personnel for conducting official business;

---

[14] Regulations § 810.10. The Regulations also govern subpoenas requesting documents or other records. JW has not sought any such documents or records from former Judge Jones whether under subpoena or otherwise, and JW has not otherwise received any.

[15] *Id.* § 810.40.

(2)　　minimize the involvement of the federal judiciary in issues unrelated to its mission;

(3)　　maintain the impartiality of the federal judiciary in disputes between private litigants;

(4)　　avoid spending the time and money of the United States for private purposes; and

(5)　　protect confidential and sensitive information and the deliberative processes of the federal judiciary.[16]

JW's meeting with former Judge Jones did not run afoul of any of the purposes behind the regulations because former Judge Jones offered the meeting to JW (thus, JW submits that the first four purposes were not implicated), and his counsel established as ground rules for the meeting that he would not speak on any privileged or deliberative process information.  JW submits (and believes in good faith) that the Regulations were not meant to deprive JW from receiving information critical to its defense that was voluntarily offered by former Judge Jones (even as a former federal judicial employee) without any conduct that interferes with the purposes of the Regulations.

20.　　As stated, the Regulations govern "request[s] . . . for testimony or production of records."[17]  While the definition of both a "request" and "testimony" are broad, the parties understood and believed that the intent behind the Regulations was to establish uniform purposes for federal judicial personnel to respond to *formal* requests ("[a]n order, subpoena, or other demand of a court, or administrative or other authority, of competent jurisdiction, under color of law . . .") for *sworn* testimony ("[a]ny written or oral statement in any form by a witness . . . during discovery or similar proceedings . . . ").[18]  While a "request" does include "any other

---

[16] Regulations § 810.10(b).

[17] Regulations § 830(a).

[18] Regulations § 810.30.

request by whatever method," such request must be for "appearance and testimony of federal judicial personnel as [a] witness[ ] . . . in [a] legal proceeding[.]"[19] Thus, JW in good faith believed that the meeting did not fall within the purview of the Regulations because JW did not make the request and, in the meeting, former Judge Jones did not "appear[ ] and [provide] testimony" as a "witness," nor can JW use former Judge Jones's statements at the meeting in these proceedings or otherwise.[20]

21. As referenced above, the informal meeting between former Judge Jones and JW was not done pursuant to or under any subpoena or request from JW and it did not seek any testimony from former Judge Jones. The parties made that clear at the hearing before this Court on July 16, 2024 where they announced that the subpoenaed deposition of former Judge Jones would be postponed pending this Court's consideration and ruling on the topics for former Judge Jones's sworn testimony in response to the subpoenas issued by JW and the U.S. Trustee. While those subpoenas seeking deposition testimony clearly fall within the Regulations, the invitation by counsel for former Judge Jones to JW (and separately to the U.S. Trustee) to meet with former Judge Jones, respectfully, does not: there was not any "order, subpoena, or other demand of a court . . . of competent jurisdiction, under color of law, or any other request by whatever method . . . for the **appearance and testimony of** [former Judge Jones as a] federal judiciary personnel as [a] **witness[ ]** to **matters arising out of the performance of [his] official duties**, in legal proceedings."[21] In responding to former Judge Jone's invitation to meet, JW neither sought

---

[19] *Id.*

[20] "In the context of a judicial proceeding, a 'witness' means one who is called to testify or give evidence in a cause before a court, *i.e.*, one who testifies to what they have seen, heard, or otherwise observed, and who has knowledge of a fact or occurrence sufficient to testify with respect to it. As otherwise defined, a 'witness' is one from whom testimony is adduced and whose testimony or statements on relevant facts are in some way brought to the attention of the court and jury or trier of fact." 98 C.J.S. Witnesses § 1 (2024).

[21] Regulations § 810.30 (emphasis added).

nor requested Judge Jones to appear or testify as a witness in any legal proceeding. To the contrary, JW knew that the conversation was just that: a conversation. Indeed, at the outset of the conversation, Mr. Hardin acknowledged his understanding that former Judge Jones was not going to discuss anything that former Judge Jones did not wish to discuss. The meeting was not recorded, transcribed, sworn, under oath, or in any way, shape, or form any type of witness statement that could be used in any legal proceeding for any purpose. Any formal deposition testimony done in accordance with and pursuant to any subpoena would only occur if and when authorized by this Court and subject to whatever limitations this Court deems appropriate under the Regulations.

22. Respectfully, JW submits that neither the agreed postponement of the subpoenaed deposition nor the Regulations govern (or prohibit) former Judge Jones from voluntarily offering a conversation with any party—whether JW, the U.S. Trustee, or otherwise—at any time. Never would the parties be so blatant as to run afoul of this Court's directive to postpone the subpoenaed deposition if they believed the Regulations applied to this voluntary offer by former Judge Jones for a meeting. JW and its counsel believe in good faith that they abided by their commitment to this Court to postpone the deposition pending a ruling from this Court on the topics submitted by JW under the Regulations, and that JW did not violate the Regulations by having a discussion with former Judge Jones, for the reasons explained above.

Dated: August 6, 2024

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
William Greendyke (SBT 08390450)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Paul Trahan (SBT 24003075)
Emily Wolf (SBT 24106595)
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
paul.trahan@nortonrosefulbright.com
emily.wolf@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES, LLP**

*/s/ Russell Hardin, Jr.*
Russell Hardin, Jr. (SBT 08972800)
Leah M. Graham (SBT 24073454)
Jennifer E. Brevorka (SBT 24082727)
Emily Smith (SBT 24083876)
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com

*Counsel for Jackson Walker LLP*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 6, 2024, I caused a copy of the foregoing response to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service, and by e-mail to counsel for David Jones: benjaminfinestone@quinnemanuel.com and by email to counsel for the United States Trustee as set forth below:

Laura Steele (Laura.Steele@usdoj.gov)
Pat S. Layng (Pat.S.Layng@usdoj.gov)
Millie Aponte Sall (Millie.sall@usdoj.gov)
Aubrey L. Thomas (Aubrey.thomas@usdoj.gov)
Vianey Garza (Vianey.Garza@usdoj.gov)
Alicia Barcomb (Alicia.Barcomb@usdoj.gov)

                                                    */s/ Jason L. Boland*