United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 16, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 23-645 |
| **Professional Fee Matters Concerning the** § | |
| **Jackson Walker Law Firm** § | |

## MEMORANDUM OPINION

At issue in this case is whether Jackson Walker, LLP ("*Jackson Walker*") and its counsel Jason L. Boland ("*Mr. Boland*") of Norton Rose Ful Bright US LLP, Russell Hardin, Jr. ("*Mr. Hardin*") of Russell Hardin & Associates, and former United States Bankruptcy Judge David R. Jones ("*Mr. Jones*") and his counsel Benjamin I. Finestone ("*Mr. Finestone*") of Quinn Emanuel Urquhart & Sullivan, LLP are in violation of the The Guide to Judiciary Policy Volume 20, Chapter 8 (the "*Judiciary Regulations*")[1] and this Court's Order[2] with respect to a recent interview Mr. Jones gave to Jackson Walker and its attorneys, and whether or not they should be held in civil contempt or sanctioned pursuant to this Court's inherent authority.

Following the issuance of this Court's show cause order for Jackson Walker, Mr. Boland, Mr. Hardin, Mr. Jones and Mr. Finestone, this Court held a hearing on August 7, 2024, and for the reasons stated herein, summarizes its findings as follows: (1) the Court finds that no party is in contempt, (2) the Court narrowly finds that Jackson Walker, Mr. Boland, Mr. Hardin, and Mr. Finestone, have not acted in bad faith and will not be sanctioned pursuant to this Court's inherent authority, and (3) the Court finds that Mr. Jones has acted in bad faith, and will be ordered, as a

---

[1] Guide to Judiciary Policy Volume 20, Chapter 8, § 810.10(a).(In the case of a request directed to a former . . ., bankruptcy judge, . . ., or directed to a former member of a former judge's personal staff who is no longer a court employee and thus is not covered by § 840(b)(1) or (b)(3), the determining officer will be the chief judge of the court on which the former judge previously served).
[2] ECF Nos. 153.

sanction, to complete 7.5 hours of ethics related continuing legal education approved by the State Bar of Texas.

## I. BACKGROUND

1. On December 9, 2023, this Court commenced the instant Miscellaneous Proceeding in seventeen cases initially identified by the United States Trustee for the Southern District of Texas, Region 7, where it had filed motions seeking relief from orders approving any applications for compensation and reimbursement of expenses filed by Jackson Walker, LLP ("*Motions for Relief from Final Judgment*"). [3]

2. On December 21, 2023, this Court issued its "Report and Recommendation To The United States District Court That The United States Trustee's Motion To Withdraw The Reference Be Denied."[4]

3. On February 26, 2024, this Court issued its "First Amended Comprehensive Scheduling, Pre-Trial & Trial Order."[5] Discovery commenced on May 15, 2024.

4. As of March 29, 2024, the United States Trustee has filed thirty-five Rule 60 Motions in the following cases which have been transferred to the instant Miscellaneous Proceeding for all pre-trial discovery pursuant to the Order issued by this Court:[6]

5. On June 26, 2024, the Court received an ex-parte electronic communication (the "*Communication*") from Mr. Jones "requesting guidance from this Court under Judiciary Policy, Volume 20, Chapter 8, regarding a June 25, 2024, Notice of Deposition ("*Notice of Deposition*") from Jackson Walker in connection with the fee matters initiated by the United States Trustee."[7]

6. On June 27, 2024, the Court issued an order declining Mr. Jones' request for *ex-parte* relief and instead granted him leave to file an appropriate motion.[8]

7. On July 1, 2024, Jackson Walker filed a single matter self-styled as "Emergency Motion of Jackson Walker LLP For Entry of an Order (I) Establishing Deadlines With Respect To The June 27, 2024 Order and (II) Granting Related Relief" (the "*Emergency Motion*"). [9]

8. On July 1, 2024, the Court issued an order setting a hearing on the Emergency Motion.

---

[3] ECF No. 1.
[4] ECF No. 44.
[5] ECF No. 76.
[6] ECF No. 1.
[7] ECF No. 142.
[8] ECF No. 141.
[9] ECF No. 145.

