IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>**PROFESSIONAL FEE MATTERS CONCERNING THE JACKSON WALKER LAW FIRM** | Case No. 23-00645 |

**UNITED STATES TRUSTEE'S EXPEDITED MOTION TO COMPEL DISCOVERY**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Expedited relief has been requested. If the Court considers the motion on an expedited basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the expedited consideration is not warranted, you should file an immediate response.**

*Relief is requested on or before August 29, 2024.*

TO THE HONORABLE JUDGE EDUARDO V. RODRIGUEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), moves for an order compelling discovery (the "Motion to Compel") from Peter Jarvis ("Mr. Jarvis") and Jacqueline Harvey ("Ms. Harvey") (collectively, Mr. Jarvis and Ms. Harvey are the "Respondents"), with respect to the pending discovery requests identified below (the "Discovery Requests"). Jackson Walker LLP ("Jackson Walker") hired the Respondents and Holland & Knight LLP ("Holland & Knight") as ethics experts regarding the connections between Elizabeth

1

Freeman ("Ms. Freeman"), a former Jackson Walker partner, and former Judge David R. Jones ("Judge Jones"). In support of this motion, the U.S. Trustee states as follows:

## SUMMARY

1. Jackson Walker made decisions not to inform clients, parties in interest, and courts of its partner's relationship with Judge Jones. As justification for those decisions, Jackson Walker intentionally disclosed some of its counsel's advice in multiple responses filed with the Court. Jackson Walker also forwarded at least two opinion letters drafted by the Respondents to third parties, including counsel for its former partner, which it has now produced in discovery to the U.S. Trustee. And Jackson Walker repeatedly allowed counsel for its former partner to communicate directly with one of the Respondents regarding their conclusions. Jackson Walker now seeks to improperly withhold communications regarding the advice upon which it relied and continues to rely. The Respondents are, and were at all relevant times, attorneys at the law firm of Holland & Knight. Jackson Walker hired the Respondents and Holland & Knight as ethics experts regarding the connections between Ms. Freeman Judge Jones.

2. The U.S. Trustee's respective Discovery Requests served individually on the Respondents, require the Respondents to appear and be deposed and to produce:

   1. *All documents provided to You and/or Holland & Knight by Jackson Walker in connection with Jackson Walker's engagement of You and/or Holland & Knight in connection with the Relationship.*

   2. *All documents received by You and/or Holland & Knight in connection with Your engagement by Jackson Walker to assist in matters related to the Relationship.*

   3. *All documents relied on by You and/or Holland & Knight in providing any advice to Jackson & Walker* [sic] *regarding the Relationship.*

   4. *All documents relied on by You and/or Holland & Knight in providing any advice to Jackson & Walker regarding Freeman.*

5. *All documents between You and/or Holland & Knight and Jackson & Walker relating to the Relationship, including the Judicial Disqualification Matter Letter and any responses to that Letter thereto from You and/or Holland & Knight.*

6. *All documents between You and/or Holland & Knight and Jackson & Walker relating to Freeman.*

7. *All agreements between You and/or Holland & Knight and Jackson & Walker in which You and/or Holland & Knight agreed to provide advice to Jackson & Walker in connection with the Relationship and/or Freeman.*

3. Because any attorney-client or other privilege has been voluntarily and repeatedly waived by Jackson Walker and because Jackson Walker has put and continues to put the advice of counsel at issue, the Respondents should be required to comply with the Discovery Requests.

## FACTUAL BACKGROUND

4. On October 13, 2023, Judge Jones announced his resignation from the bench following the exposure of a previously undisclosed, years-long intimate relationship with Ms. Freeman, who was a partner at Jackson Walker during a time when it regularly appeared in cases presided over or mediated by Judge Jones.

5. On November 2 and 3, 2023, the U.S. Trustee filed substantially similar motions seeking relief from judgment under Rule 60(b)(6) (the "Rule 60 Motions") with respect to Jackson Walker's retention and compensation applications in numerous cases (the "Affected Cases"). On December 8, 2023, the Court opened the present Miscellaneous Proceeding to consolidate discovery and pre-trial matters for the Rule 60 Motions in the Affected Cases.

