**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| Professional Fee Matters Concerning | § | |
| the Jackson Walker Law Firm | § | Case No. 23-00645 (EVR) |
| | § | |
| | § | |

**JACKSON WALKER LLP'S OBJECTION TO UNITED STATES TRUSTEE'S
EMERGENCY MOTION TO EXTEND DISCOVERY DEADLINES**
[Relates to Dkt. No. 342]

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Jackson Walker LLP ("JW") files this objection (this "Objection") to the United States Trustee's (the "U.S. Trustee") *Emergency Motion to Extend Discovery Deadlines* [Dkt. No. 342] (the "Motion"). In support of this Objection, JW respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      These proceedings were initiated in November 2023 with a request from the U.S. Trustee for the presiding Bankruptcy Judges to (a) vacate orders approving JW's retention as an estate professional and awarding compensation paid to JW for its services in such capacity, and (b) order disgorgement and/or sanction JW in the total amount of all fees and expenses incurred in the 33 cases at issue. Now, almost a year later, with discovery coming to an end and impeding trial dates set in December, the U.S. Trustee asks this Court to further delay the discovery schedule and trial in order for him to continue his fishing expedition largely geared towards discovering issues entirely irrelevant to the relevant issues in the Rule 60 motions.[1]

---

[1] Although the U.S. Trustee asserts his request is limited in nature and will not affect the trial schedules, he fails to explain how he would produce an expert report in November while still allowing JW its thirty days to file rebuttal expert reports, all before the trial dates currently scheduled to commence on December 3, 3024. Further, the proposed

2.      The U.S. Trustee has spent the last five months of discovery conducting unnecessary and irrelevant depositions—some in violation of the Federal Rules in an apparent "ask for forgiveness rather than permission" approach that this Court has previously admonished against.  The U.S. Trustee chose to spend the discovery period, and his ten depositions allowed under the Federal Rules, going down rabbit trails involving, among other things, former Judge Jones's dogs, and spending countless hours questioning witnesses on whether Ms. Freeman and former Judge Jones ever waterskied together (including asking almost every witness about a picture that is not even former Judge Jones), and on alleged gifts exchanged between former Judge Jones and individuals unaffiliated with JW.

3.      With one month of discovery remaining, and only six days before his deadline to produce an expert report in these proceedings, the U.S. Trustee asks, on an emergency basis, to upend this Court's scheduling order and Judge Lopez's trial dates because he does not have sufficient information for his expert to produce a report by the current deadline, which the Court already moved once to accommodate the U.S. Trustee's request to obtain more facts and to specifically allow time for the U.S. Trustee to obtain whatever needed discovery it believed was necessary for purposes of his experts.[2]  Yet, after that latest request to this Court to extend the Scheduling Order at the hearing on August 7, 2024, the U.S. Trustee again sat on his hands while

---

order submitted with the Motion seeks to extend the deadlines *indefinitely*—rather than imposing a "limited extension" as requested in paragraph 1 of the Motion.

[2] *See* Dkt. No. 273, Aug. 7, 2024 Hr'g Tr. at pp. 98-99 (Ms. Steele: "We have sought the depositions of Jacqueline Harvey (phonetic) and Peter Jarvis. They were, I believe, ethics counsel to Jackson Walker in this matter. It's been mentioned in the pleadings. And we certainly would seek to depose them. We understand that there's the -- the attorney/client privilege  that's been asserted. And so if that's going to be continued to be asserted, we would have to bring a motion to compel in front of the Court.").

time passed.  In any event, the U.S. Trustee makes this request despite already having in his possession all of the relevant documents to allow his expert to reach an opinion.[3]

4.      The U.S. Trustee's belated request is not an "emergency"[4]—the U.S. Trustee was first made aware of JW's assertion of attorney-client privilege over documents and communications with its ethics counsel, Peter Jarvis, in **November 2023**, yet the U.S. Trustee waited to seek relief in the appropriate forum until **September 3, 2024—ten months later**.  Indeed, even the Oregon District Court recognized the U.S. Trustee's dilatory nature when it denied the U.S. Trustee's request to expedite for the very same reasons at issue here.  Now, unhappy with the Oregon District Court's determination to receive full briefing and hold oral argument before it determines whether JW waived "the most sacred of all legally recognized privileges," the U.S. Trustee asks this Court to yet again extend the discovery date, the expert deadline, and the ultimate trials in these proceedings, all to allow the U.S. Trustee to uncover what it already has, including from the 29 depositions already taken to date.  Moreover, the Oregon District Court entered its scheduling order on **September 6**, and JW informed the U.S. Trustee that it would not agree to any deadline extensions on **September 13**.  Yet, the U.S. Trustee again inexplicably waited until yesterday—**September 24**, to ask this Court for an extension, trying to jam JW on only two days' notice with a hearing now set for September 26, 2024.  The "emergency" is entirely of the U.S. Trustee's own making.

