# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| | § | **Case No. 23-00645 (EVR)** |
| **Professional Fee Matters Concerning the** | § | |
| **Jackson Walker Law Firm** | § | |
| | § | |
| | § | |

## JACKSON WALKER LLP'S OBJECTION TO THE UNITED STATES TRUSTEE'S EXPEDITED MOTION TO QUASH SUBPOENAS
### [Relates to Dkt. No. 350]

Jackson Walker LLP ("JW") files this *Objection* (the "Objection") to the United States Trustee's (the "U.S. Trustee") *Expedited Motion to Quash Subpoenas* [Dkt. No. 350] (the "Motion to Quash") and respectfully states as follows:

## SUMMARY OF RELIEF SOUGHT

1.      JW seeks the depositions of three current U.S. Trustee personnel, Hector Duran, Millie Sall, and Kevin Epstein, and two former U.S. Trustee personnel, Henry Hobbs and Stephen Statham (collectively, the "Deponents").  The Court has previously ruled that knowledge of the U.S. Trustee—including his employees—is discoverable in these proceedings.  JW seeks sworn testimony on this knowledge, among the additional topics identified in its subpoenas of the Deponents.  Further, the U.S. Trustee himself is a party to this proceeding—indeed, he is essentially a plaintiff in these proceedings as he has stated claims and asked for relief from this court, all of for which he bears the burden of proof.  He also has signed interrogatories under oath, based on his personal knowledge.  JW seeks to depose the U.S. Trustee to elaborate and clarify the substance of the otherwise boilerplate interrogatories and the nature of the allegations he has asserted in these proceedings.  As such, he is not entitled to any "immunity" as alleged in the Motion to Quash.  The U.S. Trustee's various objections to the subpoenas directed at the other

Deponents also are without merit.  JW therefore objects to the U.S. Trustee's request that the Court quash the subpoenas served on the Deponents.

## PRELIMINARY STATEMENT

2.      With his Motion to Quash, the U.S. Trustee is repeating the same story that this Court previously rejected: that discovery is a one-way street where the U.S. Trustee gets to ask for voluminous information and seek numerous depositions from JW and other third parties, but where JW gets to do nothing in return.  JW has not taken a single deposition in these proceedings, contrasted with the U.S. Trustee's 30 depositions taken to date (with more scheduled).  Contrary to the U.S. Trustee's assertions, JW does not seek the Deponents' testimony and documents to harass the Deponents; rather, JW reasonably believes the Deponents have discoverable information—unavailable from other witnesses—that may aid in JW's defenses in these proceedings.  JW has jumped through all of the U.S. Trustee's self-imposed hoops in order to obtain this testimony, and yet the U.S. Trustee now claims he and all of his personnel are somehow immune from the discovery processes.  That is not the law.

3.      The U.S. Trustee asserts a number of arguments in an attempt to avoid the Deponents' testimony, including: an inapplicable "apex doctrine"; an already-rejected relevance objection; an argument that answering interrogatories supplants the need for deposition testimony; and a wrong assertion that attorneys cannot be deposed because they are attorneys.  None of these arguments have merit.  The Court should deny the Motion to Quash and order the depositions to proceed.

4.      The U.S. Trustee has also taken a position that the Deponents can only be subpoenaed in their official capacities and not in their personal capacities.  This is non-sensical. The topics included in the subpoenas—topics which are not required under the Federal Rules or applicable law but that JW nonetheless included at the request of the U.S. Trustee and to expedite

the discovery process—make clear that the subpoenas apply in all capacities.  Moreover, counsel

for the U.S. Trustee accepted service of the subpoenas to Mr. Epstein, Ms. Sall, and Mr. Duran in

***all*** capacities without any limitation.  JW has also served a Rule 30(b)(6) deposition notice upon the

U.S. Trustee, whereby JW seeks the deposition of and document production from a corporate

representative of the U.S. Trustee, further clarifying the nature of the individual subpoenas as just

that—subpoenas sent to individuals in whatever capacity they have testimony or documents.[1]  To

the extent necessary, the Court should clarify in its order denying the Motion to Quash that the

Deponents will be deposed in ***all*** capacities.

## **BACKGROUND**

5.      On July 29, 2024, counsel for JW asked the U.S. Trustee to provide dates for which

the Deponents could be available for deposition, which was consistent with the parties' process

in these proceedings for obtaining agreed-upon dates before issuing subpoenas.  Counsel for the

U.S. Trustee replied on August 2, insisting that JW "comply with [the Department of Justice's

Touhy regulations] before proposed deposition testimony dates may be provided."

Notwithstanding the fact that the *Touhy*[2] regulations do ***not*** apply in cases in which the U.S.

Trustee is a party to a proceeding,[3] JW provided executed subpoenas to the U.S. Trustee's counsel

---

[1] *See Schmidt Tr. of Est. of Border Anesthesia Servs., P.C. v. McKee*, No. CV B-10-20, 2012 WL 13137023, at *4 (S.D. Tex. Feb. 21, 2012) ("A deposition pursuant to Rule 30(b)(6) is substantially different from a witness' deposition as an individual.") (citation omitted).

