# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>**AUTO PLUS AUTO SALES LLC,**<br><br>Wind-Down Debtor. | Chapter 11<br><br>Case No. 23-90055 (CML)<br><br>(Formerly Jointly Administered under Lead Case IEH Auto Parts Holding LLC, Case No. 23-90054) |

## UNITED STATES TRUSTEE'S MOTION FOR
### (1) RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9024 APPROVING COMPENSATION APPLICATIONS OF JACKSON WALKER LLP, (2) SANCTIONS, AND (3) RELATED RELIEF

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ....................................................................................................3

I.    Legal Framework of Title 11..........................................................................3

II.   Ms. Freeman and Judge Jones Secretly Live Together in a House They Jointly
Own, Leading to Judge Jones's Resignation Upon Disclosure..........................4

    A.    Jackson Walker and Ms. Freeman Regularly Practice Before Judge Jones ...........4

    B.    Allegations of a Romantic Relationship Between Judge Jones and Ms.
Freeman Are Raised in a 2021 Proceeding ...........................................5

    C.    Jackson Walker Takes No Remedial Steps to Disclose the Truth...........................6

    D.    Jackson Walker Admittedly Learns of an Ongoing Romantic Relationship
Between Judge Jones and Ms. Freeman by Spring 2022, But Still Does Not
Disclose It...................................................................................7

    E.    Judge Jones Publicly Confirms the Relationship with Ms. Freeman.....................8

    F.    The Fifth Circuit Files an Ethics Complaint Against Judge Jones Finding
"Probable Cause to Believe That Misconduct by Judge Jones Has Occurred"......8

    G.    Judge Jones Resigns and the Bankruptcy Court Reassigns His Cases ..................9

    H.    Cases Affected by Judge Jones's Failure to Recuse and Jackson Walker's
and Ms. Freeman's Breach of Their Duties.........................................10

III.   Neither Ms. Freeman nor Jackson Walker Disclosed Judge Jones's Intimate
Relationship with Ms. Freeman when He Was Proposed as a Mediator for this Case......10

    A.    The Debtors Retain Jackson Walker and the Law Office of Liz Freeman...........10

    B.    Judge Jones Is Appointed as a Mediator ............................................12

    C.    Jackson Walker Seeks and Is Awarded Fees.......................................13

    D.    The Court Confirms a Plan............................................................13

ARGUMENT.............................................................................................................14

I.  Jackson Walker Was Required to Disclose that Ms. Freeman and Judge Jones Had an Intimate Relationship and Lived in a House They Jointly Owned.............................15

   A.  The Court's Mediation Rules Required Disclosure of Ms. Freeman's Relationship with Judge Jones............................................................................15

      1.  Ms. Freeman's Relationship with Judge Jones Disqualified Him as a Mediator in Cases Where She or Her Firm Represented a Party.............16

      2.  Local Rule 16.4.I(2) Required Jackson Walker to Disclose Ms. Freeman's Relationship with Judge Jones.................................................21

   B.  Because Jackson Walker and Ms. Freeman Were Retained by the Estate Under Section 327, Jackson Walker Was Required to Disclose Ms. Freeman's Relationship with Judge Jones.............................................................23

      1.  Section 327 and Rule 5002 Preclude Retention of Professionals Who Are Not Disinterested, Who Hold Adverse Interests to the Estate, or Who Are Connected to the Judge.............................................................23

      2.  Judge Jones's Appointment as a Mediator Rendered Jackson Walker and Ms. Freeman No Longer Eligible for Retention Under Section 327.......................................................................................................26

      3.  Jackson Walker Was Required to Disclose All Facts Relevant to Its Eligibility to Be Retained Under Section 327, Including Ms. Freeman's Relationship with Judge Jones.................................................29

   C.  The Texas Disciplinary Rules Required Jackson Walker to Disclose Ms. Freeman's Relationship with Judge Jones.............................................................35

      1.  Jackson Walker Violated Disciplinary Rule 3.03 Requiring Candor........36

      2.  Jackson Walker Violated Disciplinary Rule 4.01 Requiring Truthfulness in Statements to Others.....................................................37

      3.  Jackson Walker Violated Disciplinary Rule 8.04 by Knowingly Assisting Judge Jones's Violation of Local Rule 16.4.I(1)......................38

II. This Court Should Order Jackson Walker to Return All Compensation Because of the Failure to Disclose Ms. Freeman's Relationship with Judge Jones...........................38

   A.  This Court Should Vacate the Prior Orders Awarding Jackson Walker Compensation and Order a Return of Compensation Paid...................................39

| | 1. | This Court Should Order Jackson Walker to Return the Compensation It Received Under Section 328(c) | 40 |

| | 2. | Jackson Walker's Violation of Its Disclosure Obligations as Section 327 Professionals Warrants an Order Requiring Jackson Walker to Return the Compensation It Received | 42 |

    B.    This Court Should Order Jackson Walker to Return Compensation Paid as a Sanction for Violating this Court's Rules ........................................................... 45

**CONCLUSION** ................................................................................................................... **48**

Kevin Epstein, United States Trustee for Region 7 ("U.S. Trustee"), moves for an order (1) granting relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure vacating the order approving Jackson Walker LLP's ("Jackson Walker") application for fees and expenses and ordering a return of the amounts paid, (2) sanctioning Jackson Walker by ordering the return of all fees and expenses previously paid to the firm, and (3) any further relief the Court deems appropriate.

## PRELIMINARY STATEMENT

1.      The undisclosed intimate relationship between former Judge David R. Jones and Elizabeth Freeman—a partner (now former) at Jackson Walker ("Judge Jones" and "Ms. Freeman," respectively) significantly compromised the integrity of and public faith in the bankruptcy system.

2.      As discussed in the United States Trustee's past filings, there are numerous cases in which Judge Jones presided and awarded fees to Jackson Walker despite, and without disclosure of, the fact that he jointly owned and shared a home with his romantic partner, Ms. Freeman, while she worked with the firm. *See, e.g.*, United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief, *In re Neiman Marcus Grp. Ltd. LLC*, Case No. 20-32519, Dkt. 3224 (Bankr. S.D. Tex. Feb. 29, 2024).

3.      Judge Jones also acted as a mediator in several cases, including this one, in which Jackson Walker represented a party. Mediation plays a critical role in achieving compromises that can lead to better results for all parties in bankruptcy. For mediation to be effective, however,

1

parties must have confidence that the mediator is objective, impartial, and will maintain their confidences.

4.      For this reason, this Court's rules disqualify mediators from cases where the mediator's partiality might reasonably be questioned, including specifically where the mediator has an intimate relationship with a party's counsel.  And they require counsel to disclose to the court any potential mediator conflicts.

5.      In addition, the Bankruptcy Code requires that all debtors' counsel satisfy rigorous standards for employment and compensation, including that counsel is both conflict-free and disinterested and remain so throughout the case.  11 U.S.C. §§ 327, 328(c), 330.

6.      One way these ethical requirements are enforced is through the lawyers' public disclosure of all facts necessary for parties and the Court to determine whether a mediator's recusal or counsel's disqualification might be required.  Even if such disqualification is not required, disclosure is critical to provide parties sufficient information to evaluate whether they would prefer to choose a different mediator.

7.      Full disclosure of all relevant facts is accordingly required under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the Southern District of Texas, the Texas Disciplinary Rules of Professional Conduct ("Disciplinary Rules"), and common law fiduciary duties.  Jackson Walker and Ms. Freeman violated these obligations by not disclosing at any time Ms. Freeman's relationship with Judge Jones and by continuing to seek appointment and perform services in cases where he served as a mediator.

8.      Jackson Walker's violations implicate both its continued retention and its compensation in this case.  Because Jackson Walker ceased to be eligible for employment and compensation once Judge Jones was appointed as mediator due to the undisclosed relationship, the

2

order approving its compensation should be vacated under Rule 60(b)(6). Additionally, the Court should sanction Jackson Walker for its misconduct by ordering the return of fees and expenses paid in this matter, as well as ordering any other appropriate relief.

**BACKGROUND**

## I.      Legal Framework of Title 11

9.      Upon the filing of a chapter 11 petition, the debtor becomes a debtor-in-possession ("DIP") with fiduciary duties to its creditors. *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 271 (5th Cir. 2015) (citing 11 U.S.C. §§ 1101, 1106–08); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985). All the DIP's interests in property or other rights become part of the bankruptcy estate, 11 U.S.C. § 541, and creditors typically are paid from those estate assets under a confirmed plan of reorganization.

10.      Lawyers representing DIPs must have their employment and compensation approved by the bankruptcy court and must satisfy a host of obligations, including requirements to disclose all "connections" and to satisfy ethics standards, among others, prohibiting conflicts of interest and requiring disinterestedness. 11 U.S.C. §§ 101(14), 327; Fed. R. Bankr. P. 2014. Once employed, a DIP's lawyers' reasonable and necessary compensation may be paid from the estate after counsel files a detailed application disclosing the work done and by whom along with their hours and fees billed; the court approves applications on an interim basis during the case, 11 U.S.C. § 331, and on a final basis at the case's conclusion, 11 U.S.C. § 330. Because compensation for DIP lawyers is afforded priority of payment as an administrative expense from the estate, every dollar of lawyer compensation is paid before any recovery to creditors and may reduce the creditors' recoveries in the case. *See* 11 U.S.C. § 503(b)(2).

3

## II.    Ms. Freeman and Judge Jones Secretly Live Together in a House They Jointly Own, Leading to Judge Jones's Resignation Upon Disclosure

### A.    Jackson Walker and Ms. Freeman Regularly Practice Before Judge Jones

11.    Elizabeth Freeman is a licensed Texas attorney residing in the State of Texas.  Ms. Freeman was previously a partner at Jackson Walker and currently practices with the firm she founded, The Law Office of Liz Freeman, PLLC.

12.    Jackson Walker is a law firm with multiple offices in the State of Texas.

13.    In 2011, the U.S. Court of Appeals for the Fifth Circuit ("Fifth Circuit") appointed Judge Jones as a bankruptcy judge for the Southern District of Texas.  *See* 28 U.S.C. § 152(a)(1), (2).  On April 10, 2023, he was appointed as a mediator in these cases.

14.    Ms. Freeman is a former law clerk to Judge Jones.  *See, e.g., In re J.C. Penney Direct Mktg. Servs., LLC*, No. 20-20184 (Bankr. S.D. Tex. Nov. 13, 2023), ECF No. 1244, ¶ 4 (Preliminary Response of Jackson Walker LLP to Recent Filings by the U.S. Trustee) ("Prelim. Resp.").  During her clerkship, Ms. Freeman and Judge Jones began seeing each other romantically, *id*. ¶ 13, and Ms. Freeman and Judge Jones have lived together in a house that they have jointly owned since 2017, *see* **Exhibit 2** (property records).  Ms. Freeman stated in her interview with the U.S. Trustee that, in December 2021 and again in December 2022, she paid half of the property taxes on the home.

