## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-00645 (EVR)** |
| **Professional Fee Matters Concerning the** | § | |
| **Jackson Walker Law Firm** | § | |
| | § | |
| | § | |

### JACKSON WALKER LLP'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE UNITED STATES TRUSTEE'S EXPEDITED MOTION TO QUASH SUBPOENAS
**[Relates to Dkt. Nos. 350, 386 & 420]**

Jackson Walker LLP ("JW") files this *Supplemental Brief* (the "Supplement") in

support of its *Objection* [Dkt. No. 386] (the "Objection") to the *Expedited Motion to Quash

Subpoenas* [Dkt. No. 350] (the "Motion to Quash") filed by Kevin Epstein, the United States

Trustee for Region 7 (the "U.S. Trustee"), and in support thereof respectfully states as follows:[1]

### PRELIMINARY STATEMENT[2]

1.      The U.S. Trustee asks this Court to make an unprecedented ruling:  to quash the

deposition of the functional plaintiff in these cases and prevent JW from obtaining sworn testimony

in support of its defenses because the U.S. Trustee is too "high-ranking" to be "burdened" to sit

for a deposition in litigation that he initiated.  But, having initiated this litigation, the U.S. Trustee

is bound by the same discovery rules that govern any other party in federal court.  As the Supreme

Court has recognized, "the Government as a litigant is, of course, subject to the rules of

discovery."[3]

---

[1] On October 8, 2024, the Court held a hearing on the U.S. Trustee's Motion to Quash.  At that hearing, the Court ordered the depositions of Hector Duran and Stephen Statham to move forward, and stayed the depositions of Kevin Epstein, Henry Hobbs, and Millie Sall, pending receipt and consideration of supplemental briefing by the parties.

[2] JW incorporates by reference the procedural history and facts set forth in the Objection.

[3] *United States v. Procter & Gamble Co*., 356 U.S. 677, 681 (1958).

2.      Despite this well-established principle, the U.S. Trustee now seeks to shield critical testimony by invoking an inapplicable "apex" doctrine and agency "housekeeping" regulations that JW has complied with even though they cannot be used here to circumvent the U.S. Trustee's federal discovery obligations.

3.      JW seeks the depositions of Kevin Epstein, Henry Hobbs, and Millie Sall (collectively, the "Deponents") because their testimony may aid in JW's defenses against the claims brought by the U.S. Trustee.  Despite the U.S. Trustee's characterizations otherwise, Mr. Epstein is not a high-ranking official entitled to "apex" status and, even if he was, exceptional circumstances warrant his deposition, as detailed below.

4.      Moreover, the U.S. Trustee has conceded that ***the "apex" doctrine does not prevent the depositions of Mr. Hobbs or Ms. Sall***—they are clearly not high-ranking officials.[4]  The U.S. Trustee did not assert either in his Motion to Quash or at the October 8th hearing that Mr. Hobbs and Ms. Sall should be protected by the "apex" doctrine; accordingly, the Court should permit the depositions of Mr. Hobbs and Ms. Sall to proceed.

5.      The U.S. Trustee also cannot hide behind the *Touhy* regulations to avoid the depositions.  ***JW has already complied with the Touhy regulations (even though they do not apply)***, as confirmed by the U.S. Trustee on the record at the October 8th hearing.[5]  JW complied with the *Touhy* regulations notwithstanding its position—well supported by case law—that the regulations do not trump the federal rules governing discovery.  Rather, when the U.S. Trustee "is a party to the litigation, ***the reach of disclosure-limiting Touhy regulations ends at the***

---

[4] *See* Motion to Quash ¶ 1 (arguing that only the U.S. Trustee's subpoena should be quashed under the apex doctrine); 19-26 (applying the apex doctrine only to the U.S. Trustee); *see also PDF File with Audio File Attachment* at 11:44-11:50, Doc. No. 428 (Oct. 10, 2024) (counsel for the U.S. Trustee: "The evidence is gonna show that Kevin Epstein is a high ranking government official.").

[5] *See PDF File with Audio File Attachment* at 3:15-3:16, Doc. No. 428 (Oct. 10, 2024) (counsel for the U.S. Trustee: "The U.S. Trustee hasn't argued that the Touhy regulations weren't complied with.").

*courthouse doors*."[6]  The Court should find that the *Touhy* regulations are not applicable in these proceedings where the U.S. Trustee is acting as a plaintiff.

6.      Further, the U.S. Trustee cannot selectively obstruct JW's efforts to obtain discovery essential to its defense by relying on vague and conclusory sworn statements in interrogatory responses.  There is no less-intrusive way to obtain the information JW seeks; only depositions allow for complete answers, under oath, to JW's questions.  These subpoenas are not unduly burdensome, as engaging in discovery is typical in every lawsuit and is central to the U.S. Trustee's role as the plaintiff in these proceedings.  By initiating these cases, the U.S. Trustee accepted these obligations and should not be allowed to evade them now.

7.      JW respectfully requests that the Court deny the U.S. Trustee's Motion to Quash and permit the depositions to proceed.

