## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | Case No. 23-645 |
| **Professional Fee Matters Concerning the** § | |
| **Jackson Walker Law Firm** § | |
| § | |

### U.S. TRUSTEE'S EXPEDITED MOTION TO COMPEL PRODUCTION OF DOCUMENTATION FROM JACKSON WALKER LLP

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**
>
> **Expedited relief has been requested. If the Court considers the motion on an expedited basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the expedited consideration is not warranted, you should file an immediate response.**
>
> *Relief is requested on or before October 31, 2024.*

TO THE HONORABLE EDUARDO V. RODRIGUEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Kevin Epstein, the United States Trustee for Region 7 ("U.S. Trustee"), by his undersigned counsel, moves for an order compelling Jackson Walker LLP ("Jackson Walker") to produce a copy of its partnership agreement(s) in effect at any time between and including May 14, 2018,

1

and December 1, 2022 (collectively, "Partnership Agreement")[1].  In support of this Motion, the U.S. Trustee states:

## SUMMARY OF MOTION

The Court granted the parties less than six months to conduct discovery in this proceeding starting May 15, 2024.  Months later—long after the U.S. Trustee propounded his initial discovery requests—Jackson Walker still has not produced its Partnership Agreement.  Despite numerous "meet and confers," Jackson Walker stubbornly maintains that its Partnership Agreement—one of only three agreements that Jackson Walker asserts bound its former law partner, Elizabeth Freeman ("Freeman"), and the only agreement that bound all of Jackson Walker's partners—is wholly irrelevant.  Jackson Walker's Partnership Agreement represents potentially the only contractual basis for what its partners, including Freeman and management, legally bound themselves to do.  The Court should not reward Jackson Walker's obfuscation and delay but should instead order Jackson Walker to produce immediately its Partnership Agreement and grant any other relief the Court deems just or necessary.

## RELEVANT FACTS

**A.   The U.S. Trustee has attempted to obtain the Partnership Agreement multiple times in multiple contexts.**

1. After Jackson Walker began filing preliminary responses in November of 2023 to the U.S. Trustee's motions to reopen and shortly after the commencement of this miscellaneous proceeding on December 9, 2023, the U.S. Trustee initially believed he served Jackson Walker

---

[1] According to documentation produced to the U.S. Trustee by Jackson Walker, Freeman was a partner during her entire tenure at Jackson Walker from May 14, 2018, to December 1, 2022.

2

with a first set of written discovery requests to which responses were due no later than January 25, 2024. *See* Steele Decl., Ex. A.

2. Following entry of this Court's *Order Setting Interim Status Conference* on December 27, 2023, and in its first *Scheduling Order* on January 30, 2024, the Court ordered that formal discovery would not commence until May 15, 2024. *See* ECF No. 49; ECF No. 57 at 3, ¶ 12.

3. On the first day possible—May 15, 2024—the U.S. Trustee re-served a first set of written discovery requests on Jackson Walker. Many of the U.S. Trustee's May 15 requests were substantially similar to those served by the U.S. Trustee in December of 2023. *Compare* Steele Decl., Exs. A & B.

4. The U.S. Trustee's First Request for Production of Documents served to Jackson Walker on May 15 requested, for example:

> 12. Documents relating to any Compensation that Jackson Walker offered to Freeman.
>
> 13. Documents relating to the promotion of Freeman to equity partner at Jackson Walker.
>
> 14. Documents relating to Freeman's separation from Jackson Walker, including any documents related to the decision to do so.
>
> . . .
>
> 16. All agreements whether formal or informal between Jackson Walker, Freeman and/or the Law Office of Liz Freeman and any documents related to those agreements.
>
> 17. Documents relating to all funds paid or monies owed by Jackson Walker to Freeman or the Law Office of Liz Freeman.

*Id.*, Ex. B at 6.

5. In response to the U.S. Trustee's May 15 document requests, Jackson Walker has made a series of not less than ten rolling document productions[2] starting June 24 through as recently as October 10, 2024. *Id*., ¶ 5 & Ex. C.

6. The U.S. Trustee's Interrogatory 26 served on May 15 sought substantially the same information as Request for Production 16 served on the same date:

> INTERROGATORY NO. 26: Describe in detail all formal or informal agreements or arrangements between Jackson Walker on the one hand and Freeman or the Law Office of Liz Freeman on the other hand.

*Id*., Ex. D at 10, ¶ 29.

7. Jackson Walker's response to Interrogatory 26 confirmed it had at least three agreements with Freeman: "JW's offer letter to Liz Freeman, the JW Partnership Agreement, and the Separation Agreement." *Id*., Ex. E at 21, ¶ 26.

8. Just over two weeks later, the U.S. Trustee served a Rule 30(b)(6) deposition notice to Jackson Walker requiring its witness to testify regarding the following topics:

> 1. Knowledge of the terms of Freeman's compensation structure while employed at Jackson Walker.
>
> 2. Knowledge of the separation of Freeman from Jackson Walker, including but not limited to the negotiations thereof, the terms of the separation, and
>
> . . .
>
> 7. Knowledge of Freeman's performance evaluations, employment contracts, fee sharing agreements, and any other contracts or agreements related to Freeman's professional relationship with Jackson Walker.

