**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-645** |
| **Professional Fee Matters Concerning the** | § | |
| **Jackson Walker Law Firm** | § | |
| | § | |

### DECLARATION OF LAURA D. STEELE IN SUPPORT OF
### UNITED STATES TRUSTEE'S EXPEDITED MOTION TO COMPEL
### PRODUCTION OF DOCUMENTATION FROM JACKSON WALKER LLP

1.      I am member of the State Bar of Wisconsin and admitted to practice before the United States Bankruptcy Court for the Southern District of Texas. I am a trial attorney with Office of the United States Trustee ("U.S. Trustee"). I submit this declaration in support of the U.S. Trustee's Expedited Motion to Compel Production of Documentation from Jackson Walker LLP.

2.      I am an attorney for the U.S. Trustee in this matter and have access to discovery files and communications for this matter as they are regularly maintained in the U.S. Trustee's records by a person with personal knowledge at the time they are made.

3.      Attached hereto as Exhibit A is a true and correct copy of written discovery requests in this matter emailed from the U.S. Trustee to Attorneys Paul Trahan, Jason Boland, and William Greendyke as counsel for Jackson Walker on December 26, 2023.

4.      Attached hereto as Exhibit B is a true and correct copy of the U.S. Trustee's First Request for Production of Documents to Jackson Walker LLP served on counsel for Jackson Walker LLP ("Jackson Walker") on May 15, 2024.

5.      Attached hereto as Exhibit C is a true and correct copy of Jackson Walker LLP's Responses and Objections to the U.S. Trustee's First Request for Production of Documents.  The U.S. Trustee received batches of documents from Jackson Walker pursuant to this exhibit on or

1

about June 24 (4,846 pages), July 2 (7,214 pages), July 15 (2,119 pages), July 29 (5,438 pages), August 7 (24 pages), August 12 (4 pages), August 21 (14 pages), September 24 (5,391 pages), October 1 (151 pages), and October 10, 2024 (2,927 pages).

6.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of the U.S. Trustee's First Set of Interrogatories to Jackson Walker LLP served on counsel for Jackson Walker on May 15, 2024.

7.      Attached hereto as <u>Exhibit E</u> is a true and correct copy of Jackson Walker LLP's Objections and Responses to the U.S. Trustee's First Set of Interrogatories.

8.      Attached hereto as <u>Exhibit F</u> is a true and correct copy of the U.S. Trustee's Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding) and Notice of Deposition to Jackson Walker served on counsel for Jackson Walker on July 11, 2024.

9.      Attached hereto as <u>Exhibit G</u> is a true and correct correspondence of email correspondence which I was copied on and for which no response was received prior to Jackson Walker's Rule 30(b)(6) deposition on August 20, 2024.

10.     Attached hereto as <u>Exhibit H</u> is a true and correct copy of excerpts from the transcript of Jackson Walker's August 20 Rule 30(b)(6) deposition.

11.     Attached hereto as <u>Exhibit I</u> is a true and correct copy of correspondence I caused to be emailed to counsel for Jackson Walker on the date indicated thereon.

12.     Attached hereto as <u>Exhibit J</u> is a true and correct copy of correspondence I caused to be emailed to counsel for Jackson Walker on the date indicated thereon.

13.     Attached hereto as <u>Exhibit K</u> is a true and correct copy of correspondence I received from counsel for Jackson Walker on the date indicated thereon.

14.     Attached hereto as <u>Exhibit L</u> is a true and correct copy of correspondence I caused to be emailed to counsel for Jackson Walker on the date indicated thereon.

15.     Attached hereto as <u>Exhibit M</u> is a true and correct copy of correspondence I received from counsel for Jackson Walker on the date indicated thereon.

16.     At the parties' final meet and confer on October 18, 2024, and in response to the U.S. Trustee's further explanations of the relevancy of Jackson Walker's Partnership Agreement, counsel for Jackson Walker indicated they would "have to get back to" the U.S. Trustee about *potentially* producing only certain unnamed and unknown to the U.S. Trustee portions of Jackson Walker's Partnership Agreement and only after again conferring with their client.

17.     No further communications regarding the Partnership Agreement have been received by the U.S. Trustee from counsel for Jackson Walker.

18.     In these cases, the parties have amicably resolved many issues, but multiple attempts to resolve the issues concerning production of the Partnership Agreement have proved unsuccessful.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: October 21, 2024                          Respectfully Submitted,


By: LAURA STEELE  Digitally signed by LAURA STEELE Date: 2024.10.21 16:12:24 -05'00'
_____
Laura D. Steele



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| **In re:** | |
| | **Case No. 23-645** |
| **Professional Fee Matters Concerning the** | |
| **Jackson Walker Law Firm** | |

### UNITED STATES TRUSTEE'S FIRST REQUEST FOR
### <u>PRODUCTION OF DOCUMENTS TO JACKSON WALKER LLP</u>

**To**:     **Jackson Walker LLP, the Respondent, through Paul Trahan, its counsel**

Kevin Epstein, United States Trustee for Region 7 ("**United States Trustee**"), Pursuant

to Rule 34 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule

7034 of the Federal Rules of Bankruptcy Procedure, requests that Jackson Walker LLP

("**Respondent**") produce copies of the documents or other physical objects identified below

(collectively, the "**Requests**") in PDF form via email to <u>Jennifer.R.Toth@usdoj.gov</u> within not

more than thirty (30) days after service of this Request.

### <u>INSTRUCTIONS</u>

A.     If a document is no longer in possession or subject to the control of Respondent, state when such document was most recently in the possession of or subject to Respondent's control and what disposition was made of it. If documents have been destroyed, please identify when they were destroyed, the person who destroyed them, the person who directed that they be destroyed, the reason(s) for such action and any communications or documents which relate or refer to the destruction of the documents.

B.     Unless otherwise indicated, the period of time covered by these Requests is the Applicable Period.

C.     These Requests shall be deemed to be continuing, and any additional information relating in any way to these Requests or Respondent's original answers that is acquired subsequent to the date of responding to these Requests, up to and including the time of any evidentiary hearing or trial, shall be furnished to the United States Trustee as required by Federal

Rule of Civil Procedure 26(e), as incorporated by Federal Rule of Bankruptcy Procedure 7026(e).

D.      All documents that respond, in whole or in part, to any part or clause of any paragraph of these document requests shall be produced in their entirety, including all attachments and enclosures.  Only one copy need be produced of documents that are responsive to more than one paragraph or are identical.

E.      For any document withheld under a claim of privilege, submit a sworn or certified statement in which Respondent identifies the document by author, addressee, date, number of pages, and subject matter; specify the nature and basis of the claimed privilege and the paragraph of these Requests to which the document is responsive; and identify each person to whom the document or its contents, or any part thereof, has been disclosed.

F.      Upon completion of these Requests, Respondent shall sign the attached Verification and return it with the answers to the Requests. The signature of Respondent's counsel is not acceptable.

## DEFINITIONS

"**All**" means all information, documents, or communications, whether in paper, electronic or other form, that is in the actual or constructive possession of Jackson Walker, its partners, fiduciaries, accountants, or bookkeepers.

"**Applicable Period**" means January 1, 2018 through December 15, 2023.

"**Compensation**" means any base salary, wages, incentives, raises, benefits, perquisites, stock options (or other investment options), and bonuses (including annual, signing, discretionary, retention, referral or profit-sharing).

"**Document**" or "**Documents**" means and is intended to have the broadest possible meaning and includes any writings whatsoever, electronic transmissions, e-mails and attachments thereto, drawings, reports, records, notes, instructions, memoranda, drafts (whether or not they resulted in a final document), communications (including internal), correspondence, contracts, letters, graphs, charts, photographs, filings, forms, journals, ledgers, letters, lists, minutes, notations, notes, opinions, orders, pamphlets, papers, publications, receipts, summaries, screenshots, social media posts, telegrams, telephone records, text messages, video recordings, voicemail messages and billing statements (including drafts).

"**Freeman**" means Elizabeth Freeman, a former partner at Jackson Walker and each past and present agent, representative, attorney, expert, insurer, executor, administrator, or anyone acting on her behalf.

"**Holland and Knight**" means Holland & Knight LLP and each past and present officer, director, partner, associate, employee, independent contractors, agent, servant, and each

representative of each such entity or individual, and each past and present attorney of each such entity or individual.

"**Jackson Walker**" means Jackson Walker LLP and each past and present officer, director, partner, associate, employee, independent contractors, agent, servant, and each representative of each such entity or individual, and each past and present attorney of each such entity or individual.

"**Judge Jones**" means David R. Jones formerly a bankruptcy judge for the Southern District of Texas.

"**Judicial Disqualification Matter Letter**" means that certain letter attached as an exhibit to the Preliminary Response.

"**Kirkendall**" means Tom Kirkendall and each past and present agent, representative, attorney, expert, insurer, executor, administrator, or anyone acting on his behalf.

"**Kirkland**" means Kirkland & Ellis LLP and each past and present officer, director, partner, associate, employee, independent contractors, agent, servant, and each representative of each such entity or individual, and each past and present attorney of each such entity or individual.

"**Person**" and "**persons**" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity.

"**Preliminary Response**" means that certain Preliminary Response of Jackson Walker LLP to Recent Filings by the Office of the United States Trustee filed on or about November 13, 2023, in this matter.

"**Relate(s) to**" or "**relating to**" means constituting, defining, concerning, embodying, reflecting, identifying, stating, referring to, bearing upon, dealing with or in any way pertaining to.

"**Relationship**" means any personal relationship between Freeman and Judge Jones, including intimate, financial, fiduciary, cohabitation, romantic or sexual.

"**Relevant Cases**" means (i) each case listed on Exhibit 6 to the United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving any Jackson Walker Applications for Compensation and Reimbursement of Expenses filed in this case, and (ii) any cases in which both Jackson Walker and the Law Office of Liz Freeman worked, including *In re Tehum Care Services, Inc.* (Case No. 23-90086), *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23-90085) and *In re QualTek Services Inc.* (Case No. 23-90584), each filed in the Bankruptcy Court for the Southern District of Texas (Houston Division). For the avoidance of doubt, each listed case includes all affiliated and related debtors.

"**Van Deelen Litigation**" means the Adversary Proceeding known as Case No. 20-03309 filed in the Bankruptcy Court for the Southern District of Texas (Houston Division) and the Complaint filed by Michael D. Van Deelen commencing Case No. 4:23-cv-03729 pending in the United States District Court for the Southern District of Texas (Houston Division).

## DOCUMENTS TO BE PRODUCED

1.  Jackson Walker's policies and procedures regarding conflict checks on any new and existing matters.

2.  Documents relating to all Compensation paid to Freeman by Jackson Walker.

3.  Jackson Walker's billing statements, pre-billing statements, drafts of billing statements or write-offs in any form in which Freeman either worked, consulted, or was compensated.

4.  Documents relating to Jackson Walker's ethical policies and procedures, including training on legal ethics and reporting of its employees' and partners' non-compliance with ethical rules to the appropriate court, state bar, insurance carriers and disciplinary authorities.

5.  Documents relating to any conflict checks conducted in the Relevant Cases, including the results.

6.  Jackson Walker's organizational chart.

7.  All disclosure materials prepared by all potential mediators provided to Jackson Walker in the Relevant Cases.

8.  Documents relating to the Relationship, including:

    a.  Documents relating to the receipt by Jackson Walker of information regarding the Relationship;
    b.  Documents relating to the investigation and/or inquiries;
    c.  The anonymous letter referred to in the Preliminary Response and all documents pertaining to it;
    d.  Documents between Jackson Walker and Kirkland directly or indirectly mentioning or addressing the Relationship, including in the Van Deelen Litigation;
    e.  Documents relating to the disclosure or lack of disclosure of the Relationship to any third parties;
    f.  All internal communications within Jackson Walker regarding the Relationship; and
    g.  Documents relating to any decisions or actions taken as a result of the Relationship.

9.  All communications between Freeman or the Law Office of Liz Freeman and Jackson Walker relating to Judge Jones or the Relationship.

4

10.     All expense reports or requests for reimbursement submitted to Jackson Walker by Freeman or the Law Office of Liz Freeman.

11.     Documents relating to the recruitment and hiring of Freeman by Jackson Walker.

12.     Documents relating to any Compensation offered to Freeman by Jackson Walker.

13.     Documents relating to promotion of Freeman to equity partner at Jackson Walker.

14.     Documents relating to Freeman's separation from Jackson Walker, including any documents related to the decision to do so.

15.     All separation or severance documents between Jackson Walker, Freeman and/or the Law Office of Liz Freeman, including the confidential separation agreement.

16.     All documents between Jackson Walker, Freeman and/or the Law Office of Liz Freeman and any documents related to those agreements.

17.     Documents relating to all funds paid or monies owed by Jackson Walker to Freeman or the Law Office of Liz Freeman.

18.     Jackson Walker's bylaws.

19.     Jackson Walker's minutes, recordings, summaries, or reports of meetings, whether formal or informal, of the members of Jackon Walker and of each committee or subgroup in which Freeman or the Relationship was mentioned or discussed.

20.     Freeman's personnel file, including documents relating to all health, transportation, dental, retirement, life insurance, disability insurance or any other benefits offered to Freeman in connection with her association with Jackson Walker.

21.     Freeman's performance reviews and all other formal or informal evaluations of Freeman's performance.

22.     Documents between Jackson Walker and any insurance carrier relating to the Relationship.

23.     All social media posts mentioning, portraying, or involving Freeman.

24.     All promotional materials prepared by or at the request of Jackson Walker that referenced, featured, described, or mentioned Freeman in any way, whether privately or publicly disseminated.

25.     All publications authored in whole or in part by Freeman.

26.     Documents relating to Freeman's speaking engagements, including conference brochures, panel descriptions and agendas.

27.     The Lateral Partner Questionnaire referenced in the Preliminary Response.

28.     Documents reflecting Freeman's residences.

29.     Documents reflecting any real property purchased or owned by Freeman.

30.     Documents relating to whether any Person at Jackson Walker was aware of the Relationship.

31.     Documents regarding any bar referrals or judicial conduct complaints made by Jackson Walker involving the Relationship.

32.     Documents regarding Jackson Walker's decision whether to disclose the Relationship in the Relevant Cases.

33.     Documents regarding Jackson Walker's decision whether to disclose the Relationship in the Van Deelen Litigation.

34.     Documents pertaining to all consultants, attorneys, legal professionals, or law firms regarding any issues related to the Relationship.

35.     Documents between Jackson Walker and Holland & Knight regarding the Relationship.

36.     Documents between Jackson Walker and Kirkland regarding the Relationship.

37.     Documents filed under seal in the Van Deelen Litigation.

38.     To the extent Jackson Walker relied upon advice of counsel or other professional(s) to determine disclosure of the Relationship was not necessary in matters associated with Judge Jones, as the Bankruptcy Judge or mediator, documents on which Jackson Walker's decisions were based.

39.     Documents pertaining to Kirkendall's communications with Jackson Walker and/or Holland & Knight regarding the Relationship.

40.     Documents relating to the Judicial Disqualification Matter Letter and all notes, correspondence and documents relating to it.

41.     Documents reviewed or relied on by Jackson Walker in answering the United States Trustee's First Set of Interrogatories to Jackson Walker LLP.

Date: December 26, 2023

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: */s/ Millie Aponte Sall*
    Millie Aponte Sall
    Assistant U.S. Trustee
    Tex. Bar No. 01278050/Fed. ID No. 11271
    515 Rusk, Suite 3516
    Houston, Texas 77002
    (713) 718-4650 – Telephone
    (713) 718-4670 – Fax
    Email: millie.sall@usdoj.gov

## **VERIFICATION**

I, _____, declare under penalty of perjury, pursuant to 28 U.S.C. §

1746, that I have read the foregoing *Answer of Jackson Walker LLP to the United States*

*Trustee's First Request for Production of Documents to Jackson Walker LLP* and know the

contents thereof. I hereby certify and verify that the foregoing responses are true and correct to

the best of my knowledge, information, and belief.

Dated: _____                                    _____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>**Professional Fee Matters Concerning the Jackson Walker Law Firm** | **Case No. 23-645** |

## UNITED STATES TRUSTEE'S FIRST SET OF INTERROGATORIES TO JACKSON WALKER LLP

**To**:    **Jackson Walker LLP, the Respondent, through Paul Trahan, its counsel.**

Kevin Epstein, United States Trustee for Region 7 (the "**United States Trustee**"), hereby serves this first set of interrogatories ("**Interrogatories**") pursuant to Rule 33 of the Federal Rules of Civil Procedure  (the "**Rules**"), made applicable to this proceeding by Rule 7033 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") to Jackson Walker LLP ("**Respondent**"), and they are to be answered under oath and signed by Respondent within thirty (30) days of service.

## INSTRUCTIONS

A.      In responding to these Interrogatories, furnish all information available to Respondent, including information in the possession of its attorneys, or its investigators, and persons acting on its behalf, and not merely such information known by Respondent.

B.      If Respondent finds the meaning of any term in these Interrogatories to be unclear, Respondent should assume a reasonable meaning, state what the assumed meaning is, and answer the Interrogatory on the basis of that assumed meaning.

C.      If an Interrogatory cannot be answered in full, answer the Interrogatory to the extent possible and provide an explanation of why a complete answer cannot be provided, including an explanation of all steps taken to obtain the requested information.

D.      If Respondent cannot respond fully, or if Respondent objects in part, to any of these Interrogatories, Respondent is nevertheless required to respond to the remaining portion(s) to the extent Respondent is capable of doing so.

E.      If Respondent contends that any information requested by an Interrogatory is protected from disclosure by any privilege, in whole or in part, then Respondent must fully identify in writing such information and the privilege(s) that Respondent claims are applicable to such information.

F.      The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "Including" means "including but not limited to." "And" and "or" encompasses both "and" and "or." Words in the masculine, feminine, or neuter shall include each of the other genders.

G.      These Interrogatories shall be deemed to be continuing, and any additional information relating in any way to these Interrogatories or Respondent's original answers that is acquired subsequent to the date of responding to these Interrogatories, up to and including the time of any evidentiary hearing or trial, shall be furnished to the United States Trustee as required by Rule 26(e), as incorporated by Bankruptcy Rule 7026(e).

H.      Unless otherwise indicated, the period of time covered by these Interrogatories is the Applicable Period.

## **DEFINITIONS**

"**All**" means all information, documents, or communications, whether in paper, electronic or other form, that is in the actual or constructive possession of Jackson Walker, its partners, fiduciaries, accountants, or bookkeepers.

"**Applicable Period**" means January 1, 2018, through December 15, 2023.

"**Compensation**" means any base salary, wages, incentives, raises, benefits, perquisites, stock options (or other investment options), and bonuses (including annual, signing, discretionary, retention, referral or profit-sharing).

"**Describe in detail**" includes a request for a complete description and explanation of the facts, times, dates, individuals involved, circumstances, analysis, opinion, and other information relating to the subject matter of an Interrogatory.

"**Document**" or "**Documents**" means and is intended to have the broadest possible meaning and includes any writings whatsoever, electronic transmissions, e-mails and attachments thereto, drawings, reports, records, notes, instructions, memoranda, drafts (whether or not they resulted in a final document), billing statements (including drafts), communications (including internal), correspondence, contracts, letters, graphs, charts, photographs, filings, forms, journals, ledgers, letters, lists, minutes, notations, notes, opinions, orders, pamphlets, papers, publications, receipts, summaries, screenshots, social media posts, telegrams, telephone records, text messages, video recordings and voicemail messages.

"**Identify**" means: (i) when used with reference to a natural person, to state his or her full name, position, and business affiliation at the time referred to, last known position and business

affiliation, and last known residence and business address and telephone number(s); (ii) when used with reference to an entity, to state its full formal name, last known address(es), telephone number(s), and organizational form (e.g., corporation, sole proprietorship, partnership, joint venture, etc.); and (iii) when used with reference to a document, to state the document's title or name, beginning and ending bates number, date, author, addressee, other recipients, type and general subject matter, current location, and custodian.

"**Freeman**" means Elizabeth Freeman, a former partner at Jackson Walker and each past and present agent, representative, attorney, expert, insurer, executor, administrator, or anyone acting on her behalf.

"**Holland and Knight**" means Holland & Knight LLP and each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual.

"**Jackson Walker**" means Jackson Walker LLP and each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual.

"**Judge Jones**" means David R. Jones, formerly a bankruptcy judge for the Southern District of Texas.

"**Kirkland**" means Kirkland & Ellis LLP and each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual.

"**Person**" and "**persons**" mean any natural person or persons, business or businesses, or legal or governmental entity, entities, association, or associations.

"**Relationship**" means any personal relationship between Freeman and Judge Jones, including intimate, financial, fiduciary, cohabitating, romantic or sexual.

"**Relevant Cases**" means (i) each case listed on Exhibit 6 to the United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving any Jackson Walker Applications for Compensation and Reimbursement of Expenses filed in this case, and (ii) any cases in which both Jackson Walker and the Law Office of Liz Freeman worked, including *In re Tehum Care Services, Inc.* (Case No. 23-90086), *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23-90085) and *In re QualTek Services Inc.* (Case No. 23-90584), each filed in the Bankruptcy Court for the Southern District of Texas (Houston Division). For the avoidance of doubt, each listed case includes all affiliated and related debtors.

"**Preliminary Response**" means that certain Preliminary Response of Jackson Walker LLP to Recent Filings by the Office of the United States Trustee filed on or about November 13, 2023, in this matter.

"**Van Deelen Litigation**" means the Adversary Proceeding known as Case No. 20-03309 filed in the Bankruptcy Court for the Southern District of Texas (Houston Division) and the Complaint filed by Michael D. Van Deelen commencing Case No. 4:23-cv-03729 pending in the United States District Court for the Southern District of Texas (Houston Division).

## INTERROGATORIES

1.     Identify all Persons having knowledge about the following topics, and, with respect to each such Person, describe in detail the knowledge that Person has about the topic:

    a.  Jackson Walker's ethical training policies and procedures;

    b.  Jackson Walker's working relationship with Kirkland;

    c.  The Relationship;

    d.  Jackson Walker's engagement of Holland & Knight in connection with the Relationship;

    e.  Freeman's separation from Jackson Walker;

    f.  The calculation of any of Freeman's Compensation;

    g.  The referral of any matters by Jackson Walker to Freeman or the Law Office of Liz Freeman; and

    h.  The Van Deelen Litigation.

**RESPONSE:**

2.     Describe in detail all training that Jackson Walker provided to Freeman after she was hired, including training related to conflict checks and all legal ethics.

**RESPONSE:**

3.     Describe in detail Jackson Walker's process used to determine whether connections, disqualifying circumstances and/or conflicts existed in all potential, new or existing engagements, including fulfilling its obligation to file all declarations and supplemental declarations as required by Bankruptcy Rule 2014(a).

**RESPONSE:**

4.     Describe in detail all inquiries, investigations, communications, discussions, efforts and/or decisions made regarding Jackson Walker's determination of all connections,

disqualifying circumstances and/or conflicts in all cases in which Judge Jones served as a mediator or a bankruptcy judge.

**RESPONSE:**

5.      Provide the names of all cases in which Jackson Walker made any disclosures about any relationship between Jackson Walker and any members of the judiciary in any case filed in the Bankruptcy Court for the Southern District of Texas.

**RESPONSE:**

6.      Describe in detail all information that Jackson Walker received about the Relationship.

**RESPONSE:**

7.      Describe in detail all communications between Freeman and Jackson Walker regarding the Relationship.

**RESPONSE:**

8.      Describe in detail all investigations or inquiries conducted by Jackson Walker regarding the Relationship.

**RESPONSE:**

9.      Identify all individuals involved in any investigation of the Relationship and/or in the decision of what actions to take regarding the Relationship in the Relevant Cases.

**RESPONSE:**

10.     Describe in detail all decisions made or actions taken by Jackson Walker after learning about the Relationship.

**RESPONSE:**

11.     Identify all consultants, attorneys, legal professionals, or law firms that Jackson Walker contacted or engaged regarding the Relationship.

**RESPONSE:**

12.     Identify all materials (including legal authority) relied on by Jackson Walker in determining what actions to take regarding the Relationship.

**RESPONSE:**

13.     Identify all individuals that Jackson Walker informed about the Relationship before October 6, 2023.

**RESPONSE:**

14.     Identify all individuals at Jackson Walker that knew about the Relationship before October 6, 2023.

**RESPONSE:**

15.     As referenced in the Preliminary Response, describe in detail the facts surrounding the disclosure of the Relationship to Kirkland and any other lead or co-counsel.

**RESPONSE:**

16.     Describe in detail all actions taken by Jackson Walker in response to any communications from Holland & Knight regarding the Relationship.

**RESPONSE:**

17.     Describe in detail how Jackson Walker is managed, including its organizational hierarchy and the identity of the members of any management committee.

**RESPONSE:**

18.     Identify all of Jackson Walker's office resources that were used by Freeman or made available to Freeman following the termination of her partnership with Jackson Walker.

**RESPONSE:**

19.     Describe in detail all events sponsored or hosted in whole or in part by Jackson Walker in which any members of the judiciary were invited, including any weddings or ceremonies that were officiated by Judge Jones.  State which members of the judiciary were invited.

**RESPONSE:**

20.     Identify all matters that Freeman worked on, provided advice on. or counseled on while at Jackson Walker, regardless of whether her time was billed to any specific client.

**RESPONSE:**

21.     Identify all matters with Jackson Walker that Freeman and/or the Law Office of Liz Freeman worked on, provided advice on, or counseled on following Freeman's departure from Jackson Walker, regardless of whether her time was billed to any specific client.

**RESPONSE:**

22.     Identify the names of all of Jackson Walker's non-attorney support staff that worked with Freeman.

**RESPONSE:**

23.     Describe in detail all interactions between Judge Jones and Jackson Walker at which Freeman was present, such as hearings, conferences, social events, and fundraisers.

**RESPONSE:**

24.     Identify all of Freeman's guests at any event that Jackson Walker sponsored or hosted in whole or in part.

**RESPONSE:**

25.     Identify all private or public clubs, associations, societies, or organizations in which both Judge Jones and Jackson Walker are members.

**RESPONSE:**

26.     Describe in detail all formal or informal agreements or arrangements between Jackson Walker on the one hand and Freeman or the Law Office of Liz Freeman on the other hand.

**RESPONSE:**

27.     Describe in detail all platforms used by Jackson Walker to share information, resources and to communicate internally and externally to Freeman or the Law Office of Liz Freeman and how and where any data was stored.

**RESPONSE:**

Sign the attached Verification and return it with Respondent's answers to the foregoing Interrogatories.  The signature of Respondent's counsel is **not** acceptable.


Date: December 26, 2023                    Respectfully Submitted,

                                           KEVIN M. EPSTEIN
                                           UNITED STATES TRUSTEE
                                           REGION 7, SOUTHERN AND WESTERN
                                           DISTRICTS OF TEXAS

By: */s/ Millie Aponte Sall*
     Millie Aponte Sall
     Assistant U.S. Trustee
     Tex. Bar No. 01278050/Fed. ID No. 11271
     515 Rusk, Suite 3516
     Houston, Texas 77002
     (713) 718-4650 – Telephone
     (713) 718-4670 – Fax
     Email: millie.sall@usdoj.gov

## **<u>VERIFICATION</u>**

I, _____, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing *Answer of Jackson Walker LLP to the United States Trustee's First Set of Interrogatories to Jackson Walker LLP* and know the contents thereof. I hereby certify and verify that the foregoing responses are true and correct to the best of my knowledge, information, and belief.

Dated: _____                              _____



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

In re:

**Professional Fee Matters Concerning the**
**Jackson Walker Law Firm**

Case No. 23-645

## UNITED STATES TRUSTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO JACKSON WALKER LLP

**To**:    **Jackson Walker LLP, the Respondent, through Paul Trahan, its counsel**

Kevin Epstein, United States Trustee for Region 7 ("**United States Trustee**"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7034 of the Federal Rules of Bankruptcy Procedure, requests that Jackson Walker LLP ("**Respondent**") produce copies of the documents or other physical objects identified below (collectively, the "**Requests**") in native format via email to Jennifer.R.Toth@usdoj.gov within not more than thirty (30) days after service of this Request.

### INSTRUCTIONS

A.    If a document is no longer in possession or subject to the control of Respondent, state when such document was most recently in the possession of or subject to Respondent's control and what disposition was made of it. If documents have been destroyed, please identify when they were destroyed, the person who destroyed them, the person who directed that they be destroyed, the reason(s) for such action and any communications or documents which relate or refer to the destruction of the documents.

B.    Unless otherwise indicated, the period covered by these Requests is the Applicable Period.

C.    These Requests shall be deemed to be continuing, and any additional information relating in any way to these Requests or Respondent's original answers that is acquired subsequent to the date of responding to these Requests, up to and including the time of any

evidentiary hearing or trial, shall be furnished to the United States Trustee as required by Federal Rule of Civil Procedure 26(e), as incorporated by Federal Rule of Bankruptcy Procedure 7026(e).

  D. All documents that respond, in whole or in part, to any part or clause of any these Requests shall be produced in their entirety, including all attachments and enclosures.  Only one copy of each responsive document need be produced.

  E. For any document withheld under a claim of privilege, submit a sworn or certified statement in which Respondent identifies the document by author, addressee, date, number of pages, and subject matter; specify the nature and basis of the claimed privilege and the paragraph of these Requests to which the document is responsive; and identify each person to whom the document or its contents, or any part thereof, has been disclosed.

## DEFINITIONS

  "**All**" means all information, documents, or communications, whether in paper, electronic or other form, that is in the actual or constructive possession of Jackson Walker, its partners, fiduciaries, accountants, or bookkeepers.

  "**Applicable Period**" means January 1, 2018, through May 15, 2024.

  "**Bankruptcy Court**" means the Bankruptcy Court for the Southern District of Texas and each past and present employee, courtroom deputy, case manager, law clerk, independent contractor, agent, and each representative of such entity or individual.

  "**Compensation**" means any base salary, wages, incentives, raises, benefits, perquisites, stock options (or other investment options), and bonuses (including annual, signing, discretionary, retention, referral or profit-sharing).

  "**Document**" or "**Documents**" means and is intended to have the broadest possible meaning and includes any writings whatsoever, electronic transmissions, e-mails and attachments thereto, drawings, reports, records, notes, instructions, memoranda, drafts (whether or not they resulted in a final document), communications (including internal), correspondence, contracts, letters, graphs, charts, photographs, filings, forms, journals, ledgers, letters, lists, minutes, notations, notes, opinions, orders, pamphlets, papers, publications, receipts, summaries, screenshots, social media posts, telegrams, telephone records, text messages, video recordings, voicemail messages and billing statements (including drafts).

  "**Freeman**" means Elizabeth Freeman, a former partner at Jackson Walker and each past and present agent, representative, attorney, expert, insurer, executor, administrator, or anyone acting on her behalf.

  "**Law Office of Liz Freeman**" means The Law Office of Liz Freeman, PLLC, and each past and present officer, director, partner, associate, employee, independent contractor, agent,

servant, and each representative of each such entity or individual, and each past and present attorney of each such entity or individual.

"**Holland & Knight**" means Holland & Knight LLP and each past and present officer, director, partner, associate, employee, independent contractor, agent, servant, and each representative of each such entity or individual, and each past and present attorney of each such entity or individual.

"**Jackson Walker**" means Jackson Walker LLP and each past and present officer, director, partner, associate, employee, independent contractor, agent, servant, and each representative of each such entity or individual, and each past and present attorney of each such entity or individual.

"**Judge Jones**" means David R. Jones formerly a bankruptcy judge for the Southern District of Texas.

"**Judicial Disqualification Matter Letter**" means that certain letter attached as exhibit 1 to the Preliminary Response.

"**Kirkendall**" means Tom Kirkendall and each past and present agent, representative, attorney, expert, insurer, executor, administrator, or anyone acting on his behalf.

"**Kirkland**" means Kirkland & Ellis LLP and each past and present officer, director, partner, associate, employee, independent contractor, agent, servant, and each representative of each such entity or individual, and each past and present attorney of each such entity or individual.

"**Person**" and "**persons**" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity.

"**Preliminary Response**" means that certain Preliminary Response of Jackson Walker LLP to Recent Filings by the Office of the United States Trustee filed on or about November 13, 2023.

"**Relate(s) to**" or "**relating to**" means constituting, defining, concerning, embodying, reflecting, identifying, stating, referring to, bearing upon, dealing with or in any way pertaining to.

"**Relationship**" means any personal relationship between Freeman and Judge Jones, including intimate, financial, fiduciary, cohabitating, romantic or sexual.

"**Relevant Cases**" means (i) each case listed on Exhibit 6 to the United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving any Jackson Walker Applications for Compensation and Reimbursement of Expenses filed in this case, and (ii) any cases in which both Jackson Walker and the Law Office of Liz Freeman worked, including *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), *In re Candy Club LLC* (Case No. 23-60048),

and *In re QualTek Services Inc.* (Case No. 23-90584), each filed in the Bankruptcy Court for the Southern District of Texas (Houston Division). For the avoidance of doubt, each listed case includes all cases involving affiliated and related debtors.

"**Van Deelen Litigation**" means the Adversary Proceeding known as *Michael Van Deelen v. David Dickson, et al.,* Case No. 20-03309 filed in the Bankruptcy Court for the Southern District of Texas (Houston Division) and the Civil Case known as *Michael Van Deelen v. David R. Jones, et al.,* No. 4:23-cv-03729, filed in the United States District Court for the Southern District of Texas (Houston Division).

## **<u>DOCUMENTS TO BE PRODUCED</u>**

1.      Jackson Walker's policies and procedures regarding conflict checks and/or disclosing connections for any new and existing matters.

2.      Documents relating to all Compensation Jackson Walker paid to Freeman.

3.      Jackson Walker's billing statements, pre-billing statements, drafts of billing statements or write-offs in any form for any case, administrative proceeding, mediation, or other legal matter in which Freeman either worked, consulted, or provided any support.

4.      Documents relating to Jackson Walker's ethical policies and procedures, including training on legal ethics and reporting of its employees' and partners' non-compliance with ethical rules to the appropriate court, state bar, insurance carriers and disciplinary authorities.

5.      Documents relating to any conflict or connection checks conducted in the Relevant Cases, including the results.

6.      Jackson Walker's organizational chart.

7.      All disclosure materials that all potential mediators provided to Jackson Walker in the Relevant Cases.

8.      Documents relating to the Relationship, including but not limited to:

   a.   Documents relating to Jackson Walker's receipt of information regarding the Relationship;
   b.   Documents relating to any investigations and/or inquiries;
   c.   The anonymous letter referred to in the Preliminary Response and all documents relating to it;
   d.   Documents between Jackson Walker and Kirkland directly or indirectly mentioning or addressing the Relationship, including in the Van Deelen Litigation;
   e.   Documents relating to the disclosure or lack of disclosure of the Relationship to any third parties or persons;
   f.   All internal communications within Jackson Walker relating to the Relationship; and
   g.   Documents relating to any decisions or actions taken as a result of the Relationship.

