UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § <br> § <br> **Professional Fee Matters Concerning the** § <br> **Jackson Walker Law Firm** § <br> § <br> § <br> § | Case No. 23-00645 (EVR) |

**JACKSON WALKER LLP'S OBJECTION TO THE UNITED STATES TRUSTEE'S
EXPEDITED MOTION TO COMPEL PRODUCTION OF DOCUMENTATION
FROM JACKSON WALKER LLP**
[Relates to Dkt. No. 495]

Jackson Walker LLP ("JW") files this *Objection* (the "Objection") to the United States Trustee's (the "U.S. Trustee") *Expedited Motion to Compel Production of Documentation from Jackson Walker LLP* [Dkt. No. 495] (the "Motion to Compel") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Once again, there is no emergency other than one that the U.S. Trustee manufactured on his own. JW has consistently taken the position throughout the discovery process—which began over 5 ½ months ago on May 15th—that its Partnership Agreement was highly confidential, irrelevant, and should not be produced because any questions as to the internal operations of JW could be asked—and in fact were asked—of various JW witnesses who have direct knowledge of the Partnership Agreement. Yet, now with a mere 8 days to respond in advance of another emergency hearing, the U.S. Trustee seeks to compel production. There is simply no emergency, and the U.S. Trustee's repeated requests for emergency relief on issues that have existed for months is unwarranted, improper, abusive to the Court's resources, and unfair to JW. For these reasons alone, the emergency relief requested should be denied.

203480988

2. Aside from the lack of any basis for emergency relief, JW's Partnership Agreement is a ***highly confidential*** agreement between each of the members of the partnership, Jackson Walker LLP. Non-partner personnel at JW do not have access to the Partnership Agreement; neither do other law firms, clients, or outside third parties. The Partnership Agreement is also ***irrelevant*** as to the allegations and defenses at issue in these proceedings. The U.S. Trustee cannot establish that the Partnership Agreement bears on any matter that may be an issue in these proceedings, and the Court should not compel its production.

3. Alternatively, if the Court is inclined to compel production, given its highly confidential nature—and the repeated leaks of information (plus the prior mishandling of confidential information by the U.S. Trustee and/or its agents) in these proceedings, including information designated confidential under the Stipulated Protective Order [Dkt. No. 202]—JW requests that the Court (1) view the Partnership Agreement *in camera* and compel production of only those specific provisions that the Court determines relevant to these proceedings; and (2) limit such production to the U.S. Trustee and his counsel only.

## ARGUMENT AND AUTHORITIES

**A.   The Partnership Agreement Governs Internal Firm Structure and Partner Relations, Not Bankruptcy Disclosure and Ethical Requirements**

4. The U.S. Trustee fundamentally misinterprets the principles of discovery. The position that any document mentioning Ms. Freeman or the term "partner" is relevant disregards the boundaries of discovery, particularly concerning internal governance documents like a partnership agreement. Courts have held that discovery is broad, but only to the extent it pertains to issues bearing directly on claims and defenses raised in the pleadings.[1]

---

[1] *See Howell v Buckeye Ranch, In*c., Case No. 2:11-cv-1014, 2012 U.S. Dist. LEXIS 141368, 2012 WL 5265170 (S.D. Ohio Oct. 1, 2012) (a party "has no right to serve overbroad discovery requests that seek irrelevant information"); *see*

5.  As the U.S. Trustee stated in his Motion to Compel, a discovery request should be permitted "***unless it is clear that the information sought has no possible bearing on a party's claim or defense.***"[2] That is precisely the situation here: the Partnership Agreement has no bearing on the U.S. Trustee's claims or JW's defenses.

6.  On November 2 and 3, 2023, the U.S. Trustee filed his *Motion for (1) Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* (the "Original Rule 60(b)(6) Motions") in 17 cases in which JW acted as an estate professional where former Judge Jones presided or acted as a mediator.

