## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **In re:**<br><br>**Professional Fee Matters Concerning the Jackson Walker Law Firm** | **Case No. 23-645-EVR** |

### NOTICE OF ENTRY OF OPINION AND ORDER IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF OREGON GRANTING U.S. TRUSTEE'S MOTION TO COMPEL

TO THE HONORABLE EDUARDO V. RODRIGUEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for Region 7 ("U.S. Trustee"), files this

second[1] notice pursuant to the Court's ruling at the hearing held on September 26, 2024.[2]

---

[1] An initial Notice of a Hearing Held in the District of Oregon was filed with this Court on November 1, 2024.  ECF No. 525.

[2]     THE COURT:   All right.  So what I'm going to do today is deny and grant in part the U.S. Trustee's request.  Some of this is out of the U.S. Trustee's control. Obviously, it's in the Oregon court.  But I don't find cause today to extend any of the deadlines.  So the -- I'm going to deny the extension of any deadlines in the Court's scheduling order, Docket No. 249.  Those will remain in place.

But I will allow the parties to continue forward in the Oregon court to obtain a final order.  Once that has been accomplished, then the United States Trustee will file a notice on the Court's docket letting me know that it has been concluded, and if the U.S. Trustee needs to seek further modification of this Court's scheduling order, happy to take that up on a motion, and as long as the U.S. Trustee [shows] good cause for modification of those deadlines, then, you know, happy to entertain what those modifications would be.

. . .

THE COURT:  The deadlines will remain in place.  You may pursue your remedies at the Oregon court.  Once you have an order from them, you'll need to come back to me and let me know what that final order is.

Case No. 23-645, Hrg. Tr. at 44:3–18, 45:1–4 (Bankr. S.D. Tex. Sept. 26, 2024).

The attached Opinion and Order on the U.S. Trustee's Motion to Compel entered in the United States District Court for the District of Oregon grants the relief requested by the U.S. Trustee therein. The Opinion and Order further requires production of documents from the Respondents, Attorney Peter Jarvis and Attorney Jacqueline Harvey, and for examination of both Respondents, within 21 days of entry, or on or before December 18, 2024.

Date: December 6, 2024                                    Respectfully Submitted,

                                                         KEVIN M. EPSTEIN
                                                         UNITED STATES TRUSTEE
                                                         REGION 7, SOUTHERN AND WESTERN
                                                         DISTRICTS OF TEXAS

                                                         By: */s/ Alicia Barcomb*
                                                         MILLIE APONTE SALL
                                                         Assistant U.S. Trustee
                                                         Tex. Bar No. 01278050/Fed. ID No. 11271
                                                         VIANEY GARZA
                                                         Trial Attorney
                                                         Tex. Bar No. 24083057/Fed. ID No. 1812278
                                                         ALICIA BARCOMB
                                                         Trial Attorney
                                                         Tex. Bar No. 24106276/Fed ID No. 3456397
                                                         515 Rusk, Suite 3516
                                                         Houston, Texas 77002
                                                         (713) 718-4650 – Telephone
                                                         (713) 718-4670 – Fax
                                                         Email: millie.sall@usdoj.gov
                                                                vianey.garza@usdj.gov
                                                                alicia.barcomb@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means for CM/ECF system users on December 6, 2024.

                                                         */s/ Alicia Barcomb*
                                                         Alicia Barcomb, Trial Attorney

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IN RE: PROFESSIONAL FEE MATTERS      No. 3:24-mc-00894-AB
CONCERNING THE JACKSON WALKER
LAW FIRM      OPINION AND ORDER ON
     U.S. TRUSTEE'S
     MOTION TO COMPEL

BAGGIO, District Judge:

## I.    INTRODUCTION

Pending before the Court is a Motion to Compel Discovery ("UST Mot.", ECF 1), filed by

Kevin M. Epstein, the United States Trustee for Region 7, Southern and Western Districts of Texas

("U.S. Trustee"), that seeks to enforce compliance with subpoenas for testimony and documents

held by Respondent Peter Jarvis and Respondent Jacqueline Harvey (collectively the

"Respondents"). The U.S. Trustee's motion relates to litigation pending in the U.S. Bankruptcy

Court, Southern District of Texas (Houston) in which the U.S. Trustee filed Federal Rule of Civil

Procedure ("Fed. R. Civ. P.") 60(b)(6) motions in thirty-three cases seeking relief from orders

approving applications for compensation and reimbursement of expenses filed by Jackson Walker

LLP ("Jackson Walker"). The U.S. Trustee filed the Motion to Compel in the District of Oregon

because Respondents, who reside in this District, objected to production of the requested materials.

For the reasons that follow, the Court GRANTS the U.S. Trustee's Motion to Compel.

## II.    FACTUAL BACKGROUND

The underlying facts of this case arise from a secret intimate relationship between former Southern District of Texas bankruptcy judge, David R. Jones ("Jones") and a former partner at Jackson Walker named Elizabeth Freeman ("Freeman"). The intimate relationship was ongoing while Freeman's then-firm, Jackson Walker, represented clients in a number of bankruptcy proceedings pending before Jones. Jackson Walker denies that it had knowledge of the relationship until March of 2021, at which time Michael Van Deelen ("Van Deelen") alleged the improper relationship in the context of an adversary action Van Deelen filed against officers involved in one of the bankruptcy proceedings in which Jackson Walker was counsel. *In re McDermott International, Inc.*, No. 20-30336 (Bankr. S.D. Tex.); *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309 (Bankr. S.D. Tex.). Specifically, Van Deelen alleged in an email sent to a bankruptcy partner at Jackson Walker (Matt Cavenaugh) that Jones and Freeman were intimately involved. UST Mot., Ex. 1 (ECF 1-1 at p. 9);[1] Ex. 2 (ECF 1-1 at p. 38, ¶ 33); Jackson Walker's Response in Opposition to the U.S. Trustee's Motion to Compel ("JW Resp.", ECF 22), ¶ 10.

