EXHIBIT
2

## EXPERT REBUTTAL REPORT OF RENEE KNAKE JEFFERSON

1.  I am the Doherty Chair in Legal Ethics and a tenured Professor of Law at the University of Houston Law Center. Rusty Hardin & Associates L.L.P., counsel for Jackson Walker L.L.P. ("Jackson Walker"), has retained me to render opinions concerning questions of legal ethics and professional conduct responsibilities in the matter of *No. 23-00645 (EVR); In re Professional Fee Matters Concerning the Jackson Walker Law Firm; In the United States Bankruptcy Court for the Southern District of Texas, Houston Division.*

### INTRODUCTION

2.  I have been asked to provide an Expert Rebuttal Report containing my opinions with respect to the opinions expressed by Jonathan C. Lipson ("Mr. Lipson"), who has been retained by the United States Trustee for Region 7 ("U.S. Trustee") in the above-referenced matter. My opinions are limited to those covering matters of legal ethics and professional conduct responsibilities owed by Jackson Walker. I offer no opinions related to the obligations of Jackson Walker, if any, under the Texas Partnership Act, the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or Rule 6 of the Rules of Discipline of the Local Rules for the United States District Court for the Southern District of Texas. I offer no opinions regarding the actions or obligations of former Judge David R. Jones ("former Judge Jones") or former Jackson Walker equity partner Elizabeth Freeman ("Ms. Freeman").

3.  I have no first-hand knowledge of the facts in this matter. For purposes of preparing my report, I have reviewed the materials set forth in Second Amended Exhibit A. I reserve the right to reexamine or supplement my report based on new information.

### QUALIFICATIONS

4.  My opinions in this matter are based upon my education, training, and experience over the past twenty-five years including, but not limited to, my experience in private and public law practice as well as in teaching judicial and lawyer ethics for nearly two decades.

5.  I am an attorney and a law professor. I hold the Joanne and Larry Doherty Chair of Legal Ethics and I am a tenured Professor of Law at the University of Houston Law Center, where I have been a member of the faculty since 2016.

6.  I graduated from the University of Chicago Law School in 1999. Following law school, I practiced law from 1999-2005 at the law firms Mayer Brown and Hunton & Williams, and as an assistant city attorney for Charlottesville, Virginia.

7.  Since 2006, I have been involved in research, writing, teaching, speaking, professional service activities, and consulting relating to judicial and lawyer ethics and the legal profession. I began my academic career at Michigan State University College of Law in 2006. I left my appointment as the Foster Swift Professor of Legal Ethics and Co-Director of the Frank J. Kelley Institute of Ethics in 2016 to join the University of Houston Law Center.

8. I have researched and written about the professional responsibilities of judges and lawyers in numerous scholarly articles, essays, and news media. I am also a co-author of several books including the Foundation Press casebook LEGAL ETHICS FOR THE REAL WORLD: BUILDING SKILLS THROUGH CASE STUDY (2nd Edition 2022), the West Academic Publishing casebook PROFESSIONAL RESPONSIBILITY: A CONTEMPORARY APPROACH (5th Edition 2023), and the Thomson West HANDBOOK OF TEXAS LAWYER AND JUDICIAL ETHICS: ATTORNEY TORT STANDARDS, ATTORNEY ETHICS STANDARDS, JUDICIAL ETHICS STANDARDS, RECUSAL AND DISQUALIFICATION OF JUDGES (2024 Edition).

9. I served as the elected Chair of the Section on Professional Responsibility for the Association of American Law Schools in 2020, after holding the offices of Secretary, Treasurer and Chair-Elect. From 2014-16, I was an appointed Reporter for the American Bar Association ("ABA") Presidential Commission on the Future of Legal Services. I am an elected member of the American Law Institute and a fellow of the American Bar Foundation. I am a subject matter expert for the Multistate Professional Responsibility Exam ("MPRE"). The MPRE is a national bar examination which largely tests bar applicants' knowledge of the ABA Model Rules and how they apply in various factual situations. Consequently, as one of the drafters for several years, I have developed a comprehensive knowledge of these rules.

10. I am frequently invited to lecture about judicial and lawyer ethics to bar associations, continuing education groups, and similar audiences of judges and lawyers. On occasion, I testify as an expert witness and render other services on issues of legal ethics and professional conduct. In this capacity, I often submit expert reports and/or declarations, and I have been deposed on multiple occasions. Twice I have testified before the Texas Supreme Court Special Court of Review in support of the successful reversal of discipline faced by judges. I also have testified before Congress about judicial recusal and before the federal judiciary about ethics reform.

11. When serving as an expert witness, in this case and others, I render opinions in my individual capacity and do not speak on behalf of any of the entities with which I am, or have been, associated.

12. More details about my background, scholarly publications, and professional experience are contained in my *curriculum vitae*, which is available as Exhibit B to this report.

## THE LIPSON OPINIONS

13. As an initial matter, Mr. Lipson is *not* an expert on legal ethics or professional responsibility generally, nor is he an expert on the Texas Disciplinary Rules of Professional Conduct ("Texas Disciplinary Rules"). Based on his CV and report he has no prior experience interpreting and applying the Texas Disciplinary Rules to another lawyer's past conduct.

14. Before discussing Mr. Lipson's specific opinions, there are two overarching problems with his report to address.

### *Jackson Walker Took Reasonable Actions to Address Information Received About the Freeman/Jones Relationship*

15. The first overarching problem with the Lipson Report is that he rests his opinions on what he describes as "JW's persistent pattern of ignoring, obfuscating and concealing" the relationship between Ms. Freeman and former Judge Jones. Lipson Report, p. 31. To the contrary, as discussed below, the record shows that Jackson Walker took reasonable actions upon receipt of information about an intimate relationship between Ms. Freeman and former Judge Jones.

16. Mr. Lipson offers his opinions about Jackson Walker's obligations based upon the benefit of hindsight *after* Ms. Freeman finally revealed in March 2022 that she was in a rekindled intimate relationship with former Judge Jones.

17. The actions taken by Jackson Walker, however, must be assessed based upon the information *known at the time*, not upon what was later admitted by Ms. Freeman after years of deception. Jackson Walker took the following actions in 2018, 2021, and 2022:

### *In 2018, Jackson Walker Requested Conflicts Disclosures Before Hiring Ms. Freeman*

18. Before hiring Ms. Freeman in 2018, Jackson Walker requested her disclosure of any possible conflicts of interest. *See* Lateral Questionnaire, Cowlishaw Dep. Ex. 64. She stated: "I am not currently representing clients. I am unable to work on any matter currently pending before Judge Jones." *Id.* Her disclosure was based solely upon her work as a law clerk to former Judge Jones.

19. Ms. Freeman never disclosed to Jackson Walker during the interview process, or in the three years that followed, "that she had in the past – or was currently having – an intimate relationship with former Judge Jones. Nor did she disclose that she lived with former Judge Jones or that they co-owned residential property." Jackson Walker LLP's Response in Opposition to the United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief, Case No. 20-32519, Nov. 13, 2023, ¶ 28 ("Jackson Walker Response in Opposition").

### *In 2021, Jackson Walker Confronted Ms. Freeman About the Allegation of an Intimate Relationship, Notified the Court of the Allegation, and Imposed Safeguards After Ms. Freeman Disclosed a Prior Relationship*

20. Jackson Walker first learned on Saturday, March 6, 2021, that a *pro se* litigant had alleged via email an intimate relationship between Ms. Freeman and former Judge Jones. *See* Jackson Walker Response in Opposition ¶ 33.

21. That same day, Jackson Walker began taking steps to address the alleged relationship. *See* Cowlishaw Dep. 81:13-25, 82:1-13 ("Q. When did the investigation start? A. March the 6th, 2021." *Id*. at 82:12-13.).[1]

22. These steps included a discussion with Ms. Freeman. She denied the charge of a current intimate relationship but admitted to a past relationship which Jackson Walker understood from Ms. Freeman had ended prior to the onset of the COVID-19 pandemic in March 2020. *See* Jackson Walker Response in Opposition ¶ 34; *see also* Freeman Interview, Dec. 6, 2023, 208:16-21 ("Q. Did you admit to a relationship with the judge? A. I am sure that I admitted that there had been a relationship. And at the time we were not intimate. We were not on good terms when this was happening.").[2]

23. Jackson Walker notified the Southern District of Texas Bankruptcy Court ("Court") of the allegation on Monday, March 8, 2021. *See* Jackson Walker Response in Opposition ¶ 36. The email was "filed under seal given the personal nature of the allegations and related concerns regarding [the *pro se* litigant's] erratic disposition and credibility . . . and the fact that Ms. Freeman had expressly denied the existence of any current romantic relationship." *Id*.

24. During the week of March 8, 2021, Jackson Walker also consulted with a prominent ethics expert, Peter Jarvis of Holland & Knight, to determine what actions, if any, the firm should take given Ms. Freeman's acknowledgement of a prior intimate relationship with former Judge Jones. *See id.* ¶ 37; Cowlishaw Dep. 106:2-14. The consultations with Holland & Knight continued over several months.

25. Holland & Knight provided its opinions, and Jackson Walker set up safeguards surrounding Ms. Freeman's future involvement with matters pending before former Judge Jones. *See* Jackson Walker Response in Opposition ¶ 37. These safeguards included instructing Ms. Freeman that she could not work on any matters assigned to former Judge Jones for two years through March 2022, and deducting from Ms. Freeman's compensation any profits associated

---

[1] While the U.S. Trustee and Mr. Lipson have referred to Jackson Walker's actions, particularly the firm's questioning of Ms. Freeman, as an "investigation," Jackson Walker has disagreed with the U.S. Trustee's use of the term to describe the firm's activities. ("Q. who was -- who, if anyone, was in charge of investigating what Ms. Freeman was telling the firm? A. About what? Q. About the relationship with Judge Jones or any potential misrepresentations that she may have made to the firm. A. After Mr. Van Deelen sent his email to Mr. Cavenaugh with the attached anonymous memo, Mr. Cavenaugh immediately contacted the general counsel and the Management Committee became involved and the general counsel hired outside counsel. And I quibble with the word investigation." Forbes Dep. (Aug. 20, 2024) 101:1-13.

[2] Ms. Freeman continued to deny an ongoing intimate relationship when she was interviewed by the U.S. Trustee in 2023. *See* Freeman Interview, Dec. 6, 2023, 43:14-17 ("You know, I'll tell you that by, you know, '16/'17 we were in an intimate relationship."); 66:17-22 ("I'll tell you that, you know, certainly by '15, you know, '14, '15 we were in . . . an intimate relationship."); 177:22-25 ("if it was '17 or beginning of '18, but I know that early, you know, January/February of '18 we were – crosswise I know we were not intimate in that time"); 176:21-22 ("we were not intimate during [the pandemic]"); 170:1-4 ("But then it was still very uncertain and not – you know, there was another long period of lack of intimacy until end of July '22."); 218:10-25 ("I know that there was a question about whether we had a continued romantic relationship. And I said no because we didn't. Not at that time. But . . . I didn't tell them about the house. . . . Because I didn't view it as my house.").

with work that was performed by Jackson Walker in cases pending before former Judge Jones. *See id*. ¶ 37.

26. Jackson Walker also obtained written confirmation from Ms. Freeman in August 2021 that she (1) was not in an ongoing intimate relationship with former Judge Jones and would not be in the future; (2) did not own a home with him; and (3) did not live with him. *See id.* ¶ 38; Cowlishaw Dep. 136:16-25, 137:1-21, Exhibit 53, pp. 103-107.

27. Jackson Walker determined "[a]t the time Ms. Freeman acknowledged the existence of this prior relationship, there was nothing for JW to disclose or supplement. The challenged cases implicated during this time period were filed post-COVID and had concluded prior to Ms. Freemans later admission to JW, on March 30, 2022, that the relationship with former Judge Jones had resumed." Jackson Walker Response in Opposition ¶ 34, fn. 18.

### *In 2022, Jackson Walker Determined that Ms. Freeman Could Not Remain at the Firm After She Acknowledged that the Intimate Relationship Had Rekindled and Refused to Accurately Disclose the Relationship*

28. In February 2022, a Jackson Walker non-bankruptcy partner received new, credible information that Ms. Freeman and former Judge Jones were living together. *See id.* ¶ 46.

29. In March 2022, a member of Jackson Walker's management team confronted Ms. Freeman with this information. She initially denied any intimate relationship. However, on March 30, 2022, she admitted to a "rekindled" relationship but denied living with former Judge Jones and did not reveal co-ownership of residential property. *Id*. ¶¶ 46-48.

30. Jackson Walker again consulted with Holland & Knight, and received an opinion letter indicating that either the relationship must be disclosed *or* that Ms. Freeman must leave the firm. The opinion letter was written with the assumption that Ms. Freeman would remain at Jackson Walker. *See* Cooper Dep. 126:14-17 ("this letter . . . discusses conduct if [Ms. Freeman] . . . was going to remain at the law firm"); Jarvis & Harvey Letter to Jackson Walker, June 2, 2022, p. 4 ("If we are correct in our opinion that the lawyer must either do or say something about the conflict or withdraw, the next question is how to best raise the issue with opposing counsel and the court if the lawyer chooses not to withdraw."). Specifically, the letter opined on "the duties of a lawyer at a firm who knows that the judge presiding over a case in which the lawyer and the firm represents a party has a conflict of interest that the judge was and is required to disclose under 28 U.S.C. Section 455 but has not disclosed." *Id*. at p. 1. The opinion letter concluded that if Ms. Freeman remained at Jackson Walker, "disclosure by the lawyer to firm clients about the judicial conflict is necessary." *Id*. at p. 4.

