**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Professional Fee Matters Concerning the | § | Case No. 23-00645 (EVR) |
| Jackson Walker Law Firm | § | |
| | § | |
| | § | |

## JACKSON WALKER LLP'S MOTION TO STRIKE THE REPORT AND TO EXCLUDE THE OPINIONS OF RICHARD J. DAVIS

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

## <u>TABLE OF CONTENTS</u>

<span style="font-variant: small-caps;">Contents</span>

A.    INTRODUCTION ................................................................................................. 1

B.    FACTUAL BACKGROUND ................................................................................ 1

C.    APPLICABLE LEGAL STANDARDS ............................................................... 3

D.    ANALYSIS ............................................................................................................ 6

       1.    The Davis Report lacks any indicia of reliability as the opinions are not based on any apparent methodology or specified work experience .................................. 7

           a.    The Davis Report is unreliable because the opinions provide no detail about Mr. Davis's past work and how such work influences or relates to opinions provided .................................................................................. 7

           b.    The Davis Report is unreliable because it offers no specifics about Mr. Davis's specialized knowledge, skill, or training. ......................... 10

           c.    The Davis Report's conclusions are unsupported by an explanation of Mr. Davis's methodology and reasoning; thus, they are inadmissible because they lack any value for the trier of fact. ............................................... 12

       2.    The Davis Report should be struck as it lacks any discussion of Mr. Davis's basis for his opinions and thus fails to meet requirements in Rule 26(a)(2)(B)(i) ................................................................................ 14

       3.    If not excluded, the Davis Report's conclusions about Jackson Walker lack relevance for the vast majority of the arguments asserted by the U.S. Trustee and should only be considered in connection with a limited portion of one argument. ....................................................................................... 16

E.    CONCLUSION ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abdelsayed v. New York Univ.*,
No. 17-CV-9606, 2023 WL 4705999 (S.D.N.Y. July 24, 2023) (cleaned up) ........................ 5

*Archer v. Arren*,
118 S.W.3d 779 (Tex. App.—Amarillo 2003) .................................................... 12

*Batts v. Tow-Motor Forklift Co.*,
66 F.3d 742 (5th Cir. 1995) ................................................................. 7

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996)................................................................... 5

*Copley v. Smith & Nephew Inc.*,
No. Civ. A.H.-97-2910, 2000 WL 223404 (S.D. Tex. Feb. 2, 2000) ................................ 5, 14

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).......................................................... 4, 5, 14, 16

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....................................................................... 5, 12

*Guile v. United States*,
422 F.3d 221 (5th Cir. 2005) ............................................................... 12

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) ............................................................ 7, 10

*Johnson v. Arkema, Inc.*,
685 F.3d 452 (5th Cir. 2012) (cleaned up)............................................... 5

*Kumho Tire Co., Ltd. v. Carmichael*,
526 *U.S. 137 (1999)* ................................................................... 5, 6

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)............................................................... 14

*Paz v. Brush Engineered Materials, Inc.*,
555 F.3d 383 (5th Cir. 2009) ............................................................. 12

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*,
No. 19-CV-7577 (KMK), 2023 WL 2973038 (S.D.N.Y. Mar. 28, 2023) ............................. 14

*Puga v. RCX Sols., Inc.*,
922 F.3d 285 (5th Cir. 2019) .............................................................. 3

*Skidmore v. Precisions Printing and Packaging, Inc.*,
    188 F.3d 606 (5th Cir. 1999) ................................................................... 13

*Slaughter v. Southern Tacl. Co.*,
    919 F.2d 304 (5th Cir. 1990) ............................................................. 7, 12

*The Cadle Co. v. Sweet & Brousseau, P.C.*,
    No. Civ. A. 3:97-CV-298-L (N.D. Tex. Feb. 23, 2006) ............................. 6, 11, 14

*Trevino v. Transportadora Egoba SA DE CV*,
    No. 5:22-CV-92, 2024 WL 4987174 (S.D. Tex. Sept. 30, 2024) ...................... 4

*U.S. Alliance Group, Inc. v. Cardtronics USA, Inc.*,
    645 F. Supp. 3d 554 (E.D. La. 2022) ...................................................... 7, 10

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) (en banc) .................................................. 4, 7

*Viterbo v. Dow Chemical Co.*,
    826 F.2d 420 (5th Cir. 1987) .......................................................... 8, 12, 14

## RULES

Fed. R. Civ. P. 26(a)(2) ............................................................................ 4

Fed. R. Civ. P. 26(a)(2)(B) ................................................................... 15, 16

Fed. R. Civ. P. 26(a)(2)(B)(i) ..................................................... 1, 3, 4, 14, 15

Fed. R. Evid. 401 ................................................................................. 16

Fed. R. Evid. 702 ............................................................................ passim

Fed. R. Evid. 702(a) ............................................................................... 4

Fed. R. Evid. 702(b) ............................................................................... 4

Fed. R. Evid. 702(c) ............................................................................... 4

Fed. R. Evid. 702(d) ............................................................................... 4

