## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Professional Fee Matters Concerning the | § | Case No. 23-00645 (EVR) |
| Jackson Walker Law Firm | § | |
| | § | |
| | § | |

## JACKSON WALKER LLP'S MOTION TO EXCLUDE
## THE OPINIONS AND TESTIMONY OF JONATHAN C. LIPSON

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

## <u>TABLE OF CONTENTS</u>

CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 1

III.    APPLICABLE LEGAL STANDARDS ........................................................... 5

IV.     LEGAL ANALYSIS ........................................................................................... 7

        A.      The Lipson Report's conclusions should be excluded because is analysis
                involves legal questions reserved for the Court's determination. .......................... 8

        B.      Mr. Lipson's conclusions about Jackson Walker's purported ethics
                violations are unreliable because Mr. Lipson has no specialized skill,
                knowledge, training, or experience with ethics law or the Texas Disciplinary
                Rules of Professional Conduct. .......................................................................... 11

V.      CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

CASES

*Askanase v. Fatjo*,
  130 F.3d 657 (5th Cir. 1997) ..................................................... 8

*Christophersen v. Allied-Signal Corp.*,
  939 F.2d 1106 (5th Cir. 1991) ................................................. 10, 13

*Copley v. Smith & Nephew Inc.*,
  No. Civ. A.H.-97-2910, 2000 WL 223404 (S.D. Tex. Feb. 2, 2000) ........................... 6, 10, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................ 1, 5, 6

*Fisher v. Halliburton*,
  No. H05–1731, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) ................................ 8

*Floyd v. Hefner*,
  556 F. Supp. 2d 617 (S.D. Tex. 2008) ....................................... 8, 13, 14, 15

*Guile v. United States*,
  422 F.3d 221 (5th Cir. 2005) .................................................. 7, 11

*Johnson v. Arkema, Inc.*,
  685 F.3d 452 (5th Cir. 2012) (cleaned up) ............................... 6

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) .................................................... 1, 6, 10, 11

*Little v. Tech. Spec. Prods., Inc.*,
  940 F. Supp. 2d 460 (E.D. Tex. 2013) .................................... 8, 9

*Orthopedic & Sports Injury Clinic v. Wang Labs, Inc.*,
  922 F.2d 220 (5th Cir. 1992) .................................................. 7, 10

*Owen v. Kerr-McGee Corp.*,
  698 F.2d 236 (5th Cir. 1983) ............................................. 7, 8, 9

*Poole-Ward v. Affiliates for Women's Health, P.A.*,
  329 F.R.D. 156 (S.D. Tex. 2018) ............................................. 4

*Puga v. RCX Sols., Inc.*,
  922 F.3d 285 (5th Cir. 2019) ................................................. 5

*Renfroe v. Parker*,
  974 F.3d 594 (5th Cir. 2020) ........................................... 7, 8, 10

*Salas v. Carpenter*,
    980 F.2d 299 (5th Cir. 1992) ........................................................................ 8

*Tanner v. Westbrook*,
    174 F.3d 542 (5th Cir. 1999) ...................................................................... 10

*The Cadle Co. v. Sweet & Brousseau, P.C.*,
    No. Civ. A.. 3:97-CV-298-L (N.D. Tex. Feb. 23, 2006) ........................ 6, 10, 12, 13

*Trevino v. Transportadora Egoba SA DE CV*,
    2024 WL 4987174 (S.D. Tex. 2024) (Slip Copy) ....................................... 5

*U.S. Alliance Group, Inc. v. Cardtronics USA, Inc.*,
    645 F. Supp. 3d 554 (E.D. La. 2022) ................................................... 8, 16

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) (en banc) ................................................. 5

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ............................................................ 1, 7, 11

*Wilson v. Woods*,
    163 F.3d 935 (5th Cir. 1999) ............................................................ 11, 15

## STATUTES

11 U.S.C. § 327 ............................................................................................. 4
11 U.S.C. § 328 ............................................................................................. 4
11 U.S.C. § 330 ............................................................................................. 4

## OTHER AUTHORITIES

16 GEO. J. LEGAL ETHICS 203 (Fall 2002) ................................................. 11

## RULES

Fed. R. Bank. P. 2014 .......................................................................... 3, 4, 9, 10
Fed. R. Evid. 702 .................................................................................. passim
Fed. R. Evid. 702(a) ...................................................................................... 5
Fed. R. Evid. 702(d) ...................................................................................... 5
Fed. R. of Civ. P. 60(b)(6) ........................................................................... 1
Tex. Disciplinary R. Prof. Conduct ...................................................... 7, 11, 13
Tex. Disciplinary R. Prof. Conduct, Preamble ¶¶ 1-16 ("A Lawyer's Responsibilities") ............ 11

