# EXHIBIT B

## EXPERT REBUTTAL REPORT OF RENEE KNAKE JEFFERSON

1. I am the Doherty Chair in Legal Ethics and a tenured Professor of Law at the University of Houston Law Center. Rusty Hardin & Associates L.L.P., counsel for Jackson Walker L.L.P. ("Jackson Walker"), has retained me to render opinions concerning questions of legal ethics and professional conduct responsibilities in the matter of *No. 23-00645 (EVR); In re Professional Fee Matters Concerning the Jackson Walker Law Firm; In the United States Bankruptcy Court for the Southern District of Texas, Houston Division.*

## INTRODUCTION

2. I have been asked to provide an Expert Rebuttal Report containing my opinions with respect to the opinions expressed by Jonathan C. Lipson ("Mr. Lipson"), who has been retained by the United States Trustee for Region 7 ("U.S. Trustee") in the above-referenced matter. My opinions are limited to those covering matters of legal ethics and professional conduct responsibilities owed by Jackson Walker. I offer no opinions related to the obligations of Jackson Walker, if any, under the Texas Partnership Act, the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or Rule 6 of the Rules of Discipline of the Local Rules for the United States District Court for the Southern District of Texas. I offer no opinions regarding the actions or obligations of former Judge David R. Jones ("former Judge Jones") or former Jackson Walker equity partner Elizabeth Freeman ("Ms. Freeman").

3. I have no first-hand knowledge of the facts in this matter. For purposes of preparing my report, I have reviewed the materials set forth in Third Amended Exhibit A. I reserve the right to reexamine or supplement my report based on new information.

## QUALIFICATIONS

4. My opinions in this matter are based upon my education, training, and experience over the past twenty-five years including, but not limited to, my experience in private and public law practice as well as in teaching judicial and lawyer ethics for nearly two decades.

5. I am an attorney and a law professor. I hold the Joanne and Larry Doherty Chair of Legal Ethics and I am a tenured Professor of Law at the University of Houston Law Center, where I have been a member of the faculty since 2016.

6. I graduated from the University of Chicago Law School in 1999. Following law school, I practiced law from 1999-2005 at the law firms Mayer Brown and Hunton & Williams, and as an assistant city attorney for Charlottesville, Virginia.

7. Since 2006, I have been involved in research, writing, teaching, speaking, professional service activities, and consulting relating to judicial and lawyer ethics and the legal profession. I began my academic career at Michigan State University College of Law in 2006. I left my appointment as the Foster Swift Professor of Legal Ethics and Co-Director of the Frank J. Kelley Institute of Ethics in 2016 to join the University of Houston Law Center.

8. I have researched and written about the professional responsibilities of judges and lawyers in numerous scholarly articles, essays, and news media. I am also a co-author of several books including the Foundation Press casebook LEGAL ETHICS FOR THE REAL WORLD: BUILDING SKILLS THROUGH CASE STUDY (2nd Edition 2022), the West Academic Publishing casebook PROFESSIONAL RESPONSIBILITY: A CONTEMPORARY APPROACH (5th Edition 2023), and the Thomson West HANDBOOK OF TEXAS LAWYER AND JUDICIAL ETHICS: ATTORNEY TORT STANDARDS, ATTORNEY ETHICS STANDARDS, JUDICIAL ETHICS STANDARDS, RECUSAL AND DISQUALIFICATION OF JUDGES (2024 Edition).

9. I served as the elected Chair of the Section on Professional Responsibility for the Association of American Law Schools in 2020, after holding the offices of Secretary, Treasurer and Chair-Elect. From 2014-16, I was an appointed Reporter for the American Bar Association ("ABA") Presidential Commission on the Future of Legal Services. I am an elected member of the American Law Institute and a fellow of the American Bar Foundation. I am a subject matter expert for the Multistate Professional Responsibility Exam ("MPRE"). The MPRE is a national bar examination which largely tests bar applicants' knowledge of the ABA Model Rules and how they apply in various factual situations. Consequently, as one of the drafters for several years, I have developed a comprehensive knowledge of these rules.

10. I am frequently invited to lecture about judicial and lawyer ethics to bar associations, continuing education groups, and similar audiences of judges and lawyers. On occasion, I testify as an expert witness and render other services on issues of legal ethics and professional conduct. In this capacity, I often submit expert reports and/or declarations, and I have been deposed on multiple occasions. Twice I have testified before the Texas Supreme Court Special Court of Review in support of the successful reversal of discipline faced by judges. I also have testified before Congress about judicial recusal and before the federal judiciary about ethics reform.

11. When serving as an expert witness, in this case and others, I render opinions in my individual capacity and do not speak on behalf of any of the entities with which I am, or have been, associated.

12. More details about my background, scholarly publications, and professional experience are contained in my *curriculum vitae*, which is available as Exhibit B to this report.

## THE LIPSON OPINIONS

13. As an initial matter, Mr. Lipson is *not* an expert on legal ethics or professional responsibility generally, nor is he an expert on the Texas Disciplinary Rules of Professional Conduct ("Texas Disciplinary Rules"). Based on his CV and report he has no prior experience interpreting and applying the Texas Disciplinary Rules to another lawyer's past conduct.

14. Before discussing Mr. Lipson's specific opinions, there are two overarching problems with his report to address.

### *Jackson Walker Took Reasonable Actions to Address Information Received About the Freeman/Jones Relationship*

15. The first overarching problem with the Lipson Report is that he rests his opinions on what he describes as "JW's persistent pattern of ignoring, obfuscating and concealing" the relationship between Ms. Freeman and former Judge Jones. Lipson Report, p. 31. To the contrary, as discussed below, the record shows that Jackson Walker took reasonable actions upon receipt of information about an intimate relationship between Ms. Freeman and former Judge Jones.

16. Mr. Lipson offers his opinions about Jackson Walker's obligations based upon the benefit of hindsight *after* Ms. Freeman finally revealed in March 2022 that she was in a rekindled intimate relationship with former Judge Jones.

17. The actions taken by Jackson Walker, however, must be assessed based upon the information *known at the time*, not upon what was later admitted by Ms. Freeman after years of deception. Jackson Walker took the following actions in 2018, 2021, and 2022:

### *In 2018, Jackson Walker Requested Conflicts Disclosures Before Hiring Ms. Freeman*

18. Before hiring Ms. Freeman in 2018, Jackson Walker requested her disclosure of any possible conflicts of interest. *See* Lateral Questionnaire, Cowlishaw Dep. Ex. 64. She stated: "I am not currently representing clients. I am unable to work on any matter currently pending before Judge Jones." *Id.* Her disclosure was based solely upon her work as a law clerk to former Judge Jones.

