IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm | Case No. 23-00645 |

**UNITED STATES TRUSTEE'S OBJECTION TO JACKSON WALKER LLP'S MOTION TO STRIKE THE REPORT AND TO EXCLUDE THE OPINIONS OF JONATHAN C. LIPSON**

[Relates to ECF No. 571]

TO THE HONORABLE EDUARDO V. RODRIGUEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Kevin Epstein, the United States Trustee for Region 7 (the "**U.S. Trustee**"),[1] by and through his undersigned counsel, objects to Jackson Walker LLP's ("**Jackson Walker**") *Motion to Strike the Report and to Exclude the Opinions of Jonathan C. Lipson* [ECF No. 571] (the "**Motion**") and responds as follows:

## BACKGROUND

1. This matter stems from a scandal in one of the busiest bankruptcy courts in the nation and concerns Jackson Walker's actions to conceal the relationship at the heart of the scandal,[2] the nondisclosure of which deprived parties in interest of due process and the ability to

---

[1] The United States Trustee is a component of the United States Department of Justice. 28 U.S.C. § 501 *et seq*. The United States Trustee is charged with the administration of bankruptcy cases, 28 U.S.C. § 586(a), and has standing to raise and be heard on any issue in a bankruptcy case or proceeding. 11 U.S.C. § 307.

[2] "[I]t was the Plaintiff's audacity that brought this scandal to light. Had the anonymous letter arrived in anyone else's mailbox, perhaps Jones would still be on the bench, awarding millions of dollars to Kirkland and Jackson Walker." *Van Deelen v. Jones, et al.*, Case No. 4:23-cv-03729, ECF No. 101 at 36 (S.D. Tex.).

exercise their rights. The issues in this case sound in misrepresentation, concealment, and breach of fiduciary duty and involve mixed issues of law and fact. To restore public confidence in the integrity of the bankruptcy system, it is critical that the Court hear all relevant evidence and hear such evidence publicly in open court.

2. Elizabeth C. Freeman ("**Freeman**") and former Bankruptcy Judge David R. Jones ("**Jones**") engaged in a years-long intimate, romantic, financial, and cohabitating relationship (the "**Relationship**"). Following the public revelation of the Relationship in October 2023, the U.S. Trustee moved under Rule 60(b)(6) of the Federal Rules of Civil Procedure to vacate certain orders in 32 cases and the U.S. Trustee objected to fee applications in two cases (collectively, the "**Rule 60 Motions**").

3. Under the Court's *Amended Comprehensive Scheduling, Pre-trial & Trial Order* [ECF No. 249], affirmative expert reports had to be exchanged on September 30, 2024.

4. The U.S. Trustee timely informed Jackson Walker that the U.S. Trustee retained Professor Jonathan C. Lipson ("**Professor Lipson**") to provide an expert report. Due to Jackson Walker's efforts to withhold documents and block testimony by asserting the attorney-client privilege with Holland & Knight, LLP when no privilege applied, the U.S. Trustee moved the Court to extend certain deadlines including, but not limited to, the deadline for Professor Lipson to consider documents and deposition testimony to prepare the Lipson Expert Report [ECF No. 342]. Jackson Walker objected [ECF No. 347], and the Court denied the U.S. Trustee's request to extend the deadline to produce affirmative expert reports [ECF No. 358].

5. On September 30, 2024, the U.S. Trustee timely submitted to Jackson Walker's counsel the *Expert Report of Professor Jonathan C. Lipson Regarding Certain Disclosure and*

2

*Ethics Matters* ("**Lipson Expert Report**"). In summary, the Lipson Expert Report provided opinions on:

    a. the history of and role of disclosure and transparency in bankruptcy reorganizations;

    b. Freeman's and Jackson Walker's conflicts;

    c. actions called for as a result of Jackson Walker's knowledge; and

    d. whether Jackson Walker ignored, obfuscated, and concealed the Relationship.

Professor Lipson attached to the Lipson Expert Report a list of case materials upon which he relied to reach his opinions, as well as his professional resume that included lists of current and prior appointments; publications and works in process; professional and community activities; significant expert engagements; education; private practice experience; and admissions to practice. The Lipson Expert Report attached as Exhibit A to Jackson Walker's Motion is incorporated by reference as if set forth fully herein ("**Exhibit A**").

