**From:** Cowlishaw, Pat[pcowlishaw@jw.com]
**Sent:** Mon 3/8/2021 11:30:49 PM Coordinated Universal Time
**To:** Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
**Subject:** Our Call

EXHIBIT

6-1

*[External email]*

Peter,

I'm still uncertain (or failed to take good notes) on what rule our lawyer may have violated.   Are you seeing a conflict under Texas 1.06 arising out of the lawyer's interest in a matter in which the judge presided?  Other?

I'm not meaning to omit rules of good judgment, common sense, etc., but rather trying to understand more strictly whether she may have violated DRs here. Thanks.

Pat

**From:** Jarvis, Peter R (POR - X55877)[/O=HOLLAND & KNIGHT/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=JARVIS, PETER R (POR - X55801)9BF]
**Sent:** Tue 3/9/2021 12:10:49 AM Coordinated Universal Time
**To:** 'Cowlishaw, Pat'[pcowlishaw@jw.com]
**Subject:** 28 USC 455
**Attachment:** Our Call
**Attachment:** Potashnick v. Port City Const. Co.

EXHIBIT
**6-2**

Pat,

My starting point here is 28 USC 455.  See attached fairly old 5Circuit case.  If the bankruptcy court judge either had to recuse or had to disclose and get consent to continue, and if one or more of your firm's clients are or may be harmed as a result, then I think there are at least personal interest conflicts for the lawyer in the relationship.

I will have more later.

Regards,
Peter

CONFIDENTIAL

H&K_0000051

# Holland & Knight

EXHIBIT

6-3

601 SW Second Avenue, Suite 1800 | Portland, OR 97204 | T 503.243.2300 | F 503.241.8014
Holland & Knight LLP | www.hklaw.com

Peter R. Jarvis
+1 503-243-5877
Peter.Jarvis@hklaw.com

September 22, 2021

*Via E-mail (pcowlishaw@jw.com)*

Patrick R. Cowlishaw
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201

      Re:     Judicial Disqualification Question

Dear Pat:

## Summary and Introduction

Based upon my work as a lawyer for lawyers,[1] you have asked for my opinion regarding the subject discussed in your September 1, 2021 letter to me. For purposes of this letter, I will assume as true the facts as stated in your letter and will not fully repeat them here.

I understand your core question to be whether the steps outlined in your letter regarding your partner, Elizabeth Freeman, and the practice that your firm and she have before U.S. Bankruptcy Court Judge David R. Jones are sufficient to meet public disclosure obligations that Ms. Freeman and your firm may have and to allow Judge Jones not to have to make further disclosures or disqualify your firm or himself from cases on which Ms. Freeman and your firm may work on a going-forward basis.[2] Although there is a lack of what I would consider "all fours" authority and thus the ultimate resolution of this issue cannot be said to be free from doubt, it is my opinion that the steps that your firm has taken and plans to take should be regarded as sufficient to meet any such obligations and avoid such disqualification.

## Legal Analysis

28 USC §455(a) through (c), which applies to Bankruptcy Court judges, provides that:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

---

[1] A copy of my "website bio" is enclosed herewith as Exhibit A.

[2] Although Judge Jones is not my client, I include a discussion of his potential obligations since they are pertinent to the assessment of the obligations of Ms. Freeman and your firm.

Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth | Houston
Jacksonville | Los Angeles | Miami | New York | Orange County | Orlando | Philadelphia | Portland
San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

JW_00012070

Patrick R. Cowlishaw
September 22, 2021
Page 2

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

Given, *inter alia*, that Ms. Freeman and Judge Jones have never been married or lived together and that they do not appear to have any other common economic interests or investments, the sole portion of 28 USC §455 that it is necessary to consider at length is the language in 28 USC §455(a) which would require Judge Jones to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."

As is explained in your letter, there has been no romantic relationship between Ms. Freeman and Judge Jones since at least March 2020, and Ms. Freeman, and Judge Jones have not and do not live together. Although Ms. Freeman and Judge Jones are and can be expected to remain close personal friends, both of them recognize and agree that this must remain the extent of their relationship. In addition, and as explained in your letter, Ms. Freeman's work at your firm has for some time excluded and continues to exclude any appearances before or the signing of any pleadings in cases pending before Judge Jones. Additionally, since March 2021, when your firm management first learned of the prior romantic relationship, Ms. Freeman has not participated in any way in in cases pending before Judge Jones, and her 2021 compensation has not included and will not include any portion of firm net income earned from cases that have been or are pending before Judge Jones.

JW_00012071

Patrick R. Cowlishaw
September 22, 2021
Page 3

Your letter states, however, that your firm is considering changing the work that Ms. Freeman may do beginning in April 2022.[3] This will be at least two years since Ms. Freeman and Judge Jones had a romantic relationship. Even then, however, Ms. Freeman will continue not appearing before or signing pleadings submitted to Judge Jones for another four years. It follows that Judge Jones is only likely even to see Ms. Freeman's name on any documents submitted to the court when it appears along with others on attorney fee requests.