9. On July 1, 2024, rather than filing a motion as set forth in paragraph 5 *supra*, Jackson Walker and Mr. Jones entered into a stipulation resolving the Emergency Motion wherein "David R. Jones has agreed, and is hereby authorized, to provide testimony via a deposition on July 18, 2024, or such other date as mutually agreeable, subject to any objections and privileges that David R. Jones may raise at any such deposition, which objections and privileges are preserved (the "*Joint Stipulation*").[10]

10. On July 2, 2024, the Court signed the Joint Stipulation.[11]

11. On July 3, 2024, the Court issued its Memorandum Opinion and Order vacating the Joint Stipulation and setting a hearing.[12]

12. On July 10, 2024, Jones filed a "Notice of Request For Records and Testimony Of David R. Jones" notifying the Court of the "United States Trustee's Cross-Notice of Deposition, and Subpoena to Produce Documents, Information, or Objects" (the "*United States Trustee's Cross-Notice of Deposition*")[13]

13. On July 12, 2024, Jackson Walker filed "Jackson Walker LLP's Response In Support Of Written Statement To David R. Jones Required By Guide To Judiciary Policy, Volume 20."[14]

14. On July 16, 2024, this Court held an extensive hearing that spanned over approximately three- and one-half hours and at the conclusion of the hearing the Court stated that it was going to take the matter under advisement and ordered that the deposition be placed on hold until the Court entered its ruling.[15]

15. On August 2, 2024, the US Trustee filed his "*United States Trustee's Notice Of Jackson Walker's Recent Interview Of Former Judge Jones And Notice Of Additional Topic* (the "*Jones Interview*")."[16]

16. On August 3, 2024, the Court issued its "Order Setting In Person Show Cause Hearing ("the *Show Cause Order*")."[17]

---

[10] ECF No. 150 at 1, ¶ 1.
[11] ECF No. 150.
[12] *See* ECF Nos. 152, 153, 154.
[13] ECF No. 164-1.
[14] ECF No. 171.
[15] July 16, 2024 Min. Entry.
[16] ECF No. 215.
[17] ECF No. 217.

17. On August 6, 2024, Jackson Walker filed "Jackson Walker LLP's Response To (1) Order Setting In Person Show Cause Hearing And (2) United States Trustee's Notice Of Jackson Walker's Recent Interview Of Former Judge Jones And Notice Of Additional Topic"[18]

18. On August 7, 2024, the Court held a hearing and now issues its instant Memorandum Opinion and Order.

## II.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[19] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[20] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of the bankruptcy estates contained in this Miscellaneous Proceeding.[21] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[22]

This Court may only hear a case in which venue is proper.[23] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." All of the underlying cases contained within this Miscellaneous Proceeding have their principal place of business within the Southern District of Texas and therefore, venue of this proceeding is proper.

---

[18] ECF No. 234.
[19] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[20] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[21] *See* 11 U.S.C. § 157(b)(2)(A) & (O).
[22] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood), 825* F.2d 90, 97 (5th Cir. 1987)).
[23] 28 U.S.C. § 1408.

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[24] Pursuant to §840(a)(2) of the Judiciary Regulations, this Court, as Chief Bankruptcy Judge of the Southern District of Texas, is acting in its capacity as the Determining Officer. Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[25] Thus, this Court wields the constitutional authority to enter a final order here. Nevertheless, should the District Court find that the Bankruptcy Court did not have authority to enter final orders and judgments, this Court requests that the District Court convert this Memorandum Opinion into a Report and Recommendation.

### III.    ANALYSIS

The narrow issue presented is whether the Jones Interview falls under the Judiciary Regulations and whether Jackson Walker, Mr. Boland, Mr. Hardin, Mr. Jones or Mr. Finestone (the "*Parties*") are in civil contempt of this Court's orders or should otherwise be sanctioned pursuant to this Court's inherent authority. The only arguments presented by the Parties was that their interpretation of "interview" did not fall under the Judiciary Regulations, and that the Interview was similarly not a "legal proceeding" under the Judiciary Regulations, and therefore they are not in violation of any of the Court's orders and should not be held in civil contempt or otherwise sanctioned.[26]

---

[24] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[25] See, e.g., *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).

[26] August 7, 2024, Courtroom Minutes (hearing testimony from the Parties).