6. On or about November 13, 2023, Jackson Walker filed a preliminary response to the Rule 60 Motions. *See, e.g.*, Case No. 20-32519, ECF No. 3184 (the "Preliminary Response"). Jackson Walker asserted in the Preliminary Response that: (i) it had not been aware of any relationship between Judge Jones and Ms. Freeman until March 2021; (ii) at that time, Ms. Freeman advised Jackson Walker her intimate relationship with Judge Jones had terminated; and

3

(iii) Jackon Walker did not discover Ms. Freeman and Judge Jones were engaged in an ongoing relationship until 2022. *See* Preliminary Response at 4–5.[1] In support of these assertions, Jackson Walker disclosed that on March 8, 2021, it retained Mr. Jarvis and Holland & Knight (the "Freeman Engagement") as outside ethics counsel, "to ensure that [Jackson Walker] understood its legal and ethical obligations." *Id.* at 4. Ms. Harvey assisted Mr. Jarvis with this engagement.

7. Jackson Walker's Preliminary Response includes a draft letter (the "August Letter") dated "August __,2021," from Jackson Walker to Mr. Jarvis that first purportedly sets forth the state of Jackson Walker's knowledge in March 2021. The August Letter additionally sets forth "**Recommended Actions**" based on that purported knowledge, as well as Jackson Walker's request for Mr. Jarvis's legal opinion approving the Recommended Actions as "appropriate and sufficient to address these circumstances, from the standpoint of avoiding disqualification of Judge Jones or Jackson Walker when we appear in cases before him and in terms of our own ongoing compliance with applicable ethical requirements." *Id.* The Preliminary Response reveals the Respondents' legal advice to Jackson Walker by representing that Mr. Jarvis, "concluded that the measures taken by Jackson Walker, based on the facts stated in the letter, which were confirmed by Ms. Freeman, were sufficient to meet Jackson Walker's obligations." *Id.* at ¶ 15. The Preliminary Response further discloses that in 2022, Jackson Walker "reached out again" to Mr. Jarvis regarding the Freeman Engagement, who "discussed the situation" with Ms. Freeman's counsel, Tom Kirkendall ("Mr. Kirkendall"). *Id.*

8. Jackson Walker continued to put its communications with the Respondents at issue by arguing in its response to the U.S. Trustee's amended Rule 60 Motions that it acted reasonably

---

[1] Citations to the Preliminary Response refer to the version of that document filed in *In re Neiman Marcus Group LTD LLC*, Case No. 20-32519, ECF No. 3184. The versions of the Preliminary Response filed in the other Affected Cases are in all relevant respects identical.

4

at all times and took reasonable remedial measures based on the Respondents' advice. *See, e.g.*, Case No. 20-32519, ECF No. 3234 (the "Amended Response") at ¶¶ 1–2, 10, 37–39, 52–53, 77, 79, 144, 160, 183, and 186.

9. On November 21, 2023, Mr. Kirkendall appeared for a voluntary interview with the U.S. Trustee ("Interview"). There was no agreement that the Interview would be confidential, and there was no assertion that any information disclosed was privileged. Mr. Kirkendall has been practicing law for more than 40 years.

10. Mr. Kirkendall disclosed at the Interview that Ms. Freeman retained him on April 8, 2022, to represent her regarding Jackson Walker and the implications of her relationship with Judge Jones.

11. As set forth in the attached correspondence dated April 22 to 25, 2022, it appears Jackson Walker may have produced to Mr. Kirkendall a September 1, 2021, finalized version of the August Letter (the "September Letter") relaying to Mr. Jarvis the purported facts and "**Recommended Actions**." *See* **Exhibit A** attached. Jackson Walker's counsel has represented to the U.S. Trustee that the September Letter is not identical to the August Letter it attached to the Preliminary Response.