---

[3] Specifically, JW has already produced to the U.S. Trustee the two legal opinions provided by the Holland & Knight firm; thus, the U.S. Trustee already knows the advice that Holland & Knight provided and the facts upon which that advice was based, given that the memoranda produced discuss the facts at hand. Additionally, JW has repeatedly informed the U.S. Trustee, despite his allegations in the current emergency motion, that JW is not relying on an advice of counsel defense and that JW does not intend to call either Mr. Jarvis or Ms. Harvey as a witness at trial.

[4] The U.S. Trustee appears to have again ignored the Bankruptcy Local Rule requirements in filing emergency motions, including the requirement in Local Rule 9013-1 that a motion seeking an emergency hearing be certified for its accuracy by the party seeking the emergency relief or by its counsel.

5.      JW has worked diligently and reasonably to cooperate with the U.S. Trustee in his discovery efforts in these cases.  But, given the number of wholly irrelevant depositions, time wasted on duplicative and cumulative questioning, and repeated "needs" for deadline extensions by the U.S. Trustee, JW asks that the Court deny the Motion, leave its scheduling order (as already previously extended) intact, and allow these cases to proceed to trial.  There is simply no good cause to extend once again.  This Court has acknowledged the need for these cases to go to trial and has been generous in allowing ample time for both fact and expert discovery.[5]

### ARGUMENT

6.      This Court's *Amended Comprehensive Scheduling, Pre-Trial & Trial Order* provides that "[c]hanges to this portion of the Scheduling Order may only be made by further order of the Court. A motion to extend any deadline and/or alter any hearing date will only be granted ***for good cause shown beyond the control of the lawyers*** and/or Parties and only ***in very limited circumstances***."  *See* Dkt. No. 249 (emphasis added).[6]

7.      The Fifth Circuit has explained that "[t]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.1 (2d ed. 1990)).  In other words, the U.S. Trustee, as the party seeking to modify a scheduling order deadline, must show that, despite acting diligently, he will

---

[5] *See* Dkt. No. 273, Aug. 7, 2024 Hr'g Tr. at p. 113 (Court: "These cases need to go to trial. And -- and they need to get there. And I'm dealing with some  issues here, obviously, that's holding up some of this. And I'm going to try to make a determination as quickly as I can so we can move on. **And so, that's why I'm being generous in your requests for fact and expert discovery.**" (emphasis added).

[6] Although the U.S. Trustee invokes the standard applicable Federal Rule of Civil Procedure 16(b), that rule is not applicable in contested matters; rather, this Court's Order provides the appropriate standard.  *See* Fed. R. Bankr. P. 9014.

still be unable to meet that deadline. *Rivera v. County of Willacy*, Civil Action No. B-06-189.2007 WL 1655303, at *1 (S.D. Tex. June 6, 2007).

8.      Courts assess four key factors when determining whether good cause exists: "(1) the explanation for the failure to timely seek leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to mitigate such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003). Overall, the Court has "broad discretion to preserve the integrity and purpose of the pretrial order, which, toward the end of court efficiency, is to expedite pretrial procedure." *Hodges v. United States,* 597 F.2d 1014, 1018 (5th Cir. 1979).

**A.    The U.S. Trustee Has Not Even Attempted to Show Good Cause for Extending the Discovery Deadlines Due to His Rule 30 Violations and Wasteful Discovery.**

9.      Discovery has been proceeding for five months, with one month remaining. In that time, the U.S. Trustee has taken 29 depositions and noticed an additional seven depositions, despite exceeding the 10-deposition limit imposed by Federal Rule 30. Numerous of these depositions were wasteful, cumulative, irrelevant, harassing, and burdensome to JW and other deponents. The U.S. Trustee chose to spend the discovery period taking unnecessary depositions, and he cannot justify the taking of these depositions under Rule 30. The Court should not allow the U.S. Trustee more time now, when he has wasted the time previously allowed by the Court.

10.      Additionally, the U.S. Trustee first raised the issue of JW's purported waiver of its attorney-client privilege between JW and Mr. Jarvis back ***in November 2023***. And now with only six days left to produce an expert report, the U.S. Trustee asserts that he requires the privileged documents in order to provide them to his expert witness whose report is due on September 30. The U.S. Trustee has had numerous months to obtain a ruling on JW's alleged waiver, and, in fact, this Court already extended the U.S. Trustee's expert report deadline by 48 days (almost seven

weeks) in order for the U.S. Trustee to do exactly that.[7]  By his own admissions in the Motion and accompanying declaration, the U.S. Trustee started the process to obtain Mr. Jarvis's deposition testimony in ***June***—nearly four months ago.  There is no emergency here, and the U.S. Trustee has not shown good cause for an additional extension, particularly where JW has already produced the memoranda that contain Mr. Jarvis's legal advice to JW.

11.     Between June 27, 2024 and the date of this filing, the U.S. Trustee has taken 29 depositions (28 individuals and one corporate representative).  Each deposition taken beyond the tenth deposition, which occurred on August 1, 2024, violates Rule 30(a)(2), which provides, in relevant part:

> **With Leave.** ***A party must obtain leave of court, and the court must grant leave*** to the extent consistent with Rule 26(b)(1) and (2):
>
> (A) if the parties have not stipulated to the deposition and
>
> (i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants. . . .