[2] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

[3] *Res. Investments, Inc. v. United States*, 93 Fed. Cl. 373, 380 (2010) ("***With near unanimity, however, those courts considering the issue have concluded that, when the United States is a party to the litigation, the reach of disclosure-limiting Touhy regulations ends at the courthouse doors.***") (emphasis added) (citing *Young v. United States*, 181 F.R.D. 344, 347-48 (W.D. Tex. 1997) (addressing 5 C.F.R. § 2635.805); *Dean v. Veterans Admin. Reg'l Office*, 151 F.R.D. 83, 86-87 (N.D. Ohio 1993) (same); *In re Air Crash Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 737 F. Supp. 399, 404-05 (E.D. Mich. 1989) (addressing the Ethics in Government Act); *United States ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512, 514 (S.D. Ohio 1999) (addressing *Touhy* regulations pursuant to 5 U.S.C. § 301); *Romero v. United States*, 153 F.R.D. 649, 651 (D. Colo. 1994) (addressing 32 C.F.R. § 516.42 , the predecessor to 32 C.F.R. § 516.49 ); *Alexander v. FBI*, 186 F.R.D. 66, 69-71 (D.D.C. 1998) (addressing 5 U.S.C. § 301, and finding that "neither the federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents or testimony from a federal court"); *McElya v. Sterling Med., Inc.*, 129 F.R.D. 510, 514-15 (W.D. Tenn. 1990) (holding

on August 12, including the requested summary of testimony sought for each Deponent.  Because the U.S. Trustee refused to provide dates for which the Deponents were available, JW selected September 16, September 17, and September 23, which did not present any conflicts with other scheduled depositions.  The parties had a meet and confer call on August 14th regarding the depositions and whether the U.S. Trustee would accept service of the subpoenas.

6.      On August 21, counsel for the U.S. Trustee emailed counsel to JW to inform JW that she "do[es] not agree to accept service of the draft, unserved subpoenas dated August 12, 2024 for Ms. Sall and Messrs. Duran, Epstein, Statham, and Hobbs."  Counsel's reference to the August 12th subpoenas as "drafts" was incorrect—the August 12th subpoenas were fully executed.  Counsel to the U.S. Trustee indicated, however, that she "ha[s] been authorized to accept service of new subpoenas issued by JW on behalf of Ms. Sall, and Messrs. Duran and Epstein via email to me."  She provided no explanation for why she could not accept the prior subpoenas but could accept identical new subpoenas for Ms. Sall, Mr. Duran, and Mr. Epstein. She also provided no limitation on her acceptance of service of the subpoenas—*i.e.*, the subpoenas were accepted in their entirety without any "capacity" limitation.  In the same email, the counsel for the U.S. Trustee requested a meet and confer regarding the dates for the depositions and the "necessity and relevance" of the depositions and requests for documents.

7.      The parties had another meet and confer call regarding the subpoenas on August 26, and counsel for the U.S. Trustee provided dates for the depositions of Mr. Duran, Mr. Epstein and Ms. Sall.  During the call, counsel to the U.S. Trustee also confirmed that the Office of the U.S. Trustee is not representing Mr. Hobbs or Mr. Statham and directed JW's counsel to contact

---

that 5 U.S.C. § 301 does not grant authority to assert an evidentiary privilege not recognized by the Federal Rules of Civil Procedure or the law of evidence)); *see also E.E.O.C. v. Los Alamos Constructors, Inc.,* 382 F. Supp. 1373, 1379-1383 (D.N.M. 1974) ("When the government or one of its agencies comes into court (with very few exceptions), it is to be treated in exactly the same way as any other litigant.").

Mr. Hobbs and Mr. Statham directly to coordinate their depositions and service of their subpoenas. At no point during this call did counsel to the U.S. Trustee raise any concern with the capacity in which JW was seeking the depositions or documents from the Deponents.

8.      On August 30, 2024, JW served amended subpoenas for Mr. Duran, Mr. Epstein, and Ms. Sall on counsel for the U.S. Trustee, setting depositions on the agreed-upon dates of October 7, October 10, and October 11.  Counsel for the U.S. Trustee replied 6 days later that "[t]he UST's position is that service requires personal delivery with tender of the witness fee and mileage."  JW tendered three witness fees to the U.S. Trustee's office on September 3rd, and counsel for the U.S. Trustee indicated on September 5th that the U.S. Trustee "will consider service effective for Duran, Sall, and Epstein on September 3."

9.      A week later, on September 13, the parties held another meet and confer call, where counsel for the U.S. Trustee raised the capacity issue for the first time (14 days after service). Counsel for JW reiterated to counsel to the U.S. Trustee that the subpoenas were served and accepted without any limitation.  Counsel to the U.S. Trustee also asked for a postponement of the scheduled deposition for Mr. Hobbs on September 23, and counsel for JW agreed to postpone the deposition until October 23.