15.    Ms. Freeman joined Jackson Walker as a partner on May 14, 2018.  *See, e.g.* Prelim. Resp. ¶¶ 7, 18; Ethics Complaint pp. 1–2.[1]  According to the firm, Ms. Freeman had "quick and substantial success," and "Jackson Walker's debtor practice grew very substantially" after her

---

[1] *Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvements Act of 2002*, Complaint No. 05-24-9002 (5th Cir. Oct. 13, 2023) ("Ethics Complaint"), attached as **Exhibit 1**.

hiring, with "Elizabeth's leadership and contribution . . . recognized as integral" to the firm's success. Prelim. Resp., Ex. 1, p. 2–3. Ms. Freeman was thus promoted to equity partner from income partner effective January 1, 2021. Prelim. Resp. ¶ 7.

16.     Ms. Freeman left Jackson Walker by December 2022 and opened her own practice, The Law Office of Liz Freeman, PLLC. *Id.* at ¶ 18; Ethics Complaint pp. 1–2.

17.     Jackson Walker regularly appeared in cases before Judge Jones in the period after Ms. Freeman joined the firm in 2018, including in cases on which Ms. Freeman worked and billed fees. Prelim. Resp. Ex. 1, p. 3; Ethics Complaint p. 2.

18.     While Ms. Freeman was a partner at Jackson Walker, the firm also represented parties in cases mediated by Judge Jones, and Ms. Freeman worked and billed on many of those cases.

**B.     Allegations of a Romantic Relationship Between Judge Jones and Ms. Freeman Are Raised in a 2021 Proceeding**

19.     An intimate relationship between Judge Jones and Ms. Freeman was first alleged on March 8, 2021, in an adversary proceeding in the case of *In re McDermott Int'l, Inc.*, No. 20-30336 (Bankr. S.D. Tex.), when a *pro se* plaintiff, Michael Van Deelen, attached to an amended recusal motion an anonymous letter that he said he had received just days before accusing Judge Jones of "corruption." Order on Appeal Affirming Dismissal of the Adversary Proceeding and Denial of Motion to Recuse, *Van Deelen v. Dickson* (*In re McDermott Int'l Inc.*), No. 21-3369 (S.D. Tex. Jan. 9, 2023), ECF No. 33 at 37–38.[2] The letter alleged that Judge Jones "has had a romantic relationship" with Ms. Freeman.

---

[2] The matter is now pending before the U.S. Court of Appeals for the Fifth Circuit. *Van Deelen v. Dickson (In re McDermott Int'l Inc.)*, No. 23-20436 (appeal docketed Sep. 11, 2023).

20.    Jackson Walker was debtors' counsel in the bankruptcy proceeding and both it and Kirkland & Ellis represented the individual director and officer defendants in the adversary proceeding.[3]

21.    The same day that Mr. Van Deelen filed this letter, Jackson Walker moved to file unnamed documents under seal, stating that it had received increasingly "antagonistic communications" from the *pro se* plaintiff that Jackson Walker alleged contained "defamatory statements." *Van Deelen*, Adv. Pro. 20-03309, ECF No. 36 (Mar. 8, 2021).

22.    The "antagonistic communications" that Jackson Walker filed under seal included an anonymous letter that it received on Saturday, March 6, 2021, about a relationship between its partner, Ms. Freeman, and Judge Jones.  Prelim. Resp. ¶ 10.  Jackson Walker has admitted that it then learned from Ms. Freeman that the allegation in the anonymous letter that she had been in a relationship with Judge Jones was true; she "acknowledged that there had been a romantic relationship between her and Judge Jones," but stated that it had ended.[4]  *Id.* ¶ 13.  By March 8, 2021, Jackson Walker retained counsel to consult about its ethical obligations.  *Id.* ¶ 14.

**C.    Jackson Walker Takes No Remedial Steps to Disclose the Truth**

23.    Notwithstanding Jackson Walker's admitted knowledge of the secret relationship between its partner, Ms. Freeman, and Judge Jones no later than March 2021, *see* Prelim. Resp. ¶ 13, Jackson Walker never publicly disclosed that relationship in any pending, closed, or subsequently filed case during the following 20 months while Ms. Freeman was a partner—or thereafter when she was Jackson Walker's contract attorney or recommended conflicts/co-counsel.

---

[3] The U.S. Trustee was not a party to the adversary proceeding.

[4] In her day-long interview with the U.S. Trustee, Ms. Freeman stated that her cohabitation with Judge Jones was continuous except during the COVID-19 school closures when she lived with her children at another location.  But she admitted that she never moved out of the home she shared and owned with Judge Jones.

24. According to Jackson Walker, in March 2021, Ms. Freeman only admitted to a past relationship. Prelim. Resp. ¶ 13. But "[n]o further details were sought at that time." *Id*., Ex. 1, p. 3.

25. Jackson Walker has not indicated whether it hired independent counsel or investigator to investigate the alleged relationship, nor has it disclosed the findings of any such investigation if it did. The firm did, however, consult with outside ethics counsel and sought an ethics opinion on its proposed remedial measures to "minimize[e] the risk that the firm's participation in *future contested matters* before the judge, through [its] partner or others, might result in disqualification of the judge or of [the firm]." Prelim. Resp., Ex. 1, p. 2 (emphasis added).

**D.    Jackson Walker Admittedly Learns of an Ongoing Romantic Relationship Between Judge Jones and Ms. Freeman by Spring 2022, But Still Does Not Disclose It**

26. Jackson Walker contends it first learned that Ms. Freeman was in an ongoing, not just past, romantic relationship with Judge Jones in Spring 2022. Prelim. Resp. ¶ 16 (stating that, after receiving the second allegation, Ms. Freeman "admitted the relationship had resumed").[5] But it did not make a remedial disclosure in any case, either pending or closed.

27. This is so despite Ms. Freeman's lawyer's urging Jackson Walker in spring 2022 to disclose the relationship in all past cases and in cases going forward. Indeed, he went so far as to prepare a draft disclosure and provided it to Jackson Walker.[6]

---

[5] According to Jackson Walker's Preliminary Response, Ms. Freeman "shortly after" retained her own counsel, Prelim. Resp. ¶ 16; Ms. Freeman's counsel has informed the U.S. Trustee that he was retained on April 8, 2022.

[6] Ms. Freeman's lawyer, Tom Kirkendall, provided this information during his interview with the U.S. Trustee. Mr. Kirkendall, however, said that he does not believe Jackson Walker was legally obligated to disclose the information but that doing so would then force Judge Jones to disclose the relationship, as Mr. Kirkendall said he thought Judge Jones was obligated to do. The U.S. Trustee contests that Jackson Walker was not obligated to disclose.

**E.** **Judge Jones Publicly Confirms the Relationship with Ms. Freeman**

28.     On October 6, 2023, the digital media company, Business Insider, for the first time, made public the allegation in the sealed document in the *McDermott* adversary proceeding that Judge Jones and Ms. Freeman had a romantic relationship.  Dakin Campbell & Nicole Einbinder, *Lawsuit Alleges Undisclosed Relationship Involving Federal Judge that Could Cloud Corizon Bankruptcy Deal*, Business Insider, Oct. 6, 2023, attached as **Exhibit 3**.  They learned of the relationship because Mr. Van Deelen provided them a copy of a complaint he had filed against Judge Jones.[7]  *Id.*  Business Insider included the additional detail that Ms. Freeman and Judge Jones had been living together for years.  *Id.*

29.     Although Business Insider reported that Judge Jones denied the relationship, *id.*, the following day, the Wall Street Journal reported that Judge Jones acknowledged he is and has been in a relationship, and has shared a home for years, with Ms. Freeman.  Alexander Gladstone & Andrew Scurria, *Bankruptcy Judge Jones Named in Lawsuit Over Romantic Relationship with Local Lawyer*, Wall Street Journal Pro, Oct. 7, 2023, attached as **Exhibit 4**.  Judge Jones denied that he had any duty to recuse or to disclose because he was not married to Ms. Freeman and was entitled to his privacy.  *Id.*  He also claimed that "there was no economic benefit to him from her legal work."  *Id.*

**F.** **The Fifth Circuit Files an Ethics Complaint Against Judge Jones Finding "Probable Cause to Believe That Misconduct by Judge Jones Has Occurred"**

30.     On October 13, 2023, Judge Jones announced from the bench that he was under investigation by the Fifth Circuit, had been asked to step down from the complex case panel

---

[7] The Complaint has been unavailable on the docket and remains so as of March 29, 2024.  On October 23, 2023, the court entered an order sealing the document for "purposes of judicial security."  *Van Deelen v. Jones*, No. 23-03729 (S.D. Tex. Oct. 23, 2023), ECF No. 4.  Because of that sealing order, the U.S. Trustee does not attach the complaint to this Motion.

pending the investigation, and would do so effective immediately.[8]  Dietrich Knauth, *Top US Bankruptcy Judge, Under Ethics Review, Steps Back from Major Cases,* Reuters, Oct. 13, 2023, attached as **Exhibit 5**.

31.     The Bankruptcy Court then entered General Order 2023-10, which removed Judge Jones from the complex case panel and reassigned his existing complex cases to Judges Lopez and Isgur.  *See* General Order 2023-10, Order Designating Complex Case Panel (Oct. 13, 2023).

32.     Later on October 13, the Chief Judge of the Fifth Circuit filed the Ethics Complaint against Judge Jones, finding "probable cause to believe that misconduct by Judge Jones has occurred."  Ethics Complaint p. 1.  According to the Ethics Complaint, "Judge Jones is in an intimate relationship with Elizabeth Freeman.  It appears that they have cohabited (living in the same house or home) since approximately 2017."  *Id.*

**G.     Judge Jones Resigns and the Bankruptcy Court Reassigns His Cases**

33.     After the Fifth Circuit publicly filed the Ethics Complaint, Judge Jones submitted his resignation on October 15, 2023, which was effective on November 15, 2023.

34.     On October 16, the Bankruptcy Court issued an order reassigning all of Judge Jones's remaining cases (those without a complex case designation) and revising divisional assignments among the remaining judges.  General Order 2023-11 (Oct. 16, 2023).

---

[8] In 2016, while Judge Jones was Chief Judge, he signed orders creating a complex case panel with Judges Jones and Isgur as its original members and assigning to the panel larger chapter 11 business cases designated as complex.  *See* General Order 2016-1 (March 3, 2016) (first in a series of three orders to establish complex case panel and reallocate cases); General Order 2018-1, Order Regarding Complex Case Assignment (Jan. 29, 2018).

**H.      Cases Affected by Judge Jones's Failure to Recuse and Jackson Walker's and Ms. Freeman's Breach of Their Duties**

35.      Judge Jones presided over at least 26 cases, and perhaps more, in which he awarded Jackson Walker approximately $13 million in compensation and expenses under 11 U.S.C. §§ 330 and 331 while Ms. Freeman was both a Jackson Walker partner and living with him in an intimate relationship.  This includes approximately $1 million in fees billed by Ms. Freeman herself in 17 of those cases.  **Exhibit 6A–B** is a list that the U.S. Trustee has compiled of affected cases where Judge Jones presided, including approval of Jackson Walker's employment and compensation.  The U.S. Trustee reserves his right to amend this list as he continues his investigation.