## ARGUMENT

**I.    The "apex" doctrine is inapplicable, and depositions of the Deponents are necessary.**

8.      The "apex doctrine" relied on by the U.S. Trustee in his Motion to Quash does not apply in federal courts in the Fifth Circuit.[7]  Instead, the Fifth Circuit considers the following factors when evaluating "apex" depositions: (1) high-ranking status, (2) relevant knowledge (or substantive reasons for taking apex deposition), (3) burden on the apex deponent (or whether good cause exists to deny the deposition), and (4) extraordinary circumstances (or whether less intrusive means exists).[8]  The U.S. Trustee has not met his burden to establish the factors required under *Salter* and *F.D.I.C.* to quash Mr. Epstein's subpoena.

---

[6] *Res. Investments, Inc. v. United States*, 93 Fed. Cl. 373, 380 (2010) (emphasis added).

[7] *See* Objection ¶ 17.

[8] *See Salter v. Upjohn*, 593 F.2d 649, 651 (5th Cir. 1979); *see also Fam. One v. Isaacks*, No. 9:22-CV-00028-MJT, 2023 WL 4503537, at 5–6 (E.D. Tex. Apr. 25, 2023); *Motion Games, LLC v. Nintendo Co.*, No. 6:!2-CV-878-JDL, 2015 WL 11143486, at *1 (E.D. Tex. Mar. 18, 2015); *Gauthier v. Union Pac. R. Co.*, Case No. 1:07-12, 2008 WL

### A.     The U.S. Trustee is not an "apex" witness.

9.     When a government official seeks to avoid a deposition under the theory of purported "apex" status, the threshold question is whether the government official is "sufficiently 'high-ranking.'"[9]  The government official bears the burden of making that showing.[10]  Although sufficiently high ranking status is determined on a case-by-case basis, it is generally accepted that "heads of government agencies" are covered by the apex doctrine.[11]  Exactly where to the draw the line below heads of government agencies is unclear.

10.     The U.S. Trustee did not and cannot meet his burden of showing Mr. Epstein's "apex" status because he is not a sufficiently high-ranking government official.[12]  The U.S. Trustee Program (the "USTP") is a component of the U.S. Department of Justice responsible for overseeing the administration of bankruptcy cases and private trustees.[13]  Under the Department of Justice—headed by the Attorney General, the Deputy Attorney General, and then the Associate Attorney General—the Executive Office for United States Trustees (the "EOUST") "determines national policies, priorities, and litigation positions; oversees overall operations in the USTP's 21 regions consisting of 89 field offices nationwide; and supervises the regional U.S. Trustees."[14]  A

---

2467016, at *3 (E.D. Tex. June 18, 2008); *see also In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re Bryant*, 745 F. App'x 215, 218 n.2 (5th Cir. 2018) (per curiam).

[9] *Fla. v. United States*, 625 F. Supp. 3d 1242, 1246 (N.D. Fla. 2022) (citing *Estate of Levingston v. Cnty. of Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017)).

[10] *Id.*; *see also Odom v. Roberts*, 337 F.R.D. 359, 364 (N.D. Fla. 2020).

[11] *Fla. v. United States*, 625 F. Supp. 3d at 1246.

[12] As mentioned above, the U.S. Trustee has not moved to quash the subpoenas of Mr. Hobbs or Ms. Sall based on the "apex" doctrine.  *See* Motion to Quash §§ 1, 19-26.  Any attempt to extend the "apex" doctrine to Mr. Hobbs or Ms. Sall in supplemental briefing would be inappropriate due to the U.S. Trustee's failure to move on this ground in his Motion to Quash in the first instance.  *In re U.S.*, 864 F.2d 1153, 1156 (5th Cir. 1989) (objections to discovery requests not timely raised are waived).

[13] *See* U.S. Department of Justice's U.S. Trustee Program, available at: https://www.justice.gov/ust.

[14] *See* Organization, Mission and Functions Manual, Executive Office for United States Trustees, available at: https://www.justice.gov/doj/executive-office-united-states-trustees.

review of the EOUST's organizational structure shows that the Director of EOUST, Tara Twomey,

oversees three deputy directors:  the Deputy Director of Management, the Deputy Director of Field

Operations, and the Deputy Director of General Counsel.  Applicable here, the Deputy Director of

Field Operations, Michael J. Bujold, oversees the USTP.[15]  Thus, within the EOUST, there are

two levels above Mr. Epstein:  first, Ms. Twomey, as the Director of the EOUST, and then Mr.

Bujold, as the Deputy Director of Field Operations, who oversees 21 regional U.S. Trustees,

including Mr. Epstein.[16]  Mr. Epstein in turn manages Ms. Sall, an Assistant U.S. Trustee for

Region 7, and other assistant U.S. Trustees for Region 7 and field office personnel.  For ease, a

simplified hierarchy is shown below:



Department of Justice

Attorney
General

Deputy
Attorney
General

Associate
Attorney
General

Executive Office for
U.S. Trustees
(Director, Tara
Twomey)

Deputy Director of
Field Operations
(Michael J. Bujold)

Regional U.S.
Trustees (for Region
7, Kevin Epstein)

---

[15] Attached hereto as **Exhibit 1** is the Organizational Chart of Executive Office for U.S. Trustees, also available at: https://www.justice.gov/doj/executive-office-united-states-trustees.