*Id*., Ex. F at 6.

---

[2] The U.S. Trustee disputes he agreed to Jackson Walker producing documents on a rolling basis and that doing so has allowed the U.S. Trustee to review documents "much sooner." *See, e.g.*, Steele Decl., Ex. J.

9. As part of the parties' meet and confer in anticipation of Jackson Walker's Rule 30(b)(6) deposition, counsel for the U.S. Trustee requested from Jackson Walker's counsel via email, and among other things, "Employment or shareholder agreements which reflect what, when, and how Freeman was to be paid (see #2)." *Id.*, Ex. G.

10. The U.S. Trustee then explicitly requested a copy of Jackson Walker's Partnership Agreement at Jackson Walker's Rule 30(b)(6) deposition five days later, on August 20, 2024. *Id.*, Ex. H at 46:4–21.

11. The U.S. Trustee further requested a copy of the Partnership Agreement following meet and confers in letters dated August 29, September 30, and October 6, 2024. *Id.*, Ex. I at 14–15, Ex. J at 2, Ex. L at 2.

**B.    Jackson Walker's only remaining objection to the production of its Partnership Agreement is relevance.**

12. Despite these many requests, Jackson Walker continues to object only to the relevancy of its Partnership Agreement. In its last and most recent October 10 correspondence, Jackson Walker stated, "JW does not agree that the Partnership Agreement is relevant but is willing to discuss whether the UST seeks specific provisions of the Partnership Agreement and, if so, which." *Id.*, Ex. M at 1.

13. At the parties' final meet and confer on October 18, 2024, counsel for Jackson Walker promised only that they would "have to get back to" the U.S. Trustee about *potentially* producing only certain unnamed portions of the Partnership Agreement unknown to the U.S. Trustee and only after again conferring with their client—now more than five months after the U.S. Trustee's initial requests, but less than two weeks before the close of fact discovery. Steele Decl. ¶ 16.

5

**ARGUMENT**

A.      **Applicable discovery standards.**

14.     "The purpose of discovery procedures is (1) to narrow the issues; (2) to obtain evidence for use at trial; and (3) to secure information as to the existence of evidence that may be used at trial." *Wood v. Todd Shipyards*, 45 F.R.D. 363, 364 (S.D. Tex. 1968).

15.     "The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial 'less a game of blind man's bluff and more a fair contest.'" *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (cleaned up and quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)).

16.     The threshold for what is relevant and discoverable is broadly construed and is a lesser relevance threshold than that for admissibility of evidence at trial:

> the threshold for relevance at the discovery stage is lower than at the trial stage. . . . [R]elevance is construed broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. . . . [W]here relevance is in doubt, Rule 26(b)(1) indicates that the court should be permissive in allowing discovery. . . . Put simply, a request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.

*Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 & n.5 (S.D. Tex. 2011) (cleaned up and quotations omitted).

17.     Because Rule 60(b) "is remedial and should be liberally construed," *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978), discovery relief requested by the Rule 60 moving party should also be liberally construed. *See U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 468 (5th Cir. 2015) (taking notice of statute's remedial nature and therefore construing its provisions broadly to effectuate that purpose), *aff'd sub nom. State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 580 U.S. 26 (2016).

**B.     The Partnership Agreement is relevant for multiple reasons, and Jackson Walker should be compelled to produce it.**

18.     According to Jackson Walker, it had only three agreements with Freeman while she was an attorney at Jackson Walker. One of those three was the Partnership Agreement.

19.     The Partnership Agreement establishes "the terms by which Jackson Walker's partners conducted business with each other, including how they were compensated, were admitted, and could be removed." Steele Decl., Ex. J at 2; *see also, e.g.*, Tex. Bus. Org. Code §§ 153.101(b) (admission), 153.110 (withdrawal), 153.206 (allocation of profits and losses).

20.     This includes whether "cause" was required to remove Freeman; if so, what constitutes cause; and what vote, notice, meeting, or quorum was necessary to terminate Freeman as a partner. By way of example, Jackson Walker's 30(b)(6) witness did not unequivocally confirm whether cause was required to remove one of its partners. *See* Ex. H at 156:13–16.

21.     The Partnership Agreement may[3] also confirm or explain, for example: the differences between income partners and equity partners,[4] how partners are compensated; the schedule of partner names and their status; the rights and responsibilities (duties) of Jackson Walker's management, committees, and partners; the extent to and which state partnership law applies; the extent and bases for which partners may be liable; and what representations and warranties Jackson Walker made to its partners and vice-versa.

22.     By way of example only, if Jackson Walker's partners had the ability to remove Freeman from cases or the firm upon learning of her veiled relationship(s) with former Judge Jones

---

[3] The U.S. Trustee has not seen—and Jackson Walker has not offered or produced—any portion of the Partnership Agreement.