9.      All communications between Freeman or the Law Office of Liz Freeman and Jackson Walker relating to the Relationship.

5

10.     All expense reports or requests for reimbursement from Freeman or the Law Office of Liz Freeman submitted to Jackson Walker related to the Relevant Cases.

11.     Documents relating to the recruitment and hiring of Freeman by Jackson Walker.

12.     Documents relating to any Compensation that Jackson Walker offered to Freeman.

13.     Documents relating to the promotion of Freeman to equity partner at Jackson Walker.

14.     Documents relating to Freeman's separation from Jackson Walker, including any documents related to the decision to do so.

15.     All separation or severance documents between Jackson Walker, Freeman and/or the Law Office of Liz Freeman, including the confidential separation agreement.

16.     All agreements whether formal or informal between Jackson Walker, Freeman and/or the Law Office of Liz Freeman and any documents related to those agreements.

17.     Documents relating to all funds paid or monies owed by Jackson Walker to Freeman or the Law Office of Liz Freeman.

18.     Jackson Walker's bylaws.

19.     Jackson Walker's minutes, recordings, summaries, or reports of meetings, whether formal or informal, of the members of Jackon Walker and of each committee or subgroup in which Freeman or the Relationship was mentioned or discussed.

20.     Freeman's personnel file, including documents relating to all health, transportation, dental, retirement, life insurance, disability insurance or any other benefits offered to Freeman in connection with her association with Jackson Walker.

21.     Freeman's performance reviews and all other formal or informal evaluations of Freeman's performance.

22.     Documents between Jackson Walker and any insurance carrier relating to the Relationship.

23.     All social media posts mentioning, portraying, or involving Freeman.

24.     All promotional materials prepared by or at the request of Jackson Walker that referenced, featured, described, or mentioned Freeman in any way, whether privately or publicly disseminated.

25.     All publications authored in whole or in part by Freeman.

26.     Documents relating to Freeman's speaking engagements, including conference brochures, panel descriptions and agendas.

27.     The Lateral Partner Questionnaire referenced in the Preliminary Response.

28.     Documents reflecting Freeman's residences.

29.     Documents reflecting any real property purchased or owned by Freeman.

30.     Documents relating to whether any Person at Jackson Walker was aware of the Relationship.

31.     Documents relating to any bar referrals or judicial conduct complaints made by Jackson Walker involving the Relationship.

32.     Documents relating to Jackson Walker's decision whether to disclose the Relationship in the Relevant Cases.

33.     Documents relating to Jackson Walker's decision whether to disclose the Relationship in the Van Deelen Litigation.

34.     Documents relating to all investigators, experts, consultants, attorneys, legal professionals, or law firms regarding any issues related to the Relationship.

35.     Documents between Jackson Walker and Holland & Knight relating to the Relationship, including but not limited to the final version of the Judicial Disqualification Matter Letter and any responses to that Letter from Holland & Knight.

36.     Documents between Jackson Walker and Kirkland relating to the Relationship.

37.     Documents filed under seal in the Van Deelen Litigation.

38.     To the extent Jackson Walker relied upon advice of counsel or other professional(s) to determine disclosure of the Relationship was not necessary in matters associated with Judge Jones, as the Bankruptcy Judge or mediator, documents on which Jackson Walker's decisions were based.

39.     Documents relating to Kirkendall's communications with Jackson Walker and/or Holland & Knight regarding the Relationship.

40.     Documents relating to the Judicial Disqualification Matter Letter and all notes, correspondence and documents relating to it.

41.     Documents reviewed or relied on by Jackson Walker in answering the United States Trustee's First Set of Interrogatories to Jackson Walker LLP.

42.     In connection with any of the Relevant Cases, all communications between Jackson Walker and any mediator or potential mediator.

43.     In connection with any of the Relevant Cases, Jackson Walker's billing statements, pre-billing statements, drafts of billing statements or write-offs for any time entries related to any mediations.

44.     In connection with *In re GWG Holdings, Inc.,* Case No. 22-90032, the settlement statement, settlement term sheet or similar document memorializing any agreement reached in connection with any mediation.

45.     In connection with *In re GWG Holdings, Inc.,* Case No. 22-90032, documents related to the selection of any wind-down trustee.

46.     In connection with *In re GWG Holdings, Inc.,* Case No. 22-90032, documents related to the selection and appointment of Freeman as the wind-down trustee.

47.     Documents related to any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

48.     *Ex Parte* communications between Jackson Walker and Judge Jones.

49.     *Ex Parte* communications between Jackson Walker and the Bankruptcy Court relating to the Relevant Cases.

Date: May 15, 2024                              Respectfully Submitted,

                                                KEVIN M. EPSTEIN
                                                UNITED STATES TRUSTEE
                                                REGION 7, SOUTHERN AND WESTERN
                                                DISTRICTS OF TEXAS

                                        By: _____
                                                Millie Aponte Sall
                                                Assistant U.S. Trustee
                                                Tex. Bar No. 01278050/Fed. ID No. 11271
                                                515 Rusk, Suite 3516
                                                Houston, Texas 77002
                                                (713) 718-4650 – Telephone
                                                (713) 718-4670 – Fax
                                                Email: millie.sall@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**



In re:

**Professional Fee Matters Concerning the
Jackson Walker Law Firm**

Case No. 23-00645 (EVR)

**JACKSON WALKER LLP'S RESPONSES AND OBJECTIONS TO THE
U.S. TRUSTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:     Kevin M. Epstein, United States Trustee for Region 7, by and through his counsel of record, Laura Steele, Pat S. Layng, Millie Aponte Sall, Aubrey L. Thomas, Vianey Garza, and Alicia Barcomb, 515 Rusk, Suite 3516, Houston, Texas 77002.

Respondent, Jackson Walker LLP ("JW"), pursuant to Fed. R. Civ. P. 34 and Fed. R. Bankr. P. 7034, submits the following Responses and Objections to the U.S. Trustee's First Request for Production[1] and states as follows:

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      JW objects to the U.S. Trustee's demand that documents be produced in native format. JW will produce documents in standard TIFF format with accompanying text extraction, searchable OCR, and metadata in a Concordance load file. JW will produce Excel, PowerPoint, audio, audiovisual, and video files in their native format. All Documents and Communications will be produced with sufficient metadata to convey where these items begin and end (including attachments), the original file name, and the original timestamps and attributes, including the following metadata fields: "BEGBATES," "ENDBATES," "BEGATTACH," "ENDATTACH,"

---

[1] The deadline to respond and object to these Requests was extended by agreement with the U.S. Trustee to June 24, 2024.

"to," "from," "cc," "bcc," "subject," "custodian," "creation date," "last modified," "date sent," "time sent," and "MD5HASH."

2.      JW objects to Instruction E because it purports to require a sworn or certified privilege log, which exceeds Jackson Walker's obligations under the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

3.      JW objects to Instruction A, which purports to require JW to create documents—a list identifying any destroyed documents and other information pertaining to such document's destruction. Instructing to create such a list exceeds the bounds of Fed. R. Civ. Proc. 34(a), under which a party is required to produce documents, not create lists.

4.      JW objects to the definition of "Freeman" as overbroad, unduly burdensome, and not proportional to the needs of this case in that it includes "each past and present agent, representative, attorney, expert, insurer, executor, administrator of Elizabeth Freeman, or anyone acting on her behalf" and therefore seeks information that is neither relevant to the claims or defenses nor proportional to the needs of the case. JW further objects to this definition because it includes entities and persons outside JW's legal or practical control. JW will only provide documents responsive to a Request if that information is in JW's possession, custody, or control.

5.      JW objects to the definition of "Holland and Knight" as overbroad, unduly burdensome, and not proportional to the needs of these proceedings in that it includes "each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual" and therefore seeks information that is neither relevant to the claims or defenses nor proportional to the needs of these proceedings. JW further objects to this definition because it includes entities and persons outside JW's legal or

practical control. JW will only provide documents responsive to a Request if that information is in JW's possession, custody, or control.

6.      JW objects to the definition of "Jackson Walker" on the grounds that the definition includes JW's attorneys and, therefore, improperly seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities. JW further objects to this definition as unduly burdensome because it requires JW to have an unreasonably detailed and perfect knowledge of "each" of the "independent contractors," "agents," and "servants" of JW. JW objects to this definition to the extent that it would require JW to provide documents from entities or persons outside JW's legal or practical control.

7.      JW objects to the definition of "Kirkland" as overbroad, unduly burdensome, and not proportional to the needs of these proceedings in that it includes "each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual" and therefore seeks information that is neither relevant to the claims or defenses nor proportional to the needs of these proceedings. JW further objects to this definition because it includes entities and persons outside JW's legal or practical control. JW will only provide documents responsive to a Request if that information is in JW's possession, custody, or control.

8.      JW objects to the definition of "Relationship" as overly broad because it encompasses any personal relationship between Ms. Freeman and former Judge David R. Jones, regardless of whether the U.S. Trustee contends it would have required disclosure under the Bankruptcy Code or any other applicable rules. JW will interpret "Relationship" to mean a relationship between Ms. Freeman and former Judge Jones that was intimate, financial, fiduciary, cohabitating, romantic, or sexual.

9.       JW objects to the definition of "Relevant Cases" to the extent it includes cases in which the U.S. Trustee is not seeking relief. This includes *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), *In re Candy Club LLC* (Case No. 23-60048), and *In re QualTek Services Inc.* (Case No. 23-90584). JW will limit the definition of "Relevant Cases" to each case listed on Exhibit 6 to the U.S. Trustee's *Amended and Supplemental Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed in the Relevant Cases.

## RESPONSES AND OBJECTIONS TO REQUESTS

JW specifically responds and objects to the Requests as follows:

**REQUEST NO. 1:   Jackson Walker's policies and procedures regarding conflict checks and/or disclosing connections for any new and existing matters.**

**OBJECTIONS:** JW objects to this Request given that the phrase "policies and procedures" is vague and ambiguous.

**RESPONSE:** Subject to the above, Jackson Walker will produce the portions of the Jackson Walker Attorney Sourcebook that cover conflict policies. Jackson Walker does not have any written policies relating to disclosing connections. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**REQUEST NO. 2:   Documents relating to all Compensation paid to Freeman by Jackson Walker.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, vague, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1).

**RESPONSE:** Subject to the above, JW will produce responsive, non-privileged documents sufficient to show the amounts Ms. Freeman was compensated while a partner at JW. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 3:   Jackson Walker's billing statements, pre-billing statements, drafts of billing statements or write-offs in any form for any case, administrative proceeding, mediation, or other legal matter in which Freeman either worked, consulted, or provided any support.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks documents relating to all billing statements in any way involving Freeman regardless of whether the matters in question were pending before, mediated by, or in any other way related to Judge Jones and regardless of whether or not they relate to any Relevant Case. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work-product doctrine and/or mediation privileges. JW further objects to the phrase "any support" as vague. JW also objects to this Request to the extent that such information is part of and included

in JW's fee applications and fee statements, which are equally accessible to the U.S. Trustee and publicly available.

      **RESPONSE:** Subject to the above, JW will produce responsive, non-privileged documents or non-privileged portions of documents reflecting hours billed by Ms. Freeman in the Relevant Cases, as limited by JW in its objections to the definitions and instructions. JW will also produce responsive, non-privileged documents or non-privileged portions of documents reflecting any hours billed by Ms. Freeman in the Relevant Cases (as limited by JW in its objections to the definitions and instructions) that were written off or not ultimately charged to the client. JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 4: Documents relating to Jackson Walker's ethical policies and procedures, including training on legal ethics and reporting of its employees' and partners' non-compliance with ethical rules to the appropriate court, state bar, insurance carriers and disciplinary authorities.**

      **RESPONSE:** In addition to the Texas Disciplinary Rules of Professional Conduct, which are publicly available, JW will produce responsive, non-privileged documents or non-privileged portions of documents reflecting JW's ethics policies and procedures.

**REQUEST NO. 5: Documents relating to any conflict or connection checks conducted in the Relevant Cases, including the results.**

      **OBJECTIONS:** JW objects to this Request because it is overbroad, vague, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks documents relating to "any conflict or connection checks conducted in the Relevant Cases" regardless of whether the "conflict or connection check" in question

included former Judge Jones. JW further objects to the phrase "connection check" as vague and ambiguous. JW also objects to this Request because connection results are publicly available as they are included in JW's retention applications, and any related supplemental disclosures filed in the Relevant Cases. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work-product doctrine and/or mediation privileges, or would have JW disclose confidential client information in violation of Texas Disciplinary Rule of Professional Conduct 1.05.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, relating to any conflict or connection checks conducted in the Relevant Cases, as limited by JW in its objections to the definitions and instructions. At this time, JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 6:    Jackson Walker's organizational chart.**

**RESPONSE:** JW has no responsive documents.

**REQUEST NO. 7:    All disclosure materials prepared by all potential mediators provided to Jackson Walker in the Relevant Cases.**

**OBJECTIONS:** Jackson Walker objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is

objectionable because, as propounded, it seeks all disclosure materials prepared by ***any potential mediator*** that has been provided to JW in the Relevant Cases since January 1, 2018.

**RESPONSE:** Subject to the above, Jackson Walker will produce responsive, non-privileged disclosure materials, if any exist, provided to JW and prepared by former Judge Jones in his capacity as mediator on any of the Relevant Cases, as limited by JW in its objections to the definitions and instructions. At this time, JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**REQUEST NO. 8:**   Documents relating to the Relationship, including but not limited to:
   a.  Documents relating to Jackson Walker's receipt of information regarding the Relationship;
   b.  Documents relating to any investigations and/or inquiries;
   c.  The anonymous letter referred to in the Preliminary Response and all documents relating to it;
   d.  Documents between Jackson Walker and Kirkland directly or indirectly mentioning or addressing the Relationship, including in the Van Deelen Litigation;
   e.  Documents relating to the disclosure or lack of disclosure of the Relationship to any third parties or persons;
   f.  All internal communications within Jackson Walker relating to the Relationship; and
   g.  Documents relating to any decisions or actions taken as a result of the Relationship.

**OBJECTIONS:** JW objects to this Request because it is vague, overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Additionally, the Request, and each subpart, is overbroad and unduly burdensome because it seeks all documents in any way relating to the Relationship, which, as defined by the U.S. Trustee, is overly broad, as it encompasses mere friendship. As noted in its objections to the definitions and instructions, JW will interpret "Relationship" to mean a relationship between Ms. Freeman and former Judge Jones that was

intimate, financial, fiduciary, cohabitating, romantic, or sexual. JW objects to this Request as vague and ambiguous to the extent it seeks documents "indirectly mentioning or addressing the Relationship." JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work-product doctrine and/or mediation privileges. JW also objects to this Request to the extent that such information is part of and included in filings made in the Relevant Cases, which are equally accessible to the U.S. Trustee and publicly available.

JW objects to Request 8(a) because, as written, it seeks documents relating to JW's receipt of information relating to the Relationship at any point between January 1, 2018, and May 15, 2024. Given that the Relationship made national news in October of 2023, Request 8(a) conceivably encompasses any news alerts received by any person at Jackson Walker from that point forward. Accordingly, JW will limit the time frame for this Request to January 1, 2018 through October 6, 2023.

JW objects to Request 8(c), which is vague and ambiguous in its use of "it" at the sentence end as it is unclear whether "it" refers to the anonymous letter or the Relationship.

JW objects to Request 8(g) which is unduly burdensome and overly broad in that it seeks documents relating to "any decision or actions taken as a result of the Relationship." Request 8(g) exceeds the bounds of responsive materials that are relevant to any claim or defense in this litigation. Jackson Walker will produce material in response to 8(g) that relates to "any decision or actions taken as a result of the Relationship pertaining to the Relevant Cases, Ms. Freeman's employment with Jackson Walker, or Jackson Walker's interactions with Judge Jones or the Bankruptcy Court for the Relevant Cases." "Relevant Cases" will be limited as noted by JW in its objections to the definitions and instructions.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request. JW is withholding documents based on its objections as noted above.

**REQUEST NO. 9:   All communications between Freeman or the Law Office of Liz Freeman and Jackson Walker relating to the Relationship.**

**OBJECTIONS:** JW objects to this Request as duplicative of Request No. 8. JW incorporates herein by reference its responses and objections raised in its response to that Request.

**RESPONSE:** Subject to the above, JW will produce non-privileged communications between Freeman and Jackson Walker, if any, relating to the Relationship, as limited by JW in its objections to the definitions and instructions. At this time, JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**REQUEST NO. 10:  All expense reports or requests for reimbursement from Freeman or the Law Office of Liz Freeman submitted to Jackson Walker related to the Relevant Cases.**

**OBJECTIONS:** JW objects to this Request because it is overbroad and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is overbroad and unduly burdensome because, as written, it seeks the production of all expense reports submitted by Ms. Freeman regardless of whether they were ultimately charged to the client.

**RESPONSE:** Subject to the above, and to the extent responsive documents exist, JW will produce expense reports or requests for reimbursement Ms. Freeman submitted to JW relating to the Relevant Cases, as limited by Jackson Walker as noted above in its objections to the definitions and instructions. At this time, JW has not otherwise withheld documents based on the objection

asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**REQUEST NO. 11: Documents relating to the recruitment and hiring of Freeman by Jackson Walker.**

**OBJECTIONS:** JW objects to this Request as overbroad because it seeks all documents in any way relating to Ms. Freeman's hiring by JW over six years ago, regardless of whether such documents relate in any way to former Judge Jones or the Relationship.

**RESPONSE:** JW will produce the offer letter sent to Ms. Freeman, the Lateral Partner Questionnaire, and any notes or written feedback relating to interviews of Ms. Freeman conducted as part of the hiring process. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 12:  Documents relating to any Compensation that Jackson Walker offered to Freeman.**

**OBJECTIONS:** JW objects to this Request as overbroad because it seeks all documents in any way relating to compensation "offered" to Ms. Freeman, regardless of whether they concern former Judge Jones or the Relationship. JW further objects to this Request as duplicative of Request No. 2. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW objects to this Request as vague and ambiguous with respect to the term "offered."

**RESPONSE:** Subject to the above, JW will produce responsive, non-privileged documents sufficient to show the amounts Ms. Freeman was compensated while a partner at JW. At this time, JW has not withheld documents based on the objection asserted above, but maintains

its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 13: Documents relating to promotion of Freeman to equity partner at Jackson Walker.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is overbroad and unduly burdensome because it seeks all documents relating to Ms. Freeman's promotion to equity partner regardless of their relevance (or lack thereof) to the U.S. Trustee's allegations raised in the Relevant Cases.

**RESPONSE:** Subject to the above, JW will produce the equity partner memorandum announcing Ms. Freeman's promotion to equity partner. JW is withholding production of this memorandum until the parties reach agreement about a protective order in this case and this document, which contains confidential personnel and business information, can be designated as confidential.

**REQUEST NO. 14: Documents relating to Freeman's separation from Jackson Walker, including any documents related to the decision to do so.**

**OBJECTIONS:** JW objects to this Request as overbroad because it seeks all documents in any way relating to Ms. Freeman's separation from Jackson Walker, regardless of whether they have any bearing on the Relationship or former Judge Jones. JW further objects to this Request as overbroad to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**RESPONSE:** Subject to the above, JW will produce its confidential separation agreement with Ms. Freeman, and any responsive, non-privileged documents on the subject of Ms. Freeman's

withdrawal from the firm. Note, however, that JW is withholding production of this separation agreement until the parties reach agreement about a protective order in this case and this document, which contains confidential personnel and business information, can be designated as confidential. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 15: All separation or severance documents between Jackson Walker, Freeman, and/or the Law Office of Liz Freeman, including the confidential separation agreement.**

**OBJECTIONS:** JW objects to this Request as duplicative of Request No. 14. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW objects to this Request as vague and ambiguous in its use of the term "severance documents." JW objects to this Request as vague and ambiguous to the extent it seeks "severance documents between Jackson Walker . . . and/or the Law Office of Liz Freeman," which was never an employee of JW and at no point separated from JW. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**RESPONSE:** Subject to the above, JW will produce its confidential separation agreement with Ms. Freeman. Note, however, that JW is withholding production of this separation agreement until the parties reach agreement about a protective order in this case and this document, which contains confidential personnel and business information, can be designated as confidential. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 16: All agreements whether formal or informal between Jackson Walker, Freeman and/or the Law Office of Liz Freeman and any documents related to those agreements.**

**OBJECTIONS:** JW objects to this Request because it is vague, overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is

objectionable because it demands all agreements of any type between Freeman and JW, regardless of whether they in any way concern the Relevant Cases or relate to the U.S. Trustee's allegations in these proceedings. JW further objects to this Request as vague and ambiguous as to the phrases "informal agreements" and "documents related to those agreements." JW also objects to this Request to the extent that any such information is part of and included in filings made in the Relevant Cases, which are equally accessible to the U.S. Trustee and publicly available. JW further objects to this Request as overbroad to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, relating to the Relevant Cases, as limited by Jackson Walker in its objections to the definitions and instructions. JW is withholding privileged material responsive to this Request. Note also that JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 17: Documents relating to all funds paid or monies owed by Jackson Walker to Freeman or the Law Office of Liz Freeman.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is objectionable because it seeks production of documents relating to any funds paid by JW to Ms. Freeman, regardless of whether the monies related to any of the Relevant Cases. JW also objects to this Request to the extent that any such information is part of and included in filings made in the Relevant Cases, which are equally accessible to the U.S. Trustee and publicly available.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, relating to the Relevant Cases, as limited by Jackson Walker in its objections to the definitions and

instructions. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 18:  Jackson Walker's bylaws.**

**RESPONSE:** No responsive documents exist. JW is a limited liability partnership and does not have bylaws.

**REQUEST NO. 19: Jackson Walker's minutes, recordings, summaries, or reports of meetings, whether formal or informal, of the members of Jackson Walker and of each committee or subgroup in which Freeman or the Relationship was mentioned or discussed**.

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is overbroad and unduly burdensome because it purports to require the production, among other things, of all minutes or reports of any meetings involving anyone at JW in which Ms. Freeman "was mentioned or discussed" irrespective of whether such relate to the Relationship or former Judge Jones. JW objects to this Request as vague and ambiguous in its use of the term "informal" to modify "minutes, recordings, summaries, or reports of meetings." JW objects to the phrase "committee or subgroup" as vague and ambiguous. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**RESPONSE:** Subject to the above, JW will produce responsive, non-privileged documents, if any, wherein the Relationship (as limited by JW in its objections to the definitions and instructions) was mentioned or discussed. At this time, JW has not withheld documents based

on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**REQUEST NO. 20:  Freeman's personnel file, including documents relating to all health, transportation, dental, retirement, life insurance, disability insurance or any other benefits offered to Freeman in connection with her association with Jackson Walker.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is overbroad and unduly burdensome because it seeks documents relating to Ms. Freeman's private health information and insurance information, which is entirely irrelevant to the claims or defenses at issue in this proceeding. Similarly, the request seeks information pertaining to other benefits such as dental, life, and disability insurance, none of which have any relevance to the Responsive Cases or the Relationship. Such insurance information is also irrelevant to any party's claim or defense and not proportional to the needs of these proceedings. Such information is also likely prohibited from disclosure by state and federal medical privacy laws, including the Health Insurance Portability and Accountability Act and the Texas Medical Privacy Act.

**RESPONSE:** JW will not produce any responsive documents until after a meet and confer to narrow the scope of this Request.

**REQUEST NO. 21:  Freeman's performance reviews and all other formal or informal evaluations of Freeman's performance.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, vague, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is

objectionable because it seeks all "informal evaluations" of Ms. Freeman's performance, without regard to whether they concern the Relationship or in any way relate to the U.S. Trustee's allegations raised in the Relevant Cases. Similarly, the term "informal evaluations" is vague, undefined, and ambiguous.

**RESPONSE:** Subject to the above, JW will produce Ms. Freeman's self-evaluations, performance reviews, and, to the extent any exist, minutes of compensation committee meetings, wherein JW discussed Ms. Freeman's performance. At this time, JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 22: Documents between Jackson Walker and any insurance carrier relating to the Relationship.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is overbroad and unduly burdensome because it seeks communications between JW and its insurance carriers, and such communications are entirely irrelevant to the claims or defenses at issue in this proceeding. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work-product doctrine and/or mediation privileges.

**RESPONSE:** JW will not produce any responsive documents until after a meet and confer to discuss this Request.

**REQUEST NO. 23:  All social media posts mentioning, portraying, or involving Freeman.**

**OBJECTIONS:** JW objects to this Request because it is vague, overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1).  The demand for "social media posts . . . portraying . . . Freeman" is also vague and ambiguous that JW cannot determine with sufficient precision the nature of the documents requested. In addition, the Request is overbroad and unduly burdensome because it seeks all social media posts (regardless, it seems, of whether they were posted by an account associated with or controlled by JW) that in any way involve Ms. Freeman. This is plainly irrelevant to the claims and defenses at issue in these proceedings. JW also objects to this Request to the extent that any such social media posts are publicly available and equally accessible to the U.S. Trustee.

**RESPONSE:** Jackson Walker will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**REQUEST NO. 24:  All promotional materials prepared by or at the request of Jackson Walker that referenced, featured, described, or mentioned Freeman in any way, whether privately or publicly disseminated.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks all "promotional materials" prepared over the last six years that involve Ms. Freeman in any way, regardless of whether they relate in any way to former Judge Jones, the Relationship, or to the claims and defenses at issue in these proceedings. JW also objects to this Request to the extent

that such information is publicly available and equally accessible to the U.S. Trustee. JW objects to the Request because the term "promotional materials" is also vague and ambiguous.

**RESPONSE:** Jackson Walker will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**REQUEST NO. 25:  All publications authored in whole or in part by Freeman**.

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks all publications authored in any part by Ms. Freeman, regardless of whether they relate in any way to former Judge Jones, the Relationship, or to the claims and defenses at issue in these proceedings. JW also objects to this Request to the extent that such information is publicly available and equally accessible to the U.S. Trustee.

**RESPONSE:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**REQUEST NO. 26: Documents relating to Freeman's speaking engagements, including conference brochures, panel descriptions and agendas.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks all documents that relate in any way to any speaking engagement Ms. Freeman may have had since January 1, 2018, regardless of whether the speaking engagement was in her capacity as a partner at JW or related in any way to former Judge Jones, the Relationship, or to the claims and

defenses at issue in these proceedings. JW also objects to this Request to the extent that such information is publicly available and equally accessible to the U.S. Trustee.

**RESPONSE:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**REQUEST NO. 27: The Lateral Partner Questionnaire referenced in the Preliminary Response.**

**RESPONSE:** JW will produce a copy of Ms. Freeman's Lateral Partner Questionnaire subject to a protective order.

**REQUEST NO. 28:   Documents reflecting Freeman's residences.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). JW further objects to this Request on the grounds that it seeks information that is more readily available to the U.S. Trustee or is otherwise obtainable from some other source that is more convenient, less burdensome, or less expensive. JW further objects to this Request because it seeks information that is publicly available. JW objects to this Request as vague and ambiguous in its use of the phrase "reflecting Freeman's residences."

**RESPONSE:** Subject to the above, JW will produce documents wherein Freeman informs JW of her home address(es). JW will withhold documents based on the objections asserted above.

**REQUEST NO. 29: Documents reflecting any real property purchased or owned by Freeman.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). JW further objects to this Request as duplicative of

Request No. 28. JW incorporates herein by reference its responses and objections raised in its response to that Request.

**RESPONSE:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**REQUEST NO. 30:  Documents relating to whether any Person at Jackson Walker was aware of the Relationship.**

**OBJECTIONS:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it is overbroad and unduly burdensome. Specifically, the Request is overbroad and unduly burdensome because it seeks all documents relating to whether any person "at Jackson Walker" was aware of the Relationship at any point between January 1, 2018 and May 15, 2024. Given that the Relationship made national news in October of 2023, the Request presumably encompasses all employees of JW as of October of 2023. Accordingly, JW will limit the time frame for this Request to January 1, 2018 through October 6, 2023.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request as narrowed above. At this time, JW has not otherwise withheld documents based on the objections asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**REQUEST NO. 31:  Documents regarding any bar referrals or judicial conduct complaints made by Jackson Walker involving the Relationship.**

**RESPONSE:** JW has no responsive documents.

**REQUEST NO. 32:  Documents relating to Jackson Walker's decision whether to disclose the Relationship in the Relevant Cases.**

**OBJECTIONS:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request

because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). JW objects to the U.S. Trustee's definition of "Relevant Cases" as noted in its objections to the definitions and instructions. JW will limit "Relevant Cases" as noted above in its objections to the definitions and instructions. JW further objects to this Request to the extent it mischaracterizes the factual record and presupposes JW's knowledge of the Relationship and obligation to disclose connections with the judiciary.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request, as limited by Jackson Walker as noted in its objections to the definitions and instructions. JW is withholding privileged documents responsive to this Request. JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**REQUEST NO. 33: Documents relating to Jackson Walker's decision whether to disclose the Relationship in the Van Deelen Litigation.**

**OBJECTIONS:** JW objects to this Request as duplicative of Request No. 32. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW objects to this Request because it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request to the extent it mischaracterizes the facts with respect to the Van Deelen Litigation and presupposes Jackson Walker's knowledge of the Relationship and obligation to disclose connections with the judiciary. JW also objects to this Request because it mischaracterizes the facts in ignoring that Jackson Walker promptly brought Mr. Van Deelen's allegations to the court's attention.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged documents responsive to this Request. JW has not otherwise withheld documents based on the objections asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**REQUEST NO. 34:  Documents relating to all investigators, experts, consultants, attorneys, legal professionals, or law firms regarding any issues related to the Relationship.**

**OBJECTIONS:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it is vague, overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). JW further objects to this Request on the grounds that the request for "[d]ocuments relating to all . . . attorneys . . . regarding any issues related to the relationship" is so vague and ambiguous that JW cannot determine with sufficient precision the nature of the documents requested.

**RESPONSE:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**REQUEST NO. 35:  Documents between Jackson Walker and Holland & Knight relating to the Relationship, including but not limited to the final version of the Judicial Disqualification Matter Letter and any responses to that Letter from Holland & Knight.**

**OBJECTIONS:**  JW objects to this Request because it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 36: Documents between Jackson Walker and Kirkland relating to the Relationship.**

    **OBJECTIONS:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

    **RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 37: Documents filed under seal in the Van Deelen Litigation.**

    **OBJECTIONS:** JW objects to this Request on the grounds that it seeks information that is as readily available to the U.S. Trustee or is otherwise obtainable from some other source that is more convenient, less burdensome, or less expensive.

    **RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request. Note, also, that JW is withholding responsive confidential information that it will produce subject to a protective order.

**REQUEST NO. 38: To the extent Jackson Walker relied upon advice of counsel or other professional(s) to determine disclosure of the Relationship was not necessary in matters associated with Judge Jones, as the Bankruptcy Judge or mediator, documents on which Jackson Walker's decisions were based.**

    **RESPONSE:** As JW is not asserting an advice-of-counsel defense, there are no responsive documents.

**REQUEST NO. 39: Documents relating to Kirkendall's communications with Jackson Walker and/or Holland & Knight regarding the Relationship.**

    **OBJECTIONS:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

    **RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 40:  Documents relating to the Judicial Disqualification Matter Letter and all notes, correspondence and documents relating to it.**

**OBJECTIONS:** JW objects to this Request because it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. Jackson Walker further objects to this Request as duplicative of Request No. 35.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 41:  Documents reviewed or relied on by Jackson Walker in answering the United States Trustee's First Set of Interrogatories to Jackson Walker LLP.**

**OBJECTIONS:** JW objects to this Request because it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 42:  In connection with any of the Relevant Cases, all communications between Jackson Walker and any mediator or potential mediator.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because, as propounded, it seeks all communications between Jackson Walker and ***any mediator or potential mediator*** since January 1, 2018, without regard to the mediator's identity. JW further objects to this Request because it seeks documents protected by the mediation or ADR privilege.

**RESPONSE:** Subject to the above, JW will produce responsive, non-privileged documents (to the extent any such documents exist) that relate to former Judge Jones in his capacity

as mediator in the Relevant Cases. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 43:  In connection with any of the Relevant Cases, Jackson Walker's billing statements, pre-billing statements, drafts of billing statements or write-offs for any time entries related to any mediations.**

    **OBJECTIONS:** JW objects to this Request as duplicative of Request No. 3. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW further objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks all of JW's billing statements in any of the Relevant Cases, regardless of whether they reflect time billed by Ms. Freeman and regardless of whether Ms. Freeman had any role or involvement. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW also objects to this Request to the extent that such information is part of and included in Jackson Walker's fee applications and fee statements, which are equally accessible to the U.S. Trustee and publicly available.

    **RESPONSE:** Subject to the above, JW will produce responsive, non-privileged documents reflecting Ms. Freeman's time billed or written off in any mediation conducted by former Judge Jones in any of the Relevant cases, as narrowed by JW as noted in its objections to the definitions and instructions. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 44:** **In connection with** *In re GWG Holdings, Inc.*, **Case No. 22-90032, the settlement statement, settlement term sheet or similar document memorializing any agreement reached in connection with any mediation.**

**OBJECTIONS:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it seeks documents protected by the mediation or ADR privilege.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 45:** **In connection with** *In re GWG Holdings, Inc.,* **Case No. 22-90032, documents related to the selection of any wind-down trustee.**

**OBJECTIONS:** JW objects to this Request as duplicative of Request No. 44. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it seeks documents protected by the mediation or ADR privilege.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 46:** **In connection with** *In re GWG Holdings, Inc.,* **Case No. 22-90032, documents related to the selection and appointment of Freeman as the wind-down trustee.**

**OBJECTIONS:** JW objects to this Request as duplicative of Request Nos. 44 and 45. JW incorporates herein by reference its responses and objections raised in its response to those Requests. JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it seeks documents protected by the mediation or ADR privilege.

**RESPONSE:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**REQUEST NO. 47: Documents related to any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.**

**OBJECTIONS:** JW objects to this Request as vague because it is unclear to which mediation the Request is referring.

**RESPONSE:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**REQUEST NO. 48:** *Ex Parte* **communications between Jackson Walker and Judge Jones.**

**OBJECTIONS:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because, as propounded, it would require JW to search all of its current and former attorneys' communications for *ex parte* communications with former Judge Jones. JW further objects to this Request as overbroad because it seeks documents relating to any case before former Judge Jones and is not limited to the Relevant Cases.

**RESPONSE:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**REQUEST NO. 49:** *Ex Parte* **communications between Jackson Walker and the Bankruptcy Court relating to the Relevant Cases.**

**OBJECTIONS:** JW objects to this Request as duplicative of Request No. 48. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW further objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of this case, and thus is beyond the scope of discovery permissible under Federal Rule of Civil

Procedure 26(b)(1). Specifically, the Request is objectionable because, as propounded, it would require JW to search all of its current and former attorneys' communications for *ex parte* communications with any judge in any of the Relevant Cases. JW further objects to this Request as overbroad because it seeks communications not only between JW and former Judge Jones, but also between JW and any judge in any of the Relevant Cases.