7.  On February 29, 2024, the U.S. Trustee amended its Original Rule 60(b)(6) Motion and filed additional Rule 60(b)(6) motions in 16 cases (the "Amended Rule 60(b)(6) Motions," and together with Original Rule 60(b)(6) Motions, the "Rule 60(b)(6) Motions"). The allegations in the Rule 60(b)(6) Motions across 33 cases are nearly identical: JW allegedly failed to disclose the relationship between Ms. Freeman and former Judge Jones as required by the Bankruptcy Code, Bankruptcy Rules, and the Texas Disciplinary Rules when representing clients in cases before former Judge Jones or where Judge Jones served as mediator.

8.  None of the statutes, rules, or case law cited in the Rule 60(b)(6) Motions address or define the internal obligations, structure, composition, or other contractual terms governing JW's partnership. These matters, including the specific roles and responsibilities of partners or

---

*also* Fed. R. Civ. P. 26 ("[p]arties may obtain discovery regarding any matter, not privileged, ***that is relevant to the claim or defense of any party***") (emphasis added).

[2] Motion to Compel, ¶ 16 (citing *Rangel v. Gonzalez Mascorro,* 274 F.R.D. 585, 590 & n.5 (S.D. Tex. 2011) (cleaned up and quotations omitted) (emphasis added).

203480988

management within the firm, are established solely through the Partnership Agreement and pertain *only* to JW's internal governance.

9. The statutes and rules relevant to the Rule 60(b)(6) Motions focus exclusively on *external* requirements for disclosure, disinterestedness, and ethical compliance under the Bankruptcy Code, Bankruptcy Rules, or Texas Disciplinary Rules.

10. The below table outlines the statutory bases asserted by the U.S. Trustee in the Rule 60(b)(6) Motions and explains why the Partnership Agreement is not relevant to the U.S. Trustee's claims:

| | |
|---|---|
| 28 U.S.C. § 455 | Judicial disqualification does not depend on internal partnership agreements. The Partnership Agreement governs partner roles, compensation, and structure within the firm, not the judge's impartiality requirements. |
| Bankruptcy Rule 5002 | Rule 5002 prohibits a judge from appointing closely associated professionals regardless of firm agreements. The Partnership Agreement is a private document unrelated to court-imposed disqualification standards. |
| Bankruptcy Rule 5004(b) | The Rule applies independently of any firm-specific documents. The Rule focuses on preserving impartiality in compensation approvals, unrelated to any private compensation structures or management responsibilities outlined in the Partnership Agreement. |
| 11 U.S.C. §§ 327, 328, and 330 | These sections require compliance with court standards, irrespective of the Partnership Agreement. Internal firm policies about compensation and structure are irrelevant to these statutory requirements and do not affect statutory standards for disclosures and disinterestedness in bankruptcy cases. |
| Bankruptcy Rule 2014 | Disclosure obligations under Rule 2014 are imposed by the Bankruptcy Rules. The Partnership Agreement is a private document, unrelated to any Rule on disclosures concerning conflicts or connections. |
| Texas Disciplinary Rule 3.03 | This Rule pertains to disclosures to the court and is not concerned with the firm's internal governance. The Partnership Agreement governs the relationship between partners but does not impact any ethical duty to disclose relevant conflicts to the court. |
| Texas Disciplinary Rule 4.01 | This Rule focuses on truthfulness to the court, not on internal agreements about compensation or responsibilities. The Partnership Agreement is irrelevant to these ethical obligations. The Partnership Agreement pertains to the firm's internal structure and partner relationships, not any court-required disclosures. |

203480988

| Texas Disciplinary Rule 5.01 | This Rule is concerned with ethical compliance and is independent of any internal provisions in the Partnership Agreement. The Partnership Agreement has no relevance to any obligations under this Rule. Ethical duties to the court apply regardless of any internal arrangements within the firm, including the Partnership Agreement. |
|---|---|
| Texas Disciplinary Rule 8.04(a)(6) | This Rule centers on knowingly assisting a judge in conduct that is a violation of the applicable rules of judicial conduct, not the internal responsibility of JW's partners. |

11. Indeed, the Partnership Agreement, an *internal* document, is irrelevant to these issues, as it merely outlines the terms between JW partners. The Court's evaluation of JW's compliance will focus on statutory criteria established by these laws, not on internal documents like the Partnership Agreement, which have no bearing on JW's legal obligations to the estate or the court.