---

[1] The Court notes its frustration with the exhibits introduced by the parties. The U.S. Trustee's exhibits contain confusing and inconsistent page numbering. Local Rule ("LR") 10-1(e)(2) ("Exhibits or attachments to pleadings and other documents must be clearly numbered."). Because certain documents in this Court's record were also filed in the underlying Texas bankruptcy proceedings, those exhibits contain ECF stamps and page numbers from both federal cases as well as original document numbering. *See e.g.,* UST Mot., Ex. 1 (contains ECF page number stamp for the current case, for 20-20184 (Bnkr. S.D. Tex.), and original document numbering); *and* the U.S. Trustee's Reply ("UST Reply", ECF 27), Ex. 20 (contains ECF page number stamp for the current case plus references to "U.S. Trustee's Exhibit 95"). Further complicating citations to this record is the fact that the U.S. Trustee filed its first set of exhibits to its Motion (Exhibits 1-15) as a single 237-page PDF (ECF 1-1) but filed supplemental exhibits to its Reply (Exhibits 16-21) as separate PDFs (ECF 27-2 through 27-7).

Jackson Walker has done no better to create a clear record. Jackson Walker's Response references its Exhibit A in footnote 2 and Exhibit B in footnotes 3 and 4, but Jackson Walker filed no such exhibits. The Court has pulled the documents referenced in those footnotes as having been filed in 20-33239 (Bnkr. S.D. Tex.), at ECF 423 & 625 and confirmed that these documents are identical as to the substance and differ only as to case name/number with those filed by the U.S. Trustee in this case as its Exs. 1 and 2 (ECF 1-1 at pp. 1-12, 13-186), which had been originally filed in 20-20184 (Bnkr. S.D. Tex.), at ECF 1244 & 1472.

In an attempt to clarify the record, this Opinion and Order will cite to the name of the filing, its exhibit number, and the ECF filing number and page number as entered in this case. The Opinion and Order ignores the inconsistent (or unavailable) internal page numbering of each exhibit. For example, page 2 of UST Mot., Ex. 15, which is ECF-stamped as page 237 of ECF filed document 1-1, would be referenced as follows: UST Mot., Ex. 15 (ECF 1-

Freeman admitted to Jackson Walker partners that there had been an intimate relationship between her and Jones but claimed that the relationship was over. UST Mot., Ex. 1 (ECF 1-1 at p. 4, ¶ 13); Ex. 2 (ECF 1-1 at p. 39, ¶ 34); JW Resp., ¶¶ 4, 11. In response to learning this information, Jackson Walker partner Patrick Cowlishaw began conferrals with Holland & Knight attorney/Respondent Jarvis on March 8, 2021, to assist the firm in assessing its legal and ethical obligations in light of the intimate relationship. *See* UST Mot., Ex. 1 (ECF 1-1 at p. 8 ("This letter concerns the relationship between one of our law firm's partners and a federal bankruptcy judge, which you and I have discussed on several occasions going back to March of this year.") & at p. 10 ("I also conferred with you, beginning on March 8, and continuing from time to time as we learned more facts and were able to confer within firm management.")). Jackson Walker denies any specific engagement letter exists between Jackson Walker and Respondents, UST Mot., Ex. 15 (ECF 1-1 at p. 237), but Jackson Walker nevertheless represents the firm "hired" Respondent Jarvis "upon first hearing allegations of an intimate relationship" between Freeman and Jones. JW Resp., ¶¶ 4, 12 ("two days after receipt of Mr. Van Deelen's email . . . [Jackson Walker] engaged Mr. Jarvis").

Regardless of whether Respondents were retained on the Freeman/Jones matter specifically, or whether Jackson Walker had Respondents on some sort of general retainer, the record clearly reflects Jackson Walker sought and obtained advice from Respondent Jarvis about Freeman's relationship with Jones starting on March 8, 2021, and continuing through additional improper relationship-related developments in 2022.[2] The Court refers to this attorney client relationship between Jackson Walker and Respondents as "the Freeman Engagement."

---

1 at p. 237). The Court will use the U.S. Trustee's Exhibits 1 & 2 for references made by Jackson Walker to its own unfiled Exhibits A and B.

    [2] Respondent Harvey became involved in advising Jackson Walker by May 2022 (*see* UST Reply, Ex. 18 (ECF 27-4 at pp. 2-7)) but was not involved in the original provision of advice in 2021.

Jackson Walker and Respondent Jarvis exchanged communications about the implications of the disclosed relationship in 2021 and Respondent Jarvis ultimately provided an advice memorandum to Jackson Walker dated September 22, 2021 ("2021 Advice Memo"). *See* UST Mot., Ex. 13 (ECF 1-1 at pp. 221-25). Freeman continued her employment at Jackson Walker throughout 2021.