31. Ms. Freeman retained Tom Kirkendall ("Mr. Kirkendall") to represent her during these negotiations. *See* Kirkendall Dep. 22:3-9 ("I represented Ms. Freeman with regard to negotiations with Jackson & Walker and conversations with Holland & Knight from, I believe it was, April 8th of 2022 through June 28th of 2022. I did not represent Ms. Freeman in connection with her withdrawal from Jackson Walker.").

32. As part of these efforts, Mr. Kirkendall contacted former Judge Jones to discuss a disclosure. *See id*. 89:18-21 ("Q. Who asked you to call Judge Jones? A. Nobody. . . . I did that on my own initiative. I wanted to understand what his position was."). Former Judge Jones informed Mr. Kirkendall that he believed no disclosure was required. *See id*. 88:17-21 ("Judge Jones told me that he had concluded, after much research, that he believed he did not have an obligation to disclose the relationship because Ms. Freeman was not his spouse and that Ms. Freeman and he did not have a household account."). Mr. Kirkendall's proposed solution to force former Judge Jones to either disclose or recuse was to ask Jackson Walker to include a disclosure regarding the relationship between Ms. Freeman and former Judge Jones. *See id*. at 88:1-89:21.

33. While Jackson Walker was concerned about a disclosure, it endeavored to work with Ms. Freeman to prepare an appropriate disclosure, but determined that her proposed disclosure was "insufficient, inadequate, and misleading." Jackson Walker Response in Opposition ¶¶ 52-63; *see also* Cowlishaw Dep. 141:6-9 (". . .the only disclosure that Ms. Freeman was willing to make was of a close, personal relationship with Judge Jones, that we thought, in context, would be a half-truth. . ."); Cooper Dep. 130:10-14 ("My view of that proposal was that it was totally inadequate. It did not satisfy the requirements of the judge under the recusal statute. And we had concerns that it was deceptive and that it did not fully, uh, report what we thought the relationship was.").

34. As a consequence, by early June, Jackson Walker coordinated Ms. Freeman's departure from the firm, effective December 1, 2022. *See* Jackson Walker Response in Opposition ¶ 58; Cowlishaw Dep. 190:8-10 (". . .instead of making a – you know, a half-truth disclosure, the firm decided to separate itself from Ms. Freeman").

35. The separation was documented in a jointly-executed Confidential Withdrawal Agreement ("Agreement"). *See* Freeman Dep. Ex. 45. The Agreement acknowledged that Ms. Freeman and Jackson Walker might work together in the future as co-counsel, but *specifically excluded* any matters before former Judge Jones. *Id*.

36. Mr. Lipson inaccurately characterizes the Agreement as Jackson Walker having, in his words, "decided to further bury evidence of the Relationship." Lipson Report, p. 16. His analysis misconstrues the Agreement's terms, which do not require confidentiality regarding the relationship itself. Rather, the Agreement keeps confidential "all preceding discussions between [Ms. Freeman and Jackson Walker], regarding [the] relationship." Freeman Dep. Ex. 45. Mr. Lipson's conclusion also ignores that the Agreement expressly provides for disclosure "as otherwise may be required by law" in addition to other specific circumstances. *Id*. To the extent that Mr. Lipson asserts Jackson Walker is required by the Texas Disciplinary Rules or other law to disclose information covered by the Agreement, the firm is expressly permitted to do so.

### *The Texas Disciplinary Rules Apply to Individual Lawyers, Not Firms, and Do Not Create a Private Cause of Action or Other Remedy Beyond Lawyer Discipline*

37. The second overarching problem with the Lipson Report is that he conflates and confuses various duties that may be applicable to individual lawyers as equally applicable to law firms. Mr. Lipson also discusses potential requirements under federal bankruptcy law and the Texas Disciplinary Rules interchangeably even though they involve differing obligations and consequences.

38. The Texas Disciplinary Rules are clear that they do not establish standards of civil liability or create a private cause of action:

> These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached. Likewise, these rules are not designed to be standards for procedural decisions.

TEX. DISCIPLINARY R. PROF. CONDUCT, Preamble ¶ 15.

39. Texas courts, including the Texas Supreme Court, have consistently held that the Texas Disciplinary Rules do not create a private cause of action or establish the standard of care. *See e.g.*, *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159 (Tex. 2004) ("In addition, we note that the Rules do not define standards of civil liability of lawyers for professional conduct."); *Fleming v. Kinney ex rel. Shelton*, 395 S.W.3d 917, 929 (Tex. App. —Houston [14th Dist.] 2013, pet. filed) (expert's testimony "crossed the border of inadmissibility" when she told the jury, among other things, that violation of certain disciplinary rules necessarily established breach of fiduciary duty); *Adams v. Reagan*, 791 S.W.2d 284, 291 (Tex. App.— Fort Worth 1990, no writ) ("Violation of a disciplinary rule does not give rise to a private cause of action, nor does it create any presumption that a legal duty to a client has been breached."); *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 96 (Tex. App. —Houston [14th Dist.] 2004, no pet.) ("the Texas Disciplinary Rules . . . do not establish the standard of care or civil liability for attorneys").

40. The standard of care when evaluating legal malpractice, for example, is one of a "reasonably prudent attorney." *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989). According to the Texas Supreme Court: "An attorney who makes a reasonable decision in the handling of a case may not be held liable if the decision later proves to be imperfect." *Id.*

41. The Texas Disciplinary Rules apply to individual lawyers, not law firms, which is made clear in the Preamble describing "A Lawyer's Responsibilities" and discussing the scope of the rules in the context of the role of a lawyer. TEX. DISCIPLINARY R. PROF. CONDUCT, Preamble ¶¶ 1-16.

42. Having addressed the overarching problems with Mr. Lipson's report, I will now turn to his specific opinions related to the Texas Disciplinary Rules.

### *Lipson Opinion 1: "Imputation of EF's Conflict to JW"*

43. Mr. Lipson opines that Ms. Freeman was prevented under Texas Disciplinary Rule 1.06(b)(2)[3] from representing clients before former Judge Jones because of their intimate relationship. *See* Lipson Report, p. 26. He further opines that her personal conflict is imputed to Jackson Walker under Texas Disciplinary Rule 1.06(f),[4] and seems to suggest that this should somehow apply retroactively even though the existence of a rekindled intimate relationship was unknown to Jackson Walker until March 2022. *Id.*

44. Mr. Lipson cites no direct authority to support his interpretation of how Texas Disciplinary Rule 1.06 should be applied in this matter. Instead, he discusses an ethics opinion addressing whether married attorneys (or members of their law firms) may represent opposing parties in the same civil matter. *See* Lipson Report, pp. 26-27, quoting Tex. Pro. Ethics Comm., Formal Op. 666 (2016) ("Formal Op. 666").

45. While Formal Op. 666 might be relevant in assessing whether or not the intimate relationship between Ms. Freeman and former Judge Jones should be treated as the equivalent of husband and wife under the Texas Disciplinary Rules, the opinion offers no concrete guidance on how that relationship should be addressed by a law firm when a member of the firm conceals an intimate relationship with a judge. Moreover, the opinion provides that determining the existence of a "Rule 1.06(b)(2) conflict of interest" will "[i]n most cases . . . be a question of fact." Formal Op. 666, p. 2. Had Ms. Freeman and/or former Judge Jones disclosed the true nature of their relationship, the sort of fact-specific inquiry contemplated by Formal Op. 666 could have occurred to determine whether or not their relationship constituted a conflict of interest under Texas Disciplinary Rule 1.06 that would be imputed to all Jackson Walker lawyers. But they did not.

46. After Ms. Freeman revealed the rekindled intimate relationship to Jackson Walker in 2022, Jackson Walker continued to impose the safeguards already in place (*i.e.* prohibiting Ms. Freeman from working on or receiving any income from any matter pending before former Judge Jones) while it sought additional guidance from Holland & Knight. After endeavoring unsuccessfully to work with Ms. Freeman on an appropriate disclosure as discussed above, Jackson Walker determined that she could not remain at firm. Her departure removed any potential conflict under Texas Disciplinary Rule 1.06.

---

[3] Texas Disciplinary Rule 1.06(b)(2) provides that absent informed consent from any materially affected client(s), "a lawyer shall not represent a person if the representation of that person . . . (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyers' or the law firm's own interests."

[4] Texas Disciplinary Rule 1.06(f) provides: "If a lawyer would be prohibited by this Rule [1.06(b)(2)] from engaging in particular conduct, no other lawyers while a member or associated with that lawyer's firm may engage in that conduct."

### *Lipson Opinion 2: "What Should JW Have Done?"*

47. Mr. Lipson appears to concede that Jackson Walker's actions until 2022 were reasonable. *See* Lipson Report, p. 28 ("Taking the facts most favorably to them, [Jackson Walker] had no actual knowledge of the Relationship until March 6, 2021; even then they were unfortunately gulled by EF . . . . The fact that the allegations came initially from Mr. Van Deelan – alleged to be a serial litigant and perhaps unstable – would surely call for lenity."). But Mr. Lipson then contends that Jackson Walker should have taken one or more of four actions after receiving credible information in 2022 about the rekindled intimate relationship between Ms. Freeman and former Judge Jones. None of his suggestions are required by the Texas Disciplinary Rules.

48. First, Mr. Lipson says that Jackson Walker should have followed the advice from Holland & Knight regarding disclosure of the relationship as a conflict of interest. *See* Lipson Report, p. 29. Because Ms. Freeman declined to make an adequate disclosure, Jackson Walker instead resolved any potential or actual conflict by requiring her departure from the firm and her withdrawal from any matters pending before former Judge Jones where Jackson Walker's clients were involved.

49. Mr. Lipson might counter that Jackson Walker nonetheless should have disclosed Ms. Freeman's admission about a prior intimate relationship in 2021 and/or her admission about a rekindled relationship in 2022. The duty to communicate with a client is governed by Texas Disciplinary Rule 1.03, which provides:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

American Bar Association ("ABA") Formal Opinion 481 (Apr. 17, 2018) ("Formal Op. 481") analyzing ABA Model Rule 1.4, which is similar to Texas Disciplinary Rule 1.03, offers guidance on whether an "error" that occurred during the representation of a client must be disclosed. While the opinion does not specifically address whether the failure to disclose a personal conflict of interest by a lawyer constitutes an "error," the opinion's analysis offers guidance on when a lawyer is required to disclose information to a client about past issues.

50. As to former clients, there is no disclosure obligation. *See* 48 Tex. Prac., Tex. Lawyer & Jud. Ethics § 6:6 (2024 ed.) (discussing Formal Op. 481).

51. As to current clients:

> The ABA concluded that while the lawyer is not under a duty to disclose all such errors, s/he is under a duty to do so if the error is "material" . . . . The opinion goes on to provide: "An error is material if a disinterested lawyer would conclude that it is (a) reasonably likely to harm or prejudice a client;

or (b) of such a nature that it would reasonably cause a client to consider terminating the representation even in the absence of harm or prejudice."

*Id*. (quoting ABA Formal Op. 481).

52. Under this analysis, Jackson Walker could reasonably conclude in 2021 that disclosure of a lawyer's prior intimate relationship was not required. In 2022, once the rekindled relationship was revealed, Jackson Walker endeavored to obtain an accurate disclosure from Ms. Freeman. This effort was unsuccessful. Jackson Walker required her departure. Jackson Walker could reasonably conclude that it was not necessary to disclose the rekindled relationship when it was negotiating the language of a potential disclosure with Ms. Freeman. And, once she departed, the disclosure of a former lawyer's rekindled intimate relationship was not required.

53. Second, Mr. Lipson says that Jackson Walker should have engaged in an independent investigation to verify Ms. Freeman's assurances that the relationship was not ongoing, for example searching property records. *See* Lipson Report, p. 29. The Texas Disciplinary Rules, however, do not require this sort of investigation. An inquiry into a law firm partner's romantic relationship is also a sensitive matter. *See, e.g.,* Cowlishaw Dep. 137:11-14 ("It's highly unusual for partners in the firm to be discussing sexual conduct of another partner with her in – in the midst of a matter such as this."). Jackson Walker relied upon Ms. Freeman's verbal statement in March 2021, and her written confirmation six months later, that any intimate relationship with former Judge Jones had ended more than a year prior to the initial allegation in 2021, and Jackson Walker was not required under the Texas Discipline Rules to engage in independent verification.

54. Third, Mr. Lipson agrees that Ms. Freeman's departure from Jackson Walker was "an appropriate step." Yet, he critiques the firm for continuing to work with and recommending her for matters unrelated to cases pending before former Judge Jones, calling this "mind-boggling." Lipson Report, p. 29. He cites nothing in the record to support his critique. Mr. Lipson's position ignores the explanation from Managing Partner Wade Cooper in his deposition testimony about the length of time it took to orchestrate Ms. Freeman's separation. His explanation bears upon Jackson Walker's reasonable determination to potentially continue working with her in matters not pending before former Judge Jones. Mr. Cooper testified:

```
 5       Q.  If you didn't feel like Jackson Walker owed Ms.
 6   Freeman anything, why was she given so many
 7   opportunities until her separation, for example, finding
 8   another job for at least six months?
 9           MR. HARDIN:  Object to the form.
10       A.  Well, Jackson Walker is a law firm that tries to
11   extend grace even when people have messed up, but in
12   this particular circumstance there was a lot of
13   complicating factors and it went slower than any of us
14   would have liked, but that was our best determination at
15   the time.
16       Q.  And what were those complicating factors?
17       A.  Uh, there were any number of them.  We were
18   dealing with the chief judge of the bankruptcy court,
19   and there's not a playbook on how do you separate
20   yourself from his whatever she was - partner,
21   girlfriend, whatever.  In all of my years of, uh,
22   practicing being managing partner I can't think of any
23   similar circumstance, uh, and have received
24   commensuration from other managing partners on the tense
25   and complicated nature surrounding this.
```

```
 1           So, uh, I now have rambled on so long,
 2   I've forgotten the question.
 3       Q.  I was asking about the complicating factors you
 4   mentioned and what took so long for Jackson Walker to
 5   finally separate with Ms. Freeman after deciding that it
 6   needed to.
 7       A.  Yeah, it took longer than I thought it would and
 8   certainly it was frustrating, but on the other hand, as
 9   I said earlier, we had taken very harsh steps with
10   respect to her.  And the fact that she had a
11   relationship with the judge was going to be very
12   limiting in terms of her future employment in the area
13   that she was good at, which was large complex debtor
14   cases.  And so, uh, cognizant of that, we were probably
15   more patient than the equity so warranted, but that's
16   what we did.
```

Cooper Dep. 135:5-25, 136:1-16.