## A.     INTRODUCTION

The United States Trustee for Region 7 (the "U.S. Trustee") has proffered a report from lawyer Richard J. Davis, who asserts an expertise in "major investigations."[1] The U.S. Trustee offers Mr. Davis as an expert opining about the reasonableness of Jackson Walker's investigation into Ms. Freeman's relationship with former Judge David R. Jones. The Trustee's proposed reliance upon these conclusions is problematic because Mr. Davis's opinions are unreliable and lack relevance to a myriad of issues before the Court by the U.S. Trustee's amended Rule 60(b) motions. The Court should, therefore, strike Mr. Davis's opinions as the conclusions fail to provide the basis and reason for them as required by Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure. The Court should also exclude Mr. Davis's opinions, which are unreliable and irrelevant, from trial under Federal Rule of Evidence 702.

## B.     FACTUAL BACKGROUND

The U.S. Trustee commenced this litigation on November 2, 2023, filing a series of motions under Federal Rule of Civil Procedure 60(b)(6) that sought to claw back fees awarded to Jackson Walker in dozens of bankruptcy cases.[2] The U.S. Trustee commenced these motions a month after the Wall Street Journal had published an article which claimed that then sitting federal bankruptcy judge David R. Jones admitted to a relationship and sharing a home with Elizabeth

---

[1] September 30, 2024 Report of Richard J. Davis ("Davis Report" and the "Report") at p. 1, attached as Exhibit A.

[2] *See In re Westmoreland Coal Company*, Case No. 18-35672 (CML) [Dkt. No. 3360]; *In re J.C. Penney Direct Marketing Services, LLC*, Case No. 20-20184 (CML) [Dkt. No. 1236]; *In re Whiting Petroleum Corporation*, Case No. 20-32021 (CML) [Dkt. No. 1447]; *In re Neiman Marcus Group LTD, LLC*, Case No. 20-32519 (MI) [Dkt. No. 3178]; *In re Stage Stores LLC*, Case No. 20-32564 (CML) [Dkt. No. 1217]; *In re Chesapeake Energy Corporation*, Case No. 20-33233 (CML) [Dkt. No. 4515]; *In re Covia Holdings Corporation*, Case No. 20-33295 (CML) [Dkt. No. 1477]; *In re Tug Robert J. Bouchard Corporation*, Case No. 20-34758 (CML) [Dkt. No. 354]; *In re Mule Sky LLC*, Case No. 20-35561 (CML) [Dkt. No. 1000]; *In re Seadrill Partners LLC*, Case No. 20-35740 (MI) [Dkt. No. 834]; *In re Seadrill Limited*, Case No. 21- 30427 (CML) [Dkt. No. 1588]; *In re Brilliant Energy, LLC*, Case No. 21-30936 (EVR) [Dkt. No. 254]; *In re Katerra Inc.,* Case No. 21-31861 (CML) [Dkt. No. 2049]; *In re Basic Energy Services, In*c., Case No. 21-90002 (CML) [Dkt. No. 1759]; *In re Strike LLC*, Case No. 21-90054 [Dkt. No. 1471]; *In re 4E Brands Northamerica LLC*, Case No. 22-50009 (MI) [Dkt. No. 517]; *In re Sungard AS New Holdings*, Case No. 22-90018 (CML) [Dkt. No. 1026]

Freeman. Ms. Freeman was a Jackson Walker bankruptcy partner between 2018 and December 2022.

On February 29 and March 29, 2024, the U.S. Trustee filed amended and supplemental Rule 60(b) motions in the various bankruptcy cases.[3] Jackson Walker filed a Response,[4] to which the U.S. Trustee replied and Jackson Walker sur-replied, with briefing on the Rule 60(b) motions completed in August 2024. The parties proceeded with discovery from May through December 2024, during which the U.S. Trustee noticed and took more than thirty-four depositions and designated two individuals—Richard J. Davis and Jonathan Lipson—to serve as expert witnesses at trial. On September 30, 2024, the U.S. Trustee served these reports upon Jackson Walker.[5]

At the time of this motion's filing, the U.S. Trustee's amended and supplemental Rule 60(b) motions ("Amended Motions") are the operative pleadings against which Jackson Walker