## JACKSON WALKER LLP'S MOTION TO EXCLUDE
## THE OPINIONS AND TESTIMONY OF JONATHAN C. LIPSON [1]

## I.  INTRODUCTION

The United States Trustee for Region 7 (the "U.S. Trustee") proffers a report from lawyer Jonathan C. Lipson, who is also a tenured bankruptcy law professor at Temple University-Beasley School of Law. Mr. Lipson purports to provide expert opinions on "certain disclosure and ethical obligations" of Jackson Walker LLP "as they pertain to the intimate relationship" between Elizabeth Freeman and former Judge David Jones.[2] Such conclusions infringe upon the province of the Court by analyzing the law and offering legal conclusions about bankruptcy disclosure rules and the Bankruptcy Code. The conclusions offered are "no more than" the U.S. Trustee's arguments "dressed up and sanctified as the opinion of an expert," which is unpermitted.[3] Additionally, Mr. Lipson lacks sufficient training, knowledge, experience, or skill to offer opinions about Texas ethics requirements. For these reasons, Mr. Lipson's report should be stricken, and the opinions offered should be excluded from trial as they fail to meet Federal Rule of Evidence 702 and the legal standards for experts espoused by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*[4] and *Kumho Tire Co., Ltd. v. Carmichael.*[5]

## II.  FACTUAL BACKGROUND

The Trustee commenced this litigation on November 2, 2023, filing a series of motions under Federal Rule of Civil Procedure 60(b)(6) ("Rule 60(b)") that sought to claw back fees and expenses awarded to Jackson Walker in at least seventeen bankruptcy cases pending between 2018

---

[1] This motion solely focuses on Mr. Lipson's September 30, 2024 report. Jackson Walker is concurrently filing its Motion to Strike the Supplemental Report of Jonathan C. Lipson dated January 27, 2025.

[2] September 30, 2024 Report of Jonathan C. Lipson ("Lipson Report" and the "Report") at p. 1, attached as Exhibit A.

[3] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

[4] 509 U.S. 579 (1993).

[5] 526 U.S. 137 (1999).

and 2023.[6] The U.S. Trustee filed his motions after the Wall Street Journal published an article claiming that then sitting federal bankruptcy judge David Jones had admitted to a relationship and sharing a home with Elizabeth Freeman. Ms. Freeman was a partner at Jackson Walker between 2018 and 2022.

On February 29 and March 29, 2024, the U.S. Trustee filed amended and supplemental Rule 60(b) motions (the "Amended Motions") in various bankruptcy cases, totaling thirty-one Rule

---

[6] *See In re Westmoreland Coal Company*, Case No. 18-35672 (CML) [Dkt. No. 3360]; *In re J.C. Penney Direct Marketing Services, LLC*, Case No. 20-20184 (CML) [Dkt. No. 1236]; *In re Whiting Petroleum Corporation*, Case No. 20-32021 (CML) [Dkt. No. 1447]; *In re Neiman Marcus Group LTD, LLC*, Case No. 20-32519 (MI) [Dkt. No. 3178]; *In re Stage Stores LLC*, Case No. 20-32564 (CML) [Dkt. No. 1217]; *In re Chesapeake Energy Corporation*, Case No. 20-33233 (CML) [Dkt. No. 4515]; *In re Covia Holdings Corporation*, Case No. 20-33295 (CML) [Dkt. No. 1477]; *In re Tug Robert J. Bouchard Corporation*, Case No. 20-34758 (CML) [Dkt. No. 354]; *In re Mule Sky LLC*, Case No. 20-35561 (CML) [Dkt. No. 1000]; *In re Seadrill Partners LLC*, Case No. 20-35740 (MI) [Dkt. No. 834]; *In re Seadrill Limited*, Case No. 21- 30427 (CML) [Dkt. No. 1588]; *In re Brilliant Energy, LLC*, Case No. 21-30936 (EVR) [Dkt. No. 254]; *In re Katerra Inc.,* Case No. 21-31861 (CML) [Dkt. No. 2049]; *In re Basic Energy Services, In*c., Case No. 21-90002 (CML) [Dkt. No. 1759]; *In re Strike LLC*, Case No. 21-90054 (MI) [Dkt. No. 1471]; *In re 4E Brands Northamerica LLC*, Case No. 22-50009 (MI) [Dkt. No. 517]; *In re Sungard AS New Holdings*, Case No. 22-90018 (CML) [Dkt. No. 1026].

60(b) motions.[7] Jackson Walker filed a response,[8] followed by the U.S. Trustee's reply and Jackson Walker's sur-reply. Briefing was completed in August 2024. The parties proceeded with discovery from May through December 2024, during which the U.S. Trustee noticed and took more than thirty-four depositions and designated two individuals—Richard J. Davis and Jonathan Lipson—to serve as expert witnesses at trial. On September 30, 2024, the U.S. Trustee served their reports upon Jackson Walker.

At the time of this motion's filing, the U.S. Trustee's Amended Motions are the operative pleading against which Jackson Walker prepares for trial.