19. Ms. Freeman never disclosed to Jackson Walker during the interview process, or in the three years that followed, "that she had in the past – or was currently having – an intimate relationship with former Judge Jones. Nor did she disclose that she lived with former Judge Jones or that they co-owned residential property." Jackson Walker LLP's Response in Opposition to the United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief, Case No. 20-32519, Nov. 13, 2023, ¶ 28 ("Jackson Walker Response in Opposition").

### *In 2021, Jackson Walker Confronted Ms. Freeman About the Allegation of an Intimate Relationship, Notified the Court of the Allegation, and Imposed Safeguards After Ms. Freeman Disclosed a Prior Relationship*

20. Jackson Walker first learned on Saturday, March 6, 2021, that a *pro se* litigant had alleged via email an intimate relationship between Ms. Freeman and former Judge Jones. *See* Jackson Walker Response in Opposition ¶ 33.

21. That same day, Jackson Walker began taking steps to address the alleged relationship. *See* Cowlishaw Dep. 81:13-25, 82:1-13 ("Q. When did the investigation start? A. March the 6th, 2021." *Id*. at 82:12-13.).[1]

22. These steps included a discussion with Ms. Freeman. She denied the charge of a current intimate relationship but admitted to a past relationship which Jackson Walker understood from Ms. Freeman had ended prior to the onset of the COVID-19 pandemic in March 2020. *See* Jackson Walker Response in Opposition ¶ 34; *see also* Freeman Interview, Dec. 6, 2023, 208:16-21 ("Q. Did you admit to a relationship with the judge? A. I am sure that I admitted that there had been a relationship. And at the time we were not intimate. We were not on good terms when this was happening.").[2]

23. Jackson Walker notified the Southern District of Texas Bankruptcy Court ("Court") of the allegation on Monday, March 8, 2021. *See* Jackson Walker Response in Opposition ¶ 36. The email was "filed under seal given the personal nature of the allegations and related concerns regarding [the *pro se* litigant's] erratic disposition and credibility . . . and the fact that Ms. Freeman had expressly denied the existence of any current romantic relationship." *Id*.

24. During the week of March 8, 2021, Jackson Walker also consulted with a prominent ethics expert, Peter Jarvis of Holland & Knight, to determine what actions, if any, the firm should take given Ms. Freeman's acknowledgement of a prior intimate relationship with former Judge Jones. *See id.* ¶ 37; Cowlishaw Dep. 106:2-14. The consultations with Holland & Knight continued over several months.

25. Holland & Knight provided its opinions, and Jackson Walker set up safeguards surrounding Ms. Freeman's future involvement with matters pending before former Judge Jones. *See* Jackson Walker Response in Opposition ¶ 37. These safeguards included instructing Ms. Freeman that she could not work on any matters assigned to former Judge Jones for two years through March 2022, and deducting from Ms. Freeman's compensation any profits associated

---

[1] While the U.S. Trustee and Mr. Lipson have referred to Jackson Walker's actions, particularly the firm's questioning of Ms. Freeman, as an "investigation," Jackson Walker has disagreed with the U.S. Trustee's use of the term to describe the firm's activities. ("Q. who was -- who, if anyone, was in charge of investigating what Ms. Freeman was telling the firm? A. About what? Q. About the relationship with Judge Jones or any potential misrepresentations that she may have made to the firm. A. After Mr. Van Deelen sent his email to Mr. Cavenaugh with the attached anonymous memo, Mr. Cavenaugh immediately contacted the general counsel and the Management Committee became involved and the general counsel hired outside counsel. And I quibble with the word investigation." Forbes Dep. (Aug. 20, 2024) 101:1-13.

[2] Ms. Freeman continued to deny an ongoing intimate relationship when she was interviewed by the U.S. Trustee in 2023. *See* Freeman Interview, Dec. 6, 2023, 43:14-17 ("You know, I'll tell you that by, you know, '16/'17 we were in an intimate relationship."); 66:17-22 ("I'll tell you that, you know, certainly by '15, you know, '14, '15 we were in . . . an intimate relationship."); 177:22-25 ("if it was '17 or beginning of '18, but I know that early, you know, January/February of '18 we were – crosswise I know we were not intimate in that time"); 176:21-22 ("we were not intimate during [the pandemic]"); 170:1-4 ("But then it was still very uncertain and not – you know, there was another long period of lack of intimacy until end of July '22."); 218:10-25 ("I know that there was a question about whether we had a continued romantic relationship. And I said no because we didn't. Not at that time. But . . . I didn't tell them about the house. . . . Because I didn't view it as my house.").

with work that was performed by Jackson Walker in cases pending before former Judge Jones. *See id*. ¶ 37.

26. Jackson Walker also obtained written confirmation from Ms. Freeman in August 2021 that she (1) was not in an ongoing intimate relationship with former Judge Jones and would not be in the future; (2) did not own a home with him; and (3) did not live with him. *See id.* ¶ 38; Cowlishaw Dep. 136:16-25, 137:1-21, Exhibit 53, pp. 103-107.

27. Jackson Walker determined "[a]t the time Ms. Freeman acknowledged the existence of this prior relationship, there was nothing for JW to disclose or supplement. The challenged cases implicated during this time period were filed post-COVID and had concluded prior to Ms. Freemans later admission to JW, on March 30, 2022, that the relationship with former Judge Jones had resumed." Jackson Walker Response in Opposition ¶ 34, fn. 18.

### In 2022, Jackson Walker Determined that Ms. Freeman Could Not Remain at the Firm After She Acknowledged that the Intimate Relationship Had Rekindled and Refused to Accurately Disclose the Relationship

28. In February 2022, a Jackson Walker non-bankruptcy partner received new, credible information that Ms. Freeman and former Judge Jones were living together. *See id.* ¶ 46.

29. In March 2022, a member of Jackson Walker's management team confronted Ms. Freeman with this information. She initially denied any intimate relationship. However, on March 30, 2022, she admitted to a "rekindled" relationship but denied living with former Judge Jones and did not reveal co-ownership of residential property. *Id*. ¶¶ 46-48.