    6. Jackson Walker deposed Professor Lipson on November 13, 2024.

    7. Jackson Walker's Motion asks the Court to exclude the Lipson Expert Report and Professor Lipson's opinion testimony. Jackson Walker incorrectly argues that the Lipson Expert Report is not reliable. *See* Mot. at 7. Additionally, Jackson Walker argues, without considering the mixed questions of fact and law presented in this matter, that the Lipson Expert Report should be stricken, and Professor Lipson not allowed to testify because his opinions "are legally irrelevant because they fall within the role of the Court." Mot. at 7. Contrary to Jackson Walker's attempt to keep this Court from hearing relevant evidence, the Lipson Expert Report should not be stricken. Professor Lipson should be allowed to testify, because such testimony "is sufficiently reliable and

relevant to be helpful" to the Court. *See Tex. Gen. Land Off. v. Pearl Res. LLC (In re Pearl Res. LLC)*, No. 20-31585, 2023 WL 8642303, *2 (Bankr. S.D. Tex. Dec. 13, 2023).

## ARGUMENT

### A. The Lipson Expert Report Is Reliable Under Federal Rule of Evidence 702, And the Issues Raised By Jackson Walker Go to Weight and Not Admissibility.

8. The Lipson Expert Report is sufficiently reliable and will be helpful to this Court. As this Court has observed, "[t]he ultimate inquiry is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact." *Id.* In conducting this analysis, "[a] court is not to weigh expert testimony" because the "Court's gatekeeping role is not a substitute for the adversarial process." *Id.* The traditional and appropriate means for challenging proffered evidence is "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]" *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 596 (1993)).

9. When an expert's reliability is challenged, the party proffering the expert "has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible and reliable, but need not satisfy each *Daubert* factor." *Id.* at *3. And in cases of bench trials (like the proceeding before this Court), courts recognize that "[m]ost of the safeguards provided for in *Daubert* are not as essential[.]" *Id.* at *9 (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)); *accord NGP Cap. Res. Co. v. ATP Oil & Gas Corp. (In re ATP Oil & Gas Corp.)*, No. 12-36187, 2013 WL 6798767, at *1 (Bankr. S.D. Tex. Dec. 19, 2013) (Bankr. J. Isgur). This is, in part, because there is no risk of tainting a trial by exposing a jury to unreliable evidence and the importance of the Court's gatekeeping role is minimized. *See Whithouse Hotel Ltd. v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010).

10. Courts recognize that "[e]xperts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than the admissibility." *In re Pearl*

4

*Res. LLC*, 2023 WL 8642303, at *3 (citing *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). Accordingly, courts recognize that "[t]he standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the general field related to the subject matter in question." *Guzman v. Mem'l Hermann Hosp.*, No. 07-3973, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008). A court need only determine that the expert's "training or experience are sufficiently related to the issues and evidence before the court[.]" *Id.* (citing *Primrose Op. Co. v. Nat'l Am. Ins.*, 382 F.3d 546, 562–63 (5th Cir. 2004). The court's responsibility is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "Experts may permissibly draw opinions 'from a set of observations based on extensive and specialized experience.'" *Banks. v. Centauri Specialty Ins. Co.*, No. 18-2008, 2019 WL 3937681, at *3 (S.D. Tex. July 17, 2019) (quoting *Kumho Tire Co.*, 526 U.S. at 156).

      i.    *The Lipson Expert Report is reliable under Federal Rule of Evidence 702 because Professor Lipson is an expert in, among other things, bankruptcy and corporations.*

11. Jackson Walker does not (and could not) seriously dispute that Professor Lipson is an expert in bankruptcy law and procedure. The Motion acknowledges Professor Lipson is a tenured law professor at Temple University-Beasley School of Law. *See* Mot. at 1. The Motion further acknowledges that Professor Lipson "has experience in, and knowledge about, bankruptcy law and procedure." Mot. at 11.