There is no question but that a too-close personal connection between a judge and a lawyer can require judicial disqualification. *See*, *e.g.*, *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980), noting that:

> Because 28 U.S.C. s 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street.

For purposes of this kind of analysis, however, it is neither necessary nor appropriate to indulge in suspicions or speculations beyond those which a reasonable person would consider. *See*, *e.g.*, *Ayati-Ghaffari v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:18-CV-483, 2019 WL 452756 (E.D. Tex. Feb. 5, 2019) at *1:

> Under § 455, Plaintiff, as the party moving to recuse, bears "a heavy burden of proof" in showing the Court should recuse. *E.g.*, *United States v. Reggie*, No. 13-111-SDD-SCR, 2014 WL 1664256, at *2 (M.D. La. Apr. 25, 2014). The statute provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. The decision whether to recuse under § 455 is committed to the sound discretion of the Court asked to recuse. *See*, *e.g.*, *Garcia v. City of Laredo*, 702 F.3d 788, 793-94 (5th Cir. 2012); *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004) (quoting *Chitimacha Tribe v. Harry L. Laws* Co., 690 F.2d 1157, 1166 (5th Cir. 1982) ). The United States Supreme Court has made clear "[t]he recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004) (emphases added); *see also United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016), cert. denied, 137 S. Ct. 1098 (2017). The Fifth Circuit has interpreted this mandate to mean that "[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person," while remaining "mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary" would be. *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995). Indeed, the statute exists to mandate recusal in cases

---

[3] You also have stated that the adjustment to her year-end 2021 compensation, to exclude any portion of fees earned by the firm in cases before Judge Jones, will not be repeated at year-end 2022.

Patrick R. Cowlishaw
September 22, 2021
Page 4

> where it truly appears (or is the case that) the presiding judge cannot consider the case impartially—not where a litigant's speculation based on incomplete information implies concealment and impropriety. See H.R. REP. NO. 93-1453, at 6355 (1974).

*See also Womack v. Wright*, Civil Action No. 4:18-CV-567, 2019 WL 442254 (E.D. Tex. Feb. 4, 2019) at *1 ("Under § 455, Defendant, as the party moving to recuse, bears a heavy burden of proof in showing the Court should recuse") (internal quotation omitted); *Fields v. Texas Department of State Health Services*, Civil Action No. 4:16-CV-607, 2018 WL 2933962 E.D. Tex. June 12, 2018) at *1 ("The decision whether to recuse under § 455 is committed to the sound discretion of the Court asked to recuse"); *In re Prince*, Adv. Proc. No. 15–4010, 2016 WL 1398480 (Bkr. E.D. Tex. Apr. 6, 2016) at *3 ("This objective standard cannot be satisfied by mere speculation about a judge's state of mind"); Charles Gardner Geyh & Kris Markarian, <u>Judicial Disqualification:  An Analysis of Federal Law</u> 21 (Third Ed. 2020).[4]

By the time that six or more years will have passed since any romantic relationship existed between Ms. Freeman and Judge Jones, it would seem most unlikely that Judge Jones' partiality could reasonably be questioned if Ms. Freeman personally appears before him or personally signs pleadings submitted to him.  Even before then, however, it would seem most unlikely that Judge Jones would be consciously or unconsciously biased because Ms. Freeman had worked outside of court on aspects of a bankruptcy matter that ultimately came before him or because Judge Jones may be called upon to pass upon the reasonableness of a fee request that includes some of Ms. Freeman's time.[5]  But even if these risks to impartiality could be said to be more than most unlikely, they seem to me to fall within the range of what Judge Jones is entitled to consider as not requiring recusal.   In other words, it is my opinion that a reasonable observer aware of all

---

[4] As this monograph notes:

> In *Sensley v. Albritton*, [385 F.3d 591(5th Cir. 2004)] the trial judge's wife was employed as an assistant district attorney in the office representing the defendants, though she herself was in no way involved in the case. The plaintiffs moved to disqualify. Relying on §455(b)(5)(iii), they alleged that the outcome of the case might have an indirect effect on the judge's wife's ongoing employment in the office, in the event that the district attorney lost political popularity by losing the case. The Fifth Circuit found the plaintiffs' allegations unconvincing because "they are only able to make this argument by layering several speculative premises on top of one another to reach a speculative conclusion." [385 F.3d at 600.]

Geyh & Markarian, *supra*, at 70-71.  In *Sensley*, the risk of changed compensation was to the judge's spouse and not to someone with whom the judge was never married and had never lived with.

[5] In reaching this conclusion, I am assuming that until at least six years have passed, Judge Jones will not be called upon to assess the propriety of actions taken by Ms. Freeman as a lawyer.

JW_00012073

Patrick R. Cowlishaw
September 22, 2021
Page 5

surrounding facts and circumstances would conclude that there presently is and will continue to be an insufficient basis to question Judge Jones' impartiality.

I hope this letter is sufficient to address your questions and concerns in full. If not, or if I can provide you with additional information or input on any other issues, please let me know.