A. **The Judiciary Regulations**

Adopted by the Judicial Conference of the United States in March 2003, the Judiciary Regulations establishes policy, assigns responsibilities and prescribes procedures with respect to: (1) the production or disclosure of official information or records by the federal judiciary; and (2) the testimony of present or former judiciary personnel relating to any official information acquired by any such individual as part of that individual's performance of official duties, or by virtue of that individual's official status, in federal, state, or other legal proceedings covered by these regulations.[27]

Pursuant to § 820 of the Judiciary Regulations: "Federal judicial personnel may not provide testimony or produce records in legal proceedings except as authorized in accordance with these regulations."[28] Section 830 requires that requests for testimony or production of records must be accompanied by an affidavit containing (1) an explanation of the nature of the testimony or records sought; (2) the relevance of the testimony or records sought to the legal proceedings; and (3) the reasons why the testimony or records sought, or the information contained therein, are not readily available from other sources or by other means.[29] After a request has been made, the determining officer as identified in § 840 of the Judiciary Regulations may determine (1) whether the federal judicial personnel may be **interviewed**, contacted, or used as witnesses, including as expert witness, and (2) whether federal judicial records may be produced, and what, if any conditions will be imposed upon such interview, contact, testimony, or production of records.[30]

Importantly, the term "testimony" is defined as "[a]ny written or oral statement in any form by a witness arising out of the performance of the witness' official duties, including personal

---

[27] *U.S. Courts Guide to Judiciary Policy, Vol. 20, Ch. 8,* § 810.
[28] *Id.* at § 820(a).
[29] *Id.* at § 830(a).
[30] *Id.* at § 840; § 850 (emphasis added).

appearances and statements in court or at a hearing or trial, depositions, answers to interrogatories, affidavits, declarations, *interviews,* telephonic, televised, or videotaped remarks, or any other response during discovery or similar proceedings that would involve more than production of documents."[31]

### B. Mr. Jones' request for guidance under the Judiciary Regulations

On June 27, 2024, the Clerk of Court docketed correspondence from Mr. Jones seeking guidance related to the Judiciary Regulations.[32] On July 1, 2024, after the Clerk of Court docketed Mr. Jones' correspondence, Jackson Walker and Mr. Jones stipulated to his deposition testimony, which the Court, on July 2, 2024, ordered as stipulated.[33] On July 3, 2024 the Court vacated the Order approving the stipulation between Jackson Walker and Mr. Jones and entered a memorandum opinion stating, "parties cannot stipulate that the factors enumerated [in the Judiciary Regulations] are met without a formal weighing of these factors by the determining officer."[34] The Court also directed that "any questions that Jackson Walker, LLP intends to ask Mr. Jones during the July 18, 2024 scheduled deposition are subject to this Court's review and approval in accordance with [the Judiciary Regulations]."[35] Additionally, the Court set a hearing for July 16, 2024, and invited responses from the parties to decide if the Court, acting as the determining officer, would permit Mr. Jones's testimony (the "*Order Setting the July 16, 2024 Hearing*").[36]

On July 12 and 15, 2024, both Jackson Walker and the U.S. Trustee respectively, filed responses to the Order Setting the July 16, 2024 Hearing.[37] At the hearing on July 16, 2024, the

---

[31] *U.S. Courts Guide to Judiciary Policy, Vol. 20, Ch. 8,* § 810.30 (emphasis added).
[32] ECF No, 142.
[33] ECF No. 150.
[34] ECF Nos. 152, 153.
[35] ECF No. 152.
[36] ECF No. 154.
[37] ECF Nos. 171, 175.

US Trustee argued that some of the deposition topics—originally set out in Jackson Walker's subpoena—do not cover official information and thus do not implicate the Judiciary Regulations.[38] Counsel for Mr. Jones argued that the Court should deny approval under the Judiciary Regulations on virtually every topic.[39] At the conclusion of the hearing, the Court took the matter under advisement to determine, *inter alia*, the extent to which Mr. Jones would be permitted to provide testimony and produce documents.[40] Additionally, the Court admonished the parties stating that no parties may depose Mr. Jones until the Court issued its determination.[41]