12. As evidenced by the attached correspondence, Jackson Walker also produced to Mr. Kirkendall—an attorney who does not represent the firm but instead represents someone who, at a minimum, was potentially adverse to Jackson Walker—Mr. Jarvis's response opinion letter dated September 22, 2021. *Id.* In doing so, Jackson Walker further conveyed to Mr. Kirkendall the September 24 email analysis of Mr. Jarvis's opinion letter conducted by Jackson Walker's then-general counsel, Patrick R. Cowlishaw. *Id.*

13.     Mr. Kirkendall disclosed at the Interview that he participated in five conference calls with Mr. Jarvis from May 10, 2022, through June 28, 2022.[2]  Mr. Kirkendall shared that Mr. Jarvis concluded in his review that Jackson Walker had to disclose the relationship between Ms. Freeman and Judge Jones.  Further, as evidenced by a privilege log Mr. Kirkendall provided to the U.S. Trustee, a second opinion memorandum to Jackson Walker drafted by the Respondents and dated June 2, 2022, was provided to Mr. Kirkendall—an attorney representing Ms. Freeman.  *See* **Exhibit B** attached.  At his deposition, Mr. Kirkendall testified Matt Cavenaugh, a Jackson Walker partner, gave him the Respondents' September 22, 2021, and June 2, 2022, opinion letters.

14.     On June 4, 2024, the U.S. Trustee served subpoenas for testimony and documents on the Respondents. *See* **Exhibits C, D** attached.  The Respondents are represented by Attorneys Jose Casal and Joseph Franco of Holland & Knight.

15.     On June 18, 2024, the Respondents served the U.S. Trustee with objections to his subpoenas.  *See* **Exhibits E, F** attached.  The basis for the objections is that Jackson Walker seeks to preserve all available privileges, including the attorney-client privilege.  Because the subpoena seeks documents that Jackson Walker avers implicate the attorney-client privilege claimed in the privilege log attached as **Exhibit G**, the Respondents have refused to turn over subpoenaed documents.[3]  The U.S. Trustee and counsel for the Respondents initially agreed to reserve the week of July 22, 2024, for the depositions of the Respondents if the objections could be resolved.  The U.S. Trustee met and conferred in good faith with Jackson Walker to resolve the discovery objections via written communications and via videoconferences.

---

[2] Documents produced by Mr. Kirkendall show that he included Ms. Harvey on the meeting invitations to four of the conferences.

[3] Although the Respondents' objections stated that Jackson Walker desired to "preserve all available privileges[,]" Jackson Walker has only asserted the attorney-client privilege. *See* **Exhibit G**.  Claims of privilege on any other ground have been waived.  *See* Fed. R. Civ. P. 26(b)(5).

16. For example, on June 24, 2024, the U.S. Trustee sent correspondence to Jackson Walker. The correspondence sought in part to clarify whether Jackson Walker seeks to assert an advice of counsel defense based upon its references to its retention and consultation with the Respondents in various pleadings filed in this matter, and whether Jackson Walker intended to call Mr. Jarvis or Ms. Harvey as witnesses. *See* **Exhibit H** attached.

17. The U.S. Trustee and Jackson Walker further discussed the U.S. Trustee's concerns regarding the disclosure of information held by the Respondents via videoconference held July 2, 2024. Jackson Walker stated that its written response was forthcoming.

18. Jackson Walker replied via letter on July 3, 2024. *See* **Exhibit I** attached. In that correspondence, Jackson Walker stated it does not intend to assert advice of counsel as a defense and does not currently intend to call Mr. Jarvis or Ms. Harvey as witnesses. *Id.* at 1 ("We will promptly advise you if that position changes."). However, Jackson Walker refused to remove assertions in its responses that put its communications with the Respondents at issue. *Id.* at 1 ("Jackson Walker declines to agree to strike any of the statements contained in your chart attached to your June 24, 2024 letter.").