Fed. R. Civ. P. 30(a)(2) (emphasis added).

12.     Notwithstanding the above limitations under the Federal Rules, JW allowed over twenty depositions to go forward, although it did not expressly stipulate to such depositions, before it notified the U.S. Trustee that he was violating Rule 30 and asked the U.S. Trustee to explain for each witness:

> a.   why the testimony sought by the deposition is not cumulative or duplicative;
>
> b.   why the testimony sought is not obtainable from some other source that is more convenient, less burdensome, or less expensive; for example, by document production or deposition on written questions;

---

[7] *See* supra n.2.

    c.  why the U.S. Trustee has not already had ample opportunity by discovery in these proceedings to obtain the information sought through the deposition; and

    d.  why the burden or expense of the proposed deposition is outweighed by its likely benefit.

13.    With 29 depositions taken by the US. Trustee to date, including numerous that JW did not stipulate to, JW believes that it has been more than reasonable and cooperative in an effort to avoid wasting this Court's time and resources by requesting an informal resolution of the repeated Rule 30 violations.  JW submits that the above requested information is required under Rule 30 for the U.S. Trustee to establish the "not only the necessity of each deposition identified (*i.e.*, witnesses 11 through 20), but also the necessity of all the depositions he has taken or will take in reaching the prescribed limit (*i.e.*, witnesses 1 through 10)." *MacKenzie v. Castro*, No. 3:15-cv-752-D, 2016 WL 3906084, at *5 (N.D. Tex. July 19, 2016); *see Zenith Ins. Co. v. Texas Inst. for Surgery, L.L.P.*, No. 3:18-CV-182-D, 2018 WL 5084913, at *4-6 (N.D. Tex. Oct. 18, 2018); *Barrow v. Greenville Indep. School Dist.*, 202 F.R.D. 480, 482-84 (N.D. Tex. 2021).

14.    Although not requested by JW in its informal discussions with the U.S. Trustee regarding his Rule 30 violations, the U.S. Trustee also bears the burden of showing this Court how the ***previous*** depositions taken to date were relevant and necessary.  *Barrow*, 202 F.R.D. at 482-83 (explaining that the party seeking leave under Rule 30 must "show the necessity of ***all*** the depositions [he] took in reaching the prescribed limit.") (emphasis added).  Courts have made clear that "[t]he mere fact that more than ten individuals may have discoverable information in a case does not mean that taking more than ten depositions makes sense." *Byers v. Navarro Cty.*, No. 3:09-cv-1792-D, 2011 WL 4367773, at *2 (N.D. Tex. Sept. 19, 2011) (internal quotation marks omitted).  And "[t]he fact that leave of court is required ***prior*** to the taking of more than 10 depositions is ***deemed burdensome*** without any additional showing." *Watts v. Wilcohess, LLC*,

No. 5:07-CV-00981-MBS, 2010 WL 11534468, at *1 (D.S.C. Jan. 22, 2010) (citing *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001)) (emphasis added).

15.     The U.S. Trustee cannot make such a showing.  And he has not even attempted to in his Motion, instead stating in only one sentence that he "seeks leave of Court to complete his fact discovery through depositions of witnesses with relevant information."  Motion at ¶ 2.  This is entirely insufficient to meet his burden of making a "particularize showing" under Rule 30 of the need for additional depositions, which requires either court leave or stipulation of the parties and, in the absence of either, ***renders all deposition subpoenas in excess of the ten-deposition limit per se invalid***.  *Thykkuttahil v. Keese*, 294 F.R.D. 597 (W. D. Wash. 2013); *see Watts*, 2010 WL 11534468, at *1.  This includes the subpoenas for Mr. Jarvis and Ms. Harvey's testimony.

         i.     *The U.S. Trustee Has Failed to Show Good Cause for Each Deposition Taken.*

16.     The U.S. Trustee has taken numerous irrelevant and unnecessary depositions, including that of the ex-wife of former Judge Jones; a former housekeeper of former Judge Jones; the ex-husband of Ms. Freeman; and a bankruptcy practitioner who never worked at JW.  The U.S. Trustee wasted his depositions on these irrelevant third parties who had no connection to JW and its knowledge or lack thereof.  It appears that these depositions were instead used to uncover facts about third parties, or to obtain embarrassing information about Ms. Freeman and former Judge Jones that have no bearing on the issues asserted in these proceedings.