10.     On September 17, 2024, the U.S. Trustee served objections to the subpoenas issued to Mr. Epstein, Ms. Sall, and Mr. Duran.  Ms. Sall and Mr. Duran did not respond to the subpoenas personally.  The parties again held a meet and confer call on September 25, 2024, and counsel to the U.S. Trustee informed counsel to JW that he would be filing a motion to quash the subpoenas. Counsel for JW asked that the U.S. Trustee not delay in filing a motion, and the U.S. Trustee filed his Motion to Quash the same day.

## ARGUMENT AND AUTHORITIES

11.     JW is entitled to depose the U.S. Trustee—who is actually a party to these proceedings and has made claims and allegations against JW that initiated these proceedings. None of his arguments regarding the "apex doctrine," relevance, or privilege are valid.   In addition, JW has subpoenaed a select group of two former and two current personnel of the U.S. Trustee, each of whom JW believes have relevant information bearing on the facts and defenses in these proceedings.   JW has not sought wide-ranging or overbroad discovery—rather, JW purposely selected the Deponents based on JW's belief that they are the individuals mostly likely to have discoverable information in these proceedings, which may directly aid in JW's defenses in these cases.   The Court should deny the Motion to Quash and allow these depositions to go forward.

**I.     The U.S. Trustee bears the burden of showing why the subpoenas should be quashed.**

12.     Pursuant to Federal Rule 26(b)(1), a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense."   Fed. R. Civ. P. 26. "Information . . . need not be admissible in evidence to be discoverable."   *Id.*

13.     While the Federal Rules of Procedure do not define "relevant," courts turn to the definition in Federal Rule of Evidence 401: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   *See Enron Corp. Savings Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009).   "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party . . . ."   *See Enron Corp. Savings Plan*, 258 F.R.D. at 159 (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).   At the discovery stage, the "threshold for relevance . . . is lower than at the

trial stage." *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011).  Relevancy is thus to be "construed liberally to reach 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 838 (S.D. Tex. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

14.     The party opposing discovery bears the burden of proof and "must meet the ***heavy*** burden of establishing that compliance with the subpoena would be unreasonable and oppressive." *Sully v. Freeman*, No. A-16-CV-818-RP-ML, 2017 WL 3457123, at *1 (W.D. Tex. Feb. 1, 2017) (emphasis added).  The party resisting discovery cannot simply make conclusory allegations that the requested discovery is unduly burdensome, but "must show how the requested discovery [is] overly broad, burdensome, or oppressive ***by submitting affidavits or offering evidence*** revealing the nature of the burden."  *Id.*

15.     The U.S. Trustee cannot meet his burden here.

## II.     The "apex doctrine" is inapplicable.

16.     The U.S. Trustee's objections to the subpoenas issued to the Deponents based on the so-called "apex executive" doctrine are misplaced.  JW's request to depose the U.S. Trustee is fundamentally different from a scenario where high-ranking government officials or executives to large corporations are sought to be deposed ***solely*** by virtue of their titles.  Of course, in a personal injury case arising from a train crash where the plaintiff seeks to depose the CEO of a railroad, when the CEO was not present at the scene and did not possess unique information regarding the railroad's safety policies, the apex doctrine carries water.[4]  But here, the information possessed by the U.S. Trustee and his personnel are essential to these proceedings—they are the

---

[4] *See Gauthier v. Union Pac. R. Co.*, Case No. 1:07-12, 2008 WL 2467016, at *1 (E.D. Tex. June 18, 2008).

very parties who initiated these proceedings, who are making allegations in these proceedings, and who had the responsibility for overseeing the review of the applications that they now allege should not have been approved.  The "apex doctrine" is inapposite here.

> **A.     The *Salter* standard, used in the Fifth Circuit, does not apply to the Deponents, because they are not "high-level executives."**

17.     In the Fifth Circuit, federal courts are not bound by the Texas state law standard known as the "apex doctrine."  *Henry v. City of Sherman, Tex.*, Case No. 4:17-CV-00313, 2018 WL 624741, at *1 (E.D. Tex. Jan. 30, 2018) (recognizing that "there may not be a federal apex doctrine") (citation omitted); *Gauthier*, 2008 WL 2467016 at *4 n.2 ("[T]he Court finds that the specific standards set forth by the Texas apex doctrine as cited by Defendant is inapplicable in this federal diversity proceeding because federal procedural rules . . . govern the discovery procedures applicable to the management of this case."); *see also Harding v. Cnty. of Dallas, Tex.*, Case No. 3:15-CV-0131-D, 2016 WL 7426127, at *7 n.12 (N.D. Tex. Dec. 23, 2016) (internal citations omitted) ("In their brief, defendants rely on the 'apex doctrine,' which applies under Texas law . . . This court does not follow the 'apex doctrine' as such.").