36.      In addition to the Jackson Walker cases over which Judge Jones presided, he mediated seven cases, including this one, where Jackson Walker was retained under section 327 or 1103 while Ms. Freeman was either a Jackson Walker partner, Jackson Walker's contract attorney, or Jackson Walker's co-counsel retained at Jackson Walker's recommendation.  **Exhibit 6C–D**.

**III.    Neither Ms. Freeman nor Jackson Walker Disclosed Judge Jones's Intimate Relationship with Ms. Freeman when He Was Proposed as a Mediator for this Case.**

**A.      The Debtors Retain Jackson Walker and the Law Office of Liz Freeman**

37.      On January 31, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Court ordered these cases to be jointly administered on February 1, 2023.  Case No. 23-90054, ECF No. 25.

38.      On March 2, 2023, the Debtors applied to retain Jackson Walker as lead Debtors' counsel.  Case No. 23-90054, ECF No. 181.

39.      The application stated that "To the best of the Debtor's knowledge, [the Jackson Walker] attorneys have no interest adverse to the Debtor, or to the Debtor's bankruptcy estates, and are disinterested."  Case No. 23-90054, ECF No. 181 at 6.

10

40.     Matthew D. Cavenaugh submitted a "verified statement of disinterestedness." Case No. 23-90054, ECF No. 181 at 18.  He attested that he and Jackson Walker "are disinterested persons within the meaning of 11 U.S.C. § 101(14)."  *Id*. at 21.

41.     He further attested: "The Firm will periodically review both the changes in identifiable parties in interest of the Debtor and clients of the Firm as such information becomes available or relevant, and will update this disclosure as appropriate."  Case No. 23-90054, ECF No. 181 at 23.

42.     On the same day as they sought to retain Jackson Walker, the Debtors filed the *Application to Retain the Law Office of Liz Freeman, PLLC as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession*.  Case No. 23-90054, ECF No. 183.

43.     The application stated: "To the best of the Debtors' knowledge, as disclosed in the Freeman Declaration, the Firm is a 'disinterested person' within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates."  Case No. 23-90054, ECF No. 183 at 5 ¶ 15.

44.     Ms. Freeman submitted a "verified statement of disinterestedness."  Case No. 23-90054, ECF No. 183 at 15.  She attested that "to the best of my knowledge, neither I, nor the Firm, have any connections with the Debtors, their creditors, or other parties in interest, their respective attorneys and accountants other than what is disclosed in this Declaration."  *Id*. at 16.  She further attested that she would "periodically review both the changes in identifiable parties in interest of the Debtors and clients of the Firm as such information becomes available or relevant, and will update this disclosure as appropriate."  Case No. 23-90054, ECF No. 183 at 18.

45. The Court approved Jackson Walker's retention on March 28, 2023, Case No. 23-90054, ECF No. 273, and Ms. Freeman's retention on April 3, 2023, Case No. 23-90054, ECF No. 320. Both retention orders provided: "The Firm will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, the Firm will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Fed. R. Bankr. P. 2014(a)." Case No. 23-90054, ECF No. 273 at 2 ¶ 3; Case No. 23-90054, ECF No. 320 at 2 ¶ 3.

46. At no point did Jackson Walker or Ms. Freeman file any updated disclosures regarding Ms. Freeman's relationship with Judge Jones.

**B.    Judge Jones Is Appointed as a Mediator**

47. Three days after the Court approved Ms. Freeman's employment, on April 6, 2023, the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and the DIP Lender, American Entertainment Properties Corp. ("AEP"), filed a *Stipulation and Agreed Order* to mediate before Judge Jones. Case No. 23-90054, ECF No. 347.

48. On April 10, 2023, the Court approved the Stipulation and entered an order appointing Judge Jones as the mediator. Case No. 23-90054, ECF No. 356.

49. Judge Jones conducted the mediation on April 19-20, 2023. *See* Case No. 23-90054, ECF No. 444 at 3 ¶ 22. Ms. Freeman attended on both days. Case No. 23-90054, ECF No. 991-4 at 2.

50. Neither Judge Jones nor Ms. Freeman disclosed Ms. Freeman's intimate, cohabitating relationship with Judge Jones to the Court or to the other parties to the mediation when he was proposed as a mediator, nor have they filed any such disclosure since then.

12

51.     Ms. Freeman filed a compensation application seeking fees that included time spent "preparing for and attending" the mediation conducted by Judge Jones.  Case No. 23-90054, ECF No. 991 at 8–9; *see also* Case No. 23-90054, ECF No. 991-4 at 2.

52.     The United States Trustee objected to Ms. Freeman's compensation application on January 29, 2024.  Case No. 23-90054, ECF No. 1049.

### C.     Jackson Walker Seeks and Is Awarded Fees

53.     On September 29, 2023, Jackson Walker filed a *First and Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtors for the Period from January 31, 2023 Through June 16, 2023* ("Final Fee Application").  Case No. 23-90054, ECF No. 911.  The Final Fee Application sought $4,739,576.00 in fees and $74,769.49 in expenses.

54.     On November 4, 2023, the Court granted the Final Fee Application in its entirety Case No. 23-90054, ECF No. 981.

55.     Among other things, Jackson Walker's Final Fee Application included time working on Ms. Freeman's retention application.  Case No. 23-90054, ECF No. 911 at 50 (Feb. 28, 2023); *id.* at 101 (Mar. 1, 2023); *id.* at 103 (Mar. 18 and 24, 2023).

### D.     The Court Confirms a Plan

56.     On May 2, 2023, the Court approved a settlement negotiated in the mediation that ultimately dictated material terms of the Debtors' plan (the "Settlement").  Case No. 23-90054, ECF No. 469.

57.     On June 16, 2023, the Court approved the Debtors' Disclosure Statement and confirmed the Plan of Liquidation.  Case No. 23-90054, ECF No. 749.  The Plan incorporated the Settlement that resulted from the mediation.  Case No. 23-90054, ECF No. 443 at 4 ¶ 5.

58.     On October 26, 2023, the Debtors filed a notice of the effective date.  Case No. 23-90054, ECF No. 922.

59.     The next day, the news of Ms. Freeman's undisclosed relationship with Judge Jones became public.  *See, e.g.*, Ethics Complaint; Alexander Gladstone & Andrew Scurria, *Bankruptcy Judge Jones Named in Lawsuit Over Romantic Relationship with Local Lawyer*, Wall Street Journal Pro, Oct. 7, 2023.

## ARGUMENT

60.     A mediator's objectivity is the foundation of the parties' trust in the mediator's ability to negotiate fairly and maintain confidences.  This Court's Rules thus disqualify mediators from cases where the mediator's partiality might reasonably be questioned, including specifically where he has an intimate relationship with a party's counsel.  *See* S.D. Tex. L.R. 16.4.I.

61.     In addition, the Bankruptcy Code prohibits the estate from employing counsel who are not disinterested or who hold any adverse interest to the estate or its creditors.  11 U.S.C. § 327.  This requirement is critical to ensure zealous, competent, and loyal representation of the estate.

62.     Courts cannot enforce these provisions if counsel do not make complete and honest disclosures.  *See, e.g.*, *In re eToys, Inc.*, 331 B.R. 176, 187 (Bankr. D. Del. 2005) ("Disclosure goes to the heart of the integrity of the bankruptcy system.") (internal quotation marks omitted).

63.     Accordingly, Jackson Walker was required to disclose Ms. Freeman's relationship with Judge Jones when he was proposed as a mediator.  There are many sources of this obligation, including: Local Rule 16.4.I(2), which required disclosure of any potential conflicts of interest possessed by a mediator in the case; Bankruptcy Rule 2014 and the fiduciary duties of estate counsel, which required disclosure of any facts relevant to the bankruptcy court's determination of eligibility to be retained under section 327; and the Texas Disciplinary Rules of Professional Conduct ("Disciplinary Rules"), made applicable by this district's local rules, *see* S.D. Tex. L.R., App. A, R. 1(A), including:

14

- Disciplinary Rule 3.03, requiring candor toward the court;

- Disciplinary Rule 4.01, requiring truthfulness in statements to others;

- Disciplinary Rule 8.04(a)(6), prohibiting knowingly assisting a judge in conduct that violates the applicable rules of judicial conduct or other law.

64.     Despite this plethora of authority requiring Jackson Walker to disclose the relationship between Judge Jones and Ms. Freeman when Judge Jones was proposed as a mediator for the case, it remained silent.

65.     Because Jackson Walker violated its duty to disclose Ms. Freeman's relationship with Judge Jones, this Court should vacate the order awarding compensation to Jackson Walker, order it to return any compensation paid, and order such further relief as the Court deems appropriate.

## I.     Jackson Walker Was Required to Disclose that Ms. Freeman and Judge Jones Had an Intimate Relationship and Lived in a House They Jointly Owned

66.     Jackson Walker had an obligation to disclose Ms. Freeman's relationship to Judge Jones when he was proposed as a mediator.  First, Local Rule 16.4.I(2) requires parties to disclose potential mediator conflicts.  Second, Jackson Walker was obligated to disclose the relationship because it was relevant to whether Jackson Walker and Ms. Freeman continued to be eligible for retention by the estate under section 327.  Finally, Jackson Walker had an obligation under the Disciplinary Rules to disclose the relationship.

### A.     The Court's Mediation Rules Required Disclosure of Ms. Freeman's Relationship with Judge Jones

67.     Mediators "serve a vital role in our litigation process."  *CEATS, Inc. v. Cont'l Airlines, Inc.*, 755 F.3d 1356, 1362 (Fed. Cir. 2014).  "Courts must feel confident that they are referring parties to a fair and effective process when they refer parties to mediation.  And parties must be confident in the mediation process if they are to be willing to participate openly in it."  *Id.*

15

68.     "Because parties arguably have a more intimate relationship with mediators than with judges, it is critical that potential mediators not project any reasonable hint of bias or partiality."  *Id.*; *see also* Kenneth R. Feinberg, *Mediation—A Preferred Method of Dispute Resolution*, 16 Pepperdine L. Rev. S5, S29 (Spring, 1989) ("[T]he mediator must be perceived by the parties as completely neutral and impartial.  This is necessary not only to ensure openness, but also to preserve the integrity of the mediation process.").

69.     And "because parties are encouraged to share confidential information with mediators, those parties must have absolute trust that their confidential disclosures will be preserved."  *CEATS, Inc.*, 755 F.3d at 1363.  *See also* Feinberg, *supra* at S28–S30.

70.     Thus, "all mediation standards *require* the mediator to disclose any facts or circumstances that even reasonably create a presumption of bias."  *CEATS, Inc.*, 755 F.3d at 1362 (emphasis added).

71.     This Court's rules are no exception.  They prohibit the appointment of a mediator whose impartiality can reasonably be questioned and require both the mediator and the parties to disclose any potential mediator conflicts.[9]  S.D. Tex. L.R. 16.4.I.

### 1.     Ms. Freeman's Relationship with Judge Jones Disqualified Him as a Mediator in Cases Where She or Her Firm Represented a Party

72.     Under Local Rule 16.4.I(1), mediators "are required to comply with the State Bar of Texas Alternative Dispute Resolution Section's Ethical Guidelines for Mediators" and "are subject to disqualification pursuant to standards consistent with those set forth in 28 U.S.C. § 455 (1988)."  S.D. Tex. L.R. 16.4.I(1).