[16] *See* U.S. Trustee Program General Information, available at: https://www.justice.gov/ust.

11.     The hierarchy detailed above shows that Mr. Epstein is, at best, a middle manager under numerous levels of hierarchy within the USTP and the greater Department of Justice bureaucracy.[17]   For comparison, Mr. Epstein's ranking is clearly no higher than an Executive Associate Director within U.S. Immigration and Custom Enforcement ("ICE"), which a federal district court has ruled was not an "apex" position.[18]   Further, the EOUST is not a standalone agency that can be viewed in a vacuum because even its director is several levels below the Attorney General, who is the head of the Department of Justice.   Accepting the U.S. Trustee's "apex" argument would enable any government employee who oversees a few lower-level employees to claim "apex" status to avoid discovery.   To conclude that Mr. Epstein qualifies as "high ranking" would open the flood gates of "high ranking" government officials that are extremely difficult to depose, which would pose a threat to the administration and adjudication of justice.   And it would indeed be an unprecedented result when a plaintiff can initiate litigation and then hide behind a legal doctrine that would wholly insulate him from a deposition.

12.     As noted in the Objection, "apex" witnesses traditionally refer to high-level positions of governmental agencies, agencies, governors of states, and executives or presidents of large corporations.[19]   The cases cited by the U.S. Trustee actually support this position—each case cited involved either a ***governor*** of a state (*i.e.*, the highest-ranking official of the state), or federal officials who govern at a ***national*** level, not a ***regional*** level (*i.e.*, Ms. Twomey, the highest-ranking EOUST official, not Mr. Epstein).[20]   The U.S. Trustee has provided no authority that can

---

[17] And, of course, Ms. Sall is even lower in the hierarchy than Mr. Epstein, which explains why the U.S. Trustee has not even attempted to argue that she qualifies as an "apex" deponent.

[18]  *See Fla. v. United States*, 625 F. Supp. at 1247 (holding that the Executive Associate Director of Enforcement and Removal Operations within ICE is not sufficiently high ranking).

[19] *See* Objection ¶ 20.

[20] *See* Motion to Quash n.4.

possibly be viewed as countering these cases.  In fact, JW has not been able to locate ***any case*** in which an employee similar to a U.S. Trustee or an assistant U.S. Trustee was considered an "apex" witness or otherwise a "high ranking" government official.  On the contrary, ***at least one court has compelled the deposition of an assistant U.S. Trustee*** where the U.S. Trustee was a party to the litigation.[21]  Further, the then U.S. Trustee for Region 2 ***has been deposed*** in the past as a third-party in a fee dispute concerning ethical violations.[22]  Accordingly, the U.S. Trustee has failed to establish as a threshold matter that Mr. Epstein qualifies as an "apex" witness.

> **B.    The Deponents possess relevant knowledge that are essential to the claims and defenses asserted in these proceedings.**

13.    Even assuming the Deponents[23] qualify as "apex" witnesses, which they do not, all of the factors considered by courts in the Fifth Circuit are met here to justify deposing the Deponents, including that the Deponents have "unique personal knowledge of the matter in the case."[24]

14.    Here, it is clear that the Deponents possess relevant information to the allegations and defenses.[25]  Contrary to the U.S. Trustee's belief, whether or not the U.S. Trustee personnel had knowledge of the Relationship[26] would impact the claims and defenses of the U.S. Trustee's Rule 60(b) motions.  Specifically, if the Deponents had knowledge of the Relationship, then the U.S. Trustee cannot establish the requisite "manifest injustice" or "extraordinary circumstances"

---

[21] *See In re Travelstead*, 212 B.R. 505, 511 (Bankr. D. Md. 1997).

[22] *See In re Saint Vincents Cath. Med. Centers of New York*, No. 05 B 14945 (ASH), 2007 WL 2492787, at *19 (Bankr. S.D.N.Y. Aug. 29, 2007) (mentioning that a U.S. Trustee had been deposed during the course of discovery).

[23] As previously stated, the U.S. Trustee has not asserted that Ms. Sall and Mr. Hobbs are "apex" witnesses. Nonetheless, out of an abundance of caution, JW includes them, with Mr. Epstein, in this section of its argument.

[24] *See Langley v. Int'l Business Machines Corp.* Case No. A-18-CV-443-LY, 2019 WL 4577115, at *4 (W.D. Tex. Sept. 19, 2019).

[25] *See* Objection § III.

[26] Relationship refers to the alleged intimate, financial, or cohabitating relationship between former Judge Jones and Elizabeth Freeman which is the subject of this litigation (the "Relationship").

to prevail on his Rule 60 motions.[27]   Further, if the Deponents had knowledge about the Relationship at the time the fee orders were entered in the various closed cases and did not act on that knowledge, then the U.S. Trustee may not be able to establish "good cause" to reopen cases— many of which have been closed for years.  Therefore, JW has met its burden of establishing relevance of the Deponents' personal knowledge to the claims and defenses as to the issues in these proceedings.