[4] Freeman joined Jackson Walker as an income partner and later became an equity partner at Jackson Walker. *See, e.g.*, Jackson Walker Prelim. Resp. at 2 n.4.

("Jones") but took inadequate steps to do so or instead waited months for Freeman to voluntarily act, then Jackson Walker acted unreasonably.  If Jackson Walker or its partners learned of Freeman's relationship(s) with Jones and knowingly continued to accept the financial benefit of cases heard or mediated by Jones, then Jackson Walker acted unreasonably.  If the Partnership Agreement charged Jackson Walker's management or Freeman with certain duties they knowingly or negligently failed to follow, then Jackson Walker acted unreasonably.  If the Partnership Agreement granted Freeman authority to act on behalf of Jackson Walker, her foreseeable actions as a partner should be imputed to Jackson Walker. *See Schmidt v. Rechnitz (In re Black Elk Energy Offshore Operations, LLC)*, 114 F.4th 343, 355–56 (5th Cir. 2024) (imputing acts—even if criminal—to principal if foreseeable considering the agent's duties); *see also, e.g.*, *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 348 (5th Cir. 2013) (recognizing that the acts and mental states of agents and employees acting for a company are imputed to the company).

23. The contents of Jackson Walker's Partnership Agreement easily meet the low threshold for relevance.

24. To the extent Jackson Walker may remain concerned about the purportedly sensitive nature of its Partnership Agreement, *see, e.g.*, Steele Decl., Ex. J at 2 (noting Jackson Walker claims it to be "highly confidential"), the Court entered a Stipulated Protective Order between Jackson Walker and the U.S. Trustee on July 30, 2024.  ECF No. 202.

25. Despite ample time and opportunity to do so, Jackson Walker has not filed a motion for protective order with the Court regarding its Partnership Agreement.  Instead, Jackson Walker simply refuses to produce the Partnership Agreement based on its own untested assessment of relevance, not privilege.

26. Jackson Walker's refusal to produce its Partnership Agreement is unjustified. *See, e.g.*, *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011) ("Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered.").

27. The Court should grant this Motion and compel Jackson Walker to produce its Partnership Agreement to the U.S. Trustee.

## BASIS FOR EXPEDITED RELIEF

On August 7, 2024, the Court entered the *Amended Comprehensive Scheduling, Pre-Trial & Trial Order* [ECF No. 249] (the "Scheduling Order"). The Scheduling Order provides that fact discovery in this matter must be completed before November 1, 2024. The Partnership Agreement is a key component to this case, particularly because Jackson Walker asserts it acted reasonably and claims its management had to know what Freeman knew before the retention and compensation orders can be vacated. The U.S. Trustee has acted with both diligence and good faith, but Jackson Walker's failure to cooperate has stymied the "just, speedy, and inexpensive" mandate of Fed. R. Civ. P. 1 and forced judicial intervention. An expedited order on this Motion is necessary so that the U.S. Trustee can obtain the Partnership Agreement before the close of fact discovery and respectfully requests consideration of this Motion on or before October 31, 2024.

WHEREFORE, the U.S. Trustee respectfully requests that the Court grant this Motion, hear this Motion on an expedited basis, compel Jackson Walker to produce its Partnership Agreement to the U.S. Trustee, and enter any other relief the Court deems just or appropriate in law or equity.

Date: October 21, 2024

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: */s/ Alicia Barcomb*

| | |
|---|---|
| RAMONA D. ELLIOTT | MILLIE APONTE SALL |
| Deputy Director/ | Assistant U.S. Trustee |
| General Counsel | Tex. Bar No. 01278050/Fed. ID No. 11271 |
| NAN ROBERTS EITEL | VIANEY GARZA |
| Associate General Counsel | Trial Attorney |
| Fed. ID No. 561266 | Tex. Bar No. 24083057/Fed. ID No. 1812278 |
| DANIELLE PHAM | ALICIA BARCOMB |
| Trial Attorney | Trial Attorney |
| Department of Justice | Tex. Bar No. 24106276/Fed ID No. 3456397 |
| Executive Office for | 515 Rusk, Suite 3516 |
| United States Trustees | Houston, Texas 77002 |
| Washington, D.C. 20530 | (713) 718-4650 – Telephone |
| (202) 307-1399 – Telephone | (713) 718-4670 – Fax |
| | Email: millie.sall@usdoj.gov |
| | vianey.garza@usdj.gov |
| | alicia.barcomb@usdoj.gov |

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2024 a copy of the foregoing *United States Trustee's Expedited Motion to Compel Production of Documentation from Jackson Walker LLP* was served by ECF transmission.

By: */s/ Alicia Barcomb*
Alicia Barcomb

## CERTIFICATE OF ACCURACY

I certify that the facts set forth in the *United States Trustee's Expedited Motion to Compel Production of Documentation from Jackson Walker LLP* are true and correct to the best of my knowledge.

By: */s/ Alicia Barcomb*
Alicia Barcomb