**RESPONSE:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

*[Remainder of Page Intentionally Left Blank]*

Dated: June 24, 2024

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Paul Trahan*

Jason L. Boland (SBT 24040542)
William R. Greendyke (SBT 08390450)
Julie Goodrich Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Email: jason.boland@nortonrosefulbright.com
Email: william.greendyke@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

Paul Trahan (SBT 24003075)
Emily Wolf (SBT 24106595)
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
Email: Paul.trahan@nortonrosefulbright.com
Email: emily.wolf@nortonrosefulbright.com

-and-

**RUSTY HARDIN & ASSOCIATES, LLP**

Russell Hardin, Jr. (SBT 08972800)
Leah M. Graham (SBT 24073454)
Jennifer E. Brevorka (SBT 24082727)
Emily Smith (SBT 24083876)
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Email: rhardin@rustyhardin.com
Email: lgraham@rustyhardin.com
Email: jbrevorka@rustyhardin.com
Email: esmith@rustyhardin.com

*Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Jackson Walker LLP's Responses and Objections to the U.S. Trustee's First Request for Production of Documents was served in compliance with the Federal Rules of Civil Procedure on June 24, 2024, on the following counsel via e-mail:

**OFFICE OF THE UNITED STATES TRUSTEE, REGION 7**

Laura Steele (Laura.Steele@usdoj.gov)
Pat S. Layng (Pat.S.Layng@usdoj.gov)
Millie Aponte Sall (Millie.sall@usdoj.gov)
Aubrey L. Thomas (Aubrey.thomas@usdoj.gov)
Vianey Garza (Vianey.Garza@usdoj.gov)
Alicia Barcomb (Alicia.Barcomb@usdoj.gov)

*/s/ Emily D. Wolf*
Emily D. Wolf



EXHIBIT

D

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---

In re:

**Professional Fee Matters Concerning the Jackson Walker Law Firm**

Case No. 23-645

---

## UNITED STATES TRUSTEE'S FIRST SET OF INTERROGATORIES TO JACKSON WALKER LLP

**To**:     **Jackson Walker LLP, the Respondent, through Paul Trahan, its counsel.**

Kevin Epstein, United States Trustee for Region 7 (the "**United States Trustee**"), hereby serves this first set of interrogatories ("**Interrogatories**") pursuant to Rule 33 of the Federal Rules of Civil Procedure  (the "**Rules**"), made applicable to this proceeding by Rule 7033 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") to Jackson Walker LLP ("**Respondent**"), and they are to be answered under oath and signed by Respondent within thirty (30) days of service.

### INSTRUCTIONS

A.     In responding to these Interrogatories, furnish all information available to Respondent, including information in the possession of its attorneys, or its investigators, and persons acting on its behalf, and not merely such information known by Respondent.

B.     If Respondent finds the meaning of any term in these Interrogatories to be unclear, Respondent should assume a reasonable meaning, state what the assumed meaning is, and answer the Interrogatory on the basis of that assumed meaning.

C.     If an Interrogatory cannot be answered in full, answer the Interrogatory to the extent possible and provide an explanation of why a complete answer cannot be provided, including an explanation of all steps taken to obtain the requested information.

D.     If Respondent cannot respond fully, or if Respondent objects in part, to any of these Interrogatories, Respondent is nevertheless required to respond to the remaining portion(s) to the extent Respondent is capable of doing so.

E.      If Respondent contends that any information requested by an Interrogatory is protected from disclosure by any privilege, in whole or in part, then Respondent must fully identify in writing such information and the privilege(s) that Respondent claims are applicable to such information.

F.      The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine, or neuter shall include each of the other genders.

G.      These Interrogatories shall be deemed to be continuing, and any additional information relating in any way to these Interrogatories or Respondent's original answers that is acquired subsequent to the date of responding to these Interrogatories, up to and including the time of any evidentiary hearing or trial, shall be furnished to the United States Trustee as required by Rule 26(e), as incorporated by Bankruptcy Rule 7026(e).

H.      Unless otherwise indicated, the period of time covered by these Interrogatories is the Applicable Period.

I.      For any Interrogatory listed in the section below under the heading "Case Specific Interrogatories," answer each Interrogatory as it pertains to the specific case and any of its affiliated cases identified at the beginning of the specific section.


## DEFINITIONS

"**All**" means all information, documents, or communications, whether in paper, electronic or other form, that is in the actual or constructive possession of Jackson Walker, its partners, fiduciaries, accountants, or bookkeepers.

"**Applicable Period**" means January 1, 2018, through December 15, 2023.

"**Bankruptcy Court**" means the Bankruptcy Court for the Southern District of Texas and each past and present employee, courtroom deputy, case manager, law clerk, independent contractor, agent and each representative of such entity or individual.

"**Compensation**" means any base salary, wages, incentives, raises, benefits, perquisites, stock options (or other investment options), and bonuses (including annual, signing, discretionary, retention, referral or profit-sharing).

"**Describe in detail**" includes a request for a complete description and explanation of the facts, times, dates, individuals involved, circumstances, analysis, opinion, and other information relating to the subject matter of an Interrogatory.

"**Document**" or "**Documents**" means and is intended to have the broadest possible meaning and includes any writings whatsoever, electronic transmissions, e-mails and attachments thereto, drawings, reports, records, notes, instructions, memoranda, drafts (whether or not they resulted in a final document), billing statements (including drafts), communications (including internal), correspondence, contracts, letters, graphs, charts, photographs, filings, forms, journals, ledgers, letters, lists, minutes, notations, notes, opinions, orders, pamphlets, papers, publications, receipts, summaries, screenshots, social media posts, telegrams, telephone records, text messages, video recordings and voicemail messages.

"**Identify**" means: (i) when used with reference to a natural person, to state his or her full name, position, and business affiliation at the time referred to, last known position and business affiliation, and last known residence and business address and telephone number(s); (ii) when used with reference to an entity, to state its full formal name, last known address(es), telephone number(s), and organizational form (e.g., corporation, sole proprietorship, partnership, joint venture, etc.); (iii) when used with reference to a document, to state the document's title or name, beginning and ending bates number, date, author, addressee, other recipients, type and general subject matter, current location, and custodian; and (iv) when used in reference to a location, the name of the business, the address and the telephone number(s)

"**Freeman**" means Elizabeth Freeman, a former partner at Jackson Walker and each past and present agent, representative, attorney, expert, insurer, executor, administrator of Elizabeth Freeman, or anyone acting on her behalf.

"**Holland and Knight**" means Holland & Knight LLP and each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual.

"**Jackson Walker**" means Jackson Walker LLP and each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual.

"**Judge Jones**" means David R. Jones, formerly a bankruptcy judge for the Southern District of Texas.

"**Kirkland**" means Kirkland & Ellis LLP and each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual.

"**Person**" and "**persons**" mean any natural person or persons, business or businesses, or legal or governmental entity, entities, association, or associations.

"**Preliminary Response**" means that certain Preliminary Response of Jackson Walker LLP to Recent Filings by the Office of the United States Trustee filed on or about November 13, 2023.

"**Relate(s) to**" or "**relating to**" means constituting, defining, concerning, embodying, reflecting, identifying, stating, referring to, bearing upon, dealing with or in any way pertaining to.

"**Relationship**" means any personal relationship between Freeman and Judge Jones, including intimate, financial, fiduciary, cohabitating, romantic or sexual.

"**Relevant Cases**" means (i) each case listed on Exhibit 6 to the United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving any Jackson Walker Applications for Compensation and Reimbursement of Expenses filed in this case, and (ii) any cases in which both Jackson Walker and the Law Office of Liz Freeman worked, including *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23-90085), *In re Candy Club LLC* (Case No. 23-60048), and *In re QualTek Services Inc.* (Case No. 23-90584), each filed in the Bankruptcy Court for the Southern District of Texas (Houston Division). For the avoidance of doubt, each listed case includes all cases involving affiliated and related debtors.

"**Van Deelen Litigation**" means the Adversary Proceeding known as *Michael Van Deelen v. David Dickson, et al.,* Case No. 20-03309 filed in the Bankruptcy Court for the Southern District of Texas (Houston Division) and the Civil Case known as *Michael Van Deelen v. David R. Jones, et al.,* Case No. 4:23-cv-03729, filed in the United States District Court for the Southern District of Texas (Houston Division).

## <u>INTERROGATORIES</u>

1.      Identify all Persons having knowledge about the following topics, and, with respect to each such Person, describe in detail the knowledge that Person has about the topic:

   a.   Jackson Walker's ethical training policies and procedures;

   b.   Jackson Walker's working relationship with Kirkland;

   c.   The Relationship;

   d.   Jackson Walker's engagement of Holland & Knight in connection with the Relationship;

   e.   Freeman's separation from Jackson Walker;

   f.   The calculation of any of Freeman's Compensation;

   g.   The referral of any matters by Jackson Walker to Freeman or the Law Office of Liz Freeman; and

   h.   The Van Deelen Litigation.

**RESPONSE:**




2.      Describe in detail all training that Jackson Walker provided to Freeman after she was hired, including training related to connections, disqualifying circumstances and/or conflict checks and all legal ethics.

**RESPONSE:**




3.      Describe in detail Jackson Walker's process used to determine whether connections, disqualifying circumstances and/or conflicts existed in all potential, new or existing engagements, including fulfilling its obligation to file all declarations and supplemental declarations as required by Bankruptcy Rule 2014(a).

**RESPONSE:**




4.      Describe in detail all Jackson Walker's efforts and actions taken to determine disqualifying circumstances and/or conflicts in the Relevant Cases.

**RESPONSE:**




5.      Provide the names of all cases in which Jackson Walker made any disclosures about any relationship and/ or connection between Jackson Walker and any members of the judiciary in any case filed in the Bankruptcy Court for the Southern District of Texas.

**RESPONSE:**

6.      Describe in detail all information that Jackson Walker received relating to the Relationship at any time prior to October 7, 2023.

**RESPONSE:**

7.      Describe in detail all communications between Freeman and Jackson Walker relating to the Relationship.

**RESPONSE:**

8.      Describe in detail all investigations or inquiries Jackson Walker conducted relating to the Relationship.

**RESPONSE:**

9.      Identify all individuals involved in any investigation of the Relationship and/or in the decision of what actions to take relating to the Relationship in the Relevant Cases.

**RESPONSE:**

10.     Describe in detail all decisions Jackson Walker made or actions Jackson Walker took regarding the Relationship.

**RESPONSE:**

11.     Identify all consultants, attorneys, legal professionals, or law firms that Jackson Walker contacted or engaged relating to the Relationship.

**RESPONSE:**

12.     Identify all materials (including legal authority) relied on by Jackson Walker in determining what actions to take relating to the Relationship.

**RESPONSE:**

13.     Identify all individuals whom Jackson Walker informed about the Relationship before October 7, 2023.

**RESPONSE:**

14.     Identify all individuals at Jackson Walker who knew about the Relationship before October 7, 2023.

**RESPONSE:**

15.     As referenced in the Preliminary Response, describe in detail the facts surrounding Jackson Walker's disclosure of the Relationship to Kirkland and any other lead or co-counsel.

**RESPONSE:**

16.     Describe in detail all actions Jackson Walker took in response to or in compliance with any communications from Holland & Knight regarding the Relationship.

**RESPONSE:**

17.     Describe in detail how Jackson Walker was managed, including its organizational hierarchy and the identity of the members of any management committee.

**RESPONSE:**

18.     Identify all of Jackson Walker's staff, office space, equipment, software, databases, or other resources that were used by Freeman or that Jackson Walker made available to Freeman following the termination of her partnership with Jackson Walker.

**RESPONSE:**

19.     Describe in detail all events sponsored or hosted in whole or in part by Jackson Walker in which any members of the judiciary were invited, including any weddings or ceremonies that were officiated or attended by Judge Jones. Your answer should include, without limitation, the names of the members of the judiciary Jackson Walker invited to each event.

**RESPONSE:**

20.     Identify all cases, administrative proceedings, and other legal matters that Freeman worked on, provided advice on, or counseled on while at Jackson Walker, regardless of whether her time was billed to any specific client.

**RESPONSE:**

21.     Identify all cases, administrative proceedings, and other legal matters involving Jackson Walker that Freeman and/or the Law Office of Liz Freeman worked on, provided advice on, or counseled on following Freeman's departure from Jackson Walker, regardless of whether her time was billed to any specific client.

**RESPONSE:**

22.     Identify all of Jackson Walker's non-attorney staff that worked with Freeman.

**RESPONSE:**

23.     Describe in detail all interactions between Judge Jones and Jackson Walker at which Freeman was present, including but not limited to hearings, mediations, conferences, social events, and fundraisers.

**RESPONSE:**

24.     Identify all of Freeman's guests at any event that Jackson Walker sponsored or hosted in whole or in part.

**RESPONSE:**

25.     Identify all private or public clubs, associations, societies, or organizations in which both Judge Jones and Jackson Walker were members.

**RESPONSE:**

26.     Describe in detail all formal or informal agreements or arrangements between Jackson Walker on the one hand and Freeman or the Law Office of Liz Freeman on the other hand.

**RESPONSE:**

27.     Describe in detail all platforms used by Jackson Walker to share information, resources and to communicate internally and externally to Freeman or the Law Office of Liz Freeman and how and where any data was stored.

**RESPONSE:**

28.     Identify any Persons at Jackson Walker who contacted the Bankruptcy Court regarding the mediation process in connection with the following cases: *In re Neiman Marcus Group LTD, LLC*, Case No. 20-32519, *In re Stage Stores LLC*, Case No. 20-32564, *In re Chesapeake Energy Corporation*, Case No. 20-33233, *In re Covia Holdings Corporation*, Case No. 20-33295, *In re Tug Robert J. Bouchard Corporation*, 20-34758, *In re Mule Sky LLC*, Case No. 20-35561, *In re Seadrill Partners LLC*, Case No. 20-35740, *In re Brilliant Energy, LLC*, Case No. 21-30936, *In re Katerra Inc.*, Case No. 21-31861, *In re Basic Energy Services, Inc.*, Case No. 21-90002, *In re Strike LLC*, Case No. 21-90054, *In re 4E Brands Northamerica LLC*, Case No. 22-50009, *In re Sungard AS New Holdings*, Case No. 22-90018, *In re Denbury Resources Inc.*, Case No. 20-33801, *In re Hornbeck Offshore Services, Inc.*, Case No. 20-32679, *In re iQor Holdings Inc.*, Case No. 20-34500, *In re Jones Energy Inc.*, Case No. 19-32112, *In re LaForta -*

*Gestao e Investmentos*, Case No. 22-90126, *In re McDermott International Inc.,* Case No. 20-30336, *In re Seadrill New Finance Limited,* Case No. 22-90001, *In re Sheridan Holding Company I, LLC,* Case No. 20-31884 and *In re Volusion, LLC,* Case No. 20-50082.

**RESPONSE:**

29.     Identify the members of Jackson Walker's compensation committee for each year of the Applicable Period.

**RESPONSE:**

## CASE SPECIFIC INTEROGATORIES

### *In re Sanchez Energy Corporation*, Case No. 19-34508

30.     Identify all Persons that suggested that parties engage in mediation.

**RESPONSE:**

31.     Identify all potential mediators that were suggested by any party.

**RESPONSE:**

32.     Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**RESPONSE:**

33.     Identify all Persons that attended any mediation.

**RESPONSE:**

34.     Identify the location of where any mediation occurred.

**RESPONSE:**

35.     Describe in detail how the location of any mediations were selected.

**RESPONSE:**

36.     Identify all dates, times, and places that any aspect of any mediation occurred.

**RESPONSE:**

37.     Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**RESPONSE:**

38.     Describe in detail how any mediation expenses were allocated between the parties.

**<u>RESPONSE:</u>**




39.     Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**<u>RESPONSE:</u>**

___*In re GWG Holdings Inc.*___**, Case No. 22-90032**

40.     Identify all Persons that suggested that parties engage in mediation.

**RESPONSE:**

41.     Identify all potential mediators that were suggested by any party.

**RESPONSE:**

42.     Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**RESPONSE:**

43.     Identify all Persons that attended any mediation.

**RESPONSE:**

44.     Identify the location of where any mediation occurred.

**RESPONSE:**

45.     Describe in detail how the location of any mediations was selected.

**RESPONSE:**

46.     Identify all dates, times, and places that any aspect of any mediation occurred.

**RESPONSE:**

47.     Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

 **RESPONSE:**

48.     Identify all dates and times that any aspect of any mediation occurred.

**RESPONSE:**

49.     Describe in detail how any mediation expenses were allocated between the parties.

**RESPONSE:**

50.     Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**RESPONSE:**

51.     Identify any Person that suggested that Freeman be employed as the wind-down trustee.

**<u>RESPONSE:</u>**

<u>*In re HONX, Inc.*</u><u>, Case No.  22-90035</u>

52.     Identify all Persons that suggested that parties engage in mediation.

**<u>RESPONSE:</u>**


53.     Identify all potential mediators that were suggested by any party.

**<u>RESPONSE:</u>**


54.     Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**<u>RESPONSE:</u>**


55.     Identify all Persons that attended any mediation.

**<u>RESPONSE:</u>**


56.     Identify the location of where any mediation occurred.

**<u>RESPONSE:</u>**


57.     Describe in detail how the location of any mediations were selected.

**<u>RESPONSE:</u>**

58.     Identify all dates, times, and places that any aspect of any mediation occurred.

**RESPONSE:**


59.     Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**RESPONSE:**


60.     Identify all dates and times that any aspect of any mediation occurred.

**RESPONSE:**


61.     Describe in detail how any mediation expenses were allocated between the parties.

**RESPONSE:**


62.     Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**RESPONSE:**

_**In re Altera Infrastructure LP**_, **Case No.  22-90130**

63.     Identify all Persons that suggested that parties engage in mediation.

**RESPONSE:**

64.     Identify all potential mediators that were suggested by any party.

**RESPONSE:**

65.     Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**RESPONSE:**

66.     Identify all Persons that attended any mediation.

**RESPONSE:**

67.     Identify the location of where any mediation occurred.

**RESPONSE:**

68.     Describe in detail how the location of any mediations were selected.

**RESPONSE:**

69.     Identify all dates, times, and places that any aspect of any mediation occurred.

**RESPONSE:**

70.     Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**RESPONSE:**

71.     Identify all dates and times that any aspect of any mediation occurred.

**RESPONSE:**

72.     Describe in detail how any mediation expenses were allocated between the parties.

**RESPONSE:**

73.     Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**RESPONSE:**

_**In re IEH Auto Parts Holding LLC**_**, Case No. 23-90054**

74.     Identify all Persons that suggested that parties engage in mediation.

**RESPONSE:**

75.     Identify all potential mediators that were suggested by any party.

**RESPONSE:**

76.     Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**RESPONSE:**

77.     Identify all Persons that attended any mediation.

**RESPONSE:**

78.     Identify the location of where any mediation occurred.

**RESPONSE:**

79.     Describe in detail how the location of any mediations were selected.

**RESPONSE:**

80.     Identify all dates, times, and places that any aspect of any mediation occurred.

**RESPONSE:**

81.     Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**RESPONSE:**

82.     Identify all dates and times that any aspect of any mediation occurred.

**RESPONSE:**

83.     Describe in detail how any mediation expenses were allocated between the parties.

**RESPONSE:**

84.     Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**RESPONSE:**

_**In re EXCO Resources, Inc.**_**, Case No. 18-30155**

85.    Identify all Persons that suggested that parties engage in mediation.

**RESPONSE:**

86.    Identify all potential mediators that were suggested by any party.

**RESPONSE:**

87.    Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**RESPONSE:**

88.    Identify all Persons that attended any mediation.

**RESPONSE:**

89.    Identify the location of where any mediation occurred.

**RESPONSE:**

90.    Describe in detail how the location of any mediations were selected.

**RESPONSE:**

91.     Identify all dates, times, and places that any aspect of any mediation occurred.

**RESPONSE:**

92.     Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**RESPONSE:**

93.     Identify all dates and times that any aspect of any mediation occurred.

**RESPONSE:**

94.     Describe in detail how any mediation expenses were allocated between the parties.

**RESPONSE:**

95.     Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**RESPONSE:**

*In re Tailored Brands, Inc.*, Case No. 20-33900

96.    Identify all Persons that suggested that parties engage in mediation.

**RESPONSE:**

97.    Identify all potential mediators that were suggested by any party.

**RESPONSE:**

98.    Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**RESPONSE:**

99.    Identify all Persons that attended any mediation.

**RESPONSE:**

100.    Identify the location of where any mediation occurred.

**RESPONSE:**

101.    Describe in detail how the location of any mediations were selected.

**RESPONSE:**

102.    Identify all dates, times, and places that any aspect of any mediation occurred.

**<u>RESPONSE:</u>**

103.    Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**<u>RESPONSE:</u>**

104.    Identify all dates and times that any aspect of any mediation occurred.

**<u>RESPONSE:</u>**

105.    Describe in detail how any mediation expenses were allocated between the parties.

**<u>RESPONSE:</u>**

106.    Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**<u>RESPONSE:</u>**

Sign the attached Verification and return it with Respondent's answers to the foregoing Interrogatories. The signature of Respondent's counsel is **not** acceptable.

Date: May 15, 2024

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: _____

Millie Aponte Sall
Assistant U.S. Trustee
Tex. Bar No. 01278050/Fed. ID No. 11271
515 Rusk, Suite 3516
Houston, Texas 77002
(713) 718-4650 – Telephone
(713) 718-4670 – Fax
Email: millie.sall@usdoj.gov

## **<u>VERIFICATION</u>**

I, _____, declare under penalty of perjury, pursuant to

28 U.S.C. § 1746, that I have read the foregoing *Answer of Jackson Walker LLP to the United*

*States Trustee's First Set of Interrogatories to Jackson Walker LLP* and know the contents thereof.

I hereby certify and verify that the foregoing responses are true and correct to the best of my

knowledge, information, and belief.


Dated: _____                    _____

                                                          (Signature)

## CERTIFICATE OF SERVICE

I, Jennifer Toth, declare under penalty of perjury under the laws of the United States of America that I served a true and correct copy of the **(1) The United States Trustee's First Set Of Requests For Documents and (2) The United States Trustee's First Set Of Interrogatories** to the following individuals via email:

Paul Trahan at paul.trahan@nortonrosefulbright.com
Jason Boland at Jason.boland@nortonrosefulbright.com
Emily Wolf at emily.wolf@nortonrosefulbright.com

Dated: May 15, 2024

_____
Jennifer Toth, Auditor



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: § § § | Case No. 23-00645 (EVR) |
| **Professional Fee Matters Concerning the** § **Jackson Walker Law Firm** § § § | |

### JACKSON WALKER LLP'S OBJECTIONS AND RESPONSES TO THE
### U.S. TRUSTEE'S FIRST SET OF INTERROGATORIES

TO:   Kevin M. Epstein, United States Trustee for Region 7, by and through his counsel of record, Laura D. Steele, Pat S. Layng, Millie Aponte Sall, Aubrey L. Thomas, Vianey Garza, and Alicia Barcomb, 515 Rusk, Suite 3516, Houston, Texas 77002.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules"), Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Jackson Walker LLP ("JW"), by its undersigned counsel, hereby responds and objects (the "Responses and Objections") to the *U.S. Trustee's First Set of Interrogatories* (the "Interrogatories", and each, an "Interrogatory") served on May 15, 2024, by the United States Trustee (the "U.S. Trustee").[1]

*[Remainder of Page Intentionally Left Blank]*

---

[1] The deadline to respond and object to these Interrogatories was extended by agreement with the U.S. Trustee to June 24, 2024.

Dated: June 24, 2024

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
William R. Greendyke (SBT 08390450)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Email: jason.boland@nortonrosefulbright.com
Email: william.greendyke@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

Paul Trahan(SBT 24003075)
Emily Wolf (SBT 24106595)
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
Email: paul.trahan@nortonrosefulbright.com
Email: emily.wolf@nortonrosefulbright.com

-and-

**RUSTY HARDIN & ASSOCIATES, LLP**

Russell Hardin, Jr. (SBT 08972800)
Leah M. Graham (SBT 24073454)
Jennifer E. Brevorka (SBT 24082727)
Emily Smith (SBT 24083876)
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Email: rhardin@rustyhardin.com
Email: lgraham@rustyhardin.com
Email: jbrevorka@rustyhardin.com

*Counsel for Jackson Walker LLP*

201720483

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of Jackson Walker LLP's Responses and Objections to the U.S. Trustee's Interrogatories was served in compliance with the Federal Rules of Civil Procedure on June 24, 2024, on the following counsel via e-mail:

**OFFICE OF THE UNITED STATES TRUSTEE, REGION 7:**
Laura D. Steele (Laura.Steele@usdoj.gov)
Pat S. Layng (Pat.S.Layng@usdoj.gov)
Millie Aponte Sall (Millie.sall@usdoj.gov)
Aubrey L. Thomas (Aubrey.thomas@usdoj.gov)
Vianey Garza (Vianey.Garza@usdoj.gov)
Alicia Barcomb (Alicia.barcomb@usdoj.gov)


*/s/ Emily Wolf*
Emily Wolf

201720483

## PRELIMINARY STATEMENT

JW's Responses and Objections to the Interrogatories are based on its present knowledge, upon a reasonable inquiry.  Discovery is ongoing, and JW's investigation continues.  JW reserves the right to supplement, alter, amend, and correct its Responses and Objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

## GENERAL OBJECTIONS

These General Objections are incorporated into each specific answer to the Interrogatories below as if they were fully repeated therein and will not be specifically repeated or referenced in each such answer. JW reserves the right to assert additional objections as necessary and/or appropriate.

1.      JW objects to the Interrogatories to the extent they call for information or material protected by the attorney-client privilege, the work product doctrine, mediation privilege, or any other applicable privilege, doctrine, or immunity.

2.      JW objects to the Interrogatories to the extent they are beyond the scope of permissible discovery, seek information that is not relevant to any party's claim or defense in these proceedings, and/or are not proportional to the needs of these proceedings.

3.      JW objects to the Interrogatories, the definitions, and the instructions to the extent they purport to impose on JW any requirement beyond or inconsistent with the Federal Rules, the Bankruptcy Rules, the Local Rules, or any other applicable rule or court order.

4.      JW objects to the Interrogatories to the extent they are unduly burdensome and/or duplicative. JW reserves the right to seek appropriate relief from Interrogatories that are unduly burdensome and/or unreasonably duplicative.

5.      JW objects to the Interrogatories in their entirety as the Interrogatories in aggregate contain more than the "25 written interrogatories, including all discrete subparts," as permitted by Federal Rule of Civil Procedure 33(a), and the U.S. Trustee has not sought leave to serve additional Interrogatories.  Notwithstanding this objection, given the number of cases in which the U.S. Trustee has filed motions against JW and the consolidation of discovery in this Miscellaneous Proceeding for discovery and pre-trial purposes, JW will provide Responses and Objections to each Interrogatory propounded in the *U.S. Trustee's First Set of Interrogatories* but will refuse to provide Responses and Objections to additional Interrogatories absent an agreement with the U.S. Trustee or Court order.

6.      JW's answer to any Interrogatory is not intended to be and should not be construed as an acknowledgement that the requested information is relevant to the subject matter of these proceedings. By responding to these Interrogatories, JW does not waive, but instead expressly reserves, any and all objections to the admission of these Interrogatory Responses into evidence, at hearings, trial, or otherwise.

7.      JW objects to the definition of "Describe in detail" as unduly burdensome because the level of detail requested may not be possible to provide where there is not documentary

201720483

information upon which to rely or is not attainable following a reasonable inquiry.  Subject to and without waiving JW's objection, JW will make a reasonable effort to provide information related to "facts, times, dates, individuals involved, circumstances, analysis, opinion, and other information relating to the subject matter of an Interrogatory" in its Responses to the Interrogatories.

8.      JW objects to the definition of "Freeman" as overbroad, unduly burdensome, and not proportional to the needs of these proceedings in that it includes "each past and present agent, representative, attorney, expert, insurer, executor, administrator of Elizabeth Freeman, or anyone acting on her behalf" and therefore seeks information that is neither relevant to the claims or defenses nor proportional to the needs of these proceedings.  JW further objects to this definition because it includes entities and persons outside JW's legal or practical control.  JW will only provide information in response to an Interrogatory if the information is in JW's possession, custody, or control.

9.      JW objects to the definition of "Holland and Knight" as overbroad, unduly burdensome, and not proportional to the needs of these proceedings in that it includes "each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual" and therefore seeks information that is neither relevant to the claims or defenses nor proportional to the needs of these proceedings.  JW further objects to this definition because it includes entities and persons outside JW's legal or practical control.   JW will only provide information in response to an Interrogatory if the information is in JW's possession, custody, or control.

10.      JW objects to the definition of "Jackson Walker" on the grounds that the definition includes JW's attorneys and, therefore, improperly seeks information protected by the attorney-client privilege, the work product doctrine, mediation privileges, or any other applicable privileges or immunities.  JW further objects to this definition as unduly burdensome because it requires JW to have an unreasonably detailed and perfect knowledge of "each" of the "independent contractors," "agents," and "servants" of JW.  JW objects to this definition to the extent that it would require JW to provide information regarding entities that JW does not have the legal right to control.

11.      JW objects to the definition of "Kirkland" as overbroad, unduly burdensome, and not proportional to the needs of these proceedings in that it includes "each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual" and therefore seeks information that is neither relevant to the claims or defenses nor proportional to the needs of these proceedings.  JW further objects to this definition because it includes entities and persons outside JW's legal or practical control.  JW will only provide information in response to an Interrogatory if the information is in JW's possession, custody, or control.

12.      JW objects to the definition of "Relationship" as overbroad because it encompasses any conceivable relationship between Ms. Freeman and former Judge David R. Jones, regardless of whether the U.S. Trustee contends it would have required disclosure under the Bankruptcy Code or any other applicable rules. JW will interpret "Relationship" to mean a relationship between Ms.

5

Freeman and former Judge Jones that was intimate, financial, fiduciary, cohabitating, romantic, or sexual.

13.     JW objects to the definition of "Relevant Cases" to the extent it includes cases in which the U.S. Trustee has not sought relief.  This includes *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), *In re Candy Club LLC* (Case No. 23-60048), and *In re QualTek Services Inc*. (Case No. 23-90584).  JW will limit the definition of "Relevant Cases" to each case listed on Exhibit 6 to the *United States Trustee's Amended and Supplemental Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed in the Relevant Cases.

## SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

Each of the specific objections and answers below is asserted subject to and without waiving any of the General Objections set forth above. JW specifically responds and objects to the Interrogatories as follows:

**INTERROGATORY NO. 1:**    Identify all Persons having knowledge about the following topics, and, with respect to each such Person, describe in detail the knowledge that Person has about the topic:

(a)     Jackson Walker's ethical training policies and procedures;

(b)     Jackson Walker's working relationship with Kirkland;

(c)     The Relationship;

(d)     Jackson Walker's engagement of Holland & Knight in connection with the Relationship;

(e)     Freeman's separation from Jackson Walker;

(f)     The calculation of any of Freeman's Compensation;

(g)     The referral of any matters by Jackson Walker to Freeman or the Law Office of Liz Freeman; and

(h)     The Van Deelen Litigation.

**ANSWER:**    JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine.  JW additionally objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1).  Specifically, this Interrogatory is overbroad, unduly burdensome, and not proportional to the needs of these proceedings because it

purports to require JW to identify all persons—regardless of whether they are associated with JW in any way—who have any knowledge whatsoever about a series of overbroad and irrelevant topics (*e.g.*, "Jackson Walker's working relationship with Kirkland") and to describe in detail all knowledge that such persons have. JW will limit its answers in this Interrogatory to identification of past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW refers the U.S. Trustee to JW's Initial Disclosures served on the U.S. Trustee on March 1, 2024, the *Preliminary Response of Jackson Walker to Recent Filings by the Office of the United States Trustee* filed on November 13, 2023, and JW's *Response in Opposition to the Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed on May 22, 2024, all of which are adopted and incorporated herein by reference. JW further responds as follows: (a) all current and former lawyers at JW; (b) Matthew Cavenaugh, Liz Freeman, Veronica Polnick, Genevieve Graham, Kristhy Peguero, Vienna Anaya, Jennifer Wertz, Rebecca Chaikin, Patty Tomasco, Barbara Howell, Victoria Argeroplos, Zachary McKay, Cameron Secord, Emily Flynn Meraia, Beau Butler, Javier Gonzalez, Maha Ghyas, Machir Stull, Aaron Lozano, Will Farmer, Courtney Cameron, and Kendra Gradney; (c) Liz Freeman, Pat Cowlishaw, William Jenkins, Wade Cooper, Matt Dow, Jay Rutherford, Julia Mann, Pryia Coffee, Mike Taten, Ross Forbes, Debbie Robinowitz, Julie Lewis, Matthew Cavenaugh, and Bruce Ruzinsky; (d) Wade Cooper, Pat Cowlishaw, William Jenkins, Julie Lewis, Matthew Cavenaugh, and Bruce Ruzinsky; (e) Liz Freeman, Pat Cowlishaw, William Jenkins, Julie Lewis, Chip Babcock, Amy Baird, Alden Crow, Suzan Kedron, Brad Knippa, Virginia Mimmack, Vytas Petrulis, Michelle Moore Smith, Bruce Ruzinsky, Matthew Cavenaugh, Wade Cooper, Matt Dow, Julia Mann, Pryia Coffey, Mike Taten, Ross Forbes, Debbie Robinowitz, and Jay Rutherford; (f) Liz Freeman, Pat Cowlishaw, William Jenkins, Julie Lewis, Wade Cooper, Chip Babcock, Rick Dahlson, Matt Dow, Brad Knippa, Retta Miller, David Moran, Kurt Nondorf, Vytas Petrulis, Mike Taten, Amy Baird, Scott Rose, Ross Forbes, Debbie Robinowitz, Priya Coffey, Michelle Moore Smith, Virginia Mimmack, Suzan Kedron and Jeremy Brewer; (g) Matthew Cavenaugh, Liz Freeman, Veronica Polnick, Genevieve Graham, Kristhy Peguero, Jennifer Wertz, and Rebecca Chaikin; and (h) with respect to the adversary proceeding captioned *Michael Van Deelen v. David Dickson, et al.*, Adv. No. 20-03309, Matthew Cavenaugh, Liz Freeman, Bruce Ruzinsky, Pat Cowlishaw, William Jenkins, Julie Lewis, Wade Cooper, Matt Dow, Julia Mann, Pryia Coffey, Mike Taten, Ross Forbes, Debbie Robinowitz, Jay Rutherford, Veronica Polnick, Genevieve Graham, Kristhy Peguero, Victoria Argeroplos, and Kendra Gradney.

**INTERROGATORY NO. 2:** Describe in detail all training that Jackson Walker provided to Freeman after she was hired, including training related to connections, disqualifying circumstances and/or conflict checks and all legal ethics.