12. The U.S. Trustee's arguments regarding the relevance of the Partnership Agreement lack merit. The U.S. Trustee contends that the Partnership Agreement "potentially represents the only contractual basis for what JW partners legally bound themselves to do," and that it "establishes terms for compensation, admission, and removal." That is true, but these provisions have no impact on JW's statutory obligations in these proceedings.

13. The Rule 60(b)(6) Motions turn on whether JW fulfilled its disclosure obligations, if any—not on how JW structures its partner relationships or compensation. Internal provisions in the Partnership Agreement are confined to JW's private business dealings and do not influence or define JW's external obligations to disclose conflicts or maintain disinterestedness under the Bankruptcy Code.

14. Furthermore, the U.S. Trustee's focus on JW's Partnership Agreement as relevant to whether JW conducted a "reasonable investigation" and acted "reasonably" is misplaced. The U.S. Trustee suggests that JW's partners may have had the authority to remove Ms. Freeman for

203480988

cause based on her undisclosed relationship with former Judge Jones, and that the failure to do so within a certain timeframe was unreasonable. However, the internal ability or failure to take such action, even if documented in the Partnership Agreement, does not determine whether JW fulfilled its obligations of *disclosure* under the Bankruptcy Code, Bankruptcy Rules, and Texas Disciplinary Rules.[3]

15. Courts have consistently held that, although the U.S. Trustee may participate in bankruptcy proceedings, he lacks standing to assert causes of action on behalf of an estate or its creditors.[4] Here, the U.S. Trustee's role is even more limited. A hypothetical violation of internal policies, such as those concerning Ms. Freeman's relationship with former Judge Jones, would be a matter strictly between JW and its partners and does not impact JW's obligations to the bankruptcy court and estates.

16. The U.S. Trustee's primary responsibility is to ensure compliance with the Bankruptcy Code and other relevant statutes, not to scrutinize or enforce the internal agreements of JW or other law firms. While JW recognizes the role of the U.S. Trustee in bankruptcy cases, this Court cannot extend that role to enforcing internal policies within private firms.

---

[3] The U.S. Trustee's argument for the relevance of the JW Partnership Agreement disregards the clear limitations on his standing to assert causes of action on behalf of private parties. In his supplemental standing brief, the U.S. Trustee's argument emphasizes his role in pursuing public interests within the scope of the bankruptcy process. However, this standing does not extend to enforcing private rights or internal firm policies that do not directly impact public disclosure obligations under the Bankruptcy Code, Bankruptcy Rules, or Texas Disciplinary Rules. *See United States Trustee's Supplemental Brief in Support of His Amended and Supplemental Motion for (1) Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* filed in Altera Infrastructure Project Services, LLC, et al., Case No. 22-90129 [Dkt. No. 142].

[4] *In re Marin Motor Oil, Inc.*, 689 F.2d 445, 455-53 (3d Cir. 1982) (distinguishing between the right to participate in a proceeding "initiated by a . . . debtor in possession" and the right to assert such cause of actions); *In re Sunbeam Corp.*, 287 B.R. 861, 862 (S.D.N.Y. 2003) (right to intervene is distinct from "the right, in essence, to take ownership of the causes of action"); *In re Quigley Co., Inc.*, 437 B.R. 102, 158 (Bankr. S.D.N.Y. 2010) ("While section 307 of the Bankruptcy Code grants the United States Trustee the right to appear and be heard on any issue . . . , it does not authorize the United States Trustee to assert control over causes of action belonging to the Quigley estate.").

17. The Court's inquiry will focus on whether JW met its statutory disclosure requirements under the Bankruptcy Code, Bankruptcy Rules, or Texas Disciplinary Rules. Thus, the Court should deny the U.S. Trustee's Motion to Compel as it falls outside the scope of discoverable information relevant to the U.S. Trustee's claims asserted in the Rule 60(b)(6) Motions.