On February 1, 2022, a dinner party guest told a Jackson Walker non-bankruptcy partner that Freeman and Jones lived together. UST Mot., Ex. 2 (ECF 1-1 at p. 45, ¶ 46). The Jackson Walker partner challenged the allegation made by the dinner party guest and "was given further information supporting the allegation." UST Mot., Ex. 2 (ECF 1-1 at p. 45, ¶ 46). Jackson Walker related the subsequent events as follows:

> JW management concluded that they would again confront Ms. Freeman directly. Due to Ms. Freeman's children's Spring Break schedules and related vacation and college trips, JW confronted Ms. Freeman in late March 2022. At that meeting, Ms. Freeman once more denied the existence of any current, intimate relationship with former Judge Jones, and stated that the alleged new facts related to an earlier time period.
>
> On March 30, 2022, the day after JW confronted Ms. Freeman about the new allegations a second time, Ms. Freeman finally admitted that she and former Judge Jones had rekindled their relationship.

UST Mot., Ex. 2 (ECF 1-1 at pp. 45-46, ¶¶ 47-48). At some point around this time, Jackson Walker suggested Freeman obtain her own counsel. UST Mot., Ex. 2 (ECF 1-1 at p. 48, ¶ 52); JW Resp., ¶¶ 5, 17.

On April 8, 2022, Freeman retained Tom Kirkendall ("Kirkendall") to represent her regarding the implications of her relationship with Jones and her employment at Jackson Walker. UST Mot., ¶ 11, Ex. 2 (ECF 1-1 at p. 48, ¶ 52); JW Resp., ¶¶ 5, 17, 20. Freeman was still a partner at Jackson Walker at this time. On April 22, 2022, Jackson Walker shared with Kirkendall the 2021 Advice Memo prepared by Respondent Jarvis. UST Mot., Ex. 3 (ECF 1-1 at pp. 187-89).

4 – OPINION AND ORDER ON U.S. TRUSTEE'S MOTION TO COMPEL

Jackson Walker again sought advice from Respondent Jarvis and another Holland & Knight attorney, Respondent Harvey, regarding the firm's legal and ethical obligations in light of the updated information. UST Mot., Ex. 1 (ECF 1-1 at p. 5, ¶ 17); Ex. 2 (ECF 1-1 at p. 48, ¶ 52); JW Resp. ¶¶ 5, 17. By May of 2022, Respondents were again actively advising Jackson Walker as part of the Freeman Engagement. JW Resp., ¶ 5; UST Mot., Ex. 9 (ECF 1-1 at p. 203). Respondents provided a second advice letter dated June 2, 2022 ("2022 Advice Memo"), to Jackson Walker. JW Resp., ¶ 19; *see* UST Reply, Ex. 22 (ECF 28, at pp. 2-5). Kirkendall told the U.S. Trustee that Kirkendall had participated in five teleconference calls with Respondents around the time of the 2022 Advice Memo.[3] UST Mot., ¶ 14.

On June 8, 2022, Jackson Walker shared with Kirkendall the 2022 Advice Memo prepared by Respondents. UST Mot., ¶¶ 13-14; JW Resp., ¶ 5. As discussed in more detail below, Jackson Walker does not assert that communications with Kirkendall were privileged.

### III.    THE TEXAS RULE 60 MOTIONS & OREGON MOTION TO COMPEL

In light of news breaking about the intimate relationship between Freeman and Jones, on November 2, 2023, the U.S. Trustee filed several Fed. R. Civ. P. 60(b)(6) motions against Jackson Walker in U.S. Bankruptcy Court, Southern District of Texas (Houston). *See* UST Mot., Ex. 2 (ECF 1-1 at p. 56, ¶ 73, n.55-56) (listing thirty-three cases in which U.S. Trustee filed for relief per Rule 60). As noted above, the U.S. Trustee sought Rule 60 relief related to Jackson Walker's decisions not to inform clients, parties-in-interest, and courts of the intimate relationship between

---

[3] Although Kirkendall reported five teleconference calls, the exhibits submitted in this proceeding suggest only four: two before the 2022 Advice Memo and two after the 2022 Advice Memo. UST Reply, Ex. 18 (ECF 27-4, at pp. 2-7) (noting three teleconferences between Kirkendall and Respondents on or about May 13, 2022; May 27, 2022; and June 8, 2022), Ex. 20 (ECF 27-6, at p. 5) (noting one teleconference invitation between Kirkendall and Respondents on or about June 27, 2022). The Court also notes that Exhibit 20 is confusing in that the first three pages appear to relate to a June 20, 2022, phone call between Kirkendall, Freeman, and others at Jackson Walker to which Respondents were not a party (UST Reply, Ex. 20 (ECF 27-6 at pp. 2-4)), but the final page of this exhibit appears to be a separate meeting invitation for Kirkendall and Respondents on June 28, 2022 (*id.* at p. 5).

Jones and Freeman when Freeman's firm had a number of cases pending before Jones. UST Mot., ¶ 1.

In its responses to the U.S. Trustee's Rule 60 motions, Jackson Walker defended the firm's conduct regarding Freeman and Jones, arguing that the firm acted reasonably and obtained advice from ethics counsel, Respondent Jarvis. UST Mot., Ex. 1 (ECF 1-1 at p. 4, ¶¶ 14-15); Ex. 2 (ECF 1-1 at pp. 26-27, ¶¶ 1-2; pp. 29-30, ¶ 10; pp. 40-41, ¶¶ 37-39; p. 48, ¶¶ 52-53; p. 58, ¶ 77; p. 59, ¶ 79; pp. 89-90, ¶ 144; pp. 96-97, ¶ 160; pp. 109-10, ¶ 183; & pp. 111-12, ¶ 186). As part of the litigation in Texas, the U.S. Trustee served subpoenas on Respondents in the District of Oregon, seeking discovery related to the Freeman Engagement. UST Mot., Ex. 5 (ECF 1-1 at pp. 191-94); Ex. 6 (ECF 1-1 at pp. 195-98).