55. Fourth, Mr. Lipson says Jackson Walker "had a commitment to supplement those 2014 statements that were submitted during the acknowledged period of overlap in the Relationship and EF's employment at JW (i.e., March 2018 to March 2020)." *See* Lipson Report, p. 29. I offer no opinion whether or not there was a duty to disclose under the federal bankruptcy rules in the first instance, or a duty to supplement under the federal bankruptcy rules.

***Lipson Opinion 3: "The Mediation Cases"***

56. Mr. Lipson concludes his report with a discussion of the cases where former Judge Jones served as a mediator. He cites no Texas Disciplinary Rules in the context of his evaluation of Jackson Walker's conduct in this context. Rather, his opinion rests on rhetorical questions and generalized critiques about the use of judges as mediators while at the same time acknowledging that "the use of judges as mediators is not uncommon or necessarily problematic." Lipson Report, p. 30

## CONCLUSION

57. For the reasons discussed above, it is my opinion that Jackson Walker took reasonable steps at the time it hired Ms. Freeman and as it learned new information about the nature of the relationship between Ms. Freeman and former Judge Jones in 2021 and again in 2022. These steps included:

**2018**
- Jackson Walker requested a detailed conflicts disclosures before hiring Ms. Freeman.

**2021**
- Jackson Walker confronted Ms. Freeman about the allegation of an intimate relationship with former Judge Jones.
- Jackson Walker notified the Court of the allegation.
- Jackson Walker consulted with an ethics expert
- Jackson Walker imposed safeguards (*i.e.* prohibiting work on or income from matters pending before former Judge Jones) after Ms. Freeman disclosed a prior intimate relationship.

**2022**
- Jackson Walker again confronted Ms. Freeman with the new information it received about her living with former Judge Jones.
- Jackson Walker again consulted with ethics experts about how to proceed.
- Jackson Walker endeavored to obtain an appropriate disclosure from Ms. Freeman about the relationship.
- Jackson Walker determined that Ms. Freeman could not remain at the firm after she had acknowledged that the intimate relationship was rekindled, and she had refused to accurately disclose the relationship.

58. It is also my opinion that the Texas Disciplinary Rules apply to lawyers individually, not to law firms as entities, and they cannot serve as the basis for civil liability, the standard of care, or a private civil cause of action.

59. I may supplement or revise this Expert Rebuttal Report as further information and issues are provided to me.

_____                    November 5, 2024

RENEE KNAKE JEFFERSON                                        _____
DOHERTY CHAIR IN LEGAL ETHICS &                             DATE
PROFESSOR OF LAW
UNIVERSITY OF HOUSTON LAW CENTER

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **Professional Fee Matters Concerning** | § | **Civil Action No. 4:23-cv-04787** |
| **the Jackson Walker Law Firm.** | § | |
| | § | |

## SECOND AMENDED LIST OF DOCUMENTS SENT FOR REVIEW ON 10/10/24

| NO. | DOCUMENT – BANKRUPTCY COURT PLEADINGS | DATE |
|---|---|---|
| 1. | *In re: 4E Brands NorthAmerica LLC,* Case No. 22-50009, Dkt. No. 517 United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure (60)(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving any Jackson Walker Applications for Compensation and Reimbursement of Expenses with attached Exhibit 1 and Proposed Order | 11/03/23 |
| 2. | *In re: Neiman-Marcus Group Ltd., LLC, et al.*, Case No. 20-32519, Dkt. No. 3184, Preliminary Response of Jackson Walker LLP to Recent Filings by the Office of the U.S. Trustee with attached Exhibit 1 [Relates to Dkt. Nos. 3178, & 3179] | 11/13/23 |
| 3. | *In re: Neiman-Marcus Group Ltd., LLC, et al.*, Case No. 20-32519, Dkt. No. 3234, Jackson Walker LLP's Response In Opposition to The United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief with attached Exhibits 1 – 3 [Relates to Dkt. No. 3224] | 05/22/24 |
| 4. | *In re: Auto Plus Auto Sales*, LLC et. al., Case No. 23-90054, Dkt. No. 150, United States Trustee's Reply to Jackson Walker LLP's Response In Opposition to Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief with attached Exhibits 1 – 5 [Relates to ECF No. 136] | 07/01/24 |

| 5. | *In re: LaForta-Gestao E Investmentos*, Case No. 22-90126, Dkt. No. 347, Recusal | 09/20/24 |
|---|---|---|
| **NO.** | **DOCUMENT – DISTRICT COURT PLEADINGS** | **DATE** |
| 6. | *Van Deelen v. Jones,* Case No. 4:23-CV-03729-AM, Dkt. No. 101, Memorandum Opinion and Order | 08/16/24 |
| 7. | *In re: discipline of Jackson Walker*, Case No. 4:24-mc-01523, Dkt. No. 1, Disciplinary Action | 09/20/24 |
| 8. | *In re Professional Fee Matters Concerning the Jackson Walker Law Firm, Dkt. 1, Order Commencing Miscellaneous Proceeding Regarding Employment Orders and Awarded Fees and Expenses to Jackson Walker, LLP in Affected Cases* | 12/09/23 |
| 9. | *In re Neiman Marcus Group Ltd. LLC, et al., Dkt. 3178, United States Trustee's Motion for Relief From Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications for Compensation and Reimbursement of Expenses with Exhibits 1-2* | 11/02/23 |
| 10. | *In re Brilliant Energy, LLC, Dkt. 2, Case Management Order Regarding ECF Nos. 254 & 255* | 12/10/23 |
| 11. | *In re Westmoreland Coal Company, et al., Dkt. 3360, United States Trustee's Motion for Relief From Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications for Compensation and Reimbursement of Expenses with Exhibits 1-2* | 11/02/23 |
| **NO.** | **DOCUMENT – DEPOSITIONS & EXHIBITS** | **DATE** |
| 12. | Deposition of Matthew D. Cavenaugh with Exhibits | 08/30/24 |
| 13. | Deposition of Elizabeth Freeman with Exhibits | 07/30/24 |
| 14. | Deposition of Ross Forbes, Jr. with Exhibits | 08/19/24 |
| 15. | Deposition of Ross Forbes, Jr. As Corporate Representative with Exhibits | 08/20/24 |
| 16. | Deposition of William Russell Jenkins, Jr. with Exhibits | 08/05/24 |
| 17. | Deposition of Bruce J. Ruzinsky with Exhibits | 09/09/24 |
| 18. | Deposition of Joshua A. Sussberg with Exhibits | 09/20/24 |
| 19. | Deposition of C. Wade Coper with Exhibits | 08/13/24 |
| 20. | Deposition of Veronica A. Polnick with Exhibits | 10/03/24 |
| 21. | Deposition of Patrick R. Cowlishaw with Exhibits | 08/01/24 |
| 22. | Deposition of David R. Jones with Exhibits | 09/19/24 |

| NO. | DOCUMENT | DATE |
|---|---|---|
| 23. | Deposition of Tom Kirkendall | 07/17/24 |
| **NO.** | **DOCUMENT – EXPERT REPORTS** | **DATE** |
| 24. | Expert Report of Professor Jonathan C. Lipson Regarding Certain Disclosure and Ethics Matters | 09/30/24 |
| **NO.** | **DOCUMENT – PROTECTIVE ORDER** | **DATE** |
| 25. | Protective Order Under Privacy Act | 09/10/24 |
| **NO.** | **DOCUMENT – LIPSON EXPERT DOCS** | **DATE** |
| 26. | Lipson Expert Docs Bates Stamp Log – Excel Spreadsheet | |
| 27. | Isgur Disciplinary Letter | 09/20/24 |
| 28. | Ameriforge Group, Dkt. No. 148, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective *Nunc Pro Tunc* to the Petition Date | 05/25/17 |
| 29. | Ameriforge Group, Dkt. No. 153, Application of Debtors-in-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 05/26/17 |
| 30. | Offshore Specialty Fabricators, Dkt. No. 148, Debtor's Application Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving the Employment and Retention of Jackson Walker LLP as Special Counsel for the Debtor Effective *Nunc Pro Tunc* to the Petition Date | |
| 31. | Seadrill Limited, Dkt. No. 191, Application Of Debtors-In-Possession To Employ Jackson Walker L.L.P. as Co-Counsel for Debtors | 09/29/17 |
| 32. | Expro Holdings Us Inc., Dkt. No. 153, Application Of Debtors-In-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 12/29/17 |
| 33. | Exco Resources, Inc., Dkt. No. 382, Application for Order Authorizing Employment of Jackson Walker LLP as Co-Counsel to the Official Committee of Unsecured Creditors | 02/26/18 |
| 34. | iHeartMedia, Inc., Dkt. No. 271, Application of Debtors-In-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 03/22/18 |
| 35. | Westmoreland Coal Company, Dkt. No. 227, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective *Nunc Pro Tunc* to the Petition Date | 10/22/18 |
| 36. | Westmoreland Coal Company, Dkt. No. 376, Application of Debtors-in-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 11/08/18 |

| 37. | Gastar Exploration Inc., Dkt. No. 215, Application of Debtors-in-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 11/30/18 |
|---|---|---|
| 38. | Parker Drilling Company, Dkt. No. 253, Application of Debtors-in-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 01/13/19 |
| 39. | Weatherly Oil & Gas, Dkt. No. 170, Application of Debtor-in-Possession to Employ Jackson Walker LLP as Counsel for The Debtor *Nunc Pro Tunc* to the Petition Date | 03/30/19 |
| 40. | Jones Energy, Inc., Dkt. No. 121, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective *Nunc Pro Tunc* to the Petition Date | 04/23/19 |
| 41. | Jones Energy, Inc., Dkt. No. 125, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-In-Possession | 04/23/19 |
| 42. | Sanchez Energy Corporation, Dkt. No. 269, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 09/06/19 |
| 43. | Sheridan Holding Company II, Dkt. No. 118, Amended Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 09/25/19 |
| 44. | J.C. Penney Company, Dkt. No. 685, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-In-Possession | 06/11/20 |
| 45. | Mcdermott International, Dkt. No. 428, Debtors' Application for Entry of An Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession | 02/19/20 |
| 46. | Mcdermott International, Dkt. No. 424, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP As Co-Counsel and Conflicts Counsel for the Debtors And Debtors-in-Possession | 02/19/20 |
| 47. | Sheridan Holding Company I, Dkt. No. 130, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 04/02/20 |
| 48. | Whiting Petroleum Corporation, Dkt. No. 173, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 04/17/20 |
| 49. | Neiman Marcus Group Ltd., Dkt. No. 750, Application of Debtors and Debtors in Possession to Retain Jackson Walker LLP as Co- | 06/30/20 |

| | | |
|---|---|---|
| | Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | |
| 50. | Stage Stores, Dkt. No. 385, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 06/04/20 |
| 51. | Ultra Petroleum Corp., Dkt. No. 195, Application of Debtors And Debtors-in-Possession to Retain Jackson Walker LLP As Co-Counsel and Conflicts Counsel for The Debtors And Debtors-in-Possession | 06/04/20 |
| 52. | Hornbeck Offshore Services, Dkt. No. 132, Application of Debtors and Debtors In Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 06/01/20 |
| 53. | Chesapeake Energy Corporation, Dkt. No. 370, Application of Debtors and Debtors in Possession To Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 07/16/20 |
| 54. | Covia Holdings Corporation, Dkt. No. 195, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 07/21/20 |
| 55. | Bruin E&P Partners, Dkt. No. 143, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel or the Debtors and Debtors-in-Possession | 08/04/20 |
| 56. | California Pizza Kitchen, Dkt. No. 297, Application of Debtors and Debtors in Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 08/28/20 |
| 57. | Mood Media Corporation, Dkt. No. 122, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-n-Possession | 08/14/20 |
| 58. | Denbury Resources, Dkt. No. 238, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 08/28/20 |
| 59. | Tailored Brands, Dkt. No. 496, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 09/01/20 |
| 60. | Benevis Corp., Dkt. No. 176, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Counsel for the Debtors and Debtors-in-Possession | 09/01/20 |
| 61. | Valaris PLC, Dkt. No. 207, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 09/15/20 |
| 62. | Arena Energy, LP, Dkt. No/ 147, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel For The Debtors And Debtors-in-Possession | 09/04/20 |