---

[3] *In re Westmoreland Coal Company*, Case No. 18-35672 (MI) [Dkt. No. 3377]; *In re Jones Energy, Inc., et al.*, Case No. 19-32112 (CML) [Dkt. No. 282]; *In re McDermott International Inc.*, Case No. 20-30336 (MI) [Dkt. No. 1141]; *In re Sheridan Holding Company I, LLC, et al.*, Case No. 20-31886 (CML) [Dkt. No. 10]; *In re Whiting Petroleum, Corporation et al.*, Case No. 20-32021 (CML); [Dkt. No. 1465]; *In re Neiman Marcus Group LTD, LLC*, Case No. 20-32519 (CML) [Dkt. No. 3224]; *In re Stage Stores, Inc., et al.*, Case No. 20-32564 (CML) [Dkt. No. 1241]; *In re Energy Services Puerto Rico, LLC, et al.*, Case No. 20-32680(CML) [Dkt. No. 13]; *In re Chesapeake Energy Corporation, et al.*, Case No. 20-33239 (CML) [Dkt. No. 563]; *In re Covia Finance Company LLC, et al.*, Case No. 20-33302 (CML) [Dkt. No. 235]; *In re Volusion, LLC*, Case No. 20-50082 (MI) [Dkt. No. 337]; *In re Denbury Holdings, Inc., et al.*, Case No. 20-33801 (CML) [Dkt. No. 14]; *In re iQor Holdings, Inc.*, Case No. 20-34500 (CML) [Dkt. No. 326]; *In re J.C. Penney Direct Marketing Services, LLC, et al.*, Case No. 20-20182 (CML) [Dkt. No. 1351]; *In re Tug Robert Bouchard, Corporation, et. al.*, Case No. 20-34682 (CML) [Dkt. No. 38]; *In re Mule Sky LLC, et al.*, Case No. 20-35562 (CML) [Dkt. No. 1089]; *In re Seadrill Partners, LLC*, Case No. 20-35740 (MI) [Dkt. No. 877]; (18) *In re Seadrill Limited, et al.*, Case No. 21-30427 (CML) [Dkt. No. 1621; *In re Katerra, Inc.*, Case No. 21-31861 (CML) [Dkt. No. 2093]; *In re Seadrill Member LLC, et al.*, Case No. 22-90002 (MI) [Dkt. No. 11]; *In re Basic Energy Services, Inc., et al.*, Case No. 21-90002 (CML) [Dkt. No. 1791]; *In re Brilliant Energy, LLC*, Case No. 21-30936 (EVR) [Dkt. No. 284]; *In re Sungard AS New Holdings, LLC, et al.*, Case No. 22-90018 (CML) [Dkt. No. 1043]; *In re LaForta Gestão e Investimentos*, Case No. 22-90126 (MI) [Dkt. No. 316]; *In re Strike LLC, et al.*, Case No. 21-90054 (MI) 1540]; *In re 4E Brands North America LLC*, Case No. 22-50009 [Dkt. No. 645]; *In re Exco Services, Inc.*, Case No. 18-30155 (MI) [Dkt. No. 2538]; *In re TMW Merchants LLC., et al.*, Case No: 20-33900 (MI) [Dkt. 255]; *In re Sanchez Energy Corporation, et al.*, Case No. 19-34508 (MI) [Dkt. No. 2930]; *In re GWG Holdings, Inc., et al.*, Case No. 22-90032 (MI) [Dkt. No. 2415]; *In re Altera Infrastructure Project Services LLC, et al.*, Case No. 22-90129 (MI) [Dkt. No. 96]; *In re Auto Plus Auto Sales LLC*, Case No. 23-90055 (CML), Case No. 23-90055 (CML) [Dkt. No. 50]; *In re Honx, Inc.*, Case No. 22-90035 (MI) [Dkt. No. 1379]; *In re LaForta Gestão e Investimentos*, Case No. 22-90126 (MI) [Dkt. No. 316].

[4] *See e.g.*, *In re Strike LLC, et al.*, Case No. 21-90054 (MI) [Dkt 1603].

[5] The U.S. Trustee served a supplemental report for Mr. Davis upon Jackson Walker on January 21, 2025, *see* Exhibit B.

prepares for trial.[6] In his Amended Motions, the U.S. Trustee criticizes Jackson Walker's handling of events, including what the U.S. Trustee terms the firm's "investigation" into the relationship between former Judge Jones and Ms. Freeman.[7] The U.S. Trustee contends that Jackson Walker's inquiry into allegations about the Freeman-Jones relationship bears import for this Court's consideration of one issue, that is: whether lawyers at Jackson Walker violated Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct,[8] which speaks to a lawyer's duty of candor to the court. The U.S. Trustee asserts that under Comment 2 to Rule 3.03 there exists a "concomitant ethical duty to make a 'reasonably diligent inquiry,'"[9] and that "Jackson Walker attorneys violated this duty of reasonable diligent inquiry at several junctures."[10] Other than contending that Jackson Walker inadequately investigated matters pursuant to Rule 3.03's purported obligations, no other arguments in the Amended Motions center upon allegations of an inadequate firm investigation.

The Davis Report, unsurprisingly, adopts the posture of the U.S. Trustee: Jackson Walker did not act reasonably when investigating the allegations of a relationship between former Judge Jones and Ms. Freeman.[11] The Report's conclusions, however, lack any discussion about the basis and reasons for such opinions. Thus, these opinions fail to meet Rule 26(a)(2)(B)(i) and Rule 702.

## C.    APPLICABLE LEGAL STANDARDS

Rule 702 governs the admissibility of expert reports.[12] The party proffering the expert testimony bears the burden of establishing by a preponderance of proof the admissibility of the

---

[6] While the motions and amended motions are filed in numerous cases, the substance and arguments of the pleadings in each case are essentially identical.