The Lipson Report states that Mr. Lipson's

> task is to assess what obligations, if any, JW had to disclose the existence and nature of the Relationship under section 327 of the United States Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2014, and other applicable authorities incorporated

---

[7] *In re Westmoreland Coal Company*, Case No. 18-35672 (MI) [Dkt. No. 3377]; *In re Jones Energy, Inc., et al.*, Case No. 19-32112 (CML) [Dkt. No. 282]; *In re McDermott International Inc.*, Case No. 20-30336 (MI) [Dkt. No. 1141]; *In re Sheridan Holding Company I, LLC, et al.*, Case No. 20-31886 (CML) [Dkt. No. 10]; *In re Whiting Petroleum, Corporation et al.*, Case No. 20-32021 (CML); [Dkt. No. 1465]; *In re Neiman Marcus Group LTD, LLC*, Case No. 20-32519 (CML) [Dkt. No. 3224]; *In re Stage Stores, Inc., et al.*, Case No. 20-32564 (CML) [Dkt. No. 1241]; *In re Energy Services Puerto Rico, LLC, et al.*, Case No. 20-32680(CML) [Dkt. No. 13]; *In re Chesapeake Energy Corporation, et al.*, Case No. 20-33239 (CML) [Dkt. No. 563]; *In re Covia Finance Company LLC, et al.*, Case No. 20-33302 (CML) [Dkt. No. 235]; *In re Volusion, LLC*, Case No. 20-50082 (MI) [Dkt. No. 337]; *In re Denbury Holdings, Inc., et al.*, Case No. 20-33801 (CML) [Dkt. No. 14]; *In re iQor Holdings, Inc.*, Case No. 20-34500 (CML) [Dkt. No. 326]; *In re J.C. Penney Direct Marketing Services, LLC, et al.*, Case No. 20-20182 (CML) [Dkt. No. 1351]; *In re Tug Robert Bouchard, Corporation, et al.*, Case No. 20-34682 (CML) [Dkt. No. 38]; *In re Mule Sky LLC, et al.*, Case No. 20-35562 (CML) [Dkt. No. 1089]; *In re Seadrill Partners, LLC*, Case No. 20-35740 (MI) [Dkt. No. 877]; (18) *In re Seadrill Limited, et al.*, Case No. 21-30427 (CML) [Dkt. No. 1621]; *In re Katerra, Inc.*, Case No. 21-31861 (CML) [Dkt. No. 2093]; *In re Seadrill Member LLC, et al.*, Case No. 22-90002 (MI) [Dkt. No. 11]; *In re Basic Energy Services, Inc., et al.*, Case No. 21-90002 (CML) [Dkt. No. 1791]; *In re Brilliant Energy, LLC*, Case No. 21-30936 (EVR) [Dkt. No. 284]; *In re Sungard AS New Holdings, LLC, et al.*, Case No. 22-90018 (CML) [Dkt. No. 1043]; *In re LaForta Gestão e Investimentos*, Case No. 22-90126 (MI) [Dkt. No. 316]; *In re Strike LLC, et al.*, Case No. 21-90054 (MI) 1540]; *In re 4E Brands North America LLC*, Case No. 22-50009 [Dkt. No. 645]; *In re Exco Services, Inc.*, Case No. 18-30155 (MI) [Dkt. No. 2538]; *In re TMW Merchants LLC., et al.*, Case No: 20-33900 (MI) [Dkt. No. 255]; *In re Sanchez Energy Corporation, et al.*, Case No. 19-34508 (MI) [Dkt. No. 2930]; *In re GWG Holdings, Inc., et al.*, Case No. 22-90032 (MI) [Dkt. No. 2415]; *In re Altera Infrastructure Project Services LLC, et al.*, Case No. 22-90129 (MI) [Dkt. No. 96]; *In re Auto Plus Auto Sales LLC*, Case No. 23-90055 (CML) [Dkt. No. 50]; *In re Honx, Inc.*, Case No. 22-90035 (MI) [Dkt. No. 1379]; *In re LaForta Gestão e Investimentos*, Case No. 22-90126 (MI) [Dkt. No. 316].

[8] *See e.g., In re Strike LLC, et al.*, Case No. 21-90054 (MI) [Dkt. No. 1603].

therein, including rules and standards of professional responsibility as they may pertain to JW in the bankruptcy context.[9]

The Lipson Report's conclusions mirror the Amended Motions' assertions about Jackson Walker's purported violations of sections 11 U.S.C. §§ 327, 328, 330, and Fed. R. Bank. P. 2014.[10] The Amended Motions contend both laws and legal rules support the U.S. Trustee's assertion that Jackson Walker did not abide by bankruptcy laws or rules, and as a result, fees earned and expenses paid should be disgorged and the firm should be sanctioned. The Lipson Report echoes this posture.   The Report offers the law professor's interpretation and application of various Bankruptcy Code provisions and Bankruptcy Rules (*e.g.*, Rule 2014 and 11 U.S.C. § 327), Texas partnership law, and Texas ethics rules to the facts of these proceedings.