30. Jackson Walker again consulted with Holland & Knight, and received an opinion letter indicating that either the relationship must be disclosed *or* that Ms. Freeman must leave the firm. The opinion letter was written with the assumption that Ms. Freeman would remain at Jackson Walker. *See* Cooper Dep. 126:14-17 ("this letter . . . discusses conduct if [Ms. Freeman] . . . was going to remain at the law firm"); Jarvis & Harvey Letter to Jackson Walker, June 2, 2022, p. 4 ("If we are correct in our opinion that the lawyer must either do or say something about the conflict or withdraw, the next question is how to best raise the issue with opposing counsel and the court if the lawyer chooses not to withdraw."). Specifically, the letter opined on "the duties of a lawyer at a firm who knows that the judge presiding over a case in which the lawyer and the firm represents a party has a conflict of interest that the judge was and is required to disclose under 28 U.S.C. Section 455 but has not disclosed." *Id*. at p. 1. The opinion letter concluded that if Ms. Freeman remained at Jackson Walker, "disclosure by the lawyer to firm clients about the judicial conflict is necessary." *Id*. at p. 4.

31. Ms. Freeman retained Tom Kirkendall ("Mr. Kirkendall") to represent her during these negotiations. *See* Kirkendall Dep. 22:3-9 ("I represented Ms. Freeman with regard to negotiations with Jackson & Walker and conversations with Holland & Knight from, I believe it was, April 8[th] of 2022 through June 28[th] of 2022. I did not represent Ms. Freeman in connection with her withdrawal from Jackson Walker.").

32. As part of these efforts, Mr. Kirkendall contacted former Judge Jones to discuss a disclosure. *See id*. 89:18-21 ("Q. Who asked you to call Judge Jones? A. Nobody. . . . I did that on my own initiative. I wanted to understand what his position was."). Former Judge Jones informed Mr. Kirkendall that he believed no disclosure was required. *See id*. 88:17-21 ("Judge Jones told me that he had concluded, after much research, that he believed he did not have an obligation to disclose the relationship because Ms. Freeman was not his spouse and that Ms. Freeman and he did not have a household account."). Mr. Kirkendall's proposed solution to force former Judge Jones to either disclose or recuse was to ask Jackson Walker to include a disclosure regarding the relationship between Ms. Freeman and former Judge Jones. *See id*. at 88:1-89:21.

33. While Jackson Walker was concerned about a disclosure, it endeavored to work with Ms. Freeman to prepare an appropriate disclosure, but determined that her proposed disclosure was "insufficient, inadequate, and misleading." Jackson Walker Response in Opposition ¶¶ 52-63; *see also* Cowlishaw Dep. 141:6-9 (". . .the only disclosure that Ms. Freeman was willing to make was of a close, personal relationship with Judge Jones, that we thought, in context, would be a half-truth. . ."); Cooper Dep. 130:10-14 ("My view of that proposal was that it was totally inadequate. It did not satisfy the requirements of the judge under the recusal statute. And we had concerns that it was deceptive and that it did not fully, uh, report what we thought the relationship was.").

34. As a consequence, by early June, Jackson Walker coordinated Ms. Freeman's departure from the firm, effective December 1, 2022. *See* Jackson Walker Response in Opposition ¶ 58; Cowlishaw Dep. 190:8-10 (". . .instead of making a – you know, a half-truth disclosure, the firm decided to separate itself from Ms. Freeman").

35. The separation was documented in a jointly-executed Confidential Withdrawal Agreement ("Agreement"). *See* Freeman Dep. Ex. 45. The Agreement acknowledged that Ms. Freeman and Jackson Walker might work together in the future as co-counsel, but *specifically excluded* any matters before former Judge Jones. *Id*.

36. Mr. Lipson inaccurately characterizes the Agreement as Jackson Walker having, in his words, "decided to further bury evidence of the Relationship." Lipson Report, p. 16. His analysis misconstrues the Agreement's terms, which do not require confidentiality regarding the relationship itself. Rather, the Agreement keeps confidential "all preceding discussions between [Ms. Freeman and Jackson Walker], regarding [the] relationship." Freeman Dep. Ex. 45. Mr. Lipson's conclusion also ignores that the Agreement expressly provides for disclosure "as otherwise may be required by law" in addition to other specific circumstances. *Id*. To the extent that Mr. Lipson asserts Jackson Walker is required by the Texas Disciplinary Rules or other law to disclose information covered by the Agreement, the firm is expressly permitted to do so.

### *The Texas Disciplinary Rules Apply to Individual Lawyers, Not Firms, and Do Not Create a Private Cause of Action or Other Remedy Beyond Lawyer Discipline*

37. The second overarching problem with the Lipson Report is that he conflates and confuses various duties that may be applicable to individual lawyers as equally applicable to law firms. Mr. Lipson also discusses potential requirements under federal bankruptcy law and the Texas Disciplinary Rules interchangeably even though they involve differing obligations and consequences.

38. The Texas Disciplinary Rules are clear that they do not establish standards of civil liability or create a private cause of action:

> These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached. Likewise, these rules are not designed to be standards for procedural decisions.

TEX. DISCIPLINARY R. PROF. CONDUCT, Preamble ¶ 15.

39. Texas courts, including the Texas Supreme Court, have consistently held that the Texas Disciplinary Rules do not create a private cause of action or establish the standard of care. *See e.g.*, *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159 (Tex. 2004) ("In addition, we note that the Rules do not define standards of civil liability of lawyers for professional conduct."); *Fleming v. Kinney ex rel. Shelton*, 395 S.W.3d 917, 929 (Tex. App. —Houston [14th Dist.] 2013, pet. filed) (expert's testimony "crossed the border of inadmissibility" when she told the jury, among other things, that violation of certain disciplinary rules necessarily established breach of fiduciary duty); *Adams v. Reagan*, 791 S.W.2d 284, 291 (Tex. App.— Fort Worth 1990, no writ) ("Violation of a disciplinary rule does not give rise to a private cause of action, nor does it create any presumption that a legal duty to a client has been breached."); *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 96 (Tex. App. —Houston [14th Dist.] 2004, no pet.) ("the Texas Disciplinary Rules . . . do not establish the standard of care or civil liability for attorneys").

40. The standard of care when evaluating legal malpractice, for example, is one of a "reasonably prudent attorney." *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989). According to the Texas Supreme Court: "An attorney who makes a reasonable decision in the handling of a case may not be held liable if the decision later proves to be imperfect." *Id.*

41. The Texas Disciplinary Rules apply to individual lawyers, not law firms, which is made clear in the Preamble describing "A Lawyer's Responsibilities" and discussing the scope of the rules in the context of the role of a lawyer. TEX. DISCIPLINARY R. PROF. CONDUCT, Preamble ¶¶ 1-16.