12. As set forth in Appendix B to the Lipson Expert Report, Professor Lipson teaches courses on, among other things, bankruptcy, contracts, and corporations. Ex. A at 38; Ex. 1 at 9:9–

12, 24:3–20, 25:12–23.[3] He has published extensively on bankruptcy matters and, in particular, has published on transparency in the bankruptcy system. Ex. A at 39–41. Professor Lipson, among other things, is a faculty advisor to *The American Bankruptcy Law Journal*, *id.* at 42; Ex. 1 at 110:12–14, was counsel of record in *amici curiae* briefs filed in the United States Supreme Court in the *Purdue Pharma* and *Jevic Holding Corp.* cases, and argued in the *FTX Trading Ltd.* case before the Third Circuit Court of Appeals. Ex. A at 42–43; Ex. 1 at 32:4–16.

13. In addition to being counsel of record in *amici curiae* briefs in some of the nation's most consequential recent bankruptcy cases, he has served as a consulting expert in bankruptcy cases including the *Enron Corp.* case. Ex. A at 43; Ex. 1 at 39:15–40:17. In *Enron*, Professor Lipson was engaged to analyze whether the debtor in possession, a corporation based in Texas, had malpractice or similar claims against lawyers. Ex. 1 at 39:22–40:6. In particular, the unsecured creditors committee retained Professor Lipson because he was a "bankruptcy expert and . . . understood how the bankruptcy issues presented by the transactions and by the lawyers' opinions might have been relevant to causes of action that the creditors committee was considering." *Id.* at 40:7–17.

14. In the case of *Dexter Distrib.*, Professor Lipson served as a consulting expert on "claims of breach of fiduciary duty." Ex. A at 43; Ex. 1 at 43:12–45:13. In that case, the debtor in possession retained Professor Lipson at the direction of the bankruptcy judge to provide "an independent expert report on what sort of duties the bankruptcy estate owed to the shareholder in question." Ex. 1 at 43:16–44:12. Though "focused chiefly on the fiduciary duties under the

---

[3] A partial transcript of Professor Lipson's deposition is attached as Exhibit 1, and citations to page and line numbers are to such transcript's original page and line numbers.

bankruptcy code[,]" Professor Lipson explained at his deposition that he believed he also had to look at "state law by analogy and probably Delaware in particular[.]" *Id.* at 44:18–45:13.

15. Bankruptcy practice is a specialized practice, and bankruptcy ethics involves an inseparable mixture of federal law, *see, e.g.*, 11 U.S.C. §§ 101(14), 327, 328, and state imposed minimum ethics standards. Professor Lipson is an expert in bankruptcy law and procedures, and he has years of experience researching, analyzing, publishing, and teaching regarding, among other things, disclosure obligations in bankruptcy, which obligations arise out of intertwined federal and state- based ethical duties. *See generally* Ex. 1 at 110:5–15.

16. In this case, Jackson Walker argues that the Lipson Expert Report is not reliable because Professor Lipson has never taught a professional responsibility class, never published about general ethics rules, never served as an expert in a legal malpractice case, and does not hold any certifications in legal ethics.[4] *See* Mot. at 12. Jackson Walker's arguments are flawed, legally and factually.

17. Legally, as explained above, the issue for the Court to decide is whether Professor Lipson is an expert on bankruptcy law and procedure. He is. Because Professor Lipson is an expert on bankruptcy law and, in particular, disclosure obligations in bankruptcy cases, the Court

---

[4] Some of Jackson Walker's arguments are perplexing considering its choice of purported rebuttal expert, Renee Knake Jefferson ("**Professor Jefferson**"). For example, Jackson Walker complains Professor Lipson is not licensed by the Texas State Bar. *See* Mot. at 13. Neither is Professor Jefferson. *See* ECF No. 569-2 at 43. And Jackson Walker complains that Professor Lipson has not written about Texas ethics rules. This is a bankruptcy case that involves specialized knowledge of bankruptcy law and procedure, as well as how to analyze and apply state laws and concepts to that bankruptcy framework. Yet Professor Jefferson has no appreciable bankruptcy experience. ECF No. 569-3 at 14, 17, 20 ("I'm not an expert in bankruptcy law, I haven't practiced bankruptcy law, I don't teach bankruptcy law. It's not my field.").

should find that the Lipson Expert Report is reliable. Jackson Walker's alleged deficiencies go to weight.