Sincerely yours,

HOLLAND & KNIGHT LLP

Peter R. Jarvis

PRJ:kfk

Enclosure

From: Jenkins, William[wjenkins@jw.com]
Sent: Tue 5/3/2022 5:50:34 PM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Cc: Cowlishaw, Pat[pcowlishaw@jw.com]
Subject: PRIVILEGED AND CONFIDENTIAL FW: confidential - disqualification issue [IMAN-JWDOCS.FID4392283]

**EXHIBIT**

**6-4**

*[External email]*

**William R. Jenkins, Jr. |** Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com

 **Jackson Walker** LLP

**From:** Cooper, Wade <wcooper@jw.com>
**Sent:** Thursday, April 28, 2022 3:23 PM
**To:** Ruzinsky, Bruce <bruzinsky@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** confidential - disqualification issue [IMAN-JWDOCS.FID4392283]

Bruce,

Thanks for this. I think it might be hard to visit tonight, but we ought to try to get us together as soon as we can. Maybe you could start by advising as to your schedule and we can go from there. Meantime, Pat helped me catalogue some additional thoughts and concerns.

We genuinely appreciate the effort being directed toward seeking a solution here.Disclosure is a subject we have considered, even before we knew the facts most recently disclosed. It brings with it a number of questions that would have to be thought through, and will require some time.Some of those arise out of the federal judicial disqualification statute itself, which addresses disclosure and waiver as follows:

"No justice, judge, or magistrate judge shall accept from the parties to a proceeding a waiver of any ground for disqualification enumerated in subsection (b).Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification."

28 USC § 455(e).

Questions to be considered include:

- Is "close personal relationship" sufficient to constitute "full disclosure" under the circumstances?

- Does the reference to "waiver" mean that, in addition to disclosure, the court must provide parties the opportunity to make an affirmative waiver of the grounds for disqualification (and, if granted by all "parties", the Judge may preside but if not granted by all parties, he must reassign the matter)?If so, is that a procedure that Judge Jones would consider undertaking whenever JW appears before him?
  - In the context of a bankruptcy proceeding, who all constitute the "parties" from whom a waiver is to be requested?  How does the disclosure/waiver rule apply to parties who join later in the proceeding?

- Subsection (e) above limits use of waiver to subjection (a) cases, i.e., cases in which the judge's impartiality may reasonably be questioned on grounds other than the specific prohibited relationships in subsection (b).One of the prohibited relationships is that of a spouse who appears as a lawyer in the proceeding.  § 455(b)(5).  Our understanding of Fifth Circuit precedent is that this rule would prohibit any equity partner of the judge's spouse from appearing before him and, because a spousal relationship was involved, there could be no curative disclosure or waiver.One guidance document on federal judges includes the comment that "recusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship." *Guide to Judiciary Policy, Vol. 2A at 12* (comment to Canon 3C). What is the risk that a reviewing court may view disclosure/waiver as inadequate in these circumstances, leaving our cases vulnerable to collateral attack?

Research may provide answers to some of the questions above, and we will undertake to have Peter Jarvis address them promptly.Other questions also may warrant consideration by all of us:

- How are Liz, Judge Jones, and the Firm going to address press and other inquiries that may follow the making of such a disclosure, e.g., "what is meant by 'close personal relationship'"?, "Does this disclosure mean that Mr. Van Deelen's allegations of a romantic relationship were correct?Or that such a relationship now exists?If so, why wasn't this disclosure made earlier?  Has this

H&K_0000890

relationship been a factor, or the driving factor, in the rise to prominence of JW's bankruptcy practice in Houston?

- ⦿▯▯▯▯▯The draft disclosure disclaims any financial interest in cases before the Judge and asserts that no compensation is based on the firm's cases there.  For the Firm to stand behind those assertions, Comp Committee would need to consider whether her compensation should be set without credit for any WAC or originations associated with cases in that court, as well as making the net income adjustment to eliminate sharing in profits derived from fees for cases in that court.  This of course would need to be considered by all concerned.

- ⦿▯▯▯▯▯If the draft disclosure were made, what opportunity will that create for collateral attack on our recent cases in this court, at least going back to McDermott？Should any cases be reopened, what risk does that raise of claims by our clients against the firm for the additional expense they will incur?

Along with all of this, but perhaps on a separate or parallel track, is the question of candor in Liz's communications with the firm, both in 2021 and during the recent meeting with Pat and Julia.When the most recently disclosed facts are presented to the full Management Committee, there may be members who, even after careful and dispassionate consideration, conclude that a serious question is raised regarding fitness for partnership.  When and how to address that issue also is going to take some time and care.

All of these are matters that we are glad and anxious to discuss with you.We too are anxious to move forward, but just want to share our sense that there is a lot of ground to cover yet.

---

**From:** Ruzinsky, Bruce <bruzinsky@jw.com>
**Sent:** Thursday, April 28, 2022 12:29 PM
**To:** Cooper, Wade <wcooper@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** RE: Disqualification Issue

Thanks Wade.

My flight lands a little after 4:00 and I was planning on going straight to the hotel to drop off my bags and check in, and then head over to the reception.

Let me know where and when you want to meet.

Thanks.