### B. The U.S. Trustee's Notice

On August 2, 2024, the U.S. Trustee filed his "United States Trustee's Notice Of Jackson Walker's Recent Interview of Former Judge Jones and Notice of Additional Topic" (the "*Notice*")[42] advising the Court that, despite this Court's admonishment to the parties at July 16, 2024 hearing that no parties may obtain testimony regarding any previously listed deposition topic with Mr. Jones until the Court issued its determination, "on July 29 and 30, 2024, both counsel to Mr. Jones and counsel for Jackson Walker confirmed to the U.S. Trustee that Mr. Jones recently appeared for an interview conducted by Jackson Walker's counsel. On July 29, 2024, counsel for Mr. Jones also offered the US Trustee a similar 'off the record' interview."[43]

### C. The Show Cause Order

Upon receipt of the U.S. Trustee's Notice, the Court then issued its Show Cause Order to Jackson Walker, its counsel, Mr. Jones, his counsel, and all other persons who were present at this interview, along with their counsel, if any, to appear in person at the August 7, 2024 hearing.[44]

---

[38]
[39]
[40] July 16, 2024 Min. Entry.
[41] July 16, 2024 Min. Entry.
[42] ECF No. 219.
[43] ECF No. 152.
[44] ECF No. 217 at 2.

The Court further ordered that no later than 12:00 p.m. August 6, 2024, Jackson Walker and Mr. Jones must file, with the Clerk of Court, a complete list of persons who were in attendance at this interview with Mr. Jones, including their names, addresses, contact information, the reason they were present, and their connection with the instant Miscellaneous Proceeding and file under seal including, but not limited to, any and all documentation, audio and/or video recording of such interview, along with copies of any and all documents exchanged and/or produced.[45]

Finally, the Show Cause Order directed Jackson Walker, its counsel, and Mr. Jones and his counsel, to explain to this Court whether in fact the allegations raised in the U.S. Trustee's Notice regarding Mr. Jones's interview by Jackson Walker's counsel did in fact occur, and if so, explain to this Court the details of such interview, including, but not limited to why such an interview was conducted, who caused the interview to occur, when it occurred, where it occurred, how long it lasted, the specific questions asked and answers received, whether it was recorded or otherwise documented, whether any documents were exchanged, whether the U.S. Trustee or any other party-in-interest were invited to attend, and why Jackson Walker, its counsel, Mr. Jones and his counsel did not first seek leave of this Court to conduct such an interview prior to this Court issuing its ruling on the noticed deposition of Mr. Jones that was taken under advisement on July 16, 2024.[46] Furthermore, Jackson Walker, its counsel, Mr. Jones and his counsel were ordered to show cause why they are not in violation of Judiciary Regulations and this Court's Memorandum Opinion and Order, and should not be held in civil contempt or otherwise sanctioned pursuant to this Court's inherent authority.[47]

    **D.**    **Mr. Jones' Interview**

---

[45] *Id.*
[46] *Id.*
[47] *Id.* at 2-3.

At the August 7, 2024 hearing, Jackson Walker and Mr. Jones confirmed that in fact Mr. Jones, by and through his counsel, Mr. Finestone, offered to Jackson Walker that Mr. Jones sit for an interview which occurred on July 18, 2024 just two days after this Court questioned both Jackson Walker and the U.S. Trustee and entertained arguments on whether Mr. Jones should sit for a deposition noticed by Jackson Walker and cross-noticed by the U.S. Trustee on a wide range of topics the ("*Interview*").  The notes taken during the Interview and that were filed under seal as ordered by this Court, consist of forty-eight (48) pages (the "*Jackson Walker Notes*").[48] The first sixteen pages consist of more of an interpretation of the interview by the note taker in typed format ("*Part One*") and pages seventeen through twenty-eight consist of a summary of the Interview ("*Part Two*"). Pages twenty-nine through forty-four consist of handwritten notes ("*Part Three*"), and pages forty-five through and including forty-eight consist of an electronic email.[49] The Court will discuss each in turn.

### E.     The Jackson Walker Notes

The following pages of Part One, contains testimony that directly implicates § 850(a)(10).[50] Section § 850(a)(10) prohibits testimony . . . that would disclose information regarding the exercise of judicial or quasi-judicial responsibilities by federal judicial personnel in the decisional or deliberative process:[51] to wit: pages 1-10, 12, 14, 15 and 16. The following pages of Part Two, contains testimony that directly implicates § 850(a)(10), to wit: pages 17, 19, 20, 21, 23, 24, 25, and 26. The following pages of Part Three, contains testimony that directly implicates § 850(a)(10), to wit: at a minimum, pages 31-44. The remainder of the pages are illegible.