19. On July 5, 2024, the U.S. Trustee sent a second letter to Jackson Walker seeking production of a privilege log and copies of its retainer agreements with Holland & Knight. *See* **Exhibit J** attached. The U.S. Trustee again conferred with Jackson Walker via videoconference on July 12, 2024. Jackson Walker stated that it continues to assert the attorney-client privilege regarding its interactions with the Respondents. Jackson Walker stated that it would produce a privilege log to the U.S. Trustee the week of July 15, 2024, and that retainer agreements may also be designated as privileged records.

7

20. Jackson Walker did not produce a privilege log the week of July 15, 2024. Jackson Walker, however, did produce to the U.S. Trustee on July 15, 2024, Mr. Jarvis's September 22, 2021, opinion letter. *See* **Exhibit K** attached. The first sentence of that September 22 letter referenced the September Letter from Jackson Walker that has never been produced to the U.S. Trustee.

21. During another videoconference on July 24, 2024, Jackson Walker's counsel stated that its client was reviewing the privilege log, and it would be produced either later that day or the next day. Counsel for the U.S. Trustee followed up in writing via email later that day asking for the long-anticipated privilege log. *See* **Exhibit L** attached.

22. Counsel for Jackson Walker produced the privilege log attached as **Exhibit G** at 4:58 p.m. CST on Friday, July 26, 2024. Along with the privilege log, it provided the U.S. Trustee with the letter attached as **Exhibit M**. Among other things, the July 26, 2024, letter states, "[t]he letter attached to Jackson Walker's pleadings . . . was not the exact letter that Jackson Walker ultimately sent to Mr. Jarvis. . . ." *Id.* at 1.

23. On August 7, 2024, Jackson Walker produced to the U.S. Trustee the opinion memorandum dated June 2, 2022, from Holland & Knight to Jackson Walker that Jackson Walker previously withheld under an assertion of attorney client privilege. Jackson Walker marked the June 2, 2022, opinion letter "Confidential" pursuant to the Stipulated Protective Order entered July 30, 2024 [ECF No. 202].[4]

24. Counsel for the U.S. Trustee has specifically raised with Jackson Walker's counsel the fact that the September 22, 2021, and June 2, 2022, opinion letters have been produced by it in

---

[4] Because it has been marked "Confidential," it is not being attached to this motion.

discovery, and Jackson Walker has not asserted that the disclosures were inadvertent or otherwise sought to claw back the documents. Jackson Walker has clawed back other unrelated documents.

## ARGUMENT

25. Although no party has filed a motion to quash, the Respondents have informally refused to comply with the Discovery Requests based on their contention that all communications involving Holland & Knight, Mr. Jarvis, or Ms. Harvey are protected by "various privileges[.]" Jackson Walker has now made it clear that the only privilege being asserted is the attorney-client privilege. *See* **Exhibit G**. This contention is misplaced.

26. To the extent any attorney-client privilege applied to the documents sought by the Discovery Requests, it has been waived by Jackson Walker's or the Respondents' voluntary disclosure of communications to and from the Respondents, whether twice to Mr. Kirkendall, *see* **Exhibits A, B**, in the Preliminary Response filed in November, in the Amended Response filed in May, or in discovery to the U.S. Trustee. Further, Jackson Walker has waived or is estopped from asserting a privilege that it attempts to use as both a sword and shield. *See Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("That [sword-and-shield] analogy is a product of our parallel reasoning behind the doctrine of implied waiver: a party may not use privileged information both offensively and defensively at the same time."); *see also Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009) (holding work product privilege is also waived by sword-and-shield use).

**A.   The Attorney-Client Privilege Has Been Waived.**

27. The attorney-client privilege "'is not favored by federal courts' and 'is to be strictly confined within the narrowest possible limits consistent with the logic of its principle,'" because it "interferes with the 'truth seeking mission of the legal process[.]'" *United States v. Aromony*,

9

88 F.3d 1369, 1389 (4th Cir. 1996) (quoting *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) and *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986)). Accordingly, the burden of demonstrating that a communication is protected by the attorney-client privilege rests with the party asserting the privilege. *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984). This is done by a party "prov[ing]: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).