17.     Starting with the first deposition of former Judge Jones's ex-wife: she and former Judge Jones were divorced in May 2012—six years ***before*** Ms. Freeman joined JW—and she has never worked for JW.  It is difficult to imagine that she would possess any relevant information regarding JW's knowledge during the relevant timeframe at issue in the 33 cases.  And throughout much of the deposition, the U.S. Trustee focused on irrelevant personal matters, such as the social

life and home of former Judge Jones, and even details about their pets.[8]   Additional questions about wedding attendees, her house's square footage, and realty listing information had no bearing on JW's role or knowledge in any of these relevant proceedings.   The U.S. Trustee also pursued questions regarding the reasons behind the parties' divorce in 2012—events that occurred years before Ms. Freeman's involvement with JW—which could not possibly have any connection to JW.   None of the exhibits presented at her deposition (the realty listing of her former home and a picture of a closet full of clothes and purses), nor the questioning, had any connection to the issues involving JW.

18.     Regarding the former housekeeper: she stopped working for former Judge Jones in 2017, prior to Ms. Freeman joining JW.   During her deposition, the U.S. Trustee asked a series of irrelevant questions that have no connection to the allegations against JW.   For instance, the U.S. Trustee repeatedly asked her about the temperament of former Judge Jones's dogs.[9]   The U.S. Trustee also inquired whether she had ever seen Judge Isgur visit former Judge Jones's home, a question entirely unrelated to JW's knowledge. [10]   Similar irrelevant questions were asked, including whether she recognized photos of various local attorneys—none of whom ever worked for JW.   The U.S. Trustee also questioned her about the furniture and decorations in the house.

---

[8] *See id.* at 28:09-29:02  (Q: . . . "[H]ow would you describe the behavior of the dogs that David Jones kept, the two that you described? A: What do you mean? Q: Well, you know, there are really friendly dogs who would wag their tail even if a burglar were to come into the home, there are dogs that are rather vicious, you know, there  are dogs that are very friendly to an owner, but not too friendly to other people. How could you describe those two dogs? A: So if you rang the doorbell, they would bark and go crazy, but once they were in the house and they knew who was in the house, they were friendly, but big. They are big dogs. Q: And when you and David Jones were still married, how  were the dogs to Marvin Isgur? A: I don't recall. Q: Do you recall the dogs behaving differently towards him than towards anyone else? A. No.").

[9] *See* Deposition Transcript, July 17, 2024, 17:07-09 (Q: "And can you describe what kind of temperament the dog had? Was it a friendly dog? A vicious dog? A: It was a very sweet and kind dog.").

[10] *See id*. 38:15-39:02 ("Q: We're back on the record after taking a break. I am going to, again, show you what we have marked as U.S. Trustee Exhibit 19 [a picture of Judge Marvin Isgur], and I would like to ask you whether -- does this person look familiar to you? A: No. Q: So you do not recognize the person in the picture? A: No. Q: Did that person ever visit any of the homes you cleaned for Mr. Jones and/or Ms. Freeman? A: I don't know, unless they were there outside of my time when I was working there. But when I was working there, I did not see anyone.").

The U.S. Trustee cannot reasonably argue that this deposition was relevant to the issues in these cases.  These lines of questioning highlight the U.S. Trustee's decision to misuse the discovery process to investigate unrelated individuals, for reasons plainly unrelated to the relief requested against JW.

19.     Next, regarding the former spouse of Ms. Freeman:  the U.S. Trustee's deposition was dominated by irrelevant personal questions that had no connection to JW.  Despite Ms. Freeman joining JW in 2018—years after her 2013 divorce—the questioning primarily focused on personal aspects of their relationship and interactions with former Judge Jones, rather than any pertinent facts related to JW's knowledge or lack thereof.  For example, the U.S. Trustee asked about his suspicions regarding Ms. Freeman's relationship with former Judge Jones during their marriage.[11]  These questions focused on events that occurred years before Ms. Freeman joined JW, and have no relevance to JW's knowledge or JW's conduct in these cases.  The U.S. Trustee also inquired about unrelated family matters,[12] including irrelevant details about living arrangements and family dynamics.[13]  These questions entirely focused on personal aspects of the post-divorce life with Ms. Freeman and her relationship with former Judge Jones, and have no bearing on the issues in these proceedings.  Any information the former spouse may have had about the Jones-Freeman relationship is wholly irrelevant.

---

[11] *See, e.g.*, Deposition Transcript, Aug. 8, 2024, 19:04-05 (Q: "Was her affair with David Jones one of the reasons for the divorce?" *id*. at 36:14-15 Q: "When did you first learn that Liz Freeman was romantically involved with David Jones?").

[12] *See, e.g.*, *id*. at 45:15-16 (Q: "Did your children ever vacation with Liz Freeman and David Jones?"; *id*. at 44:04-05  Q:"Did David Jones provide any financial support to your children?"; *id*. at Q:31:24-25 "Did your children ever talk about the temperament of the dogs;" *id*. at 32:08 Q: "What did they say about Champ's [dog's] temperament?"; *id*. at 32:11 Q: "What did they say about Ruby's [dog's] temperament?").

[13] *See, e.g.,* *id*. at 46:15- 47:02 ("After Liz Freeman moved in with David Jones on Three Corners, did her parents know about their romantic relationship?"; *id*. at 26:21-22 Q: "Did your children ever live with Liz Freeman and David Jones at the Rolla house?").