18.     Instead, the Fifth Circuit employs the *Salter*[5] standard for evaluating depositions of high-ranking officials.  *Fam. One v. Isaacks*, Case No. 9:22-CV-00028-MJT, 2023 WL 4503537, at *5 (E.D. Tex. Apr. 25, 2023).  Under *Salter*, "[f]ederal courts permit the depositions of high-ranking executives, also known as apex executives, when conduct and knowledge at the highest levels of the corporation are relevant to the case."  *Id.* at *6 (citing *Motion Games, LLC v. Nintendo Co.*, Case No. 6:12-cv-878-JDL, 2015 WL 11143486, at *1 (E.D. Tex. Mar. 18, 2015)); *Gauthier*, 2008 WL 2467016, at *3.  As explained by the *Salter* court, "[i]t is ***very unusual*** for a

---

[5] *Salter v. Upjohn*, 593 F.2d 649, 651 (5th Cir. 1979).

court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, **such an order would likely be in error**." *Salter*, 593 F.2d at 651 (emphasis added).

19.     Under the *Salter* standard, the U.S. Trustee must first establish that the Deponents are in fact "high-level executives" such that they would even qualify as "apex" or to seek protection under the *Salter* standard.  The U.S. Trustee has not made such a showing.

20.     Traditionally, "apex deponents" refer to high-level positions of governmental agencies, governors of states, and executives or presidents of large corporations.  JW has been unable to locate **any** case within the Fifth Circuit in which any employee similar to a U.S. Trustee attorney was considered an "apex deponent" or otherwise fell under the *Salter* standard.  *See In re Paxton*, 60 F.4th 252 (5th Cir. 2023) (involving deposition subpoena of Texas Attorney General); *In re Bryant*, 745 F. App'x 215 (5th Cir. 2018), as revised (Nov. 30, 2018) (involving deposition subpoena of Governor of Mississippi's Chief of Staff); *In re F.D.I.C.*, 58 F.3d 1055 (5th Cir. 1995) (involving deposition subpoenas of three members of FDIC's Board of Directors); *Freedom From Religion Found., Inc. v. Abbott*, Case No. A-16-CA-00233-SS, 2017 WL 4582804 (W.D. Tex. Oct. 13, 2017) (involving deposition subpoena of Governor of the State of Texas); *Fam. One v. Isaacks*, 2023 WL 4503537 (involving deposition subpoena of CEO of Little League Baseball); *Gauthier*, 2008 WL 2467016 (involving deposition subpoena of former executive officers of Amtrak); *Salter*, 593 F.2d 649 (involving deposition subpoena of the president of large pharmaceutical company).

21.     Indeed, the U.S. Trustee, and the other Deponents, are not such "high-level executives" meant to fall under the *Salter* standard.  Only Ms. Twomey—the actual Director of

the United States Trustee Program[6] or Director of the Executive Office for U.S. Trustees[7]—would qualify as an "apex deponent." Only Ms. Twomey, not the individual Trustees for the various regional and field offices, can fairly be characterized as a "high-level executive" for purposes of *Salter*. JW does not seek to depose Ms. Twomey.[8]

**B.     The "apex doctrine" and *Salter* standard do not apply where the Deponents are the functional plaintiffs.**

22.    The U.S. Trustee misapplies the "apex doctrine" in these cases, describing how the doctrine "applie[s] to litigation against the government." Motion to Quash, ¶ 22. There is no litigation against the government here. Here, it is the U.S. Trustee who initiated these proceedings against JW by filing his Rule 60 motions and motions to reopen closed cases, and it is the U.S. Trustee who bears the burden of proving his allegations in these cases.[9] In addition, the US. Trustee has not cited a ***single*** case where a ***plaintiff*** was protected from being deposed under the "apex doctrine" or *Salter*—the doctrines simply do not apply in this context.[10]

**C.     JW has met its burden to show that the requested discovery is relevant. The U.S. Trustee cannot meet his burden to show why the subpoenas should be quashed.**

23.    Even assuming that the "apex doctrine" or *Salter* apply to the Deponents, JW has already met its burden for establishing that the testimony and documents sought are within the

---

[6] *See* https://www.justice.gov/ust.

[7] *See* https://www.justice.gov/ust/staff-profile/meet-director.

[8] Even if the "apex doctrine" or *Salter* **could** apply to Mr. Epstein (the current U.S. Trustee for Region 7), Ms. Sall (the current Assistant U.S. Trustee for Region 7), or Mr. Hobbs (the former Acting U.S. Trustee for Region 7)—which JW contests—it certainly does not apply to Mr. Statham (a former trial attorney at the U.S. Trustee's Office) and Mr. Duran (a current trial attorney at the U.S. Trustee's office).

[9] As further proof, this Court set September 30, 2024 as the deadline for parties bearing the burden of proof to produce expert reports. The U.S. Trustee complied with this deadline, acknowledging that he, and he alone, bears the burden of proof.

[10] The *F.D.I.C.* case cited by the U.S. Trustee does not involve the F.D.I.C. as a ***plaintiff*** but as a petitioner requesting a writ of mandamus as a challenge to an order of a magistrate judge declining to quash notices of deposition issued to board members of the FDIC, a non-party in separate litigation ("a condemnation action filed by plaintiff United States of America"). *See In re F.D.I.C.*, 58 F.3d 1055, 1057 (5th Cir. 1995).

scope of permissible discovery—indeed, the Court already determined that the document requests propounded by JW on the U.S. Trustee were proper.[11]   JW has also demonstrated that the Deponents have unique or superior personal knowledge of the facts underlying the U.S. Trustee's allegations and JW's defenses.[12]   *See Langley v. Int'l Business Machines Corp.* Case No.   A-18-CV-443-LY, 2019 WL 4577115, at *4 (W.D. Tex. Sept. 19, 2019) ("One long-established factor considered by courts in determining whether an apex deposition should be taken is whether the individual has unique personal knowledge of the matter in the case.").   As detailed below, JW can further establish that extraordinary circumstances exist (to the extent required) to permit the depositions.