---

[9] The district court's local rules apply in this Court.  *See* BLR 1001-1 ("In addition to these rules, the Local Rules of the District Court, the Administrative Procedures for CM/ECF, and the standing and general orders govern practice in the bankruptcy court.").

73.     Section 455(b) mandates that a judge "*shall . . .* disqualify himself" if the judge's

"spouse . . . is acting as a lawyer in the proceeding" or has "an interest that could be substantially

affected by the outcome of the proceeding."  28 U.S.C. § 455(b)(5)(ii), (iii) (emphasis added).

74.     This mirrors the Code of Conduct for United States Judges, Canon 3C, which

likewise requires a judge to recuse when the judge's "spouse . . . is acting as a lawyer in the

proceeding" or has "an interest that could be substantially affected by the outcome of the

proceeding."  Code of Conduct for United States Judges, Canon 3C(1)(d)(ii), (iii) (effective Mar.

12, 2019).

75.     Live-in intimate partners are treated as spouses for purposes of this provision.  *See*

Code of Conduct for United States Judges, Canon 3C Commentary ("Recusal considerations

applicable to a judge's spouse should also be considered with respect to a person other than a

spouse with whom the judge maintains both a household and an intimate relationship.").

76.     Indeed, it is generally accepted that cohabiting with someone raises the same

concerns about conflicts of interest as being married to them.  *See, e.g., Conflicts Arising Out of a*

*Lawyer's Personal Relationship with Opposing Counsel,* ABA Comm. On Ethics & Pro. Resp.,

Formal Op. 494 (July 9, 2020) ("Lawyers who cohabit in an intimate relationship should be treated

similarly to married couples for conflicts purposes.  The same is true for couples who are engaged

to be married or in exclusive intimate relationships."); ABA Model Code of Judicial Conduct,

Model Rule 2.11 (requiring disqualification if a judge's "domestic partner" is "acting as lawyer in

the proceeding" or "has more than a de minimis interest that could be substantially affected by the

proceeding"); ABA Model Code of Judicial Conduct, Terminology (2011) (defining "domestic

partner" as "a person with whom another person maintains a household and an intimate

relationship, other than a person to whom he or she is legally married").

77.     Section 455(a) also dictates that a judge "*shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). Section 455's "overriding concern with appearances . . . stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980). In determining whether there is an appearance of partiality, a court "ought to consider how [the judge's] participation in a given case looks to the average person on the street" and "disqualification should follow if the reasonable [person], were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Id.*

78.     Thus, a non-spousal close relationship, such as a close friendship or dating relationship, may also require disqualification as "[t]here may be situations in which the judge's friendship with a lawyer or party is so tight that the judge's impartiality might reasonably be questioned." *IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 416–17, 418 n.9 (5th Cir. 2023) (quotation marks omitted) (reversing refusal to vacate referral to magistrate judge and remanding for determination of whether consent to proceed before magistrate judge was knowing where there was an undisclosed "longstanding friendship" between the magistrate judge and counsel for one of the parties); *see also Judges' Social or Close Personal Relationships with Lawyers or Parties as Grounds for Disqualification or Disclosure,* ABA Comm. On Ethics & Pro. Resp., Formal Op. 488 (Sept. 5, 2019) ("A judge must disqualify himself or herself when the judge has a romantic relationship with a lawyer or party in the proceeding, or desires or is pursuing such a relationship.").

18

79.    Under these Rules, Judge Jones was disqualified from acting as a mediator because Ms. Freeman represented a party to the mediation.

80.    Judge Jones's disqualification was *required* because he "cohabit[ed] in an intimate relationship" with Ms. Freeman, who acted as a lawyer in the proceeding.  28 U.S.C. § 455(b)(5); *Conflicts Arising Out of a Lawyer's Personal Relationship with Opposing Counsel*, ABA Comm. On Ethics & Pro. Resp., Formal Op. 494 (July 9, 2020); Code of Conduct for United States Judges, Canon 3C Commentary.

81.    During the mediation Ms. Freeman was living with Judge Jones in a house they jointly owned and had an ongoing romantic relationship.  She is thus treated as a spouse for purposes of judicial disqualification.  *See Conflicts Arising Out of a Lawyer's Personal Relationship with Opposing Counsel,* ABA Comm. On Ethics & Pro. Resp., Formal Op. 494 (July 9, 2020).

82.    Further, disqualifying conflicts include not just spousal relationships but "any known relationships with the parties or their counsel that may affect *or give the appearance of affecting* the mediator's neutrality."  *Ethical Guidelines for Mediators*, Guideline 4 (emphasis added).  There can be no question that Judge Jones's neutrality and impartiality might reasonably be questioned based on his relationship with Ms. Freeman.  28 U.S.C. § 455(a); *Ethical Guidelines for Mediators*, Guideline 4.

83.    Given their relationship, a mediation participant would fairly be concerned that a party represented by Ms. Freeman would have a competitive edge when it came to influencing Judge Jones's recommendations in the mediation.

84.    In addition to the concern that Judge Jones might not be impartial, Jackson Walker's client might reasonably be concerned that the relationship would lead Ms. Freeman to be overly

19

deferential to Judge Jones, negatively impacting her ability or willingness to push back against compromises he might suggest as a mediator. "[T]he question will always linger whether [they] held back, or failed to bite the hand that feeds [them] quite as hard as the circumstances warranted." *In re Granite Partners LP*, 219 B.R. 22, 38 (Bankr. S.D.N.Y. 1998) (holding firm's failure to disclose connection to target of investigation violated bankruptcy disclosure requirements, even if firm properly discharged its investigative duties, because "[b]ankruptcy is concerned as much with appearances as with reality").

85.     Parties to the mediation might also reasonably be concerned that Judge Jones may disclose confidential information to his romantic partner. *Cf. Conflicts Arising Out of a Lawyer's Personal Relationship with Opposing Counsel,* ABA Comm. On Ethics & Pro. Resp., Formal Op. 494 (July 9, 2020) (explaining that "close personal or intimate relationships" can create a "significant risk that client confidences will be revealed" and that the relationship "will interfere with both loyalty and independent professional judgment"). As with the concerns about partiality, the question is not whether the mediator actually would or did disclose confidences; but whether the mediation parties reasonably could be concerned about such disclosure. *See CEATS, Inc.*, 755 F.3d at 1363 ("[B]ecause parties are encouraged to share confidential information with mediators, those parties must have absolute trust that their confidential disclosures will be preserved."). If parties fear that their confidential information will be disclosed, they "might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether." *Savage & Assocs. v. K&L Gates LLP (In re Teligent Inc.)*, 640 F.3d 53, 59–60 (2d Cir. 2011).

86.     For all of these reasons, this Court's rules precluded Judge Jones from acting as a mediator in cases in which Ms. Freeman represented a party to the mediation.

### 2. Local Rule 16.4.I(2) Required Jackson Walker to Disclose Ms. Freeman's Relationship with Judge Jones

87. In addition to Ms. Freeman's relationship with Judge Jones requiring his disqualification as a mediator, the potential conflict and appearance of impropriety also meant that Jackson Walker was obligated to disclose it so that parties could determine whether to seek appointment of a different mediator.

88. Mediation is voluntary and parties are free to choose a different mediator. But they must have full information to enable them to make that choice. *See* Kenneth R. Feinberg, *Mediation—A Preferred Method of Dispute Resolution*, 16 Pepperdine L. Rev. S5, S29 (Spring, 1989) ("[T]he mediator must be perceived by the parties as completely neutral and impartial. This is necessary not only to ensure openness, but also to preserve the integrity of the mediation process."); *CEATS, Inc.*, 755 F.3d at 1363 ("[B]ecause parties are encouraged to share confidential information with mediators, those parties must have absolute trust that their confidential disclosures will be preserved.").

89. To help parties ensure that their mediator is independent and has no appearance of partiality, the Rules require that, "[p]rior to commencing the mediation, the mediator should make full disclosure . . . of *any known relationships* with the parties or their counsel that may affect *or give the appearance of affecting* the mediator's neutrality." *State Bar of Texas Alternative Dispute Resolution Section's Ethical Guidelines for Mediators* ("*Ethical Guidelines for Mediators*"), Guideline 4 (emphases added), available at https://www.txcourts.gov/media/514701/Eth-Guideline-Amended-Order.pdf (incorporated by Local Rule 16.4.I(1)).

90. This Court's rules do not just require disclosure by the mediator. Local Rule 16.4.I(2) expressly requires counsel to raise a mediator's potential conflicts of interest with the

21

presiding judge: "Issues concerning potential ADR provider conflicts *shall be raised* with the judge presiding in the case relating to the ADR proceeding." *Id.* 16.4.I(2) (emphasis added).

91.     Local Rule 16.4.I(2) thus required Jackson Walker to disclose Ms. Freeman's relationship with Judge Jones.  As discussed above, *supra*, Part I.A.1, that relationship precluded Judge Jones from acting as a mediator in the case.  But even if it was not disqualifying, Judge Jones's neutrality and impartiality would at least be reasonably questioned based on his relationship with Ms. Freeman.  28 U.S.C. § 455(a); *Ethical Guidelines for Mediators*, Guideline 4.

92.     Indeed, it is that relationship that led the Fifth Circuit to file a complaint against Judge Jones, leading to his resignation.  *See* Ethics Complaint.  Among the bases for finding "probable cause to believe that Judge Jones has engaged in misconduct," the complaint specifically cited the fact that Judge Jones was a mediator in a case in which Ms. Freeman participated without disclosing the relationship.  Ethics Complaint at 3–4.  And the Fifth Circuit concluded, regarding a motion to recuse Judge Jones from a case where he presided as a judge: "There is a reasonable probability that if Judge Jones had disclosed the facts concerning his relationship with Elizabeth Freeman to his fellow bankruptcy judge, to whom the motion to recuse was referred, the motion to recuse would have been granted."  Ethics Complaint No. at 3.

93.     Nevertheless, although Ms. Freeman obviously knew about her relationship with Judge Jones, she chose not to reveal it.

94.     Jackson Walker likewise chose not to disclose the relationship, although it, too, knew when Judge Jones was proposed as a mediator that Ms. Freeman had not only a past, but an ongoing, romantic relationship with him.  Prelim. Resp. ¶ 16; Case No. 23-90054, ECF No. 347.

95.     Jackson Walker thus violated Local Rule 16.4.I(2) by failing to disclose the relationship with Judge Jones.

22

**B.** **Because Jackson Walker and Ms. Freeman Were Retained by the Estate Under Section 327, Jackson Walker Was Required to Disclose Ms. Freeman's Relationship with Judge Jones**

96.     To continue as counsel retained under section 327, Ms. Freeman and Jackson Walker had to be disinterested and hold no adverse interests to the estate.  And they were required to disclose facts relevant to their eligibility for retention under section 327.