15.     Further, the U.S. Trustee should be deposed despite his interrogatory responses that he had no actual knowledge of the Relationship before it was reported publicly on October 6, 2023. JW is entitled to depose the U.S. Trustee and his personnel precisely because of his sworn statement.  The sworn statement does not provide whether the U.S. Trustee personnel had any reason to believe the Relationship existed, or whether they reasonably should have known given all the facts and circumstances.  It may well be the case that the U.S. Trustee was exposed to enough information that it had a duty to investigate the existence of the Relationship.

16.     Moreover, JW is entitled to question the U.S. Trustee to determine what he reviewed or relied upon to determine that he had no actual knowledge of the Relationship prior to October 6, 2023.  For example, is the response based on Mr. Epstein's own personal knowledge, or did he ask personnel in the Region 7 field office about their knowledge?  Did he review email, text message, or other written correspondence prior to October 6, 2023 to determine whether any Region 7 personnel had knowledge of the Relationship?  If so, which custodians did he collect and review and using what search terms?  JW has asked these questions of the U.S. Trustee's counsel but has been met with resistance in obtaining basic discovery information such as custodians or

---

[27] JW also contests the U.S. Trustee's ability to prevail on his Rule 60 motions on other grounds.

search terms—thus, JW requires this deposition in order to obtain the basis on which the U.S. Trustee's sworn statement was made.

17.     It would be fundamentally unfair for JW to be prohibited from interrogating the Deponents, including Mr. Epstein who verified under oath his responses to JW's interrogatories, to clarify those bare-bone responses.[28]   The government, as a litigant, cannot use its executive power to "dictate what evidence is admissible in a court of law, or whose testimony the court may hear."[29]   A "court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."[30]   Accordingly, the U.S. Trustee has failed to establish any basis to deny these depositions even if the Court is persuaded that they should be treated as "apex" witnesses.

### C.     The proposed depositions are not unduly burdensome.

18.     The U.S. Trustee's argument that these depositions would impose a burden is unconvincing, especially given the extensive discovery he has already conducted, including deposing over 30 witnesses.   As the plaintiff, the U.S. Trustee has a duty to engage in balanced discovery, especially when the Deponents' personal knowledge is relevant to JW's defenses.   JW now seeks fair treatment in discovery.

19.     Moreover, it is the inherent responsibility of the Deponents, as a U.S. Trustee or U.S. Trustee personnel, to uphold the "integrity and efficiency of the bankruptcy system for the

---

[28] Indeed, as the Court noted, the U.S. Trustee's answer in the interrogatories was incomplete.  *See PDF File with Audio File Attachment* at 38:49-38:56, Doc. No. 428 (Oct. 10, 2024) (the Court: "I can see why Jackson Walker wanted to take his deposition.  I don't see this as a complete answer.").

[29] *Gulf Grp. Gen. Enters. Co. v. United States*, 98 Fed. Cl. 639, 646 (2011) ("When the United States is a party to litigation, 'judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.'" (quoting *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953)).

[30] *Herrmann v. United States*, 127 Fed. Cl. 22, 40 (2016) (citation omitted).

benefit of all stakeholders—debtors, creditors, and the public."[31]  Discovery is an integral part of this litigation in order to achieve an equitable and just outcome.  Participating in the discovery process is a necessary part of the Deponents' professional duties, which is, by definition, not "unduly burdensome" under controlling law.[32]  Here, on the contrary, shielding the Deponents from the burdens of discovery would turn the doctrine on its head—in effect allowing the Deponents to *avoid* performing their professional duties.[33]

20.     The U.S. Trustee has principally relied on *Paxton* in support of his "unduly burdensome" argument.[34]  However, *Paxton* can be distinguished on multiple factual grounds.  In *Paxton*, the plaintiffs sued Texas Attorney General Ken Paxton and issued subpoenas to obtain Paxton's testimony.[35]  Already, this is a fundamentally different fact than the situation at issue here, where the U.S. Trustee initiated these proceedings and thus subjected himself to this Court's jurisdiction and the federal discovery process.[36]  This distinguishing factor was important to the Fifth Circuit, who explained the rationale behind the "apex" doctrine:

> The district court ignored the rationale for limiting apex testimony to exceptional circumstances.  High-ranking officials—state attorneys general being the paradigm case—are often drawn into lawsuits.  They cannot perform their duties if they are not personally shielded from the burdens of litigation. *In re Bryant*, 745 F. App'x at 220-21; *see also In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) (per curiam) ("Obviously, high-ranking officials of cabinet agencies

---

[31] About the U.S. Trustee Program, available at: https://www.justice.gov/ust.

[32] *See Paxton*, 60 F.4th at 258-59 (holding that apex depositions are "unduly burdensome" to high-ranking government officials if "they cannot perform their duties if they are not personally shielded from the burdens of litigation").

[33] As previously noted, Mr. Hobbs has retired from the USTP and is not a current employee.  Thus, his "professional duties" cannot be impacted by his deposition.

[34] *See* Objection ¶ 26 (citing *Paxton*, 60 F.4th 258-59.)

[35] *See Paxton*, 60 F.4th at 255.