**ANSWER:** JW objects to this Interrogatory because it is overbroad and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it requires JW to give a detailed description of any and all training ever provided to Ms. Freeman, regardless of whether the training in question has any relation to the issues to be decided in this matter.

7

Subject to and without waiving the foregoing objections, JW responds as follows: JW provided Ms. Freeman with access to JW's Attorney Sourcebook and training programs, including training related to data security, continuing legal education, and ethics presentations. Additionally, all attorneys at JW, including Ms. Freeman, are presumed to know and follow the law and their ethical obligations under applicable law, including ethical or legal obligations regarding connections, disqualifying circumstances, conflict checks, and/or legal ethics. Like all attorneys at JW, Ms. Freeman was also expected to meet all annual CLE and ethics requirements as mandated by the Texas State Bar.

**INTERROGATORY NO. 3:**  Describe in detail Jackson Walker's process used to determine whether connections, disqualifying circumstances and/or conflicts existed in all potential, new or existing engagements, including fulfilling its obligation to file all declarations and supplemental declarations as required by Bankruptcy Rule 2014(a).

**ANSWER:**  JW objects to this Interrogatory because it is overbroad and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it requires JW to describe its process in "all potential, new or existing engagements" without regard as to whether such engagements are governed by the Bankruptcy Rules or Bankruptcy Code or require disclosures of connections or conflicts, and regardless of whether or not they relate to any Relevant Case.

Subject to and without waiving the foregoing objections, JW responds as follows: JW maintains a client and conflicts database to screen potential conflicts of interest. In conjunction with the client database, JW maintains a computer software system that enables a user to input the name of a party or parties, search the database, generate a report for review of a client hit, and research any parties that JW currently represents or has represented in the past in order to determine JW's connections. Conflicts are reported through individual attorney responses to the conflict check, as each individual attorney at JW is expected to timely review all parties run through the system for conflicts or connections, information that is updated daily.

JW relies on the experience and expertise of the bankruptcy practice group to identify any information that is subject to disclosure requirements and also runs supplemental conflict and connections checks in lockstep with its co-counsel, if any, or during a transition phase of a case (such as a sale transaction, claim objections, or other transitions).

JW follows these procedures in each of its bankruptcy engagements where it is employed under sections 327 or 328 of the Bankruptcy Code.

**INTERROGATORY NO. 4:**  Describe in detail all Jackson Walker's efforts and actions taken to determine disqualifying circumstances and/or conflicts in the Relevant Cases.

**ANSWER:**  JW followed the procedures set forth in its Answer to Interrogatory No. 3 in each of the Relevant Cases.

**INTERROGATORY NO. 5:**  Provide the names of all cases in which Jackson Walker made any disclosures about any relationship between Jackson Walker and any members of the judiciary in any case filed in the Bankruptcy Court for the Southern District of Texas.

8

**ANSWER:** JW objects to this Interrogatory because it is overbroad and unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it assumes a requirement that JW disclose "relationships" with members of the judiciary where no such requirement is imposed on JW under the applicable rules and law. JW further objects to this Interrogatory as overbroad, unduly burdensome, and irrelevant because it seeks information that is unrelated to any of the Relevant Cases. JW further objects to this Interrogatory to the extent that it would require JW to search through publicly available filings which are equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: *In re Akumin Inc.*, *et al.*, Case No. 23-90827.

**INTERROGATORY NO. 6:** Describe in detail all information that Jackson Walker received relating to the Relationship at any time prior to October 7, 2023.

**ANSWER:** JW objects to this Interrogatory as overbroad and not proportional to the needs of these proceedings to the extent that it requests information received outside the Applicable Period.

Subject to and without waiving the foregoing objections, JW refers the U.S. Trustee to the *Preliminary Response of Jackson Walker to Recent Filings by the Office of the United States Trustee* filed on November 13, 2023, and JW's *Response in Opposition to the Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed on May 22, 2024, both of which are incorporated herein by reference. JW further responds as follows: On Saturday, March 6, 2021, allegations of a possible intimate relationship between former Judge Jones and Ms. Freeman first became known to JW. Pro se litigant Michael Van Deelen raised these allegations in an email to Matthew Cavenaugh in connection with his effort to recuse former Judge Jones from the McDermott bankruptcy proceedings. Mr. Van Deelen asserted that he had received an anonymous letter claiming former Judge Jones and Ms. Freeman were in an intimate relationship. Upon receiving the March 6, 2021 email, JW discussed the allegations with Ms. Freeman. At that time, Ms. Freeman acknowledged the existence of a prior romantic relationship with former Judge Jones before the COVID-19 pandemic (i.e., sometime prior to March 2020), but stated that such romantic relationship was well in the past and was not ongoing. Ms. Freeman told a representative of the firm that she had not even seen former Judge Jones since before the onset of the pandemic, a year earlier.

Following the 2021 allegations and Ms. Freeman's explanation of the facts, Ms. Freeman continued to affirm that the romantic relationship was in the past. Ms. Freeman also stated that she did not and had not lived with Judge Jones. These facts were presented to Ms. Freeman in or around August 2021 in a draft letter, which she was asked to review. Ms. Freeman reviewed and reported that she had no changes. JW did not receive any other information relating to Ms. Freeman's and former Judge Jones's relationship until February 2022. On February 1, 2022, at a dinner between a JW non-bankruptcy partner and his friend, the friend volunteered that Ms. Freeman and former Judge Jones were living together.

9

JW's management concluded that they would again confront Ms. Freeman directly.  Due to Ms. Freeman's children's Spring Break schedules and related vacation and college trips, JW confronted Ms. Freeman in late March 2022. At that meeting, Ms. Freeman once more denied the existence of any current, intimate relationship with former Judge Jones, and stated that the alleged new facts related to an earlier time period.

On March 30, 2022, the day after JW confronted Ms. Freeman about the new allegations a second time, Ms. Freeman finally admitted that she and former Judge Jones had rekindled their relationship. Ms. Freeman continued, however, to deny that she and former Judge Jones were living together and she never mentioned the co-ownership of residential property.

**INTERROGATORY NO. 7:**    Describe in detail all communications between Freeman and Jackson Walker relating to the Relationship.

**ANSWER:**    JW objects to this Interrogatory as unduly burdensome to the extent that it requires JW to list each time, date, individual involved, and other information related to "all communications" between Ms. Freeman and JW relating to the Relationship during the Applicable Period.  Subject to and without waiving the foregoing objections, JW will produce all relevant, non-privileged communications between Freeman and JW relating to the Relationship and will provide below a general description of the communications between Ms. Freeman and JW relating to the Relationship.   JW also refers the U.S. Trustee to JW's *Preliminary Response of Jackson Walker by the Office of the United States Trustee* filed on November 13, 2023, and JW's *Response in Opposition to the Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed on May 22, 2024, both of which are adopted and incorporated herein by reference.

Upon receiving the anonymous letter on March 6, 2021, JW discussed the allegations with Ms. Freeman. At that time, Ms. Freeman acknowledged the existence of a prior romantic relationship with former Judge Jones before the COVID-19 pandemic (i.e., sometime prior to March 2020) but stated that such romantic relationship was well in the past and was not ongoing. Indeed, Ms. Freeman told a representative of the firm that she had not even seen former Judge Jones since before the onset of the pandemic, a year earlier.  JW took additional steps and advised Ms. Freeman that she could not work on any matters that were assigned to former Judge Jones, and JW informed Ms. Freeman that the firm would deduct from her compensation any share of the firm's net income generated for bankruptcy work performed on behalf of clients in matters that were pending before former Judge Jones in light of this past relationship. In August 2021, JW's general counsel presented Ms. Freeman with a draft letter that outlined the relevant facts known by JW following its discussion with Ms. Freeman; namely, JW understood: (a) Ms. Freeman and former Judge Jones were and remained close personal friends; (b) former Judge Jones precluded Ms. Freeman from appearing personally in his court for six years (*i.e.*, the length of Ms. Freeman's clerkship); (c) the draft letter outlined the claims and allegations raised by Mr. Van Deelen; and (d) while there existed a romantic relationship between Ms. Freeman and former Judge Jones at some time prior to March 2020, that relationship had ended and there was no ongoing romantic relationship, nor was any romantic relationship expected going forward. The draft letter also stated that former Judge Jones and Ms. Freeman each own their own homes and do not and have not lived together. The draft letter informed Ms. Freeman of JW's view that an ongoing intimate

10

relationship with former Judge Jones (as opposed to an intimate relationship that had terminated in the past) would be incompatible with JW's continued participation in cases before former Judge Jones.  JW requested that Ms. Freeman review the letter to ensure its accuracy.  By email dated August 27, 2021, Ms. Freeman acknowledged that the statements in the letter were accurate.

After learning in February 2022 about Ms. Freeman's ongoing relationship with former Judge Jones, JW confronted Ms. Freeman in March 2022.  At that meeting, Ms. Freeman once more denied the existence of any current, intimate relationship with former Judge Jones, and stated that the alleged new facts related to an earlier time period.  JW subsequently pressed Ms. Freeman for answers, and she refused to confirm the existence of a current intimate relationship with former Judge Jones.

It was not until March 30, 2022 that Ms. Freeman admitted to Mr. Cavenaugh, Mr. Ruzinsky, and Mr. Cooper that she and former Judge Jones had rekindled their relationship.  However, Ms. Freeman continued to deny that she and former Judge Jones were living together and never mentioned the co-ownership of residential property. JW again informed Ms. Freeman that she could not work on any cases pending in former Judge Jones's court, and JW removed her share of partnership profits from cases in front of former Judge Jones which resulted in a retroactive reduction in Ms. Freeman's compensation of approximately $46,373 for 2021 and $32,595 through November 2022.

On or around June 2022, JW informed Ms. Freeman and her counsel that JW believed Ms. Freeman's departure from the law firm was the only path forward.  The parties then discussed the terms of Ms. Freeman's separation and JW encouraged Ms. Freeman to look for employment. Over the following months, JW, Ms. Freeman, and her counsel negotiated the terms of Ms. Freeman's exit while she continued seeking other employment.  On October 28, 2022, JW provided to Ms. Freeman a draft Confidential Withdrawal Agreement.  Ms. Freeman executed the Withdrawal Agreement on November 29, 2022, effective as of December 1, 2022.

**INTERROGATORY NO. 8:**    Describe in detail all investigations or inquiries JW conducted relating to the Relationship.

**ANSWER:**    JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiving the foregoing objections, JW responds as follows: JW refers the U.S. Trustee to the answers provided in response to Interrogatories Nos. 6, 7, & 10, which are adopted and incorporated hereby by reference.  JW further refers the U.S. Trustee to the *Preliminary Response of Jackson Walker to Recent Filings by the Office of the United States Trustee* filed on November 13, 2023, and *Jackson Walker LLP's Response in Opposition to the United States Trustee's Amended and Supplemental Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed on May 22, 2024 in the Relevant Cases, both of which are adopted and incorporated herein by reference.  *See e.g.*, *In re Chesapeake Exploration, L.L.C.,* Case No. 20-33239 (CML) [Dkt. No. 625] (Bankr. S.D. Tex. May 22, 2024).

**INTERROGATORY NO. 9:**     Identify all individuals involved in any investigation of the Relationship and/or in the decision of what actions to take relating to the Relationship in the Relevant Cases.

**ANSWER:**     JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all individuals— regardless of whether they are associated with JW in any way—who were involved in any investigation of the Relationship and/or in the decision of what actions to take relating to the Relationship.

Subject to and without waiving the foregoing objections, JW refers the U.S. Trustee to JW's Initial Disclosures served on the U.S. Trustee on March 1, 2024, the *Preliminary Response of Jackson Walker to Recent Filings by the Office of the United States Trustee* filed on November 13, 2023, and *Jackson Walker LLP's Response in Opposition to the United States Trustee's Amended and Supplemental Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed on May 22, 2024 in the Relevant Cases, all of which are adopted and incorporated herein by reference. JW further responds as follows: Wade Cooper, Matt Dow, Julia Mann, Pryia Coffey, Mike Taten, Ross Forbes, Debbie Robinowitz, Jay Rutherford, Pat Cowlishaw, William Jenkins, Bruce Ruzinsky, Matthew Cavenaugh, Chip Babcock, and Liz Freeman.  JW also identifies Peter Jarvis, Tom Kirkendall, Jacqueline Harvey, and former Judge Jones as other individuals not affiliated with JW.

**INTERROGATORY NO. 10:**   Describe in detail all decisions Jackson Walker made or actions Jackson Walker took regarding the Relationship.

**ANSWER:**     JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiving the foregoing objections, JW responds as follows: Upon learning about Ms. Freeman's past relationship in March 2021, JW consulted with outside counsel, Peter Jarvis of Holland & Knight.  The details of those discussions, any decisions, and/or actions made or taken are privileged.  JW took the additional step of instructing Ms. Freeman that she could not work on any matters that were assigned to former Judge Jones, and JW informed Ms. Freeman that the firm would deduct from her compensation any share of the firm's net income generated for bankruptcy work performed on behalf of clients in matters that were pending before former Judge Jones in light of this past relationship. As described above, JW presented Ms. Freeman with a draft letter with the relevant facts. Ms. Freeman reviewed the letter and confirmed its contents.  Upon learning in February 2022 that Ms. Freeman's relationship with former Judge Jones was ongoing, JW's management confronted Ms. Freeman on March 28, 2022.  At that meeting, Ms. Freeman once more denied the existence of any current, intimate relationship with former Judge Jones, and stated that the alleged new facts related to an earlier time period. Soon thereafter, Ms. Freeman finally admitted that she and former Judge Jones had rekindled their

relationship. However, Ms. Freeman continued to deny that she and former Judge Jones were living together and never mentioned the co-ownership of residential property. JW again informed Ms. Freeman that she could not work on any cases pending in former Judge Jones's court, and JW removed her share of partnership profits from cases in front of former Judge Jones which resulted in a retroactive reduction in Ms. Freeman's compensation of approximately $46,373 for 2021 and $32,595 through November 2022. JW also again engaged Mr. Jarvis. After numerous discussions with Ms. Freeman and her counsel, JW decided to part ways with Ms. Freeman. The parties then discussed the terms of Ms. Freeman's separation, and JW encouraged Ms. Freeman to seek employment elsewhere. Over the following months, JW, Ms. Freeman, and her counsel negotiated the terms of Ms. Freeman's exit while she continued seeking other employment. A draft Confidential Withdrawal Agreement was provided to Ms. Freeman on October 28, 2022.

In further response to this Interrogatory, JW refers the U.S. Trustee to the *Preliminary Response of Jackson Walker to Recent Filings by the Office of the United States Trustee* filed on November 13, 2023 and *Jackson Walker LLP's Response in Opposition to the United States Trustee's Amended and Supplemental Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed in the Relevant Cases, both of which are adopted and incorporated herein by reference. *See, e.g.*, *In re Chesapeake Exploration, L.L.C.,* Case No. 20-33239 (CML) [Dkt. No. 625] (Bankr. S.D. Tex. May 22, 2024).

**INTERROGATORY NO. 11:**   Identify all consultants, attorneys, legal professionals, or law firms that Jackson Walker contacted or engaged regarding the Relationship.

**ANSWER:**   JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiving the foregoing objections, JW engaged Peter Jarvis and Jacqueline Harvey of Holland & Knight as outside counsel for JW. JW also contacted Tom Kirkendall. JW also contacted Kirkland in respect of the adversary proceeding captioned *Michael Van Deelen v. David Dickson, et al.*, Adv. No. 20-03309.

**INTERROGATORY NO. 12:**   Identify all materials (including legal authority) relied on by Jackson Walker in determining what actions to take relating to the Relationship.

**ANSWER:**   JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiving the foregoing objections, JW responds as follows: the United States Code and decisions related thereto (including the federal judicial disqualification statute); the Code of Conduct for United States Judges and decisions related thereto; the Bankruptcy Code and Bankruptcy Rules and decisions related thereto; and the Texas Disciplinary Rules of Professional Conduct.

**INTERROGATORY NO. 13:** Identify all individuals whom Jackson Walker informed about the Relationship before October 7, 2023.

**ANSWER:** JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Interrogatory as vague and ambiguous with respect to the word "informed" as JW still lacks knowledge on the precise nature of any relationship, past or present, between Ms. Freeman and former Judge Jones and therefore could not have "informed" any individual regarding such relationship.

Subject to and without waiving the foregoing objections, JW discussed allegations regarding a relationship between Ms. Freeman and former Judge Jones with Ms. Freeman, former Judge Jones, Peter Jarvis, Jacqueline Harvey, Tom Kirkendall, Anna Rotman, and Jamie Aycock. JW further filed documents containing allegations of a relationship with the Bankruptcy Clerk, which documents were sealed by former Judge Jones and the subject of hearings before Judge Marvin Isgur and Judge Andrew Hanen.

In further response to this Interrogatory, JW refers the U.S. Trustee to JW's Response to Interrogatory No. 9, which response is adopted and incorporated herein.

**INTERROGATORY NO. 14:** Identify all individuals at Jackson Walker who knew about the Relationship before October 7, 2023.

**ANSWER:** JW objects to this Interrogatory as vague and ambiguous with respect to the word "knew" as JW still lacks knowledge on the precise nature of any relationship, past or present, between Ms. Freeman and former Judge Jones.

Subject to and without waiving the foregoing objections, JW responds that the following individuals at JW had information regarding allegations of a relationship prior to October 7, 2023: Pat Cowlishaw, William Jenkins, Julie Lewis, Chip Babcock, Amy Baird, Alden Crow, Suzan Kedron, Brad Knippa, Virginia Mimmack, Vytas Petrulis, Michelle Moore Smith, Bruce Ruzinsky, Matthew Cavenaugh, Wade Cooper, Matt Dow, Julia Mann, Pryia Coffey, Mike Taten, Ross Forbes, Debbie Robinowitz, and Jay Rutherford. JW is still conducting discovery and will supplement its answer to this Interrogatory if additional individuals at JW are identified.

**INTERROGATORY NO. 15:** As referenced in the Preliminary Response, describe in detail the facts surrounding Jackson Walker's disclosure of the Relationship to Kirkland and any other lead or co-counsel.

**ANSWER:** JW objects to this Interrogatory as vague and ambiguous with respect to the word "disclosure" as JW still lacks knowledge on the precise nature of any relationship, past or present, between Ms. Freeman and former Judge Jones and therefore could not have "disclosed" such relationship to Kirkland or any other lead or co-counsel.

Subject to and without waiving the foregoing objections, JW responds as follows: After receiving the March 6, 2021 anonymous letter from Mr. Van Deelen, Matthew Cavenaugh called Anna Rotman of Kirkland & Ellis, who was co-counsel in the Van Deelen adversary proceeding to make her aware of the letter.

14

**INTERROGATORY NO. 16:**   Describe in detail all actions Jackson Walker took in response to or in compliance with any communications from Holland & Knight regarding the Relationship.

**ANSWER:**   JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine.

**INTERROGATORY NO. 17:**   Describe in detail how Jackson Walker was managed, including its organizational hierarchy and the identity of the members of any management committee.

**ANSWER:**   JW objects to this Interrogatory because it is overbroad and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it requests information regarding the Management Committee, its structure, and its members, that have no bearing on JW's alleged disclosure requirements.

Subject to and without waiving the foregoing objections, JW responds as follows:  In 2018, the Management Committee consisted of Wade Cooper, Matt Dow, William Jenkins, Retta Miller, David Moran, Kurt Nondorf, Scott Rose, and Mike Taten.  In 2019, the Management Committee consisted of Wade Cooper, Matt Dow, William Jenkins, Debbie Robinowitz, David Moran, Kurt Nondorf, Julia Mann, and Mike Taten.  In 2020, the Management Committee consisted of Wade Cooper, Matt Dow, William Jenkins, Debbie Robinowitz, Ross Forbes, Priya Coffey, Julia Mann, and Mike Taten.  In 2021, the Management Committee consisted of Wade Cooper, Matt Dow, William Jenkins, Debbie Robinowitz, Ross Forbes, Priya Coffey, Julia Mann, and Mike Taten.  In 2022, the Management Committee consisted of Wade Cooper, Matt Dow, Jay Rutherford, Debbie Robinowitz, Ross Forbes, Priya Coffey, Julia Mann, and Mike Taten.  In 2023, the Management Committee consisted of Wade Cooper, Matt Dow, Jay Rutherford, Debbie Robinowitz, Ross Forbes, Priya Coffey, Julia Mann, and Mike Taten.

**INTERROGATORY NO. 18:**   Identify all of Jackson Walker's staff, office space, equipment, software, database or other resources that were used by Freeman or made available to Freeman following the termination of her partnership with Jackson Walker.

**ANSWER:**   JW objects to this Interrogatory because it is overbroad and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings.  Subject to and without waiving the forgoing objection, upon Ms. Freeman's separation from JW, Ms. Freeman turned in her keycard and all JW property (e.g., computer), and was not permitted access to JW's equipment, software, database, or other resources.  On an as-needed basis, in cases where JW and Ms. Freeman were working together as co-counsel or where Ms. Freeman served as conflicts counsel, conference room space was made available for Ms. Freeman in JW's public conference room space on the 20th floor in its Houston office.  Ms. Freeman was required to notify a JW bankruptcy team member when she was planning to come to the firm to work in a conference room so that she was placed on a list of visitors, and she had to check in with the downstairs security desk to be escorted up to JW's conference room space.  Additionally, JW assisted Ms. Freeman in the preparation of her retention application and final fee application in *IEH Auto Parts Holdings, LLC*, Case No. 23-90055 (CML).  Finally, in cases where

15

JW used Ms. Freeman's services as an independent contractor, JW included Ms. Freeman's fees and expenses as part of JW's fee statements and fee applications.

**INTERROGATORY NO. 19:** Describe in detail all events sponsored or hosted in whole or in part by Jackson Walker in which any members of the judiciary were invited, including any weddings or ceremonies that were officiated by Judge Jones. Your answer should include, without limitation, the names of the members of the judiciary Jackson Walker invited to each event.

**ANSWER:** JW objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it purports to require JW to provide a detailed description of all events "sponsored or hosted in whole or in part by [JW] in which any members of the judiciary were invited," over many years, regardless of whether the members of the judiciary in question were (1) bankruptcy judges, (2) knew former Judge Jones, or (3) even attended the event. Such information is irrelevant and the burden or expense of the proposed discovery outweighs its likely benefit. JW's answer to this Interrogatory is limited to events sponsored or hosted in whole or in party by JW in which members of the bankruptcy judiciary were invited.

Subject to and without waiving the foregoing objections, JW responds as follows:

In connection with one or more of the state bench-bar conferences, JW co-hosted receptions, to which judges were invited, including:

- In 2021 and 2022, JW co-sponsored a cocktail party with AlixPartners at the UT Law Jay L. Westbrook Bankruptcy Conference. All judges that were scheduled to attend the Westbrook Conference were invited to the cocktail party.

- In 2023, JW co-sponsored a cocktail happy hour with Portage Point Partners at the National Conference of Bankruptcy Judges. All judges that were scheduled to attend NCBJ were invited.

JW purchased a table at a bankruptcy law review publication dinner held at Emory Law School in 2023, where former Judge Jones was honored. Judges Lopez and Isgur were also in attendance at this dinner, as well as a U.S. Bankruptcy Judge from New Orleans. Several JW attorneys attended this event. JW was not a sponsor or host of this event.

No weddings or ceremonies involving JW attorneys were officiated by Judge Jones during the Applicable Period. Judge Jones attended the wedding reception of JW attorney Zachary McKay in May 2021, prior to Mr. McKay joining JW in 2023. A family law judge also attended Mr. McKay's wedding and reception.

**INTERROGATORY NO. 20:** Identify all cases, administrative proceedings, and other legal matters that Freeman worked on, provided advice on, or counseled on while at Jackson Walker, regardless of whether her time was billed to any specific client.

201720483

**ANSWER:** JW objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because, as written, it would require JW to compile a list of every single matter Ms. Freeman ever spent time on over the course of five years, including non-bankruptcy and non-estate matters, which have no relevance to these proceedings. The burden or expense of such proposed discovery outweighs its likely benefit. Moreover it is impossible for JW to know for certain whether Ms. Freeman "worked on, provided advice on, or counseled on" any specific matter if her time was not billed for it. For detailed information regarding the cases, administrative proceedings, and other legal matters that Ms. Freeman worked on, provided advice on, or counseled on while at JW, the U.S. Trustee should consult Ms. Freeman directly. Ms. Freeman possesses better information and knowledge regarding her own work and involvement in these matters. It would be impossible for JW to know every call, every email, and every piece of advice Ms. Freeman provided. Complying with this request would require an exhaustive and impractical review of all of Ms. Freeman's communications and activities. JW further objects to the extent any such time billed by Ms. Freeman is contained in publicly available fee applications, as such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW provides a list of client and matter names to which Liz billed time while at JW:

- 4E Brands Restructuring
- 610 & San Felipe, Inc. Ashley Furniture
- All Saints USA Restructuring
- Altera Infrastructure Holdings LLC Restructuring
- Arena Energy, LP Restructuring
- Barskiy, Maxim General
- Barskiy, Maxim Lenskiy Non-Insurance
- Barskiy, Maxim Vladimir Lenskiy Litigation
- Belk Restructuring
- Benevis Restructuring
- Bouchard Transportation Co., Inc. Restructuring
- Bruin E&P Holdings, LLC Restructuring
- Bruni, Thomas Termination
- California Pizza Kitchen Restructuring
- Calpine Corporation Bankruptcy Advice
- Camac International Corporation Bankruptcy Preference Action
- Camac International Corporation Lenois v. Lawal et al
- Cevik, Deniz Solidarity Contracting
- Chesapeake Energy Corporation Restructuring

- Chevazz Brown as court appointed representative
- Chord Energy fka Oasis Petroleum Restructuring
- Cineworld Group PLC Cineworld Group Plc Restructuring
- Clarion Partners Carbonlite Recycling-Lit Mountain
- Covia Corporation and Covia Holdings Cor Restructuring
- CWT US, LLC Restructuring
- Cyclone Enterprises Equipment Loan
- Denbury Resources Restructuring
- Encore Wellhead Systems, LLC Montco
- Evolution Well Services Operating, LLC Quantum Valve & Oilfield Solutions
- Fant Investments, LLC Sklar Bankruptcy
- Fidelity National Title Insurance Co. Mohiuddin Involuntary Bankruptcy
- Fidelity National Title Insurance Co. Wells v. Bosson
- Fosbrooke, Inc. dba Tuft & Needle Counterclaim
- Fosbrooke, Inc. dba Tuft & Needle Mattress Firm

17

- Frazzini, John Giant Gray, Inc.
- Frontera Generations Holdings Restructuring
- Gastar Exploration Inc. Restructuring
- GenOn Mid-Atlantic, LLC Restructuring
- Global Building, LLC Global Windcrest I, LLC
- Gulfport Energy Corporation Restructuring
- GWG Holdings, Inc. Restructuring
- Melissa Haselden/Free Speech Systems
- Hess Oil New York Corp. Restructuring
- Hester, Thomas Jones Energy
- HOS WELLMAX Services, LLC Restructuring
- iHeart Communications Restructuring
- Insull, III, William Adversary Proceeding
- iQor Holdings Inc. Restructuring
- IT Sites Cooperating Generators Joint De IT Landfill Sites
- J. C. Penney Company, Inc. Restructuring
- Jones Energy, Inc. Restructuring
- Just Energy (US) Corp. Chapter 15
- Katerra Inc. Restructuring
- KMHJ Ltd, a Texas limited partnership Bankruptcy Proceeding
- Kohlberg Kravis Roberts & Co. L.P. NPC International Restructuring
- Laforta-Gestao e Investimentos Restructuring
- Legacy TM, LP Ninfa's General Matter
- Mahdavi, Mehrzad Employment Discrimination Termination
- MARIPOSA INTERMEDIATE HOLDINGS LLC Restructuring
- Martini, Jeff Employment Contract
- McDermott International, Inc. Restructuring
- Mesquite Energy, Inc. Lien analysis
- Mesquite Energy, Inc. Lien Litigation
- Mesquite Energy, Inc. Restructuring
- Mission Broadcasting, Inc. Auction Matters

- MK Systems USA Inc. (d/b/a MediaKind) Windstream
- Mood Media Corporation Restructuring
- MorningStar Partners Southland Royalty Co.
- Noble Energy, Inc. Fieldwood Energy, LP
- Janet Northrup, Chapter 7 Trustee, FM Forrest
- Janet Northrup, Chapter 7 Trustee, Mulgrew
- Janet Northrup, Chapter 7 Trustee, The Landing 363 Litigation
- Janet Northrup, Chapter 7 Trustee, The Landing Council
- Official Unsecured Creditor's Committee EXCO Resources, Inc.
- Parker Drilling Company Restructuring
- Pipeline Health System, LLC Pipeline Health System, LLC Restructure
- PizzaExpress Financing 1 PLC Restructuring
- Prophet Equity Francis Drilling Restructuring
- Prosperity Bank (fka LegacyTexas Bank) John Daugherty
- Prosperity Bank Riverstone Resort
- Randy Williams, Chapter 7 Trustee S & S Heavy Haul
- Regency Galleria North, LLC Z Gallerie, LLC Bankruptcy
- Rock International Investment Inc. Restructuring
- Rusty Hardin & Associates, LLP Bankruptcy Advice
- Sanare Energy Partners, LLC Restructuring
- Seadrill Partners Restructuring
- Seadrill Rig Holding Company Ltd. Chapter 22
- Seadrill Rig Holding Company Ltd. Seadrill Limited
- Seadrill Rig Holding Company Ltd. SeaMex Limited

- Select Milk Producers, Inc. Bankruptcy Claim
- Selecta Finance UK Limited Restructuring
- Sheridan Holding Company I, LLC Restructuring
- Sheridan Holding Company I, LLC Sheridan Investment Partners I, LLC
- Stage Stores, Inc. Restructuring
- Strike LLC Restructuring
- Sungard AS New Holdings, LLC Restructuring
- Tailored Brands Restructuring
- Terry, Michael Restructuring
- Trade Group General Business
- Ultra Petroleum Chapter 22
- Unity National Bank EBONY Media
- Valaris Fieldwood Energy, LLC
- Valaris Restructuring
- Volusion Corporate
- Volusion Restructuring

- Washington Prime Group Inc. 505 Tax Suit
- Washington Prime Group Inc. Restructuring
- Water Group 2020 GP LLC Debt finance matters
- Weatherly Operating Restructuring
- Westmoreland Coal Company Restructuring
- Westmoreland Coal Company WLB Plan Administration
- Westmoreland Coal Company WMLP Debtors
- Whiting Petroleum Corporation BNN Western
- Whiting Petroleum Corporation Ch.11 Post-Confirmation
- Whiting Petroleum Corporation Restructuring
- Winthrop Capital Management Ford Steel
- WMLP Liquidating Trust Gerald A. Tywoniuk, as Trustee of the WM

**INTERROGATORY NO. 21:**   Identify all cases, administrative proceedings, and other legal matters involving Jackson Walker that Freeman and/or the Law Office of Liz Freeman worked on, provided advice on, or counseled on following Freeman's departure from Jackson Walker, regardless of whether her time was billed to any specific client.

**ANSWER:**   JW objects to this Interrogatory because it is impossible for JW to know for certain whether Ms. Freeman "worked on, provided advice on, or counseled on" any specific matter if her time was not billed for it.  For detailed information regarding the cases, administrative proceedings, and other legal matters that Ms. Freeman worked on, provided advice on, or counseled on while at JW, the U.S. Trustee should consult Ms. Freeman directly. Ms. Freeman possesses better information and knowledge regarding her own work and involvement in these matters. It would be impossible for JW to know every call, every email, and every piece of advice Ms. Freeman provided.  JW further objects to the extent any such time billed by Ms. Freeman is contained in publicly available fee applications, as such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows:

- *In re Cineworld Group PLC* (Case No. 90168)
- *In re GWG Holdings, Inc.* (Case No. 22-90032)
- *In re IEH Auto Parts Holding LLC* (Case No. 23-90054)
- *In re MLCJR LLC* (Case No. 23-90324) (Cox)

19

- *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729)
- *In re Envision Healthcare Corporation* (Case No. 23-90342)
- *In re AppHarvest Products, LLC* (Case No. 23-90745)
- *In re Cóndor Inversiones SpA* (Case No. 23-90761)
- *In re Genesis Care Pty Limited* (Case No. 23-90614)
- *In re Center for Autism and Related Disorders, LLC* (Case No. 23-90709)
- *In re Loyalty Ventures Inc.* (Case No. 23-90111)
- *In re Sorrento Therapeutics, Inc.* (Case No. 23-90085)
- *In re Avaya Inc.* (Case No. 23-90088)

**INTERROGATORY NO. 22:** Identify of all of Jackson Walker's non-attorney support staff that worked with Freeman.

**ANSWER:** JW objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because the identity of all of JW's non-attorney support staff that worked with Ms. Freeman has no bearing on the claims or defenses in these proceedings. Further, in order to provide a complete answer, JW would have to poll all of the current and former non-attorney staff throughout the entire firm, and the burden or expense of such proposed discovery outweighs its likely benefit.

Subject to and without waiving the foregoing objections, JW responds as follows: Ms. Freeman regularly worked with Kendra Gradney, Daniela Trevino, Jolene Pupo, Caren Luckie, and Melissa Salinas. Additionally, she may have worked with certain individuals in office-shared services, the library, marketing, and billing.

**INTERROGATORY NO. 23:** Describe in detail all interactions between Judge Jones and Jackson Walker at which Freeman was present, including but not limited to hearings, meditations, conferences, social events, and fundraisers.

**ANSWER:** JW objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it seeks detailed descriptions of any and all interactions over the course of five years between Judge Jones and any person associated with JW with Ms. Freeman present, which would be impossible for JW to identify without extensive review of records beyond what is proportional to these cases. JW further objects to this Interrogatory as "all interactions" is vague and ambiguous and, as worded, prevents JW from providing a meaningful answer.

Subject to and without waiving the foregoing objections, JW responds as follows: JW attorneys interacted with Judge Jones on many occasions when Ms. Freeman was present, including at conferences, hearings, former Judge Jones's evidence classes, and social events.

**INTERROGATORY NO. 24:** Identify all of Freeman's guests at any event that Jackson Walker sponsored or hosted in whole or in part.

201720483

**ANSWER:** JW objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it seeks plainly irrelevant information about the identity of Ms. Freeman's guests at JW events, including guests who have no involvement with the claims or defenses set forth in these proceedings. The burden or expense of such proposed discovery outweighs its likely benefit. JW further objects to this Interrogatory as vague and unduly burdensome, as it would be impossible for JW to determine who Ms. Freeman may have invited on her own to any particular event in question.

Subject to and without waiving the foregoing objections, JW responds as follows: JW is searching for this information and will supplement its answer to this Interrogatory if responsive information is located.

**INTERROGATORY NO. 25:** Identify all private or public clubs, associations, societies, or organizations in which both Judge Jones and Jackson Walker are members.