B.   **In the Alternative, Only Specific Portions of the Partnership Agreement Should Be Produced After *in Camera* Review by this Court, and Any Such Production Should be Limited to the U.S. Trustee and his Counsel**

18. Given the highly sensitive and confidential nature of the Partnership Agreement—provided exclusively for JW partners and inaccessible to non-partner attorneys, general JW personnel, clients, and other law firms and outside third parties—it should not be subject to discovery on speculative grounds.

19. However, if the Court deems any part of the Partnership Agreement potentially relevant, production should be limited to specific portions that this Court determines are relevant to these proceedings after *in camera* review. The Court should also limit such production to the U.S. Trustee and his counsel only given that confidential information has in the past—and notwithstanding this Court's Protective Order—been mishandled, and other documents produced in discovery have been leaked to outside parties. For example, as this Court is aware, on September 11, 2024, the U.S. Trustee filed a *Notice of Inadvertent Disclosures*,[5] informing this Court that 19 exhibits used in the 30(b)(6) deposition,[6] many of which were marked confidential, were lost and therefore might have been subject to disclosures of confidential information.

---

[5] *See* Dkt. No. 334

[6] The 30(b)(6) deposition was conducted on August 20, 2024. According to the *Declaration of Frances Behmke in Support of United States Trustee's Notice of Inadvertent Disclosure* [Dkt. No. 334-1], the 30(b)(6) exhibits were shipped on August 21 via FedEx. The U.S. Trustee notified JW about the issue on September 6, 2024.

203480988

20. Also on October 8, 2024, JW learned during a hearing before this Court that news publications intended to publish articles based on documents produced to the U.S. Trustee in response to his subpoenas. Later that same day, news publications published stories containing details from these documents, with other outlets covering the story in subsequent days. This ongoing disclosure of information to outside third parties raises serious concerns about the protection of JW's confidential and highly confidential materials.

21. Given the highly sensitive nature of the Partnership Agreement, disclosure poses a substantial risk of additional confidentiality breaches. Maintaining the confidentiality of the Partnership Agreement is essential to protect JW's private business practices and partner arrangements from unnecessary exposure.

22. Therefore, if any portion of the Partnership Agreement is produced, it should be strictly limited to provisions deemed relevant by this Court and disclosed solely to the U.S. Trustee and his counsel.

## CONCLUSION

For the foregoing reasons, JW requests that the Court deny the Motion to Compel and grant JW such other relief as to which it may be entitled.

203480988

Dated: October 29, 2024

| **NORTON ROSE FULBRIGHT US LLP** | **RUSTY HARDIN & ASSOCIATES, LLP** |
|---|---|
| */s/   Jason L. Boland*  <br>Jason L. Boland (SBT 24040542)  <br>William Greendyke (SBT 08390450)  <br>Julie Harrison (SBT 24092434)  <br>Maria Mokrzycka (SBT 24119994)  <br>1550 Lamar, Suite 2000  <br>Houston, Texas 77010  <br>Telephone:  (713) 651-5151  <br>jason.boland@nortonrosefulbright.com  <br>william.greendyke@nortonrosefulbright.com  <br>julie.harrison@nortonrosefulbright.com  <br>maria.mokrzycka@nortonrosefulbright.com  <br>  <br>Paul Trahan (SBT 24003075)  <br>Emily Wolf (SBT 24106595)  <br>98 San Jacinto Blvd., Suite 1100  <br>Austin, Texas 78701  <br>Telephone: (512) 474-5201  <br>paul.trahan@nortonrosefulbright.com  <br>emily.wolf@nortonrosefulbright.com  <br>  <br>*Counsel for Jackson Walker LLP* | Russell Hardin, Jr. (SBT 08972800)  <br>Leah M. Graham (SBT 24073454)  <br>Jennifer E. Brevorka (SBT 24082727)  <br>Emily Smith (SBT 24083876)  <br>5 Houston Center  <br>1401 McKinney, Suite 2250  <br>Houston, Texas 77010  <br>Telephone: (713) 652-9000  <br>rhardin@rustyhardin.com  <br>lgraham@rustyhardin.com  <br>jbrevorka@rustyhardin.com  <br>esmith@rustyhardin.com  <br>  <br>*Counsel for Jackson Walker LLP* |

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                      */s/ Maria Mokrzycka*  
                                                      Maria Mokrzycka