Before this Court is *only* the U.S. Trustee's Motion to Compel compliance as to the third-party subpoenas for discovery and examination of Holland & Knight attorneys/Respondents Jarvis and Harvey. UST Mot., Ex. 5 (ECF 1-1 at pp. 191-94); Ex. 6 (ECF 1-1 at pp. 195-98). Based on conduct, disclosures, and representations made by Jackson Walker and Respondents in connection with proceedings in the Texas Bankruptcy Courts, the U.S. Trustee asserts (1) much of the information sought pursuant to the subpoenas was never privileged due to the presence and involvement of third-party Kirkendall; and, (2) Jackson Walker expressly and impliedly waived any remaining privilege that could protect the information sought by the subpoenas. The U.S. Trustee's pending discovery requests of Respondents are as follows:

1. *All documents provided to You and/or Holland & Knight by Jackson Walker in connection with Jackson Walker's engagement of You and/or Holland & Knight in connection with the Relationship.*

2. *All documents received by You and/or Holland & Knight in connection with Your engagement by Jackson Walker to assist in matters related to the Relationship.*

3.   *All documents relied on by You and/or Holland & Knight in providing any advice to Jackson & [sic] Walker regarding the Relationship.*

4.   *All documents relied on by You and/or Holland & Knight in providing any advice to Jackson & [sic] Walker regarding Freeman.*

5.   *All documents between You and/or Holland & Knight and Jackson & [sic] Walker relating to the Relationship, including the Judicial Disqualification Matter Letter and any responses to that Letter thereto from You and/or Holland & Knight.*

6.   *All documents between You and/or Holland & Knight and Jackson & [sic] Walker relating to Freeman.*

7.   *All agreements between You and/or Holland & Knight and Jackson & [sic] Walker in which You and/or Holland & Knight agreed to provide advice to Jackson & [sic] Walker in connection with the Relationship and/or Freeman.*

UST Mot., Ex. 5 (ECF 1-1 at p. 194); Ex. 6 (ECF 1-1 at p. 198).

Respondents Jarvis and Harvey timely served objections to the U.S. Trustee's subpoenas pursuant to Fed. R. Civ. P. 45(d)(2)(B). *See* UST Mot., Ex. 7 (ECF 1-1 at pp. 199-200); Ex. 8 (ECF 1-1 at pp. 201-02). Respondents stated their objections were based on Jackson Walker seeking to preserve all available privileges including the attorney-client privilege. UST Mot., Ex. 7 (ECF 1-1 at pp. 199-200); Ex. 8 (ECF 1-1 at pp. 201-02). Respondents represented that "[t]he subpoenas call for documents regarding Respondents' prior representation of [Jackson Walker] . . . in which Respondents provided ethics and professional responsibility advice." Holland & Knight's Response to the Motion to Compel ("HK Resp.", ECF 21) at pp. 1-2. Respondents did not produce a privilege log in support of their assertion of privilege.  At the U.S. Trustee's request, Jackson Walker produced a limited privilege log describing the communications between Jackson Walker and the Respondents that Jackson Walker was withholding from its document productions in response to the U.S. Trustee's request for production. JW Resp., ¶ 26; UST Mot., Ex. 9 (ECF 1-1 at pp. 203-08).

7 – OPINION AND ORDER ON U.S. TRUSTEE'S MOTION TO COMPEL

Jackson Walker argued that while it expressly waived attorney-client privilege by sharing the 2021 Advice Memo and 2022 Advice Memo (collectively the "Advice Memos") with Kirkendall in April and June of 2022, the waiver should be limited to those two documents themselves and should not be deemed a general subject matter waiver as to all discovery of documents related to the Freeman Engagement. JW Resp., ¶¶ 28-29, 35. Jackson Walker also argued that it did not engage in an implied waiver in the course of the Texas Rule 60 litigation. *See generally* JW Resp., ¶¶ 36-40.

This Court held oral argument on October 29, 2024. Minutes of Proceedings (Oct. 29, 2024), (ECF 29); Transcript of Motion to Compel Hearing (filed Nov. 4, 2024), ("TR", ECF 32). Jackson Walker raised two new issues during oral argument. First, Jackson Walker claimed that work-product privilege also protected the information the U.S. Trustee sought from Respondents. TR at p. 65. Second, Jackson Walker argued that because it had shared the 2021 and 2022 Advice Memos with Kirkendall outside the context of federal litigation, this sharing constituted an extrajudicial express waiver for which there could be no larger subject matter waiver because Federal Rules of Evidence ("Fed. R. Evid.") 502's application is limited to disclosures made in a pending federal proceeding. TR at p. 69.

On October 31, 2024, Jackson Walker submitted a Supplemental Brief in Opposition to the U.S. Trustee's Motion to Compel, ("JW Supp. Brief", ECF 30).[4] The U.S. Trustee filed a Response to that Supplemental Brief on November 8, 2024, ("UST Supp. Resp.", ECF 33).

---

[4] Jackson Walker did not move for leave to file a post-hearing memorandum in violation of LR 7-1(e)(3) ("Unless directed by the Court, no further briefing is allowed."). However, because the U.S. Trustee did not raise a procedural objection and instead opted to file a response, the Court allowed both sides to supplement their arguments in writing.