| 63. | Iqor Holdings Inc., Dkt. No. 154, Application of Debtors and Debtors in Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 09/28/20 |
|---|---|---|
| 64. | Bouchard Transportation Co., Dkt. No. 173, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 10/28/20 |
| 65. | Oasis Petroleum Inc., Dkt. No. 207, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 10/16/20 |
| 66. | Gulfport Energy Corporation, Dkt. No. 390, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 12/11/20 |
| 67. | Gulfport Energy Corporation, Dkt. No. 460, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of November 13, 2020 | 12/17/20 |
| 68. | Volusion, LLC, Dkt. No. 74, Application of Debtor-in-Possession to Employ Jackson Walker LLP as Counsel for the Debtor Effective as of the Petition Date | 08/26/20 |
| 69. | Frontera Holdings, Dkt. No. 159, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 02/25/21 |
| 70. | Seadrill Limited, Dkt. No. 250, Debtors' Application for Entry of An Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 03/08/21 |
| 71. | Belk, Inc., Dkt. No. 154, Application of Reorganized Debtors to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 03/08/21 |
| 72. | Brilliant Energy, Dkt. No. 68, Application to Employ Jackson Walker LLP as Special Counsel Pursuant to 11 U.S.C. § 327 | 04/13/21 |
| 73. | Katerra Inc., Dkt. No. 289, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 06/29/21 |
| 74. | Washington Prime Group Inc., Dkt. No. 206, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of June 13, 2021 | 07/01/21 |
| 75. | Washington Prime Group Inc., Dkt. No. 208, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 07/01/21 |
| 76. | Basic Energy Services Inc., Dkt. No. 809, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Counsel to the Debtors | 12/13/21 |

| 77. | Carlson Travel, Inc., Dkt. No. 221, Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 12/07/21 |
|---|---|---|
| 78. | Strike, LLC, Dkt. No. 363, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 01/06/22 |
| 79. | 4e Brands NorthAmerica LLC, Dkt. No. 72, Application to Retain Jackson Walker LLP as Counsel for the Debtor And Debtor-in-Possession | 03/24/22 |
| 80. | Free Speech Systems LLC, Dkt. No. 230, Subchapter V Trustee's Application to Retain Jackson Walker LLP | 10/11/22 |
| 81. | Free Speech Systems LLC, Dkt. No. 265, Order Authorizing the Retention of Jackson Walker LLP as Counsel for the Subchapter V Trustee | 11/07/22 |
| 82. | Seadrill New Finance Limited, Dkt. No. 92, Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of January 11, 2022 | 02/08/22 |
| 83. | Seadrill New Finance Limited, Dkt. No. 94, Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 02/08/22 |
| 84. | Seadrill New Finance Limited, Dkt. No. 108, Order Granting the Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 03/11/22 |
| 85. | Sungard As New Holdings, LLC, Dkt. No. 211, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 05/10/22 |
| 86. | Sungard As New Holdings, LLC, Dkt. No. 291, Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 06/06/22 |
| 87. | GWG Holdings, Inc., Dkt. No. 267, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 05/19/22 |
| 88. | Honx Inc., Dkt. No. 128, Application to Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtor and Debtor in Possession | 05/31/22 |
| 89. | Laforta - Gestão E Investimentos, Dkt. No. 67, Application to Retain Jackson Walker LLP as Counsel for the Debtor and Debtor-in-Possession | 07/15/22 |

| 90. | Altera Infrastructure L.P, Dkt. No. 228, Application To Retain Jackson Walker LLP As Co-Counsel And Conflicts Counsel For The For The Debtors And Debtors In Possession | 09/12/22 |
|---|---|---|
| 91. | Cineworld Group Plc, Dkt. No. 486, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the for the Debtors and Debtors-in-Possession | 10/05/22 |
| 92. | Pipeline Health System, LLC, Dkt. No. 219, Application to Retain Jackson Walker LLP As Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 10/20/22 |
| 93. | Candy Club, LLC., Dkt. No. 107, Application to Retain Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession | 08/28/23 |
| 94. | Nautical Solutions, L.L.C., Dkt. No. 142, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 01/27/23 |
| 95. | IEH Auto Parts Holding LLC, Dkt. No. 181, Application to Retain Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession | 03/02/23 |
| 96. | IEH Auto Parts Holding LLC, Dkt. No. 183, Application to Retain the Law Office Of Liz Freeman, PLLC as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 03/02/23 |
| 97. | Invacare Corporation, Dkt. No. 269, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 03/02/23 |
| 98. | Nielsen & Bainbridge, LLC, Dkt. No. 362, Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of February 8, 2023 | 04/13/23 |
| 99. | Nielsen & Bainbridge, LLC, Dkt. No. 273, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 03/10/23 |
| 100. | Sorrento Therapeutics Inc, Dkt. No. 231, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the for the Debtors and Debtors-in-Possession | 03/15/23 |
| 101. | Avaya Inc., Dkt. No. 293, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 03/10/23 |
| 102. | Loyalty Ventures Inc., Dkt. No. 175, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 04/05/23 |
| 103. | Venator Materials Plc, Dkt. No. 227, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/14/23 |
| 104. | MLCJR LLC, Dkt. No. 433, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/13/23 |

| 105. | Envision Healthcare Corporation, Dkt. No. 330, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/14/23 |
|---|---|---|
| 106. | Benefytt Technologies, Inc., Dkt. No. 249, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/22/23 |
| 107. | Qualtek Services Inc., Dkt. No. 215, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/23/24 |
| 108. | Diebold Holding Company, LLC, Dkt. No. 208, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 07/03/23 |
| 109. | Genesis Care Pty Limited, Dkt. No. 237, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 07/03/23 |
| 110. | Center for Autism and Related Disorders, LLC, Dkt. No. 197, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 07/11/23 |
| 111. | Surgalign Holdings, Inc., Dkt. No. 257, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 07/19/23 |
| 112. | AppHarvest Products, LLC, Dkt. No. 247, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 08/21/23 |
| 113. | Cóndor Inversiones Spa,, Dkt. No. 141, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 09/11/23 |
| 114. | Soft Surroundings Holdings, LLC, Dkt. No. 188, Application to Retain the Law Office of Liz Freeman, PLLC as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 10/11/23 |
| 115. | Deposition Transcript of Chip Babcock and Exhibits | |
| 116. | Deposition Transcript of Pat Cowlishaw and Exhibits | |
| 117. | Deposition Transcript of William Jenkins and Exhibits | |
| 118. | Deposition Transcript of Wade Cooper and Exhibits | |
| 119. | Deposition Transcript of Ross Forbes and Exhibits | |
| 120. | Deposition Transcript of Matt Cavenaugh and Exhibits | |
| 121. | Deposition Transcript of Bruce Ruzinsky and Exhibits | |
| 122. | Deposition Transcript of Anna Rotman and Exhibits | |
| 123. | Deposition Transcript of Joshua Sussberg and Exhibits | |
| 124. | Deposition Transcript of Elizabeth Freeman and Exhibits | |

| 125. | Jackson Walker 30b6 (Forbes) – Confidential | |
|---|---|---|
| 126. | Jackson Walker 30b6 (Forbes) | |
| 127. | Auto Plus Auto Sales, Llc, Dkt. No. 150, United States Trustee's Reply to Jackson Walker LLP's Response in Opposition to Motion for (1) Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Compensation Applications of Jackson Walker LLP, (2) Sanctions, And (3) Related Relief | 07/01/24 |
| 128. | Informal Interview of Elizabeth Freeman | 12/06/23 |
| 129. | 4e Brands NorthAmerica, LLC, Dkt. No. 705, Jackson Walker LLP's Sur-Reply In Support of its Opposition to the U.S. Trustee's Amended and Supplemental Motion For (1) Relief Under Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief [Relates To Dkt. Nos. 692 & 699] | 08/12/24 |
| 130. | JW_00000307-JW_00000316 – Email from Cavenaugh to Freeman & PDF of Expenses | 10/15/18 |
| 131. | JW_00000435-JW_00000441 – Email from Cowlishaw to Freeman | 08/26/21 |
| 132. | JW_00012070-JW_00012083 | |
| 133. | JW_00015883-JW_00015884 | |
| 134. | JW_00020335-JW_00020338 | |
| 135. | JW_00023522-JW_00023705 – Attorney Sourcebook | |
| 136. | Letter to Jonathan Lipson | 09/05/24 |
| 137. | Bankruptcy Local Rules Effective January 28, 2020 | |
| 138. | Bankruptcy Local Rules Effective February 12, 2020 | |
| 139. | Bankruptcy Local Rules Effective December 1, 2015 | |
| 140. | Bankruptcy Local Rules Effective May 19, 2022 | |
| 141. | Application to Employ [Name Of Law Firm] as Special Litigation Counsel Pursuant to 11 U.S.C. § 328(A) | |
| 142. | Ultra Petroleum Corp., Dkt. No. 192, Debtors' Application for Entry Oof an Order Authorizing the Employment and Retention of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel | 06/04/20 |
| 143. | Van Deelen v. Jones, et al, Memorandum Opinion & Order | 08/16/24 |
| 144. | *Altera Infrastructure L.P.*, Dkt 229, Application for Order Authorizing the Retention of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel | |
| 145. | Exhibit A-1 USTP Identified Cases | |

| 146. | Exh. 191 – UST_0773-UST_0776 Certified Copy of Rolla General Warranty Deed | |
| 147. | Exh. 192 – UST_0777-UST_0780 Certified Copy of Rolla Survivorship Agreement | |

## <u>LIST OF DOCUMENTS SENT FOR REVIEW ON 10/28/24</u>

| NO. | DOCUMENT – DEPOSITIONS & EXHIBITS | DATE |
|-----|-----------------------------------|------|
| 1. | Deposition of Jacqueline Harvey with Exhibits | 10/17/24 |
| 2. | Deposition of Peter Jarvis with Exhibits | 10/17/24 |

# RENEE KNAKE JEFFERSON

PROFESSOR OF LAW & THE DOHERTY CHAIR IN LEGAL ETHICS
UNIVERSITY OF HOUSTON
RKJEFFERSON@UCHICAGO.EDU

---

## ACADEMIC APPOINTMENTS

---

**UNIVERSITY OF HOUSTON**
*Law Center,* Professor of Law (with tenure) and the Doherty Chair in Legal Ethics (2016-present)
  • *Administrative Leadership*: Assistant Dean, Outcomes, Assessments & Strategy (2024-present); Director, Outcomes and Assessments (2017-24); Co-Author, ABA Self Study (2022-23)
  • *Teaching Recognition:* Student Bar Association Part-Time Students Professor of the Year Nominee (2022-23); University of Houston Law Alumni Association Faculty Distinction Award (2022)
  • *Courses:* Professional Responsibility, Constitutional Law, Writing Seminar on Leadership

*Hobby School of Public Affairs,* Associate Faculty Member (2024-present)

**MICHIGAN STATE UNIVERSITY**
*College of Law,* Foster Swift Professor of Legal Ethics (2015-16); Professor of Law (2014-16); Assistant/Associate Professor (2009-14, tenured 2013); Lecturer in Law (2006-09)
  • *Administrative Leadership*: Co-Director, Frank J. Kelley Institute of Ethics (2011-2016); Director, 21st Century Law Summer Program in London (2011-14); Co-Founder, ReInvent Law Lab for Tech, Innovation & Entrepreneurship (2012-14)
  • *Courses:* Professional Responsibility, Federal Jurisdiction, Entrepreneurial Lawyering, First Amendment and Lawyer Speech, 21st Century Law Practice

*Honors College,* Professor of Law, Honors Research Seminar (2014-15)

*Broad College of Business,* Associate Professor, Legal/Ethical/IP Issues in Big Data (2013-14)

**AUSTRALIAN NATIONAL UNIVERSITY**
*College of Law,* Academic Visitor (2019)

**ROYAL MELBOURNE INSTITUTE OF TECHNOLOGY UNIVERSITY**
*School of Law,* Fulbright Distinguished Chair in Entrepreneurship and Innovation (2019)

**STANFORD UNIVERSITY**
*Law School, Center on the Legal Profession***,** Scholar-in-Residence (2015)

**AMERICAN BAR FOUNDATION**
Visiting Scholar (2015)

---

## EDUCATION

---

**THE UNIVERSITY OF CHICAGO LAW SCHOOL**, J.D., 1999

**NORTH PARK COLLEGE**, Chicago, IL, 1996, *Summa Cum Laude*
B.A. Communication Arts & Economics

**HARVARD BUSINESS SCHOOL**, 2023
*Executive Education – Women on Boards*

## PUBLICATIONS

### Books - Monographs

1. LAW DEMOCRATIZED: A BLUEPRINT FOR SOLVING THE JUSTICE CRISIS (New York University Press 2024)

   *Select Reviews*

   "America has a broken civil justice system that millions of Americans facing critical legal problems can't access. In *Law Democratized*, Renee Knake Jefferson, one of our great experts on the justice system, offers a way out. It's the best book on access to justice in many years."
    - David Luban, Distinguished University Professor, Georgetown University

   "A masterpiece of thoroughly researched observations and practical advice."
   - Deborah Enix-Ross, President, American Bar Association

   "Measurably advances the conversation about ways to meet people's legal needs."
   - *Library Journal*

   "From broad changes in legal education to emerging technologies and regulatory reform, her blueprint for justice is comprehensive and inspiring. It is a must-read for legal practitioners, policymakers, academics, and anyone who believes that the law belongs to the people."
   - The Honorable Bridget McCormack, former Chief Justice of the Michigan Supreme Court

2. SHORTLISTED: WOMEN IN THE SHADOWS OF THE SUPREME COURT (New York University Press 2020, paperback edition 2022) (with H. Johnson)

   - Winner, *Next Generation Indie Book Award for Women's Nonfiction* 2022
   - Named as "Exemplary Legal Writing of 2020" by the *Green Bag Almanac & Reader*
   - Featured in *C-SPAN Classroom Lesson Plans*: "Women and the Supreme Court"