[7] *In re Strike LLC, et al.*, Case No. 21-90054 (MI), Dkt. No. 1540 at ¶¶ 33, 83–92.

[8] *In re Strike LLC, et al.*, Case No. 21-90054 (MI), Dkt. No. 1540 at Section V.C.1.

[9] Amended Motions at ¶ 86.

[10] Amended Motions at ¶ 86.

[11] Compare Amended Motions at ¶¶ 86–90 with Lipson Report pp. 1–4.

[12] *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019).

testimony under Rule 702 (*e.g.*, its reliability and relevance).[13] Experts' written opinions are governed by Rule 26(a)(2) of the Federal Rules of Civil Procedure. This rule requires issuance of a written report, prepared and signed by the witness, that must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."[14]

Rule 702's recent amendment clarified and emphasized "that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements."[15] As the Advisory Committee's amendment notes explain, a court must "first find by a preponderance of the evidence that the expert's basis and methodology are sufficient."[16] If that is met, additional challenges to the expert's reliability or conclusions are considered questions of weight, left to the fact finder.[17]

Rule 702(a) and (d) speak to the relevance of an expert's reasoning or methodology, which "must be properly applied to the facts in issue."[18] "When an expert witness relies on experience to show he is qualified to testify, the witness must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience" is reliable when applied "to the facts."[19]

Factors (b) and (c) of Rule 702 speak to reliability, which requires an expert opinion "be grounded in the methods and procedures of science and be more than unsupported speculation of

---

[13] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592 n.10 (1993); Fed. R. Evid. 702 advisory committee's note to the 2000 amendment.

[14] Fed. R. Civ. P. 26(a)(2)(B)(i).

[15] *Trevino v. Transportadora Egoba SA DE CV*, No. 5:22-CV-92, 2024 WL 4987174, at *1 (S.D. Tex. Sept. 30, 2024).

[16] Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

[17] *Id*.

[18] *Id*.; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[19] *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004) (en banc).

subjective belief."[20] "Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation."[21]

In *Kumho Tire Co., Ltd. v. Carmichael,*[22] the Supreme Court extended the reliability and relevancy requirements of Rule 702 to all expert witness testimony. The *Kumho* decision clarified that the trial court has latitude in deciding how to test an expert's reliability—especially when an expert's opinion does not hinge on scientific or technical knowledge.[23] The trial court may determine "whether or when special briefing or other proceedings are needed to investigate reliability," as the trial court "decides *whether* that expert's relevant testimony is reliable."[24]

"A court may [also] conclude that there is simply too great an analytical gap between the data and the opinion proffered" and exclude the expert's opinions.[25] "Neither '*Daubert* [n]or the Federal Rules of Evidence require[ ] a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."[26] Experts may not simply offer conclusory opinions or provide conclusions that are "in essence an apples and oranges comparison."[27]

Since the Court's issuance of *Daubert* and *Kumho*, federal courts have repeatedly noted that the party proffering an expert must demonstrate—by a preponderance of the evidence—how the expert's conclusions are reliable and relevant. "The overarching goal of *Daubert*'s gatekeeping requirement, however, is to ensure the reliability and relevancy of expert testimony and to make

---

[20] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (cleaned up).

[21] *Copley v. Smith & Nephew Inc.*, No. Civ. A.H.-97-2910, 2000 WL 223404, *3 (S.D. Tex. Feb. 2, 2000) (citing *Daubert*, 509 U.S. at 590).

[22] 526 U.S. 137 (1999).

[23] *Kumho*, 526 U.S. at 152.

[24] *Id*. (emphasis in original).

[25] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997).

[26] *Abdelsayed v. New York Univ.,* No. 17-CV-9606, 2023 WL 4705999 at *7 (S.D.N.Y. July 24, 2023) (cleaned up).

[27] *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[28] Neither standard is met with the Davis Report.

## D.    ANALYSIS

The opinions proffered in the Davis Report, based solely upon Mr. Davis's work experience, should be excluded because the conclusions lack any indicia of reliability. The broad opinions offered by Mr. Davis are unreliable because they:

- Provide no explanation of how Mr. Davis's past investigative practice leads to the conclusions reached;[29]

- Lack a substantive discussion of how Mr. Davis's past work experience, which is ambiguously detailed, is reliable when applied to these facts;

- Contain no details on past investigative methodology relied upon by Mr. Davis to reach his opinions;

- Do not reference or detail how the specific methodology he recommends is "reliable;" and,

- Do not demonstrate that his proposed methodology is relied upon or used by investigators elsewhere.

Additionally, the conclusions are relevant to only one argument in the Amended Motions and even then, they rest upon the unsupported contention that an unreasonable investigation contributed to a purported rule breach. Even if this had occurred (which Jackson Walker disputes), the violation of a disciplinary rule is not grounds for vacatur of a final order or judgment under Rule 60(b),[30] which further emphasizes the irrelevance of Mr. Davis's conclusions.