In addition to these legal conclusions, the Lipson Report includes a lengthy narrative in which Mr. Lipson offers his interpretation of events based upon his reading of pleadings and largely one-sided deposition transcripts (on which Mr. Lipson makes his own credibility assessments).[11] The transcripts are one-sided as Jackson Walker reserved its questions for trial.[12]

The Lipson Report ends as it began: Mr. Lipson interpretating the law. Mr. Lipson accuses Jackson Walker of "ignoring" and "concealing" the relationship, which he contends violated Bankruptcy Rule 2014.[13] Mr. Lipson then intertwines his closing legal analysis with additional

---

[9] Lipson Report at p. 3.

[10] *In re Strike LLC, et al.*, Case No. 21-90054 (MI), Dkt. No. 1540 at IV.B.

[11] *Id*. at Section III. Generally, an expert may not opine on another witness's credibility because this testimony does not help the trier of fact, who can make its own credibility determinations. Accordingly, courts often preclude experts from testifying that a certain witness is or is not believable. *See, e.g., Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156, 168-169 (S.D. Tex. 2018) ("Dr. Nace's statement that 'there have been no credible reports or any indications of subsequent substance misuse, abuse or dependence based upon my review of multiple independent sources of information' . . . is stricken, because it opines as to the credibility of the medical staff who saw Dr. Poole-Ward on May 21.").

[12] *See e.g.*, Argeroplos Depo. 63:9-11 [Reserve]; Cowlishaw Depo. 190:14-15 [Reserve]; Cooper Depo. 166:22-23 [Reserve]; Peguero Depo. 80:14-15 [Reserve] (Excerpts included in Exhibit B).

[13] *Id*. at 31. ("JW had a duty to amend its 2014 disclosures.").

interpretation of ethical obligations for the firm and accuses Jackson Walker of concealing "what it knew or had good reason to know."[14]

### III.   APPLICABLE LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert reports.[15] The party proffering the expert testimony bears the burden of establishing by a preponderance of proof the admissibility of the testimony under Rule 702 (*e.g.*, its reliability and relevance).[16]

The rule's recent amendment clarifies and emphasizes "that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements."[17] As the Advisory Committee's amendment notes clarify, a court must "first find by a preponderance of the evidence that the expert's basis and methodology are sufficient."[18] If that is met, additional challenges to the expert's reliability or conclusions are considered questions of weight, left to the fact finder.[19]

Rule 702(a) and (d) speak to the relevance of an expert's reasoning or methodology, which "must be properly applied to the facts in issue."[20] "When an expert witness relies on experience to show he is qualified to testify, the witness must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience" is reliable as applied to the facts.[21]

---

[14] *Id*.

[15] *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019).

[16] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592 n.10 (1993); Fed. R. Evid. 702 advisory committee's note to the 2000 amendment.

[17] *Trevino v. Transportadora Egoba SA DE CV*, No. 5:22-CV-92, 2024 WL 4987174, at *1 (S.D. Tex. Sept. 30, 2024).

[18] Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

[19] *Id*.

[20] *Id*.; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[21] *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004) (en banc).

Factors (b) and (c) of Rule 702 speak to reliability, which requires an expert opinion "be grounded in the methods and procedures of science and be more than unsupported speculation of subjective belief."[22] "Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation."[23]

In *Kumho Tire Co., Ltd. v. Carmichael*,[24] the Supreme Court extended the reliability and relevancy requirements of Rule 702 to all expert witness testimony. The *Kumho* decision clarified that the trial court has latitude in deciding how to test an expert's reliability—especially when an expert's opinion does not hinge on scientific or technical knowledge.[25] The trial court has and may determine "whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether* that expert's relevant testimony is reliable."[26]

Since *Daubert* and *Kumho*, federal courts have repeatedly noted that the party proffering an expert must demonstrate—by a preponderance of the evidence—how the expert's conclusions are reliable and relevant. *Daubert*'s standards ensure the reliability and relevancy of expert testimony and make "certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[27]

---

[22] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (cleaned up).

[23] *Copley v. Smith & Nephew Inc.*, No. Civ. A.H.-97-2910, 2000 WL 223404, *3 (S.D. Tex. Feb. 2, 2000) (citing *Daubert*, 509 U.S. at 590).

[24] 526 U.S. 137 (1999).

[25] *Kumho*, 526 U.S. at 152.

[26] *Id*. (emphasis in original).

[27] *The Cadle Co. v. Sweet & Brousseau, P.C.*, No. Civ. A. 3:97-CV-298-L, 2006 WL 435229 (N.D. Tex. Feb. 23, 2006) (citing *Kumho*, 526 U.S. at 152).