42. Having addressed the overarching problems with Mr. Lipson's report, I will now turn to his specific opinions related to the Texas Disciplinary Rules.

### *Lipson Opinion 1: "Imputation of EF's Conflict to JW"*

43. Mr. Lipson opines that Ms. Freeman was prevented under Texas Disciplinary Rule 1.06(b)(2)[3] from representing clients before former Judge Jones because of their intimate relationship. *See* Lipson Report, p. 26. He further opines that her personal conflict is imputed to Jackson Walker under Texas Disciplinary Rule 1.06(f),[4] and seems to suggest that this should somehow apply retroactively even though the existence of a rekindled intimate relationship was unknown to Jackson Walker until March 2022. *Id*.

44. Mr. Lipson cites no direct authority to support his interpretation of how Texas Disciplinary Rule 1.06 should be applied in this matter. Instead, he discusses an ethics opinion addressing whether married attorneys (or members of their law firms) may represent opposing parties in the same civil matter. *See* Lipson Report, pp. 26-27, quoting Tex. Pro. Ethics Comm., Formal Op. 666 (2016) ("Formal Op. 666").

45. While Formal Op. 666 might be relevant in assessing whether or not the intimate relationship between Ms. Freeman and former Judge Jones should be treated as the equivalent of husband and wife under the Texas Disciplinary Rules, the opinion offers no concrete guidance on how that relationship should be addressed by a law firm when a member of the firm conceals an intimate relationship with a judge. Moreover, the opinion provides that determining the existence of a "Rule 1.06(b)(2) conflict of interest" will "[i]n most cases . . .be a question of fact." Formal Op. 666, p. 2. Had Ms. Freeman and/or former Judge Jones disclosed the true nature of their relationship, the sort of fact-specific inquiry contemplated by Formal Op. 666 could have occurred to determine whether or not their relationship constituted a conflict of interest under Texas Disciplinary Rule 1.06 that would be imputed to all Jackson Walker lawyers. But they did not.

46. After Ms. Freeman revealed the rekindled intimate relationship to Jackson Walker in 2022, Jackson Walker continued to impose the safeguards already in place (*i.e.* prohibiting Ms. Freeman from working on or receiving any income from any matter pending before former Judge Jones) while it sought additional guidance from Holland & Knight. After endeavoring unsuccessfully to work with Ms. Freeman on an appropriate disclosure as discussed above, Jackson Walker determined that she could not remain at firm. Her departure removed any potential conflict under Texas Disciplinary Rule 1.06.

---

[3] Texas Disciplinary Rule 1.06(b)(2) provides that absent informed consent from any materially affected client(s), "a lawyer shall not represent a person if the representation of that person . . . (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyers' or the law firm's own interests."

[4] Texas Disciplinary Rule 1.06(f) provides: "If a lawyer would be prohibited by this Rule [1.06(b)(2)] from engaging in particular conduct, no other lawyers while a member or associated with that lawyer's firm may engage in that conduct."

*Lipson Opinion 2: "What Should JW Have Done?"*

47. Mr. Lipson appears to concede that Jackson Walker's actions until 2022 were reasonable. *See* Lipson Report, p. 28 ("Taking the facts most favorably to them, [Jackson Walker] had no actual knowledge of the Relationship until March 6, 2021; even then they were unfortunately gulled by EF . . . . The fact that the allegations came initially from Mr. Van Deelan – alleged to be a serial litigant and perhaps unstable – would surely call for lenity."). But Mr. Lipson then contends that Jackson Walker should have taken one or more of four actions after receiving credible information in 2022 about the rekindled intimate relationship between Ms. Freeman and former Judge Jones. None of his suggestions are required by the Texas Disciplinary Rules.

48. First, Mr. Lipson says that Jackson Walker should have followed the advice from Holland & Knight regarding disclosure of the relationship as a conflict of interest. *See* Lipson Report, p. 29. Because Ms. Freeman declined to make an adequate disclosure, Jackson Walker instead resolved any potential or actual conflict by requiring her departure from the firm and her withdrawal from any matters pending before former Judge Jones where Jackson Walker's clients were involved.

49. Mr. Lipson might counter that Jackson Walker nonetheless should have disclosed Ms. Freeman's admission about a prior intimate relationship in 2021 and/or her admission about a rekindled relationship in 2022. The duty to communicate with a client is governed by Texas Disciplinary Rule 1.03, which provides:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

American Bar Association ("ABA") Formal Opinion 481 (Apr. 17, 2018) ("Formal Op. 481") analyzing ABA Model Rule 1.4, which is similar to Texas Disciplinary Rule 1.03, offers guidance on whether an "error" that occurred during the representation of a client must be disclosed. While the opinion does not specifically address whether the failure to disclose a personal conflict of interest by a lawyer constitutes an "error," the opinion's analysis offers guidance on when a lawyer is required to disclose information to a client about past issues.

50. As to former clients, there is no disclosure obligation. *See* 48 Tex. Prac., Tex. Lawyer & Jud. Ethics § 6:6 (2024 ed.) (discussing Formal Op. 481).

51. As to current clients:

> The ABA concluded that while the lawyer is not under a duty to disclose all such errors, s/he is under a duty to do so if the error is "material" . . . . The opinion goes on to provide: "An error is material if a disinterested lawyer would conclude that it is (a) reasonably likely to harm or prejudice a client;

or (b) of such a nature that it would reasonably cause a client to consider terminating the representation even in the absence of harm or prejudice."

*Id.* (quoting ABA Formal Op. 481).

52. Under this analysis, Jackson Walker could reasonably conclude in 2021 that disclosure of a lawyer's prior intimate relationship was not required. In 2022, once the rekindled relationship was revealed, Jackson Walker endeavored to obtain an accurate disclosure from Ms. Freeman. This effort was unsuccessful. Jackson Walker required her departure. Jackson Walker could reasonably conclude that it was not necessary to disclose the rekindled relationship when it was negotiating the language of a potential disclosure with Ms. Freeman. And, once she departed, the disclosure of a former lawyer's rekindled intimate relationship was not required.

53. Second, Mr. Lipson says that Jackson Walker should have engaged in an independent investigation to verify Ms. Freeman's assurances that the relationship was not ongoing, for example searching property records. *See* Lipson Report, p. 29. The Texas Disciplinary Rules, however, do not require this sort of investigation. An inquiry into a law firm partner's romantic relationship is also a sensitive matter. *See, e.g.,* Cowlishaw Dep. 137:11-14 ("It's highly unusual for partners in the firm to be discussing sexual conduct of another partner with her in – in the midst of a matter such as this."). Jackson Walker relied upon Ms. Freeman's verbal statement in March 2021, and her written confirmation six months later, that any intimate relationship with former Judge Jones had ended more than a year prior to the initial allegation in 2021, and Jackson Walker was not required under the Texas Discipline Rules to engage in independent verification.