18. Factually, Jackson Walker ignores or overlooks testimony given by Professor Lipson at his deposition. While Professor Lipson testified that he has never taught ethics as "a stand alone course[,]" he testified he teaches "ethics . . . in every course" he teaches. Ex. 1 at 20:8–9. When asked if ethics was part of his curriculum, Professor Lipson answered affirmatively and gave an example from his commercial transactions course. *Id.* at 20:10–17. And Jackson Walker's complaint that Professor Lipson has never "served as an expert in a legal malpractice case[,]" Mot. 12, ignores Professor Lipson's testimony regarding his role as an expert in the *Enron* case.

19. In this case, exclusion of Professor Lipson's opinions based on Jackson Walker's attacks on his qualifications is unwarranted, because any quibbles regarding Professor Lipson's qualifications should be raised at trial. *See Daubert*, 509 U.S. at 596; *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018). Professor Lipson's study and experience easily meets the liberal and flexible standard for this Court to determine that Professor Lipson is qualified to testify as an expert and that the Lipson Expert Report is reliable. Professor Lipson's training and experience are sufficiently related to issues before the Court, and the issues raised by Jackson Walker concerning his qualifications simply go to the weight of testimony to be provided.

> ii. *The Lipson Expert Report is also reliable because Professor Lipson augmented his expertise and experience through reliance on bankruptcy and ethics expert, Nancy B. Rapoport.*

20. In forming opinions, experts may rely upon information that experts in a particular field would reasonably rely. Fed. R. Evid. 703; *see, e.g., Trevino v. Transportadora Egoba SA de*

*CV*, No. 5:22-CV-92, 2024 WL 4987174, at *4 (S.D. Tex. Sept. 30, 2024) (discussing an expert's reliance on published literature in the field). That is what Professor Lipson did.

21. The Lipson Expert Report cites to a paper written by Nancy B. Rapoport ("**Professor Rapoport**") entitled *Am I My Colleague's Keeper When it Comes to Disclosing Connections?* A copy of Professor Rapoport's article is attached as Exhibit 2.

22. Professor Rapoport is a Texas licensed attorney[5] and formerly the dean of the University of Houston Law Center. Ex. 3 at 264:5–6 ("She's the former dean at the University of Houston . . . but she left before I joined the law school").[6]

23. During his deposition, Professor Lipson testified that Professor Rapoport's published article "provides an elaborate analysis of both the Texas rules and the Bankruptcy rules as they interact in connection with this very matter." Ex. 1 at 55:19–24. He went on to testify that he relied on the Rapoport article, *id.* at 112:4–5, which article contained her analysis of the interplay between certain Texas Disciplinary Rules of Professional Conduct and bankruptcy law. *See* Ex. 2. Professor Lipson testified that Professor Rapoport is "the leading expert on ethics in bankruptcy and she has a very I think thoughtful, persuasive, correct discussion of this issue in this case and says obviously I think in her view that the Texas Disciplinary Rules of Professional

---

[5] Under Rules 104 and 201 of the Federal Rules of Evidence, the Court may, and is requested to, take judicial notice of the State Bar of Texas website listing Professor Rapoport's licensure status and her practice areas as "Bankruptcy, Ethics-Legal Malpractice." Fed. R. Evid. 104 and 201; *see* https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=205830 (last accessed February 20, 2025).

[6] A partial transcript of Professor Jefferson's deposition is attached as Exhibit 3, and citations to page and line numbers are to such transcript's original page and line numbers.

Conduct would apply here in order to help a bankruptcy court understand how to apply the bankruptcy system's own disclosure regime." Ex. 1 at 112:4–14.

24.     Even Jackson Walker's purported rebuttal expert did not dispute that it is normal for legal experts to rely on scholarly articles, journals, and restatements. See Ex. 3 at 265:2–22. Professor Jefferson also agreed that Professor Rapoport is a recognized expert in bankruptcy law and a recognized expert in ethics. Id. at 264:17–22, 276:20–23. Finally, Professor Jefferson acknowledged that personal conflicts of a lawyer are imputed to all lawyers within a firm. Id. at 266:6–11.[7]

25.     In this case, even though Professor Lipson's training and experience alone are enough, his use of accepted methodology to form an opinion regarding certain Texas Disciplinary Rules of Professional Conduct is sufficient to meet the liberal and flexible standard for this Court to determine that Professor Lipson is qualified to testify as an expert and that the Lipson Expert Report is reliable. Through the adversarial process, Jackson Walker may later attempt to challenge the weight that should be given to Professor Lipson's testimony.