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4204 (Direct)
(713) 857-0220 (Cell)
(713) 308-4155 (Direct Fax)
bruzinsky@jw.com (email)
This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law

---

**From:** Cooper, Wade <wcooper@jw.com>
**Sent:** Thursday, April 28, 2022 12:27 PM
**To:** Ruzinsky, Bruce <bruzinsky@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** Re: Disqualification Issue

Bruce,
When do you arrive? Lets get together asap.
On Apr 28, 2022, at 12:20 PM, Ruzinsky, Bruce <bruzinsky@jw.com> wrote:

Gentlemen, here is a slightly revised version received this morning from Tom.

Elizabeth Freeman is a partner in the Firm. Ms. Freeman is a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011. She is also a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on the Firm's cases in Judge Jones' court. Ms. Freeman does not have any financial interest in the Firm's cases in Judge Jones' court in that the Firm does not provide to her any compensation based on the Firm's cases in Judge Jones' court and her partner share of the Firm's profits does not include a share in any of the Firm's profits attributable to cases in Judge Jones' court.

Looking forward to discussing this soon.

Thanks.

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4204 (Direct)
(713) 857-0220 (Cell)
(713) 308-4155 (Direct Fax)
bruzinsky@jw.com (email)
This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law

---

**From:** Ruzinsky, Bruce
**Sent:** Wednesday, April 27, 2022 7:07 PM
**To:** Cooper, Wade <wcooper@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** Disqualification Issue

Gentlemen, Matt and Liz and I met today with the attorney that Liz is consulting with (Tom Kirkendall). The meeting included a discussion about disclosures in bankruptcy cases, and Tom said he envisioned adding to the regular disclosures made specific information on JW attorneys who clerked for SDTX bankruptcy judges (and maybe those who clerked for SDTX USDC judges as well as since they ordinarily hear appeals from SDTX bankruptcy cases).

I asked what he had in mind for the disclosure regarding Liz, and he offered the following:

Elizabeth Freeman is a partner in the Firm and a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011 and a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on cases in Judge Jones' court. She also does not derive any financial benefit or compensation from the Firm's cases in Judge Jones' court, and her share of the Firm's profits does not include a share of any of the Firm's profits attributable to cases in Judge Jones' court.

We expect to have a follow-up call with Tom tomorrow to at least discuss the filing of such disclosures in both existing cases and new cases, or just in new cases.

In the meantime, I hope you will share your imput on this type of filed disclosure, and that we can discuss it soon (maybe tomorrow night in Dallas).

Thanks.

**Bruce J. Ruzinsky**
**Jackson Walker L.L.P.**
1401 McKinney Suite 1900
Houston, TX 77010
(713) 752-4204 (phone)
(713) 857-0220 (cell)
(713) 308-4155 (fax)
bruzinsky@jw.com
www.jw.com



H&K_0000892

Thanks.



Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4204 (Direct)
(713) 857-0220 (Cell)
(713) 308-4155 (Direct Fax)
bruzinsky@jw.com (email)
This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law

---

**From:** Ruzinsky, Bruce
**Sent:** Wednesday, April 27, 2022 7:07 PM
**To:** Cooper, Wade <wcooper@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** Disqualification Issue

Gentlemen, Matt and Liz and I met today with the attorney that Liz is consulting with (Tom Kirkendall). The meeting included a discussion about disclosures in bankruptcy cases, and Tom said he envisioned adding to the regular disclosures made specific information on JW attorneys who clerked for SDTX bankruptcy judges (and maybe those who clerked for SDTX USDC judges as well as since they ordinarily hear appeals from SDTX bankruptcy cases).

I asked what he had in mind for the disclosure regarding Liz, and he offered the following:

Elizabeth Freeman is a partner in the Firm and a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011 and a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on cases in Judge Jones' court. She also does not derive any financial benefit or compensation from the Firm's cases in Judge Jones' court, and her share of the Firm's profits does not include a share of any of the Firm's profits attributable to cases in Judge Jones' court.

We expect to have a follow-up call with Tom tomorrow to at least discuss the filing of such disclosures in both existing cases and new cases, or just in new cases.

In the meantime, I hope you will share your imput on this type of filed disclosure, and that we can discuss it soon (maybe tomorrow night in Dallas).

Thanks.

**Bruce J. Ruzinsky**
**Jackson Walker L.L.P.**
1401 McKinney Suite 1900
Houston, TX 77010
(713) 752-4204 (phone)
(713) 857-0220 (cell)
(713) 308-4155 (fax)
bruzinsky@jw.com
www.jw.com



**From:** Jarvis, Peter R (POR - X55877)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2D50741C3F244EBD815E374EE8641D76-JARVIS, PET]
**Sent:** Tue 5/3/2022 10:15:44 PM Coordinated Universal Time
**To:** Jenkins, William[wjenkins@jw.com]; Cowlishaw, Pat[pcowlishaw@jw.com]
**Subject:** William and Pat, For your review and comment