---

[48] ECF No. 236.
[49] ECF No. 236.
[50] *Guide to Judiciary Policy Volume 20, Chapter 8, § 810.10(a)(10).*
[51] *Id.*

The Court will now consider if any of the Parties are in contempt of this Court's orders or should otherwise be sanctioned pursuant to this Court's inherent authority.

### F. Whether Jackson Walker, Mr. Boland, Mr. Hardin, Mr. Jones, or Mr. Finestone should be held in contempt or otherwise sanctioned by this Court

As discussed, Jackson Walker, Mr. Boland, Mr. Hardin, Mr. Jones, and Mr. Finestone have been ordered to show cause as to why they should not be held in contempt or otherwise sanctioned by this Court pursuant to its inherent authority.[52] The Court will consider each in turn.

#### 1. Civil contempt

Contempt is "a willful disregard or disobedience of a public authority."[53] Bankruptcy Rule 9020(b) gives the Bankruptcy judge power to determine contempt after notice and hearing. To establish civil contempt, there must be a showing by clear and convincing evidence that: (i) a court order was in effect; (ii) the order required certain conduct by the respondent; and (iii) the respondent failed to comply with the order.[54] Willfulness on the part of the contemnor is not required.[55]

Upon careful review of this Court's order vacating the stipulation and setting a hearing on these matters at ECF No. 153, and this Court's oral order at the July 16, 2024, hearing, directing the parties to not depose Mr. Jones until this Court rendered a decision on the deposition topics, the Court finds that there was not, by clear and convincing evidence, a Court order in effect that unequivocally prohibited taking Jones' informal interview.[56] However, as discussed in greater detail

---

[52] ECF No. 217.
[53] *Black's Law Dictionary* (6th ed.).
[54] *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 401 (5th Cir.1987).
[55] *Dondero v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt., L.P.*), 2024 U.S. App. LEXIS 16019 n.2 (5th Cir. 2024) (citing *In re Highland Cap. Mgmt., L.P.*, 98 F.4th 170, 176 (5th Cir. 2024)). "Our finding was based on the bankruptcy court's requiring Dondero to reimburse Highland for its substantial attorneys' fees in litigating the contempt motion; the error was that those fees were incurred as a result of a lengthy evidentiary hearing the bankruptcy court conducted to determine Dondero's intent in violating the court's order. *Id.* at 173, 176. Intent does not matter except for criminal contempt sanctions, and the bankruptcy court erred in conducting a lengthy hearing on intent when it did not have authority to impose criminal contempt sanctions. *Id.* at 176-77."
[56] *See* ECF No. 153, July 16, 2024, Courtroom Minutes (oral order to not depose Mr. Jones).

*infra*, the Court notes that the fact that the stipulation was vacated, that a hearing was held, that the deposition topics were taken under advisement for consideration, and that this Court expressly ordered a deposition not to be taken, should have *strongly* made the parties question whether or not an informal interview was permitted in this case prior to this Court rendering a final determination under the Judiciary Regulations as determining officer. As discussed *infra*, the Court finds that the Parties knew they were standing on thin ice, and decided they would rather ask for forgiveness than permission as opposed to seeking further guidance or a comfort order clarifying what they knew was at best a legally questionable decision that would not have been approved by this Court had they sought clarification. The Court will next consider whether sanctions are appropriate pursuant to its inherent authority.

2. Inherent authority

This Court wields inherent authority, when supported by clear and convincing evidence, to sanction for bad faith behavior or willful abuse of the judicial process.[57] Section 105 of the Bankruptcy Code allows the bankruptcy court to issue any order that is "necessary or appropriate to carry out the provisions" of the Bankruptcy Code.[58] Consistent with the Supreme Court's decision in *Chambers*,[59] a bankruptcy court's authority under section 105 comports with its inherent power to sanction.[60]

---

[57] *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991).
[58] 11 U.S.C. § 105(a).
[59] *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991) (recognizing district courts' inherent power to sanction)
[60] *See, generally, Conner v. Travis County,* 209 F.3d 794 (5th Cir.2000); *see, e.g., In re Rainbow Magazine, Inc.,* 77 F.3d 278, 283–84 (9th Cir.1996) ("There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court. The inherent power is recognized in the statutory grant Congress has provided the bankruptcy courts." (citing § 105(a))); *In re Clark,* 223 F.3d 859, 864 (8th Cir.2000) (§ 105 gives bankruptcy courts broad power to implement provisions of bankruptcy code and to prevent abuse of bankruptcy process, which includes power to sanction for abuses of process (cited case omitted)).