28. Attorney-client communications, however, are not privileged when the communications pass beyond the attorney and the client. *See, e.g.*, *El Paso Co.*, 682 F.2d at 539. This breach can be caused by the publication of the communications themselves or attorney statements or documents that disclose the communications. *Id.* at 439 (citing *Indus. Clearinghouse, Inc. v. Browning Mfg.*, 953 F.2d 1004, 1007 (5th Cir. 1992)).

29. Subject matter waivers are governed by Rule 502(a) of the Federal Rules of Evidence, which states:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Under this rule, a party cannot make selective representations and presentations. Fed. R. Evid. 502, Advisory Committee Notes (stating that under 502(a) "a party that makes selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation"). Ultimately, the size or breadth of the information revealed does not matter because

10

the "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) (quoting *Indus. Clearinghouse*, 953 F.2d at 1007; *see also* Fed. R. Evid. 502(a); Fed. R. Bankr. P. 9017 (incorporating the Federal Rules of Evidence). This waiver extends to all communications within the same subject matter, not just the issue therein. *Sec. & Exch. Comm'n v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006).

30. In this case, Jackson Walker has disclosed the August Letter. Preliminary Response at Exhibit 1.[5] It also produced in discovery Mr. Jarvis's September 22, 2021, opinion letter. *See* **Exhibit K**. Further, the Respondents told Mr. Kirkendall in June of 2022 their conclusions with respect to the Freeman Engagement, and Jackson Walker provided to him—counsel for Ms. Freeman—copies of the September 21, 2021, and June 2, 2022, opinion memoranda. Finally, Jackson Walker provided the U.S. Trustee with a copy of the June 2, 2022, opinion memorandum on August 7, 2024.

31. Jackson Walker has waived the attorney-client privilege as to undisclosed communications or information concerning the Freeman Engagement. The undisclosed communications concerning the Freeman Engagement, including but not limited to those set forth in **Exhibit G**, should be considered with the disclosed communications, because Jackson Walker represented to the U.S. Trustee that the August Letter it filed with the Court is not identical to the September Letter provided to the Respondents. Further, undisclosed communications concerning the Freeman Engagement should, in fairness, be considered with the disclosed communications, because Jackson Walker continues to put its communications with the Respondents at issue by

---

[5] Jackson Walker's counsel asserts in **Exhibit M** that the letter sent to Mr. Jarvis is different than what it attached to the Preliminary Response as evidence that it acted appropriately.

11

arguing in its Amended Response that it acted reasonably at all times and took reasonable remedial measures based on the Respondents' advice. *See, e.g.*, Amended Response at ¶¶ 1–2, 10, 37–39, 52–53, 77, 79, 144, 160, 183, and 186.

32. Respondents also cannot claim privilege with respect to any communications between the Respondents and outside parties, including Mr. Kirkendall. A threshold requirement for the invocation of attorney-client privilege is that the communication must have arisen in the context of an attorney-client relationship. *See United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978) ("the burden of proof is on the individual asserting the privilege to demonstrate an attorney-client relationship"). Based on Jackson Walker's own description of events, Mr. Kirkendall's discussions with Mr. Jarvis appear to have involved issues where Jackson Walker and Ms. Freeman were adverse. Although Mr. Kirkendall is an attorney, his client is Ms. Freeman, not Jackson Walker or Holland & Knight. No attorney-client relationship can be said to have arisen between Mr. Jarvis and Mr. Kirkendall. Any privilege regarding the subject matter of the Freeman Engagement has been waived, and any undisclosed communications or information should be considered with what has been disclosed.