20.     Regarding the deposition of a non-JW bankruptcy practitioner:  this attorney has never worked for JW.  The U.S. Trustee's deposition of this individual was a clear overreach focusing on irrelevant matters that have no bearing on JW's knowledge or its actions.  The questioning largely centered on personal events, such as a Cinco de Mayo party, former Judge Jones's birthday celebrations, and an event at Emory University in March 2023 that honored former Judge Jones. These questions, which focused on the practitioner's interactions with former Judge Jones and Ms. Freeman at these social events, were entirely unrelated to the issues surrounding JW's knowledge about the Jones-Freeman relationship.

21.     The U.S. Trustee has also taken wasteful depositions of several JW witnesses, including Jennifer Bryant and Mary Lou Flynn-DuPart.  The depositions of Ms. Flynn-DuPart and Ms. Bryant were unnecessary and simply wasted all of the parties' (and attendees) time and resources. These depositions focused on trivial and irrelevant matters—namely, an email sent by Ms. Freeman that contained a picture of a man waterskiing in an elf suit.  Neither Ms. Flynn-DuPart nor Ms. Bryant worked closely with Ms. Freeman.  Both deponents testified that they did not have any significant professional or personal relationship with Ms. Freeman (a fact that was told to the U.S. Trustee prior to the depositions in an effort to have the U.S. Trustee reconsider). The U.S. Trustee presented both Ms. Flynn-DuPart and Ms. Bryant with pictures of various residences and family photographs during their depositions.  Neither of them was able to recognize or identify any of the images shown.  Moreover, the U.S. Trustee proceeded with the depositions of Ms. Flynn-DuPart and Ms. Bryant, despite JW's representation prior to the deposition that the individual in the elf suit was Ms. Freeman's brother—not former Judge Jones.

22.     The U.S. Trustee has also failed to provide any justification for the excessive number of JW's witnesses, particularly when JW has been transparent and cooperative throughout

these proceedings. The U.S. Trustee has already questioned 15 of JW's witnesses, including a corporate representative, yet no explanation has been offered for the necessity of questioning so many individuals or how such questioning is not cumulative and duplicative. Despite having already deposed members of JW management, the head of JW's bankruptcy group, and other partners who worked closely with Ms. Freeman, the U.S. Trustee continues to pursue depositions with virtually every possible person connected Ms. Freeman, including Daniela Trevino, who was a paralegal at JW.occu

23.    This aggressive, wasteful, and unnecessary approach is especially troubling considering that JW was forthcoming from the outset. In November 2023, JW offered to have an interview with the U.S. Trustee. That interview request was declined (albeit the U.S. Trustee did seek to interview Ms. Freeman and others). Additionally, JW filed its preliminary response to the U.S. Trustee's Rule 60 motions in November 2023 that outlined the timeline of its knowledge of the Jones-Freeman relationship and the actions it took upon learning about it, and JW provided a more fulsome response to the U.S. Trustee's Rule 60 motions on May 22, 2024, describing in detail all relevant facts, timelines and decisions, including the Firm's decision to separate from Ms. Freeman. The facts and timeline as presented in November 2023 has proven accurate throughout the various depositions taken to date.

ii.    *The U.S. Trustee Has Failed to Show Good Cause for Each Additional Deposition Proposed.*

24.    The U.S. Trustee is determined to continue the fishing expedition by insisting on taking the depositions of two additional bankruptcy lawyers unaffiliated with JW, once again ignoring JW's requests for compliance with Rule 30. The U.S. Trustee has argued that one of these depositions is necessary because (i) JW communicated with this individual; (ii) the testimony from JW's representatives is allegedly contradictory to the testimony from this individual's former

colleagues, and so the U.S. Trustee claims it must explore the reasons for the contradiction; and (iii) the individual has knowledge of Ms. Freeman, former Judge Jones, and JW's interactions with Kirkland & Ellis.  These are not legitimate reasons to impose a burden on JW, especially as none of these topics are relevant to the issues in these proceedings.  The individual in question has never been employed by JW, and any communications he may have had with JW offer no unique or critical insight that cannot already be obtained (and has already been obtained) directly from JW itself.  The U.S. Trustee has had ample opportunity to question JW about these communications (and indeed has already), and it is unreasonable to suggest that this testimony would provide anything additional.  It is illogical to assume that every person who ever communicated with JW should be subject to deposition, particularly given the extensive number of individuals that JW would have interacted with across 33 cases.

25.     The U.S. Trustee seeks to depose another local attorney who he describes as a "longtime colleague and friend of Mr. Jones and Ms. Freeman", presumably because this attorney has knowledge of the timeline of the Jones-Freeman relationship.  Again, the U.S. Trustee has not shown how this testimony is not cumulative or duplicative of the numerous other depositions—particularly of JW witnesses themselves who testified as to their knowledge or lack thereof of the relationship—or how this deposition is not wasteful and burdensome.