24.     Thus, the burden shifts to the U.S. Trustee to establish why the depositions should not be permitted.   *See Gauthier*, 2008 WL 2467016, at *3.   He has not met this burden.   Rather, his Motion to Quash raises a hodge-podge of objections, none of which are supported by law, and none of which are valid for the reasons set forth below.

25.     As one example, the U.S. Trustee criticizes the topics listed in the subpoenas—again, provided only to the U.S. Trustee as a courtesy given that *Touhy* is inapplicable in these cases—by alleging that JW seeks to "probe the decision-making processes of the United States Trustee."   JW does not seek to do so.   In fact, one of the topics cited by the U.S. Trustee as JW's alleged "probing" is "Jackson Walker's purported duty to disclose to the U.S. Trustee, the Court, or any other Person, knowledge of personal or romantic relationships between professionals, including lawyers, judges, and mediators."   *See* Motion to Quash, ¶ 23.   This topic is ***squarely*** at issue in these proceedings, and JW should be entitled to depose the Deponents (including Mr.

---

[11] *See infra* § III.

[12] *See id.*

Epstein, who is essentially the plaintiff) on what they believe the duties to be and how they were met or not met.  This topic does not impede on the U.S. Trustee's decision-making process:  it is narrowly tailored to obtain discoverable information possessed by the Deponents that is relevant to the U.S. Trustee's claims and JW's defenses in these cases.  Accordingly, the U.S. Trustee's "probing" argument is unpersuasive.

26.     The U.S. Trustee's "unduly burdensome" argument is equally unpersuasive.  In support of his argument, the U.S. Trustee states:  "the Fifth Circuit has explained that because high-ranking officials are often drawn into lawsuits, '[t]hey cannot perform their duties if they are not personally shielded from the burdens of litigation.'"  Motion to Quash, ¶ 24 (quoting *Paxton*, 60 F.4th 258-59).  The U.S. Trustee primarily argues that the depositions would be "unduly burdensome" because he is overseeing "6,000 bankruptcy cases."  Motion to Quash, ¶ 25.  But the U.S. Trustee's principal job function is to oversee bankruptcy cases, and he is not a defendant in "high numbers of lawsuits," unlike high-ranking government officials such as the Texas Attorney General in *Paxton*.  Mr. Epstein initiated these proceedings by filing Rule 60 motions and seeking to reopen cases and vacate unappealable orders, thus exposing himself to the requirements of federal discovery.  It would be unfair for the U.S. Trustee to point to the thousands of lawsuits he is required by law to oversee in order to avoid his obligations in this case—a lawsuit of his own choosing.

27.     On the contrary, JW's subpoenas are not "unduly burdensome" and can be justified under the "extraordinary circumstances" standard cited by the U.S. Trustee.  *See* Motion to Quash, ¶ 1.  Assuming the Deponents qualify as "apex deponents," which they do not, JW has exhausted the less-intrusive means of obtaining information from the U.S. Trustee.  JW sent document requests and interrogatories to the U.S. Trustee, which the U.S. Trustee objected to, and JW had

to go through the process to obtain a court order compelling the U.S. Trustee to produce information and answer interrogatories related to these proceedings. The document requests and interrogatories, however, were directed to the U.S. Trustee, as the plaintiff to these proceedings. The subpoenas, on the other hand, seek testimony and documents from the Deponents, not only as current or former personnel of the U.S. Trustee, but in their personal capacities as well. There is no less intrusive way to obtain this information other than asking the Deponents themselves. JW is simply defending against the allegations made by the U.S. Trustee, and it would be an **extremely** unusual case for a defendant to be prevented from deposing the party asserting allegations against it. *See supra* ¶ 18 (citing *Salter*, 593 F.2d at 651 ("[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.").

28.     Moreover, Mr. Epstein verified the interrogatory answers under oath "to the best of [his] knowledge, information, and belief." By doing so, Mr. Epstein has subjected himself to the discovery process and JW should be entitled to depose him to elaborate and clarify on his otherwise boilerplate sworn interrogatory answers. There are no other less burdensome means such as having other witnesses from whom JW can obtain the sought-after information. *See In re FDIC*, 58 F.3d at 1062 (holding that a key aspect of the "extraordinary circumstances" analysis is whether the sought after information can be obtained from other witnesses). Accordingly, JW has established that the deposition subpoenas will not be "unduly burdensome" to the Deponents.