97.     Ms. Freeman's relationship with Judge Jones meant that neither she nor Jackson Walker were disinterested once Judge Jones was appointed as a mediator.  Ms. Freeman's and Jackson Walker's interest in remaining counsel for the estate—and their interest in keeping Ms. Freeman's relationship with Judge Jones secret to avoid challenges to their compensation in cases where Judge Jones presided as a judge—conflicted with the estate's interest in having an impartial mediator.

98.     Because Ms. Freeman's relationship with Judge Jones was patently relevant to whether Ms. Freeman and Jackson Walker continued to meet section 327's eligibility requirements if he was appointed as a mediator, they were obligated to disclose it.

**1.** **Section 327 and Rule 5002 Preclude Retention of Professionals Who Are Not Disinterested, Who Hold Adverse Interests to the Estate, or Who Are Connected to the Judge**

99.     Under section 327, a bankruptcy estate may only employ "attorneys . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C. § 327.

100.     The term "disinterested" is defined in 11 U.S.C. § 101(14) and is not limited to conflicts of interest with the estate.  Rather, to be disinterested, a person must not have "an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders,

23

by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, *or for any other reason*." 11 U.S.C. § 101(14) (emphasis added).

101. While "adverse interest" is not defined, it includes "a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities." *Rome v. Braunstein*, 19 F.3d 54, 58 n.1 (1st Cir. 1994). *See also Granite Partners*, 219 B.R. at 33 ("[An adverse interest] includes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.") (quotation marks omitted).

102. "[S]ince section 327(a) is designed to limit even appearances of impropriety to the extent reasonably practicable, doubt as to whether a particular set of facts gives rise to a disqualifying conflict of interest normally should be resolved in favor of disqualification." *Rome*, 19 F.3d at 60. "These statutory requirements—disinterestedness and no interest adverse to the estate—serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Id.* at 58. They require "an objective screening for even the appearance of impropriety." *Id.* (internal quotation marks omitted).

103. The standards for finding a conflict are "'strict'" and "attorneys engaged in the conduct of a bankruptcy case 'should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.'" *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005) (quoting *Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.)*,

24

785 F.2d 1249, 1256 & n. 6 (5th Cir. 1986)); *accord Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 461 (5th Cir. 2012).

104.    In addition, Bankruptcy Rule 5002(a) prohibits courts from approving the retention of an attorney under section 327 "if the individual is a relative of the bankruptcy judge approving the employment."  Fed. R. Bankr. P. 5002(a).

105.    Relatives include spouses.   The Bankruptcy Code defines a relative as an "individual related by *affinity* or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree."  11 U.S.C. § 101(45) (emphasis added).  "Because the definition [of 'relative'] includes individuals 'related by affinity,'" a spouse qualifies as a relative.  *Prunty v. Terry (In re Paschall)*, 408 B.R. 79, 86 (E.D. Va. 2009).  As noted above, a "spouse" for purposes of judicial disqualification includes cohabiting intimate partners.  *See supra* Part I.A.1.

106.    Because Rule 5002(a) precluded Ms. Freeman's retention under section 327 in a case where Judge Jones presided, it also precluded Jackson Walker's retention while she was affiliated with Jackson Walker.  That is because, under the Rule, if an individual's retention cannot be approved under Rule 5002(a), "the individual's firm, partnership, corporation, or any other form of business association or relationship, and all members, associates and professional employees thereof also may not be approved for appointment or employment."  Fed. R. Bankr. P. 5002(a).

107.    Bankruptcy Rule 5002(b) further prohibits courts from approving the retention of an attorney under section 327 if "that person is or has been so connected with such judge . . . as to render the appointment or employment improper."  Fed. R. Bankr. P. 5002(b).

108.    The notes to Rule 5002 explain that "[t]he policy underlying subdivision (b) is essentially the same as the policy embodied in the Code of Judicial Conduct" to "avoid impropriety

and the appearance of impropriety" and to ensure professional employment is approved "only on the basis of merit, avoiding nepotism and favoritism." *Id.*, Notes of Advisory Committee on Rules – 1985 Amendment.

        **2.**      **Judge Jones's Appointment as a Mediator Rendered Jackson Walker and Ms. Freeman No Longer Eligible for Retention Under Section 327**

109.    The appointment of Judge Jones as a mediator rendered Ms. Freeman and Jackson Walker no longer eligible to be retained by the estate under section 327 because the appointment created a conflict of interest and rendered them no longer disinterested.

110.    The definition of "disinterested," 11 U.S.C. § 101(14), is sufficiently broad to disqualify any professional with an "interest or relationship that would even faintly color the independence and impartial attitude required by the Code." *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 835 (7th Cir. 1998) (quoting *In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991)).

111.    These concerns equally apply to bankruptcy mediations, where "a mediator . . . would have had substantial discretion over a very important and high-dollar issue central to the administration of the Debtor's . . . case." *In re Smith*, 524 B.R. 689, 695 (Bankr. S.D. Tex. 2015). Thus, in *Smith*, this Court found it necessary to "use its § 105(a) powers" to apply section 327 "to prevent any abuse of the process of selection of ex-bankruptcy judges as mediators—including the appearance of an abuse of this selection process." *Id.* at 697. These concerns are heightened when the mediator is a judge sitting on the same bench. Courts must avoid even "*the appearance of an abuse*" of the process for selecting the mediator. *Id.* (emphasis added).

112.    The cohabiting intimate relationship between Judge Jones and Ms. Freeman meant that Ms. Freeman and Jackson Walker were not—and could not be—disinterested in any case that Judge Jones mediated where they represented a party.

26

113.    As discussed above, *supra* Part I.B.1, Ms. Freeman's relationship with Judge Jones reasonably would be expected to impact her and her firm's "independence and impartial attitude," *In re Crivello*, 134 F.3d at 835, in a mediation conducted by Judge Jones.

114.    Further, because the Local Rules prohibited Judge Jones from acting as a mediator where Ms. Freeman or Jackson Walker represented a party to the mediation, *see supra* Part I.A.1, their interest in continued employment conflicted with the estate's interest in having a disinterested mediator.

115.    The conflict of interest extended beyond just the interest in continued retention in this case. Ms. Freeman and Jackson Walker possessed an adverse economic interest in hiding the connection to Judge Jones. If disclosed, not only would Ms. Freeman be disqualified under Bankruptcy Rule 5002 from working on any case where Judge Jones presided, Jackson Walker risked challenges to compensation awards it had received in cases where Judge Jones presided while Ms. Freeman was a Jackson Walker partner, as has in fact happened.

116.    Jackson Walker acknowledged the risk that Ms. Freeman's relationship with Judge Jones posed to the firm in its communications with its ethics counsel in 2021: "The firm, for its part, had concluded and has advised Elizabeth that any romantic, intimate, or sexual relationship between a firm lawyer and a federal judge would create *too much risk of disqualification* to be compatible *with any lawyer in the firm* continuing to appear before that judge." Prelim. Resp., Exhibit 1, p. 4 (emphases added); *see also* Prelim. Resp. at 4 ¶ 15 (stating "Jackson Walker's view that an ongoing[10] intimate relationship with Judge Jones (as opposed to an intimate relationship

---

[10] Contrary to Jackson Walker's narrow view that the firm would only be disqualified based on an "ongoing" romantic relationship, a past romantic relationship would also be at least a potential conflict that could preclude Jackson Walker participating in cases where Judge Jones presided, particularly while Ms. Freeman and Judge Jones continued to live together. *See* Bankruptcy Rule

that had terminated in the past) would be incompatible with Jackson Walker continuing to participate in cases before Judge Jones").

117.    Ms. Freeman's and Jackson Walker's pecuniary interest in avoiding disclosure of Ms. Freeman's relationship with Judge Jones was adverse to the estate's interest in retaining a disinterested mediator.  Other parties to the mediation would reasonably fear that the romantic relationship, whether former or current, impairs the mediator's ability to be neutral and impartial, creating an unlevel playing field.

118.    Not only was a disinterested mediator important for the mediation to be effective, later discovery that the mediator was not impartial risks a challenge to any settlement reached at the mediation.[11]  For example, in similar circumstances, a court's final judgment was vacated because a judge failed to recuse from an adversary proceeding when his fiancé worked as a lawyer at the prevailing party's firm and failed to disclose the relationship.  *See, e.g.*, *Clark v. Kapila*, 612 B.R. 808, 814, 816 (S.D. Fla. 2019).  The court noted that the fact "that this occurred in the bankruptcy context buttresses the notion that [the judge's] impartiality appeared compromised" given "a long history of concerns of favoritism in the bankruptcy bar." *Id.*

119.    For these reasons, Ms. Freeman's relationship with Judge Jones rendered her and Jackson Walker ineligible to be section 327 counsel once Judge Jones was proposed as a mediator.

---

5002(b); *Judges' Social or Close Personal Relationships with Lawyers or Parties as Grounds for Disqualification or Disclosure,* ABA Comm. On Ethics & Pro. Resp., Formal Op. 488 (Sept. 5, 2019) (including among relationships that should be disclosed where a judge and lawyer are "divorced but remain amicable").

[11] Whether or not the mediation was successful or anyone in fact challenged the result is irrelevant, as it is the risk created by the partiality of the mediator that makes disclosure imperative.

### 3. Jackson Walker Was Required to Disclose All Facts Relevant to Its Eligibility to Be Retained Under Section 327, Including Ms. Freeman's Relationship with Judge Jones

120. Whether or not Ms. Freeman's relationship with Judge Jones would have precluded continued retention of her or Jackson Walker under section 327, that relationship was a material fact that Jackson Walker was obligated to disclose.

121. Courts rely on attorneys to provide the information they need to ensure that only eligible professionals are retained by the estate under section 327. *See Rome*, 19 F.3d at 59 ("As with other prophylactic ethical rules constraining attorney conduct, sections 327(a) and 328(c) cannot achieve their purpose unless court-appointed counsel police themselves in the first instance."); *Consol. Bancshares*, 785 F.2d at 1255 ("The numerous limitations imposed by the Bankruptcy Code upon compensation of court-appointed counsel . . . are designed to insure the highest standards of ethical conduct . . . . Vigilance is required by and among court-appointed counsel in particular to enforce the standards of the Code."); *In re Benjamin's-Arnolds, Inc.*, No. 4-90-6127, 1997 WL 86463, at *9 (Bankr. D. Minn. Feb. 28, 1997) ("[B]ecause the bankruptcy court does not possess the resources to independently investigate an applicant's conflicts of interest, full and candid disclosure is required to enable the court to determine whether the applicant meets the 'disinterested' standards of § 327(a).").

122. "The case law is clear that the burden of disclosure is upon the person making the statement [of qualification for employment] to come forward with facts pertinent to eligibility and to make candid and complete disclosure." *In re Huddleston*, 120 B.R. 399, 400–01 (Bankr. E.D. Tex. 1990) (quotation marks omitted). *See also In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988) ("The burden is on the person to be employed to come forward and make full, candid, and complete disclosure."). The disclosures required by professionals in bankruptcy cases "go[] to the heart of the integrity" of the bankruptcy system. *United States v.*

*Gellene*, 182 F.3d 578, 588 (7th Cir. 1999); *accord In re Universal Bldg. Prods.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010). The duty of disclosure is "sacrosanct." *eToys, Inc.*, 331 B.R. at 189.