[36] The Fifth Circuit in *Paxton* relied heavily on Paxton's status as a ***defendant*** entitled to sovereign immunity—an "immunity from suit rather than a mere defense to liability"—in quashing the subpoenas.  *Id.* at 257 ("Paxton is a defendant, not a third party, and to the extent his statements are relevant to Plaintiffs' claims, it is because of his status as a defendant."); *see id.* (explaining that it would "turn[ ] qualified immunity on its head by opening the defendant[ ] to deposition before adjudication of [his] immunity defense.").

> could never do their jobs if they could be subpoenaed for every case
> involving their agency.").[37]

There is no question that the Deponents here are not being "drawn into lawsuits"—rather, they initiated this litigation, presumably because of their "duties" as U.S. Trustees.  JW is thus entitled to discover whether the U.S. Trustee can meet his burden to establish Rule 60 relief (and whether the U.S. Trustee can even meet its burden to reopen the various closed cases), which necessarily involves a determination of the Deponents' personal knowledge of the Relationship at the time the retention and fee orders—orders that the U.S. Trustee is now challenging—were entered.  Thus, the rationale behind quashing the subpoena in *Paxton* simply does not apply.

21.     The Deponents' knowledge here also differs from the "unique knowledge" alleged in *Paxton*.  In *Paxton*, the plaintiffs sought to depose Paxton's "personal thoughts and statements" regarding the Attorney General's Office "enforcement policy," and Fifth Circuit found that representatives from the office could explain the policies on Paxton's behalf.[38]  Here, no witness can testify as to what Mr. Epstein knew regarding the Relationship, other than Mr. Epstein himself.  Similarly, only Ms. Sall can testify as to her personal knowledge, and only Mr. Hobbs can testify as to his.  There are no "representatives" that can testify as to the Deponents' personal knowledge or observations regarding something as fluid as a relationship, unlike a concrete, written enforcement policy.

22.     The Fifth Circuit also took issue with the lower court's finding that Paxton's deposition would not be "unduly burdensome."[39]  The Fifth Circuit was unpersuaded by the lower court's reasoning that if Mr. Paxton has time for public speech, he must also have time for

---

[37] *Paxton*, 60 F.4th at 258.

[38] *Id.*

[39] *Id.* at 259.

depositions.   Here, the requested depositions cannot possibly be "unduly burdensome" if participating in the discovery process is part of the Deponents' core job functions.  In fact, with respect to Ms. Sall, she has attended numerous depositions taken by the U.S. Trustee in these proceedings—again, presumably as part of her job functions.  It is illogical that Ms. Sall would be burdened by appearing herself for deposition when she was unburdened by other depositions in these cases.

### D.    Extraordinary circumstances exist to justify the proposed depositions.

23.    In apex depositions of high-ranking government officials in particular, courts require a showing of "extraordinary circumstances" for why the deposition is necessary.[40]   A key aspect of that analysis is whether the sought after information can be obtained from other witnesses.[41]

24.    Even if the court is persuaded that the Deponents should be treated as "apex" witnesses, the court should nonetheless order these depositions to proceed because "extraordinary circumstances" exist here.[42]  JW is seeking testimony from the Deponents not only in their official capacity as an employee of the USTP, but also in their personal capacities.  JW has exhausted all possible less-intrusive means to obtain such information, including by requesting production of documents and interrogatory answers, which were met with resistance and objection.  For the reasons explained above, JW cannot obtain the information from other witnesses.

25.    A complete understanding of the facts and circumstances underlying these proceedings, including what the U.S. Trustee and his personnel knew (or did not know) and when and what the U.S. Trustee did (or did not do) at any particular time, is important and directly bears

---

[40] *See FDIC*, 58 F.3d at 1062.

[41] *Id.*; *Bryant*, 745 F. App'x at 218 n2.

[42] *See* Objection ¶ 27.

on the claims and defenses raised in these proceedings.  If the U.S. Trustee or his personnel knew of the Relationship at the time the challenged orders were entered, then he cannot establish "manifest injustice" or "extraordinary circumstances" required to prevail on his Rule 60 motions.[43] He also cannot establish "cause" to reopen the numerous closed cases at issue here, if he knew of the Relationship at the time the orders were entered but chose to do nothing.

26.     Courts in the Fifth Circuit have held that important policy reasons can outweigh any potential burden on an apex witness.[44]  Similarly here, the importance of having a complete record outweighs any potential burden on the Deponents, particularly when any such discovery would bear directly on JW's defenses in these proceedings.

27.     When taking into consideration that the Deponents are not high-ranking government officials, that the U.S. Trustee initiated these proceedings and made sworn statements that are entitled to be tested, that the information sought through the depositions is relevant and (as the Court has already found) discoverable, and that none of the Deponents will suffer an undue burden by being deposed, the Court should deny the Motion to Quash.

## II.     Discovery in this Court is governed by Federal Rules of Civil Procedure and Judicial Authority, not the Touhy Regulations.

28.     In an effort to expedite the discovery process, JW complied with the U.S. Trustee's request to include a summary of the testimony sought from the Deponents with the subpoenas.  JW provided this summary not because it was required to under *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ("Touhy") or subsequent regulations adopted after *Touhy* (the "Touhy

---

[43] *See Williams v. Toyota Motor Engineering & Mfg. N. Am., Inc.*, 470 F. App'x 309, 313 (5th Cir. 2012) (stating that Rule 60 motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (internal quotation marks and citation omitted).