**ANSWER:** JW objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because, as written, it seeks plainly irrelevant information about the membership of any "past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, [or] servant" of JW in any organization whatsoever, as long as Judge Jones is also a member. Responding to this Interrogatory would therefore require JW to compile a list of all organizations of which anyone associated with JW is or was a member, and then cross-reference that list with a list of organizations of which Judge Jones is a member. This is disproportionate to the needs of these proceedings because the burden or expense of the proposed discovery outweighs its likely benefit. Moreover, JW has no way of knowing whether former Judge Jones is or was a member of any particular organization.

Subject to and without waiving the foregoing objections, JW responds as follows: To the best of JW's knowledge, JW is unaware of any clubs, associations, societies, or organizations in which both former Judge Jones and the members of the JW bankruptcy team are members.

**INTERROGATORY NO. 26:** Describe in detail all formal or informal agreements or arrangements between Jackson Walker on the one hand and Freeman or the Law Office of Liz Freeman on the other hand.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to "formal or informal agreements or arrangements" as vague and ambiguous. JW also objects to this Interrogatory to the extent any such "formal or informal agreements or arrangements" are contained in publicly available employment and/or fee applications, as such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: JW's offer letter to Liz Freeman, the JW Partnership Agreement, and the Separation Agreement. JW also used Liz Freeman's services as an independent contractor in certain matters where Liz

Freeman billed time to the estates, which time entries are reflected in JW's publicly available fee statements and fee applications.

**INTERROGATORY NO. 27:**   Describe in detail all platforms used by Jackson Walker to share information, resources, and to communicate internally and externally to Freeman or the Law Office of Liz Freeman and how and where any data was stored.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.   *See* Fed. R. Civ. P. 33(a)(1).   JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to "all platforms" as vague and ambiguous.   JW also objects because this Interrogatory is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because, as written, it seeks a detailed description of "how and where any data was stored" on "all platforms" used by JW to communicate with Ms. Freeman over the last five years irrespective of whether such data related to any of the Relevant Cases and/or Relationship in question.

Subject to and without waiving the foregoing objections, JW responds as follows: JW communicated with Freeman and the Law Office of Liz Freeman using various methods of communication, including email, cell phone, text messages, and in-person.   Data was stored or hosted in the following ways: Outlook, iManage, ShareFile, individual cell phones, Jabber, GoToMeeting, Teams, Zoom, and Dial Pad.

**INTERROGATORY NO. 28:**   Identify any Persons at Jackson Walker who contacted the Bankruptcy Court regarding the mediation process in connection with the following cases: *In re Neiman Marcus Group LTD, LLC*, Case No. 20-32519, *In re Stage Stores LLC,* Case No. 20-32564, *In re Chesapeake Energy Corporation*, Case No. 20-33233, *In re Covia Holdings Corporation*, Case No. 20-33295, *In re Tug Robert J. Bouchard Corporation*, 20-34758, *In re Mule Sky LLC*, Case No. 20-35561, *In re Seadrill Partners LLC*, Case No. 20-35740, *In re Brilliant Energy, LLC*, Case No. 21-30936, *In re Katerra Inc*., Case No. 21-31861, *In re Basic Energy Services, Inc*., Case No. 21-90002, *In re Strike LLC,* Case No. 21-90054, *In re 4E Brands Northamerica LLC*, Case No. 22-50009, *In re Sungard AS New Holdings*, Case No. 22-90018, *In re Denbury Resources Inc.*, Case No. 20-33801, *In re Hornbeck Offshore Services, Inc.*, Case No. 20-32679, *In re iQor Holdings Inc.,* Case No. 20-34500, *In re Jones Energy Inc.*, Case No. 19-32112, *In re LaForta -Gestao e Investmentos*, Case No. 22-90126, *In re McDermott International Inc.,* Case No. 20-30336, *In re Seadrill New Finance Limited,* Case No. 22-90001, *In re Sheridan Holding Company I, LLC,* Case No. 20-31884 and *In re Volusion, LLC,* Case No. 20-50082.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.   *See* Fed. R. Civ. P. 33(a)(1).   JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows:
o   *In re Stage Stores LLC, Case No. 20-32564:* Veronica Polnick and Genevieve Graham
o   *In re Chesapeake Energy Corporation*, Case No. 20-33233: Genevieve Graham and Veronica Polnick

- o    *In re Mule Sky LLC*, Case No. 20-35561: Veronica Polnick
- o    *In re Basic Energy Services, Inc*., Case No. 21-90002: Veronica Polnick
- o    *In re 4E Brands Northamerica LLC*, Case No. 22-50009: Veronica Polnick
- o    *In re LaForta -Gestao e Investmentos*, Case No. 22-90126: Rebecca Chaikin

JW further responds that the below cases did not have mediations:
- o    *In re Neiman Marcus Group LTD, LLC*, Case No. 20-32519
- o    *In re Covia Holdings Corporation,* Case No. 20-33295
- o    *In re Brilliant Energy, LLC*, Case No. 21-30936
- o    *In re McDermott International Inc*., Case No. 20-30336
- o    *In re Seadrill New Finance Limited,* Case No. 22-90001
- o    *In re Tug Robert J. Bouchard Corporation*, Case No. 20-34758
- o    *In re Seadrill Partners LLC*, Case No. 20-35740
- o    *In re Katerra Inc.*, Case No. 21-31861
- o    *In re Strike LLC,* Case No. 21-90054
- o    *In re Sungard AS New Holdings*, Case No. 22-90018
- o    *In re Sheridan Holding Company I, LLC,* Case No. 20-31884
- o    *In re Volusion, LLC,* Case No. 20-50082
- o    *In re Jones Energy Inc.*, Case No. 19-32112
- o    *In re iQor Holdings Inc.,* Case No. 20-34500
- o    *In re Denbury Resources Inc.*, Case No. 20-33801
- o    *In re Hornbeck Offshore Services, Inc.*, Case No. 20-32679

**INTERROGATORY NO. 29:**   Identify the members of Jackson Walker's compensation committee for each year of the Applicable Period.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.   *See* Fed. R. Civ. P. 33(a)(1).   JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to this Interrogatory because it is overbroad and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it requests information regarding the Compensation Committee, which has no bearing on JW's alleged disclosure requirements, the Relevant Cases, or the Relationship.

Subject to and without waiving the foregoing objections, JW responds as follows:  In 2018, the Compensation Committee consisted of Wade Cooper, Chip Babcock, Rick Dahlson, Matt Dow, William Jenkins, Brad Knippa, Retta Miller, David Moran, Kurt Nondorf, Vytas Petrulis, Mike Taten, Amy Baird, Scott Rose, Ross Forbes, and Debbie Robinowitz.  In 2019, the Compensation Committee consisted of Wade Cooper, Chip Babcock, Rick Dahlson, Matt Dow, William Jenkins, Brad Knippa, Priya Coffey, David Moran, Kurt Nondorf, Vytas Petrulis, Mike Taten, Amy Baird, Ross Forbes, and Debbie Robinowitz.  In 2020, the Compensation Committee consisted of Wade Cooper, Chip Babcock, Rick Dahlson, Matt Dow, William Jenkins, Brad Knippa, Priya Coffey, Michelle Moore-Smith, Virginia Mimmack, Vytas Petrulis, Mike Taten, Amy Baird, Ross Forbes, Debbie Robinowitz, and Suzan Kedron.  In 2021, the Compensation Committee consisted of Wade Cooper, Chip Babcock, Alden Crow, Matt Dow, William Jenkins, Brad Knippa, Priya Coffey, Michelle Moore-Smith, Virginia Mimmack, Vytas Petrulis, Mike Taten, Amy Baird, Ross Forbes, Debbie Robinowitz, and Suzan Kedron.  In 2022, the

23

Compensation Committee consisted of Wade Cooper, Chip Babcock, Alden Crow, Matt Dow, Jay Rutherford, Brad Knippa, Priya Coffey, Michelle Moore-Smith, Virginia Mimmack, Vytas Petrulis, Mike Taten, Amy Baird,Ross Forbes, Debbie Robinowitz, and Suzan Kedron.  In 2023, the Compensation Committee consisted of Wade Cooper, Chip Babcock, Alden Crow, Matt Dow, Jay Rutherford, Brad Knippa, Priya Coffey, Michelle Moore-Smith, Virginia Mimmack, Vytas Petrulis, Mike Taten, Amy Baird, Ross Forbes, Debbie Robinowitz, and Suzan Kedron.

## CASE SPECIFIC INTERROGATORIES

### *In re Sanchez Energy Corporation*, Case No. 19-34508

**INTERROGATORY NO. 30:**   Identify all Persons that suggested that parties engage in mediation.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that suggested that parties engage in mediation.  JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW is unaware of the person who suggested that parties engage in mediation.

**INTERROGATORY NO. 31:**   Identify all potential mediators that were suggested by any party.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all potential mediators "that were suggested by any party," regardless of whether they are associated with JW in any way.  JW may also be unaware of all

201720483

such suggestions by "any party."  JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows:  former Judge Jones.

**INTERROGATORY NO. 32:**  Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that assisted in preparing for any mediation regarding of whether any time was billed, which imposes a significant burden on JW to review extensive records and communications, far beyond what is reasonable or necessary. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.  JW further objects to this Interrogatory regarding any "assist[ance] in preparing for any mediation" to the extent such assistance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Liz Freeman and Matthew Cavenaugh.

**INTERROGATORY NO. 33:**  Identify all Persons that attended any mediation.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as the identification of individuals who attended mediation does not have any bearing on the claims or defenses in this litigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that attended mediation, which imposes a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary. Additionally, JW may not have been aware of all Persons that may have attended the meditation given that it occurred virtually due to COVID-19, making it impossible to provide a comprehensive and accurate response.  It is also impossible for JW to know "all Persons that attended any mediation" to the extent that separate follow up calls or meetings with the mediator may have occurred with any Person involved in the mediation, as JW would not know who contacted the mediator and who may have been on those calls or attended any such follow-up meetings. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW. JW further objects to this Interrogatory to the extent that such attendance, if any, was billed to the

estates, and therefore such information would be contained in publicly available fee applications, which is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Liz Freeman and Matthew Cavenaugh.

**INTERROGATORY NO. 34:** Identify the location of where any mediation occurred.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it irrelevant to the claims and defenses at issue.

Subject to and without waiving the foregoing objections, JW responds as follows: The mediation occurred virtually due to COVID-19.

**INTERROGATORY NO. 35:** Describe in detail how the location of any mediations were selected.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges. JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as how the location of any mediation was selected does not have any bearing on the claims or defenses in this litigation. JW further objects to this Interrogatory because it is speculative and impractical for JW to reconstruct and detail the process of selecting mediation locations, especially for those instances where specific records may not have been kept or the decision-making process was informal.

Subject to and without waiving the foregoing objections, JW responds as follows: The mediation occurred virtually due to COVID-19. Pursuant to the *Order Appointing Chief Judge David R. Jones as Mediator* [Dkt. No. 1094], former Judge Jones had "absolute discretion as to the timing and means and methods of any mediation."

**INTERROGATORY NO. 36:** Identify all dates, times, and places that any aspect of any mediation occurred.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to identify all dates, times, and places of any aspect of any mediation, without any limitation, requires JW to compile extensive information, which imposes a significant and unreasonable burden that is disproportionate to the needs of these proceedings. JW further objects to this Interrogatory because the detailed dates, times, and places of all aspects of any mediation are irrelevant to the claims and defenses at issue. JW objects to this Interrogatory because it is impractical and requires speculation to determine and identify all dates, times, and places of every aspect of any mediation,

201720483

particularly for those instances where records may not have been kept. Additionally, JW may not have been aware of all parties meeting with the mediator or participating in calls, making it impossible to provide a comprehensive and accurate response.   JW further objects to this Interrogatory because the dates, times and places of "any aspect of any mediation" would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: JW cannot define specific dates and times as many mediation activities may have occurred informally without records and during numerous calls in which JW was not involved. However, the mediation occurred virtually in late March or early April of 2020.  Pursuant to the *Order Appointing Chief Judge David R. Jones as Mediator* [Dkt. No. 1094], former Judge Jones had "absolute discretion as to the timing and means and methods of any mediation."

**INTERROGATORY NO. 37:**  Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: JW is not aware of any social activities attended by its representatives during the mediation with former Judge Jones, nor is JW aware of any payments made on behalf of former Judge Jones by JW.

**INTERROGATORY NO. 38:**  Describe in detail how any mediation expenses were allocated between the parties.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to this Interrogatory because any mediation expenses would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: JW is not aware of any mediation expenses besides attorney's fees.  Each party was responsible for handling its own expenses related to mediation, including attorney's fees and other related costs. Due to the mediation occurring virtually, there were no additional expenses incurred.

**INTERROGATORY NO. 39:**  Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

201720483

Subject to and without waiving the foregoing objections, JW responds as follows: Albert Alonzo, LinhThu Do, and former Judge Jones.

### *In re GWG Holdings Inc.*, Case No. 22-90032

**INTERROGATORY NO. 40:**   Identify all Persons that suggested that parties engage in mediation.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that suggested that parties engage in mediation.

Subject to and without waiving the foregoing objections, and upon information and belief, JW responds that mediation was suggested by Mayer Brown, lead counsel to the GWG debtors.

**INTERROGATORY NO. 41:**   Identify all potential mediators that were suggested by any party.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory because any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all potential mediators "that were suggested by any party," and JW may be unaware of all such suggestions by "any party."

Subject to and without waiving the foregoing objections, JW responds as follows: former Judge Jones.

**INTERROGATORY NO. 42:**   Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

201720483

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that assisted in preparing for any mediation regarding of whether any time was billed, which imposes a significant burden on JW to review extensive records and communications, far beyond what is reasonable or necessary. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW. JW further objects to this Interrogatory regarding any "assist[ance] in preparing for any mediation" to the extent such assistance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Liz Freeman, Kristhy Peguero, and Matthew Cavenaugh.

**INTERROGATORY NO. 43:** Identify all Persons that attended any mediation.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as the identification of individuals who attended mediation does not have any bearing on the claims or defenses in this litigation. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that attended mediation, which imposes a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary. Additionally, JW may not have been aware of all Persons that may have attended the mediation to the extent that separate follow up calls or meetings with the mediator may have occurred with any Person (whether in person or virtual), as JW would not know who contacted the mediator and who may have been on those calls or attended any such follow-up meetings. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows: Ms. Freeman, Kristhy Peguero, and Matthew Cavenaugh each attended portions of the mediation, but none of the three attended all sessions of the mediation, including virtual discussions that occurred.

**INTERROGATORY NO. 44:** Identify the location of where any mediation occurred.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it irrelevant to the claims and defenses at issue.

**ANSWER:**    Subject to and without waiving the foregoing objections, JW responds as follows: The initial mediation session took place at PJT Partners' New York offices.  The third mediation session took place at Katten Muchin Rosenman LLP's New York offices.   JW is unaware of where the second mediation session took place as JW did not attend.  There were also virtual mediation discussions.

**INTERROGATORY NO. 45:**   Describe in detail how the location of any mediations was selected.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to describe in detail how the location of any mediation was selected, without any limitation, requires JW to compile extensive information which imposes a significant and unreasonable burden on JW that is disproportionate to the needs of these proceedings.  JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as how the location of any mediation was selected does not have any bearing on the claims or defenses in this litigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it impose a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary.  JW further objects to this Interrogatory because it is speculative and impractical for JW to reconstruct and detail the process of selecting mediation locations, especially for those instances where specific records may not have been kept or the decision-making process was informal.

Subject to and without waiving the foregoing objections, JW responds as follows:  The mediation needed to accommodate a very large group of people with several different work out sessions, any many of the professionals involved in the case officed out of New York, so PJT Partners volunteered to host the initial mediation session and former Judge Jones had a strong preference to mediate in New York if a critical mass of the advisors or stakeholders were there. Pursuant to the *Order (I) Appointing a Judicial Mediator, (II) Requiring Parties to Maintain Confidentiality of Mediation Communications, and (III) Granting Related Relief* [Dkt. No. 1323], the "scope, location, time and procedures for the mediation [were] determined by the Mediator following such consultations with the Mediation Parties as he deem[ed] appropriate."

**INTERROGATORY NO. 46:**   Identify all dates, times, and places that any aspect of any mediation occurred.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to identify all dates, times, and places of any aspect of any mediation, without any limitation, requires JW to compile extensive information, which imposes a significant and unreasonable burden that is disproportionate to the needs of these proceedings.  JW further objects to this Interrogatory

30

because the detailed dates, times, and places of all aspects of any mediation are irrelevant to the claims and defenses at issue. JW objects to this Interrogatory because it is impractical and requires speculation to determine and identify all dates, times, and places of every aspect of any mediation, particularly for those instances where records may not have been kept. Additionally, JW may not have been aware of all parties meeting with the mediator or participating in calls, making it impossible to provide a comprehensive and accurate response. JW further objects to this Interrogatory because the dates, times and places of "any aspect of any mediation" would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows:  The initial mediation session took place at PJT Partners' New York offices on January 30-31, 2023. The third mediation session took place at Katten Muchin Rosenman LLP's New York offices on April 17, 2023.  JW is unaware of where the second mediation session took place, which occurred on March 2, 2023.  There were also virtual mediation discussions from time to time.  Pursuant to the *Order (I) Appointing a Judicial Mediator, (II) Requiring Parties to Maintain Confidentiality of Mediation Communications, and (III) Granting Related Relief* [Dkt. No. 1323], the "scope, location, time and procedures for the mediation [were] determined by the Mediator following such consultations with the Mediation Parties as he deem[ed] appropriate."

**INTERROGATORY NO. 47:**  Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW is not aware of any social activities attended by its representatives during the mediation with former Judge Jones, nor is JW aware of any payments made on behalf of former Judge Jones by JW.  Liz Freeman and Kristhy Peguero attended a pre-mediation dinner hosted by Katten Muchin Rosenman and attended by Jeffrey Stein, representatives from Mayer Brown, PJT Partners, Katten, and Province, and also attended by Albert Alonzo and former Judge Jones, on January 29, 2023.

**INTERROGATORY NO. 48:**  Identify all dates and times that any aspect of any mediation occurred.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to this Interrogatory as duplicative of Interrogatory No. 46, and JW adopts and incorporates herein its answer and objections to Interrogatory No. 46.  JW refers the U.S. Trustee to the answer provided in response to Interrogatory No. 46.

**INTERROGATORY NO. 49:**  Describe in detail how any mediation expenses were allocated between the parties.

**ANSWER:**     JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to this Interrogatory because any mediation expenses would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW's mediation expenses were allocated on an individual attorney basis and submitted for approval via fee statements and fee applications.  JW is unaware of how any other mediation expenses were allocated between the parties.  Pursuant to Section S of the Procedures for Complex Cases in the Southern District of Texas (Effective August 1, 2021), adopted by the *Order (I) Appointing a Judicial Mediator, (II) Requiring Parties to Maintain Confidentiality of Mediation Communications, and (III) Granting Related Relief* [Dkt. No. 1323], "the fees and costs of the mediator will be shared equally by the parties."

**INTERROGATORY NO. 50:**   Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**ANSWER:**     JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: Albert Alonzo, Judge Isgur, and former Judge Jones.

**INTERROGATORY NO. 51:**   Identify any Person that suggested that Freeman be employed as the wind-down trustee.

**ANSWER:**     JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.

Subject to and without waiving the foregoing objections, JW responds as follows:  Upon information and belief, Ms. Freeman was suggested by Abid Qureshi of Akin Gump Strauss Hauer & Feld LLP who represented the Official Committee of Bondholders.

### *In re HONX, Inc., Case No. 22-90035*

**INTERROGATORY NO. 52:**   Identify all Persons that suggested that parties engage in mediation.

**ANSWER:**     JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to

32

this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that suggested that parties engage in mediation.  JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows: Mediation was suggested early in the case, with the Official Committee of Unsecured Creditors and FCR picking Kenneth Feinberg and the Debtors and Hess suggesting former Judge Jones.

**INTERROGATORY NO. 53:**  Identify all potential mediators that were suggested by any party.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all potential mediators "that were suggested by any party", regardless of whether they are associated with JW in any way.

Subject to and without waiving the foregoing objections, JW responds as follows: Kenneth Feinberg and former Judge Jones, who mediated together.

**INTERROGATORY NO. 54:**  Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that assisted in preparing for any mediation regarding of whether any time was billed, which imposes a significant burden on JW to review extensive records and communications, far beyond what is reasonable or necessary. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW. JW further objects to this Interrogatory regarding any "assist[ance] in preparing for any mediation" to the extent such assistance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Liz Freeman, Matthew Cavenaugh, Jennifer Wertz, Bruce Ruzinsky, and Veronica Polnick.

**INTERROGATORY NO. 55:** Identify all Persons that attended any mediation.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as the identification of individuals who attended mediation does not have any bearing on the claims or defenses in this litigation. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that attended mediation, which imposes a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary. Additionally, it is impossible for JW to know "all Persons that attended any mediation" to the extent that separate follow up calls or meetings with the mediators may have occurred with any Person involved in the mediation, as JW would not know who contacted the mediators and who may have been on those calls or attended any such follow-up meetings. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW. JW further objects to this Interrogatory to the extent that such attendance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Liz Freeman, Matthew Cavenaugh, and Veronica Polnick attended the first mediation. Matthew Cavenaugh attended two subsequent sessions.

**INTERROGATORY NO. 56:** Identify the location of where any mediation occurred.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to

34

and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it irrelevant to the claims and defenses at issue.

Subject to and without waiving the foregoing objections, JW responds as follows: The mediation occurred at Kirkland & Ellis LLP's offices in New York.  Subsequent sessions also took place at Kirkland & Ellis LLP's New York offices, but most subsequent sessions were virtual.

**INTERROGATORY NO. 57:**  Describe in detail how the location of any mediations were selected.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to describe in detail how the location of any mediation was selected, without any limitation, requires JW to compile extensive information which imposes a significant and unreasonable burden on JW that is disproportionate to the needs of these proceedings.  JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as how the location of any mediation was selected does not have any bearing on the claims or defenses in this litigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it impose a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary.  JW further objects to this Interrogatory because it is speculative and impractical for JW to reconstruct and detail the process of selecting mediation locations, especially for those instances where specific records may not have been kept or the decision-making process was informal.

Subject to and without waiving the foregoing objections, JW responds as follows: JW is unaware of how the location of any of the mediation sessions were selected.  Pursuant to the *Joint Stipulation and Agreed Order Appointing Co-Mediators and Governing Mediation Procedure* [Dkt. No. 209], "Subject to the schedule set forth on Exhibit A hereto, the Co-Mediators shall set the dates, times, and place for conducting sessions of the Mediation.  The term of the Mediation (the "Mediation Term") shall begin on the date of the first Mediation session among the Parties and the Co-Mediators and shall end on the date that either or both of the Co-Mediators determine(s) that Mediation should conclude (which, for the avoidance of doubt, shall not be earlier than August 19, 2022) (such date, the "Conclusion of Mediation")."

**INTERROGATORY NO. 58:**  Identify all dates, times, and places that any aspect of any mediation occurred.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to identify all dates, times, and places of any aspect of any mediation, without any limitation, requires JW to compile extensive information, which imposes a significant and unreasonable burden that is disproportionate to the needs of these proceedings.  JW further objects to this Interrogatory because the detailed dates, times, and places of all aspects of any mediation are irrelevant to the claims and defenses at issue.  JW objects to this Interrogatory because it is impractical and requires speculation to determine and identify all dates, times, and places of every aspect of any mediation, particularly for those instances where records may not have been kept. Additionally, JW may not have been aware of all parties meeting with the mediator or participating in calls, making it impossible to provide a comprehensive and accurate response. JW further objects to this Interrogatory because the dates, times and places of "any aspect of any mediation" would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows:  The first mediation session took place in July 2022 at Kirkland & Ellis LLP's offices in New York. Subsequent sessions occurred over an extended period of time—some in person at Kirkland & Ellis LLP's offices in New York and some virtual.  Some sessions had limited participation and/or were smaller in scope.  The mediation terminated on September 15, 2022.  *See Notice of Termination of Mediation* [Dkt. No. 296].  Pursuant to the *Joint Stipulation and Agreed Order Appointing Co-Mediators and Governing Mediation Procedure* [Dkt. No. 209], "Subject to the schedule set forth on Exhibit A hereto, the Co-Mediators shall set the dates, times, and place for conducting sessions of the Mediation.  The term of the Mediation (the "Mediation Term") shall begin on the date of the first Mediation session among the Parties and the Co-Mediators and shall end on the date that either or both of the Co-Mediators determine(s) that Mediation should conclude (which, for the avoidance of doubt, shall not be earlier than August 19, 2022) (such date, the "Conclusion of Mediation")."

**INTERROGATORY NO. 59:**  Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW is not aware of any social activities attended by its representatives during the mediation with Judge Jones, nor is JW aware of any payments made on behalf of former Judge Jones by JW.

**INTERROGATORY NO. 60:**  Identify all dates and times that any aspect of any mediation occurred.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.  JW further objects to this Interrogatory as duplicative of Interrogatory No. 58, and JW adopts and incorporates herein its answer and objections to Interrogatory No. 58. JW refers the U.S. Trustee to the answer provided in response to Interrogatory No. 58.

**INTERROGATORY NO. 61:**  Describe in detail how any mediation expenses were allocated between the parties.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to this Interrogatory because any mediation expenses would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW's mediation expenses were allocated on an individual attorney basis and submitted for approval via fee statements and fee applications.  JW is unaware of how any other mediation expenses were allocated between the parties.  Pursuant to the *Joint Stipulation and Agreed Order Appointing Co-Mediators and Governing Mediation Procedure* [Dkt. No. 209], "During the Mediation Term (as defined below), Hess shall pay to the Debtor (a) all fees and expenses of the Co-Mediators and the FCR, (b) the professional fees of advisors to the Debtor, the Committee, and the FCR (the "Advisor Costs"), and (c) all other fees and expenses incurred during the duration of Mediation authorized by the Court (together with the Advisor Costs and the costs in clause (a), the "Mediation Costs"); provided that Hess shall deposit any and all amounts necessary to satisfy the Mediation Costs into the Debtor's bank account to be paid by the Debtor; provided further that Parties shall comply with any interim compensation procedures, as applicable, before the Debtor is required to pay any Advisor Costs.  Neither the Debtor nor Hess shall be responsible for the payment of fees or expenses incurred by parties other than the FCR, estate professionals, and the Co-Mediators in connection with Mediation.  Within five days of entry of this Stipulation, the Committee and the FCR shall provide the Debtor and/or its professionals with a non-binding estimate of fees and expenses through and including September 16, 2022; to the extent that the Mediation Term extends past September 16, 2022, the Committee and the FCR shall provide the Debtor and/or its professionals with a non-binding estimate of fees and expenses for each successive one month period within five days of any such extension."

**INTERROGATORY NO. 62:**  Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: Albert Alonzo, LinhThu Do, and former Judge Jones.

*In re Altera Infrastructure LP*, Case No. 22-90130

**INTERROGATORY NO. 63:**   Identify all Persons that suggested that parties engage in mediation.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that suggested that parties engage in mediation.

Subject to and without waiving the foregoing objections, JW responds as follows: Josh Sussberg and Richard Pachulski.

**INTERROGATORY NO. 64:**   Identify all potential mediators that were suggested by any party.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all potential mediators "that were suggested by any party", regardless of whether they are associated with JW in any way.

Subject to and without waiving the foregoing objections, JW responds as follows: Judge Lopez and former Judge Jones.

**INTERROGATORY NO. 65:**   Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

201720483

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that assisted in preparing for any mediation regarding of whether any time was billed, which imposes a significant burden on JW to review extensive records and communications, far beyond what is reasonable or necessary. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW. JW further objects to this Interrogatory regarding any "assistance in preparing for any mediation" to the extent such assistance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Rebecca Chaikin, Matthew Cavenaugh, and Liz Freeman.

**INTERROGATORY NO. 66:** Identify all Persons that attended any mediation.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as the identification of individuals who attended mediation does not have any bearing on the claims or defenses in this litigation. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that attended mediation, which imposes a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary. Additionally, it is also impossible for JW to know "all Persons that attended any mediation" to the extent that separate follow up calls or meetings with the mediator may have occurred with any Person involved in the mediation, as JW would not know who contacted the mediator and who may have been on those calls or attended any such follow-up meetings. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows:  Liz Freeman.

**INTERROGATORY NO. 67:** Identify the location of where any mediation occurred.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it irrelevant to the claims and defenses at issue.

Subject to and without waiving the foregoing objections, JW responds as follows: The mediation occurred at the offices of Kirkland & Ellis LLP in New York, New York.

**INTERROGATORY NO. 68:**   Describe in detail how the location of any mediations were selected.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to describe in detail how the location of any mediation was selected, without any limitation, requires JW to compile extensive information which imposes a significant and unreasonable burden on JW that is disproportionate to the needs of these proceedings.  JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as how the location of any mediation was selected does not have any bearing on the claims or defenses in this litigation.  JW further objects to this Interrogatory is overbroad and not proportional to the needs of these proceedings because it impose a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary.  JW further objects to this Interrogatory because it is speculative and impractical for JW to reconstruct and detail the process of selecting mediation locations, especially for those instances where specific records may not have been kept or the decision-making process was informal.

Subject to and without waiving the foregoing objections, JW responds as follows: The location of the mediation was determined through a negotiated process between Kirkland & Ellis LLP and Pachulski Stang Ziehl & Jones LLP.  Pursuant to the *Joint Stipulation and Agreed Order Appointing a Mediator and Governing Mediation Procedures* [Dkt. No. 247], the mediation was "subject to the Procedures for Complex Cases in the Southern District of Texas (Effective August 1, 2021)," which provide, among other things, that the "mediator will schedule a time and place for the mediation and any pre-mediation conferences."

**INTERROGATORY NO. 69:**   Identify all dates, times, and places that any aspect of any mediation occurred.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to identify all dates, times, and places of any aspect of any mediation, without any limitation, requires JW to compile extensive information, which imposes a significant and unreasonable burden that is disproportionate to the needs of these proceedings.  JW further objects to this Interrogatory because the detailed dates, times, and places of all aspects of any mediation are irrelevant to the claims and defenses at issue.  JW objects to this Interrogatory because it is impractical and requires speculation to determine and identify all dates, times, and places of every aspect of any mediation, particularly for those instances where records may not have been kept.  Additionally, JW may not have been aware of all parties meeting with the mediator or participating in calls, making it impossible to provide a comprehensive and accurate response.  JW further objects to this Interrogatory because the dates, times and places of "any aspect of any mediation" would be

contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: The mediation occurred on September 28-30, 2022. All mediation sessions were held at Kirkland & Ellis LLP's New York offices in the 50th floor conference area. Pursuant to the *Joint Stipulation and Agreed Order Appointing a Mediator and Governing Mediation Procedures* [Dkt. No. 247], the mediation was "subject to the Procedures for Complex Cases in the Southern District of Texas (Effective August 1, 2021)," which provide, among other things, that the "mediator will schedule a time and place for the mediation and any pre-mediation conferences."

**INTERROGATORY NO. 70:** Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: JW is not aware of any social activities attended by its representatives during the mediation with Judge Jones, nor is JW aware of any payments made on behalf of former Judge Jones by JW.

**INTERROGATORY NO. 71:** Identify all dates and times that any aspect of any mediation occurred.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory as duplicative of Interrogatory No. 69, and JW adopts and incorporates herein its answer and objections to Interrogatory No. 69. JW refers the U.S. Trustee to the answer provided in response to Interrogatory No. 69.

**INTERROGATORY NO. 72:** Describe in detail how any mediation expenses were allocated between the parties.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: JW's mediation expenses were allocated on an individual attorney basis and submitted for approval via fee statements and fee applications. JW is unaware of how any other mediation expenses were allocated between the parties. Pursuant to the *Joint Stipulation and Agreed Order Appointing a Mediator and Governing Mediation Procedures* [Dkt. No. 247], the mediation was "subject to the Procedures for Complex Cases in the Southern District of Texas (Effective August 1, 2021)," which provide, among other things, that "the fees and costs of the mediator will be shared equally by the parties."

**INTERROGATORY NO. 73:**   Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.   *See* Fed. R. Civ. P. 33(a)(1).   JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: Albert Alonzo, former Judge Jones, and LinhThu Do.

### *In re IEH Auto Parts Holding LLC*, Case No. 23-90054

**INTERROGATORY NO. 74:**   Identify all Persons that suggested that parties engage in mediation.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.   *See* Fed. R. Civ. P. 33(a)(1).   JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.   JW further objects to this Interrogatory on the grounds that any such suggestions could have been made informally without the creation of formal records.   JW will supplement its answer if additional information becomes available through further investigation.   JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that suggested that parties engage in mediation.   JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows: Matthew Cavenaugh and John Higgins.

**INTERROGATORY NO. 75:**   Identify all potential mediators that were suggested by any party.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.   *See* Fed. R. Civ. P. 33(a)(1).   JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.

Subject to and without waiving the foregoing objections, JW responds as follows: Judge Isgur, former Judge Jones, and Judge Hale.

**INTERROGATORY NO. 76:**   Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that assisted in preparing for any mediation regarding of whether any time was billed, which imposes a significant burden on JW to review extensive records and communications, far beyond what is reasonable or necessary. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.   JW further objects to this Interrogatory regarding any "assistance in preparing for any mediation" to the extent such assistance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Matthew Cavenaugh, Veronica Polnick, Vienna Anaya, Emily Flynn Meira, and Chris Bankler.

**INTERROGATORY NO. 77:**    Identify all Persons that attended any mediation.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as the identification of individuals who attended mediation does not have any bearing on the claims or defenses in this litigation.   JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that attended mediation, which imposes a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary. Additionally, it is also impossible for JW to know "all Persons that attended any mediation" to the extent that separate follow up calls or meetings with the mediator may have occurred with any Person involved in the mediation, as JW would not know who contacted the mediator and who may have been on those calls or attended any such follow-up meetings.   JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

**ANSWER:**    Subject to and without waiving the foregoing objections, JW responds as follows: Matthew Cavenaugh, Veronica Polnick, Vienna Anaya, Emily Flynn Meira, and Chris Bankler and Liz Freeman

**INTERROGATORY NO. 78:**    Identify the location of where any mediation occurred.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it irrelevant to the claims and defenses at issue.

Subject to and without waiving the foregoing objections, JW responds as follows: The mediation occurred at the offices of Sidley Austin in New York.

**INTERROGATORY NO. 79:**   Describe in detail how the location of any mediations were selected.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to describe in detail how the location of any mediation was selected, without any limitation, requires JW to compile extensive information which imposes a significant and unreasonable burden on JW that is disproportionate to the needs of these proceedings.  JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as how the location of any mediation was selected does not have any bearing on the claims or defenses in this litigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it impose a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary.  JW further objects to this Interrogatory because it is speculative and impractical for JW to reconstruct and detail the process of selecting mediation locations, especially for those instances where specific records may not have been kept or the decision-making process was informal.