## IV. STANDARDS

### A. Motion To Compel

Rule 37 allows a party seeking discovery to bring a motion to compel responses to discovery. Fed. R. Civ. P. 37(a)(3)(B) ("A party seeking discovery may move for an order compelling an answer, . . . production, or inspection."). The resisting party carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). In this case, the Court must determine whether Jackson Walker's assertions of privilege are sufficient to deny the Motion to Compel.

### B. Attorney-Client Privilege

The purpose of the attorney-client privilege is to encourage candid communications between client and counsel "and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The Supreme Court has explained that "[t]he [attorney]-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reason for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51 (1980).

In an action brought under federal law, the scope of any privilege waiver is determined by federal law. Fed. R. Evid. 501; *see United States v. Zolin*, 491 U.S. 554, 562 (1989); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (stating that issues concerning the "application of the attorney-client privilege in the adjudication of federal law are governed by federal common law"); *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977).

There are two questions posed by the current litigation: first, whether the sought after communications fall within the attorney-client privilege;[5] and second, whether the privilege has been waived. The Court will address the second question first since it is dispositive of the matter.

## V. DISCUSSION

The present case presents a plethora of issues related to assertions of waiver of attorney-client privilege. At the outset, as explained in 1 Edna Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 508–09 (6th ed. 2017), because "waiver" in legal parlance usually refers to the knowing, intelligent, and voluntary abandonment of a right, the term "forfeiture" is a more apt term when considering a waiver of the attorney-client privilege. While a party may intentionally forfeit privilege as a strategic matter, a party may also forfeit privilege by inadvertence or negligence. *Id*. A party may forfeit privilege by disclosure to third parties. Indeed, a forfeiture can take place even if the action is taken by the lawyer and unbeknownst to the client. *Id*. While this Court uses the term "waiver" to be consistent with case law on this subject, it bears emphasis that the analysis is one of forfeiture not of waiver in the traditional legal sense.

---

[5] The U.S. Trustee raises colorable arguments regarding whether the privilege ever existed as to a number of the materials and communications sought in these proceedings. For example, Kirkendall – for whom Jackson Walker raises no claim of joint defense or other basis for arguing privilege – directly participated in a number of communications about the Freeman Engagement with Jackson Walker. Indeed, it was in the context of these communications that Jackson Walker shared its Advice Memos with Kirkendall. In addition, Kirkendall reportedly told the U.S. Trustee that Respondents shared with Kirkendall directly their advice to Jackson Walker about the Freeman Engagement and obligations Jackson Walker had to disclose it. *And see* JW Resp., ¶ 18 ("Notably, JW has not claimed that Mr. Kirkendall's communications with Mr. Jarvis or Ms. Harvey are privileged.").

It appears likely that communications between Jackson Walker and Respondents about the Freeman Engagement were privileged prior to April 8, 2022, when Kirkendall became involved. But there is insufficient factual development for the Court to make any specific findings about the privilege vis-à-vis the Ninth Circuit's eight-part test, communication-by-communication, particularly here where Jackson Walker failed to offer any evidence in support of its burden to establish privilege. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *see also United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("The party asserting the attorney-client [privilege] has the burden of establishing the existence of the attorney-client relationship and the privileged nature of the communication."); *see also ODS Technologies, L.P. v. Magna Entertainment Corporation*, No. CV 07-32 65-DDP (RCx), 2008 WL 11340376, at *3 (C.D. Cal. Oct. 31, 2008) (defendant failed to meet its burden of demonstrating documents on its privilege log were protected by attorney-client privilege because defendant provided no declarations or other evidence to support the applicability of the attorney-client privilege). Because this Court finds Jackson Walker waived any privilege that may have existed, the Court declines to address the initial question of what communications were privileged.

10 – OPINION AND ORDER ON U.S. TRUSTEE'S MOTION TO COMPEL

"Waiver of the attorney-client privilege can be either express or implied." 2 Paul R. Rice, Attorney-Client Privilege in the United States § 9:24 (2023–24 ed.). Regardless of the type of purported waiver, the concept of fairness colors the analysis. Whether a waiver is expressly made in an extrajudicial matter, expressly made within the course of litigation, or impliedly made during the course of litigation, the concept of fairness is the North Star of a court's analysis. *See Dukes v. Wal-Mart*, No. 01-cv-2252 CRB (JSC), 2013 WL 1282892, at \*9 (N.D. Cal. Mar. 26, 2013) (fairness should be considered when determining the scope of an extrajudicial express waiver); *see also United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020) (implied waivers rest on the fairness principle); *Weil v. Investment/Indicators, Research and Mgmt. Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (in the context of an express waiver, "when the privilege holder's conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not.") (cleaned up); *see also* Fed. R. Evid. 502(a) (in the context of a federal proceeding, fairness should be considered when determining the scope of an intentional waiver of attorney-client privilege).

As examined below, applying the framework for a claim of waiver of privilege, the Court finds that Jackson Walker has forfeited – or waived – attorney-client privilege as to the Freeman Engagement. Further, the Court finds that in light of the full record, granting the U.S. Trustee's Motion to Compel any formerly privileged information related to the subject matter of Respondent's advice is consistent with the overriding principles of fairness that guide the Court's waiver analysis.

### A. Jackson Walker Expressly Waived Attorney-Client Privilege As To The Entire Subject Matter Of The Freeman Engagement

Express waiver or voluntary waiver of attorney-client privilege "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise

shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *see also In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012). "Disclosures that effect an express waiver are typically within the full control of the party holding the privilege[.]" *Bittaker*, 331 F.3d at 719.