   *Select Reviews*

   "This fascinating book reconstructs a chapter of women's history that has been hiding in plain sight: the numerous qualified women whose names were floated for the Supreme Court. Just as they were overlooked, so have their individual stories, until now."
   - Linda Greenhouse, *New York Times* contributing columnist

    "Stunningly original in its focus and its careful research, *Shortlisted* is beautifully written and an important addition to the literature about the Supreme Court."
   - Erwin Chemerinsky, Dean, University of California, Berkeley School of Law

   "With fresh research, the authors effectively humanize the women who never received the nominations they deserved."
   - Kirkus Reviews

   "A perfect read for anyone hoping to learn from our history about how to brighten our future through systemic change that truly accounts for the diversity that the American populous represents."
   - *Law & Politics Book Review*

   "Timely and provocative ... well written, logically organized, and thoroughly researched"
   - *Law & Society Review*

## PUBLICATIONS continued

### Casebooks

1. CONSTITUTIONAL LAW: FOUNDATIONS, INTERPRETATIONS, AND COMMENTARIES (West Academic forthcoming 2025) (with C. Rhodes)

2. PROFESSIONAL RESPONSIBILITY:  A CONTEMPORARY APPROACH, 5TH ED. (West Academic 2023) (lead author with S. Ballakrishnen, L. Brown, B. Green, E. Murphy, S. Kim, P. Joy, R. Pearce, and L. Terry)

3. LEADERSHIP, LAW & PIPELINES TO POWER, 2ND ED. (West Academic 2023) (with H. Brenner)

4. LEGAL ETHICS FOR THE REAL WORLD: BUILDING SKILLS THROUGH CASE STUDY, 2ND ED (Foundation Press 2022) (with E. Murphy)

### Scholarly Articles and Essays

1. *Ethics Accountability: The Next Era for Judges and Lawyers*, CARDOZO LAW REVIEW (forthcoming 2025)

2. *Mentored: On Leaders, Legacies, and Legal Ethics,* 91 FORDHAM LAW REVIEW 1284 (2023) (read)

3. *Lawyer Lies and the First Amendment,* 31 YALE LAW JOURNAL FORUM  114 (2021) (read)
   · Notable citation: *Lawyers in Backsliding Democracy*, 112 CALIFORNIA LAW REVIEW 513, 600 (2024)

4. *Judicial Ethics in the #MeToo World,* 89 FORDHAM LAW REVIEW 1198 (2021) (read)

5. *Lawyer Ethics for Innovation,* 35 NOTRE DAME JOURNAL OF LEGAL ETHICS 1 (2021) (read)

6. *The Behavioral Economics of Lawyer Advertising: An Empirical Assessment,* 2019 ILLINOIS LAW REVIEW 1105 (2019) (with J. Hawkins) (read)
   · Notable citation: *Ad Tech and the Future of Legal Ethics*, 73 ALABAMA LAW REVIEW 107, 119 (2021)

7. *The Legal Monopoly,* 93 WASHINGTON LAW REVIEW 1294 (2018) (read)
   · Reviewed in *Law360*, "End Legal Monopoly with Antitrust Review," Mar. 16, 2018

8. *Abolishing Death*, DUKE JOURNAL OF CONSTITUTIONAL LAW & POLICY (2018) (read)
   · Notable citation: *Settled Law*, 107 VIRGINIA LAW REVIEW 57, 91 (2021)

9. *Lawyer Speech in the Regulatory State,* 84 FORDHAM LAW REVIEW 2099 (2016) (read)

10. *Commercialization of Legal Ethics,* 29 GEORGETOWN JOURNAL LEGAL ETHICS 715 (2016) (read)
    · Reviewed in JOURNAL OF THINGS WE LIKE LOTS (JOTWELL) Nov. 21, 2016

11. *Legal Information and the First Amendment,* 82 FORDHAM LAW REVIEW 2843 (2014) (read)
    · Notable citation: *The Lawyer as Public Figure*, 57 BOSTON COLLEGE LAW REVIEW 1543, 1596 (2016)

12. *Democratizing Legal Education*, 45 CONNECTICUT LAW REVIEW 1281 (2013) (read)
    · Reviewed in JOURNAL OF THINGS WE LIKE LOTS (JOTWELL) Apr. 29, 2013

13. *Democratizing the Delivery of Legal Services,* 73 OHIO STATE LAW JOURNAL 1 (2012) (read)
    · Winner, Association of American Law Schools PR Section Paper Competition (2012)
    · Notable citation: *Licensing Knowledge*, 72 VANDERBILT LAW REVIEW 501, 541 (2019)
    · Notable citation: *Brief of Amici Curiae in Upsolve v. James,* US Court of Appeals for the Second (2023)

---

## PUBLICATIONS continued

14. *Rethinking Gender Equality in the Legal Profession: A Study on Media Coverage of Supreme Court Nominees,* 84 TEMPLE LAW REVIEW 325 (2012) (with H. Brenner) ([read](#))
    - Winner, Association of American Law Schools Gender New Voices Competition (2012)

15. *Attorney Advice and the First Amendment,* 68 WASHINGTON & LEE LAW REVIEW 639 (2011) ([read](#))
    - Notable citation: *The "Speech Integral to Criminal Conduct" Exception,* 101 CORNELL LAW REVIEW 981, 1043 (2016)
    - Notable citation: *Professional Speech,* 125 YALE LAW JOURNAL 1238, 1246 (2016)

16. *The Supreme Court's Increased Attention to the Law of Lawyering: Mere Coincidence or Something More?* 59 AMERICAN UNIVERSITY LAW REVIEW 1499 (2010) (lead article) ([read](#))
    - Notable citation: *Brief of the Association of Professional Responsibility Lawyers as Amicus Curiae, Rubashkin v. United States,* US Supreme Court No. 11-1203 (2012)

17. *Why the Law Needs Music: Revisiting NAACP v. Button through the Songs of Bob Dylan,* 38 FORDHAM URBAN LAW JOURNAL 110 (2011) ([read](#))

18. *From Research Conclusions to Real Change: The First Amendment's (Non)Response to the Effects of Media on Children,* 63 SOUTHERN METHODIST UNIVERSITY LAW REVIEW 101 (2010) ([read](#))
    - Notable citation: *The Child Paradox in First Amendment Doctrine,* 87 NEW YORK UNIVERSITY LAW REVIEW 1414, 1422 (2012)

### Outlines/Treatises

1. JUDICIAL CONDUCT AND ETHICS, 2026 ED. (LexisNexis forthcoming 2026) (with J. Alfini, C. Geyh, and K. Swisher)

2. HANDBOOK OF TEXAS LAWYER AND JUDICIAL ETHICS, 2024 ED. (Thomson West 2024) (with R. Schuwerk, L. Hardwick, and M. Kinard)

3. BLACK LETTER OUTLINE ON CONSTITUTIONAL LAW, 11TH ED. (West Academic 2023) (with J. Barron and T. Dienes)

### Book Chapters/Reviews/Short Pieces

1. *Shortlisted and Selected: The Path of Minority Women to the Supreme Court,* RESEARCH HANDBOOK ON GENDER AND THE LEGAL PROFESSION (Edward Elgar forthcoming 2025) (with H. Johnson)

2. *The ReInvent Law Archive,* LEGAL DESIGN: DIGNIFYING PEOPLE IN LEGAL SYSTEMS (Cambridge University Press (2024)

3. *Not the End of Lawyers, But a Beginning—The Place of Entrepreneurship and Innovation in Legal Ethics,* LEADING WORKS IN LEGAL ETHICS (Routledge 2023) (with R. Pearce)

4. *Shortlisted,* JUDICATURE (2023) (with H. Johnson and D. Wood) ([read](#))

5. *Supreme Court Shortlists and the Women of Texas,* JOURNAL OF THE TEXAS SUPREME COURT HISTORICAL SOCIETY (2022) ([read](#))

6. *Hidden Women of History: Flos Greig, Australia's First Female Lawyer and Early Innovator,* THE CONVERSATION (2019) ([read](#))

## PUBLICATIONS continued

7.  *Becoming Visible,* FIFTY LESSONS FOR WOMEN LAWYERS, FROM WOMEN LAWYERS (2019) ([read](#))

8.  *Legal and Ethical Impediments to Data Sharing and Integration Among Medical Legal Partnerships*, ANNALS OF HEALTH LAW (2018) (with J. Mantel) ([read](#))

9.  *Shortlisted,* 24 UCLA WOMEN'S LAW JOURNAL 67 (2017) (with H. Brenner) ([read](#))

10. *What We Know and Need to Know About "Access to Justice" Research*, 67 SOUTH CAROLINA LAW REVIEW 193 (2016) (with E. Chambliss and R. Nelson) ([read](#))

11. *A Taxonomy of Lawyer Regulation*, LEGAL ETHICS (2014) (peer reviewed) (with R. Pearce and N. Semple) ([read](#))

12. *Cultivating Learners Who Will Invent the Future of Law: Some Thoughts on Educating Entrepreneurial and Innovative Lawyers*, 38 OHIO NORTHERN LAW REVIEW 1 (2012) ([read](#))

13. *Gender and the Legal Profession's Pipeline to Power*, MSU LAW REVIEW 1419 (2012) ([read](#))

14. *Contemplating Free Speech and Congressional Efforts to Constrain Legal Advice*, 37 RUTGERS LAW RECORD 12 (2010) ([read](#))

15. *Prioritizing Professional Responsibility and the Legal Profession: A Preview of the U.S. Supreme Court's 2009 Term*, 5 DUKE JOURNAL OF CONSTITUTIONAL LAW SIDEBAR 1 (2009) ([read](#))

16. *The Progress of Women in the Legal Profession*, 29 PACE LAW REVIEW 293 (2009) ([read](#))

17. *Resolving Ethical Dilemmas in James Welch's The Indian Lawyer*, 33 AMERICAN INDIAN LAW REVIEW 13 (2008-09) ([read](#))

18. *Beyond Atticus Finch: Lessons on Ethics and Morality from Lawyers and Judges in Postcolonial Literature*, 32 JOURNAL OF THE LEGAL PROFESSION 37 (2008) ([read](#))

### Other Writing Projects

1.  Founder and Author, *Legal Ethics Roundup* (weekly newsletter with 1,500+ readers, 2023-present)

2.  Subject Matter Expert, *National Conference of Bar Examiners Multi-State Professional Responsibility Exam* (2018-present)

3.  Guest Blogger, *The Faculty Lounge* (2020-22)

4.  Author, *Constitutional Law Assessment Questions* (West Academic Publishing 2020)

5.  Author, *Professional Responsibility Office Hours* (West Academic Publishing 2020)

6.  Consultation*, Australian Human Rights Commission* (2019)

7.  Author, *Professional Responsibility Assessment Questions* (West Academic Publishing 2018)

8.  Contributor, *Truth on the Market Blog Symposium, "Unlocking the Law"* (2011)

9.  Contributor, *Legal Ethics Forum Blog* (2009-2021)

## PUBLICATIONS continued

### Op-Eds

1. *Judging Women for the Supreme Court,* NY DAILY NEWS, Mar. 20, 2022 (with H. Johnson) (read)

2. *Biden's Pledge Atones for Decades of Shortchanging Black Women,* THE HILL, Feb. 7, 2022 (read)

3. *Don't Just Let Lawyers Lie,* NY DAILY NEWS, Dec. 7, 2021 (read)

4. *Cold Cases, Misogyny, and Race in America: A Conversation with Jillian Lauren, host of Confronting a Serial Killer,* MS. MAGAZINE, Apr. 19, 2021 (read)

5. *The Women Shortlisted Before O'Connor*, THE HILL, Mar. 22, 2021 (with H. Johnson) (read)

6. *Rest in Power: Judge Joan Dempsey Klein, Who Devoted Every Day to Eliminating Gender Discrimination*, MS. MAGAZINE, Jan. 21, 2021 (with H. Johnson) (read)

7. *Amy Coney Barrett Must Recuse Herself from Election-Related Cases*, NY DAILY NEWS, Oct. 26, 2020, cited in Motion to Recuse, *Republican Party of Pennsylvania v. Boockvar*, U.S. Supreme Court No. 20-542 (read)

8. *Amy Coney Barrett and the Threat to Women's Rights*, NY DAILY NEWS, Sept. 26, 2020 (with H. Johnson) (read)

9. *How RBG Went from a 'Moderate' Choice to a Fiery Dissenter*, CNN OPINION, Sept. 25, 2020 (with H. Johnson) (read)

10. *The Legacy of Ruth Bader Ginsburg*, FROM THE SQUARE, Sept. 23, 2020 (with H. Johnson) (read)

11. *Texas Should Cancel Its 2020 Bar Exam*, LAW360, June 30, 2020 (with D. Fagundes) (read)

12. *With Biden's VP Shortlist, Women are Finally Gaining Political Ground,* THE HILL, May 1, 2020 (read)

13. *Trump Should Select a Woman from his SCOTUS Shortlist*, HOUSTON CHRONICLE, July 9, 2018 (with H. Brenner) (read)

14. *How Big Data Analytics is Changing Legal Ethics*, BLOOMBERG LAW (2016) (read)

15. Why *Law Students Should Be Thinking About Entrepreneurship and Innovation in Legal Services*, BLOOMBERG LAW (2012) (read)

### Referee/Outside Reviewer

• *Cambridge University Press* (2023)

• *New York University Press* (2018, 2021, 2022)

• *Law & Social Inquiry* (2021)

• *Yale Law Journal* (2015)