---

[28] *The Cadle Co. v. Sweet & Brousseau, P.C.*, No. Civ. A. 3:97-CV-298-L, 2006 WL 435229 (N.D. Tex. Feb. 23, 2006) (citing *Kumho*, 526 U.S. at 152).

[29] There is one exception: Mr. Davis explains in a footnote that on one occasion he conducted interviews while collecting documents during an investigation as an "Examiner in the Caesars bankruptcy." Davis Report at p. 2 n. 1.

[30] The U.S. Trustee has not cited to a single case showing that a final judgment or order can be vacated for an attorney's alleged violation of a disciplinary rule, and Jackson Walker has not been able to locate any such case. Rather, vacatur under Rule 60(b) requires the U.S. Trustee to make a "substantial" showing that extraordinary circumstances exist

1. **The Davis Report lacks any indicia of reliability as the opinions are not based on any apparent methodology or specified work experienc**e.

When an expert witness relies solely or primarily on experience to show he is qualified to testify, "then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinions, and how that experience is reliably applied to the facts.' The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"[31] Yet, that is what the U.S. Trustee asks this Court to do with Mr. Davis's opinions.

   a. **The Davis Report is unreliable because the opinions provide no detail about Mr. Davis's past work and how such work influences or relates to opinions provided.**

Mr. Davis's opinions about the "reasonable steps" Jackson Walker "should have taken" should be excluded from trial. This is because Mr. Davis provides no explanation of how his work experience leads to his conclusions, why that experience suffices as the sole basis for his opinions, or how such experience is reliable as applied to the facts of this case. Mr. Davis's conclusions do not and cannot meet Rule 702's standard for reliability as there is an insufficient nexus between Mr. Davis's vaguely described experience and training and the opinions he offers.

"It is well settled that expert reports that are 'nothing more than bare conclusions' are inadmissible because they offer no value to the trier of fact."[32] Courts "routinely exclude expert testimony where the expert 'offers little more than personal assurances based on his [professional] experience'" instead of providing factual support and a reliable methodology for conclusions.[33]

---

such that the challenged orders would create a manifest injustice if not vacated. *See Batts v. Tow-Motor Forklift Co.*, 66 F.3d 742, 749 (5th Cir. 1995).

[31] *United States v. Frazier*, 387 F.3d 1244, 1261 (quoting Committee Note to the 2000 Amendments of Rule 702) (emphasis in original).

[32] *U.S. Alliance Group, Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 561 (E.D. La. 2022) (quoting *Slaughter v. Southern Tacl. Co.*, 919 F.2d 304, 307 (5th Cir. 1990)).

[33] *Cardtronics USA*, 645 F. Supp. 3d at 561 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)).

"Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."[34]

Mr. Davis's opinions rest solely upon his past work experience. The Davis Report cites to no articles or outside sources for the basis of Mr. Davis's opinion. Mr. Davis's CV includes no indicia of specialized training or certifications in investigations or workplace inquiries.[35] Mr. Davis belongs to no professional associations relating to investigative work. The Davis Report also does not identify or state a reliance upon theories, techniques, or methodologies other than his own (which he does not describe).

Mr. Davis's general description of his work history is insufficient to meet the U.S. Trustee's burden of proof for proffering an expert's conclusions. As provided for in the Report, Mr. Davis's work history includes experience as a federal prosecutor; serving as an Assistant Secretary of the United States Treasury (enforcement and operations); and, maintaining a legal practice at Weil, Gotshal & Manges LLP ("Weil"). The 30+ years of legal practice with Weil included representation of companies, corporate officers, and individuals in a variety of unspecified investigations.[36] As of 2012, Mr. Davis has maintained a solo legal practice in which he has served in various roles (several court appointed) in bankruptcy proceedings.[37] He does not specify in which cases, other than one, he received court appointments.

The Report lacks any information about the purpose, outcome, or means of past investigations in government or private practice. Mr. Davis writes that he performed investigations

---

[34] *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

[35] *Id*. at Exhibit A.

[36] Davis Report at Exhibit A.

[37] *Id*.

"on behalf of corporations or their Boards of Directors, a not-for-profit entity and a law firm."[38] Mr. Davis states that he has also served as a court appointed "Trustee and Examiner in bankruptcies" where he organized investigations. Neither Mr. Davis's report nor his CV lists these appointments, except for stating that he served as the examiner "in the bankruptcy of the Caesars Entertainment Operating Corporation."[39] The Davis Report does not include <u>any</u> detail about Mr. Davis's specific methodologies or practices in investigations other than mentioning one in the Caesars investigation: interviewing "key" individuals while collecting documents.[40] Nor does the report reference any publicly available investigative references such as handbooks or manuals by the Department of Justice or the United States Department of the Treasury that Mr. Davis may have read.