The Fifth Circuit has unequivocally held that "experts cannot render conclusions of law or provide opinions on legal issues."[28] Legal opinions provided by experts are irrelevant as they "invade the court's province."[29] Nor may an expert provide opinions that are just a party's arguments "dressed up and sanctified as the opinion of an expert."[30]

The opinions in the Lipson Report fail to meet these standards. Mr. Lipson's opinions as to Jackson Walker's purported violations of the Bankruptcy Code and Bankruptcy Rules should be excluded as they involve questions of law and fall within the exclusive purview of this Court. Mr. Lipson, likewise, lacks specified knowledge, skill, training, or experience interpreting, applying, or studying the Texas Disciplinary Rules of Professional Conduct or legal ethics. Thus, his six pages of opinions about purported ethical rule violations by Jackson Walker should also be excluded from trial.

## IV.    LEGAL ANALYSIS

The Report's conclusions require complete exclusion from consideration at trial because the report is permeated with legal conclusions that parrot the legal arguments of the Amended Motions. Such conclusions are legally irrelevant because they fall within the role of this Court. Additionally, the Report contains opinions about Texas partnership law and Texas ethics standards for which Mr. Lipson lacks sufficient qualifications. These conclusions are unreliable and fail to meet Rule 702's standards. The Report also asserts opinions based on incorrect assumptions, which under Fifth Circuit precedent must be excluded.[31]

---

[28] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020); *see also Orthopedic & Sports Injury Clinic v. Wang Labs, Inc.*, 922 F.2d 220, 225 (5th Cir. 1992) (expert opinions "setting forth ultimate or conclusory facts and conclusions of law" are inadmissible because "the expert is opining on issue[s] more properly left to judges and juries.").

[29] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[30] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

[31] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

A.     **The Lipson Report's conclusions should be excluded because is analysis involves legal questions reserved for the Court's determination.**

"It is black-letter law that 'experts cannot render conclusions of law or provide opinions on legal issues.'"[32] "Experts cannot offer testimony regarding what law governs a dispute of what the applicable law means because that is a function of the court."[33] "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."[34] Additionally, "an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument."[35] "Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."[36]

For example, in *Little*, plaintiffs asserted that defendants had violated the Fair Labor Standards Act (FLSA) by failing to pay overtime pay rates as required by the law.[37] As part of a summary judgment motion proceeding, that court had to consider whether to strike one of the plaintiff's expert reports. The court struck the report because it "consist[ed] almost entirely of legal analysis and conclusions."[38] The expert in question had "review[ed] in detail statutes, case law, and facts relevant to his analysis to reach his conclusions as to whether [d]efendants'' policies

---

[32] *U.S. Alliance Group, Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 562 (E.D. La. 2022) (quoting *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020)); *see also Askanase v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997) (holding that testimony from an attorney in an action by a bankruptcy trustee constituted inadmissible legal opinion because the lawyer had opined on whether debtor corporation's officers and directors fulfilled fiduciary duties to the company and others, and if not, how and to what extent they breached their fiduciary duties); *see also Floyd v. Hefner*, 556 F. Supp. 2d 617, 640 (S.D. Tex. 2008).

[33] *Fisher v. Halliburton*, No. H05–1731, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)).

[34] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[35] *Little v. Tech. Spec. Prods., Inc.*, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013) (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)) (concluding that expert report consisted "almost entirely of legal analysis and conclusions. . . . [reviewing] in detail statutes, case law, and facts relevant to his analysis to reach his conclusions as to whether Defendants' policies violate the FLSA or not.").

[36] *Salas*, 980 F.2d at 305 (cleaned up).

[37] 940 F. Supp. 2d at 464.

[38] *Little*, 940 F. Supp. 2d at 468.

violate[d] the FLSA or not."[39] Such analysis was "not properly within the scope of expert testimony" and the court struck the report in its entirety.

The same is true here. Mr. Lipson claims that his "task" is to "assess" the legal obligations Jackson Walker had under "section 327 of the United States Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2014, and other applicable authorities incorporated therein."[40] Legally, a witness (expert or lay) cannot offer such assessments. Conclusions about the law belong only to the Court.[41] Therefore, this Court should exclude Mr. Lipson's opinions about Jackson Walker's obligations under the Bankruptcy Code and Bankruptcy Rules.

That conclusion also applies to Mr. Lipson's opinions about Jackson Walker's legal arguments put forth in past pleadings. This Court, not Mr. Lipson, must consider whether Jackson Walker's interpretation of "the letter and the spirit of the law"[42] is correct.[43]

Consider several opinions in the Report, all of which involve Mr. Lipson's legal analysis:

- Rule 2014 requires the disclosure of connections to judges.[44]

- Jackson Walker had a duty under Rule 2014 to disclose the connection between Ms. Freeman and former Judge Jones.[45]

---

[39] *Id.*

[40] Lipson Report at p. 3.