54. Third, Mr. Lipson agrees that Ms. Freeman's departure from Jackson Walker was "an appropriate step." Yet, he critiques the firm for continuing to work with and recommending her for matters unrelated to cases pending before former Judge Jones, calling this "mind-boggling." Lipson Report, p. 29. He cites nothing in the record to support his critique. Mr. Lipson's position ignores the explanation from Managing Partner Wade Cooper in his deposition testimony about the length of time it took to orchestrate Ms. Freeman's separation. His explanation bears upon Jackson Walker's reasonable determination to potentially continue working with her in matters not pending before former Judge Jones. Mr. Cooper testified:

```
 5        Q.  If you didn't feel like Jackson Walker owed Ms.
 6   Freeman anything, why was she given so many
 7   opportunities until her separation, for example, finding
 8   another job for at least six months?
 9             MR. HARDIN:  Object to the form.
10        A.  Well, Jackson Walker is a law firm that tries to
11   extend grace even when people have messed up, but in
12   this particular circumstance there was a lot of
13   complicating factors and it went slower than any of us
14   would have liked, but that was our best determination at
15   the time.
16        Q.  And what were those complicating factors?
17        A.  Uh, there were any number of them.  We were
18   dealing with the chief judge of the bankruptcy court,
19   and there's not a playbook on how do you separate
20   yourself from his whatever she was - partner,
21   girlfriend, whatever.  In all of my years of, uh,
22   practicing being managing partner I can't think of any
23   similar circumstance, uh, and have received
24   commensuration from other managing partners on the tense
25   and complicated nature surrounding this.
```

```
 1             So, uh, I now have rambled on so long,
 2   I've forgotten the question.
 3        Q.  I was asking about the complicating factors you
 4   mentioned and what took so long for Jackson Walker to
 5   finally separate with Ms. Freeman after deciding that it
 6   needed to.
 7        A.  Yeah, it took longer than I thought it would and
 8   certainly it was frustrating, but on the other hand, as
 9   I said earlier, we had taken very harsh steps with
10   respect to her.  And the fact that she had a
11   relationship with the judge was going to be very
12   limiting in terms of her future employment in the area
13   that she was good at, which was large complex debtor
14   cases.  And so, uh, cognizant of that, we were probably
15   more patient than the equity so warranted, but that's
16   what we did.
```

Cooper Dep. 135:5-25, 136:1-16.

55. Fourth, Mr. Lipson says Jackson Walker "had a commitment to supplement those 2014 statements that were submitted during the acknowledged period of overlap in the Relationship and EF's employment at JW (i.e., March 2018 to March 2020)." *See* Lipson Report, p. 29. I offer no opinion whether or not there was a duty to disclose under the federal bankruptcy rules in the first instance, or a duty to supplement under the federal bankruptcy rules.

*Lipson Opinion 3: "The Mediation Cases"*

56. Mr. Lipson concludes his report with a discussion of the cases where former Judge Jones served as a mediator. He cites no Texas Disciplinary Rules in the context of his evaluation of Jackson Walker's conduct in this context. Rather, his opinion rests on rhetorical questions and generalized critiques about the use of judges as mediators while at the same time acknowledging that "the use of judges as mediators is not uncommon or necessarily problematic." Lipson Report, p. 30

## CONCLUSION

57. For the reasons discussed above, it is my opinion that Jackson Walker took reasonable steps at the time it hired Ms. Freeman and as it learned new information about the nature of the relationship between Ms. Freeman and former Judge Jones in 2021 and again in 2022. These steps included:

**2018**
- Jackson Walker requested a detailed conflicts disclosures before hiring Ms. Freeman.

**2021**
- Jackson Walker confronted Ms. Freeman about the allegation of an intimate relationship with former Judge Jones.
- Jackson Walker notified the Court of the allegation.
- Jackson Walker consulted with an ethics expert
- Jackson Walker imposed safeguards (*i.e.* prohibiting work on or income from matters pending before former Judge Jones) after Ms. Freeman disclosed a prior intimate relationship.

**2022**
- Jackson Walker again confronted Ms. Freeman with the new information it received about her living with former Judge Jones.
- Jackson Walker again consulted with ethics experts about how to proceed.
- Jackson Walker endeavored to obtain an appropriate disclosure from Ms. Freeman about the relationship.
- Jackson Walker determined that Ms. Freeman could not remain at the firm after she had acknowledged that the intimate relationship was rekindled, and she had refused to accurately disclose the relationship.

58. It is also my opinion that the Texas Disciplinary Rules apply to lawyers individually, not to law firms as entities, and they cannot serve as the basis for civil liability, the standard of care, or a private civil cause of action.

59. I may supplement or revise this Expert Rebuttal Report as further information and issues are provided to me.

_____     December 3, 2024

RENEE KNAKE JEFFERSON                          _____
DOHERTY CHAIR IN LEGAL ETHICS &                DATE
PROFESSOR OF LAW
UNIVERSITY OF HOUSTON LAW CENTER

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **Professional Fee Matters Concerning** | § | **Civil Action No. 4:23-cv-04787** |
| **the Jackson Walker Law Firm.** | § | |
| | § | |

**THIRD AMENDED LIST OF DOCUMENTS
SENT FOR REVIEW ON 10/10/24**

| NO. | DOCUMENT – BANKRUPTCY COURT PLEADINGS | DATE |
|---|---|---|
| 1. | *In re: 4E Brands NorthAmerica LLC,* Case No. 22-50009, Dkt. No. 517 United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure (60)(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving any Jackson Walker Applications for Compensation and Reimbursement of Expenses with attached Exhibit 1 and Proposed Order | 11/03/23 |
| 2. | *In re: Neiman-Marcus Group Ltd., LLC, et al.,* Case No. 20-32519, Dkt. No. 3184, Preliminary Response of Jackson Walker LLP to Recent Filings by the Office of the U.S. Trustee with attached Exhibit 1 [Relates to Dkt. Nos. 3178, & 3179] | 11/13/23 |
| 3. | *In re: Neiman-Marcus Group Ltd., LLC, et al.,* Case No. 20-32519, Dkt. No. 3234, Jackson Walker LLP's Response In Opposition to The United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief with attached Exhibits 1 – 3 [Relates to Dkt. No. 3224] | 05/22/24 |
| 4. | *In re: Auto Plus Auto Sales,* LLC et. al., Case No. 23-90054, Dkt. No. 150, United States Trustee's Reply to Jackson Walker LLP's Response In Opposition to Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief with attached Exhibits 1 – 5 [Relates to ECF No. 136] | 07/01/24 |