---

[7] Jackson Walker makes a single-paragraph argument that the Lipson Expert Report is not reliable, because the "Texas ethics rules are *only* applicable to individual lawyers; they cannot be applied—as Mr. Lipson does—to a law firm." Mot. at 11 (footnote omitted). The argument is so undeveloped it should be disregarded and deemed abandoned. The U.S. Trustee can only assume Jackson Walker criticizes Professor Lipson for writing that a personal interest conflict of Freeman "would be imputed to [Jackson Walker]." Ex. A at 5. Jackson Walker's argument overlooks the fact that, as its own expert acknowledged, a personal interest conflict is imputed to every lawyer in the firm which is *ipso facto* the firm. In any event, this argument of Jackson Walker's, at best, goes to weight.

**B.     The Lipson Expert Report Addresses Matters of Mixed Law and Fact For Which Experts Are Allowed to Give Opinions.**

26.     Contrary to the Motion, expert opinions are not always excluded because they touch upon legal matters. Expert testimony is appropriate when the testimony relates to mixed issues of law and fact and does not instruct the trier of fact how to decide the ultimate issue. *See Guffy v. DeGuerin (In re Brown Med. Ctr., Inc.)*, No. 16-0043, 2017 WL 2633533, at *3 (S.D. Tex. June 19, 2017). Mixed questions of law and fact are those "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982).

27.     In *Guffy*, the plaintiff asserted fraudulent transfer claims under section 548 of the Bankruptcy Code. 2017 WL 2633533, at *1. The defendant offered an expert to "opine[] that there was an attorney-client relationship between DeGuerin and BMC, and that funds provided to DeGuerin and maintained in DeGuerin's IOLTA Trust Account remained property of BMC." *Id*. The plaintiff moved to exclude the expert. *Id.* In that case, the district court denied the motion to exclude the ethics expert's opinion regarding the ownership of the funds, because the "opinion does not invade the province of the judge and jury because it is not a pure legal conclusion and does not instruct the jury how to decide the ultimate question before it regarding Plaintiff's fraudulent transfer claims." *Id.* at *3.[8] Similarly, in denying the motion to exclude the expert's opinion regarding the existence of an attorney-client relationship, the district court held that

---

[8] *But see Franklin v. Regions Bank*, No. 16-1152, 2018 WL 3212053, at *3, 10 (W.D. La. Apr. 18, 2018) (refusing to consider expert's opinion because it offered impermissible legal conclusions related to professional conduct).

11

whether an attorney-client relationship existed was a question of fact. *See Guffy*, 2017 WL 2633533, at *3.

28.     The ultimate issue in this matter is whether relief should be granted under Rule 60(b)(6) of the Federal Rules of Civil Procedure ("**Rule 60(b)(6)**"). Relief under Rule 60(b)(6) applies to "extraordinary circumstances." *Ackermann v. United States*, 340 U.S. 193, 199 (1950); *see also Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002)

29.     In seeking relief under Rule 60(b)(6), the Rule 60 Motions assert matters that sound in, among other things, misrepresentation, concealment, and breach of fiduciary duty.[9] Allegations of misrepresentation, concealment, and breach of fiduciary duty raise mixed questions of law and fact.

30.     Moreover, disputes in this case exist regarding who knew what and when, what obligations existed and when, the interplay of bankruptcy law and ethics, and, ultimately, whether to grant relief under Rule 60(b)(6). The issues involved and the ultimate issue are mixed questions of law and fact.

31.     The Motion should be denied because Professor Lipson will testify regarding mixed issues of law and fact, and his opinions do not instruct this Court how to decide the ultimate issue, which is whether retention and compensation orders should be vacated under Rule 60(b)(6).

---

[9] The Rule 60 Motions expressly allege that Jackson Walker violated fiduciary duties. *See, e.g.*, *In re Neiman Marcus Grp. LTD*, Case No. 20-32519, ECF No. 3224 at ¶¶ 3, 141, and Prayer for Relief (Bankr. S.D. Tex.).