<u>Liz-Related Issues</u>

1.  If a judge does not disclose a potential issue arising under §455 with respect to a case before the judge but a lawyer for one of the parties in the case actually knows of the issue, does the lawyer have a duty—either under the statute or under the Texas Rules--to make disclosure?
2.  If a judge has an intimate personal relationship with a lawyer at a firm and also lives with that lawyer, is it sufficiently "full disclosure" (to the extent that full disclosure can be a cure under §455(a)) for the judge to say to counsel/parties to litigation pending before the judge that the judge has close personal relationship" with that lawyer  (assuming for the sake of this question that the lawyer who lives with the judge is not actually involved in the representation and will not receive any fees as a result of the litigation)?
3.  To the extent that disclosure plus waiver/consent in this situation can cure a potential problem under §455, does the party who receives the disclosure need affirmatively to express a waiver/consent or is the passage of time after disclosure and without objection sufficient?
4.  To what extent does it seem that this situation is not within §455(a) but must be treated as the equivalent of a marital relationship?

██████ **Related Issues**



Regards,
Peter



**EXHIBIT**

**6-6**

**From:** Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERBBCE9C8C]
**Sent:** Tue 5/10/2022 9:21:32 PM Coordinated Universal Time
**To:** Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
**Subject:** Jenkins Williams - Disclosure due tomorrow

Peter,

I talked to William and updated him on the matter. I told him that Tom agrees that a disclosure by the firm is necessary, but that an agreement around the wording of that disclosure has yet to be determined. The firm has a disclosure to the Court due tomorrow. William believes at this point, they should continue with the old disclosure until this is sorted out, but wanted our confirmation.

Let me know if you would like a call to discuss, or have an answer for William that I can pass along to him.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**EXHIBIT**

**6-7**

jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Friday, May 6, 2022 5:57 AM
**To:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** RE: Liz-Related Matters

*[External email]*
Peter, let's keep the advice on this matter oral at this point. Also, we discussed this internally yesterday. We think it makes sense for just an introductory call with Tom to throw out the idea that the two of you could work independently to try to find a solution. Once you have the answers to the various questions we have poised, maybe you can address them with Tom and try to find a solution. We are hoping that a solution by the two advisors would be accepted by all.

Thanks! I have a hearing at 10 – 11:30 Central this morning but am happy to chat any other time today.

Wm.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Thursday, May 5, 2022 11:10 PM
**To:** Jenkins, William <wjenkins@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** Re: Liz-Related Matters

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Between 10 am and noon Pacific?

Sent from my iPhone

> On May 5, 2022, at 4:26 AM, Jenkins, William <wjenkins@jw.com> wrote:
>
> *[External email]*
> Peter, what is your schedule like Friday for a call with Tom?

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Wednesday, May 4, 2022 6:15 PM
**To:** Jenkins, William <wjenkins@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** RE: Liz-Related Matters

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

William,

Several thoughts/responses re the Liz-related matters:

H&K_0002046

From: Jenkins, William[wjenkins@jw.com]
Sent: Mon 5/30/2022 10:03:49 PM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]; Harvey, Jacqueline (POR - X52939)[Jacqueline.Harvey@hklaw.com]
Cc: Cowlishaw, Pat[pcowlishaw@jw.com]; Cooper, Wade[wcooper@jw.com]
Subject: RE: Update On Meeting with Tom [IMAN-JWDOCS.FID560826]



*[External email]*
Pater and Jacqueline,

I hope you all are having a wonderful Memorial Day! Last week we discussed the situation and we think our next step is to share the memo you all are preparing with a couple of our bankruptcy partners so that we ensure they understand the gravity of the situation. Ideally we would like to share it with them tomorrow and then follow up with a call or meeting on June 1 or as soon thereafter as possible. Do you think we could get the memo sometime tomorrow?

As I recall, the topics were to include:

1. Both you two and Tom agree that Jones has a duty to disclose the situation under section 455(a), and perhaps an obligation to recuse himself in any case in which JW is counsel. The current situation without disclosure is not sustainable.
2. Rule 8.03(b) of the Texas Disciplinary Rules of Professional Conduct, may require the JW lawyers with knowledge of the situation to disclose the situation if Jones does not, and if we do not, we may be subject to misconduct under 8.03(a).
3. If Liz and JW have a co-counsel relationship or something similar, that may avoid issues in the future.

Thank you very much for your help on this matter!

Wm.


**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



---

**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Thursday, May 26, 2022 1:03 PM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>; Jenkins, William <wjenkins@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

---

**From:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Sent:** Thursday, May 26, 2022 10:52 AM
**To:** Jenkins, William <wjenkins@jw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

Thank you. I'll send a calendar invite for 12 p.m. PT / 2 p.m. CT for everyone who can join to call in.

**Jacqueline Harvey** | **Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Thursday, May 26, 2022 9:34 AM

**To:** 'Harvey, Jacqueline (POR - X52939)' <Jacqueline.Harvey@hklaw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

Thanks! We are a little anxious and would like to move as quickly as possible without upsetting anyone.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**From:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Sent:** Monday, May 23, 2022 12:59 PM
**To:** Jenkins, William <wjenkins@jw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Hi William,
We have not yet, but are planning for a call later this week. We will be sure to update you when we do. Were you able to assemble that list of cases either currently before Jones or in the pre-assignment stage?