The Court will consider whether each of the Parties' behavior amounted to bad faith or willful abuse of the judicial process in turn.

### a. Whether Jones' conduct in this case amounted to bad faith or willful abuse of the judicial process

Here, the Court is first faced with whether or not Mr. Jones' conduct in this matter amounted to bad faith or a willful abuse of the judicial process. While, as discussed *supra*, there may not have been an unequivocal order from this Court prohibiting Mr. Jones from engaging in an informal interview with Jackson Walker, what is unequivocal is Mr. Jones' obligations under the Judiciary Regulations. Specifically, as discussed, section 820(a) of the Judiciary Regulations states as follows: "[f]ederal judicial personnel may not provide testimony or produce records in legal proceedings except as authorized in accordance with these regulations."[61] "Testimony" is defined in § 810.30 and includes any of the following:

> Any written or oral statement in any form by a witness arising out of the performance of the witness' official duties, including personal appearances and statements in court or at a hearing or trial, depositions, answers to interrogatories, affidavits, declarations, **interviews**, telephonic, televised, or videotaped remarks, or any other response during discovery or similar proceedings that would involve more than production of documents.[62]

Notably, *inter alia*, "interviews" are included amongst the types of communications that are prohibited under the Judiciary Regulations.[63] Mr. Jones attempted to argue that "interviews" as described in the Judiciary Regulations are only a reference to sworn testimony given at a deposition.[64] The Court finds this argument to not only be entirely without merit but made in bad faith. Mr. Jones, as a former judicial officer and former chief bankruptcy judge himself, is intimately familiar with the Judiciary Regulations. "Depositions" is listed separately as a type of testimony that

---

[61] Guide to Judiciary Policy Volume 20, Chapter 8.
[62] *Id. (emphasis added).*
[63] *Id.*
[64] ECF No. 255 at 99.

may not be given until this Court makes a determination.[65] Thus, to interpret "interviews" as only encompassing sworn testimony given at a deposition would render the term "interviews" meaningless and superfluous in the Judiciary Regulations.

The other Parties also attempted to argue that the Interview was not a "legal proceeding" under the Judiciary Regulations.[66] This argument is also, however, nonsensical, as the topics that were discussed at this Interview were the very same as those that this Court currently has under advisement in this proceeding in accordance with the Judiciary Regulations.[67] "Legal proceedings" as defined in § 810.30 of the Judiciary Regulations, includes, *inter alia*, "[a]ll pretrial, trial, and post-trial stages of all existing or anticipated judicial or administrative actions, hearings, investigations, cases, controversies, or similar proceedings…"[68] Clearly, this Interview falls into the pretrial stages of this proceeding, as it directly pertains to what is currently at issue and under advisement in this Court with respect to Mr. Jones' testimony. Furthermore, Mr. Jones by his own admission asserted at the hearing that this Interview was provided as an attempt to persuade Jackson Walker that no formal testimony was required.[69] Thus, even being as charitable as possible, this Interview undoubtedly constituted as an investigation under § 810.30.[70]

Notwithstanding the clear mandate that the Judiciary Regulations imposed on Mr. Jones, he unilaterally decided in flagrant contravention of his obligations to reach out to Jackson Walker in an attempt to persuade them to not follow through on taking his deposition.[71] Mr. Jones did so without notifying any other party in interest or this Court that it was his intention to do so. Mr. Jones, frankly, knew better. Mr. Jones knew what his obligations were and devised a contrived reading of the

---

[65] Guide to Judiciary Policy Volume 20, Chapter 8.
[66] ECF No. 255.
[67] *See* ECF No. 236.
[68] Guide to Judiciary Policy Volume 20, Chapter 8.
[69] ECF No. 255.
[70] Guide to Judiciary Policy Volume 20, Chapter 8, § 810.30.
[71] *Id.*

Judiciary Regulations to try to justify his own personal goals in avoiding the need to provide sworn testimony in this proceeding. Mr. Jones would rather ask for forgiveness than permission from this Court, something that this Court does not take well even on a normal day, much less in a proceeding as sensitive as this one. As such, this Court finds that Mr. Jones has, in bad faith, flouted his obligations under the Judiciary Regulations in this proceeding in an attempt to further his own goals.