33. Further, courts have long recognized that litigants may not use the privilege as both a "shield and a sword." *United States v. Bilzerian*, 92 F.2d 1285, 1292 (2d Cir. 1991); *see also Pall Corp. v. Cuno, Inc.*, 268 F.R.D. 167, 168 (E.D.N.Y. 2010) (noting that an implied waiver is asserted "when the party attempts to use the privilege both as a shield and a sword by partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then shielding the underlying communications from scrutiny"). "Courts have found waiver by implication . . . when a client places the attorney-client relationship directly at issue."

12

*In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (punctuation omitted); *see also In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 307 (5th Cir. 2020).

34. In this case, Jackson Walker has cited the information provided to the Respondents and the Respondents' conclusions in their September 22, 2021, opinion letter in support of its assertion that no Jackson Walker attorney (other than Ms. Freeman herself) was aware of the Freeman-Jones relationship before March 2021, and that Jackson Walker acted appropriately when it failed to disclose that relationship in 2021 and thereafter. By claiming privilege with respect to these conversations with the Respondents (as well as their conversations with a third party), Jackson Walker denies the U.S. Trustee any opportunity to examine, among other things, the context, factual assumptions, and purported diligence that led the Respondents to reach those conclusions. Jackson Walker further denies the U.S. Trustee any opportunity to examine the context, factual assumptions, and purported diligence that led the Respondents to reach the conclusions set forth in their June 2, 2022, opinion letter. As courts in this Circuit have found under strikingly similar circumstances, this kind of selective disclosure waives any attorney-client privilege that might otherwise exist. *See Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 439 (W.D. Tex. 2017) (holding that privilege as to counsel's investigation was waived when client disclosed a list of all facts counsel was provided to make its recommendations).

**BASIS FOR EXPEDITED RELIEF**

35. On August 7, 2024, the Court entered the *Amended Comprehensive Scheduling, Pre-Trial & Trial Order* [ECF No. 249] (the "Scheduling Order"). The Scheduling Order provides that parties with the burden of proof must serve its expert reports by September 30, 2024. The U.S. Trustee believes Mr. Jarvis's and Ms. Harvey's responses to the Discovery Requests and testimony are necessary to complete his own expert reports. Accordingly, an expedited order on

13

this Motion is necessary so that Mr. Jarvis and Ms. Harvey have sufficient time to respond to the Discovery Requests and be deposed, and so that the U.S. Trustee's experts have an opportunity to incorporate that information into their reports before the expert report deadline.

## CONCLUSION

For the foregoing reasons, any attorney-client privilege has been affirmatively and impliedly waived, and the U.S. Trustee is entitled to an order compelling the Respondents to respond to his Discovery Requests and appear and be deposed.

WHEREFORE, the U.S. Trustee respectfully requests that the Court grant this Motion to Compel by requiring the Respondents to respond to the Discovery Requests and appear and be deposed, and to enter any other relief the Court deems just or appropriate in law or equity.

Date: August 22, 2024

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: /s/ Alicia Barcomb
MILLIE APONTE SALL
Assistant U.S. Trustee
Tex. Bar No. 01278050/Fed. ID No. 11271
VIANEY GARZA
Trial Attorney
Tex. Bar No. 24083057/Fed. ID No. 1812278
ALICIA BARCOMB
Trial Attorney
Tex. Bar No. 24106276/Fed ID No. 3456397
515 Rusk, Suite 3516
Houston, Texas 77002
(713) 718-4650 – Telephone
(713) 718-4670 – Fax
Email: millie.sall@usdoj.gov
vianey.garza@usdj.gov
alicia.barcomb@usdoj.gov

RAMONA D. ELLIOTT
Deputy Director/
General Counsel
NAN ROBERTS EITEL
Associate General Counsel
Fed. ID No. 561266
DANIELLE PHAM
Trial Attorney
Department of Justice
Executive Office for
United States Trustees
Washington, D.C. 20530
(202) 307-1399 – Telephone

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2024 a copy of the foregoing *United States Trustee's Motion to Compel Discovery* was served on the parties listed in the attached service list by ECF transmission.

By: */s/ Alicia Barcomb*
Alicia Barcomb