26.     This fishing expedition by the U.S. Trustee regarding the proposed depositions is reminiscent of prior depositions, which were inappropriately used to gather information about unrelated individuals and unrelated issues, including another law firm's sponsorship of an event honoring former Judge Jones.  The U.S. Trustee's misuse of the discovery process to explore irrelevant matters is clear, and the proposed depositions should not be permitted on these grounds.

27.     The U.S. Trustee further seeks the deposition of one of JW's paralegals, Ms. Trevino, despite failing to explain how Ms. Trevino's testimony will not be cumulative or duplicative of the testimony already taken of 15 JW witnesses.[14]   At certain relevant times, Ms. Trevino was a case clerk at JW with no authority or decision-making power over Ms. Freeman's work or involvement in any of the cases.  The U.S. Trustee's claim that Ms. Trevino possesses relevant information regarding Ms. Freeman's role in certain cases is fundamentally flawed.  The U.S. Trustee has already deposed 15 witnesses from JW who worked on these matters, and the U.S. Trustee had ample opportunity to ask them (and did in fact ask them) about Ms. Freeman's role and involvement.  Any assertion that Ms. Trevino may have unique insight into any other matters, such as the Van Deelen matter, is equally baseless as her role was limited to docketing and administrative functions, with no involvement in any actual decision-makings.

28.     The U.S. Trustee has agreed to withdraw its subpoena for one JW attorney, but only if that attorney agrees to an interview with the U.S. Trustee, despite JW's counsel repeatedly informing the U.S. Trustee that such attorney is out on FMLA leave attending to personal family matters.  Yet, the U.S. Trustee has also given no assurances that if an interview is provided, that the U.S. Trustee will not then also seek to depose this attorney.

29.     The U.S. Trustee also purports to "reserve[] his rights" to take additional depositions, including of two additional members of former Judge Jones's court staff,[15] the

---

[14] The U.S. Trustee also stated that he had not received any timely objection by Ms. Trevino.  However, on September 12, 2024, JW served objections and responses to the subpoena directed to Ms. Trevino.  In her objections and responses, Ms. Trevino specifically stated that she "objects to the Subpoena on the grounds that it seeks to take her deposition in excess of the ten depositions permitted by Rule 30 of the Federal Rules of Civil Procedure, which limits the number of depositions a party may take without leave of court. The U.S. Trustee has already taken or noticed the maximum number of depositions allowed under the rule. Ms. Trevino will not attend any deposition absent either a court order granting leave to exceed the number of depositions or a stipulation between the parties permitting her deposition to go forward."

[15] JW has not seen a request for these depositions pursuant to the *Guide to Judiciary Policy*.

husband of one of JW's attorneys,[16] and any other parties he wishes after he reviews JW's completed document production.[17]

30.     Given the U.S. Trustee's failure, to date, to seek court leave or obtain JW's stipulations regarding these depositions,[18] JW submits that the U.S. Trustee has had ample time to conduct discovery and obtain facts to support his expert reports.  JW asks that the Court consider the U.S. Trustee's voluminous discovery taken to date in determining whether to extend the discovery deadlines "for good cause shown beyond the control of the lawyers."  JW further requests that this Court consider the wasteful depositions taken to date and deny the U.S. Trustee's request to exceed Rule 30's deposition limit, including his request to take Mr. Jarvis and Ms. Harvey's depositions, for failure to show good cause.

**B.     The U.S. Trustee's Proposed Depositions of JW's Ethics Counsel are Unnecessary and Do Not Warrant an Extension of the Expert Report Deadlines.**

31.     Back in November 2023, after the U.S. Trustee filed his initial Rule 60 motion and JW filed its Preliminary Response, counsel for JW and the U.S. Trustee held a meet-and-confer call to discuss the cases and how to best proceed forward.  On that call, counsel to the U.S. Trustee questioned certain assertions in the Preliminary Response, indicated his belief that JW waived its

---

[16] The U.S. Trustee notified JW that it would hold the husband's deposition in abeyance, pending a determination on whether to proceed with it after completing the deposition of his spouse, a JW attorney.  Nevertheless, JW submits that his deposition is entirely unjustified for several reasons.  First, the husband has never worked for JW.  Second, any inquiries regarding JW or the JW attorney's knowledge can and should be addressed directly during the deposition of the JW attorney, which is already scheduled for October 3, 2024.  There is no legitimate need to depose the husband separately who has no connection to JW.  The scheduling of this deposition appears to be an unnecessary and a burdensome tactic, meant to harass and waste time and resources.

[17] After numerous requests by JW, the U.S. Trustee agreed to withdraw its subpoenas for 5 other irrelevant and/or duplicative witnesses.  Notably, except for 1 of these witnesses, none of these individuals have ever worked for JW, and their mere social connections to former Judge Jones and JW do not make their testimony relevant.  The U.S. Trustee's attempt to imply relevance based on proximity or personal relationships is nothing more than a transparent effort to engage in an overreaching and irrelevant investigation, which, upon information and belief, is being shared with other DOJ federal investigators.

[18] Again, the U.S. Trustee's reference to seeking leave of court to "complete fact discovery through depositions of witnesses with relevant information" is wholly insufficient to sustain his burden under Rule 30 and applicable case law.

privilege with Peter Jarvis, an attorney with the law firm of Holland and Knight, and asked JW to informally produce JW's communications with Mr. Jarvis.  JW declined.

32.    Months later, on June 4, 2024, after the start of formal discovery, the U.S. Trustee issued subpoenas to Mr. Jarvis and his colleague, Ms. Harvey.  Through numerous meet and confers and written correspondence exchanged between counsel to the U.S. Trustee and JW, JW consistently asserted its privilege, challenged any assertion of waiver, and resisted the production of privileged documents or the taking of depositions regarding privileged information.

33.    Now, over **ten months** since the first conversation regarding JW's assertion of privilege, **five months** since formal discovery opened in these cases, and **four months** since the U.S. Trustee originally subpoenaed Mr. Jarvis and Ms. Harvey, the U.S. Trustee asserts that this Court should—on an emergency basis and with less than 48 hours for JW to respond— further extend the discovery deadlines to allow the U.S. Trustee to conduct depositions of Mr. Jarvis and Ms. Harvey so as to afford time for his experts to consider their testimony (despite already having all relevant information).  The U.S. Trustee makes this request without attempting to show why he should be granted leave to conduct these depositions in excess of the 10-deposition limit under Rule 30 and in a premature fashion, as the Oregon District Court may ultimately determine that JW's privilege remains intact and that the depositions may not go forward in any event.

34.    The U.S. Trustee claims that he diligently pursued JW's cooperation in scheduling the depositions of Mr. Jarvis and Ms. Harvey within the discovery deadlines and points out to various communication between JW and the U.S. Trustee.  JW **always** informed the U.S. Trustee it would not waive its privilege with respect to communication between JW and its counsel.  The U.S. Trustee simply failed to take any formal action to enforce his subpoenas.  *See Hernandez v. Mario's Auto Sale, Inc.,* 671 F. Supp. 2d 488, 495 (S.D. Tex. 2009) *(quoting Smith v. BCE Inc.,*

225 Fed.Appx., 212, 217 (5th Cir. 2007) (unpublished) ("A diligent party attempts to compel discovery through the presiding court after opposing counsel unjustly refuses to provide responses."). Moreover, the subpoenas are *per se* invalid under Rule 30; thus, the U.S. Trustee's assertions that no party has moved to quash the subpoenas is unfounded and not required:  under Rule 30 the depositions are simply not allowed without prior court leave or stipulation among the parties, neither of which has been obtained.

35.     Now, the U.S. Trustee attempts to shift the blame to JW, but the law is clear: a diligent party is required to promptly compel discovery when the opposing side refuses.  From the outset, JW made its position clear: it was asserting attorney-client privilege over communications with its ethics counsel, Mr. Jarvis and Ms. Harvey, and it consistently refused to waive this privilege.  The fact that the U.S. Trustee waited months to take any formal action demonstrates a lack of diligence by the U.S. Trustee, not any bad faith by JW (indeed, the opposite is true).  If the Trustee had truly believed the privilege was improperly asserted, he should have promptly sought court intervention rather than allowing months to pass, particularly after this Court already extended the discovery dates to account for the very expert deadlines that the U.S. Trustee again complains of and seeks to further extend.

36.     The U.S. Trustee's request to extend expert disclosure deadlines is nothing more than an attempt to excuse his own lack of diligence in pursuing discovery.  He has had ample time to pursue his motion to compel document production from Mr. Jarvis and Ms. Harvey and/or to compel their depositions. On August 7, 2024, the U.S. Trustee informed this Court that discovery deadline should be extended to allow the U.S. Trustee to file the motion to compel and take the depositions of Mr. Jarvis and Ms. Harvey.   Such an extension was granted by this Court, yet the U.S. Trustee ***waited an additional month*** after this Court extended the deadlines to file the motion

to compel in the proper forum. *See Hernandez v. Mario's Auto Sale, Inc*., 671 F. Supp. 2d at 495

(quoting *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992) ("carelessness

is not compatible with a finding of diligence and offers no reason for a grant of relief")).

37. The U.S. Trustee attempts to lay blame at JW for his delay in raising the issue, but

JW cannot be blamed for the U.S. Trustee waiting **three months** after issuing the subpoenas to file

a motion or for the U.S. Trustee filing its motion in a jurisdiction that lacked authority over Mr.

Jarvis and Ms. Harvey, as this Court recognized in its order striking the initial motion to compel.

Had the U.S. Trustee been diligent in his efforts and followed proper procedures from the

beginning, these delays could have been avoided entirely.

38. Nor can the U.S. Trustee blame JW for its meet and confer efforts—which are

required under the local rules in the Oregon District Court, and for which JW attempted to

streamline the issues—or for the Oregon District Court's hearing schedule. The fact that the U.S.

Trustee has not yet obtained a ruling on its belated request to obtain privileged information from

JW's ethics counsel is entirely the U.S. Trustee's fault, and is not justification for extending the

expert deadlines in these proceedings.

39. Moreover, all four of the *Sw. Bell* factors weigh heavily in favor of JW:

- First, the U.S. Trustee has provided no sufficient explanation for the failure to
  timely seek leave to amend, including by timely pursuing its motion to compel.
  Despite knowing since November 2023 that JW was asserting attorney-client
  privilege over its communications with ethics counsel, the U.S. Trustee failed to
  file any motion to compel within a reasonable timeframe after the subpoenas were
  issued. The U.S. Trustee waited another month, after the Court granted an
  extension, to file the motion, demonstrating a lack of diligence and no legitimate
  explanation for the delay. Further, the U.S. Trustee has known since September 13
  that JW would not agree to modify any deadlines (and indeed, the Court's
  Scheduling Order does not allow for modification by agreement but requires a court
  order upon good cause shown by the U.S. Trustee), yet he waited another 11 days
  before filing the Motion.

- Second, the U.S. Trustee's request to depose Mr. Jarvis and Ms. Harvey centers on privileged communications that JW has consistently maintained are protected by attorney-client privilege.  The U.S. Trustee is not entitled to communication protected by attorney-client privilege.[19]  The U.S. Trustee is also not permitted to take depositions in excess of the limits proscribed by Rule 30 without first seeking leave of court or a stipulation between the parties, neither of which have occurred.  The U.S. Trustee has consistently ignored this requirement and appears to be continuing to do so by seeking to proceed with the depositions without court approval and making any "particularized showing" for the need for the depositions.

- Third, allowing the U.S. Trustee to extend discovery deadlines would cause substantial prejudice to JW. JW has operated under the existing pretrial deadlines in good faith, diligently responding to discovery requests, asserting privileges, and engaging in countless meet-and-confer sessions.  Further extending the deadlines would only increase litigation costs, unnecessarily delay trial that has been set for some time, and potentially force JW to continue to defend against requests for privileged information.  To the contrary, the U.S. Trustee will suffer **no** prejudice in the absence of extended deadlines because ***the U.S. Trustee already has the two memos in which Mr. Jarvis provided advice to JW, and JW previously agreed— in June—to allow the U.S. Trustee to take a limited deposition of Mr. Jarvis and Ms. Harvey, which the U.S. Trustee refused to do***.  The U.S. Trustee also fails to account for the prejudice that JW would suffer if the U.S. Trustee is permitted additional time to produce its expert report only to cram JW's rebuttal expert window in order to maintain Judge Lopez's trial dates, currently set for December 3-13, 2024.

- Fourth, a continuance would unfairly reward the U.S. Trustee's lack of diligence and impose further costs on JW.  The U.S. Trustee has already had ample opportunity to move forward with his motion to compel and to obtain facts and documents to use in its expert report, and the Court should not granted the U.S. Trustee a continuance at JW's expense.  As described above, JW has already spent significant amounts of money preparing for and attending numerous irrelevant depositions, including many taken in violation of the Federal Rules.

40.     Accordingly, the U.S. Trustee's failure to diligently prosecute its motion to compel does not provide good cause for extending the discovery deadlines.  JW requests that the Court deny the Motion and maintain the schedule set forth in the *Amended Comprehensive Scheduling, Pre-Trial & Trial Order* at Dkt. No. 249.

---

[19] The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

## **CONCLUSION**

Based on the above, JW respectfully requests that the Court deny the U.S. Trustee's Motion and grant JW any relief as to which it may be entitled.


*[Reminder of Page Intentionally Left Blank]*

Dated: September 25, 2024

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
William Greendyke (SBT 08390450)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar Street, Suite 2000
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Paul Trahan (SBT 24003075)
Emily Wolf (SBT 24106595)
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
Email: paul.trahan@nortonrosefulbright.com
Email: emily.wolf@nortonrosefulbright.com

-and-

**RUSTY HARDIN & ASSOCIATES, LLP**

Russell Hardin, Jr. (SBT 08972800)
Leah M. Graham (SBT 24073454)
Jennifer E. Brevorka (SBT 24082727)
Emily Smith (SBT 24083876)
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Email: rhardin@rustyhardin.com
Email: lgraham@rustyhardin.com
Email: jbrevorka@rustyhardin.com
Email: esmith@rustyhardin.com

*Counsel for Jackson Walker LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2024, I caused a copy of the foregoing Objection to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and by email to counsel for the United States Trustee as set forth below:

Laura Steele (<u>Laura.Steele@usdoj.gov</u>)
Pat S. Layng (<u>Pat.S.Layng@usdoj.gov</u>)
Millie Aponte Sall (<u>Millie.sall@usdoj.gov</u>)
Aubrey L. Thomas (<u>Aubrey.thomas@usdoj.gov</u>)
Vianey Garza (<u>Vianey.Garza@usdoj.gov</u>)
Alicia Barcomb (<u>Alicia.Barcomb@usdoj.gov</u>)

*/s/ Jason L. Boland*
Jason L. Boland