29.     Furthermore, Mr. Epstein's deposition would also not "result in the disruption of his ability to perform official duties." Motion to Quash, ¶ 25. The U.S. Trustee has repeatedly reminded this Court throughout these proceedings that he is pursuing his allegations **because** he

is the U.S. Trustee—the "watch dog" of the bankruptcy system.[13]  In other words, accordingly to the U.S. Trustee, bringing these proceedings is exactly what he is charged to do—thus, participating in these proceedings is squarely within his official duties and would not cause any disruption.

30.     Accordingly, the Court should not quash the subpoenas on the basis of the inapplicable "apex doctrine."

### III.     The Deponents' knowledge is plainly discoverable, as this Court has already found.

31.     In his motion, the U.S. Trustee continues to allege that the knowledge of the U.S. Trustee is irrelevant to these proceedings.  This Court has already addressed this issue, ruling that JW is entitled to discovery regarding the U.S. Trustee's knowledge and his personnel's knowledge.[14]

32.     In brief, the U.S. Trustee's knowledge and actions are directly relevant here to both his allegations and the defenses that JW may raise.  His knowledge here is relevant[15] because if the U.S. Trustee or his personnel knew of the relationship at the time the challenged orders were entered, then he cannot establish the "manifest injustice" or "extraordinary circumstances" required to prevail on his Rule 60 motions.  The U.S. Trustee also could not establish cause to reopen the numerous closed cases at issue here, if he knew of the relationship at the time the orders were entered but chose to do nothing.  The U.S. Trustee's knowledge is plainly relevant and ties

---

[13] *See* Aug. 7, 2024 Hr'g Tr. at 120:10-13.

[14] JW fully briefed the relevance of the U.S. Trustee's knowledge in its *Expedited Motion to Compel Production of Documents and Responses to Interrogatories from the U.S. Trustee* [Dkt. No. 280] (the "Motion to Compel"), which JW incorporates fully as if set forth herein.

[15] In his Motion to Quash, the U.S. Trustee oddly notes that "he does not claim that Jackson Walker was obligated to disclose the Relationship only to the United States Trustee" and therefore the U.S. Trustee's knowledge is irrelevant. He misunderstands the relevancy argument asserted by JW.

directly to certain allegations and defenses made in these proceedings.[16]  The Court should again find that the information sought by the deposition subpoenas is relevant and discoverable.  The Court should not quash the subpoenas on this basis.

## IV.  The Deponents are not immune from deposition simply because the U.S. Trustee answered interrogatories.

33.    The U.S. Trustee suggests that his production of "nearly 8000 pages of documents"[17] and responses to JW's interrogatories is all that is required of him in the discovery process.  If that were the case, there is no explanation for why the U.S. Trustee needed to take the depositions of *17* JW witnesses, particularly given JW's productions of over 24,100 pages of documents and answers to 106 interrogatories (far beyond the 25 allowed under the Federal Rules).  Again, the U.S. Trustee complains that ordinary, two-sided discovery is unfair and seeks to quash the subpoenas as "cumulative."

34.    JW obtained—through the document production this Court compelled the U.S. Trustee to produce—complaints from third parties regarding the U.S. Trustee and allegations of his inaction during the Relevant Cases.  One party wrote to Mr. Epstein and Ms. Sall:

---

[16] *See, e.g.*, *In re 4E Brands Northamerica, LLC*, Case No. 22-50009, Dkt. No. 692 p. 14, n.19 ("While the U.S. Trustee purports to be unaware of this proceeding and the allegations initially raised by Mr. Van Deelen, the notice of removal of Mr. Van Deelen's state court complaint against certain McDermott officers—which was the genesis of the adversary proceeding that ultimately led to Mr. Van Deelen's recusal request—was noticed on the main bankruptcy case docket to which the U.S. Trustee had appeared."); *id.* p. 31, ¶¶ 74-76 ("Rule 60(b)(6) is available only in extraordinary circumstances upon consideration of a multitude of factors and to prevent manifest injustice, all while balancing the requested relief against the need for preserving the finality of judgments or orders."); *In re Exco Resources, Inc.*, Case No. 18-30155, Dkt. No. 2347, p. 3, ¶ 6 ("The U.S. Trustee also fails to articulate how the estates would benefit from reopening these Chapter 11 Cases given the significant passage of time . . . ."); *id.* at p. 16, ¶ 36 (". . . over four and a half years after these Chapter 11 Cases were closed—the U.S. Trustee filed his Motion."); *id.* at pp. 17-18, ¶ 41 ("Facts and circumstances courts consider include the passage of time since closing of the cases, and the benefits and harms to the estate of reopening.  'Timing and futility' are particularly important to the reviewing court.  As more time has passed since the closing of the cases, the more compelling the circumstances shown must be."); *id.* at p. 20, ¶ 49 ("Although there is no firm definition of what constitutes 'extraordinary circumstances,' the Fifth Circuit has set forth the following factors for courts to consider: . . . (6) whether there are intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.").

[17] In actuality, the majority of the U.S. Trustee's court-ordered production constituted copies of pleadings rather than substantive documents.

Merely addressing the Jackson Firm's role is insufficient because it suggests it was the lone player in a complex scheme that benefitted everyone but creditors. Indeed, creditors must now even question your office, and wonder what did it know and when? It is critical that further steps be taken to restore faith in the bankruptcy system as a whole, and specifically in the Bankruptcy Court for the Southern District of Texas.

35.     The U.S. Trustee has also consistently demanded transparency in these proceedings. But transparency is a two-way street, and the Court should apply it across the table.  While JW appreciates that the U.S. Trustee has answered interrogatories and produced documents, JW is entitled to depose the U.S. Trustee—and the other Deponents—on, among other things, what they reviewed in order to answer such discovery, their process for identifying locations and custodians in order to determine what documents may be responsive, or their diligence and inquiries to other U.S. Trustee personnel to determine whether they had knowledge of the relationship.  Simply stated, JW is entitled to test the answers set forth in the interrogatories and is not required to merely take the U.S. Trustee at his word.  If these cases could have been tried solely on sworn interrogatories and document production, surely they would have been tried by now.

36.     As explained above, JW also seeks information from the Deponents in their individual capacities.  JW believes that the Deponents were present at social events where Ms. Freeman and former Judge Jones were also present.  JW knows that some of the Deponents were members of the complex case committee, which the U.S. Trustee has asked extensive questions about from multiple witnesses.  Mr. Statham and Mr. Duran were heavily involved in overseeing the Relevant Cases on behalf of the Office of the U.S. Trustee during the relevant time period.  JW also believes that some of the Deponents were employed by the U.S. Trustee when Ms. Freeman was at the courthouse serving as former Judge Jones's law clerk, or were in private practice with some of former Judge Jones's closest friends.  Among other reasons, the Deponents are likely to have personal knowledge and information relevant to the claims and defenses in these cases, and

that information is not cumulative of the discovery answered by the U.S. Trustee in his official

capacity

**V.    The Deponents cannot hide behind assertions of privilege merely because they are attorneys.**

37.    The U.S. Trustee asks the Court to quash the subpoenas because "the USTP

Personnel are all attorneys, and the majority of information sought . . . would be protected under

the attorney-client privilege, the attorney work-product doctrine, or the deliberative process

doctrine."  Motion to Quash, ¶ 4.  The U.S. Trustee misunderstands the law.

38.    As the party asserting the privilege, the U.S. Trustee "bears the burden of

demonstrating its applicability."  *See In re Sante Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir.

2001).  He "cannot rely merely on a blanket assertion of privilege," despite his efforts to do so in

his Motion to Quash.  *See Enron Corp. Savings Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D.  at

160  (citation omitted).  The U.S. Trustee has not met his burden.

39.    First, it is illogical to suggest that the Deponents cannot be deposed simply because

they are attorneys.  *Walker v. United Parcel Services*, 87 F.R.D. 360, 361 (E.D. Pa. 1980) ("it is

clear that no special privilege or immunity shields a person from deposition simply because he or

she is an attorney, or even an attorney for a party to the suit").  A lawyer is not immune from

deposition merely because he or she is a lawyer.

40.    Although the U.S. Trustee has cited cases for the support that "there is a strong

presumption against permitting deposition[s] of opposing counsel," *see* Motion to Quash, ¶ 33,

JW is ***not*** seeking to depose the Deponents ***as opposing counsel*** in these proceedings, but as

participants in the Houston bankruptcy community who had personal interactions with Ms.

Freeman and former Judge Jones and who may themselves have had knowledge of the Freeman-

Jones relationship during the relevant cases—facts which could aid in the allegations or defenses

in these proceedings.[18]   The cases applying to depositions of opposing counsel simply do not apply.

41.     For example, the U.S. Trustee has already deposed *30* witnesses, *all* of whom are attorneys or legal staff, except for former Judge Jones's housekeeper and Mr. Van Deelen. Further, the vast majority of the witnesses participated as lawyers or legal staff on behalf of clients in the relevant cases.   Each of these depositions was taken with the ordinary abilities for the deponent's counsel to object on the basis of privilege.   Nothing prohibits the depositions of the Deponents from being conducted in the same manner.

42.     Second, just because the Deponents may have communicated with each other, or with others at the U.S. Trustee's office, does not make all of their communications—or the facts communicated—protected by the attorney-client privilege.   *In re Royce Homes, LP*, 449 B.R. 709, 723 (Bankr. S.D. Tex. 2011) ("Not all communications between a client and his or her attorney are protected by the attorney-client privilege.").   The Fifth Circuit has made clear that "[t]he attorney-client privilege . . . is not a broad rule of law which interposes a blanket ban on the testimony of an attorney."   *United States v. Pipkins*, 528 F.2d 559, 562-63 (5th Cir. 1976).   Rather, the privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."   *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citations omitted).   And, more importantly, the privilege "does not embrace everything that arises out of the existence of an attorney-client relationship."   *Pipkins,* 528 F.2d at 563.

43.     The work-product doctrine likewise is not implicated here.   The work-product doctrine protects documents and tangible things prepared in anticipation of litigation or for trial

---

[18] *See* July 16, 2024 Hr'g Tr. 91:13-20; July 29, 2024 Hr'g Tr. 23:3–24:13 (counsel for the U.S. Trustee explaining that what individuals in the Houston legal community (which of course includes the Houston-based U.S. Trustee attorneys) knew about the Freeman-Jones relationship was "highly relevant.").

by or for another party or its representative; it does not apply to all documents prepared by an attorney. *Adams v. Memorial Hermann*, 973 F.3d 343, 349 (5th Cir. 2020); *see Enron Corp. Savings Plan*, 258 F.R.D. at 162 ("Work product does not protect materials created in the ordinary course of business or pursuant to public requirements that are not related to litigation.").

44.     Neither the attorney-client privilege nor work product doctrine protects underlying ***facts***. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (recognizing that "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"); *Adams*, 973 F.3d at 349 ("Like the attorney-client privilege, the work-product doctrine 'protects only the attorney's work product and not the underlying facts.'") (quoting *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982)). "Thus, a fact is not privileged 'merely because a client incorporated a statement of such fact into his communication to his attorney.'" *Adams*, 973 F.3d at 349 (quoting *Upjohn*, 449 U.S. at 396).

45.     A review of the list of topics provided with the subpoenas makes clear that JW does not seek any privileged information. The topics for which JW seeks testimony concern, generally, four topics:

- Relationship, Cohabitation, Joint Home Ownership;

- Social and Professional Events;

- Complex Case Panel and Jones's Cases and Mediations; and

- UST Policies, Interview of Freeman, and Discovery Responses.

The subpoenas seek the Deponents' ***personal knowledge*** of certain ***facts***, including but not limited to, the intimate relationship between Ms. Freeman and former Judge Jones, their cohabitation, their financial relationship, their interactions, social events, the relevant cases, and certain of the

U.S. Trustee's policies, guidance, or procedures. ***None*** of this information involves communications between the U.S. Trustee and his attorneys which could possibly be implicated by the attorney-client privilege.

46.     Third, to the extent that JW asks one of the Deponents a question that calls for a privileged answer, the Deponents are free to assert such privilege at that time. *See McKee*, 2012 WL 13137023, at *4 (denying motion to quash subpoena seeking privileged information because, if true, the deponent "must object to the questions that require privileged answers during the deposition."); *Laurent v. Bankers Ins. Co.*, Case No. 22-857, 2022 WL 2952987, at *6 (E.D. La. July 26, 2022) ("Deposition questions that implicate the attorney-client privilege or work product doctrine can be addressed by counsel on a case-by-case basis during the deposition"); *Wis. Province of Soc'y of Jesus v. Cassem*, No. 3:17-cv-01477 (VLB), 2019 WL 4928866, at *4 (D. Conn. Aug. 22, 2019) (denying third-party's motion to quash and explaining that "[d]uring the deposition her counsel [could] object to any questions that implicate[d] a privilege"). But the fact that certain deposition questions may implicate the attorney-client privilege or work product doctrine does not preclude the deposition entirely. *See Rotstain v. Trustmark Nat'l Bank*, Case No. 3:09-CV-2384-N-BQ, 2020 WL 12968651, at * 7 (N.D. Tex. Mar. 10, 2020) (denying a motion to quash on grounds that "imposing a blanket order" barring a deposition because of the potential that the deponent "hold[s] such privileged or protected information, is not appropriate at this stage"); *Laurent*, 2022 WL 2952987, at *6; *see also Chemtech Royalty Assocs., L.P. v. United States*, Case Nos. 5-944, 6-258, 7-405, 2009 WL 854358, at *3 (M.D. La. Mar. 30, 2009) (stating "blanket assertions [of privilege] are unacceptable.") (internal quotations and citations omitted); *Turner v. Grumpy, LLC*, No. 2:08-49-P-A, 2009 WL 259927, at *2 (N.D. Miss. Feb. 2, 2009)

("Blanket assertions of privilege, however, are unacceptable and the court and the other parties must be able to test the merits of the privilege claim.") (citations omitted).

47.     As such, the Court should not quash the subpoenas but allow the depositions to go forward subject to any objections as may be stated on the record.

## <u>CONCLUSION</u>

For the foregoing reasons, JW requests that the Court deny the Motion to Quash and grant JW such other relief as to which it may be entitled.

*[Remainder of Page Intentionally Left Blank]*

Dated:  October 7, 2024

**NORTON ROSE FULBRIGHT US LLP**

Jason L. Boland (SBT 24040542)
William Greendyke (SBT 08390450)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone:  (713) 651-5151
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Paul Trahan (SBT 24003075)
Emily Wolf (SBT 24106595)
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
paul.trahan@nortonrosefulbright.com
emily.wolf@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

**RUSTY HARDIN & ASSOCIATES, LLP**

*/s/ ___ Russell Hardin, Jr._____*
Russell Hardin, Jr. (SBT 08972800)
Leah M. Graham (SBT 24073454)
Jennifer E. Brevorka (SBT 24082727)
Emily Smith (SBT 24083876)
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com

*Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Maria Mokrzycka*
Maria Mokrzycka