123. "[T]he omission of material information in a bankruptcy filing impedes a bankruptcy court's fulfilling of its responsibilities just as much as an explicitly false statement." *Gellene*, 182 F.3d at 587 (quotation marks omitted) (affirming attorney's conviction for bankruptcy fraud).

124. One tool to ensure that professionals disclose information relevant to a section 327 retention is Bankruptcy Rule 2014. That Rule requires anyone seeking to be retained as an estate-paid professional—whether for a trustee, debtor-in-possession, or official committee—to file a verified statement disclosing all of the professional's connections with the "debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States [T]rustee or any person employed in the office of the United States [T]rustee." Fed. R. Bankr. P. 2014.

125. Rule 2014 is not the limit of an attorney's disclosure obligations, however. That is because a debtor's counsel's duty to disclose "arises not solely by reason of the bankruptcy rules, but also is founded upon the fiduciary obligation owed by counsel for the debtor to the bankruptcy court." *Futuronics Corp. v. Arutt, Nachamie, & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 470 (2d Cir. 1981) (quotation marks omitted); *see also In re EWC, Inc.*, 138 B.R. 276, 279 (Bankr. W.D. Okla. 1992) ("[P]rofessionals performing duties for the estate are held to high fiduciary standards, and act as officers of the court.").

126. "An attorney retained pursuant to section 327(a) assumes a fiduciary responsibility to refrain from rendering any unauthorized service in furtherance of an interest adverse to the client he serves by court appointment." *Rome*, 19 F.3d at 62.

127.    The fiduciary duties owed by a professional also include the duty "to disclose any actual or potential conflicts of interest with the estate." *Jensen v. U.S. Tr. (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997); *see also ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.*, 278 B.R. 117, 123–24 (S.D. Tex. 2002) ("[C]ounsel of a debtor-in-possession owes certain fiduciary duties to both the client debtor-in-possession and the bankruptcy court . . . including . . . [a] duty . . . to disclose any actual or potential conflicts of interest with the estate"), *aff'd*, 324 F.3d 768 (5th Cir. 2003); *Grubin v. Rattet (In re Food Mgmt. Grp.), LLC*, 380 B.R. 677, 711 (Bankr. S.D.N.Y. 2008) ("[A] threshold fiduciary requirement is counsel's duty to establish its qualification as a party with no conflicts of interest and the maintenance of that qualification throughout the case.").

128.    Thus, for example, counsel was obligated to disclose its policy of never suing accounting firms, even though such a policy is not a "connection" listed in Rule 2014(a), because the policy was "relevant to whether [the firm's] retention was in the best interest of the estate." *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 535 (Bankr. S.D.N.Y. 1994).

129.    Jackson Walker's argument in *In re EXCO Resources, Inc.*[12] that it had no obligation to disclose Ms. Freeman's relationship with Judge Jones because Bankruptcy Rule 2014 does not itemize mediators among the listed "connections," ignores this broader fiduciary duty.  A relevant fact cannot be kept secret on the excuse that it is not within the enumerated terms of Rule 2014.  Judges similarly are not listed among those connections.  Yet the notes to Rule 5002 advise

---

[12] *See* Jackson Walker LLP's Response in Opposition to Reorganized Debtors' Motion for Orders (I) Reopening the Lead Chapter 11 Case; (II) Vacating Certain Orders Approving Jackson Walker Applications for Compensation and Reimbursement of Expenses Pursuant to Federal Rule 60(B); (III) Disgorging Compensation and Expenses Awarded to Jackson Walker Relating Back to July 18, 2018; and (IV) Granting Other Appropriate Relief, *In re EXCO Resources, Inc.*, Case No. 18-30155, ECF No. 2338 at 32 (Bankr. S.D. Tex. Feb. 16, 2024) ("*EXCO* Brief").

31

that applicants for employment should "consider the possible relevance or impact of subdivision (b)"—which prohibits judges from approving the retention of attorneys with whom they have connections—and that "appropriate disclosure *must* be made to the bankruptcy court before accepting appointment or employment." Fed. R. Bankr. P. 5002, Notes of Advisory Committee on Rules – 1985 Amendment (emphasis added).

130.    In addition to the fiduciary obligation specific to professionals retained by the estate, the Local Rules, including Local Rule 16.4.I(2) and the Disciplinary Rules, also required disclosure of facts that would be relevant to the attorney's continued eligibility for retention under section 327. *See supra* Part I.A., *infra* Part I.C.

131.    And the retention orders in this case specifically required both Jackson Walker and Ms. Freeman's firm "to ensure that no conflicts *or other disqualifying circumstances* exist or arise" and to "promptly" disclose them if they do. Case No. 23-90054, ECF No. 273 at 2 ¶ 3 (emphasis added); Case No. 23-90054, ECF No. 320 at 2 ¶ 3 (emphasis added).

132.    Because Rule 2014 covers most required disclosures, much of the case law regarding failures to disclose arises under that Rule. But the principles established in those cases apply equally to any failure to disclose facts necessary for the court to evaluate eligibility for retention under section 327.

133.    Those principles include the breadth of the required disclosure, which is not limited to connections that would—in the professional's view—render the professional unable to be employed under 11 U.S.C. § 327(a). Rather, a section 327 "applicant must disclose all connections regardless of whether they are sufficient to rise to the level of a disqualifying interest under Section 327(a)." *In re Am. Int'l Refinery, Inc.*, 676 F.3d at 465. *See also eToys, Inc.*, 331 B.R. at 190 ("Bankruptcy Rule 2014 requires that the attorney seeking employment disclose to the Court *all*

*connections* with parties in interest in the case, rather than furnishing only those which appear to implicate 'disinterestedness' or 'adverse interest' concerns under section 327(a).") (emphasis in original).

134.    "[P]rofessionals 'cannot pick and choose which connections are irrelevant or trivial.'" *Gellene*, 182 F.3d at 588 (quoting *EWC, Inc.*, 138 B.R. at 280).  The decision as to what facts may be relevant should not be left up to the professional, "whose judgment may be clouded by the benefits of potential employment.'" *In re Lee*, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1988); *see also Granite Partners*, 219 B.R. at 45 ("The trustee broke the cardinal principle of Rule 2014(a).  He arrogated to himself a disclosure decision that the court must make."); *accord Rome*, 19 F.3d at 59.

135.    "[T]he purpose of such disclosure is to permit the court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought or whether further inquiries should be made before deciding whether to approve the employment." *Huddleston*, 120 B.R. at 401.

136.    Not only must a lawyer seeking to be retained show that the retention complies with the requirements of section 327, the lawyer also must update the court if the lawyer becomes aware of new facts that need to be disclosed after the initial retention.  *West Delta Oil*, 432 F.3d at 355 ("Although [Rule 2014(a)] does not explicitly require ongoing disclosure, case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises.") (internal quotation marks omitted); *eToys, Inc.*, 331 B.R. at 190 ("[T]he duty to disclose is ongoing.").

137.    Because the "fiduciary duty of disclosure arises as soon as counsel becomes 'aware' of facts," "as soon as counsel acquires even *constructive* knowledge reasonably suggesting an

33

actual or potential conflict . . . a bankruptcy court ruling should be obtained." *Rome*, 19 F.3d at 59 (emphasis added).

138.     Here, Jackson Walker's retention application stated that the firm was disinterested and had no connections to any party in interest.  Case No. 23-90054, ECF No. 181 at 6, 18, 21. While that may have been true at the time—as Judge Jones had not yet been proposed as a mediator—it became untrue when Judge Jones was a proposed as a mediator.  Yet, Jackson Walker did not update its disclosures.

139.     As discussed above, *supra* Part I.B.2, Ms. Freeman's relationship with Judge Jones precluded her and Jackson Walker from continuing as counsel for the estate.  Local Rule 16.4.I prohibited Judge Jones from acting as a mediator where Jackson Walker or Ms. Freeman represented a party to the mediation, creating a conflict of interest in any case where Judge Jones was the estate's preferred mediator.   Further, Jackson Walker's client could reasonably be concerned about whether having Ms. Freeman's live-in romantic partner as the mediator would impact the effectiveness of her or her firm's advocacy before him.  Finally, neither Ms. Freeman nor Jackson Walker was disinterested because their interest in continuing as counsel—and in avoiding challenges in other cases where Judge Jones presided as judge—conflicted with the estate's and creditors' interest in the selection of an independent mediator.

140.     Even if the relationship did not preclude continued retention under section 327, Jackson Walker was required to disclose it "to permit the court and parties in interest to determine" whether it was disqualifying or "whether further inquiries should be made before deciding" whether continued employment was appropriate. *Huddleston*, 120 B.R. at 401.

141.     If the relationship had been disclosed, the estate and other parties to the mediation could have chosen a different mediator.  And if the parties determined Judge Jones was their

mediator of choice, the estate could have chosen different counsel. But Ms. Freeman's and Jackson Walker's failure to disclose deprived the parties of that choice. And their secrecy deprived the Court of its ability to determine their continued eligibility to be retained as counsel under section 327.

### C. The Texas Disciplinary Rules Required Jackson Walker to Disclose Ms. Freeman's Relationship with Judge Jones

142.     Jackson Walker also violated the Local Rules and the Disciplinary Rules by failing to disclose Ms. Freeman's relationship to Judge Jones when he was proposed as a mediator for the case.

143.     Lawyers "must be ever conscious of the broader duty to the judicial system." S.D. Tex. L.R., App. D. An attorney is regarded as an officer of the court and has an ethical duty to be honest. *Consol. Bancshares,* 785 F.2d at 1258 n.8; *see also In re Bradley,* 495 B.R. 747, 783 (Bankr. S.D. Tex. 2013) ("All practicing attorneys owe a fundamental duty of professional responsibility to their clients, the judiciary, opposing counsel, and the administration of justice.").

144.     All attorneys practicing before this Court "are required to act as mature and responsible professionals" and must comply, as "the minimum standard of practice," with "the Texas Disciplinary Rules of Professional Conduct," S.D. Tex. L.R., App. A, R. 1(A), including:

- Disciplinary Rule 3.03 (requiring candor toward the court);

- Disciplinary Rule 4.01 (requiring truthfulness in statements to others);

- Disciplinary Rule 8.04(a)(6) (prohibiting lawyers from knowingly assisting judges in violating the law or codes of conduct).

145.     "Ethics should be a lawyer's highest calling." *In re Cruz*, No. 18-10208, 2020 WL 5083326, at *1 (Bankr. S.D. Tex. Aug. 27, 2020). But Jackson Walker violated these Disciplinary Rules when it chose not to disclose Ms. Freeman's relationship with Judge Jones.

35

### 1. Jackson Walker Violated Disciplinary Rule 3.03 Requiring Candor

146. Attorneys at Jackson Walker violated Disciplinary Rule 3.03, which requires candor toward the tribunal and prohibits lawyers from knowingly making a false statement of fact. "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation" and can constitute a breach of an attorney's ethical obligations. Disciplinary Rule 3.03, Comment 2.

147. "A failure to disclose may constitute a breach of an attorney's duty of candor." *In re Brown*, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014); *see also Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 543 (5th Cir. 2022) ("The duty of candor extends beyond not making false statements. An omission may also violate the duty."); *Bradley*, 495 B.R. at 786 (sanctioning attorney who "violated his duty of candor by not informing the Court that he did not have the Debtors' 'wet' signatures" because "[b]y staying silent . . ., [the attorney] showed an utter lack of candor and respect"); *cf. In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) (holding Rule 11 sanctions were warranted based on failure to disclose, in request for continuance based on recency of appointment as counsel for the creditors' committee, that counsel previously represented one of the creditors because the "information was highly relevant to the question of whether the bankruptcy judge should have granted a continuance").

148. "The duty of candor applies not only to the duty to disclose material information relating to the merits of a matter, but also to facts relating to the management of the case." *Brown*, 511 B.R. at 852 (quotation marks omitted).

149. Thus, the court sanctioned an attorney for making "a material false statement to the Court" when the attorney argued at a hearing that his client had no obligation to turnover a phone without disclosing that the phone had been lost. *Brown*, 511 B.R. at 852. The court characterized

the attorney's failure to disclose the loss of the phone until sixteen days after it was lost as a "complete disregard of professionalism." *Id.*

150.    Here, Jackson Walker represented that it was eligible for employment under section 327. *See* Case No. 23-90054, ECF No. 181 at 6, 18, 21. Once Judge Jones was proposed as a mediator, that was no longer true, *see supra* Part I.B.2, and it had an obligation to correct that statement. In addition, because Judge Jones should not have mediated a case in which Ms. Freeman represented a party, *see supra* Part I.A.1, Jackson Walker's duty of candor required it to disclose the relationship.

### 2.    Jackson Walker Violated Disciplinary Rule 4.01 Requiring Truthfulness in Statements to Others

151.    Disciplinary Rule 4.01(a) requires truthfulness in statements to others. *See* Disciplinary Rule 4.01(a) ("In the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person.").

152.    Jackson Walker violated this Disciplinary Rule. It signed the stipulation proposing Judge Jones act as a mediator, Case No. 23-90054, ECF No. 347 at 3, suggesting to the other mediation parties that Judge Jones was eligible to mediate the case despite knowing about his relationship with Ms. Freeman, which disqualified him. Jackson Walker's silence regarding Ms. Freeman's relationship with Judge Jones was tantamount to a misrepresentation that there was no connection between Ms. Freeman and Judge Jones that would call into question either his independence or Ms. Freeman's and Jackson Walker's eligibility to serve as counsel under section 327 in cases before Judge Jones.

37

### 3. Jackson Walker Violated Disciplinary Rule 8.04 by Knowingly Assisting Judge Jones's Violation of Local Rule 16.4.I(1)

153.   Jackson Walker also violated Disciplinary Rule 8.04(a)(6), which prohibits attorneys from "knowingly assist[ing] a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law."[13]  Disciplinary Rule 8.04(a)(6).

154.   Judge Jones was required to disqualify himself as a mediator because of his relationship with Ms. Freeman.  *See supra* Part I.A.; S.D. Tex. L.R. 16.4.I(1).

155.   Judge Jones also had to disclose "any known relationships with the parties or their counsel that may affect or give the appearance of affecting the mediator's neutrality."  *Ethical Guidelines for Mediators*, Guideline 4.  *See also CEATS, Inc.*, 755 F.3d at 1364 ("Mediators are required to disclose not only financial interests, but all potential conflicts of interests as well.").

156.   Judge Jones violated each of these requirements by failing to disclose his relationship with Ms. Freeman and acting as a mediator in this case.

157.   Attorneys at Jackson Walker knew of this relationship and assisted him in these violations by also choosing not to disclose the relationship, and thereby violated Disciplinary Rule 8.04(a)(6).

## II. This Court Should Order Jackson Walker to Return All Compensation Because of the Failure to Disclose Ms. Freeman's Relationship with Judge Jones

158.   Given Ms. Freeman's undisclosed relationship with Judge Jones, the Court should vacate the prior orders approving compensation to Jackson Walker and order a return of compensation already paid because (1) Jackson Walker had a disqualifying conflict of interest under section 328(c) and (2) even if it did not have a disqualifying conflict of interest, the non-

---

[13] Jackson Walker's attempt to deflect responsibility for its ethical breaches on the ground that Judge Jones's duties under the local rules and section 455 "applied to former Judge Jones, not [Jackson Walker]," *EXCO* Brief at 24, ignores this Rule.

disclosure warrants a denial of compensation in the exercise of the Court's broad discretion over attorneys' fees awards. In addition, the Court should exercise its inherent authority to deny compensation to Jackson Walker as a sanction for its violation of this Court's rules, including Local Rule 16.4.I(2) and the Disciplinary Rules.

### A. This Court Should Vacate the Prior Orders Awarding Jackson Walker Compensation and Order a Return of Compensation Paid

159.     Federal Rule of Civil Procedure Rule 60(b)(6) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Bankruptcy Rule 9024 incorporates Civil Rule 60(b) "in cases under the Code." Fed. R. Bankr. P. 9024.

160.     Rule 60(b)(6) "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Liljeberg*, 486 U.S. at 864. It is "a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quoting *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F. 2d 599, 604–05 (5th Cir. 1986); *see also Ackermann v. United States*, 340 U.S. 193, 199 (1950); *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) ("Rule 60(b)(6) motions will be granted only if extraordinary circumstances are present.") (internal quotation marks and citation omitted).

161.     Rule 60(b) "allows the Court to revoke its earlier orders and to order disgorgement." *In re Benjamin's-Arnolds, Inc.*, 1997 WL 86463, at *10.

162.     "[T]he disclosure obligation mandated by the Bankruptcy Code and Rules 'implicates a public policy interest justifying relief . . . under Rule 60(b)(6).'" *eToys*, 331 B.R. at 188 (quoting *In re Southmark Corp.*, 181 B.R. 291, 295 (Bankr. N.D. Tex. 1995)). Thus, a failure to "disclose and continue to disclose all connections that may effect [sic] employment eligibility .

. . constitutes a basis for relief from the compensation order under Rule 60(b)(6)." *Southmark Corp.*, 181 B.R. at 296; *see also eToys*, 331 B.R. at 188 (holding a failure to "disclose conflicts of interest that would have barred [professionals'] retention . . . constitute[s] a fraud on the Court warranting relief" under Rule 60(b)(6)); *Benjamin's-Arnolds, Inc.*, 1997 WL 86463, at *10 ("[T]he failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient 'extraordinary circumstances' to justify relief under Rule 60(b)(6).").

163.    Rule 60(b)(6) relief is warranted here because Jackson Walker failed to "disclose and continue to disclose all connections that [affected its] employment eligibility." *Southmark Corp.*, 181 B.R. at 296.  Because Jackson Walker ceased being eligible to be employed upon the appointment of Judge Jones as a mediator, it also ceased being eligible to be paid.  *See infra* Part II.A.1.  In addition, this Court should exercise its discretion over attorney fee awards to deny Jackson Walker compensation based on its non-disclosure and ethical breaches.  *See infra* Part II.A.2.  For these reasons, the compensation orders should be vacated and Jackson Walker should be ordered to return all compensation it has been paid.

### 1.    This Court Should Order Jackson Walker to Return the Compensation It Received Under Section 328(c)

164.    Section 328(c) provides that "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, *at any time* during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."  11 U.S.C. § 328(c).

165.     Thus, "[s]ection 328(c) provides that the court may deny compensation if the applicant becomes disinterested or represents or holds an adverse interest at any time during the case." *Consol. Bancshares*, 785 F.2d at 1256; *see also W. Delta Oil*, 432 F.3d at 354 ("A court may deny compensation for services provided by an attorney who holds such an adverse interest."); *see also Benjamin's-Arnolds, Inc.*, 1997 WL 86463, at *7 ("§ 328(c) is aimed squarely at penalizing those professionals who are employed by the estate, but who have violated the conflict of interest provisions of § 327 and Rule 2014.").

166.     Here, as discussed *supra* Part I.B.2, an actual conflict existed that precluded Jackson Walker's continued employment once Judge Jones was appointed as a mediator. "'[N]o more need be shown . . . to support a denial of compensation.'" *Consol. Bancshares,* 785 F.2d at 1256 (quoting *Woods v. City Nat'l Bank & Tr. Co. of Chi.*, 312 U.S. 262, 268 (1941)). The undisclosed conflict likewise supports requiring a return of fees previously paid. *See, e.g.*, *Rome*, 19 F.3d at 58 (affirming bankruptcy order that retroactively disqualified counsel and ordered return of compensation); *eToys, Inc.*, 331 B.R. at 190 ("Because it had an actual conflict for several months (which it failed to timely disclose), the Court concludes that MNAT should disgorge all fees received in this case for work done by it on matters involving Goldman. 11 U.S.C. § 328(c)"); *Benjamin's-Arnolds, Inc.*, 1997 WL 86463, at *8 ("[I]n the event that a conflict of interest is not discovered in time to deny the professional's compensation, it is within the court's power to order the disgorgement of any compensation already received").

167.     Because section 328(c) precluded the continued retention of Jackson Walker, the Court should order Jackson Walker to return the compensation paid.

2. **Jackson Walker's Violation of Its Disclosure Obligations as Section 327 Professionals Warrants an Order Requiring Jackson Walker to Return the Compensation It Received**

168. Even if Jackson Walker did not have a disqualifying conflict under section 328(c), the violation of its disclosure obligations warrants an order requiring Jackson Walker to return the compensation it has received. *See Am. Int'l Refinery, Inc.*, 676 F.3d at 465–66 (holding unintentional failure to disclose connections warranted return of fees even though there was no adverse interest under section 328(c)).

169. "[T]he basic premise of the Bankruptcy Code [is] that the bankruptcy court has broad supervisory powers over professional persons who render services for the estate." *Consol. Bancshares,* 785 F.2d at 1254.

170. Exercising their "broad supervisory powers" over attorneys employed by the estate, *Consol. Bancshares,* 785 F.2d at 1254, "[c]ourts may deny *all* compensation to professionals who fail to make adequate disclosure." *Am. Int'l Refinery, Inc.*, 676 F.3d at 465–66; *see also Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995) ("[The] court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to disgorgement as a sanction to debtors' counsel for nondisclosure.").

171. "So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees." *eToys, Inc.*, 331 B.R. at 190. *See also Prudhomme*, 43 F.3d at 1003 (affirming bankruptcy court's order requiring the return of a $75,000 prepetition retainer fee when the professional breached its duty to disclose it); *Rome*, 19 F.3d at 58 (affirming retroactive disqualification and forfeiture of all compensation); *Smitty's Truck Stop*, 210 B.R. at 850 (holding violation of counsel's fiduciary duty of disclosure "warrants a denial of all compensation to debtor's counsel").

42

172.     "[W]here there has been a clear failure to make timely and spontaneous disclosure of all facts material to a disqualifying conflict of interest, counsel appointed pursuant to section 327(a) can lay *no claim of right to a lesser sanction* than the bankruptcy court is authorized to impose pursuant to section 328(c)." *Rome*, 19 F.3d at 62 (emphasis in original). *See also Am. Int'l Refinery, Inc.*, 676 F.3d at 465–66 ("'[C]ounsel who fail to disclose timely and completely their connections *proceed at their own risk* because failure to disclose is sufficient grounds to revoke an employment order and deny compensation.'") (emphasis added) (quoting *W. Delta Oil*, 432 F.3d at 355); *accord Crivello*, 134 F.3d at 836; *Rome*, 19 F.3d at 59.

173.     This is true even if there was no harm or prejudice to the estate or its creditors and regardless of whether the undisclosed connection was materially adverse to the estate's interests or *de minimis*. *See Am. Int'l Refinery, Inc.*, 676 F.3d at 465–66 (affirming $135,000 sanction where "no harm or prejudice to the estate or creditors resulted"); *EWC, Inc.*, 138 B.R. at 280 ("Violation of the disclosure rules alone is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were de minimis.").

174.     Denial of compensation is also warranted even if the non-disclosure was unintentional. *Woods*, 312 U.S. at 268 (holding, where there is a conflict of interest, attorneys "should be denied compensation" even where "fraud or unfairness were not shown to have resulted"); *Am. Int'l Refinery, Inc.*, 676 F.3d at 465 (emphasis added) (affirming sanction where "none of these disclosure errors were intentional"); *eToys, Inc.*, 331 B.R. at 197 ("Failure to disclose may result in disallowance of fees or disqualification, even if the failure was negligent and not willful.").

43

175.    "The remedy for anything short of full disclosure is denial of compensation and disgorgement of sums already paid.  No exceptions are made for slipshodness or good faith.  This strict-liability principal is the law across the country."  *In re Chris Petit and Assocs., P.C.,* No. 22-50591-CAG, 2022 WL 17722853, at *10 (Bankr. W.D. Tex. Dec. 13, 2022) (citations omitted).

176.    For example, the Second Circuit held, in a case cited with approval by the Fifth Circuit, *Prudhomme*, 43 F.3d at 1003, that total denial of compensation was the only appropriate sanction for nondisclosure of all facts bearing upon counsel's eligibility to be employed by the estate.  *Futuronics Corp.*, 655 F.2d at 469–71 (holding bankruptcy court abused its discretion by only partially denying compensation to counsel that failed to disclose prohibited fee splitting); *see also EWC, Inc*., 138 B.R. at 282 (holding denial of all compensation is required to "serve[s] as an effective 'penalty'" for "persons who have violated the Bankruptcy Rules, violated their fiduciary duties, and deceived the court into exceeding its authority under § 327(a)").

177.    Here, denial of all compensation is warranted because of Jackson Walker's failures to disclose.  As discussed *supra* I.B.3, Jackson Walker failed to disclose all facts bearing on its eligibility to be retained as counsel under section 327 when it remained silent about Ms. Freeman's relationship with Judge Jones.

178.    This nondisclosure was neither minor nor accidental.  Jackson Walker knew of that relationship when Judge Jones was proposed as a mediator, yet intentionally did not disclose it.

179.    Denial of all compensation is also warranted because Jackson Walker's failure to disclose the relationship with Judge Jones was not an "isolated instance," but reflects "a total pattern of conduct which betrays a callous disregard of the professional obligations undertaken in these bankruptcy proceedings."  *Futuronics Corp.*, 655 F.2d at 471.

44

180.    Accordingly, this Court should order Jackson Walker to return all compensation paid by the estate.

## B.    This Court Should Order Jackson Walker to Return Compensation Paid as a Sanction for Violating this Court's Rules

181.    This Court also should exercise its inherent authority to deny compensation to Jackson Walker as a sanction for its violation of this Court's rules, including Local Rule 16.4.I(2) and the Disciplinary Rules.  *See Consol. Bancshares,* 785 F.2d at 1254 (holding that where attorneys "eschewed compliance with the Code and Rules," the court was "well within its discretion in denying them fees").

182.    "The bankruptcy court has inherent power to guard the practice of attorneys who appear in that court." *Baker v. Cage (In re Whitley)*, 737 F.3d 980, 987 (5th Cir. 2013) (quotation marks and alterations omitted); *accord In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016).  *See also Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991) ("We conclude that the bankruptcy court has the inherent power to award sanctions for bad-faith conduct in a bankruptcy court proceeding."); *Cruz*, 2020 WL 5083326, at *28 ("The Court has the power to police conduct of attorneys who appear in this Court and to take action with respect to those attorneys who misbehave."); *Bradley*, 495 B.R. at 777 (same).

183.    That power stems from two sources.  Under 11 U.S.C. § 105(a), the Court possesses statutory authority to issue "any order" that is "necessary or appropriate to carry out the provisions of this title," including "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."   11 U.S.C. § 105(a).  "[Section 105(a)] includes the power to sanction a party." *Ridgeway v. Stryker Corp. (In re Ridgeway)*, 973 F.3d 421, 428 (5th Cir. 2020); *see also Bradley*, 495 B.R. at 777 ("This Court

has authority . . . under 11 U.S.C. § 105(a) and applicable case law to police the conduct of attorneys who appear in this Court and to impose sanctions on those attorneys who misbehave.").

184.    In addition, all courts have inherent powers that derive from the very nature of the court as a court of justice.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Caldwell v. Unified Cap. Corp. (In re Rainbow Mag., Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996) (holding that the bankruptcy court has the same "inherent authority to sanction that *Chambers* recognized exists within Article III courts"); *Case*, 973 F.2d at 1023 ("The power to assess attorneys fees, like other inherent powers possessed by the district court, is based on the need to control court proceeding and necessity of protecting the exercise of judicial authority in connection with those proceedings. . . . These principles are equally applicable to the bankruptcy court.").

185.    These inherent powers include the court's authority to control admission to its bar, to discipline attorneys who appear before it, and to sanction individuals for "bad faith" or "willful misconduct" in the case.  *Chambers*, 501 U.S. at 43, 45–46.

186.    Courts have a "responsibility to supervise the conduct of attorneys who are admitted to practice before it." *In re Ramos*, 679 F. App'x 353, 356 (5th Cir. 2017).  Thus, "[c]ourts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do."  *Id.* (quotation marks and alterations omitted); *see also Cruz*, 2020 WL 5083326, at *35 ("[B]ankruptcy courts have broad leeway in determining an appropriate sanction for unethical behavior.").

187.    "[C]ourts may use their inherent sanctioning powers to sanction attorneys and firms for violations of local rules." *Bradley*, 495 B.R. at 794; *accord Ramos*, 679 F. App'x at 357 n.3; *Goode*, 821 F.3d at 559.

46

188.    The Court's broad authority to discipline attorneys includes requiring attorneys to "disgorge fees paid in connection with a bankruptcy proceeding." *Whitley*, 737 F.3d at 987 (quotation marks omitted). *See also Suffness v. Petros (In re Avante Real Estate, Inc.),* No. 95–10442, 1995 WL 625456, *8 (5th Cir. Oct. 11, 1995) ("[T]he bankruptcy court has broad authority to discipline attorneys and to award or disgorge fees paid in connection with bankruptcy proceedings.").

189.    In addition, "[t]he bankruptcy court has authority to impose disciplinary sanctions on attorneys beyond the return of compensation." *Whitley*, 737 F.3d at 988.

190.    Here, Jackson Walker violated Local Rule 16.4.I(2) by failing to disclose that Judge Jones had a potential conflict as a mediator given his relationship with Ms. Freeman. *See supra* Part I.A.2.  Jackson Walker also violated this Court's Local Rules, which incorporate the Disciplinary Rules, because it was not honest with the court and the other parties to the mediation and assisted Judge Jones's violation of his duty to disclose. *See supra* Part I.C.

191.    Jackson Walker's non-disclosure constitutes bad faith.  Bad faith includes intentional actions that an attorney knows violate her ethical duties—or where the attorney is willfully blind to the violation.  Thus, for example, the Fifth Circuit affirmed a $10,000 sanction for an *ex parte* contact to a represented party in violation of the Disciplinary Rules, holding that the lower court's finding that the attorney "acted intentionally and 'closed his eyes to the obvious' are sufficient to find that [the attorney] acted knowingly for purposes of [the rule], and . . . are tantamount to findings that [the attorney] acted in bad faith." *Williams v. Lockheed Martin, Corp.*, 990 F.3d 852, 867–68 (5th Cir. 2021). *See also Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 953 (5th Cir. 2001) (affirming $15,000 sanction payable to the court, holding finding of bad faith was

supported by counsel's lack of "any plausible good faith explanation for their conduct" given that, despite claim that their research supported them, they had not cited a single such case).

192.     Here, Jackson Walker knew of Ms. Freeman's relationship with Judge Jones and made a conscious decision not to disclose it despite the obligation to do so under multiple rules. *See eToys, Inc*., 331 B.R. at 187 (holding a knowing failure to disclose a conflict of interest "constitutes willful misconduct"); *see also id*. at 188 (failure to disclose fact that would bar retention "would constitute a fraud on the Court").

193.     As a sanction for Jackson Walker's knowing failure to disclose, in plain violation of this Court's rules, including Rule Local 16.4.I(2) and the Disciplinary Rules, this Court should order Jackson Walker to return all compensation to the estate.

## CONCLUSION

WHEREFORE, the U.S. Trustee respectfully requests that the Court (1) vacate the order granting Jackson Walker's Final Fee Application and order a return of the amounts paid, (2) sanction Jackson Walker for its violations of the Bankruptcy Code, Bankruptcy Rules, their fiduciary duties, the Local Rules, and the Disciplinary Rules by ordering the return of any paid fees and expenses, and (3) grant such other and further relief as this Court deems just and appropriate.

[Signature Page Follows]

Date: March 29, 2024

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: */s/ Millie Aponte Sall*

| | |
|---|---|
| RAMONA D. ELLIOTT | MILLIE APONTE SALL |
| Deputy Director/ | Assistant U.S. Trustee |
| General Counsel | Tex. Bar No. 01278050/Fed. ID No. 11271 |
| NAN ROBERTS EITEL | VIANEY GARZA |
| Associate General Counsel | Trial Attorney |
| Fed. ID No. 561266 | Tex. Bar No. 24083057/Fed. ID No. 1812278 |
| BETH A. LEVENE | ALICIA BARCOMB |
| Trial Attorney | Trial Attorney |
| Department of Justice | Tex. Bar No. 24106276/Fed ID No. 3456397 |
| Executive Office for | 515 Rusk, Suite 3516 |
| United States Trustees | Houston, Texas 77002 |
| Washington, D.C. 20530 | (713) 718-4650 – Telephone |
| (202) 307-1399 – Telephone | (713) 718-4670 – Fax |
| | Email: millie.sall@usdoj.gov |
| | vianey.garza@usdj.gov |
| | alicia.barcomb@usdoj.gov |

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, a copy of the foregoing pleading was served on those entitled to ECF Notice through the Court's CM/ECF system.

*/s/ Millie Aponte Sall*
Millie Aponte Sall