[44] *See Missouri v. Biden*, No. 3:22-CV-01213, 2022 WL 18142525, at *5 (W.D. La. Oct. 21, 2022) (holding that the importance of fundamental right of free speech outweighs any burden that may be imposed on apex witnesses including the head of NIAID and finding that extraordinary circumstance exists to take apex depositions).

regulations"), but because it desired to resolve the discovery process outside the courtroom in an efficient and expeditious manner.  Notwithstanding that effort, the U.S. Trustee now attempts to limit JW's depositions of the Deponents only to the topics identified in the summary.  JW's provided topics were intended to be exhaustive, but neither the topics nor the Touhy regulations are binding on JW.  Rather, as JW argued to this Court at the October 8th hearing, the *Touhy* regulations are just that: ***internal, agency regulations designed to assist federal agencies in their "housekeeping" matters; not regulations that can usurp the federal discovery process or this Court's jurisdiction***.  JW submits that, while it has complied with the regulations (even though it was not required), as acknowledged by the U.S. Trustee on the record, the Court should find that the regulations are not binding in these proceedings, where the U.S. Trustee is a party.

29.     The U.S. Trustee's reliance on the Touhy regulations to shield testimony is inappropriate because when a federal entity, like the U.S. Trustee, acts as a plaintiff, it must be treated as any other litigant, governed by the discovery rules of the Court and not by its own agency regulations.

30.     Pursuant to the Federal Housekeeping Statute, 5 U.S.C. § 301, the Department of Justice (the "DOJ") enacted internal regulations—the "Department's Touhy regulations" governing DOJ employees' potential testimony or production of documents in response to "subpoenas or demands of courts."[45]   The Federal Housekeeping Statute authorizes federal agencies, like the DOJ, to "prescribe regulations" for the conduct of employees and manage records, yet it is designed as an administrative "housekeeping" mechanism to streamline internal procedures rather than restrict discovery in federal court.[46]   In fact, the Federal Housekeeping

---

[45] *See* Justice Manual, DOJ Personnel as Witnesses, available at:  https://www.justice.gov/jm/jm-1-6000-doj-personnel-witnesses.

[46] *See* 5 U.S.C. § 301.

Statute **expressly** provides: "***This section does not authorize withholding information from the public or limiting the availability of records to the public.***"

31.     In 1951, the Supreme Court interpreted the Federal Housekeeping Statute in the *Touhy* case, prompting federal agencies to adopt so-called "Touhy regulations" concerning testimony by agency employees and the production of government documents.[47]   The DOJ's Touhy regulations, set forth at 28 C.F.R. §§ 16.21 *et seq*., provide procedures and standards that govern the production or disclosure of any material or information in its files or within the knowledge of its employees, acquired by reason of their official duties, when responding to subpoenas issued in litigation.

32.     JW fully complied with these DOJ regulations in issuing its subpoenas to the Deponents as an accommodation to the U.S. Trustee and solely in an attempt to avoid court intervention for a discovery dispute.   JW's compliance, however, does not make the Touhy regulations applicable.   In *Touhy*, the Supreme Court held that in *private litigation where the federal government or its agencies are not involved*, a subordinate government official cannot be required to testify or produce documents if a departmental regulation bars such disclosure without approval from the department head.[48]

33.     Courts have established that the *Touhy* regulations **do not apply** where, like here, the federal government is a party to litigation.   "***With near unanimity***, however, those courts considering the issue have concluded that, ***when the United States is a party to the litigation, the reach of disclosure-limiting Touhy regulations ends at the courthouse doors***."[49]   Such holdings

---

[47] *Touhy*, 340 U.S. at 463.

[48] *Alexander v. FBI,* 186 F.R.D. 66, 69-71 (D.D.C. 1998); *see Touhy* 340 U.S. at 468-470.

[49] *Res. Investments, Inc. v. United States*, 93 Fed. Cl. 373, 380 (2010) (citing *Young v. United States*, 181 F.R.D. 344, 347-48 (W.D. Tex. 1997) (addressing 5 C.F.R. § 2635.805); *Dean v. Veterans Admin. Reg'l Office*, 151 F.R.D. 83, 86-87 (N.D. Ohio 1993) (same); *In re Air Crash Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 737 F. Supp. 399, 404-05 (E.D. Mich. 1989) (addressing the Ethics in Government Act); *United States ex rel. Roby v. Boeing Co.,*

are entirely consistent with the intended fairness of discovery.  It would pervert the discovery process to allow one litigant to adopt its own internal policies prohibiting testimony or production of documents in cases where it is a party, while forcing the other party to present witnesses for testimony and to turn over relevant documents.  *Touhy* simply does not apply in situations like this.

34.    Courts in the Fifth Circuit have recognized that the *Touhy* regulations do not apply when the government is a party to the proceedings, emphasizing the principle that federal agencies must follow the same discovery obligations as any other litigant.  In *Louisiana v. Sparks*, although addressing a different issue, the Fifth Circuit highlighted that "the Supreme Court has long held, such regulations unquestionably give Justice Department employees the authority, when so ordered by superiors, to refuse to comply with a subpoena ordering disclosure of confidential files **when the United States is not a party to a legal action**."[50]  The Fifth Circuit also previously held that the Federal Housekeeping Statute "cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged. Its function is to furnish the departments with housekeeping authority.  **It cannot bar a judicial determination of the question of privilege or a demand for the production of evidence found not privileged.**"[51]

---

189 F.R.D. 512, 514 (S.D. Ohio 1999) (addressing *Touhy* regulations pursuant to 5 U.S.C. § 301); *Romero v. United States*, 153 F.R.D. 649, 651 (D. Colo. 1994) (addressing 32 C.F.R. § 516.42, the predecessor to 32 C.F.R. § 516.49); *Alexander v. FBI*, 186 F.R.D. at 69-71  (addressing 5 U.S.C. § 301, and finding that "neither the federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents or testimony from a federal court"); *McElya v. Sterling Med., Inc.*, 129 F.R.D. 510, 514-15 (W.D. Tenn. 1990) (holding that 5 U.S.C. § 301 does not grant authority to assert an evidentiary privilege not recognized by the Federal Rules of Civil Procedure or the law of evidence)); *see also E.E.O.C. v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373, 1379-1383 (D.N.M. 1974) ("When the government or one of its agencies comes into court (with very few exceptions), it is to be treated in exactly the same way as any other litigant.").

[50] 978 F.2d 226, 234 (5th Cir. 1992) (emphasis added).

[51] *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961) (emphasis added).

16

35.     The Western District of Texas squarely addressed this issue in *Spears v. United States*.[52]  There, the plaintiffs brought a wrongful death action against the United States and submitted an expert report of a former Department of Army doctor.  The United States moved to strike the expert report, arguing that it violated the "Army Regulations"—the Army's equivalent of the DOJ's regulations at issue here.  In denying the motion to strike, the court stated that it "uncovered several cases dealing with the aforementioned regulations" and that "[e]ach case holds that ***a court's power to govern the admissibility of expert witnesses cannot be circumscribed by regulation***."[53]  Citing *Gulf Group*,[54] the court noted that:

1) "the regulations were not intended to confer a privilege;"

2) "such regulations are in direct conflict with the authority of the judicial branch to control the admission of testimony for cases filed in federal court to achieve a just a fair result"—further noting that "the judiciary, not the executive branch[,] controls the admission of evidence at trial;" and

3)  the regulations, "which had been the result of the Supreme Court's opinion in [*Touhy*], were only applicable in cases in which the United States was not a party to the original legal proceeding."[55]

The court further cited two cases in which courts "held that the [*Touhy*] Regulations were superseded by the Federal Rules of Civil Procedure and the Federal Rules of Evidence."[56]

36.     As made clear by *Spears*, *Res. Investments*, *Romero*, and *Gulf Group*—among other cases—the DOJ regulations cannot usurp the Federal Rules of Civil Procedure or this Court's ability to control discovery:  "[b]ecause the [FRCP] and the [FRE] are binding as any statute duly elected by Congress, all laws in conflict with such rules shall be of no further force or effect after

---

[52] No. 5:13-CV-47-DAE, 2014 WL 258766, at *3 (W.D. Tex. Jan. 23, 2014).

[53] *Id.* at *5 (emphasis added).

[54] *Gulf Grp. Gen. Enters. Co. W.L.L.*, 98 Fed. Cl. at 639.

[55] *Id.* at *5 (internal quotations omitted).

[56] *Id.* (citing *Res. Investments, Inc.*, 93 Fed. Cl. at 379); *Romero v. United States*, 153 F.R.D. 649, 652 (D. Colo. 1994)).

such rules have taken effect."[57]   Rather, the U.S. Trustee—a federal agency—is "***to be treated in exactly the same way as any other litigant.*** Appointment to office does not confer upon a bureaucrat the right to decide the rules of the game applicable to his crusades or his lawsuits."[58]

37.     The Southern District of Texas ruled similarly when considering the Army regulations.  In *Fisher v. Halliburton*, the district court rejected the Army's argument that a retired lieutenant general could not testify as an expert witness under the Army's regulations.[59]   The court held that "it remains with the court to determine the scope of discovery" and quoted the Third Circuit for the proposition that:

> [F]ederal regulations cannot "trump" or repeal Acts of Congress. ***[A regulation from the Code of Federal Regulations] is not an Act of Congress; it is a federal regulation. In contrast, the Federal Rules of Evidence were enacted by Congress and must be regarded by this Court as any other federal statute.***
>
> Although initially proposed by the Supreme Court, the Federal Rules of Evidence were enacted into law by Congress, Act of Jan. 2, 1975, and they "govern proceedings in the courts of United States." Although promulgated pursuant to congressional authority, [a regulation from the Code of Federal Regulations] remains a regulation. The delegation of congressional power that authorized its promulgation did not transform the regulation into an Act of Congress, nor allow it to prevail over contrary provisions of duly enacted statutes. ***Accordingly, the Coast Guard may not, through its regulations, limit the authority of Congress to prescribe and enforce rules for the admissibility of evidence in the federal courts.***[60]

38.     ***Numerous*** other courts have held similarly:

---

[57] *Res. Investments, Inc.*, 93 Fed. Cl. at 379.

[58] *Equal Emp. Opportunity Comm'n v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373, 1374 (D.N.M. 1974) (emphasis added); *see also Texas v. Caremark Rx, Inc*., Case Nos. SA 99-CA-0914WRF & SA 12-CA-0929WRF, 2013 WL 12368800, at *11 (W.D. Tex. Jan. 2, 2013) ("When the Government is a party in the case, the *Touhy* regulations do not apply.").

[59] Case No. H-05-1731, 2010 WL 11586896, at *2-3 (S.D. Tex. Mar. 23, 2010).

[60] *Id.* (quoting *Complaint of Nautilus Motor Tanker Co., Ltd.*, 85 F.3d 105, 112 (3d Cir. 1996)) (emphasis added).

- "The policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources **when the United States is not a party** to a suit, and to minimize governmental involvement in controversial matters unrelated to official business."[61]

- The *Touhy* regulations apply only when the United States is not a party to the litigation and are not intended "to create obstacles or shields from the normal rules of discovery **when that agency or its 'employees' are parties**."[62]

- "[N]either the federal Housekeeping Statute nor the Touhy decision authorizes a federal agency to withhold documents or testimony from a federal court."[63]

- "It is doubtful, therefore, that *Touhy v. Ragen* is authority in this case for the proposition that the Secretary of the Navy has the right, himself, to promulgate regulations restricting the release of documents sought pursuant to the Federal Rules of Civil Procedure and, himself, restrict access by litigants in Federal Tort Claims Act cases to navy employees and former employees."[64]

- "[J]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."[65]

- "The issue is not whether Rule 34 requires production, but rather whether the Rules of Civil Procedure governing discovery in federal courts can be abrogated by agency regulations. ***Those courts which have considered this issue have uniformly answered the query in the negative***."[66]

- "The Court finds that the ***Federal Rules of Civil Procedure cannot be trumped by departmental regulations*** that place arbitrary limits on this Court's discovery powers."[67]

- "[N]o executive official or agency can be given absolute authority to determine what documents in his possession may be considered by the court in its task."[68]

- "Section 301 does not create an independent privilege to withhold government information or shield federal employees from valid subpoenas. Rather, ***district courts should apply the***

---

[61] *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (emphasis added).

[62] *Menocal v. GEO Grp., Inc.*, No. 14-CV-02887-JLK, 2017 WL 4334000, at *3 (D. Colo. June 6, 2017) (emphasis added).

[63] *Alexander v. FBI*, 186 F.R.D. at 69-71.

[64] *McElya v. Sterling Med., Inc.*, 129 F.R.D. 510, 513-15 (W.D. Tenn. 1990).

[65] *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953).

[66] *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111 (D. Colo. 1992) (emphasis added).

[67] *United States ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512, 514 (S.D. Ohio 1999) (emphasis added).

[68] *Comm. for Nuclear Resp., Inc. v. Seaborg*, 463 F.2d 788, 793-94 (D.C. Cir. 1971).

***federal rules of discovery when deciding on discovery requests made against government agencies***, whether or not the United States is a party to the underlying action."[69]

- "***[T]hese [DOJ] internal regulations***, promulgated under the federal 'housekeeping statute,' 5 U.S.C. § 301, also ***create no substantive rights in favor of the government***."[70]

39.     The U.S. Trustee's attempt to invoke the Touhy regulations to limit discovery is thus improper and runs counter to established precedent.  The Touhy regulations are not meant to impede court-ordered discovery when the government is a party to litigation, and the U.S. Trustee cannot use these regulations to selectively control evidence in these proceedings.  The U.S. Trustee must submit to the same discovery obligations as any private party.  Therefore, JW urges this Court to find that the DOJ's Touhy regulations do not apply to limit the Deponents' testimony.

## **CONCLUSION**

For the foregoing reasons, JW respectfully requests that the Court deny the Motion to Quash and grant JW such other relief as to which it may be entitled.

*[Remainder of Page Intentionally Left Blank]*

---

[69] *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994).

[70] *Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 12373861, at *12 (E.D. Tex. Dec. 13, 2019) (citation omitted).

Dated: October 15, 2024

**NORTON ROSE FULBRIGHT US LLP**

Jason L. Boland (SBT 24040542)
William Greendyke (SBT 08390450)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone:  (713) 651-5151
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Paul Trahan (SBT 24003075)
Emily Wolf (SBT 24106595)
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
paul.trahan@nortonrosefulbright.com
emily.wolf@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

**RUSTY HARDIN & ASSOCIATES, LLP**

*/s/ Rusty Hardin*
Russell Hardin, Jr. (SBT 08972800)
Leah M. Graham (SBT 24073454)
Jennifer E. Brevorka (SBT 24082727)
Emily Smith (SBT 24083876)
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com

*Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Maria Mokrzycka*
Maria Mokrzycka