Subject to and without waiving the foregoing objections, JW responds as follows: The parties and former Judge Jones jointly selected New York.  Pursuant to the *Stipulation and Agreed Order Regarding Mediation* [Dkt. No. 356], the mediation was to be held on "April 19, 2022 and April 20, 2022 in New York, New York."  Further,  pursuant to the *Stipulation and Agreed Order Regarding Mediation* [Dkt. No. 356], the mediation was "governed by Paragraph S of the *Procedures for Complex Cases in the Southern District of Texas (Effective January 1, 2023)*," which provide, among other things, that the "mediator will schedule a time and place for the mediation and any pre-mediation conferences."

**INTERROGATORY NO. 80:**   Identify all dates, times, and places that any aspect of any mediation occurred.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to identify all dates, times, and places of any aspect of any mediation, without any limitation, requires JW to compile extensive information, which imposes a significant and unreasonable burden that is disproportionate to the needs of these proceedings.  JW further objects to this Interrogatory because the detailed dates, times, and places of all aspects of any mediation are irrelevant to the claims and defenses at issue.  JW objects to this Interrogatory because it is impractical and requires speculation to determine and identify all dates, times, and places of every aspect of any mediation, particularly for those instances where records may not have been kept. Additionally, JW may not

have been aware of all parties meeting with the mediator or participating in calls, making it impossible to provide a comprehensive and accurate response. JW further objects to this Interrogatory because the dates, times and places of "any aspect of any mediation" would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: The mediation took place in May 2023 at the New York offices of Sidley Austin. Pursuant to the *Stipulation and Agreed Order Regarding Mediation* [Dkt. No. 356], the mediation was to be held on "April 19, 2022 and April 20, 2022 in New York, New York." Further, pursuant to the *Stipulation and Agreed Order Regarding Mediation* [Dkt. No. 356], the mediation was "governed by Paragraph S of the *Procedures for Complex Cases in the Southern District of Texas (Effective January 1, 2023)*," which provide, among other things, that the "mediator will schedule a time and place for the mediation and any pre-mediation conferences."

**INTERROGATORY NO. 81:**  Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: There was a pre-mediation dinner attended by former Judge Jones with advisors to the Debtor and DIP Lender, followed by a post-mediation dinner attended by former Judge Jones with advisors to the Debtor and the UCC. JW is unaware of any payments made on behalf of former Judge Jones.

**INTERROGATORY NO. 82:**  Identify all dates and times that any aspect of any mediation occurred.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory as duplicative of Interrogatory No. 80, and JW adopts and incorporates herein its answer and objections to Interrogatory No. 80. JW refers the U.S. Trustee to the answer provided in response to Interrogatory No. 80.

**INTERROGATORY NO. 83:**  Describe in detail how any mediation expenses were allocated between the parties.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects to this Interrogatory because any mediation expenses would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

201720483

Subject to and without waiving the foregoing objections, JW responds as follows:  JW's mediation expenses were allocated on an individual attorney basis and submitted for approval via fee statements and fee applications.  JW is unaware of how any other mediation expenses were allocated between the parties. Pursuant to the *Stipulation and Agreed Order Regarding Mediation* [Dkt. No. 356], the mediation was "governed by Paragraph S of the *Procedures for Complex Cases in the Southern District of Texas (Effective January 1, 2023)*," which provide, among other things, that "the fees and costs of the mediator will be shared equally by the parties."

**INTERROGATORY NO. 84:**  Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: Albert Alonzo, Rosario Saldana, and former Judge Jones.

### *In re EXCO Resources, Inc.*, Case No. 18-30155

**INTERROGATORY NO. 85:**  Identify all Persons that suggested that parties engage in mediation.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that suggested that parties engage in mediation.

Subject to and without waiving the foregoing objections, JW responds as follows: According to the *Disclosure Statement for the Third Amended Settlement Joint Chapter 11 Plan of Reorganization of Exco Resources, Inc. and its Debtor Affiliates* [Dkt. No. 1907], the Debtors, with the consent of the Committee, Fairfax, and Bluescape, requested that former Judge Jones be appointed to facilitate a mediation.

**INTERROGATORY NO. 86:**  Identify all potential mediators that were suggested by any party.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges. JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records. JW will supplement its answer if additional information becomes available through further investigation. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all potential mediators "that were suggested by any party", regardless of whether they are associated with JW in any way. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows: JW is unaware of any potential mediators that were suggested by any party.

**INTERROGATORY NO. 87:** Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that assisted in preparing for any mediation regarding of whether any time was billed, which imposes a significant burden on JW to review extensive records and communications, far beyond what is reasonable or necessary. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW. JW further objects to this Interrogatory regarding any "assistance in preparing for any mediation" to the extent such assistance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Patty Tomasco, Matthew Cavenaugh, Liz Freeman, and Kristhy Peguero.

**INTERROGATORY NO. 88:** Identify all Persons that attended any mediation.

**ANSWER:** JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33. *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as the identification of individuals who attended mediation does not have any bearing on the claims or defenses in this litigation. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that attended mediation, which imposes a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary. Additionally, it is impossible for JW to know "all Persons that attended any mediation" to the extent that separate

follow up calls or meetings with the mediator may have occurred with any Person involved in the mediation, as JW would not know who contacted the mediator and who may have been on those calls or attended any such follow-up meetings. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW. JW further objects to this Interrogatory to the extent that such attendance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Patty Tomasco, Matthew Cavenaugh, Liz Freeman and Kristhy Peguero.

**INTERROGATORY NO. 89:**   Identify the location of where any mediation occurred.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.   *See* Fed. R. Civ. P. 33(a)(1).   JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it irrelevant to the claims and defenses at issue.

Subject to and without waiving the foregoing objections, JW responds as follows: the Houston offices of Kirkland & Ellis and some sessions were held virtually.

**INTERROGATORY NO. 90:**   Describe in detail how the location of any mediations were selected.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.   *See* Fed. R. Civ. P. 33(a)(1).   JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.   JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to describe in detail how the location of any mediation was selected, without any limitation, requires JW to compile extensive information which imposes a significant and unreasonable burden on JW that is disproportionate to the needs of these proceedings.   JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as how the location of any mediation was selected does not have any bearing on the claims or defenses in this litigation.   JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it impose a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary.   JW further objects to this Interrogatory because it is speculative and impractical for JW to reconstruct and detail the process of selecting mediation locations, especially for those instances where specific records may not have been kept or the decision-making process was informal.

Subject to and without waiving the foregoing objections, JW is unaware of how the location of the mediation was selected.   Pursuant to the *Order Appointing United States Bankruptcy Judge as Mediator* [Dkt. No. 894], the "scope, parties, time and procedures for the mediation [were] determined by Judge Jones, following such consultation with the parties as he deem[ed]

48

appropriate in light of the agreements announced on the record on this date and all other factors that he deems to be appropriate."

**INTERROGATORY NO. 91:**   Identify all dates, times, and places that any aspect of any mediation occurred.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to identify all dates, times, and places of any aspect of any mediation, without any limitation, requires JW to compile extensive information, which imposes a significant and unreasonable burden that is disproportionate to the needs of these proceedings.  JW further objects to this Interrogatory because the detailed dates, times, and places of all aspects of any mediation are irrelevant to the claims and defenses at issue.  JW objects to this Interrogatory because it is impractical and requires speculation to determine and identify all dates, times, and places of every aspect of any mediation, particularly for those instances where records may not have been kept. Additionally, JW may not have been aware of all parties meeting with the mediator or participating in calls, making it impossible to provide a comprehensive and accurate response.  JW further objects to this Interrogatory because the dates, times and places of "any aspect of any mediation" would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows: Mediation commenced on July 19, 2018, including in person meetings on August 6, August 7, August 27, and September 21, 2018.  *See Disclosure Statement for the Third Amended Settlement Joint Chapter 11 Plan of Reorganization of Exco Resources, Inc. and its Debtor Affiliates* [Dkt. No. 1907].  According to the Disclosure Statement, additional mediations occurred on January 9, 2019, March 14, 2019, and March 15, 2019.  Pursuant to the *Order Appointing United States Bankruptcy Judge as Mediator* [Dkt. No. 894], the "scope, parties, time and procedures for the mediation [were] determined by Judge Jones, following such consultation with the parties as he deem[ed] appropriate in light of the agreements announced on the record on this date and all other factors that he deems to be appropriate."

**INTERROGATORY NO. 92:**  Identify and describe in detail any social activities Jackson Walker attended during the mediation with former Judge Jones, including any payments made on behalf of former Judge Jones by Jackson Walker.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW is not aware of any social activities attended by its representatives during the mediation with Judge Jones, nor is JW aware of any payments made on behalf of former Judge Jones by JW.

**INTERROGATORY NO. 93:**  Identify all dates and times that any aspect of any mediation occurred.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1). JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory as duplicative of Interrogatory No. 91, and JW adopts and incorporates herein its answer and objections to Interrogatory No. 91. JW refers the U.S. Trustee to the answer provided in response to Interrogatory No. 91.

**INTERROGATORY NO. 94:**  Describe in detail how any mediation expenses were allocated between the parties.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW's mediation expenses were allocated on an individual attorney basis and submitted for approval via fee statements and fee applications.  JW is unaware of how any other mediation expenses were allocated between the parties.

**INTERROGATORY NO. 95:**  Identify any Persons from the Bankruptcy Court that Jackson Walker contacted regarding the mediation process.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: Albert Alonzo, LinhThu Do, and former Judge Jones.

### *In re Tailored Brands, Inc.*, Case No. 20-33900

**INTERROGATORY NO. 96:**  Identify all Persons that suggested that parties engage in mediation.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it

50

purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that suggested that parties engage in mediation.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW is unaware of the person that suggested that the parties engage in mediation.

**INTERROGATORY NO. 97:**  Identify all potential mediators that were suggested by any party.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW further objects to this Interrogatory on the grounds that responding would require extensive records retrieval and review. The events in question occurred years ago, and any such suggestions could have been made informally without the creation of formal records.  JW will supplement its answer if additional information becomes available through further investigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all potential mediators "that were suggested by any party", regardless of whether they are associated with JW in any way.  JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows:  former Judge Jones.

**INTERROGATORY NO. 98:**  Identify all Persons that assisted in preparing for any mediation regardless of whether any time was billed.

**ANSWER:**  JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that assisted in preparing for any mediation regarding of whether any time was billed, which imposes a significant burden on JW to review extensive records and communications, far beyond what is reasonable or necessary. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.  JW further objects to this Interrogatory regarding any "assistance in preparing for any mediation" to the extent such assistance, if any, was billed to the estates, as such information would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows:  Liz Freeman and Matthew Cavenaugh assisted in preparing for the plan mediation.  Kristhy Peguero and Victoria Argeroplos assisted in preparing for the mediation regarding franchisee matters.

**INTERROGATORY NO. 99:**  Identify all Persons that attended any mediation.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as the identification of individuals who attended mediation does not have any bearing on the claims or defenses in this litigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all Persons—regardless of whether they are associated with JW in any way—that attended mediation, which imposes a significant burden on JW to review extensive records and communications outside JW's custody or control and far beyond what is reasonable or necessary. Additionally, it is impossible for JW to know "all Persons that attended any mediation" to the extent that separate follow up calls or meetings with the mediator may have occurred with any Person involved in the mediation, as JW would not know who contacted the mediator and who may have been on those calls or attended any such follow-up meetings. JW will limit its answer in this Interrogatory to past and present officers, directors, partners, associates, or employees of JW.

Subject to and without waiving the foregoing objections, JW responds as follows:  Matthew Cavenaugh and Liz Freeman attended the plan mediation.  Victoria Argeroplos attended the mediation regarding franchisee matters.

**INTERROGATORY NO. 100:** Identify the location of where any mediation occurred.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it irrelevant to the claims and defenses at issue.

Subject to and without waiving the foregoing objections, JW responds as follows:  The plan mediation occurred virtually due to COVID-19.  The mediation regarding franchisee matters occurred at JW's Houston office.

**INTERROGATORY NO. 101:** Describe in detail how the location of any mediations were selected.

**ANSWER:**   JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client and mediation privileges.  JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to describe in detail how the location of any mediation was selected, without any limitation, requires JW to compile extensive information which imposes a significant and unreasonable burden on JW that is disproportionate to the needs of these proceedings.  JW additionally objects to this Interrogatory as irrelevant to any party's claim or defense as how the location of any mediation was selected does not have any bearing on the claims or defenses in this litigation.  JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it impose a significant burden on JW to review extensive records and communications outside JW's custody

or control and far beyond what is reasonable or necessary.  JW further objects to this Interrogatory because it is speculative and impractical for JW to reconstruct and detail the process of selecting mediation locations, especially for those instances where specific records may not have been kept or the decision-making process was informal.

Subject to and without waiving the foregoing objections, JW responds as follows: The plan mediation occurred virtually due to COVID-19.  For the mediation regarding franchisee matters at JW's offices, opposing counsel agreed to come to Houston.

**INTERROGATORY NO. 102:**  Identify all dates, times, and places that any aspect of any mediation occurred.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit. JW objects to this Interrogatory because it is overbroad and unduly burdensome. The request to identify all dates, times, and places of any aspect of any mediation, without any limitation, requires JW to compile extensive information, which imposes a significant and unreasonable burden that is disproportionate to the needs of these proceedings.  JW further objects to this Interrogatory because the detailed dates, times, and places of all aspects of any mediation are irrelevant to the claims and defenses at issue.  JW objects to this Interrogatory because it is impractical and requires speculation to determine and identify all dates, times, and places of every aspect of any mediation, particularly for those instances where records may not have been kept. Additionally, JW may not have been aware of all parties meeting with the mediator or participating in calls, making it impossible to provide a comprehensive and accurate response.   JW further objects to this Interrogatory because the dates, times and places of "any aspect of any mediation" would be contained in publicly available fee applications, and such information is equally accessible to the U.S. Trustee.

Subject to and without waiving the foregoing objections, JW responds as follows:  The plan mediation occurred in November 2020 and also from time to time virtually due to COVID-19.  Pursuant to the *Joint Stipulation and Agreed Order Appointing Mediator and Governing Mediation Procedure* [Dkt. No. 1034], the mediation was "held on a date selected by Judge Jones." The franchisee mediation occurred post-confirmation, on or around August 13, 2021, according to the *Emergency Motion to Appoint Mediator* [Dkt. No. 1829].

**INTERROGATORY NO. 103:**  Identify and describe in detail any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW is not aware of any social activities attended by its representatives during the mediation with Judge Jones, nor is JW aware of any payments made on behalf of former Judge Jones by JW.  JW

purchased lunch for the mediation parties for the franchisee mediation session that was held at its offices.

**INTERROGATORY NO. 104:** Identify all dates and times that any aspect of any mediation occurred.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: JW objects to this Interrogatory as duplicative of Interrogatory No. 102, and JW adopts and incorporates herein its answer and objections to Interrogatory No. 102. JW refers the U.S. Trustee to the answer provided in response to Interrogatory No. 102.

**INTERROGATORY NO. 105:** Describe in detail how any mediation expenses were allocated between the parties.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows: Other than the lunch purchased by JW for the mediation session at its offices which was an expense charged to the estate, there were no mediation expenses because the mediation occurred virtually due to COVID-19.

**INTERROGATORY NO. 106:** Identify any Persons from the Bankruptcy Court that Jackson Walker contacted the mediation process.

**ANSWER:**    JW objects to this Interrogatory because it exceeds the 25 interrogatory limit set by Federal Rule 33.  *See* Fed. R. Civ. P. 33(a)(1).  JW expressly reserves its right to object to and refuse to answer additional Interrogatories propounded in excess of the 25 interrogatory limit.

Subject to and without waiving the foregoing objections, JW responds as follows:  Albert Alonzo and LinhThu Do.

**<u>VERIFICATION</u>**

I declare under penalty of perjury that the foregoing responses to the Interrogatories are true and correct to best of my knowledge, information, and belief, based on my personal knowledge, information obtained from and discussions with colleagues, and/or my review of documents and information concerning the subject matter of such Interrogatories.

Date: June 24, 2024

*/s/ Matthew Cavenaugh*
Matthew Cavenaugh

55

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT
## Southern District of Texas

**EXHIBIT F**

In re    Professional Fee Matters Concerning
          the Jackson Walker Law Firm

_____
                        Debtor
*(Complete if issued in an adversary proceeding)*

_____
                      Plaintiff
                          v.

_____
                     Defendant

| | |
|---|---|
| Case No. | 23-00645 (EVR) |
| Chapter | 11 |
| Adv. Proc. No. | |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   Jackson Walker LLP
_____
*(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE   **Office of the U.S. Trustee** | DATE AND TIME |
|---|---|
| **515 Rusk Street, Suite 3401** **Houston, TX 77002** | **9:00 a.m. CDST on August 20, 2024** |

The deposition will be recorded by this method:

Court reporter/digital recording

☒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**Any unproduced documents previously requested as part of the *United States Trustee's First Request for Production of Documents to Jackson Walker* dated May 15, 2024**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   July 11, 2024

CLERK OF COURT

OR

_____        *Alicia Barcomb*
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Kevin M. Epstein, United States Trustee  , who issues or requests this subpoena, are: Alicia Barcomb, Trial Attorney, Office of the United States Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002, Alicia.barcomb@usdoj.gov, (713) 718-4661

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:                                      )
                                            )          CASE NO. 23-00645
Professional Fee Matters Concerning         )
the Jackson Walker Law Firm                 )
                                            )          HON. EDUARDO V. RODRIGUEZ

### NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6) and 45:

The United States Trustee will take the depositions upon oral examination, to be recorded

by stenographic means, at the Office of the U.S. Trustee, 515 Rusk Street, Suite 3401, Houston,

TX 77002.

The Jackson Walker Law Firm ("Jackson Walker") is requested to designate the person or

persons most knowledgeable and prepared to testify on behalf of Jackson Walker concerning the

subject matter described on Attachment A. The deposition(s) will commence on August 20, 2024,

at 9:00 a.m. CDST. If necessary, each deposition will be adjourned until completed.

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

Dated: July 11, 2024          By:   *Alicia Barcomb*
                                    Alicia Barcomb, Trial Attorney
                                    U.S. Department of Justice
                                    Office of the United States Trustee
                                    515 Rusk Street, Suite 3516
                                    Houston, Texas 77002
                                    Alicia.barcomb@usdoj.gov
                                    (713) 718-4661

## ATTACHMENT A

### *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*
### Case No. 23-00645

As used herein, the following terms will have the meanings set forth below:

(a)     "**Communication**" shall mean any transmittal of information, including face-to-face discussions, phone calls, voicemails, social media posts, letters, emails, text messages (including SMS messages, instant messages or other communication from third party apps, such as WhatsApp, GroupMe, Facebook Messenger), call records, voice memos, and any other documented verbal communications.

(b)     "**Document**" or "**documents**" means and is intended to have the broadest possible meaning and includes any writings whatsoever, whether written, typed, printed, photographic, recorded, or stored by any electronic or computerized form or otherwise preserved by any means, whether draft or final, and whether original or reproduced. electronic transmissions, e-mails and attachments thereto, computerized records, facsimiles, invoices drawings, reports, records, notes, instructions, memoranda, drafts (whether or not they resulted in a final document), audio recordings, billing statements (including drafts), communications, correspondence, contracts, graphs, charts, photographs, filings, forms, journals, ledgers, letters, lists, minutes, notations, notes, opinions, orders, pamphlets, papers, publications, receipts, summaries, screenshots, social media posts, telegrams, telephone records, text messages, video recordings, voicemail messages, disks, tapes, compact disks, transcripts of oral conversations or statements however made, paper, and forms filed with courts or other governmental bodies, notices, messages, calendar and diary entries, or any other memoranda.

(c)     "**Freeman**" means Elizabeth Freeman, a former partner at Jackson Walker and presently with the Law Offices of Elizabeth Freeman and each past and present agent, representative, attorney, expert, insurer, executor, administrator, or anyone acting on her behalf.

(d)     "**Holland & Knight**" means Holland & Knight LLP and each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual.

(e)     "**Jones**" means David R. Jones, both in a personal capacity and as a former Judge of the United States Bankruptcy Court for the Southern District of Texas, and each past and present agent, representative, attorney, expert, insurer, executor, administrator, employee, or anyone acting on his behalf.

(f)     "**Jackson Walker**" means Jackson Walker LLP and each past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, servant, and each representative of such entity or individual.

(g)     "**Relevant Cases**" means (i) each case listed on Exhibit 6 to the United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving any Jackson Walker Applications for Compensation and Reimbursement of Expenses filed in this case, and (ii) any cases in which both Jackson Walker and the Law Office of Liz Freeman worked, including *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23-90085), *In re Candy Club LLC* (Case No. 23-60048), and *In re QualTek Services Inc.* (Case No. 23-90584), each filed in the Bankruptcy Court for the Southern District of Texas (Houston Division). For the avoidance of doubt, each listed case includes all cases involving affiliated and related debtors.

(h)     "**Van Deelen Litigation**" means the Adversary Proceeding known as Case No. 20-03309 filed in the Bankruptcy Court for the Southern District of Texas (Houston Division) and the Complaint filed by Michael D. Van Deelen commencing Case No. 4:23-cv-03729 pending in the United States District Court for the Southern District of Texas (Houston Division).

(i)     "**Relationship**" means any personal relationship between Jones and Freeman, including intimate, financial, fiduciary, cohabitating, romantic or sexual.

(j)     "**Relate(d) to**" or "**relating to**" means constituting, defining, concerning, embodying, reflecting, identifying, stating, referring to, bearing upon, dealing with, or in any way pertaining to a subject matter.

(k)     The disjunctive **"or"** shall include the conjunctive **"and."**

## LIST OF TOPICS FOR EXAMINATION

1. Knowledge of the terms of Freeman's compensation structure while employed at Jackson Walker.

2. Knowledge of the separation of Freeman from Jackson Walker, including but not limited to the negotiations thereof, the terms of the separation, and

3. Knowledge of Jackson Walker internal guidance or policy regarding the duty of Jackson Walker personnel to disclose personal or romantic relationships with other legal professionals, such as judges or mediators, to Jackson Walker.

4. Knowledge of the alleged discovery of the Relationship in 2021, as set forth in Jackson Walker's Response (¶¶ 33–35).

5. Knowledge of the additional information allegedly learned of by Jackson Walker in February 2022, as set forth in Jackson Walker's Response (¶¶ 46–49).

6. Knowledge of Jackson Walker's deliberations regarding what actions to take regarding the Relationship, including alternatives considered.

7. Knowledge of Freeman's performance evaluations, employment contracts, fee sharing agreements, and any other contracts or agreements related to Freeman's professional relationship with Jackson Walker.

8. Knowledge of Freeman's services rendered in the Relevant Cases.

9. Knowledge of disclosures Freeman or Jones made to Jackson Walker relating to Jones's role as a presiding judge or mediator in the Relevant Cases.

10. Knowledge of any ex parte communications between Jackson Walker and Jones regarding the Relevant Cases, the Van Deelen litigation, Freeman, and/or the Relationship.

11. Knowledge of any communications between Jackson Walker and Kirland & Ellis relating to Jackson Walker's serving as local counsel in chapter 11 bankruptcy cases filed or to be filed in the United States Bankruptcy Court for the Southern District of Texas.

12. Knowledge of any communications between Jackson Walker and Tom Kirkendall regarding the Relationship, Freeman's separation from Jackson Walker, or a duty to disclose the Relationship.

13. Knowledge of any communications between Jackson Walker and Patricia B. Tomasco regarding the Relationship, Freeman's separation from Jackson Walker, or a duty to disclose the Relationship.

14. Knowledge of any communications between Jackson Walker and Kirland & Ellis regarding the Relationship, Freeman's separation from Jackson Walker, or a duty to disclose the Relationship.

15. Knowledge of any communications between Jackson Walker and Kirkland & Ellis regarding the Van Deelen Litigation, including the motion to recuse Jones.

## Steele, Laura (USTP)

| | |
|---|---|
| **From:** | Thill, Brian P. (USTP) |
| **Sent:** | Thursday, August 15, 2024 12:34 PM |
| **To:** | paul.trahan@nortonrosefulbright.com |
| **Cc:** | Steele, Laura (USTP); Charboneau, Joel (USTP); Barcomb, Alicia (USTP) |
| **Subject:** | JW 30(b)(6) and docs due to UST |

**EXHIBIT G**

Dear Attorney Trahan,

It was nice to meet you yesterday afternoon.  As a follow-up to our meet and confer yesterday afternoon,

1.  JW 30(b)(6) topics – You mentioned two topics in particular:
    - #9 – The UST is interested in disclosures that Freeman or Jones made to JW which relate to Jones' role as a presiding judge or mediator in the Relevant Cases.   By way of example, this topic might relate to the role that Jones had already taken in any of those cases, but also to the role that Jones, JW, or anyone else desired or suggested for Jones or an alternative to Jones, or how if at all Jones' role in those cases might be affected based on certain facts—whether related to the Relationship or otherwise.
    - #11 – Topics 14 and 15 already cover communications between JW and K&E regarding the Relationship, Freeman's separation from JW, duty to disclose the Relationship, Van Deelen, and motion to recuse, so for this topic to have any independent meaning, it: (i) may include things like (again, by way of example) when and how the JW-K&E relationship was first proposed and started, how it was fostered or maintained, what it was dependent upon, how and why it might be expanded, and who was to do what; but (ii) would specifically exclude any case-specific advice to clients.

2.  JW document production deficiencies – There may very well be a deeper dive, but some conspicuous examples to start include but are not limited to:
    - Portions of the JW Attorney Sourcebook (see response to #1
    - Employment or shareholder agreements which reflect what, when, and how Freeman was to be paid (see #2)
    - Portions of JW's ethics policies and procedures (see response to #3)
    - Attached conflicts form referenced in Liz's onboarding lateral questionnaire (see #11 and 27)
    - Initial offer letter from JW to Freeman (see #12)
    - History of Freeman equity buy-in/ledger, including amount, source, date, etc. (see #13)
    - Liz's 2018 performance review and personal report record hyperlinked within 2019-2021 annual reviews (see #20-21)

Please confirm what if anything you believe I may be missing regarding the above particular JW 30(b)(6) topics and when the UST can expect JW to provide the documents itemized under above.  Thank you.

*Brian P. Thill*
Trial Attorney
Office of the United States Trustee
780 Regent Street, Suite 304
Madison, WI 53715
(608) 264-5522 Main
(608) 210-5646 Direct
(202) 760-5030 Mobile

**EXHIBIT**

**H**

1              UNITED STATES BANKRUPTCY COURT

2                 SOUTHERN DISTRICT OF TEXAS

3

4     - - - - - - - - - - - - - -

5     IN RE:                    )

6     PROFESSIONAL FEE MATTERS   ) CASE NO.

7     CONCERNING THE JACKSON     ) 23-00645 (EVR)

8     WALKER LAW FIRM,           ) CHAPTER 11

9              Debtor           )

10    - - - - - - - - - - - - - -

11

12

13

14            DEPOSITION OF W. ROSS FORBES, JR.

15              AS CORPORATE REPRESENTATIVE

16              RE:  JACKSON WALKER, LLP

17              TUESDAY, AUGUST 20, 2024

18

19

20

21          BEMKE REPORTING AND VIDEO SERVICES, INC.

22       BY:  CAMILLE A. BRUESS, RPR, TEXAS CSR NO. 3824

23                550 CALIFORNIA STREET, SUITE 820

24                SAN FRANCISCO, CALIFORNIA  94104

25                              (415) 597-5600

1

2

3

4     Q.  At the time that Ms. Freeman joined Jackson

5  Walker did she receive or sign an employment agreement,

6  income shareholder agreement, any agreement or

7  correspondence that would have spelled out the terms of

8  her employment?

9     A.  As I understand your question that was very

10  compound, she signed a partnership agreement when she

11  joined the firm as a partner.

12     Q.  As an income partner.

13     A.  Partners -- for purposes of the partnership

14  agreement, it's the same agreement.

15     Q.  The U.S. Trustee is requesting a copy of that

16  agreement.

17     A.  Is that a question?

18     Q.  No, it's a document request that we could follow

19  up on later.

20     A.  You should direct it to my lawyers.

21     Q.  Okay.  I am.  How many times was Liz Freeman's

22  compensation increased while she was at Jackson Walker?

23     A.  She was at our firm from 2018 through 20 --

24  roughly 2022, and it increased every year.

25     Q.  How many times was Ms. Freeman's compensation

1    A.  Re-ask it.  I think you left some words out of
2  that.
3    Q.  So the mechanism to terminate a relationship,
4  voluntarily or involuntarily, the equity partner
5  relationship, is that spelled -- and those terms in the
6  mechanism, is that spelled out in the partnership
7  agreement?
8    A.  The partnership agreement spells out the process
9  for removing an equity partner from the partnership.
10    Q.  Were those steps followed in this instance?
11    A.  We -- we didn't vote to remove Ms. Freeman from
12  the equity partnership.  So, no.
13    Q.  Are the specific reasons -- is it -- is it cause
14  based?  Does there need to be cause to terminate someone
15  involuntarily?
16    A.  I don't believe so.
17    Q.  Does Jackson Walker have a roster of who its
18  equity partners were in 2022?
19    A.  (Sighs) Uh, it's -- probably.  I don't know
20  where that would be kept, but probably.
21    Q.  When was the first time after March 30th of 2022
22  that Jackson Walker notified Kirkland & Ellis about what
23  Jackson Walker learned between February -- well, January
24  31st of 2022 and March 30th of 2022?
25    A.  I don't know.

```
 1    STATE OF TEXAS     )

 2                       ) ss.

 3    COUNTY OF HARRIS   )

 4             I, Camille A. Bruess, Certified Shorthand

 5    Reporter in and for the State of Texas and Registered

 6    Professional Reporter, hereby certify to the following:

 7             That the witness, W. ROSS FORBES, JR., was

 8    duly sworn by the officer and that the transcript of the

 9    oral deposition is a true record of the testimony given

10    by the witness to the best of my ability;

11             I further certify that I am neither attorney

12    nor counsel for, related to, nor employed by any of the

13    parties in the action in which this testimony was taken.

14             Further, I am not a relative or employee of

15    any attorney of record in this cause, nor am I

16    financially or otherwise interested in the outcome of

17    the action.

18             Subscribed and sworn to on this 29th day of August,

19    2024.

20    Reading and signing was: requested.

21

22

23

24             CAMILLE A. BRUESS, RPR, TEXAS CSR NO. 3824

25             Expiration Date:  4/30/25
```





**U. S. Department of Justice**

Office of the United States Trustee

Southern and Western Districts of Texas – Region 7

Southern District Offices:
515 Rusk Street, Suite 3516
Houston, Texas 77002
713-718-4650
Fax 713-718-4670

August 29, 2024

Norton Rose Fulbright
Paul Trahan
Jason L. Boland
William R. Greendyke
Maria Mokrzycka
1301 McKinney Street, Suite 5100
Houston, Texas 77010
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Re:    Case No. 23-00645
       *In re: Professional Fee Matters Concerning the Jackson Walker Law Firm*

Dear Counsel,

The United States Trustee (the "U.S. Trustee") seeks the opportunity to meet and confer with Jackson Walker LLP ("Jackson Walker" or "JW") next week regarding its response to the U.S. Trustee's First Set of Interrogatories, and its response to the U.S. Trustee's First and Second Requests for Production of Documents.  The U.S. Trustee seeks a meet and confer to be held either on September 5 at 9:00 a.m. CT, or on September 6, 2024 at 1:30 p.m. At this meet and confer, the U.S. Trustee seeks to discuss each item below to see if resolution can be reached. **Please advise no later than September 2, 2024 at 5:00 p.m. CT of your meeting time preference.**

*U.S. Trustee's Written Discovery Requests to JW*

On May 15, 2024, the U.S. Trustee served his First Set of Interrogatories and Request for Production of Documents on Jackson Walker.  By agreement with the U.S. Trustee, the deadline to respond and object to the First Set of Interrogatories and Requests for Production of Documents was extended to June 24, 2024.  On June 24, 2024, Jackson Walker produced responses and objections to the U.S. Trustee's First Set of Interrogatories and Request for Production of Documents.  Documents Jackson

1

Walker deemed responsive were produced on a rolling basis on June 24, 2024; July 2, 2024; July 15, 2024; July 29, 2024; August 7, 2024; August 12, 2024; and August 21, 2024. On August 26, 2024, Jackson Walker produced responses and objections to the U.S. Trustee's Second Request for Production of Documents.

On July 26, 2024, the U.S. Trustee served his Second Request for Production of Documents on Jackson Walker. The deadline for Jackson Walker to respond to the Second Request for Production of Documents was August 26, 2024. Although Jackson Walker provided its objections and written responses to the U.S. Trustee's Second Request for Production on the date they were due, no additional documents have been received by the U.S. Trustee since August 21, 2024.

*Deficiencies with JW's Written Discovery Responses*

After reviewing Jackson Walker's responses to the Interrogatories and Requests for Production of Documents, the U.S. Trustee has identified several deficiencies. This letter addresses those deficiencies.

First and as set forth in further detail below, please confirm whether you intend to further supplement JW's responses to the U.S. Trustee's First Set of Interrogatories and First and Second Requests for Production of Documents and, if so, when. Unilaterally withholding documents and unilaterally producing documents on a rolling basis after the time required for production is not permitted under the Federal Rules of Civil Procedure. *See, e.g., Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009), *clarified on denial of reconsideration*, No. 1:07CV01229-SEB-JMS, 2010 WL 11561280 (S.D. Ind. Jan. 29, 2010).

Second, notwithstanding the deficiencies addressed below, Jackson Walker produced several documents with redactions. These documents include but are not limited to: (i) JW_00020318 to JW_00020319; (ii) JW_00020320 to JW_00020321; (iii) JW_00020323 to JW_00020324; (iv) JW_00020325 to JW_00020327; (v) JW_00020339 to JW_00020340; and (vi) JW_00020341 to JW_00020344. To the extent Jackson Walker is redacting privileged communication responsive to the U.S. Trustee's Document Request, please promptly produce a privilege log. To the extent Jackson Walker is redacting personally identifiable information, please produce a redaction log.

## U.S. TRUSTEE'S FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 4: Describe in detail all Jackson Walker's efforts and actions taken to determine disqualifying circumstances and/or conflicts in the Relevant Cases.**

**Jackson Walker's Response:** JW followed the procedures set forth in its Answer to Interrogatory No. 3 in each of the Relevant Cases.

**U.S. Trustee's Request:** Jackson Walker limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-

90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.  Please withdraw your objection to the definition of "Relevant Cases" and provide a complete response to this Interrogatory.

**INTERROGATORY NO. 9: Identify all individuals involved in any investigation of the Relationship and/or in the decision of what actions to take relating to the Relationship in the Relevant Cases.**

**Jackson Walker's Response:** JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine. JW further objects that this Interrogatory is overbroad and not proportional to the needs of these proceedings because it purports to require JW to identify all individuals— regardless of whether they are associated with JW in any way—who were involved in any investigation of the Relationship and/or in the decision of what actions to take relating to the Relationship.

Subject to and without waiving the foregoing objections, JW refers the U.S. Trustee to JW's Initial Disclosures served on the U.S. Trustee on March 1, 2024, the Preliminary Response of Jackson Walker to Recent Filings by the Office of the United States Trustee filed on November 13, 2023, and Jackson Walker LLP's Response in Opposition to the United States Trustee's Amended and Supplemental Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief filed on May 22, 2024 in the Relevant Cases, all of which are adopted and incorporated herein by reference. JW further responds as follows: Wade Cooper, Matt Dow, Julia Mann, Pryia Coffey, Mike Taten, Ross Forbes, Debbie Robinowitz, Jay Rutherford, Pat Cowlishaw, William Jenkins, Bruce Ruzinsky, Matthew Cavenaugh, Chip Babcock, and Liz Freeman. JW also identifies Peter Jarvis, Tom Kirkendall, Jacqueline Harvey, and former Judge Jones as other individuals not affiliated with JW.

**U.S. Trustee's Request:** Jackson Walker limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al*., (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.  Please withdraw your objection to the definition of "Relevant Cases" and provide a complete response to this

Interrogatory.

**INTERROGATORY NO. 14:  Identify all individuals at Jackson Walker who knew about the Relationship before October 7, 2023.**

**Jackson Walker's Response:**  JW objects to this Interrogatory as vague and ambiguous with respect to the word "knew" as JW still lacks knowledge on the precise nature of any relationship, past or present, between Ms. Freeman and former Judge Jones.  Subject to and without waiving the foregoing objections, JW responds that the following individuals at JW had information regarding allegations of a relationship prior to October 7, 2023: Pat Cowlishaw, William Jenkins, Julie Lewis, Chip Babcock, Amy Baird, Alden Crow, Suzan Kedron, Brad Knippa, Virginia Mimmack, Vytas Petrulis, Michelle Moore Smith, Bruce Ruzinsky, Matthew Cavenaugh, Wade Cooper, Matt Dow, Julia Mann, Pryia Coffey, Mike Taten, Ross Forbes, Debbie Robinowitz, and Jay Rutherford.  JW is still conducting discovery and will supplement its answer to this Interrogatory if additional individuals at JW are identified.

**U.S. Trustee's Request:**  Jackson Walker's response is inaccurate.  By way of example only, Kristhy Peguero testified at her deposition that both she and Veronica Polnick claimed to know about the Relationship nearly a year before October 7, 2023. Please confirm whether and when Jackson Walker will supplement this Interrogatory.

**INTERROGATORY NO. 16:  Describe in detail all actions Jackson Walker took in response to or in compliance with any communications from Holland & Knight regarding the Relationship.**

**Jackson Walker's Response:**  JW objects to and refuses to answer this Interrogatory to the extent that it calls for information or material that is protected by the attorney-client privilege and/or the work-product doctrine.

**U.S. Trustee's Request:**  Among other things, by referencing its actions in its pleadings, producing documents relating to the communications in written discovery, and testifying to these matters without objection at JW's 30(b)(6) deposition, Jackson Walker has waived privilege regarding these matters.  Jackson Walker's *actions* are regardless not privileged or protected by work product.  Jackson Walker is therefore able to describe any actions it took in response to or in compliance with any communications from Holland & Knight regarding the Relationship without disclosing privileged information.  Please withdraw your objection and provide a complete answer to this Interrogatory.

**INTERROGATORY NO. 18:  Identify all of Jackson Walker's staff, office space, equipment, software, database or other resources that were used by Freeman or made available to Freeman following the termination of her partnership with Jackson Walker.**

**Jackson Walker's Response:**  JW objects to this Interrogatory because it is overbroad and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings.  Subject to and without waiving the forgoing objection, upon Ms.

Freeman's separation from JW, Ms. Freeman turned in her keycard and all JW property (e.g., computer), and was not permitted access to JW's equipment, software, database, or other resources.  On an as-needed basis, in cases where JW and Ms. Freeman were working together as co-counsel or where Ms. Freeman served as conflicts counsel, conference room space was made available for Ms. Freeman in JW's public conference room space on the 20th floor in its Houston office.  Ms. Freeman was required to notify a JW bankruptcy team member when she was planning to come to the firm to work in a conference room so that she was placed on a list of visitors, and she had to check in with the downstairs security desk to be escorted up to JW's conference room space.  Additionally, JW assisted Ms. Freeman in the preparation of her retention application and final fee application in *IEH Auto Parts Holdings, LLC*, Case No. 23-90055 (CML).  Finally, in cases where JW used Ms. Freeman's services as an independent contractor, JW included Ms. Freeman's fees and expenses as part of JW's fee statements and fee applications.

**U.S. Trustee's Request:**  JW's response does not identify the names of Jackson Walker's staff made available to Ms. Freeman following the termination of her partnership with Jackson Walker, including but not limited to the names of any "bankruptcy team member," "co-counsel," or those from "JW" assisting Ms. Freeman "in the preparation of her retention application and final fee application in *IEH Auto Parts Holdings, LLC*, Case No. 23-90055 (CML)" or who "included Ms. Freeman's fees and expenses as part of JW's fee statements and fee applications."  Please provide a complete response to this Interrogatory.

**INTERROGATORY NO. 24:   Identify all of Freeman's guests at any event that Jackson Walker sponsored or hosted in whole or in part.**

**Jackson Walker's Response:**  JW objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because it seeks plainly irrelevant information about the identity of Ms. Freeman's guests at JW events, including guests who have no involvement with the claims or defenses set forth in these proceedings. The burden or expense of such proposed discovery outweighs its likely benefit. JW further objects to this Interrogatory as vague and unduly burdensome, as it would be impossible for JW to determine who Ms. Freeman may have invited on her own to any particular event in question.

Subject to and without waiving the foregoing objections, JW responds as follows:  JW is searching for this information and will supplement its answer to this Interrogatory if responsive information is located.

**U.S. Trustee's Request:**  The U.S. Trustee consents to narrowing the time period for this Interrogatory to include all dates from May 14, 2018, to October 6, 2023.  Jackson Walker objects to this Interrogatory as overbroad, unduly burdensome, and seeking information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings.  However, JW-sponsored or hosted events attended by Freeman are searchable by JW, and by way of example only, JW has not stated the total number of such events, how many of those events permitted or documented guest registrations, whether Freeman regularly had guests at such events or rarely if ever had guests at such events, or whether Freeman's guests

were usually professional contacts or family members.  Please respond to these threshold issues so that the U.S. Trustee might further narrow the scope of this request to satisfy JW's objections.

**INTERROGATORY NO. 25: Identify all private or public clubs, associations, societies, or organizations in which both Judge Jones and Jackson Walker are members.**

> **Jackson Walker's Response:** JW objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings because, as written, it seeks plainly irrelevant information about the membership of any "past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, [or] servant" of JW in any organization whatsoever, as long as Judge Jones is also a member. Responding to this Interrogatory would therefore require JW to compile a list of all organizations of which anyone associated with JW is or was a member, and then cross-reference that list with a list of organizations of which Judge Jones is a member. This is disproportionate to the needs of these proceedings because the burden or expense of the proposed discovery outweighs its likely benefit. Moreover, JW has no way of knowing whether former Judge Jones is or was a member of any particular organization.

> Subject to and without waiving the foregoing objections, JW responds as follows: To the best of JW's knowledge, JW is unaware of any clubs, associations, societies, or organizations in which both former Judge Jones and the members of the JW bankruptcy team are members.

> **U.S. Trustee's Request:** Jackson Walker limited its response to the best of its knowledge, and only to "members of the JW bankruptcy team."  Under JW's limited interpretation of this Interrogatory, JW would not have to disclose its actual knowledge that one or more of its non-bankruptcy team members are members in a private or public club, association, society, or organization with Jones.  To the extent Jackson Walker continues to rely on its objections, the U.S. Trustee will agree to limit the scope of this Interrogatory to include: (a) any "past and present officer, director, attorney, partner, associate, employee, independent contractor, agent, [or] servant" of JW for which JW has actual knowledge of any concurrent membership; and (b) any Persons identified in response to the U.S. Trustee's Interrogatory 1.c that have or had concurrent membership.  Please amend JW's response in conformity with this updated limitation.

## U.S. TRUSTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:   Jackson Walker's policies and procedures regarding conflict checks and/or disclosing connections for any new and existing matters.**

> **Jackson Walker's Objections:** JW objects to this Request given that the phrase "policies and procedures" is vague and ambiguous.

6

**Jackson Walker's Response:** Subject to the above, Jackson Walker will produce the portions of the Jackson Walker Attorney Sourcebook that cover conflict policies. Jackson Walker does not have any written policies relating to disclosing connections. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**U.S. Trustee's Request:** Jackson Walker has not produced the Attorney Sourcebook despite the U.S. Trustee's multiple requests for it, including both at and via email sent to Jackson Walker counsel on August 15, 2024, in advance of the scheduled Fed. Civ. P. Rule 30(b)(6) Jackson Walker deposition. Please produce all responsive documents. If Jackson Walker is withholding documents, please explain in detail the basis for withholding them. If Jackson Walker is withholding any documents on the basis of privilege, provide a privilege log.

**REQUEST NO. 2:   Documents relating to all Compensation paid to Freeman by Jackson Walker.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, vague, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1).

**Jackson Walker's Response:** Subject to the above, JW will produce responsive, non-privileged documents sufficient to show the amounts Ms. Freeman was compensated while a partner at JW. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**U.S. Trustee's Request:** Ross Forbes testified to multiple facets of Freeman's Compensation known to JW for which no documentation has been produced by JW, including base amounts, bonuses, and origination computations and splits. JW's response also attempts to unilaterally change this Request from Compensation paid to Freeman by Jackson Walker, to amounts Ms. Freeman was compensated *while* a partner at JW. As defined, "Compensation" could also include amounts paid to Ms. Freeman before or after she was actually a partner at JW. JW's Response is therefore insufficient and must be clarified. Further, the response provides that Jackson Walker is withholding responsive "confidential" information that it will produce subject to a protective order. The stipulated protective order was entered on July 30, 2024, but only annual questionnaires and separation offsets have been provided. Please produce all responsive documents.

**REQUEST NO. 3:   Jackson Walker's billing statements, pre-billing statements, drafts of billing statements or write-offs in any form for any case, administrative proceeding, mediation, or other legal matter in which Freeman either worked, consulted, or provided any support.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks documents relating to all billing statements in any way involving Freeman regardless of whether the matters in question were pending before, mediated by, or in any other way related to Judge Jones and regardless of whether or not they relate to any Relevant Case. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work- product doctrine and/or mediation privileges. JW further objects to the phrase "any support" as vague. JW also objects to this Request to the extent that such information is part of and included in JW's fee applications and fee statements, which are equally accessible to the U.S. Trustee and publicly available.

**Jackson Walker's Response:** Subject to the above, JW will produce responsive, non-privileged documents or non-privileged portions of documents reflecting hours billed by Ms. Freeman in the Relevant Cases, as limited by JW in its objections to the definitions and instructions. JW will also produce responsive, non-privileged documents or non-privileged portions of documents reflecting any hours billed by Ms. Freeman in the Relevant Cases (as limited by JW in its objections to the definitions and instructions) that were written off or not ultimately charged to the client. JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**U.S. Trustee's Request:** Pro formas, prebills, or any markups thereof for JW's time input or billed on any Relevant Case were not produced. Further, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter. The response also provides that Jackson Walker is withholding responsive "confidential" information that it will produce subject to a protective order. The stipulated protective order was entered on July 30, 2024. Please withdraw your objection to the definition of "Relevant Cases" and produce all responsive documents.

**REQUEST NO. 4: Documents relating to Jackson Walker's ethical policies and procedures, including training on legal ethics and reporting of its employees' and partners' non-compliance with ethical rules to the appropriate court, state bar, insurance carriers and disciplinary authorities.**

**Jackson Walker's Response:**  In addition to the Texas Disciplinary Rules of Professional Conduct, which are publicly available, JW will produce responsive, non-privileged documents or non-privileged portions of documents reflecting JW's ethics policies and procedures.

**U.S. Trustee's Request:**  Jackson Walker has not produced its ethics policies and procedures. Please produce all responsive documents and, to the extent Jackson Walker redacts privileged communication responsive to the U.S. Trustee's Request, provide a privilege log.

**REQUEST NO. 5: Documents relating to any conflict or connection checks conducted in the Relevant Cases, including the results.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, vague, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks documents relating to "any conflict or connection checks conducted in the Relevant Cases" regardless of whether the "conflict or connection check" in question included former Judge Jones. JW further objects to the phrase "connection check" as vague and ambiguous. JW also objects to this Request because connection results are publicly available as they are included in JW's retention applications, and any related supplemental disclosures filed in the Relevant Cases. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work-product doctrine and/or mediation privileges, or would have JW disclose confidential client information in violation of Texas Disciplinary Rule of Professional Conduct 1.05.

**Jackson Walker's Response:**  Subject to the above, JW will produce non-privileged documents, if any, relating to any conflict or connection checks conducted in the Relevant Cases, as limited by JW in its objections to the definitions and instructions. At this time, JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**U.S. Trustee's Request:**  With the exception of 4E Brands, Jackson Walker has not produced documents relating to any conflict or connection checks conducted in the Relevant Cases. Further, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048).  Jackson Walker has

9

not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.  Please withdraw your objection to the definition of "Relevant Cases" and produce all responsive documents.  The response also provides that Jackson Walker is withholding responsive "confidential" information that it will produce subject to a protective order.  The stipulated protective order was entered on July 30, 2024. Please produce or confirm that all responsive documents have been produced.

**REQUEST NO. 7:  All disclosure materials prepared by all potential mediators provided to Jackson Walker in the Relevant Cases.**

**Jackson Walker's Objections:** Jackson Walker objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because, as propounded, it seeks all disclosure materials prepared by ***any potential mediator*** that has been provided to JW in the Relevant Cases since January 1, 2018.

**Jackson Walker's Response:** Subject to the above, Jackson Walker will produce responsive, non- privileged disclosure materials, if any exist, provided to JW and prepared by former Judge Jones in his capacity as mediator on any of the Relevant Cases, as limited by JW in its objections to the definitions and instructions. At this time, JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**U.S. Trustee's Request:**  The U.S. Trustee agrees that this Request may be limited to to former Judge Jones and not other potential mediators.  However, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al*., (Case No. 20-20184) (Dkt. No. 1351) and excluded for example *In re Candy Club LLC* (Case No. 23-60048).  Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.  Please withdraw your objection to the definition of "Relevant Cases" and produce all responsive documents.

**REQUEST NO. 8:   Documents relating to the Relationship, including but not limited to:**
   **a.  Documents relating to Jackson Walker's receipt of information regarding the Relationship;**
   **b.  Documents relating to any investigations and/or inquiries;**
   **c.  The anonymous letter referred to in the Preliminary Response and all**

        documents relating to it;

    d.  **Documents between Jackson Walker and Kirkland directly or indirectly mentioning or addressing the Relationship, including in the Van Deelen Litigation;**

    e.  **Documents relating to the disclosure or lack of disclosure of the Relationship to any third parties or persons;**

    f.  **All internal communications within Jackson Walker relating to the Relationship; and**

    g.  **Documents relating to any decisions or actions taken as a result of the Relationship.**

**<u>Jackson Walker's Objections:</u>** JW objects to this Request because it is vague, overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Additionally, the Request, and each subpart, is overbroad and unduly burdensome because it seeks all documents in any way relating to the Relationship, which, as defined by the U.S. Trustee, is overly broad, as it encompasses mere friendship. As noted in its objections to the definitions and instructions, JW will interpret "Relationship" to mean a relationship between Ms. Freeman and former Judge Jones that was intimate, financial, fiduciary, cohabitating, romantic, or sexual. JW objects to this Request as vague and ambiguous to the extent it seeks documents "indirectly mentioning or addressing the Relationship." JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work-product doctrine and/or mediation privileges. JW also objects to this Request to the extent that such information is part of and included in filings made in the Relevant Cases, which are equally accessible to the U.S. Trustee and publicly available.

JW objects to Request 8(a) because, as written, it seeks documents relating to JW's receipt of information relating to the Relationship at any point between January 1, 2018, and May 15, 2024. Given that the Relationship made national news in October of 2023, Request 8(a) conceivably encompasses any news alerts received by any person at Jackson Walker from that point forward. Accordingly, JW will limit the time frame for this Request to January 1, 2018 through October 6, 2023.

JW objects to Request 8(c), which is vague and ambiguous in its use of "it" at the sentence end as it is unclear whether "it" refers to the anonymous letter or the Relationship.

JW objects to Request 8(g) which is unduly burdensome and overly broad in that it seeks documents relating to "any decision or actions taken as a result of the Relationship." Request 8(g) exceeds the bounds of responsive materials that are relevant to any claim or defense in this litigation. Jackson Walker will produce material in response to 8(g) that relates to "any decision or actions taken as a result of the Relationship pertaining to the Relevant Cases, Ms. Freeman's employment with Jackson Walker, or Jackson Walker's interactions with Judge Jones or the Bankruptcy Court for the Relevant Cases." "Relevant Cases" will be limited as noted by JW in its objections to the definitions and instructions.

**Jackson Walker's Response:**   Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request.  JW is withholding privileged materials responsive to this Request. JW is withholding documents based on its objections as noted above.

**U.S. Trustee's Request:** Jackson Walker withheld allegedly privileged materials responsive to this Request, but Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or produce a privilege log describing the documents that Jackson Walker has withheld because they allegedly contain "privileged" information.

Specifically as to Request 8(c), the "it" at the end of this request refers to the anonymous letter referenced in the Preliminary Response.  Please withdraw Jackson Walker's objection to Request 8(c) and provide all responsive documents.

Jackson Walker's response to Request 8(g) limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.

Further as to Request 8(g), the scope of discovery is broad.  *See, e.g.*, *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).  Ms. Freeman was at Jackson Walker for four-and-a-half years, and Jackson Walker claims to have been aware of the Relationship for approximately 20 months, less than half of that time period.  The U.S. Trustee agrees to limit Request 8(g) to the time period between March 28, 2018, and October 6, 2023, and actions taken by Ms. Freeman, former Judge Jones, Jackson Walker, or any of its co-counsel.  With this clarification, Request 8(g) is not unduly burdensome or over broad and does not exceed the relevant bounds of the U.S. Trustee's claims in this matter.  Please withdraw Jackson Walker's objection to Request 8(g) and provide all responsive documents.

**REQUEST NO. 10: All expense reports or requests for reimbursement from Freeman or the Law Office of Liz Freeman submitted to Jackson Walker related to the Relevant Cases.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is overbroad and unduly burdensome because, as written, it seeks the production of all expense reports submitted by Ms. Freeman regardless of whether they were ultimately charged to the client.

12

**Jackson Walker's Response:**  Subject to the above, and to the extent responsive documents exist, JW will produce expense reports or requests for reimbursement Ms. Freeman submitted to JW relating to the Relevant Cases, as limited by Jackson Walker as noted above in its objections to the definitions and instructions. At this time, JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**U.S. Trustee's Request:** Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.  Please withdraw your objection to the definition of "Relevant Cases" and produce all responsive documents.

**REQUEST NO. 11:  Documents relating to the recruitment and hiring of Freeman by Jackson Walker.**

**Jackson Walker's Objections:** JW objects to this Request as overbroad because it seeks all documents in any way relating to Ms. Freeman's hiring by JW over six years ago, regardless of whether such documents relate in any way to former Judge Jones or the Relationship.

**Jackson Walker's Response:**  JW will produce the offer letter sent to Ms. Freeman,  the Lateral Partner Questionnaire, and any notes or written feedback relating to interviews of Ms. Freeman conducted as part of the hiring process. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**U.S. Trustee's Request:** Jackson Walker has not produced the offer or confirmation letters sent to Ms. Freeman or the attachment to the Lateral Partner Questionnaire (JW_00016049). Jackson Walker stated in its response that it withheld responsive "confidential" information that it would produce subject to a protective order.  The court entered the stipulated protective order July 30, 2024, yet Jackson Walker has not produced the documents it withheld.

**REQUEST NO. 12:  Documents relating to any Compensation that Jackson Walker offered to Freeman.**

**Jackson Walker's Objections:** JW objects to this Request as overbroad because it seeks all

13

documents in any way relating to compensation "offered" to Ms. Freeman, regardless of whether they concern former Judge Jones or the Relationship. JW further objects to this Request as duplicative of Request No. 2. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW objects to this Request as vague and ambiguous with respect to the term "offered."

**Jackson Walker's Response:**   Subject to the above, JW will produce responsive, non-privileged documents sufficient to show the amounts Ms. Freeman was compensated while a partner at JW. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.  Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**U.S. Trustee's Request:**   Jackson Walker has not produced documents relating to all Compensation offered to Freeman by Jackson Walker, including but not limited to offer letters, bonus confirmations, compensation committee memos and notices, and settlement offers. JW's response also attempts to unilaterally change this Request from Compensation *offered* from JW to Freeman, to amounts Ms. Freeman *was* compensated *while* a partner at JW.  As defined, "Compensation" could also include amounts offered to Ms. Freeman before or after she was actually a partner at JW.  JW's Response is therefore insufficient and must be clarified. Jackson Walker further stated in its response that it withheld responsive "confidential" information that it would produce subject to a protective order.  The court entered the stipulated protective order July 30, 2024, yet Jackson Walker has not produced the documents it withheld.

**REQUEST NO. 13:  Documents relating to promotion of Freeman to equity partner at Jackson Walker.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is overbroad and unduly burdensome because it seeks all documents relating to Ms. Freeman's promotion to equity partner regardless of their relevance (or lack thereof) to the U.S. Trustee's allegations raised in the Relevant Cases.

**Jackson Walker's Response:**   Subject to the above, JW will produce the equity partner memorandum announcing Ms. Freeman's promotion to equity partner. JW is withholding production of this memorandum until the parties reach agreement about a protective order in this case and this document, which contains confidential personnel and business information, can be designated as confidential.

**U.S. Trustee's Request:** By way of example only, Jackson Walker has produced neither the equity partner memorandum, nor any I2E meeting notes.  Additionally, according to Jackson Walker's response to Interrogatory No. 26, Jackson Walker entered into a "JW Partnership

14

Agreement" with Ms. Freeman, yet Jackson Walker has not produced it.  Please produce this Agreement.  To the extent Jackson Walker previously withheld responsive "confidential" information, there is no longer any justification for doing so given that the court entered the stipulated protective order on July 30, 2024.  Please produce all responsive documents.

**REQUEST NO. 14: Documents relating to Freeman's separation from Jackson Walker, including any documents related to the decision to do so.**

**Jackson Walker's Objections:** JW objects to this Request as overbroad because it seeks all documents in any way relating to Ms. Freeman's separation from Jackson Walker, regardless of whether they have any bearing on the Relationship or former Judge Jones. JW further objects to this Request as overbroad to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**Jackson Walker's Response:**  Subject to the above, JW will produce its confidential separation agreement with Ms. Freeman, and any responsive, non-privileged documents on the subject of Ms. Freeman's withdrawal from the firm. Note, however, that JW is withholding production of this separation agreement until the parties reach agreement about a protective order in this case and this document, which contains confidential personnel and business information, can be designated as confidential. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:** The U.S. Trustee identified several deficiencies concerning this Request.  First and by way of example only, no materials have been received reflecting receipt or return of firm property, including but not limited to laptops, other mobile devices, keys, or fobs.  Second and by way of further example only, during Courtney Cameron's deposition on August 23, 2024, Ms. Cameron testified that Jackson Walker sent a firm-wide email announcing Ms. Freeman's departure from the firm.  Please produce this email and any related documents.  Third, Jackson Walker's response in opposition to the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1472) includes an email chain between Ms. Freeman and Mr. Cowlishaw regarding the "Judicial Disqualification Matter" letter.  Ms. Freeman's response to Mr. Cowlishaw's email is dated Friday, August 27, 2021, at 1:15 PM.  While an identical email from Ms. Freeman dated Friday, August 27, 2021, at 6:15:13 P.M. was produced (JW_00002858), the email used in Jackson Walker's pleading was not produced. Please produce Ms. Freeman's Friday, August 27, 2021, at 1:15 PM. email. Fourth, Jackson Walker  also withheld allegedly privileged materials responsive to this Request, but Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the materials that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 15: All separation or severance documents between Jackson Walker, Freeman, and/or the Law Office of Liz Freeman, including the confidential separation agreement.**

15

**Jackson Walker's Objections:**  JW objects to this Request as duplicative of Request No. 14. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW objects to this Request as vague and ambiguous in its use of the term "severance documents." JW objects to this Request as vague and ambiguous to the extent it seeks "severance documents between Jackson Walker . . . and/or the Law Office of Liz Freeman," which was never an employee of JW and at no point separated from JW. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**Jackson Walker's Response:**   Subject to the above, JW will produce its confidential separation agreement with Ms. Freeman. Note, however, that JW is withholding production of this separation agreement until the parties reach agreement about a protective order in this case and this document, which contains confidential personnel and business information, can be designated as confidential. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:** Jackson Walker withheld allegedly privileged materials responsive to this Request, but has not produced a privilege log.  For example, at least one draft of the separation agreement provided by Mr. Kirkendall was not produced by Jackson Walker, nor any correspondence or other documents relating to it.  Please produce all responsive documents and/or produce a privilege log describing the materials that have been withheld under the claim that they contain "privileged" information.

**REQUEST NO. 16:  All agreements whether formal or informal between Jackson Walker, Freeman and/or the Law Office of Liz Freeman and any documents related to those agreements.**

**Jackson Walker's Objections:** JW objects to this Request because it is vague, overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1).  Specifically, this Request is objectionable because it demands all agreements of any type between Freeman and JW, regardless of whether they in any way concern the Relevant Cases or relate to the U.S. Trustee's allegations in these proceedings. JW further objects to this Request as vague and ambiguous as to the phrases "informal agreements" and "documents related to those agreements." JW also objects to this Request to the extent that any such information is part of and included in filings made in the Relevant Cases, which are equally accessible to the U.S. Trustee and publicly available. JW further objects to this Request as overbroad to the extent it seeks documents protected by the attorney- client privilege and/or the work-product doctrine.

**Jackson Walker's Response:** Subject to the above, JW will produce non-privileged documents, if any, relating to the Relevant Cases, as limited by Jackson Walker in its objections to the definitions and instructions. JW is withholding privileged material responsive to this Request. Note also that JW is withholding responsive confidential information that it will produce subject to a protective order.

16

**U.S. Trustee's Request:** Jackson Walker is withholding privileged materials responsive to this Request but has not produced a privilege log.  Further, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al*., (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048).  Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter. Please withdraw your objection to the definition of "Relevant Cases."

Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 17: Documents relating to all funds paid or monies owed by Jackson Walker to Freeman or the Law Office of Liz Freeman.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is objectionable because it seeks production of documents relating to any funds paid by JW to Ms. Freeman, regardless of whether the monies related to any of the Relevant Cases. JW also objects to this Request to the extent that any such information is part of and included in filings made in the Relevant Cases, which are equally accessible to the U.S. Trustee and publicly available.

**Jackson Walker's Response:** Subject to the above, JW will produce non-privileged documents, if any, relating to the Relevant Cases, as limited by Jackson Walker in its objections to the definitions and instructions. At this time, JW has not withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**U.S. Trustee's Request:** The response provides that Jackson Walker is withholding responsive "confidential" information that it will produce subject to a protective order.  The stipulated protective order was entered on July 30, 2024.  However and by way of example only, Mr. Forbes testified regarding at least one bonus paid to Ms. Freeman.

Further, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion

in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter. Please withdraw your objection to the definition of "Relevant Cases."

Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has also not produced a privilege log. Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 20: Freeman's personnel file, including documents relating to all health, transportation, dental, retirement, life insurance, disability insurance or any other benefits offered to Freeman in connection with her association with Jackson Walker.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is overbroad and unduly burdensome because it seeks documents relating to Ms. Freeman's private health information and insurance information, which is entirely irrelevant to the claims or defenses at issue in this proceeding. Similarly, the request seeks information pertaining to other benefits such as dental, life, and disability insurance, none of which have any relevance to the Responsive Cases or the Relationship. Such insurance information is also irrelevant to any party's claim or defense and not proportional to the needs of these proceedings. Such information is also likely prohibited from disclosure by state and federal medical privacy laws, including the Health Insurance Portability and Accountability Act and the Texas Medical Privacy Act.

**Jackson Walker's Response:** JW will not produce any responsive documents until after a meet and confer to narrow the scope of this Request.

**U.S. Trustee's Request:** The U.S. Trustee invites Jackson Walker's suggestions on how to narrow the scope of this Request. By way of example, the benefits received by Ms. Freeman from Jackson Walker, and value and timing of those benefits are relevant to this matter. Complaints, grievances, and disciplinary or remedial actions such as reprimands or suspensions requested or taken against Ms. Freeman are also relevant. Jackson Walker has not produced Ms. Freeman's 2018 performance review or questionnaire or any personal report records hyperlinked within the 2019-2021 annual reviews. The U.S. Trustee requested these records be produced at the Jackson Walker Fed. R. Civ. P. 30(b)(6) deposition held on August

18

20, 2024, yet Jackson Walker has not provided them.  Please produce all responsive documents.

**REQUEST NO. 21: Freeman's performance reviews and all other formal or informal evaluations of Freeman's performance.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, vague, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is objectionable because it seeks all "informal evaluations" of Ms. Freeman's performance, without regard to whether they concern the Relationship or in any way relate to the U.S. Trustee's allegations raised in the Relevant Cases. Similarly, the term "informal evaluations" is vague, undefined, and ambiguous.

**Jackson Walker's Response:** Subject to the above, JW will produce Ms. Freeman's self-evaluations, performance reviews, and, to the extent any exist, minutes of compensation committee meetings, wherein JW discussed Ms. Freeman's performance. At this time, JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses. Note, however, JW is withholding responsive confidential information that it will produce subject to a protective order.

**U.S. Trustee's Request:** Jackson Walker has not produced Ms. Freeman's 2018 performance review or questionnaire, I2E meeting notes, or any personal report cards hyperlinked within the 2019-2021 questionnaires.  Please produce all responsive documents.

**REQUEST NO. 22: Documents between Jackson Walker and any insurance carrier relating to the Relationship.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is overbroad and unduly burdensome because it seeks communications between JW and its insurance carriers, and such communications are entirely irrelevant to the claims or defenses at issue in this proceeding. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work-product doctrine and/or mediation privileges.

**Jackson Walker's Response:**  JW will not produce any responsive documents until after a meet and confer to discuss this Request.

**U.S. Trustee Request:**  The U.S. Trustee has not seen any documents responsive to this

Request produced by Jackson Walker and is willing to discuss this Request further with Jackson Walker.  If Jackson Walker is withholding documents, please state the basis for withholding such documents.

**REQUEST NO. 27: The Lateral Partner Questionnaire referenced in the Preliminary Response.**

**Jackson Walker's Response:**  JW will  produce a copy of Ms. Freeman's  Lateral Partner Questionnaire subject to a protective order.

**U.S. Trustee's Request:**  Jackson Walker has not produced the form or completed attachment to  the  Lateral  Partner  Questionnaire  (JW_00016049).    Please  produce  all  responsive documents or state that none exist.

**REQUEST NO. 30: Documents relating to whether any Person at Jackson Walker was aware of the Relationship.**

**Jackson Walker's Objections:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it is overbroad and unduly burdensome. Specifically, the Request is overbroad and unduly burdensome because it seeks all documents relating to whether any person "at Jackson Walker" was aware of the Relationship at any point between January 1, 2018 and May 15, 2024. Given that the Relationship made national news in October of 2023, the Request presumably encompasses all employees of JW as of October of 2023. Accordingly, JW will limit the time frame for this Request to January 1, 2018 through October 6, 2023.

**Jackson Walker's Response:**  Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request as narrowed above. At this time, JW has not otherwise withheld documents based on the objections asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**U.S. Trustee's Request:**  Consistent with Jackson Walker's requests to the court in JW's motion to compel, please produce all responsive documents and communications—regardless of when they are dated, created, sent, or received—relating to whether anyone at Jackson Walker was aware of the Relationship at any time from January 1, 2018, to October 6, 2023. If Jackson Walker is withholding documents, please explain in detail the basis for withholding them. If Jackson Walker is withholding any documents on the basis of privilege, provide a privilege log.

**REQUEST NO. 32: Documents relating to Jackson Walker's decision whether to disclose the Relationship  in the Relevant Cases.**

**Jackson Walker's Objections:** JW objects to this Request to the extent it seeks documents

protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). JW objects to the U.S. Trustee's definition of "Relevant Cases" as noted in its objections to the definitions and instructions. JW will limit "Relevant Cases" as noted above in its objections to the definitions and instructions. JW further objects to this Request to the extent it mischaracterizes the factual record and presupposes JW's knowledge of the Relationship and obligation to disclose connections with the judiciary.

**Jackson Walker's Response:**   Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request, as limited by Jackson Walker as noted in its objections to the definitions and instructions. JW is withholding privileged documents responsive to this Request. JW has not otherwise withheld documents based on the objection asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**U.S. Trustee's Request:** The U.S. Trustee requests that JW explain why documents relating to Jackson Walker's decision whether to disclose the Relationship in the Relevant Cases is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1).  The U.S. Trustee further notes that communications regarding whether to disclose the Relationship in the Relevant Cases is not privileged or work product merely if that communication is between or among attorneys.   Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.    Further, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048).  Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.  Please withdraw your objection to the definition of "Relevant Cases."

**REQUEST NO. 33:  Documents relating to Jackson Walker's decision whether to disclose the Relationship in the Van Deelen Litigation.**

**Jackson Walker's Objections:** JW objects to this Request as duplicative of Request No. 32. JW incorporates herein by reference its responses and objections raised in its response to that

Request. JW objects to this Request because it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request to the extent it mischaracterizes the facts with respect to the Van Deelen Litigation and presupposes Jackson Walker's knowledge of the Relationship and obligation to disclose connections with the judiciary. JW also objects to this Request because it mischaracterizes the facts in ignoring that Jackson Walker promptly brought Mr. Van Deelen's allegations to the court's attention.

**Jackson Walker's Response:**   Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged documents responsive to this Request. JW has not otherwise withheld documents based on the objections asserted above, but maintains its ability to do so with future productions and amendments to these responses.

**U.S. Trustee's Request:** Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 35:  Documents between Jackson Walker and Holland & Knight relating to the Relationship, including but not limited to the final version of the Judicial Disqualification Matter Letter and any responses to that Letter from Holland & Knight.**

**Jackson Walker's Objections:** JW objects to this Request because it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**Jackson Walker's Response:**   Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:**   Jackson Walker produced a draft of the Judicial Disqualification Matter Letter (JW_00000437), but has not produced the final version of the Letter.  Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 36: Documents between Jackson Walker and Kirkland relating to the Relationship.**

**Jackson Walker's Objections:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**Jackson Walker's Response:**   Subject to the above, JW will produce non-privileged

documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:**  Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 37:  Documents filed under seal in the Van Deelen Litigation.**

**Jackson Walker's Objections:** JW objects to this Request on the grounds that it seeks information that is as readily available to the U.S. Trustee or is otherwise obtainable from some other source that is more convenient, less burdensome, or less expensive.

**Jackson Walker's Response:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request. Note, also, that JW is withholding responsive confidential information that it will produce subject to a protective order.

**U.S. Trustee's Request:**  Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 39: Documents relating to Kirkendall's communications with Jackson Walker and/or Holland & Knight regarding the Relationship.**

**Jackson Walker's Objections:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine.

**Jackson Walker's Response:**  Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:** Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 40:  Documents relating to the Judicial Disqualification Matter Letter and all notes, correspondence and documents relating to it.**

23

**Jackson Walker's Objections:** JW objects to this Request because it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. Jackson Walker further objects to this Request as duplicative of Request No. 35.

**Jackson Walker's Response:**  Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:**  Jackson Walker produced a draft of the Judicial Disqualification Matter Letter (JW_00000437), but has not  produced the final version of the Letter.   Further, although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 41:  Documents reviewed or relied on by Jackson Walker in answering the United States Trustee's First Set of Interrogatories to Jackson Walker LLP**

**Jackson Walker's Objections:** JW objects to this Request because it seeks documents protected by the attorney-client privilege  and/or the work-product doctrine.

**Jackson Walker's Response:**  Subject to the above, JW will  produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:**  By way of example only, JW's response to Interrogatory 18 describes property returned upon Ms. Freeman's separation from JW, as well as events occurring on an as-needed basis thereafter.  To the extent not already provided, please provide any documents relied upon by JW to formulate that response, including but not limited to confirmations, check-ins, receipts, or property condition reports reflecting Freeman's surrender of her key card and all other JW property, visitor or check-in lists, requests, or confirmations and room reservations, and invoices from or for Freeman to JW after November 30, 2022.

Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 42:  In connection with any of the Relevant Cases, all communications between Jackson Walker and any mediator or potential  mediator.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and

not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because, as propounded, it seeks all communications between Jackson Walker and ***any mediator or potential mediator*** since January 1, 2018, without regard to the mediator's identity. JW further objects to this Request because it seeks documents protected by the mediation or ADR privilege.

**Jackson Walker's Response:**  Subject to the above, JW will produce responsive, non-privileged documents (to the extent any such documents exist) that relate to former Judge Jones in his capacity as mediator in the Relevant Cases. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:** The U.S. Trustee agrees that this Request may be limited to the Relevant Cases in which former Judge Jones presided, was considered as mediator, or was appointed as mediator.  However, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.  Please withdraw your objection to the definition of "Relevant Cases." Further, although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 43:  In connection with any of the Relevant Cases, Jackson Walker's billing statements, pre-billing statements, drafts of billing statements or write-offs for any time entries related to any mediations.**

**Jackson Walker's Objections:** JW objects to this Request as duplicative of Request No. 3. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW further objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because it seeks all of JW's billing statements in any of the Relevant Cases, regardless of whether they reflect time billed by Ms. Freeman and regardless of whether Ms. Freeman had any role or involvement. JW further objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW also objects to this Request to the extent that such information is part of and included in Jackson Walker's fee applications

25

and fee statements, which are equally accessible to the U.S. Trustee and publicly available.

**Jackson Walker's Response:**  Subject to the above, JW will produce responsive, non-privileged documents reflecting Ms. Freeman's time billed or written off in any mediation conducted by former Judge Jones in any of the Relevant cases, as narrowed by JW as noted in its objections to the definitions and instructions. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:** Jackson Walker has not produced all documents that are responsive to this Request, including but not limited to billing pro formas, prebills, and markups thereof.

Jackson Walker's response also limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al*., (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter.  Please withdraw your objection to the definition of "Relevant Cases."

Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 44:  In connection with *In re GWG Holdings, Inc.*, Case No. 22-90032, the settlement statement, settlement term sheet or similar document memorializing any agreement reached in connection with any mediation.**

**Jackson Walker's Objections:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it seeks documents protected by the mediation or ADR privilege.

**Jackson Walker's Response:**  Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

**U.S. Trustee's Request:** Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log.  Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 45: In connection with *In re GWG Holdings, Inc.,* Case No. 22-90032, documents related to the selection of any wind-down trustee.**

    **Jackson Walker's Objections:** JW objects to this Request as duplicative of Request No. 44. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the work-product doctrine. JW further objects to this Request because it seeks documents protected by the mediation or ADR privilege.

    **Jackson Walker's Response:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

    **U.S. Trustee's Request:** Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log. Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 46: In connection with *In re GWG Holdings, Inc.,* Case No. 22-90032, documents related to the selection and appointment of Freeman as the wind-down trustee.**

    **Jackson Walker's Objections:** JW objects to this Request as duplicative of Request Nos. 44 and 45. JW incorporates herein by reference its responses and objections raised in its response to those Requests. JW objects to this Request to the extent it seeks documents protected by the attorney- client privilege and/or the work-product doctrine. JW further objects to this Request because it seeks documents protected by the mediation or ADR privilege.

    **Jackson Walker's Response:** Subject to the above, JW will produce non-privileged documents, if any, responsive to this Request. JW is withholding privileged materials responsive to this Request.

    **U.S. Trustee's Request:** Although Jackson Walker withheld allegedly privileged materials responsive to this Request, Jackson Walker has not produced a privilege log. Please produce all responsive documents and/or a privilege log that includes, among other things, a description of the documents that Jackson Walker has withheld based on its claim that they contain "privileged" information.

**REQUEST NO. 47: Documents related to any social activities Jackson Walker attended during the mediation with Judge Jones, including any payments made on behalf of Judge Jones by Jackson Walker.**

**Jackson Walker's Objections:** JW objects to this Request as vague because it is unclear to which mediation the Request is referring.

**Jackson Walker's Response:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**U.S. Trustee's Request:** The U.S. Trustee agrees that this Request may be limited to the Relevant Cases in which former Judge Jones was appointed as mediator. However, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al.*, (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter. Please withdraw your objection to the definition of "Relevant Cases" and produce all responsive documents and/or produce a privilege log describing the materials that have been withheld under the claim that they contain "privileged" information.


**REQUEST NO. 48:** *Ex Parte* communications between Jackson Walker and Judge Jones.

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because, as propounded, it would require JW to search all of its current and former attorneys' communications for ex parte communications with former Judge Jones. JW further objects to this Request as overbroad because it seeks documents relating to any case before former Judge Jones and is not limited to the Relevant Cases.

**Jackson Walker's Response:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**U.S. Trustee's Request:** The U.S. Trustee agrees that this Request may be limited to *Ex Parte* communications between Jackson Walker and Judge Jones between the Applicable Period. Please produce all responsive documents and/or produce a privilege log describing the materials that have been withheld under the claim that they contain "privileged" information.


**REQUEST NO. 49: Ex Parte communications between Jackson Walker and the Bankruptcy Court relating to the Relevant Cases.**

**Jackson Walker's Objections:** JW objects to this Request as duplicative of Request No. 48. JW incorporates herein by reference its responses and objections raised in its response to that Request. JW further objects to this Request because it is overbroad, unduly burdensome, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of this case, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, the Request is objectionable because, as propounded, it would require JW to search all of its current and former attorneys' communications for ex parte communications with any judge in any of the Relevant Cases. JW further objects to this Request as overbroad because it seeks communications not only between JW and former Judge Jones, but also between JW and any judge in any of the Relevant Cases.

**Jackson Walker's Response:** JW will not produce responsive materials until after a meet and confer to discuss the scope of this Request.

**U.S. Trustee's Request:** The U.S. Trustee agrees that this Request may be limited to cases in which former Judge Jones was the bankruptcy judge assigned to the case. However, Jackson Walker's response limited the definition of "Relevant Cases" to only include the cases listed on Exhibit 6 of the U.S. Trustee's amended and supplemental 60(B)(6) motion in *In re J.C. Penney Direct Marketing Services, LLC., et al*., (Case No. 20-20184) (Dkt. No. 1351) and excluded the following cases: *In re Venator Materials PLC* (Case No. 23-90301), *In re Diebold Nixdorf Dutch Holding B.V.* (Case No. 23-90729), *In re Sorrento Therapeutics, Inc.* (Case No. 23- 90085), and *In re Candy Club LLC* (Case No. 23-60048). Jackson Walker has not adequately explained why it limited this defined term. The U.S. Trustee reserves his right to amend the list of cases referenced on Exhibit 6 of the 60(B)(6) motion, and information about cases both Jackson Walker and the Law Office of Liz Freeman worked on are relevant to the U.S. Trustee's claims in this matter. Please withdraw your objection to the definition of "Relevant Cases" and produce all responsive documents and/or produce a privilege log describing the materials that have been withheld under the claim that they contain "privileged" information.

**REQUEST NO. 50: Documents and communications between Jackson Walker and Judge Jones regarding non-official court information or proceedings, to include social activities, events, appointments, invitations, and meetings, to include emails sent to or received from the following email addresses associated with Jones: ccd5274@yahoo.com, Davidrjonesdrj@outlook.com, and David_Jones@txs.uscourts.gov.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, vague, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is objectionable because it seeks all communications between anyone at JW and former Judge Jones about any "non-official court information or proceedings," regardless of whether the communications relate in any way to Ms. Freeman, the Relationship, or JW's purported knowledge of the Relationship. JW additionally objects to this Request given that the phrase

"regarding non-official court information or proceedings" is vague and ambiguous. JW will limit this Request to emails between custodians in JW's debtor group identified as most likely to have relevant information and former Judge Jones at any of the above-listed email addresses discussing social activities to which former Judge Jones and Ms. Freeman were invited or attended.

**Jackson Walker's Response:** Subject to the above, JW will produce responsive, non-privileged documents as limited by its specific and general objections.

**U.S. Trustee's Request:** The U.S. Trustee's Request seeks documents and communications not governed by the Guide to Judiciary Policy, Volume 20, Chapter 8. With this clarification, this Request is not vague or ambiguous.

The U.S. Trustee has provided Jackson Walker with three specific and discretely searchable email addresses.  The U.S. Trustee's Request is not overbroad, non-proportional, or beyond the scope of relevant discovery.

Finally, one of the issues presented by this matter is improper communication between Jackson Walker and former Judge Jones.  Attempts to limit the Applicable Period or assert privilege for matters which are inherently non-privileged—whether in Jackson's purported general objections or otherwise—are inappropriate.

Please withdraw your objections to this Request and provide all responsive documents.

**REQUEST NO. 51: Documents and communications with any .jpeg, .jpg, .png, or .tiff, attached or embedded, sent or received by Freeman.**

**Jackson Walker's Objections:** JW objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work-product doctrine, and/or mediation privileges. JW objects to this Request because it is overbroad, harassing, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is objectionable because it seeks every single communication to or from Ms. Freeman containing any image file irrespective of any relevance to these proceedings. Indeed, the JW logo included in JW attorneys' email signatures is a .jpeg file and, as such, this Request as propounded seeks every email every sent by Ms. Freeman from her JW email account, without regard to whether the email relates in any way to the claims or defenses asserted in these proceedings or to the Relevant Cases. This is a textbook fishing expedition.

**Jackson Walker's Response:** For the reasons detailed above, JW will not produce documents responsive to this Request.

**U.S. Trustee's Request:** Freeman had and has specific and discretely searchable email addresses known to Jackson Walker.  The U.S. Trustee agrees that this Request may be limited

to documents with any .jpeg, .jpg, .png, or .tiff, attached or embedded, sent or received by Freeman to or from former Judge Jones or his staff or relating to the Relationship or former Judge Jones or any of his staff. However, no limitation of the Applicable Period is appropriate. Please withdraw your objections to this Request and provide all responsive documents.

**REQUEST NO. 52: Documents and communications with any attached or embedded photos of individuals sent or received by Freeman.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, harassing, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is objectionable because it seeks every single communication to or from Ms. Freeman containing any photos of any individual, regardless of the identity of the individual or whether that individual has any relation to the claims or defenses asserted in these proceedings or to the Relevant Cases. This is a textbook fishing expedition.

**Jackson Walker's Response:** For the reasons detailed above, JW will not produce documents responsive to this Request.

**U.S. Trustee's Request:** Freeman had and has specific and discretely searchable email addresses known to Jackson Walker. The U.S. Trustee agrees that this Request may be limited to documents with any attached or embedded photos of individuals sent or received by Freeman to or from former Judge Jones or his staff or relating to the Relationship or former Judge Jones or any of his staff. However, no limitation of the Applicable Period is appropriate. Please withdraw your objections to this Request and provide all responsive documents.

**REQUEST NO. 53: Documents and communications portraying Jones in any non-official, social, recreational, or personal capacity.**

**Jackson Walker's Objections:** JW objects to this Request because it is overbroad, vague, and seeks information that is both irrelevant to any party's claim or defense and not proportional to the needs of these proceedings, and thus is beyond the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1). JW additionally objects to this Request given that the phrase "portraying Jones in any non-official, social, recreational, or personal capacity" is vague and ambiguous, as it is not clear to JW what a "document[]. . . portraying Jones in any . . . recreational capacity" means. JW further objects to this Request as overbroad and unduly burdensome because, as propounded, it would require a search of each and every JW attorney's email for any "[d]ocuments and communications portraying Jones." To the extent this Request is seeking documents and communications with Jones relating to social events, it is duplicative of Request No. 50. JW incorporates herein by reference its responses and objections raised in its response to that Request.

31

**Jackson Walker's Response:** JW will not produce any documents other than those already being produced in response to Request No. 50.

**U.S. Trustee's Request:** Request No. 50 seeks documents *between* Jackson Walker and Judge Jones regarding non-official court information or proceedings. Request No. 53 seeks Jackson Walker's documents portraying Judge Jones in any non-official social, recreational, or personal capacity. Consistent with Jackson Walker's requests to the court in JW's motion to compel, please produce all responsive documents and communications—regardless of when they are dated, created, sent, or received—portraying Jones in any non-official, social, recreational, or personal capacity at any time from January 1, 2018, to October 15, 2023. The U.S. Trustee's Request seeks documents and communications not governed by the Guide to Judiciary Policy, Volume 20, Chapter 8. With this clarification, this Request is not vague or ambiguous. One of the issues presented by this matter is improper conduct involving former Judge Jones. Pictures of Jones in a non-official capacity are both relevant and proportional to the U.S. Trustee's claims in this case, because Jackson Walker has the ability to compile such materials without searching "each and every JW attorneys' email" for them. Please withdraw your objections to this Request and provide all responsive documents.

We look forward to hearing back from you on these important issues as set forth above.

OFFICE OF THE UNITED STATES TRUSTEE

By:*/s/ Laura D. Steele*
Laura D. Steele, Trial Attorney
*On behalf of Kevin M. Epstein, United States Trustee Region 7*

cc:

**Rusty Hardin & Associates, LLP**
Russell Hardin
Jr. Leah M. Graham
Jennifer E. Brevorka
Emily Smith
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com



EXHIBIT J

**U. S. Department of Justice**

Office of the United States Trustee

Southern and Western Districts of Texas – Region 7

Southern District Offices:
515 Rusk Street, Suite 3516
Houston, Texas 77002
713-718-4650
Fax 713-718-4670

September 30, 2024

Norton Rose Fulbright US LLP
Paul Trahan
Jason L. Boland
William R. Greendyke
Maria Mokrzycka
1301 McKinney Street, Suite 5100
Houston, TX 77010
paul.trahan@nortonrosefulbright.com
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Re:   Case No. 23-00645
      *In re: Professional Fee Matters Concerning the Jackson Walker Law Firm*

Dear counsel,

This letter responds to Attorney Trahan's correspondence dated September 17, 2024, regarding continued meet and confer efforts relating to Jackson Walker's responses to the United States Trustee's first sets of interrogatories and requests for production of documents. The United States Trustee disagrees with several assertions made in that letter.

Although the United States Trustee may have extended certain discovery response deadlines, the United States Trustee has not agreed to Jackson Walker providing discovery responses and documents on a rolling basis. The United States Trustee further disagrees that doing so "has allowed the U.S. Trustee to review documents much sooner than if JW withheld documents for a single production once all documents have been reviewed." By way of example, the United States Trustee began requesting Jackson Walker's conflicts policy through formal discovery on

1

May 15, 2024, and made multiple follow-up requests, including an e-mail to Attorney Trahan on August 15, and on the record at Jackson Walker's 30(b)(6) deposition on August 20. Notwithstanding those requests, Jackson Walker did not provide portions of its Attorney Sourcebook relating to conflicts of interest until September 24, 2024.

Regarding specific discovery requests,

- <u>Interrogatory 14:</u> Jackson Walker states, "We agreed during our meet and confer call that JW does not need to supplement this answer after every deposition of a JW witness but *JW* agrees to supplement to include additional names discovered from deposition testimony after all JW fact depositions are complete" (emphasis added). It is true and that the United States Trustee does not expect a supplement immediately following each and every deposition. However and as stated during our September 6 our meet and confer, the United States Trustee does expect Jackson Walker to supplement its discovery responses in sufficient time for the United States Trustee to issue a final round of written discovery request. Because the deadline to issue those written discovery requests with 30 days' notice is October 2, Jackson Walker has failed to do so.

- <u>Request for Production 12:</u> Jackson Walker claims, "the U.S. Trustee has not attempted to clarify or explain" what Compensation "offered" to Freeman means. Among other things Jackson Walker disregards the explanation provided in the United States Trustee's August 29 letter referencing for example, "offer letters, bonus confirmations, compensation committee memos and notices, and settlement offers."

- <u>Request for Production 13:</u> Jackson Walker asserts, "the JW Partnership Agreement . . . is irrelevant and contains highly confidential information." Regardless of how confidential Jackson Walker may consider it, Jackson Walker's partnership agreement speaks to the terms by which Jackson Walker's partners conducted business with each other, including how they were compensated, were admitted, and could be removed. It is not privileged and must be produced.

- <u>Request for Production 14:</u> Jackson Walker confirmed at our September 6 meet and confer call that it could not locate a firmwide email announcing or referencing Freeman's departure from Jackson Walker. Jackson Walker's search for documents should include but not be limited to similar emails or announcements regarding Freeman's departure to other internal subsets such as: all attorneys, all staff, all partners, all equity partners, all bankruptcy practice group attorneys, and all bankruptcy team members including staff. Jackson Walker's search for documents should further include but not be limited to external communications with: clients, former clients, referral sources, courts, and event venues, speakers, hosts, or sponsors. Please confirm that Jackson Walker has completed and produced all documents relating to these additional searches.

- <u>Request for Production 20:</u> In my correspondence to you dated August 29, the U.S. Trustee invited Jackson Walker's suggestions on how to narrow the scope of this request and provided several examples.  As further discussed during the parties' September 6 meet and confer, the United States Trustee confirmed he is not requesting a copy of Ms. Freeman's health or dental records or other personally identifiable information.  Rather, this request seeks to determine the monetary value of Ms. Freeman's overall compensation, as well as her performance and disciplinary history at Jackson Walker—all of which is relevant.  Jackson Walker now claims, "The U.S. Trustee has not adequately explained how the benefits received by Ms. Freeman by JW are relevant to this matter."  That suggestion is disingenuous.

- <u>Request for Production 22:</u> At our September 6 meet and confer, Jackson Walker requested further explanation regarding why any communications with Jackson Walker's malpractice insurance carrier may be relevant.  The United States Trustee explained, for example, that the dates such communications occurred would be relevant to establishing a timeline for Jackson Walker's knowledge or actions taken in connection with these matters.  It is also apparent that facts conveyed by Jackson Walker to the carrier are relevant.  Jackson Walker responded that it would consider that information and respond further.  Although Jackson Walker's September 17 response "maintains its objections based on relevancy and privilege," no communications with a malpractice carrier were identified on Jackson Walker's September 24 privilege log.  Please correct me if the United States Trustee is mistaken.

- <u>Requests for Production 48-50:</u> The United States Trustee intimated during our September 6 call that these requests could be deemed satisfied, provided the following email addresses were searched for communications exclusively to or from Jones on the one hand, and Jackson Walker or its professionals on the other hand: ccd5274@yahoo.com, Davidrjonesdrj@outlook.com, and David_Jones@txs.uscourts.gov.  That concession was contingent upon the scope of the persons identified by Jackson Walker.  However, your September 17 correspondence claims that Jackson Walker—the largest law firm in Texas, approximately a third of which are litigators—lacks the "capability to efficiently search the email of every attorney and personnel of JW to discover emails sent to the identified email addresses."  Jackson Walker's efficiency argument lacks specifics regarding what it is able to do and at what it would take to do so.  Either way, Jackson Walker's proposal to limit its search to five people—Elizabeth Freeman, Matthew Cavenaugh, Veronica Polnick, Genevieve Graham, and Emily Flynn Meraia—is unreasonable.  The United States Trustee requires that at a minimum the following additional individuals' emails be included in its search: Bruce Ruzinsky, Courtney Cameron, Rebecca Chaikin, Victoria Argeroplos, Kristhy Peguero, Jennifer Wertz, Kendra Gradney, and Daniela Trevino.

Our office intends to file a motion to compel Jackson Walker's long overdue compliance with the United States Trustee's first set of interrogatories and requests for production of

documents.  Should any of Jackson Walker's positions set forth in your correspondence dated September 17 change, please promptly notify me.

OFFICE OF THE UNITED STATES TRUSTEE

By: /s/ Laura D. Steele
Laura D. Steele, Trial Attorney
*On behalf of Kevin M. Epstein, United States Trustee Region 7*

cc:

**Rusty Hardin & Associates, LLP**
Russell Hardin
Jr. Leah M. Graham
Jennifer E. Brevorka
Emily Smith
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com

4

# NORTON ROSE FULBRIGHT



October 4, 2024

Laura Steele
Trial Attorney
Office of the United States Trustee
515 Rusk Street, Suite 3516
Austin, Texas 77002

Norton Rose Fulbright US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
United States of America

**Paul Trahan**
**Partner-in-Charge, Austin**
Direct line +1 512 536 5288
paul.trahan@nortonrosefulbright.com

Tel +1 512 474 5201
Fax +1 512 536 4598
nortonrosefulbright.com

Re:     Case No. 23-00645; *In re: Professional Fee Matters Concerning the Jackson Walker Law Firm*

Dear Ms. Steele:

This letter follows up on the issues raised in your September 30, 2024 letter.

At the outset, we note our disagreement with your assertion that "the United States Trustee has not agreed to Jackson Walker ("JW") providing discovery responses and documents on a rolling basis." JW has been upfront from the very beginning of the commencement of this miscellaneous proceeding, and again when the discovery period commenced, that documents would be produced on a rolling basis in order to provide responsive, non-privileged documents to the United States Trustee ("UST") more expeditiously. The UST was amenable to this approach when this proceeding commenced, and the UST acknowledged (and did not object or raise any concerns) on a call held on June 17, 2024 that JW's productions would be on a rolling basis. The UST also explained to the Court on August 27, 2024 that "[w]e've been receiving documents on a rolling basis from Jackson Walker and we've not raised any concern with the Court about that." Aug. 27, 2024 Hr'g Tr. 27:21–23. It was not until your August 29, 2024 letter—after JW had completed the majority of its document productions—that the UST so much as hinted that it had not agreed to a rolling production. This position is perplexing given that the UST itself appears to be producing documents on a rolling basis.

With respect to your concerns about specific discovery requests, we respond as follows:

- **Interrogatory 14**: JW will supplement its response to this Interrogatory.

- **Request for Production 12**: JW has already searched for, located, and produced documents showing Ms. Freeman's compensation during the time she was employed by JW. We will confirm that no additional responsive documents exist, including any "bonus confirmations, compensation committee memos and notices, [or] settlement offers." Any additional responsive material will be produced.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

203183810.6

NORTON ROSE FULBRIGHT

- **Request for Production 13**: JW does not agree that the Partnership Agreement is relevant. While the UST argues that it "speaks to the terms by which Jackson Walker's partners conducted business with each other, including how they were compensated, were admitted, and could be removed", the UST does not explain why the compensation or admission of any partner other than Ms. Freeman is relevant. To the extent the UST seeks information relating to whether or how JW could have removed Ms. Freeman as a partner, it has had ample time and opportunity to question JW witnesses under oath on this topic and, indeed, has done so. *See, e.g.*, Jenkins Dep. Tr. 81:18–83:1 (testifying about the process for expelling an equity partner from the partnership); Cooper Dep. Tr. 151:15–152:12 (same). Any information provided by the Partnership Agreement would be wholly duplicative and cumulative of this testimony. If the UST nevertheless believes it needs a copy of JW's Partnership Agreement, please explain what specific topics are relevant.

- **Request for Production 14**: JW has performed additional searches and has located an all-attorney email announcing Ms. Freeman's departure. JW will produce this document in its next production.

- **Request for Production 20**: JW has already produced Ms. Freeman's performance evaluations and self evaluations. Ms. Freeman has no disciplinary history. JW does not believe that Ms. Freeman's benefits information[1] is relevant to any claims or defenses in these proceedings.

- **Request for Production 22**: JW has not located any responsive written communications with its insurance carrier during the course of its document review. As such, no privileged communications were included on its privilege log. Moreover, the UST has already examined JW's General Counsel under oath on this topic. *See* Jenkins Dep. Tr. 104:3–105:10 (testifying that he called insurance carrier "[a]fter Mr. Van Deelen filed his lawsuit").

- **Requests for Production 48-50**: At the outset of these proceedings, we asked the UST to provide JW with search terms and custodians that it believed were appropriate and should be searched.  The UST declined to do so, instead deferring to JW to identify custodians, and to review and produce documents consistent with its obligations under the Federal Rules. In responding to the UST's requests, JW identified five email custodians that it believed were most likely to possess unique, responsive information. Those custodians were Elizabeth Freeman, Matthew Cavenaugh, Veronica Polnick, Genevieve Graham, and Emily Flynn Meraia. JW has searched these custodians' emails for communications to or from Jones at any of the identified email addresses. Without conceding that any such information is responsive to the UST's requests, JW will produce any correspondence it

---

[1] JW offers the same benefits to each class of employee and to each of its owners.

Laura Steele
October 4, 2024
Page 3

NORTON ROSE FULBRIGHT

locates from these custodians that include only Judge Jones, on the one hand, and persons with JW email addresses, on the other hand. If the UST still believes this process is insufficient, please explain the basis for its belief that any of Bruce Ruzinsky, Courtney Cameron, Rebecca Chaikin, Victoria Argeroplos, Kristhy Peguero, Jennifer Wertz, Kendra Gradney, or Daniela Trevino would have emailed Judge Jones without including any of Ms. Freeman, Mr. Cavenaugh, Ms. Polnick, Ms. Graham, or Ms. Meraia on the correspondence, particularly since the UST has already deposed each of these individuals (with the exception of Ms. Chaikin) and had the opportunity to ask them under oath whether they emailed former Judge Jones.

We are happy to discuss further after you review. We look forward to hearing back from you.

Sincerely,

Paul Trahan

Paul Trahan



**U. S. Department of Justice**

Office of the United States Trustee

Southern and Western Districts of Texas – Region 7



Southern District Office:
515 Rusk Street, Suite 3516
Houston, Texas 77002
713-718-4650
Fax 713-718-4670

October 6, 2024

Norton Rose Fulbright
Paul Trahan
Jason L. Boland
William R. Greendyke
Maria Mokrzycka
1301 McKinney Street, Suite 5100
Houston, Texas 77010
paul.trahan@nortonrosefulbright.com
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Re:   Case No. 23-00645
      *In re: Professional Fee Matters Concerning the Jackson Walker Law Firm*

Dear Mr. Trahan:

     The U.S. Trustee responds as follows to your October 4, 2024, correspondence addressing the U.S. Trustee's discovery issues raised in his September 30, 2024, letter.

     To clarify, the U.S. Trustee has attempted to be cooperative in the discovery process, including not challenging Jackson Walker LLP's unilateral decision to produce documents in its possession for months on a rolling basis—a process Jackson Walker averred was appropriate given the volume of records it needed to review. The U.S. Trustee's comment at the August 27, 2024, hearing is consistent with that approach, and that the U.S. Trustee has held off raising his concerns regarding Jackson Walker's production with the Court because the U.S. Trustee understood that Jackson Walker would produce documents timely, and in good faith—just as the U.S. Trustee has produced his discovery responses. The U.S. Trustee has not withheld relevant, non-privileged records. Rather, the U.S. Trustee continues to receive third-party documents in the ongoing discovery process and turns these documents over to Jackson Walker on a timely, good faith basis upon their receipt. In some instances, however, the records that Jackson Walker has failed to produce have been in its possession since the outset of discovery in May 2024. Your

Norton Rose Fulbright
October 6, 2024
Page 2

October 4 correspondence where supplements are promised by a date uncertain, but not given, cause further concern. Jackson Walker's refusal to produce records timely does not appear to be justified and has harmed the U.S. Trustee's ability to discover relevant facts, and to fully examine witnesses. While the U.S. Trustee has held off seeking relief from the Court in hopes that the parties could resolve these issues amicably, Court intervention may now be necessary.

The U.S. Trustee specifically addresses the following outstanding discovery items as follows:

- Interrogatory 14: Jackson Walker indicates it will supplement, but confirms no date by which it will do so. The U.S. Trustee seeks Jackson Walker's agreement to supplement no later than October 10, 2024.

- Request for Production 12: The U.S. Trustee seeks Jackson Walker's agreement to produce documents no later than October 10, 2024.

- Request for Production 13: Ross Forbes testified at his 30(b)(6) deposition that: Freeman signed a partnership agreement when she joined the firm which spelled out the terms of membership (JW 30(b)(6) Depo. Tr. at 46:4-14:); "it's complicated" because Freeman could have pushed a vote of the equity shareholders (*id.* at 93:9-14); he was unclear whether termination of an equity partner required cause (*id*. at 156:13-16); "when you leave the equity partnership of Jackson Walker, the mechanics of when you are permitted to get your capital account are governed by the [partnership] agreement" (*id*. at 171:10-13 & 19-24); and "[t]hat I don't understand.  It's probably the amount of money that Ms. Freeman was owed under her draw account, but it's likely defined in our partnership agreement (*id*. at 173-74.  To summarize, Jackson Walker admitted that the terms of Freeman's partnership were governed by the partnership agreement, but—notwithstanding the designation of the 30(b)(6) witness' subpoena topics 1 (Freeman compensation structure), 2 (Freeman's separation from Jackson Walker), 6 (deliberation of alternatives), and 7 (any contracts or agreements with Freeman)–Jackson Walker's designated witness did not have knowledge, and instead referred to Jackson Walker's partnership agreement.  The relevancy of Jackson Walker's partnership agreement is magnified by the lack of knowledge expressed by Jackson Walker's 30(b)(6) witness. The U.S. Trustee seeks Jackson Walker's agreement to produce the partnership agreement no later than October 10, 2024.

- Request for Production 14: The U.S. Trustee seeks Jackson Walker's agreement to produce the email announcing Ms. Freeman's departure no later than October 10, 2024.

- Request for Production 20: The U.S. Trustee asks Jackson Walker to confirm there were no differences between owner and non-owner benefits from May 1, 2018, through December 1, 2022.

- Requests for Production 48-50: During our meet and confer with Attorney Harrison as recently as October 4, Jackson Walker confirmed that, by way of example, it did not

Norton Rose Fulbright
October 6, 2024
Page 3

receive any responsive text communications from Matt Cavenaugh or Genevieve Graham.  However, the texts produced by Veronica Polnick clearly reflect that such texts existed at some time.  The lack or loss of these text communications from Cavenaugh and Graham—two of Jackson Walker's five records custodians—alone justifies why the additional individual Jackson Walker bankruptcy team members' records should be searched. The U.S. Trustee seeks Jackson Walker's agreement to search and produce these documents no later than October 10, 2024.

We look forward to your timely response.

OFFICE OF THE UNITED STATES TRUSTEE

By: _____
LAURA STEELE
Digitally signed by LAURA STEELE
Date: 2024.10.06 12:40:08 -05'00'

Laura D. Steele, Trial Attorney
*On behalf of Kevin M. Epstein, United States Trustee Region 7*



^
**NORTON ROSE FULBRIGHT**

October 10, 2024

Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, Texas 77010
United States of America

Laura Steele
Trial Attorney
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002

**Jason L. Boland**
Direct line +1 713 651 3769
jason.boland@nortonrosefulbright.com

Tel +1 713 651 3769
Fax +1 713 651 5246
nortonrosefulbright.com

Re:     Case No. 23-00645; *In re: Professional Fee Matters Concerning the Jackson Walker Law Firm*

Dear Ms. Steele:

This letter follows up on the issues raised in your October 6, 2024 letter. With respect to your concerns about specific discovery requests, we respond as follows:

- **Interrogatory 14**: JW will supplement its response to this Interrogatory on October 10.

- **Request for Production 12**: JW has already searched for, located, and produced documents sufficient to show Ms. Freeman's compensation during the time she was employed by JW. Nevertheless, JW has located one additional responsive document relating to Ms. Freeman's compensation. This will be produced on October 10.

- **Request for Production 13**: JW does not agree that the Partnership Agreement is relevant but is willing to discuss whether the UST seeks specific provisions of the Partnership Agreement and, if so, which.

- **Request for Production 14**: JW will produce the email announcing Ms. Freeman's departure on October 10.

- **Request for Production 20**: You have asked us to confirm to confirm "there were no differences between owner and non-owner benefits from May 1, 2018, through December 1, 2022." JW questions the relevance of this request. JW will nonetheless clarify that benefits differ between business professionals (staff), associates, income partners, and equity partners as it relates mainly to retirement benefits. The firm also pays a portion of the health insurance premium for all employees. Owners (equity partners) are responsible for all of their healthcare premium.

- **Requests for Production 48-50**: It is incorrect that the UST "did not receive any responsive text communications from Matt Cavenaugh or Genevieve Graham." Ms.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

203231557.6

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

Laura Steele
October 10, 2024
Page 2

NORTON ROSE FULBRIGHT

Graham and Mr. Cavenaugh both produced responsive materials in advance of their depositions. Regardless, there is no correlation between the UST's argument that Ms. Graham and Mr. Cavenaugh allegedly "lack or lost" personal text communications and the UST's request that JW search the JW email databases of five additional custodians—none of whom are involved in the text communications. Nevertheless (and without conceding the relevance of these documents), JW will, by October 10, produce emails solely between former Judge Jones (at the email addresses identified by the UST), on the one hand, and Liz Freeman, Matt Cavenaugh, Veronica Polnick, Gen Graham, or Emily Meraia, on the other. JW has also collected and reviewed possibly responsive documents involving Bruce Ruzinsky, Courtney Cameron, Rebecca Chaikin, Victoria Argeroplos, Kristhy Peguero, Jennifer Wertz, Kendra Gradney, and Daniela Trevino. It will produce any emails exchanged solely between former Judge Jones (at the email addresses identified by the UST) and any of these individuals by October 11.

We are happy to discuss further after you review. We look forward to hearing back from you.

Sincerely,

Jason Boland