### 1. *Jackson Walker Expressly Waived Attorney-Client Privilege*

Jackson Walker concedes that it expressly waived attorney-client privilege as to the 2021 and 2022 Advice Memos. JW Resp., ¶ 35; JW Supp. Brief, ¶ 2. Jackson Walker describes this express waiver as having occurred when Jackson Walker produced to third party Kirkendall the 2021 Advice Memo and the 2022 Advice Memo.[6] JW Resp., ¶¶ 5, 35; JW Supp. Brief, ¶ 2.

After coming into possession of Respondents' advice, either from Jackson Walker or from communicating directly with Respondents, Kirkendall chose to meet with the U.S. Trustee to discuss the matter involving his client (Freeman), Jackson Walker, and Jones. According to the U.S. Trustee, during that meeting Kirkendall disclosed information related to the advice Respondents had given Jackson Walker. UST Mot., ¶¶ 10-11. Jackson Walker does not dispute this assertion. The U.S. Trustee reported that Kirkendall told the U.S. Trustee that Respondents discussed their conclusions stemming from their assessment of the information underlying the Freeman Engagement and that "Mr. Jarvis advised Jackson Walker it had to disclose the relationship between Ms. Freeman and Judge Jones." UST Mot., ¶¶ 14, 25; *see* JW Resp., ¶ 5.

Under these facts, an express waiver occurred. *In re Pac. Pictures Corp.*, 679 F.3d at 1126-27 ("Voluntarily disclosing privileged documents to third parties will generally destroy the privilege."); *Bittaker*, 331 F.3d at 720 ("once documents have been turned over to another party

---

[6] The 2022 Memo was previously withheld under an assertion of attorney-client privilege but was produced to the U.S. Trustee on August 7, 2024. UST Mot., ¶ 18; *see* UST Reply, Declaration of Laura D. Steele (ECF 27-1 at p. 3, ¶ 11).

voluntarily, the privilege is gone"); *see Sanmina Corp.*, 968 F.3d at 1116-17. Moreover, the express waiver in this case involves the very subject of the pending Rule 60 litigation: whether Jackson Walker acted reasonably regarding its handling of the improper Freeman-Jones relationship. A finding of complete subject matter waiver is particularly correct – and fair – considering not only the disregard with which Jackson Walker treated the privilege by failing to honor it, but also considering the way Jackson Walker invoked Respondents' advice in defending against the Rule 60 motions in Texas, a topic addressed below. In sum, Jackson Walker shared its privileged communications and information with a third party (Kirkendall) that Jackson Walker concedes was not within the circle of privilege, and its counsel (Respondents) shared their advice with third party Kirkendall as well. Kirkendall then shared that information directly with the U.S. Trustee. It is hard to imagine a more express waiver of privilege.

### 2. The Court Rejects Jackson Walker's Argument Regarding Imposition Of A Narrow Waiver Because The Waiver Was "Extrajudicial"

Jackson Walker argued for the first time in oral argument and reiterated in its post-hearing brief that because the express waiver occurred extrajudicially, the Court should narrowly tailor the scope of the waiver to the Advice Memos themselves. *See* JW Supp. Brief, ¶¶ 2-8 (citing cases and arguing Fed. R. Evid. 502(a) does not apply). This Court disagrees. Jackson Walker's argument ignores the most fundamental premise of this case. The Freeman-Jones scandal broke when Van Deelen made the accusation of the Freeman-Jones affair in the context of the Adverse Party proceedings in connection with the *In re McDermott International, Inc.* bankruptcy litigation wherein Van Deelen sought recusal of Jones due to his inappropriate relationship with Freeman. Indeed, *In re McDermott* is one of the thirty-three cases in which the U.S. Trustee filed a Rule 60 motion. UST Mot., Ex. 2 (ECF 1-1 at p. 56, ¶ 73, n.55; at pp. 125-26); *and see* JW Resp., ¶ 10 (noting "[t]his case stems from" the allegation of an improper relationship between Freeman and

Jones raised by Van Deelen "in connection with his effort to recuse former Judge Jones in the McDermott International bankruptcy proceedings."). Neither the advice nor any waiver of the privilege related to that advice was extrajudicial.

### 3. Scope Of The Waiver

Regarding the scope of the express waiver of attorney-client privilege, "[t]he widely applied standard . . . is that the waiver applies to all other communications relating to the same subject matter." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1249 (D. Or. Oct. 27, 2017) (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)). The waiver extends beyond the document initially produced out of concerns for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not. *Weil*, 647 F.2d at 24.

The fairness principle "animates the concept of subject matter waiver, in which voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Sanmina Corp.*, 968 F.3d at 1117 (quoting *Weil*, 647 F.2d at 24). Under this rule, "disclosure of information resulting in the waiver of the attorney-client privilege constitutes waiver only as to communications about the matter actually disclosed." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (quoting *Weil*, 647 F.2d at 25). The privilege holder "cannot be allowed, after disclosing as much as he pleases, to withhold the remainder." *Weil*, 647 F.2d at 24 (citation omitted).

Under the Fed. R. Evid., when a disclosure is made in a federal proceeding and "waives the attorney-client privilege . . . the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the subject matter; and (3) they ought in

fairness to be considered together." Fed. R. Evid. 502(a). Thus, fairness balancing is required to determine the scope of Jackson Walker's express waiver of attorney client privileged communications to third party Kirkendall. Fed. R. Evid. 502(a).

Jackson Walker requests that the Court find that it waived privilege *only* as to the Advice Memos and nothing more. JW Resp., ¶¶ 1, 9, 29, 49. Jackson Walker's position ignores important facts in the record relevant to the scope of the waiver. Jackson Walker did more than share the two Advice Memos with Kirkendall. Jackson Walker communicated back and forth with Kirkendall and Respondent Jarvis for "months", negotiating the terms about what the firm should disclose about Freeman in existing and future retention applications.[7] In addition, as discussed above, Kirkendall told the U.S. Trustee that Respondents conveyed directly to Kirkendall their advice to Jackson Walker about the Freeman Engagement.

Under the fairness principle, Jackson Walker's voluntary disclosures of attorney-client privilege require subject matter waiver of the privilege as to all other such communications on the same subject. *Sanmina Corp.*, 968 F.3d at 1117. Accordingly, Jackson Walker has expressly waived attorney-client privilege as to the subject matter of the Freeman Engagement, including underlying information pertaining to the 2021 Advice Memo, the 2022 Advice Memo, and communications between Jackson Walker, the Respondents, and any third parties, including Kirkendall.

---

[7] Per Jackson Walker's Response in Opposition filed in the Texas proceeding: "Mr. Kirkendall communicated with both JW and Mr. Jarvis over the next couple months to discuss whether a disclosure could be made in connection with existing and future retention applications." UST Mot., Ex. 2 (ECF 1-1 at p. 48, ¶ 52). *See also* UST Mot., Ex. 18 (ECF 27-4 at pp. 2-8 (Kirkendall emails with Respondents about retention application disclosure language)) and UST Mot., Ex. 19 (ECF 27-5 at pp. 2-12 (Kirkendall emails with Jackson Walker discussing appropriate retention application disclosure language and whether disclosures should be filed in all current cases or just cases going forward, to which Kirkendall responds: "My vote is for cases going forward, not current cases.")).

**B. Jackson Walker Impliedly Waived Attorney-Client Privilege As To The Freeman Engagement**

In light of the Court's finding that Jackson Walker expressly waived attorney-client privilege so as to forfeit any claim of privilege as to the entirety of the Freeman Engagement, the Court need not address the U.S. Trustee's alternative argument that Jackson Walker impliedly waived attorney-client privilege. However, the Court addresses implied waiver both (1) as an alternative basis for granting the Motion to Compel; and (2) because the Court concludes Jackson Walker's conduct as discussed in this section is further relevant to considerations of fairness in this case.

The Ninth Circuit uses a three-part test to determine whether an implied waiver of attorney-client privilege has occurred:

> (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense.

*Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). While the Ninth Circuit has not extensively discussed what it means to put "privileged information at issue," this Court finds helpful the discussion in *Benson v. City of Lincoln*, 343 F.R.D. 595, 608-13 (D. Neb. 2023). In *Benson*, the court explained that one situation in which the asserting party puts the privileged information "at issue" is "when proof of a party's legal contention implicates evidence encompassed in the contents of an attorney-client communication—for example, when a client uses reliance on legal advice as a defense[.]" *Benson*, 343 F.R.D. at 608. The party asserting the privilege must either "assert an affirmative defense or at least *affirmatively inject a new factual or legal issue into the case* to waive attorney-client privilege." *Benson*, 343 F.R.D. at 612 (emphasis added). This "at issue" reasoning is consistent with the Ninth Circuit decision in *Chevron Corp.*,

where the plaintiff sought to compel disclosure of documents that supported the defendant's affirmative claim that its tax position was reasonable because the position was based on the advice of counsel. 974 F.2d at 1162-63. In response, the defendant refused to supply the documents, arguing that the communications were protected by attorney-client privilege. *Id*. The Ninth Circuit disagreed, holding the defendant had put the tax advice at issue in the case. *Id*. at 1163. As a result, the defendant was found to have impliedly waived the attorney-client privilege with respect to all relevant communications. *Id*.

Applying the three-part implied waiver test to this case, Jackson Walker asserts that it has not affirmatively put Respondents' performance at issue. JW Resp., ¶¶ 38-40. But Jackson Walker *has* affirmatively placed Respondent's performance at issue by injecting factual and legal issues about Respondents' involvement into the Rule 60 proceedings. Jackson Walker described seeking Respondents' advice in arguing that the firm acted reasonably in response to the Freeman-Jones inappropriate relationship. UST Mot., Ex. 1 (ECF 1-1 at p. 4, ¶¶ 14-15; & p. 5, ¶ 17); Ex. 2 (ECF 1-1 at pp. 26-27, ¶¶ 1-2; pp. 29-30, ¶ 10; pp. 40-41, ¶¶ 37-39; p. 48, ¶¶ 52-53; p. 58, ¶ 77; p. 59, ¶ 79; pp. 89-90, ¶ 144; pp. 96-97, ¶ 160; pp. 109-10, ¶ 183; & pp. 111-12, ¶ 186. In addition, the Court agrees with the U.S. Trustee's assertion that "[b]y claiming privilege with respect to these conversations with the Respondents . . . Jackson Walker denies the U.S. Trustee any opportunity to examine the context, factual assumptions, and purported diligence that led the Respondents to reach those conclusion[s]" set forth in the Advice Memos. UST Mot., ¶ 29. Jackson Walker cannot "invoke the attorney-client privilege" to deny the U.S. Trustee of the information it needs to

challenge whether Jackson Walker acted reasonably and took reasonable remedial measures. *Chevron Corp.*, 974 F.2d at 1163. The Court finds an implied waiver of privilege.[8]

### C. Jackson Walker Waived Any Other Claim Of Privilege

In the closing minutes of oral argument on the Motion to Compel, Jackson Walker raised for the first time that the firm also sought to assert a work product privilege. TR at p. 65.

While Respondents' objections to the U.S. Trustee's subpoenas stated that Jackson Walker sought to "preserve all available privileges" and asserted that the subpoenas "seek[] documents that are subject to protection under various privileges, including the attorney-client and work product privileges, and/or Oregon Rule of Professional Conduct 1.6, Confidentiality of Information" (UST Mot., Ex. 7 (ECF 1-1 at p. 199); Ex. 8 (ECF 1-1 at p. 201)), Jackson Walker raised only attorney-client privilege in its Response to the Motion to Compel. *See generally*, JW Resp. "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . expressly make the claim." Fed. R. Civ. P. 26(b)(5). Consistent with Jackson Walker expressly raising only a claim of attorney-client privilege in its written Response to the Motion to Compel, the firm's privilege log also asserts only attorney-client privilege. UST Mot., Ex. 9 (ECF 1-1 at pp. 203-07). What is (and is not) asserted in Jackson Walker's privilege log is important because pursuant to Fed. R. Civ. P. 26 and LR 26-5, a party withholding responsive documents that the party contends are protected by privilege is required to provide a sufficiently detailed privilege log to enable the propounding party to evaluate the applicability of the privilege or other protection.

---

[8] Generally, upon a finding of implied waiver, a party is given the option to alter its litigation position to avoid the waiver of privilege. *Bittaker*, 331 F.3d at 720. In this case, however, because the Court found express waiver and subject matter waiver as addressed in section V.A, there is no way for Jackson Walker at this juncture to avoid waiver by altering its position taken during the litigation.

Fed. R. Civ. P. 26(b)(5)(A); LR 26-5(b); *Iacono v. Int'l Bus. Machines Corp.*, No. CV 17-8083-FMO (PLAx), 2018 WL 6112608, at \*11 n.3 (C.D. Cal. Apr. 16, 2018).

Jackson Walker's claim made at oral argument (TR at p. 65) that it could not have known that work product was at issue prior to the hearing is not reasonable. The subpoenas use broad language and definitions that obviously could include work product. UST Mot., Ex. 5 (ECF 1-1 at pp. 191-94); Ex. 6 (ECF 1-1 at pp. 195-98). Indeed, Respondents' objections to the subpoenas preserved Jackson Walker's right to raise a work product privilege. UST Mot., Ex. 7 (ECF 1-1 at p. 199); Ex. 8 (ECF 1-1 at p. 201). Jackson Walker simply failed to do so. The Court finds based on this record that Jackson Walker waived any claim of work-product privilege. *See also Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019) (stating that arguments raised for the first time at oral argument are waived).

### D. Respondents' Objection To The Scope Of The Subpoenas Is Also Waived

As noted above, Respondents separately filed a Response to the U.S. Trustee's Motion to Compel Discovery. *See* HK Resp. Respondents filed their Response on September 17, 2024, solely to ask the Court to clarify, that in the event the Court orders production of documents, how many days Respondents will have to produce the documents. HK Resp., at p. 3. Forty-three days later, at oral argument, Respondents raised for the first-time their concerns over the breadth of the subpoena language. Like Jackson Walker's argument regarding work-product privilege, the Court declines to consider an issue raised for the first time at oral argument. Any objection to the terms of the subpoenas is waived. *Booth*, 914 F.3d at 1206.

## VI. CONCLUSION

Jackson Walker twice in its written papers to this Court described the attorney-client privilege as "the most sacred of all legally recognized privileges" and claimed that "all of JW's actions in these proceedings are entirely consistent with maintaining secrecy of these communications." JW Resp., ¶¶ 1, 8 (*quoting United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997)) & ¶ 44. The Court agrees that the attorney-client privilege is sacred; however, Jackson Walker has continuously failed to honor and protect the privilege throughout its handling of the Freeman-Jones debacle. Jackson Walker possessed full control over the Advice Memos but chose to disclose them to third party Kirkendall. Jackson Walker chose to engage and negotiate with Kirkendall about what the firm can and should do in light of Freeman's misconduct. Kirkendall met with Respondents – outside the presence of Jackson Walker – during which Kirkendall claims Respondents disclosed to him the advice they had given to Jackson Walker. In light of this record, there can be no reasonable conclusion but that any privilege that ever existed as to the Freeman Engagement has been utterly extinguished.

And as if those actions were not enough, Jackson Walker went on to use the attorney-client privilege as a shield and a sword by affirmatively injecting facts related to Respondents' advice into Jackson Walker's Preliminary Response and Rule 60 Response filed in the Texas proceedings. Jackson Walker has waived privilege repeatedly and brazenly; the Court in this Order and Opinion "merely recognize[s] the waiver after it has occurred." *Sanmina*, 968 F.3d at 1117. This conclusion is appropriate based on the applicable legal framework, the record before the Court, and in full consideration of the North Star of fairness. The Court GRANTS the U.S. Trustee's Motion to Compel (ECF 1) in full.

Within 21 days of the filing of this Order, the Respondents must comply with subpoenas for discovery and examination with respect to the U.S. Trustee's pending discovery request.

IT IS SO ORDERED.

DATED this ___27th___ day of November, 2024.


_Amy M. Baggio_
AMY M. BAGGIO
United States District Judge