• I*nternational Review Law and Economics Journal* (2013)

## BOARD SERVICE

### BOARD OF TRUSTEES, MICHIGAN STATE UNIVERSITY
• Appointed by Governor Gretchen Whitmer (2019-22); Elected state-wide (2022-present)
• Chair, Academic Affairs Committee (2024-present)
• Committees: Audit/Risk/Compliance; Budget/Finance; Student Engagement; Presidential Search

### INTERNATIONAL ASSOCIATION OF LEGAL ETHICS
• Board of Directors (2022-present)          • Rhode Legal Ethics Prize Committee (2024)

### THE LEGAL ACCOUNTABILITY PROJECT
• Advisory Board (2024-present)

### THE 65 PROJECT
• Advisory Board (2021-present)

### WEST ACADEMIC PUBLISHING
• Law School Advisory Board (2020-present)

### RESPONSIVE LAW
• Board of Directors (2016-20)

### THE CENTER FOR COMPUTER-ASSISTED LEGAL INSTRUCTION
• Board of Directors (2014-16)

## PROFESSIONAL LEADERSHIP

### TEXAS ACCESS TO JUSTICE COMMISSION
• Member, Working Group on Access to Legal Services (2023-24)

### FULBRIGHT ASSOCIATION
• Alumni Ambassador (2022-24)

### AUSTRALIAN-AMERICAN FULBRIGHT COMMISSION
• Member, Selection Committee for the Discipline of Law (2019-2023)

### ASSOCIATION OF AMERICAN LAW SCHOOLS
• Professional Responsibility Section: Chair (2020): Chair-Elect (2019); Secretary (2018), Treasurer (2017), Executive Committee (2010-13)
• Leadership Section: Nominating Committee (2017-20)

### AMERICAN BAR ASSOCIATION
• Reporter, ABA Presidential Commission on the Future of Legal Services (2014-2016)

### STATE BAR OF MICHIGAN
• Co-Chair, Regulatory Reform, 21st Century Law Practice Task Force (2015-2016)

### WORLD ECONOMIC FORUM
• Delegate, Global Agenda Councils on Rule of Law (2013-14) and Justice (2014-16)

## AWARDS AND HONORS

1. Recipient of the ***Deborah L. Rhode Trailblazer Award, Association of American Law Schools Sections on Leadership, Pro Bono, Professional Responsibility & Women*** (2024)

2. Selected as ***Rockwell Center for Ethics & Leadership Fellow***, University of Houston Hobby School of Public Affairs (2021-22)

3. Recipient of the ***50-in-5 University of Houston National Recognition Award*** (2019)

4. Elected member of the ***American Law Institute***, "the leading independent organization in the US producing scholarly work to clarify, modernize, and improve the law" (2018-present)

5. Named as fellow of the ***American Bar Foundation***, "an honorary organization of attorneys, judges, law faculty, and scholars whose careers have demonstrated outstanding dedication to the welfare of their communities and highest principles of the profession" (2016-present)

6. Named as an ***American Bar Association Journal Legal Rebel,*** an "annual honors program for the change leaders of the legal profession" (2013)

7. Named as one of the ***Fastcase 50***, an award that "recognizes 50 of the smartest, most courageous innovators, techies, visionaries, and leaders in the law" (2013)

8. Recipient of the ***College of Law Practice Management Innovation Award***, honoring "deliverers of legal services who are currently engaged in some extraordinary innovative efforts" (2013)

## GRANTS

1. ***University of Houston Small Grants Program Award***  2022 ($6,000) (book research)
2. ***University of Houston Small Grants Program Award*** 2018 ($4,500) (book research)
3. ***Michigan State Undergraduate Honors Research Seminar Grant*** 2014-15 ($6,000)
4. ***Ewing Marion Kauffman Foundation Grant*** 2012-14 ($150,000)
5. ***Purdue Pre-Tenure Conference Fellowship*** 2010 (travel and event funding)
6. ***National Institute for Teaching Ethics Fellowship*** 2009 (travel and event funding)
7. ***Michigan Children's Trust Research Grant*** 2009 ($2,000)

## SELECT CONSULTING/TESTIMONY

**Testimony – *U.S. House of Representatives Committee on the Judiciary*** (2021)
• Testified regarding judicial recusal and conflicts of interest ([view](#))

**Testimony – *Federal Judicial Committee on Code of Conduct*** (2018)
• Testified regarding sexual harassment and workplace misconduct reforms ([view](#))

**Testimony – *In re Ginsberg*, CJC No. 17-0739-DI** (2018)
• Consulting expert supporting successful reversal of discipline by the State Commission on Judicial Conduct; testified before Texas Supreme Court Special Court of Review

**Testimony – *In re Slaughter*, 480 S.W.3rd 842** (2015)
• Consulting expert supporting successful reversal of discipline for judge's comments on social media; testified before Texas Supreme Court Special Court of Review

**Consulting – Lawyer and Judicial Ethics**
• Background advisor to various media outlets including Last Week Tonight with John Oliver.
• Expert witness including ABS regulation, advertising, conflicts, confidentiality, fees, recusal.

## ACADEMIC SERVICE

**University of Houston**
> Elected Member, Faculty Senate (2024 to present)
> Elected Member, Graduate and Professional Studies Committee (2024 to present)

**University of Houston Law Center**
> Promotion and Tenure Committee (2017-19, 2023 to present)
> Outcomes and Assessments Committee (2017 to present)
> Opportunity and Service Committee (2017 to present)
> Executive Committee (elected by faculty, 2019-21)
> Honor Board Faculty Justice (elected by students, 2018-19)
> Admitted Students Lecturer (2018)
> Appointments Committee (2016-17)
> Student Affairs Committee (2016-17)
> 1L Faculty Mentor (2016-18, 2021-22)

**Michigan State University College of Law**
> Appointments Committee (2011-12, 2014, Chair 2015-16)
> Promotion Committee (2013-14)
> Curriculum Committee (2013-14)
> Honors Program (2012-16)
> Admissions Committee (2012-13)
> Admitted Students Lecturer (2012-13)
> Journals Committee (2009-11)

## CONTINUING LEGAL EDUCATION TEACHING

**Legal, Political, and Ethical Dimensions of the Presidential Indictments**
*University of Houston Law Center* (2024)

**Shortlisted: Women in the Shadows of the Supreme Court**
*Norton Rose Fulbright* (2022); *Skadden, Arps* (2022); *UH Hobby School of Public Affairs* (2021); *Katten Munchin Rosenman LLP* (2021); *State Bar of Texas* (2021); *Houston Intellectual Property Law Annual Institute* (2021); *University of Houston Women in Law* (2020); *Federal Fifth Circuit Appellate Bar* (2019)

**Alternative Fee Arrangements and Litigation Financing**
*ABA Business Law Annual Meeting*, Chicago (2017)

**The New Duty of Competence and Hot Topics in Conflicts of Interest**
*PretiFlaherty Annual In-House Ethics Institute*, Portland, Maine (2017)

**A Legal Ethics Agenda for Big Data Analytics**
*Transportation Law Institute*, Houston (2016); *Houston Intellectual Property Law Annual Institute* (2016); *Intellectual Property Owners Annual Meeting,* New York (2016)

**Medical Marijuana: First Amendment and Ethical Issues**
*Cobalt LLP CLE Panel*, Berkeley (2011) (with G. Hazard and M. Traynor)

## SERVICE TO MEDIA (PRINT)

1. Quoted in *Washington Post*, "Supreme Court Ethics Remain at Center Stage," July 6, 2024.
2. Quoted in *ABA Journal*, "Judging the Judges: Lack of State Oversight," June 1, 2024.
3. Quoted in *Voice of America*, "Demands Continue for Alito's Recusal," May 30, 2024.
4. Quoted in *CNN*, "Justice Samuel Alito Blames Upside-Down American Flag on his Wife and a Flap with his Neighbors," May 17, 2024.
5. Quoted in *Bloomberg Law*, "Ghostwriters Try Steering Supreme Court Justices Away from Cases," May 16, 2024.
6. Quoted in the *New York Times*, "Calls for Thomas to Recuse Himself Renew a Focus on the Court's Ethics," Feb. 8, 2024.
7. Quoted in the *New York Times*, "Allegations Against Prosecutors Bolster Trump's Criticism of Georgia Case," Jan. 9, 2024.
8. Quoted in the *New York Times*, "Supreme Court's New Ethics Code is Toothless, Experts Say," Nov. 14, 2023.
9. Quoted in *Business Insider*, "Sidney Powell Could Finally Be Disbarred After Pleading Guilty," Oct. 19, 2023.
10. Quoted in the *Guardian*, "US Rights at Stake as Supreme Court Term Begins," Oct. 3, 2023.
11. Quoted in *Washington Post*, "Online Beauty Filters: What Helps, What Hurts, and What Crosses the Line," Oct. 19, 2023.
12. Quoted in *ABA Journal*, "Criminal Charges Add Twist to Trump Lawyers' Disciplinary Cases," Sept. 14, 2023.
13. Quoted in *Law360*, "'Highly Unusual' Expert Says on Senator's Alito Complaint," Sept. 7, 2023.
14. Quoted in *Law360*, "Former Trump Attorneys Face Tough Road Ahead," Aug. 15, 2023.
15. Quoted in *Newsweek*, "Conservatives Call Out Sotomayor's $3M from Publisher Amid Thomas Report," May 4, 2023.
16. Quoted in *Voice of America*, "Billionaire's Ties to Thomas Spur Calls for US Supreme Court Ethics Reform," Apr. 15, 2023.
17. Quoted in *Knight First Amendment Institute at Columbia University News*, "The Professional Price of Falsehoods," Mar. 23, 2023.
18. Quoted in *Bloomberg Law*, "New Era of Scrutiny Brings Calls for Supreme Court Ethics Code," Mar. 20, 2023.
19. Quoted in *Law360*, "Leak Claim Fuels Demand for High Court Ethics Code," Nov. 21, 2022.
20. Quoted in *Bloomberg Law*, "Justice Jackson's New Disclosures Highlight Gaps," Sept. 14, 2022.
21. Quoted in *Law360*, "Yahoo Fights $15M IP Loss as Droplets Seeks to Add $20.6M," June 3, 2022.
22. Quoted in *The National Law Journal*, "Ketanji Brown Jackson: Transforming the Face of the U.S. Supreme Court," Apr. 22, 2022.
23. Quoted in *The National Law Journal*, "Ethics Experts Unsettled by Federal Judges Trying to Control Who Replaces Them," Apr. 21, 2022.
24. Quoted in *Washington Post*, "Four Women on the Supreme Court Would Bring Historic, Near Gender Parity for Institution Long Dominated by White Men," Feb. 27, 2022.
25. Quoted in *Forbes,* "Meet the Black Woman Considered—and Passed Over—For Four Supreme Court Nominations," Feb. 26, 2022.
26. Quoted in *The 19th News*, "History Made: Judge Ketanji Brown Jackson to be First Black Woman Nominated to the Supreme Court," Feb. 25, 2022.

## SERVICE TO MEDIA (PRINT) continued

27. Quoted in *Diverse Issues in Higher Education*, "What Judge Ketanji Brown Jackson's Nomination Means for Higher Ed," Feb. 25, 2022.
28. Quoted in *Los Angeles Times,* "Essential Politics: What History Tells Us About Race, Gender, and Biden's Court Pick," Feb. 9, 2022.
29. Quoted in *Business Insider*, "Inside the Personal Finances of Joe Biden's Possible Supreme Court Nominees ," Feb. 9, 2022.
30. Quoted in *Washington Post*, "Gorsuch to Headline GOP Lineup of Speakers at Federalist Society; Media Barred from his Speech," Feb. 4, 2022.
31. Quoted in *Bloomberg Law*, "Biden Far From First to Consider Identity in Supreme Court Pick," Feb. 2, 2022.
32. Quoted in *ABA Journal*, "To Recuse or Not? Investigations Into Federal Judges' Financial Interests Spark Debate," Feb. 1, 2022.
33. Quoted in *Politico*, "13 Legal Experts Weigh in on How Breyer's Retirement Will Change the Court," Jan. 27, 2022.
34. Quoted in *Business Insider*, "Reagan's White House Made Sure He Stuck By His Promise to Nominate a Woman to the Supreme Court—They Knew the Politics Would Help Too," Jan. 27, 2022.
35. Quoted in *The 19th News*, "Biden Poised to Nominate First  Black Woman to the Supreme Court," Jan. 27, 2022.
36. Quoted in *Wall Street Journal*, "An Amazon Suit Encounters a Snag: a Judge with a Conflict of Interest," Dec. 30, 2021.
37. Quoted in *San Diego Union-Tribune*, "Congress Calls for Reform After 131 Judges With Stock Holdings Fail to Recuse from Cases," Nov. 29, 2021.
38. Quoted in *Law360*, "House Panel Advances Judicial Stock Disclosure Bill," Nov. 18, 2021.
39. Quoted in *Wall Street Journal*, "Federal Judge Files Recusal Notices in 138 Cases After WSJ Queries," Nov. 2, 2021.
40. Quoted in *Reuters*, "Judiciary Plans New Financial Disclosure System to Identify Conflicts," Nov. 1, 2021.
41. Quoted in *The 19th News*, "Senate Confirms Second Ever Woman Solicitor General, Who Represents Federal Government Before Supreme Court," Oct. 28, 2021.
42. Quoted in *Law360*, "Judicial Ethics Chair Faces Questions Over Recusals," Oct. 26, 2021.
43. Quoted in *Wall Street Journal*, "Federal Judges Would Face Tougher Stock-Trading Rules Under Bipartisan Bill," Oct. 25, 2021.
44. Quoted in *The National Law Journal*, "After Scathing Sanctions Ruling, Kraken Lawyers Face Future Penalties," Aug. 26, 2021.
45. Quoted in *Lansing State Journal*, "Pressure Mounts as Legislators Ask MSU to Release Documents," Mar. 25, 2021.
46. Quoted in *The National Law Journal*, "Can't Have It Both Ways: Sidney Powell's Defamation Defense Could Put Her in Ethical Bind, Experts Say," Mar. 23, 2021.
47. Quoted in *The State News*, "Women in Leadership Pave Way for Future Generations," Mar. 9, 2021.
48. Quoted in *The Stanford Daily,* "Lion in Her Field Legal Ethics Pioneer and Professor Deborah Rhode Dies," Jan. 11, 2021.
49. Mentioned in *CNN,* "50 Op-Eds That Told the Story of 2020," Dec. 21, 2020.

## SERVICE TO MEDIA (PRINT) continued

50. Mentioned in *National Law Journal,* "This Year's SCOTUS Books," Dec. 16, 2020.
51. Quoted in *Politico*, "How Amy Coney Barrett Would Reshape the Court—and the Country," Sept. 26, 2020.
52. Featured in the *New York Times*, "Their Very Own Loving Story," July 31, 2020.
53. Featured in *Law360,* "Judging a Book: Elrod Reviews 'Shortlisted,'" June 22, 2020.
54. Featured in *New York Law Journal*, "Book Review—Shortlisted: Women in the Shadows of the Supreme Court," July 15, 2020.
55. Featured in *New York Law Journal*, "Portia's Long Road to the Supreme Court," July 15, 2020.
56. Featured in *SCOTUSblog*, "Ask the Authors: The Long and Winding Road from Shortlisted to Selected for Female Supreme Court Justices," June 4, 2020.
57. Featured in the *Chicago Law Bulletin,* "New Book Analyzes Women on High Court, Those Shortlisted," May 27, 2020.
58. Featured in *The Observer*, "'Shortlisted' Is the Story of 9 Women Who Would Have Changed the Supreme Court," May 15, 2020.
59. Interviewed in *National Law Journal*, "New Book 'Shortlisted' Spotlights 9 Women Passed Over for Supreme Court," May 12, 2020.
60. Featured in the *Texas Bar Journal*, "Women and the Supreme Court," Apr. 2020.
61. Quoted in *Law360*, "Harassment Saga Sparks Calls for Swifter Probes of Judges," Mar. 5, 2020.
62. Profiled in *Detroit Free Press,* "Former MSU Law Professor Renee Knake Returns, this Time as a Board Member," Dec. 20, 2019.
63. Quoted in *Law360,* "Kozinski's Return to Court Sparks #MeToo Ethics," Dec. 11, 2019.
64. Quoted in *Chicago Tribune* and *Associated Press*, "Judge's Hug Not Embraced by All After Dallas Officer's Trial," Oct. 3, 2019.
65. Quoted in *Law360*, "Escape Remains for Judges Accused of Misconduct," Apr. 17, 2019.
66. Interviewed in *New Zealand Law Society*, "The Innovators: Renee Knake," Mar. 8, 2019.
67. Quoted and testimony featured in *CNN*, *"*Judges Urged to Make Complaint System More Transparent*,*" Oct. 30, 2018.
68. Quoted and testimony featured in *Bloomberg Law,* "Ban on Courthouse Romance Proposed to Stem Judiciary Harassment*,"* Oct. 30, 2018.
69. Quoted and testimony featured in *National Law Journal*, "Witnesses Say Judiciary Needs More Transparency and Reporting Options on Sexual Misconduct," Oct. 30, 2018.
70. Quoted in *BuzzFeed News,* *"*The Judiciary Has a Plan to Deal With Sexual Harassment. Law Students, Former Clerks and Professors Say It's Not Enough*,"* Oct. 30, 2018.
71. Quoted and research featured in *Slate,* "Jurisprudence: The Boys on the Bench," July 26, 2018.
72. Quoted in *Forbes,* "Unauthorized Practice of Law Claims Threaten Justice," May 8, 2018.
73. Quoted in *Bloomberg Law,* "Texas Death Row Inmate Back at High Court," Apr. 24, 2018.
74. Quoted in *National Law Review,* "Leading Voices Weigh in on TIKD Antitrust," Apr. 5, 2018.
75. Quoted in *Law.com*, "The Ethics of Legal Analytics," Mar. 23, 2018.
76. Quoted in *Law360*, "Five Mistakes Attorneys Make on Social Media," Mar. 20, 2018.
77. Featured in *Law360*, "End Legal Monopoly with Antitrust Review," Mar. 16, 2018.
78. Quoted in *ABA Journal*, "Opinion Exception for Generally Known Info," Mar. 1, 2018.
79. Quoted in *Christian Science Monitor*, "For Politicians Facing Misconduct Charges, No Swift 'Firings,'" Nov. 30, 2017.
80. Quoted in *CNN Money*, "Sexual Harassment Tipping Point: Why Now?" Nov. 21, 2017.

## SERVICE TO MEDIA (PRINT) continued

81. Mentioned in *Above the Law*, "Michigan State College of Law Ranks Number One: The Law School at the Forefront of Emerging Technologies," Aug. 30, 2017.
82. Quoted in *The Lawyerist*, "Big Questions on Big Data and Ethical Obligations," Sept. 29, 2016.
83. Quoted in *Corporate Counsel*, "In-House Lawyer's DQ in Patent Case Lessons," Sept. 20, 2016.
84. Mentioned in *Bloomberg Business*, "News from the ABA Futures Report," Sep. 6, 2016.
85. Quoted in *Law360*, "5 Conversations Lawyers Should Avoid at Work," Aug. 25, 2016.
86. Quoted in *Texas Lawyer*, "Facebook Judge Gets New Trial in Ethics," July 23, 2015.
87. Quoted in *Law360*, "US Law Firms Still Flirting with Going Public," July 1, 2015.
88. Quoted in *ABA Journal*, "Best Way to Boost Access to Justice? Change Rules," Sept. 1, 2013.
89. Quoted in *American Lawyer*, "The Future of Law from Silicon Valley," Mar. 10, 2013.
90. Quoted in *Wall Street Journal*, "Women Notch Progress: Females Now Constitute One-Third of Nation's Ranks of Lawyers," Dec. 5, 2012.
91. Featured in *Detroit Legal News*, "Pipeline to Power Symposium explores gender equality in the legal profession," Apr. 11, 2011.
92. Quoted in *California Lawyer Magazine*, "Full Disclosure:  Investors at Gates," Aug. 2011.
93. Quoted in *ABA Journal*, "Seduced: For Lawyers, the Appeal of Social Media Is Obvious. It's Also Dangerous," Feb. 1, 2011.
94. Quoted in *National Law Journal*, "Lawyering Suits Pile Up at High Court," July 6, 2010.
95. Quoted in *National Law Journal*, "High Court Justices to Take Up Lawyer Ethics, Errors," Sept. 28, 2009.

## SERVICE TO MEDIA ( TELEVISION/VIDEO)

1. Interviewed on *CBS 24/7*, "How Democrats Want to Address Supreme Court Ethics Concerns," June 12, 2024 (view)
2. Interviewed on *Scripps News*, "Senator Whitehouse Ethics Complaint," Sept. 2023
3. Interviewed on *C-SPAN Q&A*, "Book Talk – *Shortlisted*," Mar. 2022 (view)
4. Interviewed on *Scripps News*, "Ketanji Brown Jackson Nomination," Mar. 21, 2022 (view)
5. Interviewed on *NBC Houston Channel 2 KPRC*, "Biden Nominates Jackson for the Supreme Court," Feb. 25, 2022 (view)
6. Interviewed on *FOX Affiliate Houston Channel 26 Morning Show*, "Impact of Supreme Court Justice Stephen Breyer," Jan. 27, 2022 (view)
7. Interviewed on *Reuters*, "Judicial Recusal Rules Under Scrutiny," Oct. 28, 2021(view)
8. Interviewed for *Texas Young Lawyers Iconic Women in History Project*, Mar. 2021 (view)
9. Election night coverage, *CBS Houston Channel 11 KHOU*, Nov. 3-7, 2020 (view)
10. Interviewed on *NBC Charlotte Channel 36 WCNC*, "Margin is Simply Too Big – Law Professors Weigh In On President Trump's Legal Battle," Nov. 7, 2020 (view)
11. Interviewed on *MSNBC's The Week with Joshua Johnson* about the Amy Coney Barrett confirmation hearings, Oct. 11, 2020 (view)
12. Interviewed on *MSNBC's The Week with Joshua Johnson* about the legacy of Ruth Bader Ginsburg, Sept. 26, 2020 (view)
13. Interviewed for *American Law Institute Women's Suffrage Tribute*, 2020 (view)
14. Interviewed on *NBC Affiliate Houston Channel 2 KPRC*, "Brother of Botham Jean Talks about Courtroom Hug with Amber Guyger," Oct. 4, 2019

## SERVICE TO MEDIA (RADIO AND PODCASTS)

1. Interviewed on *NPR Morning Edition*, "When judges get free trips to luxury resorts, disclosure is spotty," May 1, 2024 (listen)
2. Interviewed on *NPR Morning Edition*, "Judge in California recommends disbarment of pro-Trump attorney John Eastman," Mar. 28, 2024 (listen)
3. Interviewed on *SideBar* podcast,  "Law Democratized," Feb.5, 2024 (listen)
4. Interviewed on *ABA Journal* Modern Law Library podcast, "Access to justice can be achieved, says 'Law Democratized' author—but not without change," Jan. 10, 2024 (listen)
5. Interviewed on the *Legal Tenzer* podcast, "Ethics for the Supreme Court, Oct. 26, 2023 (listen)
6. Interviewed on the *Above the Law* Jabot podcast, "Law Professors Reveal a Supreme Court History You Never Knew," May 20, 2022 (listen)
7. Interviewed on *Texas Standard*, "Ketanji Brown Jackson Confirmation," Mar. 21, 2022 (listen)
8. Interviewed on *NPR's On Point* about Biden's Shortlist, Feb. 21, 2022 (listen)
9. Interviewed on *CBS Weekend* about Biden's Shortlist, Feb. 4, 2022 (listen)
10. Interviewed on the *Texas Standard*, "These are the Black Women Who Could Replace Justice Stephen Breyer on the Supreme Court," Jan. 27, 2022 (listen)
11. Interviewed on *Yale Law Journal* podcast, "Lawyer Lies & Political Speech," Dec. 2021 (listen)
12. Interviewed on *Reimagining Justice* podcast, "What the First Female Lawyers Can Teach Us About Innovation Today," Mar. 1, 2021 (listen)
13. Interviewed on *Heritage Foundation SCOTUS 101* podcast, "Shortlists, Snubs, and Also-Rans," Oct. 23, 2020 (listen)
14. Interviewed on *Australian Broadcasting Corporation Radio* about the Amy Coney Barrett confirmation hearings, Oct. 18, 2020 (listen)
15. Interviewed on *Washington Independent Review of Books* podcast, Oct. 14, 2020 (listen)
16. Quoted in *Voice of America*, "Female Justices Can Change Conversation," Oct. 3, 2020 (listen)
17. Interviewed on *Texas Standard*, "The Legacy and the Future: Ruth Bader Ginsburg and Women's Rise to the Supreme Court," Sept. 25, 2020 (listen)
18. Interviewed on the *Strict Scrutiny* podcast, "I Want More," Sept. 14, 2020 (listen)
19. Interviewed on *Signal Boost with Zerlina Maxwell and Jess McIntosh,* June 2, 2020 (listen)
20. Interviewed on *Texas Standard*, "What Might Have Been: The Forgotten History of Women on the Supreme Court Shortlist," May 25, 2020 (listen)
21. Interviewed on *Top of Mind* podcast, "Women and the Supreme Court," May 21, 2020 (listen)
22. Interviewed on *ABA Journal* Modern Law Library podcast, "Meet 9 American Women Shortlisted for the Supreme Court Before Sandra Day O'Connor," May 20, 2020 (listen)
23. Interviewed on *WNYC All of It With Alison Stewart Show*, May 20, 2020 (listen)
24. Interviewed on *Houston Matters*, "Plenty Of Women Have Been Shortlisted For The Supreme Court — But Mostly For Show," May 15, 2020 (listen)
25. Interviewed on *Emphasis Added* podcast, May 8, 2020 (listen)
26. Interviewed on *WKAR Public Radio*, "Trustee Knake: Build on the Land Grant Heritage and Help MSU Be as Safer Place for Everyone," Jan. 8, 2020 (listen)
27. Interviewed on *Texas Standard Radio Show* about impeachment, Aug. 23, 2018 (listen)
28. Interviewed on *Texas Standard Radio Show* on judge & electric shock, Mar. 9, 2018 (listen)
29. Interviewed on *Houston Public Media*, "Briefcase: Access to Justice," Jan. 11, 2107 (listen)
30. Interviewed on *All Things Considered, National Public Radio*, "Out of State Lawyers Descend on Flint, Mich., Aid Water Crisis," Apr. 14, 2016 (listen)

## SELECT PRESENTATIONS

***Shortlisted*** **Book Tour Talks —** www.shortlistedbook.com/book-tour

**Keynote Addresses**
1. *Access to Justice and the Future of Justice Work Conference at Arizona State University*, Feb. 28, 2024
2. *Women's Rights National Park, Seneca Falls,* July 22, 2023
3. *Women's Municipal Leadership Program,* Aug. 19, 2022
4. *International Women's Insolvency & Restructuring Confederation Leadership Conference*, Aug. 5, 2022
5. *Washington Women Lawyer's Association Annual Meeting,* Oct. 16, 2021
6. *Fulbright Australia Scholars Orientation,* May 6, 2021
7. *Gonzaga Law School Conference on Human Rights,* Nov. 9, 2020
8. *Melbourne University Law School,* July 25, 2019
9. *Legal Innovation Festival Sydney,* June 8, 2019
10. *Lawfest Conference on Innovation and Technology New Zealand,* Mar. 21, 2019
11. *South Carolina Law Review Symposium on Legal Education*, Feb. 28, 2014
12. *Association of Professional Responsibility Lawyers Annual Meeting*, Aug. 8, 2013
13. *University of Oregon Law School Judge Helen Frye Tribute*, Apr. 5, 2013

**Honorary Lectures**
1. *Washburn Law School Women's History Month Lecture,* Mar. 1, 2020
2. *BYU Law School Future of Law Annual Lecture Series,* Oct. 18, 2017
3. *University of Houston Law Center Yale Rosenberg Annual Lecture,* Mar. 23, 2017
4. *Pace Law School Annual Phillip A. Blank Lecture on Attorney Ethics*, Mar. 18, 2013

**Competitively Chosen Presentations**
1. *Center for Constitutional Law at the University of Akron*, Feb. 21, 2025
2. *Duke Journal of Constitutional Law and Public Policy Symposium,* Feb. 2, 2018
3. *Loyola Law School Chicago Annual Symposium on Health Law & Policy,* Nov. 10, 2017
4. *The Antigua Forum,* Guatemala, Jan. 20-21, 2017
5. *Yale Law School Freedom of Expression Scholars Conference,* May 2, 2015
6. *Georgetown University Law Center for the Study of the Legal Profession,* Apr. 12, 2013
7. *AALS Annual Meeting Professional Responsibility Program*, Washington, DC, Jan. 6, 2012
8. *AALS Annual Meeting New Voices in Gender Program*, Washington, DC, Jan. 5, 2012
9. *Washington and Lee University Junior Faculty Workshop on Children & Law*, July 16, 2009
10. *National Conference on Consumer Culture & Ethical Treatment of Children*, Nov. 12, 2009

**Invited Remarks**
1. *Australian Embassy, Washington DC,* Oct. 16, 2024
2. *ABA Center on Professional Responsibility Annual Meeting,* May 30, 2024
3. *American Law Institute Annual Meeting,* May 19, 2024
4. *NYU Law School,* Apr. 4, 2024
5. *Cardozo Law Review,* Mar. 15, 2024
6. *AALS Annual Meeting Section on Professional Responsibility,* DC, Jan. 5, 2024
7. *California Judges Association*, Sept. 22, 2023
8. *Monroe H. Freedman Institute for the Study of Legal Ethics at Hofstra University*, Sept. 21, 2023
9. *Seventh Circuit Court of Appeals Judicial Conference,* Aug. 23, 2023
10. *Louisiana State Bar Judges School,* June 8, 2022
11. *Holocaust Museum of Houston,* Mar. 17, 2022

## SELECT PRESENTATIONS continued

12. *Association of American Law Schools,* Jan. 7, 2022
13. *15th Annual Judicial Symposium on Civil Justice, George Mason Law & Economics Center,* Nov. 17, 2021
14. *Stanford Law School Celebration of Life for Deborah Rhode,* Oct. 15, 2021
15. *American Bar Association Section on Litigation Annual Meeting,* May 5, 2021
16. *Southern Methodist University Law School,* Apr. 6, 2021
17. *Wake Forest Law School,* Oct. 20, 2020
18. *New Civil Liberties Alliance,* Oct. 16, 2020
19. *Fordham Law School*, Oct. 9, 2020
20. *University of Texas Center for Women in Law,* Oct. 5, 2020
21. *Osgoode Hall Law School,* Oct. 5, 2020
22. *Harris County Law Library,* Aug. 18, 2020
23. *Villanova Law School,*  Feb. 26, 2020
24. *Suffolk Law School,* Feb. 6, 2020
25. *Conversation Partner with Malcom Gladwell on his book Talking to Strangers,* Oct. 8, 2019
26. *Texas Women Rainmakers Annual Conference,* Aug. 23, 2019
27. *Women Lawyer's Association of Queensland,* July 19, 2019
28. *Australia National University Law School,* June 26, 2019
29. *University of Tasmania Law School,* Apr. 18, 2019
30. *Royal Melbourne Institute of Technology University,* Feb. 19, 2019
31. *University of Houston International Women's Law Day Celebration,* Mar. 8, 2018
32. *University of Houston Rockwell Lecture on Leadership and Ethics,* Feb. 9, 2018
33. *University of Houston National Women's Conference,* Nov. 6, 2017
34. *University of Kansas Faculty Series,* Sept.13, 2017
35. *Texas Southern University Thurgood Marshall School of Law,* Apr. 8, 2017
36. *Touro Law Review Brandeis Symposium,* Mar. 31, 2016
37. *Georgetown Journal of Legal Ethics Colloquium,* Mar. 18, 2016
38. *Fordham Law Review Symposium,* Oct. 25, 2015
39. *National Conference of Bar Presidents,* Chicago, Aug. 1, 2015
40. *Gruter Institute Conference on Innovation and Growth*, May 2012, 2013, 2015
41. *Stanford Law School*, Apr. 30, 2015
42. *ABA Standing Committee on Public Education*, Apr. 10, 2015
43. *American Bar Foundation,* Apr. 8, 2015
44. *University of Maryland School of Law*, Mar. 27, 2015
45. *Washington & Lee Law School Faculty Workshop,* Nov. 17, 2014
46. *American Bar Association Annual Meeting,* Boston, Aug. 9, 2014
47. *University of Arizona Law School Faculty Speaker Series,* Apr. 17, 2014
48. *American University Washington College of Law Faculty Workshop*, Mar. 21, 2014
49. *Fordham Law Review Symposium on Lawyers' Monopoly,* Oct. 18, 2013
50. *George Mason Law School Research Roundtable,* Sept. 20, 2013
51. *University of Florida Law School*, Sept. 12, 2013
52. *Legal Services Board*, London, June 12, 2013
53. *Northeastern University Law School Faculty Colloquium*, Mar. 29, 2013

---

## SELECT PRESENTATIONS continued

54. *Stanford Law School*, Mar. 6, 2013
55. *Connecticut Law Review Symposium on Future of Legal Education*, Nov. 16, 2012
56. *Northeastern Law School Symposium on Experiential Education in Law*, Oct. 27, 2012
57. *Vermont Law School*, Oct. 26, 2012
58. *Ohio Northern Law Review Symposium*, Mar. 26, 2012
59. *University of Tennessee College of Law Faculty Workshop*, Feb. 9, 2012
60. *AALS Annual Meeting,* Washington DC, Jan. 5, 2012
61. *Michigan State Law Review Symposium,* Sept. 9, 2011
62. *University of the Pacific McGeorge School of Law*, Apr. 8, 2011
63. *Fordham Law Urban Law Journal Symposium*, Apr. 5, 2011
64. *Michigan State University Sandra Seaton Roundtable*, Nov. 11, 2010
65. *University of Illinois College of Law Faculty Workshop*, Aug. 26, 2010
66. *ABA Annual Conference on Professional Responsibility*, Seattle, June 4, 2010
67. *Society for the Study of Midwestern Literature Annual Meeting,* 2008 & 2009
68. *MSU College of Law Indigenous Law and Policy Center*, Oct. 19, 2007

### Conference Panels

1. *Southeastern Association of Law Schools Annual Meetings* 2012, 2016, 2017, 2018, 2019, 2021, 2023
2. *International Legal Ethics Conferences* (1) University of Queensland July 2008, (2) Stanford Law July 2010, (3) University of Calgary July 2012, (4) UCL London July 2014, (5) Fordham Law 2016, (6) University of Melbourne Dec. 2018, (7) UCLA Law Aug. 2022, (8) Amsterdam Law July 2024
3. *Law and Society Annual Meetings* 2010, 2011, 2017, 2018, 2021, 2022
4. *Association for the Study of Law, Culture and Humanities Annual Meetings* (1) Georgetown Law School Mar. 2007, (2) UNLV Law School Mar. 2011, (3) University of Virginia Law School Mar. 2014
5. *Arizona State University College of Law Junior Scholars Conference*, Mar. 17, 2012
6. *Indiana University School of Law Big Ten Untenured Conference,* Aug. 3, 2011
7. *Loyola Constitutional Law Colloquium*, Loyola University Chicago, Nov. 5, 2010

---

## CONFERENCES/LECTURES ORGANIZED

1. *International Legal Ethics Conference,* Houston, forthcoming 2026.
2. *Kelley Institute of Ethics Lecture Series* (1) Chief Judge Jonathan Lippman, 2015; (2) Gov. Jim Blanchard, 2014; (3) Senator Carl Levin, 2013; (4) Richard Susskind, 2012; (5) AG Lisa Madigan, 2011; (6) Deborah Rhode, 2010; (7) David Wilkins, 2009.
3. *ReInvent Law Conference Series* (1) London, June 2014; (2) New York, NY, Feb. 2014; (3) London, June 2013; (4) Mountain View, CA, Mar. 2013; (5) Dubai, Dec. 2012; (6) London, June 2012.
4. "Gender and the Pipeline to Power," *MSU Law Review Symposium*, Apr. 12-13, 2012.
5. "Workshop on Changes in Law Practice," *AALS Annual Meeting*, Washington, DC, Jan. 5, 2012.
6. "The U.S. Supreme Court's Increased Attention to the Law of Lawyering," *AALS Annual Meeting*, New Orleans, LA, Jan. 7, 2010. Competitively selected as Hot Topic Panel.

## AMICUS BRIEFS

1. South Carolina NAACP v. Wilson, No. 23-1917 (Fourth Circuity U.S. Court of Appeals 2023), co-signer to Amicus Brief of Professor Rebecca L. Sandefur and 26 Empirical Scholars in Support of Plaintiffs-Appellants.
2. Upsolve v. James, No. 22-1345 (Second Circuit U.S. Court of Appeals 2022), co-signer to Amicus Brief of Law Professors in Support of Plaintiff-Appellee and Affirmance.
3. North Carolina State Board of Dental Examiners v. Federal Trade Commission, No. 13-534 (U.S. 2014), co-signer to Amicus Brief of Law Professors, et al.
4. Maples v. Thomas, No. 10-63 (U.S. 2011), co-signer to Amicus Brief of Legal Ethics Professors and Practitioners and the Ethics Bureau at Yale as Amicus Curiae in Support of Petitioner, cited by majority in Maples v. Thomas, 132 S.Ct. 912 (2012).
5. Holland v. Florida, No. 09-532 (U.S. 2009), co-signer to Amicus Brief of Legal Ethics Professors and Practitioners and in Support of Petitioner Albert Holland, cited by majority in Holland v. Florida, 130 S.Ct. 2549 (2010).

## LAW PRACTICE AND OTHER PROFESSIONAL EXPERIENCE

**PIEDMONT VIRGINIA COMMUNITY COLLEGE**, Charlottesville, VA
*Assistant Professor (Jan. – Apr. 2005)* Taught business law course.

**OFFICE OF THE CITY ATTORNEY,** Charlottesville, VA
*Assistant City Attorney (Dec. 2001 – Apr. 2005)* One of four attorneys responsible for representing all city departments, officials, agencies, and employees on a wide variety of civil matters, including zoning, parks, housing, police, economic development, cable, workers comp, and social services.

**HUNTON & WILLIAMS,** Richmond, VA
*Associate (Jan. 2001 – Dec. 2001)* Defended and advised businesses and corporations engaged in litigation involving telecommunications, corporate governance, derivative suits, and consumer protection. Served as pro bono counsel for the Commonwealth of Virginia in child support cases.

**MAYER BROWN,** Chicago, IL
*Associate (Aug. 1999 – Dec. 2000); Summer Associate (1998)* Defended management in employment and general corporate litigation. Prepared cases for trial by conducting discovery, writing motions/briefs, taking depositions, drafting witness exams and trial statements, and composing pretrial pleadings.

**DEBEVOISE & PLIMPTON,** Washington, DC
*Summer Associate (1998)* Transactional and litigation work (permanent offer extended).

**UNIVERSITY OF CHICAGO LAW SCHOOL**
*Research Assistant to Professor Stephen Schulhofer (1997-98)* Conducted research for and edited book, UNWANTED SEX: CULTURE OF INTIMIDATION AND FAILURE OF LAW (Harvard 1998).

**MANDEL LEGAL AID CLINIC, UNIVERSITY OF CHICAGO LAW SCHOOL**
*Law Clerk (1997)* Worked with anti-poverty child support project—legislative and court reforms.

## ADMITTED TO PRACTICE

Michigan (2006) | Fourth Circuit U.S. Court of Appeals (2001) | Virginia (admitted 2001, associate since 2006) | Seventh Circuit U.S. Court of Appeals (1999) | Northern District of Illinois (1999) | Illinois (admitted 1999, inactive since 2006)

## COMMUNITY SERVICE

- *Treasurer,* MacDonald Middle School Parent Council (2020-21)
- *Parent Volunteer,* Donley Elementary (2010-14), Whitehills Elementary (2014-2015)
- *Member,* East Lansing School Board, K-8 Facilities Committee (2010-11)
- *Commissioner,* City of East Lansing Zoning Board of Appeals (2009-10)
- *Vice Chair and Commissioner,* City of East Lansing Cable Commission (2006-08)

Current as of October 2024