Mr. Davis has no prior experience serving as an expert witness on investigations. His sole experience as an expert witness includes testifying before the Judiciary Committee for the United States House of Representatives on behalf of President Clinton regarding prosecution standards. Nor has he written about investigations. His past published opinion pieces center on discussing police-citizen relations or discuss American and international political issues (*e.g.*, should Joe Biden have dropped out of the 2024 presidential race).[41]

The Report's lone reference to specific past work experience occurs when Mr. Davis offers opinions that an initial "reasonable step" for Jackson Walker to take "was to conduct detailed interviews of" Ms. Freeman.[42] Mr. Davis does not detail the scope of such interviews or the period

---

[38] *Id.* at p. 1.

[39] Davis Report and Exhibit A.

[40] Davis Report at p.2 n1.

[41] Davis Report at Exhibit C.

[42] Davis Report at p. 2.

in which Jackson Walker should have conducted such interviews. Instead, Mr. Davis opines that Jackson Walker could have interviewed Ms. Freeman before collecting documents, something he did as the court appointed examiner in the "Caesars Entertainment Operating Company, Inc." bankruptcy.[43] "The goal" of this conduct in the Caesars case "was to help identify and structure the investigation."[44] Mr. Davis offers no other specifics about his past methodology or practices.

Courts "routinely exclude expert testimony where the expert 'offers little more than personal assurances based on his [professional] experience that his conclusions are so.'"[45] That should be done here. Mr. Davis's vaguely detailed work experience offers the fact finder nothing more than personal assurances about Mr. Davis's past experience and how it relates to issues in this case.

> **b.      The Davis Report is unreliable because it offers no specifics about Mr. Davis's specialized knowledge, skill, or training.**

Similarly, the Davis Report's ambiguous description of past investigative work fails to establish that Mr. Davis has the specialized knowledge, skill, experience, or training to assist the trier of fact deciding the issues applicable to the U.S. Trustee's Rule 3.03 argument.

Other than generalized descriptions of past investigative work (*e.g.*, "conducting major investigations" on behalf of "corporations of their Boards of Directors, a not-for-profit entity and a law firm"), the Davis Report provides no specifics about the investigations engaged in by Mr. Davis. Did any investigations involve workplace conduct? How about a partner lying to fellow law partners about her personal life? We are left guessing.

---

[43] Davis Report at p. 2 n. 1.

[44] David Report at p.2 n. 1.

[45] *United States Alliance Group, Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 561 (E.D. La. 2022) (quoting *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)).

The Davis Report also lacks any discussion about the specifics of Mr. Davis's past investigative work or how such work correlates with the facts of this case. The Court has no clue about the scope, detail, or breadth of the investigative work (if any) involved in Mr. Davis's court appointments as a trustee and examiner. This is because the Report (and Mr. Davis's CV) lack specifics about such work.

Federal courts have excluded an expert witness's testimony when the expert's proponent had failed to provide evidence showing the expert has "sufficient specialized knowledge" to assist the trier of fact with applicable issues.[46] That result should occur here.

For example, in *Cadle Co*., the plaintiff proffered a lawyer and former Texas state court judge, James P. Wallace, as an expert in "legal malpractice."[47] Wallace had provided a two-page opinion concluding that the defendant law firm was "negligent and thus guilty" of malpractice.[48] Defendants moved to exclude Wallace's opinions on several grounds, including lack of qualification in the malpractice asserted and an unreliable opinion. The Court asked plaintiffs to provide specific detail about Wallace's background and experience with malpractice cases involving similar issues (*e.g.*, did Wallce have experience "with lawyers in his courtroom requesting that he take judicial notice of the court's file").[49] Plaintiff responded with deposition testimony which offered generic statements about Wallace's work as a malpractice expert.[50] The

---

[46] *The Cadle Co. v. Sweet & Brousseau, P.C.*, No. Civ. A. 3:97-CV-298-L, 2006 WL 435229, *3–*4 (N.D. Tex. Feb. 23, 2006).

[47] *Id*. at *1.

[48] *Id*.

[49] *Id*. at *4.

[50] "The most salient evidence Cadle provided is . . . set forth below:

> Q: Okay. Would it be fair to say that currently-is all your work now with Soules & Wallace expert witness work?
>
> A: The vast majority of it is, yes.
>
> Q: Okay. And it's been that way for the last several years?

Court found this response did not satisfy Rule 702's requirement for specific knowledge applicable "to this case" and excluded Wallace's testimony.[51]

The same holds true for Mr. Davis. The Report and his CV offer few particulars about his investigative work outside of an example: his collection of documents while conducting interviews in the "Caesars bankruptcy" case. The opinions offer no details about how Mr. Davis's ambiguous experiences link to the issues and facts of this matter. Mr. Davis's opinions are fundamentally unsupported by any specific knowledge or training and should be excluded because they "offer[ ] no expert assistance to the [fact finder]."[52]

> c.    **The Davis Report's conclusions are unsupported by an explanation of Mr. Davis's methodology and reasoning; thus, they are inadmissible because they lack any value for the trier of fact.**

The Fifth Circuit has held that an expert's analysis based on insufficient information is unreliable.[53] At its core, this legal rule means that "'[a] claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness.'"[54] A district court is not required to admit opinion evidence connected to existing data solely by the say so of the expert.[55] This is because "nothing more than bare conclusions" provide no value to the trier of fact.[56]

---

A: Last six, eight years, yeah, probably.

...

Q: ... [what] kinds of cases do you give expert opinion?

A: More legal malpractice than anything else, but-that's the biggest majority."

*Id*. at *3.

[51] *Id*. at *3.

[52] *Viterbo v. Dow Chem. Co.*, 827 F.2d 420, 422 (5th Cir. 1987).

[53] *Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 388 (5th Cir. 2009).

[54] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Archer v. Arren*, 118 S.W.3d 779, 782 (Tex. App.—Amarillo 2003)).

[55] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[56] *Slaughter v. Southern Talc. Co.*, 919 F.2d 304, 307 (5th Cir. 1990).

Mr. Davis's opinions rest upon nothing other than bare conclusions, which means under Fifth Circuit standards they must be excluded. For example, consider Mr. Davis's analysis about Jackson Walker's conduct after the firm had received the March 2021 anonymous letter, and Ms. Freeman had admitted that she and former Judge Jones had engaged in a past romantic relationship. The Report opines:

> I understand that there is a desire to simply believe a partner and not go further. Here, however, taking this approach in my opinion was not reasonable. First, on hearing in a relatively brief telephone conversation in March 2021 that she acknowledged a past romantic relationship with Judge Jones the firm believed she had misled them on an important issue when she was hired. . . This itself made simply accepting her version of the facts without further inquiry unreasonable.

The Report provides no details on how Mr. Davis's experience leads to this conclusion nor why such vaguely described experience is a sufficient basis (alone) for the opinion. Nor do we know how his experience or methodology, if Mr. Davis has one, is reliable when applied to the facts of this case. Similarly, the Report is devoid of a discussion about standard methodology in the investigative field that supports the conclusion.[57] These errors are repeated multiple times.[58] Mr. Davis provides negligible information about his court appointed work (other than a few details about the Caesars case) or the scope of his investigative experience in private practice or with the government. Nor does the Davis Report mention how such past experience ties into his conclusions.

---

[57] *Skidmore v. Precisions Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (district court properly admitted testimony of psychiatrist who diagnosed plaintiff because psychiatrist "testified to his experience, to the criteria by which he diagnosed [plaintiff] and to the standard methods of diagnosis in his field.").

[58] *See* Davis Report at pp. 3–5.

These opinions violate the Fifth Circuit's standard holding that "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."[59] As *Daubert* noted, reliability and validity of an expert's opinions do not require certainty, but they must demonstrate with evidence or specifics that the knowledge proffered is more than mere speculation.[60] But the Davis Report lacks substantive information concerning the principles and information that shaped it. This alone serves as a sound legal basis to deem Mr. Davis's opinions unreliable.[61] Admitting his opinions, which are connected to the facts of this case solely by the *ipse dixit* of Mr. Davis, is unpermitted by Rule 702 or *Daubert*.[62] Mr. Davis should not be permitted to testify about the conclusions within the Report.

2. **The Davis Report should be struck as it lacks any discussion of Mr. Davis's basis for his opinions and thus fails to meet requirements in Rule 26(a)(2)(B)(i).**

An expert's report under Rule 26 requires:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii) the facts or data considered by the witness in forming them;

> (iii) any exhibits that will be used to summarize or support them;

> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and,

---

[59] *Viterbo v. Dow Chem. Co.*, 827 F.2d 420, 424 (5th Cir. 1987).

[60] *Copley v. Smith & Nephew Inc.*, No. Civ. A.H.-97-2910, 2000 WL 223404, *3 (S.D. Tex. Feb. 2, 2000) (citing to *Daubert*, 509 U.S. at 590).

[61] *Cadle Co.*, 2006 WL 435229 at *4–*5.

[62] *PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577 (KMK), 2023 WL 2973038, at *18 (S.D.N.Y. Mar. 28, 2023) (quoting *Nimely v. City of New York*, 414 F.3d 381, 394 (2d Cir. 2005)).

(vi) a statement of the compensation to be paid for the study and testimony in the case.[63]

The Davis Report puts at issue the requirement of Rule 26(a)(2)(B)(i). A reader of the Davis Report knows Mr. Davis's conclusions: Jackson Walker acted unreasonably. Yet, the reasons for the conclusions are unexplained. An example from the Report:

> In determining how to approach an internal investigation two important factors are the seriousness of the allegations and the potential consequences for the organization should they be true in terms of legal obligations, potential liability or reputational harm. In developing the appropriate response to the allegations it thus is vital that there be a complete understanding of the actual facts. A misunderstanding of what occurred risks increasing the long-term legal and reputational exposure of the entity.
> . . .
> Moreover, even apart from any romantic relationship it was also important to understand the full relationship between the partner and the Judge so the firm could determine whether those relationships themselves created any legal obligations. In analyzing their obligations as well as the requirements of the Bankruptcy Code and Rules.[64]

The Report provides no basis or reasons for these assertions. The Report is solely based upon Mr. Davis's supposed professional experience and discovery he reviewed. The reader must guess why or how Mr. Davis forms such conclusions. This presumption is repeated throughout the Report.

In particular, the opinions proffered toward the end of the report assert sweeping conclusions that lack any discussion of the reason (or basis) for the conclusions. An example: "Also, as discussed above in these circumstances it is not unusual for the person being interviewed to either lie or minimize the facts in order to avoid possible repercussions. This is particularly true

---

[63] Fed. R. Civ. P. 26(a)(2)(B).

[64] Davis Report at pp. 1-2.

where the allegation involves intimate details about their personal life."[65] That conclusion is proffered with no citation to discovery material, no reference to Mr. Davis's specific past work, and no discussion of the reason for reaching this conclusion other than Mr. Davis's say so. Opinions such as these do not meet the requirements of Rule 26(a)(2)(B) and should be struck.

3.   **If not excluded, the Davis Report's conclusions about Jackson Walker lack relevance for the vast majority of the arguments asserted by the U.S. Trustee and should only be considered in connection with a limited portion of one argument.**

*Daubert* requires that for a trial court's evaluation of expert testimony admissibility, key considerations are reliability and relevance of the proffered opinions.[66] The relevancy requirement ensures that the expert testimony will actually "assist the trier of fact to understand the evidence or to determine a fact in issue."[67] Federal Rule of Evidence 401 defines relevant evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

If the U.S. Trustee proves beyond a preponderance of the evidence that the Davis Report's conclusions are reliable (which they are not), the opinions could only bear relevance to one issue in the case.

The Amended Motions asserts a number of arguments why the law and evidence allow for this Court to vacate its prior orders and/or sanction Jackson Walker or disgorge previously earned fees.[68] Only one argument—that Jackson Walker's lawyers violated Rule 3.03 and thus disobeyed Southern District of Texas Local Rule 6—references, discusses, or hinges upon the assertion that Jackson Walker performed an inadequate investigation. No other argument discusses how a

---

[65] Davis Report at p.5.

[66] 509 U.S. at 589.

[67] *Id*.

[68] *See* Dkt. No. 1540 at Sections IV.A – IV.G.

purportedly flawed investigation violated bankruptcy rules, the bankruptcy code, or ethical rules. Thus, Mr. Davis's opinions as to "reasonable" investigations are only arguably relevant to the Amended Motions' arguments about Rule 3.03. Furthermore, such opinions would only be relevant to that argument if the Court determines that the Trustee's assertions about alleged Rule 3.03 violations had any bearing or relevance to the Court's consideration of whether vacatur, sanctions, or disgorgement are appropriate remedies to the Amended Motions. If, and only if, this Court determines the Davis Report proffers reliable opinions, then they are relevant to only one argument made by the U.S. Trustee.

### E.    CONCLUSION

The U.S. Trustee has proffered the Davis Report, which rests on generic descriptions of Mr. Davis's past investigative work (or what he learned from such work). The Report lacks any indicia of methodology, principles, or training and experience that shaped or influenced his conclusions. This means Mr. Davis lacks the specific knowledge or expertise required by Rule 702 to aid the fact finder in the issues applicable to this case. Similarly, his report is unreliable under Rule 702's standards because the Court has no indication of how his past work experience—the only basis for his conclusions—impacted his methodology, the principles espoused, or the opinions offered. The report is also irrelevant to nearly all the issues asserted by the Amended Motion and should be excluded from consideration of those matters.

Jackson Walker requests that this Court strike the report of Mr. Davis and/or exclude the opinions and testimony of Mr. Davis from trial.

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

Jason L. Boland (SBT 24040542)
William R. Greendyke (SBT 08390450)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Email: jason.boland@nortonrosefulbright.com
Email:
william.greendyke@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

-and-

Paul Trahan (SBT 24003075)
Emily D. Wolf (SBT 24106595)
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
Fax: (512) 536-4598
Email: paul.trahan@nortonrosefulbright.com
Email: emily.wolf@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

**RUSTY HARDIN & ASSOCIATES, LLP**

 */s/ Russell Hardin, Jr.*
Russell Hardin, Jr. (SBT 08972800)
Leah M. Graham (SBT 24073454)
Jennifer E. Brevorka (SBT 24082727)
Emily Smith (SBT 24083876)
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas  77010
Telephone: (713) 652-9000
Email: rhardin@rustyhardin.com
Email: lgraham@rustyhardin.com
Email: jbrevorka@rustyhardin.com
Email: esmith@rustyhardin.com

*Co-Counsel for Jackson Walker LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2025, I caused a copy of the Motion to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and by email to counsel for the U.S. Trustee as set forth below:

Laura Steele (Laura.Steele@usdoj.gov)

Millie Aponte Sall (Millie.sall@usdoj.gov)

Vianey Garza (Vianey.Garza@usdoj.gov)

Alicia Barcomb (Alicia.Barcomb@usdoj.gov)

*/s/ Jennifer E. Brevorka*
Jennifer E. Brevorka