[41] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[42] Lipson Report at p. 4.

[43] *Little*, 940 F. Supp. 2d at 468; *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[44] Lipson Report at p. 4.

[45] Lipson Report at p. 5. Mr. Lipson's legal opinion, paraphrased above, states:

> Although Rule 2014 does not specifically mention judges as a disclosable 'connection,' the Judicial Code provides that Federal Rules of Bankruptcy Procedure 'shall not abridge, enlarge, or modify any substantive right.' JW would turn Rule 2014 on its head, and use it to abridge disclosure obligations that are fundamental to confidence in the chapter 11 system, including by eliminating the duty to disclose 'other reasons' that an attorney may not be disinterested.

*Id.* at 5 (internal citations omitted).

- Rule 2014 imposes an obligation upon a lawyer to disclose an intimate relationship between one of its partners and a bankruptcy judge before whom the law firm regularly appears.[46]

- Under Texas law, Jackson Walker is liable for "its partner's acts in the ordinary conduct of the business."[47]

Fifth Circuit precedent requires this Court to exclude these and other of Lipson's opinions because Mr. Lipson's legal analysis and conclusions about bankruptcy law, bankruptcy rules, and Texas partnership law infect his entire report.[48] Legal issues are reserved for the Court's interpretation.

There exists a second basis for exclusion of Mr. Lipson's conclusions about Texas partnership law: Mr. Lipson lacks any specialized training, experience, or knowledge about this area of law.[49] A law degree alone "is not enough to qualify [Mr. Lipson] to give an opinion on every conceivable" legal issue. This lack of qualification means the opinions offered about Texas Partnership Act, for which Mr. Lipson has no specialized basis, are unreliable *and* irrelevant.[50]

Finally, a third reason for exclusion of Mr. Lipson's legal conclusions—they are little more than the U.S. Trustee's arguments "dressed up and sanctified" as his opinions. For example, compare Mr. Lipson's opinions on Jackson Walker's disclosure duties under Rule 2014 with those espoused in the Amended Motions.[51] The conclusions reached are identical and Mr. Lipson is

---

[46] *Id.* at 5.

[47] Lipson Report at p. 6.

[48] *Renfroe*, 974 F.3d at 598; *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d at 225.

[49] *Copley v. Smith & Nephew, Inc.*, No. Civ. A.H-92-2901, 2000 WL 223404, *4 (S.D. Tex. Feb. 2, 2000) (quoting *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1112–13 (5th Cir. 1991)); *see also Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999).

[50] *The Cadle Co. v. Sweet & Brousseau, P.C.*, No. Civ. A.. 3:97-CV-298-L, 2006 WL 435229 (N.D. Tex. Feb. 23, 2006) (citing *Kumho*, 526 U.S. at 152).

[51] *See In re Strike LLC, et al.*, Case No. 21-90054 (MI), Dkt. No. 1540 at ¶¶ 78, 97–108.

being proffered as a cheerleader who will testify to the U.S. Trustee's preferred contentions. Such testimony is inadmissible.[52]

**B.      Mr. Lipson's conclusions about Jackson Walker's purported ethics violations are unreliable because Mr. Lipson has no specialized skill, knowledge, training, or experience with ethics law or the Texas Disciplinary Rules of Professional Conduct.**

A court may only consider the opinions of a proffered expert when "the particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case."[53] Mr. Lipson cannot meet this test on issues of ethical considerations under the Texas Disciplinary Rules of Professional Conduct ("TDRPC"). Mr. Lipson has experience in, and knowledge about, bankruptcy law and procedure.  But he lacks *any* specialized knowledge, skill, or training involving legal ethics generally, or the TDRPC specifically. Despite this, Mr. Lipson provides more than six pages of opinions interpreting and applying the TDRPC to the facts of this case. He ultimately concludes that Jackson Walker violated these rules, that a conflict existed under Texas ethics rules, and that this conflict was imputed to the entire firm under Texas partnership law and the TDRPC.

Such an analysis has significant flaws. The most apparent is that Texas's ethics rules are *only* applicable to individual lawyers; they cannot be applied—as Mr. Lipson does—to a law firm.[54] That error alone suffices to exclude Mr. Lipson's ethics opinions as they are based on the incorrect assumption that the TDRPC applies to law firms as opposed to individual lawyers.[55]

---

[52] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

[53] *Kumho*, 526 U.S. at 156–57; *see also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").

[54] TEX. DISCIPLINARY R. PROF. CONDUCT, Preamble ¶¶ 1-16 ("A Lawyer's Responsibilities"); *see also* Rebuttal Report of Renee Jefferson, Exhibit C at ¶ 41; *see also* 16 GEO. J. LEGAL ETHICS 203 (Fall 2002) (New York and New Jersey are the only two states that have adopted rules relating to the discipline of law firms).

[55] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (holding that expert opinions unsupported by data, are self-contradicted, or are based on incorrect assumptions are to be excluded).

The second basis for exclusion is Mr. Lipson's lack of qualification in this subject area. Courts have concluded that "a person may be a licensed attorney, or even a judge, who holds years of experience in the practice of law, but that standing alone, will not qualify him or her to give an opinion on every conceivable legal question, including legal" ethics. [56]

Mr. Lipson is a tenured law professor at Temple's law school in Philadelphia, Pennsylvania, and has served as a bankruptcy law professor since 1995. His scholarly research focuses on: (i) Contracts; (ii) Corporate Governance; and (iii) Corporate Reorganization under chapter 11 of the Bankruptcy Code." His legal interest includes "the role that transparency and disclosure play in the operation of the chapter 11 system."[57] His experience as a testifying or consulting expert involves assisting with matters pertaining to bankruptcy proceedings.[58] Mr. Lipson is active in various associations pertaining to business law and has served as an editorial board or faculty member of bankruptcy or business publications. He is a fellow of the American College of Commercial Finance Lawyers.[59]

Mr. Lipson has ***never*** taught a professional responsibility class to lawyers or law students;[60] he has ***never*** published writings about general ethical rules governing lawyers such as the ABA's Model Rules of Professional Conduct;[61] he has ***never*** served as an expert in a legal malpractice case; and he ***does not*** hold any certifications in legal ethics.

---

[56] *Cadle Co.*, 2006 WL 435229, *4.

[57] Lipson Report at p. 8.

[58] Lipson Report at Appendix B, "Significant Expert Engagements".

[59] Lipson Report at Appendix B.

[60] Exhibit D, Lipson Depo. 20:18–24.

[61] Exhibit D, Lipson Depo. 21:11–13.

Mr. Lipson has no training nor specialized certification in Texas law nor Texas ethical rules. He is not licensed to practice law in the state of Texas.[62] He has never written about the Texas Disciplinary Rules of Professional Conduct[63] nor does he participate in any associations or groups that discuss or research legal ethics rules or the TDRPC.[64] None of the publications listed in his CV pertain to the TDRPC, model ethics rules, or legal professional ethics in general.[65] The cases to which the Report cites when discussing "Texas's imputation of personal interest conflicts" refer to courts' applications of the ABA Code of Professional Responsibility Cannon from the 1970s.[66] The ABA superseded those rules in 1983 with the ABA Model Rules of Professional Conduct.

Courts considering allegations of unethical conduct by lawyers have concluded that merely holding a law degree or license (or even having served as a judge) does not qualify an expert to opine on legal ethical duties.[67] A similar conclusion is endorsed by the Fifth Circuit in other malpractice litigation where that court has held the knowledge, training, and experience relied upon by an expert must be specialized and directly connected to the issues at hand.[68]

Compare the facts of this case to those in *Floyd*, where the court allowed for the expert testimony of a lawyer who had opined on the ethical obligations of lawyers for a dispute in Texas and Oklahoma.[69] In *Floyd*, defendants had challenged whether a proffered expert could opine on

---

[62] Lipson report at Appendix B, "Admissions to Practice".

[63] Exhibit D, Lipson Depo. 21:14–17, 22:25–23:3, 27:14–19, 35:23–25.

[64] Exhibit D, Lipson Depo. 38:16–39:10.

[65] Lipson Report at Appendix B; Exhibit D, Lipson Depo. 20:18–24, 21:11–17, 22:25–23:3, 27:14–19, 35:23–25.

[66] *See e.g.*, Lipson Report at p. 25 nn.125 & 134.

[67] *Cadle Co.*, 2006 WL 435229, *3–*4.

[68] *Copley v. Smith & Nephew, Inc.*, No. Civ. A.H-97-2910, 2000 WL 223404, *3 (S.D. Tex. Feb. 2, 2000) (citing *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1112–13 (5th Cir. 1991)).

[69] 556 F. Supp. 2d at 641–42.

the ethical obligations of certain lawyers licensed in Oklahoma. Defendants had contended the proposed expert (a lawyer) was unqualified "to render an opinion about the ethical obligations of lawyers in Oklahoma."[70] The trial court disagreed. In support of its conclusion, the *Floyd* court noted that the testifying expert had more than "41 years of experience in litigation practice and [was] board certified in civil trial law by the Texas Board of Legal Specialization."[71] Additionally, that expert was

> chosen by the Texas Supreme Court to serve as Chairman of the Task Force on the Texas Disciplinary Rules of Professional Conduct and has served on the Committee on Professional Ethics for the State Bar of Texas, the Texas Commission for Lawyer Discipline, and the Board of Disciplinary Appeals (as Chairman).
>
> He has served on the faculty at several legal education programs, including the University of Texas Law School, the University of Houston Law Center, and South Texas College of Law. [The lawyer] has published a myriad of articles concerning legal ethics and has been a frequent speaker on CLE courses on ethical issues.[72]

Such experience qualified as specialized and pertinent to the issues in *Floyd* because many of the contested events had occurred in Texas, and there did not exist a substantive difference between Oklahoma's and Texas's "relevant disciplinary rules relating to attorney conduct."[73]

But, in finding the lawyer qualified to testify about legal ethics, the *Floyd* court also concluded that this expert could "not testify regarding the substantive matters of corporate governance and finance." The court concluded the lawyer's experience analyzing corporate governance issues differed from the issues at hand, and therefore, that lawyer lacked specialized

---

[70] *Id*. at 642.

[71] *Id*.

[72] *Id*.

[73] *Id*.

knowledge about "the corporate governance issues *in this case*."[74] This decision drives home the point that under Rule 702, if an expert holds a law degree, that does not mean that he or she will be qualified to testify on *all* aspects of the law or legal practice.

Moreover, unlike the expert in *Floyd* (who had general experience in legal malpractice standards), Mr. Lipson has no specialized training in legal ethics—in Texas or elsewhere. He holds no certifications in the area, and he has not published on the legal ethics issues put before the Court by the Amended Motion. His opinions on the ethical obligations or breaches of Jackson Walker should be excluded because he is unqualified to testify on this subject.[75]

Additionally, Mr. Lipson's opinions about the ethical duties of Jackson Walker should be excluded as he incorrectly interprets and applies TDRPC's standards to the law firm, not individual lawyers.[76] He has not (and cannot) point to <u>any</u> authority that endorses such a misapplication of these rules, and therefore, his conclusions are unreliable under Rule 702.[77]

## V.   CONCLUSION

The U.S. Trustee has provided the opinions of a lawyer, Mr. Lipson, which infringe upon the province of the Court by interpreting the law and offering legal conclusions. The Fifth Circuit has unequivocally held that such opinions are irrelevant and inadmissible.

Mr. Lipson's other realm of conclusions—interpreting Texas legal ethics standards—are

---

[74] *Id.* at 642–43.

[75] *Id.*; *see also Wilson*, 163 F.3d at 937.

[76] *See supra* n. 54.

[77] As a basis for seeking vacatur of Jackson Walker's final fee applications and objecting to pending final fee applications, the U.S. Trustee principally relies on the arguments that Jackson Walker violated TDRPC 3.03, 4.01, 5.01, and 8.04(a)(6). Jackon Walker has asserted, among other things, that such alleged disciplinary violations do not create a private cause of action, and that such issues should be addressed by Judge Rosenthal as part of the disciplinary proceeding under the Southern District of Texas Local Rule 6. Adjudicating these matters separately creates substantial risk for inconsistent rulings or findings with respect to the disciplinary issues raised in the two separate proceedings. It also creates potential duplication of effort by the litigants and an unnecessary waste of court resources trying the same matters twice.

excludable from trial for two reasons. First, they rest upon incorrect assumptions about Texas ethics rules—that they apply to law firms. Second, Mr. Lipson has no specialized knowledge, skill, or training in this area; he fails to meet the Fifth Circuit's standard for qualified experts. Thus, such opinions do not "assist the [court] in arriving at an intelligent and sound verdict" and inadmissible under Rule 702.[78]

Jackson Walker respectfully asks that this Court exclude the opinions of Mr. Lipson from trial as they fail to meet Rule 702's standards.

---

[78] *U.S. Alliance Group, Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 563 (E.D. La. 2022) (cleaned up).

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

Jason L. Boland (SBT 24040542)
William R. Greendyke (SBT 08390450)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Email: jason.boland@nortonrosefulbright.com
Email:
william.greendyke@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

-and-

Paul Trahan (SBT 24003075)
Emily D. Wolf (SBT 24106595)
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
Fax: (512) 536-4598
Email: paul.trahan@nortonrosefulbright.com
Email: emily.wolf@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

**RUSTY HARDIN & ASSOCIATES, LLP**

 */s/ Russell Hardin, Jr.*
Russell Hardin, Jr. (SBT 08972800)
Leah M. Graham (SBT 24073454)
Jennifer E. Brevorka (SBT 24082727)
Emily Smith (SBT 24083876)
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas  77010
Telephone: (713) 652-9000
Email: rhardin@rustyhardin.com
Email: lgraham@rustyhardin.com
Email: jbrevorka@rustyhardin.com
Email: esmith@rustyhardin.com

*Co-Counsel for Jackson Walker LLP*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2025, I caused a copy of the Motion to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and by email to counsel for the U.S. Trustee as set forth below:

Laura Steele (Laura.Steele@usdoj.gov)

Millie Aponte Sall (Millie.sall@usdoj.gov)

Vianey Garza (Vianey.Garza@usdoj.gov)

Alicia Barcomb (Alicia.Barcomb@usdoj.gov)


_/s/ Jennifer E. Brevorka_
Jennifer E. Brevorka

18