| 5. | *In re: LaForta-Gestao E Investmentos*, Case No. 22-90126, Dkt. No. 347, Recusal | 09/20/24 |
| NO. | **DOCUMENT – DISTRICT COURT PLEADINGS** | **DATE** |
| 6. | *Van Deelen v. Jones,* Case No. 4:23-CV-03729-AM, Dkt. No. 101, Memorandum Opinion and Order | 08/16/24 |
| 7. | *In re: discipline of Jackson Walker*, Case No. 4:24-mc-01523, Dkt. No. 1, Disciplinary Action | 09/20/24 |
| 8. | *In re Professional Fee Matters Concerning the Jackson Walker Law Firm,* Dkt. 1, Order Commencing Miscellaneous Proceeding Regarding Employment Orders and Awarded Fees and Expenses to Jackson Walker, LLP in Affected Cases | 12/09/23 |
| 9. | *In re Neiman Marcus Group Ltd. LLC, et al.,* Dkt. 3178, United States Trustee's Motion for Relief From Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications for Compensation and Reimbursement of Expenses with Exhibits 1-2 | 11/02/23 |
| 10. | *In re Brilliant Energy, LLC,* Dkt. 2, Case Management Order Regarding ECF Nos. 254 & 255 | 12/10/23 |
| 11. | *In re Westmoreland Coal Company, et al.,* Dkt. 3360, United States Trustee's Motion for Relief From Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications for Compensation and Reimbursement of Expenses with Exhibits 1-2 | 11/02/23 |
| NO. | **DOCUMENT – DEPOSITIONS & EXHIBITS** | **DATE** |
| 12. | Deposition of Matthew D. Cavenaugh with Exhibits | 08/30/24 |
| 13. | Deposition of Elizabeth Freeman with Exhibits | 07/30/24 |
| 14. | Deposition of Ross Forbes, Jr. with Exhibits | 08/19/24 |
| 15. | Deposition of Ross Forbes, Jr. As Corporate Representative with Exhibits | 08/20/24 |
| 16. | Deposition of William Russell Jenkins, Jr. with Exhibits | 08/05/24 |
| 17. | Deposition of Bruce J. Ruzinsky with Exhibits | 09/09/24 |
| 18. | Deposition of Joshua A. Sussberg with Exhibits | 09/20/24 |
| 19. | Deposition of C. Wade Cooper with Exhibits | 08/13/24 |
| 20. | Deposition of Veronica A. Polnick with Exhibits | 10/03/24 |
| 21. | Deposition of Patrick R. Cowlishaw with Exhibits | 08/01/24 |
| 22. | Deposition of David R. Jones with Exhibits | 09/19/24 |

| 23. | Deposition of Tom Kirkendall | 07/17/24 |
|---|---|---|
| **NO.** | **DOCUMENT – EXPERT REPORTS** | **DATE** |
| 24. | Expert Report of Professor Jonathan C. Lipson Regarding Certain Disclosure and Ethics Matters | 09/30/24 |
| **NO.** | **DOCUMENT – PROTECTIVE ORDER** | **DATE** |
| 25. | Protective Order Under Privacy Act | 09/10/24 |
| **NO.** | **DOCUMENT – LIPSON EXPERT DOCS** | **DATE** |
| 26. | Lipson Expert Docs Bates Stamp Log – Excel Spreadsheet | |
| 27. | Isgur Disciplinary Letter | 09/20/24 |
| 28. | *Ameriforge Group*, Dkt. No. 148, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective *Nunc Pro Tunc* to the Petition Date | 05/25/17 |
| 29. | *Ameriforge Group*, Dkt. No. 153, Application of Debtors-in-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 05/26/17 |
| 30. | *Offshore Specialty Fabricators*, Dkt. No. 148, Debtor's Application Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving the Employment and Retention of Jackson Walker LLP as Special Counsel for the Debtor Effective *Nunc Pro Tunc* to the Petition Date | |
| 31. | *Seadrill Limited*, Dkt. No. 191, Application Of Debtors-In-Possession To Employ Jackson Walker L.L.P. as Co-Counsel for Debtors | 09/29/17 |
| 32. | *Expro Holdings US Inc.*, Dkt. No. 153, Application Of Debtors-In-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 12/29/17 |
| 33. | *Exco Resources, Inc.*, Dkt. No. 382, Application for Order Authorizing Employment of Jackson Walker LLP as Co-Counsel to the Official Committee of Unsecured Creditors | 02/26/18 |
| 34. | *iHeartMedia, Inc.*, Dkt. No. 271, Application of Debtors-In-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 03/22/18 |
| 35. | *Westmoreland Coal Company*, Dkt. No. 227, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective *Nunc Pro Tunc* to the Petition Date | 10/22/18 |
| 36. | *Westmoreland Coal Company*, Dkt. No. 376, Application of Debtors-in-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 11/08/18 |

| 37. | *Gastar Exploration Inc.*, Dkt. No. 215, Application of Debtors-in-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 11/30/18 |
|---|---|---|
| 38. | *Parker Drilling Company*, Dkt. No. 253, Application of Debtors-in-Possession to Employ Jackson Walker LLP as Co-Counsel for Debtors | 01/13/19 |
| 39. | *Weatherly Oil & Gas*, Dkt. No. 170, Application of Debtor-in-Possession to Employ Jackson Walker LLP as Counsel for The Debtor *Nunc Pro Tunc* to the Petition Date | 03/30/19 |
| 40. | *Jones Energy, Inc.*, Dkt. No. 121, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective *Nunc Pro Tunc* to the Petition Date | 04/23/19 |
| 41. | *Jones Energy, Inc.*, Dkt. No. 125, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-In-Possession | 04/23/19 |
| 42. | *Sanchez Energy Corporation*, Dkt. No. 269, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 09/06/19 |
| 43. | *Sheridan Holding Company II*, Dkt. No. 118, Amended Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 09/25/19 |
| 44. | *J.C. Penney Company*, Dkt. No. 685, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-In-Possession | 06/11/20 |
| 45. | *McDermott International*, Dkt. No. 428, Debtors' Application for Entry of An Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession | 02/19/20 |
| 46. | *McDermott International*, Dkt. No. 424, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP As Co-Counsel and Conflicts Counsel for the Debtors And Debtors-in-Possession | 02/19/20 |
| 47. | *Sheridan Holding Company I*, Dkt. No. 130, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 04/02/20 |
| 48. | *Whiting Petroleum Corporation*, Dkt. No. 173, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 04/17/20 |
| 49. | *Neiman Marcus Group Ltd.*, Dkt. No. 750, Application of Debtors and Debtors in Possession to Retain Jackson Walker LLP as Co- | 06/30/20 |

| | | | |
|---|---|---|---|
| | Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | |
| 50. | *Stage Stores*, Dkt. No. 385, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 06/04/20 |
| 51. | *Ultra Petroleum Corp.*, Dkt. No. 195, Application of Debtors And Debtors-in-Possession to Retain Jackson Walker LLP As Co-Counsel and Conflicts Counsel for The Debtors And Debtors-in-Possession | 06/04/20 |
| 52. | *Hornbeck Offshore Services*, Dkt. No. 132, Application of Debtors and Debtors In Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 06/01/20 |
| 53. | *Chesapeake Energy Corporation*, Dkt. No. 370, Application of Debtors and Debtors in Possession To Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 07/16/20 |
| 54. | *Covia Holdings Corporation*, Dkt. No. 195, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 07/21/20 |
| 55. | *Bruin E&P Partners*, Dkt. No. 143, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel or the Debtors and Debtors-in-Possession | 08/04/20 |
| 56. | *California Pizza Kitchen*, Dkt. No. 297, Application of Debtors and Debtors in Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 08/28/20 |
| 57. | *Mood Media Corporation*, Dkt. No. 122, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-n-Possession | 08/14/20 |
| 58. | *Denbury Resources*, Dkt. No. 238, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 08/28/20 |
| 59. | *Tailored Brands*, Dkt. No. 496, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 09/01/20 |
| 60. | *Benevis Corp.*, Dkt. No. 176, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Counsel for the Debtors and Debtors-in-Possession | 09/01/20 |
| 61. | *Valaris PLC*, Dkt. No. 207, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 09/15/20 |
| 62. | *Arena Energy, LP*, Dkt. No/ 147, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel For The Debtors And Debtors-in-Possession | 09/04/20 |

| 63. | *iQor Holdings Inc.*, Dkt. No. 154, Application of Debtors and Debtors in Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 09/28/20 |
|---|---|---|
| 64. | *Bouchard Transportation Co.*, Dkt. No. 173, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 10/28/20 |
| 65. | *Oasis Petroleum Inc.*, Dkt. No. 207, Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 10/16/20 |
| 66. | Gulfport Energy Corporation, Dkt. No. 390, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 12/11/20 |
| 67. | *Gulfport Energy Corporation*, Dkt. No. 460, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of November 13, 2020 | 12/17/20 |
| 68. | *Volusion, LLC*, Dkt. No. 74, Application of Debtor-in-Possession to Employ Jackson Walker LLP as Counsel for the Debtor Effective as of the Petition Date | 08/26/20 |
| 69. | *Frontera Holdings*, Dkt. No. 159, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 02/25/21 |
| 70. | *Seadrill Limited*, Dkt. No. 250, Debtors' Application for Entry of An Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 03/08/21 |
| 71. | *Belk, Inc.*, Dkt. No. 154, Application of Reorganized Debtors to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 03/08/21 |
| 72. | *Brilliant Energy*, Dkt. No. 68, Application to Employ Jackson Walker LLP as Special Counsel Pursuant to 11 U.S.C. § 327 | 04/13/21 |
| 73. | Katerra Inc., Dkt. No. 289, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 06/29/21 |
| 74. | *Washington Prime Group Inc.*, Dkt. No. 206, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of June 13, 2021 | 07/01/21 |
| 75. | *Washington Prime Group Inc.*, Dkt. No. 208, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 07/01/21 |
| 76. | *Basic Energy Services Inc.*, Dkt. No. 809, Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Counsel to the Debtors | 12/13/21 |

| 77. | *Carlson Travel, Inc.*, Dkt. No. 221, Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 12/07/21 |
|---|---|---|
| 78. | *Strike, LLC*, Dkt. No. 363, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 01/06/22 |
| 79. | *4E Brands Northamerica LLC*, Dkt. No. 72, Application to Retain Jackson Walker LLP as Counsel for the Debtor And Debtor-in-Possession | 03/24/22 |
| 80. | *Free Speech Systems LLC*, Dkt. No. 230, Subchapter V Trustee's Application to Retain Jackson Walker LLP | 10/11/22 |
| 81. | *Free Speech Systems LLC*, Dkt. No. 265, Order Authorizing the Retention of Jackson Walker LLP as Counsel for the Subchapter V Trustee | 11/07/22 |
| 82. | *Seadrill New Finance Limited*, Dkt. No. 92, Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of January 11, 2022 | 02/08/22 |
| 83. | *Seadrill New Finance Limited*, Dkt. No. 94, Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 02/08/22 |
| 84. | *Seadrill New Finance Limited*, Dkt. No. 108, Order Granting the Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 03/11/22 |
| 85. | *Sungard As New Holdings, LLC*, Dkt. No. 211, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 05/10/22 |
| 86. | *Sungard As New Holdings, LLC*, Dkt. No. 291, Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 06/06/22 |
| 87. | *GWG Holdings, Inc.*, Dkt. No. 267, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 05/19/22 |
| 88. | *HONX Inc.*, Dkt. No. 128, Application to Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtor and Debtor in Possession | 05/31/22 |
| 89. | *Laforta - Gestão E Investimentos*, Dkt. No. 67, Application to Retain Jackson Walker LLP as Counsel for the Debtor and Debtor-in-Possession | 07/15/22 |

| | | |
|---|---|---|
| 90. | *Altera Infrastructure L.P*, Dkt. No. 228, Application To Retain Jackson Walker LLP As Co-Counsel And Conflicts Counsel For The For The Debtors And Debtors In Possession | 09/12/22 |
| 91. | *Cineworld Group PLC*, Dkt. No. 486, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the for the Debtors and Debtors-in-Possession | 10/05/22 |
| 92. | *Pipeline Health System, LLC*, Dkt. No. 219, Application to Retain Jackson Walker LLP As Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 10/20/22 |
| 93. | *Candy Club, LLC*, Dkt. No. 107, Application to Retain Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession | 08/28/23 |
| 94. | *Nautical Solutions, L.L.C.*, Dkt. No. 142, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 01/27/23 |
| 95. | *IEH Auto Parts Holding LLC*, Dkt. No. 181, Application to Retain Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession | 03/02/23 |
| 96. | *IEH Auto Parts Holding LLC*, Dkt. No. 183, Application to Retain the Law Office Of Liz Freeman, PLLC as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 03/02/23 |
| 97. | *Invacare Corporation*, Dkt. No. 269, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 03/02/23 |
| 98. | *Nielsen & Bainbridge, LLC*, Dkt. No. 362, Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of February 8, 2023 | 04/13/23 |
| 99. | *Nielsen & Bainbridge, LLC*, Dkt. No. 273, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 03/10/23 |
| 100. | *Sorrento Therapeutics Inc*, Dkt. No. 231, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the for the Debtors and Debtors-in-Possession | 03/15/23 |
| 101. | *Avaya Inc.*, Dkt. No. 293, Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession | 03/10/23 |
| 102. | *Loyalty Ventures Inc.*, Dkt. No. 175, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 04/05/23 |
| 103. | *Venator Materials PLC*, Dkt. No. 227, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/14/23 |
| 104. | *MLCJR LLC*, Dkt. No. 433, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/13/23 |

| 105. | *Envision Healthcare Corporation*, Dkt. No. 330, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/14/23 |
|---|---|---|
| 106. | *Benefytt Technologies, Inc.*, Dkt. No. 249, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/22/23 |
| 107. | *Qualtek Services Inc.*, Dkt. No. 215, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 06/23/24 |
| 108. | *Diebold Holding Company, LLC*, Dkt. No. 208, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 07/03/23 |
| 109. | *Genesis Care Pty Limited*, Dkt. No. 237, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 07/03/23 |
| 110. | *Center for Autism and Related Disorders, LLC*, Dkt. No. 197, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 07/11/23 |
| 111. | *Surgalign Holdings, Inc.*, Dkt. No. 257, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 07/19/23 |
| 112. | *AppHarvest Products, LLC*, Dkt. No. 247, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 08/21/23 |
| 113. | *Cóndor Inversiones SpA,* Dkt. No. 141, Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel | 09/11/23 |
| 114. | *Soft Surroundings Holdings, LLC*, Dkt. No. 188, Application to Retain the Law Office of Liz Freeman, PLLC as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession | 10/11/23 |
| 115. | Deposition Transcript of Chip Babcock and Exhibits | |
| 116. | Deposition Transcript of Pat Cowlishaw and Exhibits | |
| 117. | Deposition Transcript of William Jenkins and Exhibits | |
| 118. | Deposition Transcript of Wade Cooper and Exhibits | |
| 119. | Deposition Transcript of Ross Forbes and Exhibits | |
| 120. | Deposition Transcript of Matt Cavenaugh and Exhibits | |
| 121. | Deposition Transcript of Bruce Ruzinsky and Exhibits | |
| 122. | Deposition Transcript of Anna Rotman and Exhibits | |
| 123. | Deposition Transcript of Joshua Sussberg and Exhibits | |
| 124. | Deposition Transcript of Elizabeth Freeman and Exhibits | |

| 125. | Jackson Walker 30b6 (Forbes) – Confidential | |
| 126. | Jackson Walker 30b6 (Forbes) | |
| 127. | *Auto Plus Auto Sales, LLC*, Dkt. No. 150, United States Trustee's Reply to Jackson Walker LLP's Response in Opposition to Motion for (1) Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Compensation Applications of Jackson Walker LLP, (2) Sanctions, And (3) Related Relief | 07/01/24 |
| 128. | Informal Interview of Elizabeth Freeman | 12/06/23 |
| 129. | *4E Brands Northamerica, LLC*, Dkt. No. 705, Jackson Walker LLP's Sur-Reply In Support of its Opposition to the U.S. Trustee's Amended and Supplemental Motion For (1) Relief Under Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief [Relates To Dkt. Nos. 692 & 699] | 08/12/24 |
| 130. | JW_00000307-JW_00000316 – Email from Cavenaugh to Freeman & PDF of Expenses | 10/15/18 |
| 131. | JW_00000435-JW_00000441 – Email from Cowlishaw to Freeman | 08/26/21 |
| 132. | JW_00012070-JW_00012083 | |
| 133. | JW_00015883-JW_00015884 | |
| 134. | JW_00020335-JW_00020338 | |
| 135. | JW_00023522-JW_00023705 – Attorney Sourcebook | |
| 136. | Letter to Jonathan Lipson | 09/05/24 |
| 137. | Bankruptcy Local Rules Effective January 28, 2020 | |
| 138. | Bankruptcy Local Rules Effective February 12, 2020 | |
| 139. | Bankruptcy Local Rules Effective December 1, 2015 | |
| 140. | Bankruptcy Local Rules Effective May 19, 2022 | |
| 141. | Application to Employ [Name Of Law Firm] as Special Litigation Counsel Pursuant to 11 U.S.C. § 328(A) | |
| 142. | *Ultra Petroleum Corp.*, Dkt. No. 192, Debtors' Application for Entry Oof an Order Authorizing the Employment and Retention of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel | 06/04/20 |
| 143. | Van Deelen v. Jones, et al, Memorandum Opinion & Order | 08/16/24 |
| 144. | *Altera Infrastructure L.P.*, Dkt 229, Application for Order Authorizing the Retention of Quinn Emanuel Urquhart & Sullivan, LLP Counsel as Special Counsel | |
| 145. | Exhibit A-1 USTP Identified Cases | |

10

| 146. | Exh. 191 – UST_0773-UST_0776 Certified Copy of Rolla General Warranty Deed | |
| 147. | Exh. 192 – UST_0777-UST_0780 Certified Copy of Rolla Survivorship Agreement | |

## LIST OF DOCUMENTS SENT FOR REVIEW ON 10/28/24

| NO. | DOCUMENT – DEPOSITIONS & EXHIBITS | DATE |
|-----|-----------------------------------|------|
| 1. | Deposition of Jacqueline Harvey with Exhibits | 10/17/24 |
| 2. | Deposition of Peter Jarvis with Exhibits | 10/17/24 |

## LIST OF DOCUMENTS SENT FOR REVIEW ON 12/02/24

| NO. | DOCUMENT – U.S. TRUSTEE MOTION TO COMPEL DISCOVERY | DATE |
|-----|---------------------------------------------------|------|
| 1. | *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, (Dkt 34) Opinion and Order on U.S. Trustee's Motion to Compel | 11/27/24 |