> i. *The Motion should be denied because the Lipson Expert Report and testimony from Professor Lipson will help the trier of fact.*

32. As previously discussed, after the court determines that the liberal and flexible reliability standard is met, the inquiry shifts to whether the expert testimony will be helpful. *In re Pearl Res.*, 2023 WL 8642303, at *2.

33. The Fifth Circuit Court of Appeals has recognized that "opinions dealing with the ethical obligations" of attorneys may be helpful to the trier of fact. *Floyd v. Hefner*, 556 F. Supp. 2d 617, 643 (5th Cir. 2008). "Expert testimony by lawyers is permitted in claims of legal malpractice and breach of fiduciary duty." *Id.* And expert testimony is permitted to "establish a fiduciary breach where issues of . . . loyalty in the context of conflicting interests or adverse representation or causation and damages are beyond common knowledge." *Id.*; *see also Geiserman v. MacDonald*, 893 F.2d 787, 794 (5th Cir. 1990) (acknowledging that expert testimony is allowed in cases of legal malpractice and breach of fiduciary duty).

34. Similarly, the issue of whether counsel was "burdened by any impermissible conflicts of interest" is a mixed question of law and fact for which a court may be guided by expert testimony but is not bound by it. *Georgine v. Amchem Prods., Inc.*, 157 F.R.D. 246, 327 (E.D. Pa. 1994); *see also Ahearn v. Fibreboard Corp.*, No. 6:93cv526, 1995 U.S. Dist. LEXIS 11523, at *45 n.4 (E.D. Tex. July 27, 1995).

35. In this case, Professor Lipson's testimony will be helpful to the Court. By way of example and not in limitation, testimony relating to the historical need for transparency in the bankruptcy system and the reasons Congress insisted professionals be disinterested and file fulsome disclosures to verify disinterestedness will put into context the egregiousness of Jackson Walker's behavior and assist the Court in determining whether relief should be granted under Rule

60(b)(6).  Professor Lipson's testimony will help the Court assess the systemic implications of Jackson Walker's conduct in light of its fiduciary and professional duties as a representative of bankruptcy estates, the ethical standards imposed by bankruptcy law, and the ethical standards arising as a result of the interplay of bankruptcy law and applicable ethics rules.  Further, Professor Lipson's testimony will help the Court determine whether Jackson Walker, by way of example and not in limitation, ignored, obfuscated, and concealed the Relationship.  Professor Lipson's testimony will help the Court determine if Jackson Walker denied parties in interest the ability to exercise their rights.

36. At the end of the day, there is no jury to confuse, and the Court is not bound by any testimony that Professor Lipson might give.  Although the Court will not be bound by Professor Lipson's testimony, his testimony is an important part of the expected evidence.  Given the scandal involved, the harm to public confidence caused by that scandal,[10] and the corresponding need for transparency, the Court should deny the Motion and refuse to exclude Professor Lipson's opinions.

> ii. *Even if the Court determines that Professor Lipson may not opine on certain matters, complete exclusion is unwarranted because Professor Lipson should be allowed to testify about matters that do not implicate legal conclusions.*

37. Even if this Court determines the Lipson Expert Report contains some legal conclusions Professor Lipson may not give, a blanket exclusion of all testimony from Professor Lipson is unwarranted.  "Courts have found that the presence of impermissible legal conclusions

---

[10] "[T]he U.S. Trustee has been seeking to claw back attorneys' fees paid to Jackson Walker . . . . But the damage has been done.  Public confidence in our courts is difficult to rebuild." *Van Deelen v. Jones, et al.*, Case No. 4:23-cv-03729, ECF No. 101 at 38 (S.D. Tex.).  *See also, e.g., Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvements Act of 2002*, Compl. No. 05-24-90002 at 6 (5th Cir. Oct. 13, 2023) (finding cause to publicly file an ethics complaint against then-Judge Jones).

in an expert's report is not a sufficient basis to strike the entirety of his testimony, particularly where . . . his report provides additional, potentially admissible opinions." *America Can! v. Arch Ins.*, 597 F. Supp. 3d 1038, 1047 (N.D. Tex. 2022) (quotation and citations omitted). Moreover, "experts are permitted to offer opinion testimony as to industry standards or norms and whether or not they were followed in a particular case, as long as such opinions involve questions of fact rather than purely legal matters." *Id.* (quotation and citation omitted). Completely excluding an expert because the expert may offer legal conclusions is improper, because "the line between permissible and impermissible lines of questioning can be difficult to draw, particularly without the context of live testimony at trial." *Id.* at 1048 (quoting *Tajonera v. Black Elk Energy Offshore Ops.*, No. 13-0366, 2016 WL 8274173, at *8 (E.D. La. May 26, 2016)).

38. In this case, the Lipson Expert Report contains permissible opinions regarding, among other things, standards of care, general ethical and fiduciary obligations of debtor's counsel, the interplay between state ethical minimum standards and bankruptcy ethical standards, and the environment that led to Congress imposing disclosure obligations on counsel and requiring such to be disinterested. To the extent the Court makes the determination the Lipson Expert Report states impermissible legal conclusions, the Court should preserve the permissible parts.

    *iii.    An expert report is not inadmissible because it supports a party's position.*

39. Finally, Jackson Walker asserts that the Lipson Expert Report merely parrots the positions of the U.S. Trustee. It is hardly surprising that a party would introduce an expert that supports at least some of the party's arguments. In any event, Jackson Walker's parroting argument crumbles under modest review and analysis.

40. Jackson Walker's parroting argument lacks credibility. If Jackson Walker believed the Lipson Expert Report merely parroted the U.S. Trustee's position, it would have asked its

expert to render an opinion on its duty to disclose the Relationship and the personal interest conflict caused by the Relationship. Jackson Walker, however, did not ask that of Professor Jefferson. Ex. 3 at 301:1-4 (Professor Jefferson testifying that she "was not asked to reach an opinion as to whether the relationship between [Elizabeth] Freeman and Judge Jones rose to the level of constituting a personal conflict of interest that would require disclosure"). There is a simple explanation for that astounding oversight—Jackson Walker feared that if it asked Professor Jefferson to opine on that issue, she would have been forced to agree with Professor Lipson.

41. Moreover, a comparison of the allegations in the Rule 60 Motions to the Lipson Expert Report demonstrates that it does not merely parrot the Rule 60 Motions. The U.S. Trustee asked Professor Lipson to render opinions on seven questions set forth in the retainer letter attached as Exhibit 4. Professor Lipson then synthesized the questions and gave a detailed report that expressed his independent opinions. For the reasons set forth above and as may be argued at a hearing on this matter, the Motion should be denied.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Motion, sustain the U.S. Trustee's objection to the Motion, and grant the U.S. Trustee any other relief the Court deems just or necessary.

[Signature Page Follows]

Date: February 20, 2025                             Respectfully Submitted,

                                                    KEVIN M. EPSTEIN
                                                    UNITED STATES TRUSTEE
                                                    REGION 7, SOUTHERN AND WESTERN
                                                    DISTRICTS OF TEXAS

                                                    By: */s/ Alicia Barcomb*
RAMONA D. ELLIOTT                                   MILLIE APONTE SALL
Deputy Director/                                    Assistant U.S. Trustee
General Counsel                                     Tex. Bar No. 01278050/Fed. ID No. 11271
NAN ROBERTS EITEL                                   VIANEY GARZA
Associate General Counsel                           Trial Attorney
Fed. ID No. 561266                                  Tex. Bar No. 24083057/Fed. ID No. 1812278
DANIELLE PHAM                                       ALICIA BARCOMB
Trial Attorney                                      Trial Attorney
Department of Justice                               Tex. Bar No. 24106276/Fed ID No. 3456397
Executive Office for                                515 Rusk, Suite 3516
United States Trustees                              Houston, Texas 77002
Washington, D.C. 20530                              (713) 718-4650 – Telephone
(202) 307-1399 – Telephone                          (713) 718-4670 – Fax
                                                    Email: millie.sall@usdoj.gov
                                                           vianey.garza@usdj.gov
                                                           alicia.barcomb@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025 a copy of the foregoing was served on the parties listed in the attached service list by ECF transmission.

                                                    By: */s/ Alicia Barcomb*
                                                          Alicia Barcomb

## CERTIFICATE OF CONFERENCE

Counsel for the U.S. Trustee and counsel for Jackson Walker conferred via video conference on February 12 and 14, 2025, but were unable to resolve the matters raised in the Motion.

                                                    By: */s/ Alicia Barcomb*
                                                          Alicia Barcomb