**Jacqueline Harvey** | **Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Monday, May 23, 2022 7:24 AM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Subject:** RE: Update On Meeting with Tom

*[External email]*
Have you all had any further discussions with Tom after I spoke with Peter last week?

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**From:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Sent:** Monday, May 16, 2022 1:04 PM
**To:** Jenkins, William <wjenkins@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Subject:** RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Hi William,
We are speaking to Tom today at 1 p.m. PT. Are you and Pat free for a call at 2 p.m. PT / 4 p.m. Central? If so, I'll send dial in information.

CONFIDENTIAL

H&K_0002693



NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

*[External email]*
Yes, I am free all afternoon.  Please include Pat in an invite just in case he can join.

I need to follow up on the number of cases in Jones court or that are in a pre-filing stage.  I hope to have that information for our call this afternoon.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**From:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Sent:** Thursday, May 26, 2022 11:14 AM
**To:** Jenkins, William <wjenkins@jw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Hi William,

We have a call with Tom today at 11 a.m. PT / 1 p.m. CT. Are you free for a call later today so we can provide you with an update?

Also, were you able to get that list of cases together that are either before Judge Jones or pending assignment?

Thank you,

**Jacqueline Harvey** | **Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Thursday, May 26, 2022 9:10 AM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

*[External email]*
Any update on a call with Tom?

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**From:** Jenkins, William
**Sent:** Tuesday, May 24, 2022 11:30 AM

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Friday, May 13, 2022 8:03 AM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

*[External email]*
Let's set up a time to chat after you figure out when you will be talking to Tom.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



---

**From:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Sent:** Thursday, May 12, 2022 7:20 PM
**To:** Jenkins, William <wjenkins@jw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Hi William,
We are planning to talk to him on Monday, and will send you an update after we speak to him.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Thursday, May 12, 2022 7:58 AM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** Update On Meeting with Tom

*[External email]*
Can you give us an update on when you expect to discuss the situation again with Tom?

Thanks!

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com

H&K_0002694

From: Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERB8CE9C8C]
Sent: Thur 6/2/2022 7:28:25 PM Coordinated Universal Time
To: Jenkins, William[wjenkins@jw.com]; Cowlishaw, Pat[pcowlishaw@jw.com]
Cc: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: Jackson Walker - Attorney's Duties with Knowledge of Judicial Misconduct
Attachment: 2022.06.02 Memorandum Re Attorney Duties with Knowledge of Judicial Misconduct.pdf

**EXHIBIT**

**6-9**

Dear William and Pat,

Attached please find a copy of a memo that Peter Jarvis and I have prepared which assesses the disciplinary risk to lawyers in your firm's bankruptcy practice who assist in the representation of clients with cases pending before Judge Jones. This risk described in this memo is in addition to whatever risk partners and supervising lawyers at the firm may have under Texas RPC 5.01(a), which provides that a partner or supervising lawyer is subject to discipline for another lawyer's RPC violations if the partner or supervising lawyer "orders, encourages, or knowingly permits the conduct involved," or under Texas RPC 5.01(b) which provides for discipline of a lawyer with "direct supervisory authority" over another lawyer if the supervisory lawyer "knowingly fails to take reasonable remedial action to avoid or mitigate the consequences of the other lawyer's violation."

Weighing the risk to your firm, its lawyers, and its bankruptcy clients as a whole, Peter and I do not presently believe that there is a reasonably safe way forward as long as Elizabeth Freeman remains a part of your firm and her relationship with Judge Jones remains undisclosed. For example, we do not believe that the situation can be cured by having Ms. Freeman assume a non-partnership role at the firm such as associate, independent counsel, or "of counsel." We also do not believe that the situation can be cured by waiting to see which cases are assigned to Judge Jones and only informing clients if and when a case is assigned to him. Since the risk is already known to exist, it would have to be disclosed to prospective firm clients with cases that could come before Judge Jones.

In other words, and although we remain ready, willing, and able to consider any and all potential options, our present view is that the best and clearest way forward is likely to be for Ms. Freeman to leave your firm and either set up her own separate firm or join another firm. In cases that are not assigned to Judge Jones, your firm and she could then agree to work as co-counsel if your clients so desire and if you and she thought it appropriate to do so. Co-counsel arrangements would, however, have to be made on a case-by-case basis with the clients' best interests in mind and not on the basis of any *quid pro quo* or other mandatory cross-referral requirements. *See* Texas RPC 7.03(e)(2).

As we have explained, Peter and I believe based on our last conversation with him that Tom Kirkendall, who represents Ms. Freeman, either agrees already or is coming around to the view that Ms. Freeman cannot remain at your firm absent, at a minimum, disclosure on the record by Judge Jones.

There are other issues that will have to be addressed as a part of an overall approach or solution. For example, an assessment of what, if anything, to do with each of the cases that have been pending before Judge Jones during the present status of his relationship with Ms. Freeman seems appropriate, and the economic terms of Ms. Freeman's separation from your firm will need attention. If your colleagues and you agree, we would propose to address these matters with Tom as well as to assess whether or how his, or his client's, views may have evolved since we last spoke with him.

Best regards,

**Peter Jarvis | Holland & Knight**
Partner and Co-Leader, Legal Profession
Team
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland,
Oregon 97204
Phone 503.243.5877 | Fax 503.241.8014
peter.jarvis@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**Jacqueline Harvey | Holland & Knight**
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland,
Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
jacqueline.harvey@hklaw.com |
www.hklaw.com

Add to address book | View professional biography

# Holland & Knight

601 SW Second Avenue, Suite 1800 | Portland, OR 97204 | T 503.243.2300 | F 503.241.8014
Holland & Knight LLP | www.hklaw.com

Peter R. Jarvis
+1 503-243-5877
Peter.Jarvis@hklaw.com

## Memorandum

Date:   June 2, 2022

### Contents Covered by Attorney-Client Privilege and Work Product Doctrine
### Privileged and Confidential: Attorney-Client Communication

To:       Jackson Walker LLP

From:   Peter R. Jarvis & Jacqueline N. Harvey

Re:       Duties of Attorney Knowing of Judicial Misconduct

## I.   INTRODUCTION AND SUMMARY

This memorandum addresses the duties of a lawyer at a firm who knows that the judge presiding over a case in which the lawyer and the firm represents a party has a conflict of interest that the judge was and is required to disclose under 28 U.S.C. § 455 but has not disclosed. For purposes of this memorandum, we assume that the judge's conflict is a result of the lawyer's firm's involvement in the case in light of the lawyers who are a part of the firm but is also a conflict that could be waived by the parties.

Although we cannot say that the matter is entirely free from doubt, it is our opinion that the lawyer has a duty to disclose the judicial conflict to the lawyer's client and seek to obtain the client's agreement to make disclosure. If the client directs the lawyer to make disclosure, the lawyer must either see to it that the judicial conflict is disclosed or withdraw. If the client directs the lawyer not to make any disclosure, the lawyer must withdraw.

## II.   LEGAL AUTHORITY AND ANALYSIS

Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might be reasonably be questioned." "Because 28 U.S.C. § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *See Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980).[1]  But, a conflict under § 455(a) may be waived by the parties after

---

[1] *See also Ayati-Ghaffari v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:18-CV-483, 2019 WL 452756 (E.D. Tex. Feb. 5, 2019) at *1 ("The United States Supreme Court has made clear '[t]he recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances.'") (citing *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004)). "The Fifth Circuit has interpreted this mandate to mean that '[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather

CONFIDENTIAL

June 2, 2022
Page 2

"full disclosure on the record of the basis for disqualification." *Id.* at § 455(e).   The question here is therefore what a lawyer must do in a situation in which the lawyer is unwilling simply to withdraw from the case and the judge has not made any disclosure even though, to the lawyer's knowledge, the judge is aware of the underlying facts, which would appear to give rise to need for disclosure or recusal.

### A.    <u>Texas RPC 1.03</u>

Rule 1.03 of the Texas Disciplinary Rules of Professional Conduct (the "RPCs") provides that:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Or as stated in Comment [1] to RPC 1.03, "The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued to the extent the client is willing and able to do so."

On the facts assumed here, RPC 1.03 requires communication by the lawyer to the client of the judicial disclosure or recusal issue.  In fact, RPC 1.03 would require communication with the client even if the lawyer was not personally certain that the judge had failed to make a necessary disclosure but just believed that there was a material risk that this was so. This follows not only because of the risk of the case taking a turn unfavorable to the lawyer's client as a result of the future rulings by the judge but also because a subsequent revelation of the conflict may require that the client's matter be re-litigated from the beginning.  *Harris v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. LSU Health Sci. Ctr. Shreveport*, 409 F. App'x 725, 726–27 (5th Cir. 2010) ("'Although § 455 does not speak to vacating a judgment, Rule 60(b)(6), in conjunction with § 455, does provide "a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." ' ") (citing *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988))); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (5th Cir. 2010) (absent disclosure and waiver, the judgment had to be vacated and remanded to a different judge).  *See also, In re Cleveland*, 420 Fed. Appx. 435, 437 (5th Cir. 2011) (because the judge was disqualified under § 455, the judge's the order must be vacated); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (5th Cir. 2010) (concluding where no disclosure and waiver occurred the judgment had to be vacated and remanded to a different judge).  If nothing else, communicating this risk to the client allows the client to decide whether the client wishes to change counsel in order to address and hopefully eliminated the judicial disqualification issue.

---

than the hypersensitive, cynical, and suspicious person,' while remaining 'mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary' would be. *Ayati-Ghaffari,* 2019 WL 452756 at *1 (citing *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995)).

CONFIDENTIAL                                                                                                              H&K_0002812

June 2, 2022
Page 3

**B.**   **RPC 8.04(a)(6)**

If the client directs the lawyer to make disclosure, then the lawyer must either do so or withdraw.  *See*, *e.g.*, RPC 1.02(a). That does not mean, however, that the lawyer is free to proceed without disclosure if the client directs the lawyer to do so.  Under RPC 8.04(a)(6), a lawyer cannot "knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." RPC 8.04(a)(6). The questions thus become what is meant by "knowingly" and what is meant by "assist."[2]

**1.**   **Defining "Knowingly"**

The Terminology section of the RPCs provides that "'knowingly' … denotes actual knowledge of the facts in question.  A person's knowledge may be inferred from circumstances." Actual knowledge requires proof beyond what is required to establish what a reasonably prudent (and therefore non-negligent) person should have known. In the present situation, however, it appears that the lawyer with the case before the judge has actual knowledge of all of the facts which appear to give rise to the judicial conflict.  Consequently, the most that that lawyer could say is that the lawyer does not "know" that the law requires judicial disclosure or recusal on these facts--perhaps on the ground that since the judge also knows the facts, the judge must have reached a reasoned decision that disclosure or recusal is not required.

We are not aware of any Texas authority directly on point.  Nonetheless, it is our opinion that the likelihood of the lawyer prevailing on such a defense is low.  At least at present, we do not see a strong argument to the effect that judicial disclosure or recusal is not required. And even if the lawyer is able to identify a plausible and non-frivolous argument as to why disclosure or recusal is not necessary, we are not certain that that would protect the lawyer from discipline.  Although we have found no Texas authority on point, disciplinary decisions in several other jurisdictions use language that, at least if taken literally, would move the "actual knowledge/must have known" standard under ABA Model Rule 8.3 (the counterpart to RPC 8.03) very close to a "should have known" standard.  *See* Geoffrey C. Hazard, Jr., W. William Hodes & Peter R. Jarvis, The Law of Lawyering §68.04 (last updated 12/21).

**2.**   **Defining "Assist"**

Texas Ethics Opinion 692 (2021) addresses whether a lawyer who merely remains silent and says nothing can be held to have failed to disclose a material fact when doing so was otherwise "necessary to avoid assisting a criminal or fraudulent act" under RPC 3.03(a)(2).  The opinion provides that:

> This Committee agrees with the latter view that "assisting" a client's criminal or fraudulent act—at least in these circumstances—requires more than mere silence

---

[2] For the sake of completeness, we note that in addition to RPC 8.04(a)(6), RPC 8.03(b) provides that "Except as permitted in paragraphs (c) or (d), a lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority" and that RPC 8.04(a)(3) prohibits a lawyer from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation." In light of our analysis of RPC 8.04(a)(6), we do not believe it is necessary to explore these other sections further at this time.

CONFIDENTIAL

June 2, 2022
Page 4

or inaction. Although the term "assisting" is not defined in the Rules, the ordinary legal meaning of that term implies some kind of affirmative and knowing participation in the client's lie. By way of example, "assisting" crimes generally require proof that the defendant solicited, encouraged, directed, aided, or attempted to aid another person in the commission of the offense. *See* Tex. Penal Code § 7.02(a)(2); *see also Rodriguez v. MumboJumbo, L.L.C.*, 347 S.W.3d 924 (Tex. App.—Dallas 2011, no pet.). Rodriguez involved allegations that a lawyer had suborned perjury by failing "to clarify or pull back" allegedly false testimony. 347 S.W.3d at 926-27. But, the court noted, "[f]or subornation of perjury to occur, the suborner must act with the intent to promote or assist the witness in providing false testimony." *Id*. at 927. "One does not suborn perjury merely because one knows it has occurred and fails to disclose it." *Id*. In other words, a lawyer's failure to "clarify or pull back" a client's false testimony is not the same as promoting or assisting a client in providing false testimony as required for the crime of suborning perjury. In the same way, this Committee concludes that a lawyer does not "assist" in the client's false testimony under Rule 3.03(a)(2) by passively witnessing that testimony on cross-examination and remaining silent.

In the present circumstances, however, it would appear difficult to conclude that the lawyer's participation in a case before a judge who is required either to disclose a conflict or implement recusal is equivalent to mere silence which does not constitute impermissible assistance. In other words, it is our opinion that conducting a case before and seeking favorable rulings from a judge who is required to make disclosure or implement recusal would therefore constitute impermissible assistance to a judge under RPC 8.04(a)(6).

If we are correct in our opinion that the lawyer must either do or say something about the conflict or withdraw, the next question is how best to raise the issue with opposing counsel and the court if the lawyer chooses not to withdraw.  At least at present, we cannot say that a particular approach must be followed.  For example, it may be best to begin by speaking with opposing counsel about the matter and then addressing the matter jointly with the court rather than by simply making a filing with the court before communicating with other counsel.

## III.   CONCLUSION AND RECOMMENDATION

In our opinion, disclosure by the lawyer to firm clients about the judicial conflict is necessary.  If the client decides to change lawyers and firms, no duty to take any further action may exist. If the client wishes to stay with the present lawyer and firm, however, then the firm lawyers who participate in the case with knowledge of the facts giving rise to the need for judicial disclosure or recusal are running a material risk of lawyer discipline.

CONFIDENTIAL