Accordingly, as a sanction for bad faith pursuant to this Court's inherent authority, no later than September 16, 2024, David R. Jones must complete seven and one half (7.5) hours of ethics related continuing legal education approved by the State Bar of Texas and file a certificate of compliance with the Clerk of Court when said ethics training is complete.[72]

To the extent the United States Trustee wishes to add a topic to its cross-noticed deposition of Mr. Jones with respect to the Jones Interview, the United States Trustee, other than topics prohibited by the Guide to Judiciary Policy Volume 20, Chapter 8., as to be determined by this Court, may inquire about what was asked and how Mr. Jones responded.

The Court will now consider whether or not Jackson Walker, Mr. Boland, Mr. Hardin, or Mr. Finestone should be sanctioned for bad faith in this proceeding.

### b. Whether Jackson Walker, Mr. Boland, Mr. Hardin, or Mr. Finestone's conduct in this proceeding amounted to bad faith or an abuse of the judicial process

The key difference between Mr. Jones and Jackson Walker, Mr. Boland, Mr. Hardin, and Mr. Finestone, is that the Judiciary Regulations do not impose any direct requirement on the requester of information to affirmatively refrain from contacting or receiving information from the former judiciary employee, nor do they impose a requirement on the requestee's counsel.[73] The Judiciary

---

[72] *In re Luttrell*, 749 F. App'x 281 (5th Cir. 2018) (imposing 3 hours in ethics CLE courses for unbecoming attorney behavior); Martinez v. Allstate Vehicle & Prop. Ins. Co., No. 5:23-CV-90, 2023 WL 9383270 (S.D. Tex. Dec. 21, 2023), report and recommendation adopted, No. 5:23-CV-90, 2024 WL 289029 (S.D. Tex. Jan. 25, 2024) (same).
[73] Guide to Judiciary Policy Volume 20, Chapter 8.

Regulations almost entirely concern the obligations of the former judiciary employee that has received a request and the determining officer's role in assessing and ruling on the request.[74] The only obligations imposed on the requesters of information pertain to the procedural requirements on how requests should be made to allow the determining officer to decide what information can be disclosed.[75] While the Judiciary Regulations prohibit Mr. Jones from revealing information that is potentially confidential or sensitive prior to a determination by this Court, by its plain terms, the Judiciary Regulations do not prohibit other parties from listening to freely given testimony.[76]

With this said, the Court simultaneously does not take well and strongly admonishes Jackson Walker, Mr. Boland, Mr. Hardin, and Mr. Finestone's fast and loose approach to participating in an interview that touches upon the same topics and subject matter that this Court is currently has under advisement. With the amount of legal talent involved in this case, and the sensitive nature of this proceeding, it is incredulous to this Court that well-seasoned attorneys would play with fire like this and proceed on such a legally dubious course of action. Notwithstanding decades of experience between these attorneys, they decided to play fast and loose with the Judiciary Regulations and this Court's authority. This Court expects a more conservative and cautious approach from all attorneys involved and is deeply disappointed. These parties, like Mr. Jones, also presented arguments concerning what constitutes an interview or a legal proceeding under the Judiciary Regulations,[77] and as stated *supra*, the Court finds these arguments to be extremely contrived at best. Further actions that undermine and circumvent this Court's authority as determining officer *will not be tolerated* and any further incursion on this Court's authority as determining officer will result in severe sanctions. However, having wholistically analyzed all of the evidence received at the hearing, the arguments of

---

[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] ECF No. 255.

counsel, the applicable law, and the Judiciary Regulations, the Court *narrowly* finds that Jackson Walker, Mr. Boland, Mr. Hardin and Mr. Finestone's conduct did not amount to bad faith.

## IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED August 16, 2024

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge